APPENDIX V

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

FORT WORTH DIVISION

UNITED STATES OF AMERICA |

v. | CASE NO. 4:20-CR-269-Y

ERIC PRESCOTT KAY |

**DECLARATION OF EMMANUEL LADSOUS**

Pursuant to Title 28 U.S. Code § 1746, I, Emmanuel Ladsous, declare under penalty of perjury as

follows:

1.      I have personal knowledge of the facts set forth herein, and if called as a witness, I

could and would competently testify thereto.

2.      I became a licensed California private investigator (California Private Investigator

License No. 188424) in 2018 and currently serve as the President of Delta 7 Group, LLC ("Delta

7"), a professional investigations firm composed of former Federal Bureau of Investigation ("FBI")

personnel.

3.      I retired from the FBI in 2011 after twenty-three (23) years of service with an

unblemished record. During my tenure, I conducted and supervised complex, sensitive national

security and criminal investigations—including terrorism, foreign counterintelligence, organized

crime, white-collar crime, public corruption, civil rights violations, financial crimes, and drug-

trafficking offenses. I served as a certified Computer Forensics Examiner (CART Forensic

Examiner and IACIS Examiner), an FBI Technically Trained Agent, and an FBI/NSA-certified

Technical Surveillance Countermeasures Examiner. Throughout my career, evidence collection,

documentation, preservation, and chain of custody procedures were fundamental components of my

responsibilities, providing me with extensive expertise in handling forensic evidence and physical

exhibits. I consistently applied scientific methodologies and legal standards to ensure evidence

integrity and admissibility in court proceedings. Combined with my subsequent private investigative work, I bring over 30 years of investigative experience to my practice.

4.    Among other things, my investigation has focused on documenting and analyzing the chain of custody, handling, and forensic examination of Tyler Skaggs's Apple iPhone 8 from its July 1, 2019, seizure by the Southlake Police Department ("Southlake PD") until it was ultimately transferred to the U.S. Drug Enforcement Administration ("DEA"), on September 3, 2019.

5.    In conducting this evidentiary review, I have relied exclusively on publicly available information, including the trial transcript from the federal prosecution of *United States v. Eric Prescott Kay*, Case No. 4:20-CR-269-Y, tried from February 8, 2022, through February 16, 2022. In addition, I submitted nineteen (19) requests under the Texas Public Information Act ("TPIA")—a state law that provides the public with the right to access government records—and reviewed documents produced in response by both the Southlake PD—the primary investigative agency until the case was transferred to the DEA on September 3, 2019—and the Grapevine Police Department ("Grapevine PD"), which, in a non-investigative capacity, provided forensic support for Tyler Skaggs's iPhone 8 and iPad seized by the Southlake PD. All information cited in this declaration is thus derived from public domain sources and official government records lawfully obtained through statutory information request procedures.

**Factual Overview and Key Findings**

6.    According to the trial transcripts in *United States v. Eric Prescott Kay*, Corporal (now Captain) Delaney Green testified that she performed a single Cellebrite "image" (a digital evidence extraction) of Tyler Skaggs's iPhone at the "Grapevine Forensics Lab" over a nearly four-day period. At the time of Tyler Skaggs's death in 2019, Green was a detective assigned to the Southlake PD Criminal Investigations Division and served as the lead investigator in the death investigation. She was promoted to Corporal in September 2019 and held that rank during Eric Kay's trial in 2022. However, documented evidence reveals several critical discrepancies in her sworn testimony that raise significant questions about the integrity of the forensic evidence presented at trial.

7.    *First*, Corporal Green testified regarding who performed the forensic work. She claimed she personally conducted the forensic data acquisition of Skaggs's iPhone, stating: "I

1  utilized a software called Cellebrite and did an image of what would have been on the cell phone"

2  (Vol. 6, at 29:4-5). In reality, documented evidence establishes that Detective Richard Weber of the

3  Grapevine PD, an International Association of Computer Investigative Specialists ("IACIS")

4  Certified Computer Forensics Examiner, performed the forensic extractions on July 18, 2019.

5       8.    *Second*, Corporal Green misrepresented the nature of the examination facility in her

6  testimony. She stated that she conducted the extraction at a "Grapevine forensics lab" (Vol. 6, at

7  28:23-25: "After I received the passcode, I then traveled to Grapevine forensics lab where we have

8  our software to process electronics."). Contrary to this testimony, documented evidence shows that

9  the Grapevine PD does not operate a specialized forensic laboratory; the examination was conducted

10 at a standard police department facility. This represents a factual contradiction between her sworn

11 testimony and the actual location and nature of the facility where the forensic work was performed.

12      9.    *Third*, Corporal Green's testimony contained multiple technical and timeline

13 misrepresentations that further undermined its reliability:

14      a.   She testified to creating a "mirror image" of the iPhone—a technically impossible

15           procedure given Apple's secure encryption architecture and the technical limitations

16           of the Cellebrite tool when used with iOS devices.

17      b.   She testified to performing a single extraction, while Detective Weber's records

18           document that he performed two separate Advanced Logical Extractions and stored

19           the resulting derivative evidence on the Grapevine PD server.

20      c.   She misrepresented the timeline, testifying: "I went back to the Grapevine forensics

21           lab on July 22 when the analysis and the download was completed" (Vol. 6 at 47:13).

22           In fact, Detective Weber completed both forensic extractions on July 18, 2019, and

23           gave Corporal Green the Cellebrite extraction report that same day.

24      10.   The complete absence of documentation accounting for Detective Weber's forensic

25 work product is most concerning. This includes:

26      a.   No records exist in either the Southlake Police Department or Grapevine Police

27           Department Evidence Management Systems (EMS) that document the custody,

28           transfer, or disposition of the four digital forensic files created by Detective Weber.

These missing files include two Advanced Logical Extraction data files for Tyler Skaggs' iPhone and two Advanced Logical Extraction data files for his iPad. This represents a complete absence of standard evidence-tracking documentation for these critical digital forensic materials.

b. No documentation exists for the Cellebrite Reader reports for either device.

c. No transfer receipts or official correspondence document the proper handling of this critical derivative evidence, its electronic transfer to the Southlake PD on April 5, 2021, or its disposition within the Evidence Management Systems of either the Grapevine or Southlake Police Departments.

11. No documentation confirms that this evidence was transferred to the Drug Enforcement Administration when the agency assumed jurisdiction.

12. Attached hereto as **Exhibit 1** is a true and correct copy of Corporal Delaney Green's testimony from Volume 6 of 11 of *USA v. Eric Prescott Kay*, No. 4-20-CR-269-Y, United States District Court for the Northern District of Texas, Fort Worth Division, with Reporter's Certificate from registered court reporter Debra G. Saenz.

**Uncovering Detective Weber's Involvement and Record Omissions**

13. My investigation into the forensic handling of Skaggs's iPhone unfolded in two distinct phases that revealed a pattern of documentation omissions and procedural irregularities.

14. *Phase 1 – Identification of Detective Weber*: While reviewing the Southlake PD case file, I discovered a signed, altered Chain-of-Custody form documenting the July 17, 2019, transfer of Skaggs's iPhone and iPad to the Grapevine PD. By comparing the limited details on that form with Grapevine PD personnel data, I confirmed that the signatory was Detective Richard Weber, an IACIS-certified Computer Forensic Examiner. Notably, this document was the only record in the Southlake PD file mentioning Detective Weber—indicating his direct involvement in the forensic process yet revealing a lack of documentation about his role in the investigation. This discovery raised significant questions regarding the whereabouts and documentation of Detective Weber's forensic work product, as no evidence logs, transfer records, or chain of custody documentation existed for the digital extractions or Cellebrite Reader reports he generated. Attached hereto as

1    **Exhibit 2** is a true and correct copy of the Chain-of-Custody form for the July 17, 2019, transfer of

2    Tyler Skaggs's iPhone and iPad to the Grapevine PD.

3        15.    *Phase 2 – Acquisition of the Grapevine PD Forensic Report*

4            a.    *Initial TPIA Requests*: After discovering Detective Weber's involvement, I submitted

5                TPIA requests to both the Southlake PD and the Grapevine PD, seeking the forensic

6                report for Skaggs' electronic devices. On June 26, 2024, I submitted a formal TPIA

7                request to the Southlake PD requesting all digital forensic analysis reports prepared

8                by the Grapevine PD Forensic Laboratory concerning the Tyler Skaggs investigation.

9            b.    *Southlake City Attorney Response and Texas Attorney General Ruling*: On July 11,

10                2024, Ms. Bessie Bronstein, the Southlake City Attorney employed by Taylor Olson

11                Adkins Sralla Elam, LLP ("TOASE"), 6000 Western Place, Suite 200, Fort Worth,

12                Texas 76107, formally responded that my request implicated information requiring

13                a determination from the Texas Attorney General's Office regarding potential

14                exceptions to the TPIA. Ms. Bronstein confirmed submitting the responsive

15                documents to the Attorney General for review. On September 16, 2024, the Texas

16                Attorney General issued ruling OR2024-032258, explicitly directing the City of

17                Southlake to release the requested information. Despite this clear directive, the

18                Southlake City Attorney continued withholding the forensic report for Skaggs'

19                iPhone and iPad.

20            c.    *Parallel Inquiries to the Grapevine PD*: Concurrently, I submitted TPIA requests to

21                the Grapevine PD seeking forensic reports for Skaggs' devices. The Grapevine PD

22                initially claimed that no records existed for the examination. However, through

23                persistent follow-up communications, I obtained an unexpected breakthrough. On

24                September 19, 2024, the Grapevine PD accidentally released an anonymized

25                "Technical Assistance" report (Case No. 1900038391). This document confirmed

26                that Detective Weber performed two Advanced Logical Extractions on Skaggs'

27                iPhone on July 18, 2019. Significantly, this report was deliberately anonymized—

28                lacking Skaggs' name, the device's unique identifiers, and any reference to the

1   Southlake PD case number. Furthermore, the Grapevine PD misclassified the

2   incident as "non-criminal," thereby reducing the statutory retention period for

3   evidence in a death investigation—a deviation from established forensic protocols.

4   Detective Weber's substantive role in the forensic examination was neither disclosed

5   in public testimony nor properly documented in Southlake PD's official records.

6       d.   *Final Resolution*: Despite the Texas Attorney General's September 16, 2024, ruling

7          directing disclosure, the Southlake City Attorney maintained a position of non-

8          acknowledgment regarding the Grapevine PD forensic report until confronted with

9          direct evidence. On November 21, 2024, I submitted a new TPIA request to the

10         Southlake PD, including the anonymized Technical Assistance report (Case No.

11         1900038391) I obtained from the Grapevine PD. This submission effectively

12         established that I already knew of Detective Weber's involvement and the forensic

13         examination he conducted. In response, on December 9, 2024, the City Attorney

14         finally acknowledged the Grapevine PD's role in the Skaggs investigation and

15         released the complete forensic report for the iPhone and iPad devices—nearly three

16         months after the Attorney General had ordered its disclosure. Attached hereto as

17         **Exhibit 3** is a true and correct copy of Detective Weber's anonymized report (Case

18         No. 1900038391), which constitutes critical new evidence. Further details regarding

19         the Attorney General's ruling and the subsequent withholding of information are

20         documented in **Exhibit 4**, which is also attached hereto.

21                            **Investigation Timeline**

22      16.   After reviewing Corporal Green's trial testimony, in which she claimed to have

23  personally performed a Cellebrite "image" of Tyler Skaggs' iPhone at the "Grapevine forensics lab,"

24  I conducted a systematic investigation through multiple TPIA requests, examining only publicly

25  available government records and court documents that are fully in the public domain. This review

26  of public information revealed a pattern of discrepancies, omissions, and resistance to disclosure

27  from both the Southlake and Grapevine Police Departments. Refer to **Exhibit 1** [Vol. 6 at 29:1] for

28  details of Corporal Green's testimony.

**Initial Discovery of Detective Weber's Involvement**

17.    On June 12, 2024, I submitted TPIA Request #1 to the Southlake PD, requesting all investigation reports, evidence logs, and chain of custody documentation related to the Tyler Skaggs case. On June 26, 2024, Ms. Bronstein of Taylor Olson Adkins Sralla Elam, LLP (TOASE), acting as City Attorney for Southlake, provided a portion of the information that was responsive to my TPIA request. Ms. Bronstein's response failed to include the critical Chain of Custody form for the July 17, 2019, transfer of Tyler Skaggs's iPhone and iPad to the Grapevine PD and any forensic extraction reports. Attached hereto as **Exhibit 5** is a true and correct copy of my June 12, 2024, TPIA Request #1 to the Southlake PD and Ms. Bronstein's June 26, 2024, response.

18.    Concurrently, on June 26, 2024, I submitted TPIA Request #1 to the Grapevine PD, explicitly requesting the forensic image files and analysis reports for Skaggs's iPhone and iPad.

19.    On June 27, 2024, Sarah Severn, Police Support Services Manager at Grapevine PD, responded, "The Grapevine Police Department does not maintain any records related to the Southlake incident. The examination was completed, and the data extracted, and devices were turned over/returned to Southlake PD. They would have needed the image files to submit with their case, I would imagine." Attached hereto as **Exhibit 6** is a true and correct copy of my June 26, 2024, TPIA Request #1 to the Grapevine PD, and **Exhibit 7** is a true and correct copy of Ms. Severn's email response on June 27, 2024.

20.    On July 3, 2024, I submitted TPIA Request #3 to the Southlake PD requesting a list of all TPIA requests received related to the Tyler Skaggs case, a detailed inventory of all evidence currently held by the Southlake PD related to the case, the chain of custody records for all evidence, and any correspondence or documentation indicating whether the Southlake PD or the DEA currently hold evidence related to the case.

21.    On July 11, 2024, Ms. Bronstein responded by providing only the TPIA requests submitted to the Southlake PD while failing to address the other requested items. This selective response suggested either deliberate suppression or a significant failure in procedural compliance. Again, the City Attorney's response failed to include the critical Chain of Custody form for the July 17, 2019, transfer of Tyler Skaggs's iPhone and iPad to the Grapevine PD. Attached hereto as

1  **Exhibit 8** is a true and correct copy of my July 3, 2024, TPIA Request #3 to the Southlake PD and

2  the City Attorney's response.

3        22.      The breakthrough came on August 2, 2024, when I submitted TPIA Request #4 to

4  the Southlake PD seeking the same documentation the Southlake City Attorney provided to Rusty

5  Hardin & Associates, LLP, in response to their March 14, 2024, request.

6        23.      On August 16, 2024, Ms. Bronstein provided some of the requested documents that

7  included an altered Chain of Custody form—missing its header—dated July 17, 2019, for the

8  transfer of an iPhone and an iPad to the Grapevine PD. Despite previous requests, this document

9  had not been released. The recipient's name on the form was illegible; however, further investigation

10 revealed that the signatory was Detective Richard Weber of the Grapevine PD, an IACIS Certified

11 Forensic Examiner. Upon examination of this evidence, I concluded that Detective Weber

12 performed the forensic analysis of Tyler Skaggs' devices. Attached hereto as **Exhibit 9** is a true and

13 correct copy of my August 2, 2024, TPIA Request #4 to the Southlake PD, and as **Exhibit 10** is a

14 true and correct copy of Ms. Bronstein's August 16, 2024, response and the altered Chain of Custody

15 form.

16                               **Efforts to Locate the Forensic Reports**

17       24.      On June 26, 2024, I submitted TPIA Request #2 to the Southlake PD, specifically

18 requesting all digital forensic analysis reports prepared by the Grapevine PD Forensic Laboratory

19 pertaining to digital media seized during the Tyler Skaggs investigation. This request sought official

20 documentation of any forensic examination conducted on Tyler Skaggs' electronic devices. On July

21 11, 2024, Ms. Bessie Bronstein, TOASE, acting as City Attorney for Southlake, formally responded

22 that the information responsive to my request had been submitted to the Office of the Texas Attorney

23 General for an official ruling regarding disclosure requirements. **Exhibit 4** contains a true and

24 correct copy of my June 26, 2024, TPIA request to the Southlake PD, including all submitted

25 documentation.

26       25.      On September 16, 2024, the Texas Attorney General's Office issued ruling OR2024-

27 032258, which explicitly ordered the City of Southlake to release all information previously

28 submitted for review. In this ruling, the Attorney General specifically concluded that the city had

1  failed to establish any valid legal basis under section 552.108(b)(1) of the Government Code for

2  withholding the information, stating that 'the city may not withhold any of the submitted

3  information' and 'must release the submitted information.' Despite this clear legal directive from the

4  Attorney General's Office, which found no legitimate exception to disclosure applied, the City

5  Attorney continued to withhold the forensic report that was responsive to my original request.

6  Attached hereto as **Exhibit 14** is a true and correct copy of the Texas Attorney General's September

7  16, 2024, Ruling OR2024-032258.

8        26.      Meanwhile, on September 11, 2024, I submitted TPIA Request #2 to the Grapevine

9  PD requesting all documents and media related to the forensic examination of Tyler Skaggs's

10  iPhone, including but not limited to (1) the Cellebrite logical dump of the device or any other

11  forensic procedures performed; (2) any chain of custody documentation related to the Cellebrite

12  logical dump or other forensic data, including the evidence number associated with this analysis;

13  (3) the forensic report prepared by Detective Richard Weber regarding the forensic examination of

14  the iPhone; (4) any notes taken by Detective Weber or other personnel involved in the examination;

15  (5) any work copy of the Cellebrite report, if available; and (6) any media such as USB drives,

16  DVDs, or other storage devices containing forensic data from the phone.

17        27.      On September 19, 2024, Josie London, Records Coordinator at Grapevine PD,

18  responded: "After a thorough search of our records, we are unable to locate any documents as you

19  have described. I located one report from the time frame specified that is related to our assisting

20  Southlake Police Department with technology, but it does not identify the Southlake case number

21  or the serialized identifiers for the items involved. Attached is a copy of that report, #1900038391.

22  I cannot confirm that this is the case in question, but I have no other cases of any kind that match

23  the criteria you provided." This anonymized "Technical Assistance" report (Case No. 1900038391)

24  confirmed that Detective Weber had performed two Advanced Logical Extractions on July 18, 2019.

25  Attached hereto as **Exhibit 13** is a true and correct copy of my September 11, 2024, TPIA Request

26  #2 to the Grapevine PD, and as **Exhibit 15** is a true and correct copy of Ms. London's September

27  19, 2024, response.

28

28.     On September 11, 2024, I also submitted TPIA Request #6 to the Southlake PD requesting the following items: (1) the Cellebrite logical dump of Tyler Skaggs's iPhone [extraction file]; (2) any chain of custody documentation related to the Cellebrite logical dump; (3) any reports or additional documentation generated by Detective Weber or other Grapevine PD related to the forensic analysis of the iPhone; and (4) any media provided, such as USB Drives, DVDs, or other storage devices containing the logical dump or related forensic data. Additionally, my TPIA request (#6) sought Southlake PD's acknowledgment of the existence or non-existence of the requested documents and media, including the Cellebrite logical dump. I wrote, "If these materials do exist, please provide the chain of custody records for the forensic data, including any relevant evidence numbers." Attached hereto as **Exhibit 11** is a true and correct copy of my September 11, 2024, TPIA Request #6 to the Southlake PD.

**Attempts to Document Chain of Custody for Digital Evidence**

29.     On September 24, 2024, at 8:34 AM, before receiving any response to TPIA Request #6, I transmitted a clarification email to the City of Southlake regarding this request. In this correspondence, I provided background on the chain of custody for Skaggs' iPhone (Item 7). I expressed concerns that while the City had provided information about the property seized and transferred, it had not provided any information regarding the evidence and derivative evidence from Corporal Green's forensic extraction and analysis of Skaggs' iPhone (which was subsequently discovered to have been performed by Detective Weber of the Grapevine PD). I specifically requested clarification on five key points: (1) What happened to Extraction 1 (the logical dump) and its associated derivative evidence? (2) What happened to the Cellebrite Phone Extraction Report? (3) Where is it? Evidence Number? Chain of custody? (4) Was it transferred to the DEA? If so, which items, when, and by whom? (5) Is Extraction 1 and any other derivative evidence stored in the Virtual Evidence Locker, as noted in Corporal Green's August 6, 2019 report? I concluded by emphasizing that this information was crucial to understanding the evidence used in the federal trial and ensuring a thorough accounting for the upcoming civil litigation. Attached hereto as **Exhibit 16** is a true and correct copy of my September 24, 2024, 8:34 AM clarification email regarding TPIA Request #6.

30.     That same day, on September 24, 2024, at 10:41 AM, I sent TPIA Request #7 via electronic mail to the Southlake Police Department. This request constituted a substantive update to my previously submitted TPIA Request #6, dated September 11, 2024. Specifically, it sought four categories of information: (1) All documents, records, and media related to the Cellebrite logical extraction (Extraction 1) and analysis performed by Corporal Delaney Green (which was subsequently discovered to have been performed by Detective Weber of the Grapevine PD) or any other individual under the control of the Southlake PD or Grapevine PD during the forensic handling of Tyler Skaggs's iPhone, including the extraction file, reports, notes, chain of custody records, and evidence numbers; (2) All derivative evidence created as a result of Corporal Green's forensic examination, including all photographs of Tyler Skaggs' iPhone taken on July 23, 2019, and any storage media used for forensic results; (3) All transfer records between the Southlake PD and the DEA detailing which forensic evidence was transferred; and (4) Clarification regarding the existence or non-existence of the Cellebrite extraction files and any additional records. In this request, I also specifically asked for a formal written explanation if any requested records did not exist or were unavailable. At 11:47 AM that same day, Sarah Blum, Police Records Manager at Southlake PD, responded to TPIA Request #7 with a brief email stating: "I do not have any information on what was extracted since it was transferred to the DEA before I even had a copy in my office. The phone and IPad were sent to the DEA." Attached hereto as **Exhibit 17** is a true and correct copy of my September 24, 2024, TPIA Request #7 to the City of Southlake and as **Exhibit 18** is a true and correct copy of Sarah Blum's September 24, 2024 email response.

31.     On September 25, 2024, Ms. Bronstein responded to my TPIA Request #6. This response included only three Transfer Receipts (iPad, blue and pink pills, Room key, key card, Indocin, white substance, and plastic pen tube), one DEA Receipt for Items 1, 2, 3, 4, 5, and 8, and the Item History report for Item 7, Skaggs's iPhone—but no forensic data or documentation whatsoever. Attached hereto as **Exhibit 31** is a true and correct copy of the Southlake City Attorney's September 25, 2024, response to TPIA Request #6.

32.     On September 29, 2024, at 2:46 PM, I emailed Ms. Bronstein in response to the information she provided on September 25, 2024, for TPIA request #6. I wrote, "Given your

response, I am left to conclude the following: The Cellebrite extraction file and all supporting reports from the forensic extraction performed by Corporal Green on Skaggs' iPhone no longer exist. The photos taken by Corporal Green at the Grapevine PD on July 23, 2019 (images 0001 through 0045), which were introduced as Government Exhibit 6 during Eric Kay's federal trial, are either missing or have been destroyed. The Cellebrite extraction file, the extraction reports, and the derivative evidence generated by Corporal Green during her forensic analysis of Skaggs' phone were never logged into the Southlake PD evidence management system (confirmed by the Southlake PD). Consequently, no official transfer to the DEA was documented or completed..." The City Attorney failed to respond to this correspondence despite its critical nature regarding statutorily required disclosures. It is worth noting that this non-response reflects a consistent pattern of conduct, as the City Attorney has systematically disregarded all communications requesting clarification on public information matters throughout this investigation. Attached hereto as **Exhibit 19** is a true and correct copy of my September 29, 2024, follow-up email to the City of Southlake regarding their response to TPIA Request #6.

33.     On October 8, 2024, the Southlake City Attorney responded to my TPIA Request #7, consisting of identical documentation to that provided for TPIA Request #6: three Transfer Receipts (iPad, blue and pink pills, Room key, key card, Indocin, white substance, and plastic pen tube), one DEA Receipt for Item 1, 2, 3, 4, 5, and 8, and the Item History report for Item 7, Skaggs's iPhone. Ms. Bronstein provided no explanation for this duplication or for failing to address the specific clarifications I had requested. This identical response demonstrated that the City Attorney disregarded both my clarification email of September 24 and my September 29 request for additional information. Attached hereto as **Exhibit 20** is a true and correct copy of the City Attorney's October 8, 2024, response to TPIA Request #7.

34.     On November 10, 2024, I submitted TPIA Request #8 to the Southlake PD requesting a copy of the Chain of Custody form signed by Detective Weber on July 17, 2019, as the copy submitted appeared to be missing the top portion. The Southlake PD did not respond to the TPIA request. Attached hereto as **Exhibit 21** is a true and correct copy of my November 10, 2024, TPIA Request #8 to the Southlake PD.

35.     On November 14, 2024, I submitted TPIA Request #10 to the Southlake PD requesting a Digital Evidence Inventory, Item History Reports for Digital Evidence, the Current Status and Disposition of the Digital Evidence, and Access Logs and Activity Records for Digital Evidence, related to the Tyler Skaggs investigation. On December 2, 2024, Bessie Bronstein, TOASE, City Attorney, provided irrelevant, non-responsive documents, including GPS records dated October 12, 2024. Attached hereto as **Exhibit 22** is a true and correct copy of my November 14, 2024, TPIA Request #10 to the Southlake PD.

36.     On November 19, 2024, I submitted TPIA Request #3 to the Grapevine PD, requesting detailed inventories of physical and digital evidence, documentation of the April 5, 2021 transfer to Southlake PD, and current evidence status. Samuel Hawk, City Attorney, Boyle & Lowry, LLP, Irving, Texas, responded that the Grapevine PD has no additional information. Attached hereto as **Exhibit 23** is a true and correct copy of my November 19, 2024, TPIA Request #3 to the Grapevine PD.

**Final Attempts to Locate Missing Evidence**

37.     On November 21, 2024, I submitted TPIA Request #12 to the Southlake PD with the anonymized Technical Assistance report (Case No. 1900038391) I had obtained from Grapevine PD, requesting: (1) documentation of the UFED Reader Reports (iPhone and iPad) provided to Detective Green on July 17 and July 18, 2019; (2) any records of the digital evidence transferred from Grapevine PD to Southlake PD on April 5, 2021; (3) all physical evidence related to the extraction of Skaggs's iPhone including chain of custody forms; (4) all records related to the Cellebrite Reader reports created as derivative evidence; (5) any Southlake PD case number(s) or records associated with Grapevine PD Case No. 1900038391; and (6) any logs or records showing how and when Grapevine PD transferred its reports and files to Southlake PD on April 5, 2021.

38.     On December 9, 2024, Ms. Bronstein provided Grapevine PD Case No. 1900038391 but did not provide records of digital evidence and verification of transfer documents. I requested these records to determine what happened to the derivative evidence transferred from the Grapevine PD forensic server to the Southlake PD on April 5, 2021. Attached hereto as **Exhibit 24** is a true

1  and correct copy of my November 21, 2024, TPIA Request #12 to the Southlake PD, and as **Exhibit**

2  **25** is a true and correct copy of Ms. Bronstein's December 9, 2024, formal response.

3       39.    On December 10, 2024, I submitted TPIA Request #14 to the Southlake PD

4  requesting records related to the destruction, disposal, or transfer of derivative evidence from the

5  Grapevine PD, records verifying the receipt of original digital evidence transferred from the

6  Grapevine PD to the Southlake PD on or about April 5, 2021, and documentation, chain of custody

7  logs, or internal correspondence related to the storage, transfer, handling, or preservation of

8  derivative evidence connected to Grapevine PD Case Number 1900038391.

9       40.    On December 26, 2024, Ms. Bronstein responded: "I represent the City of Southlake

10  regarding the above-described matter. The remaining information is being withheld pursuant to

11  previous determinations from the Texas Attorney General," without specifying which

12  determinations applied or providing any substantive information. Attached hereto as **Exhibit 26** is

13  a true and correct copy of my December 10, 2024, TPIA Request #14 to the Southlake PD. **Exhibit**

14  **27** is a true and correct copy of Ms. Bronstein's December 26, 2024, formal response.

15       41.    On December 26, 2024, I emailed Ms. Bronstein requesting clarification regarding

16  the specific Attorney General determination she referenced in her correspondence and how that

17  determination applied to the requested records. To date, Ms. Bronstein has failed to respond to this

18  inquiry. This continued failure to respond is consistent with Ms. Bronstein's pattern throughout this

19  investigation, as she has never responded to any email communication requesting clarification on

20  any matter related to these TPIA requests, despite multiple attempts to obtain such clarification on

21  statutorily required disclosures. Attached hereto as **Exhibit 28** is a true and correct copy of my

22  December 26, 2024, email to Ms. Bronstein, TOASE.

23       42.    On January 6, 2025, I submitted TPIA Request #15 to the Southlake PD, seeking all

24  email correspondence related to the Tyler Skaggs death investigation. The primary objective of this

25  request was to locate any communications exchanged between the Southlake PD and the Grapevine

26  PD regarding the April 5, 2021, transfer of forensic evidence associated with Tyler Skaggs's iPhone.

27  On January 21, 2025, Ms. Bronstein provided only five email messages: (1) From Jonathan Macheca

28  to Sarah Blum – May 10, 2022; (2) From Detective Delaney Green to Molfetta (defendant's attorney)

1   – July 30, 2019; (3) From Detective Delaney Green to Molfetta (defendant's attorney) – August 9,

2   2019; (4) From Detective Delaney Green to Molfetta (defendant's attorney) – August 12, 2019; and

3   (5) From Molfetta (defendant's attorney) to Detective Delaney Green – August 23, 2019.

4         43.    According to these email messages, the first email related to this high-profile

5   investigation, which began on July 1, 2019, did not occur until July 30, 2019. Furthermore, the

6   Southlake PD produced only four (4) emails exchanged between its personnel and Eric Kay's

7   attorney. Southlake PD did not produce a single email its personnel exchanged with the DEA,

8   Grapevine PD, or any other agencies or individuals who would have logically been involved in this

9   matter. The absence of these critical communications undermines the TPIA's transparency mandate

10  and raises significant doubts about the completeness of the Southlake PD's disclosures. Attached

11  hereto as **Exhibit 29** is a true and correct copy of my January 6, 2025, TPIA request #15 to the

12  Southlake PD, and as **Exhibit 30** is a true and correct copy of Ms. Bronstein's January 21, 2025,

13  formal response and attachments thereto.

14        44.    This systematic investigation, conducted through multiple TPIA requests, revealed

15  not only Detective Weber's undisclosed role in the forensic examination but also the complete

16  absence of documentation for critical forensic evidence, revealing factual inconsistencies in the

17  documented chain of custody and significant gaps in the records of evidence handling procedures.

18        45.    The necessity of submitting nineteen (19) separate TPIA requests to obtain basic

19  evidentiary documentation from a closed investigation represents an extraordinary level of

20  procedural complexity compared to standard public records practice. This unusual degree of

21  difficulty in accessing what should be readily available public records has required formal appeals

22  to the Texas Attorney General, multiple unanswered emails and phone calls seeking clarification,

23  and persistent follow-up for more than half a year. The City of Southlake continued to withhold

24  information even after the Attorney General's September 16, 2024, ruling (OR2024-032258)

25  explicitly rejected their claimed exemptions and ordered disclosure pursuant to Texas Government

26  Code § 552.301 et seq. Most notably, this pattern of non-disclosure persisted even after I provided

27  the City with direct evidence that I had independently obtained the anonymized "Technical

28  Assistance" report (Case No. 1900038391) from the Grapevine PD.

46.    Despite these extensive efforts through proper legal channels, fundamental questions remain unanswered about the chain of custody, location, and disposition of critical forensic evidence created during Detective Weber's examination of Skaggs' devices. The significance of this missing documentation is particularly acute, given the forensic principles at stake.

47.    Based on my professional training and experience as a former FBI Computer Forensic Examiner (CART Forensic Examiner and IACIS Examiner), I consider the initial extraction data acquired by Detective Weber to be "critical" because it represents the earliest forensic capture of Tyler Skaggs' iPhone 8 Plus, conducted before the device was taken off Airplane Mode. The U.S. Secret Service's forensic examiner testified during Eric Kay's trial [Vol. 6, at 157:7-16] that when they received the device, it was already off Airplane Mode, and the SIM card was still in the phone. This criticality is supported by established forensic literature, including the work of Dr. Eoghan Casey, a preeminent expert in digital forensics. Attached hereto as **Exhibit 32** is a true and correct copy of Page 157 from the February 10, 2022, Volume 6 of 11 transcript in *United States of America v. Eric Prescott Kay*, reflecting the testimony of Stefan Hare, a U.S. Secret Service-certified forensic examiner.

48.    Dr. Casey explains a fundamental principle in mobile device forensics: "Mobile devices are fundamentally transient evidence repositories, with continuous background processes that can alter, synchronize, or modify data instantaneously upon network reconnection. The moment a device regains connectivity, it becomes an active system that can fundamentally transform its digital state without user intervention." (Casey, E. (2020). *Digital Evidence and Computer Crime: Forensic Science, Computers, and the Internet* (4th Edition). Academic Press, pp. 187-189.) This principle is directly applicable to Tyler Skaggs' iPhone. Attached hereto as **Exhibit 33** is a true and correct copy of Dr. Eoghan Casey's 2025 Biography.

49.    When the U.S. Secret Service forensic examiner received the device, it was off Airplane Mode, as documented in their testimony. Based on digital forensic principles, once the device was no longer in Airplane Mode and had connected to networks, it necessarily underwent data changes. These changes occur automatically when mobile devices establish network connectivity, regardless of when or by whom the Airplane Mode setting was disabled. The fact that

1  data changes occurred when the phone connected to networks is irrefutable according to these

2  established forensic principles, though the specific nature and extent of those changes cannot be

3  determined without access to both forensic extractions for comparison.

4      50.    Based on established forensic principles and my professional experience, I believe

5  that without access to these initial forensic files from the Grapevine PD and proper documentation

6  of the examination procedures, any assessment of the reliability of the subsequent extraction

7  performed by the U.S. Secret Service remains technically compromised from a forensic standpoint.

8  In my professional judgment as a former certified forensic examiner, the complete absence of

9  documentation for these critical forensic files—including their chain of custody, storage locations,

10 and ultimate disposition—represents a significant deviation from standard forensic practices for

11 handling digital evidence.

12

13 Executed on this 6th day of March 2025, at Long Beach, California.

14

15

16

17  _____

18  Emmanuel Ladsous

19

20

21

22

23

24

25

26

27

28

Exhibit 1

Corporal Green's Testimony
Volume 6, 10:54

```
 1                IN THE UNITED STATES DISTRICT COURT

 2               FOR THE NORTHERN DISTRICT OF TEXAS

 3                      FORT WORTH DIVISION

 4   UNITED STATES OF AMERICA,    ) CASE NO. 4:20-CR-269-Y
                                  )
 5           Government,          )
                                  ) FORT WORTH, TEXAS
 6   VERSUS                       )
                                  ) FEBRUARY 10, 2022
 7   ERIC PRESCOTT KAY,           )
                                  )
 8           Defendant.           ) 9:28 A.M.

 9

10                       VOLUME 6 OF 11
                     TRANSCRIPT OF JURY TRIAL
11            BEFORE THE HONORABLE TERRY R. MEANS
          UNITED STATES DISTRICT COURT JUDGE, AND A JURY
12

13   A P P E A R A N C E S:

14   FOR THE GOVERNMENT:    MS. LINDSEY E. BERAN
                            MS. ERRIN MARTIN
15                          MR. JOSEPH T. LO GALBO
                            UNITED STATES DEPARTMENT OF JUSTICE
16                          NORTHERN DISTRICT OF TEXAS
                            U.S. Courthouse, Third Floor
17                          Dallas, Texas  75242
                            Telephone:  214.659.8600
18
     FOR THE DEFENDANT:     MR. WILLIAM REAGAN WYNN
19                          Reagan Wynn Law, PLLC
                            5049 Edwards Ranch Road, Floor 4
20                          Fort Worth, Texas 76109
                            Telephone:  817.900.6800
21
                            MR. MICHAEL ALESSANDRO MOLFETTA
22                          Molfetta Law
                            3070 Bristol Street, Suite 580
23                          Costa Mesa, CA  92626
                            Telephone:  949.391.2399
24

25
```

```
1   COURT REPORTER:            MS. DEBRA G. SAENZ, CSR, RMR, CRR
                               501 W. 10th Street, Room 507
2                              Fort Worth, Texas  76102
                               Telephone:  817.850.6661
3                              E-Mail: debbie.saenz@yahoo.com

4

5

6   Proceedings reported by mechanical stenography, transcript

7   produced by computer.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1                            I N D E X

2    PROCEEDINGS                                    PAGE    VOL

3    Reporter's Certificate.......................... 254     6

4    Word Index..................................... 255     6

5

6                   CHRONOLOGICAL WITNESS INDEX

7    G/D  WITNESS                        DIRECT    CROSS   VOL

8    G    Delaney Green                   010       038     6
     G    Stefan Hare                     054       132     6
9                                         176       --      6
     G    Marc Krouse                     184       201     6
10                                        229       --      6
     G    Jaso Gaines                     231       242     6
11   G    Aria McCall                     244       --      6

12

13

14                   ALPHABETICAL WITNESS INDEX

15   G/D  WITNESS                        DIRECT    CROSS   VOL

16   G    Gaines, Jaso                    231       242     6
     G    Green, Delaney                  010       038     6
17   G    Hare, Stefan                    054       132     6
                                          176       --      6
18   G    Krouse, Marc                    184       201     6
                                          229       --      6
19   G    McCall, Aria                    244       --      6

20

21

22

23

24

25
```

Debbie Saenz, CSR, RMR, CRR, TCRR
United States District Court
(817) 850-6661

333

**GOVERNMENT'S EXHIBIT INDEX**

| NO. | DESCRIPTION | ADMITTED | VOL |
|-----|-------------|----------|-----|
| 2 | T.S. phone extraction | 071 | 6 |
| 2B | T.S. phone extraction report | 071 (Record only) | 6 |
| 2C | T.S. phone report of forensic exam | 071 (Record only) | 6 |
| 2D | Access instructions for Govt. Exh. 2B | 072 | 6 |
| 3 | T.S. contact list | 086 | 6 |
| 4 | T.S. phone timeline 6/30/19-7/1/19 | 086 | 6 |
| 5 | T.S. text messages 6/30/19-7/1/19 | 101 | 6 |
| 6 | Photos of T.S.'s phone 6/30/19-7/1/19 | 032 | 6 |
| 7 | Text messages between T.S. and C.S. from 6/30/19-7/1/19 | 102 | 6 |
| 8 | Text messages between T.S. and T.B. on 7/1/19 | 102 | 6 |
| 9 | Goodnight text messages between T.S. and C.S. on 7/30/18 | 102 | 6 |
| 10 | Goodnight text messages between T.S. and C.S. on 7/31/18 | 102 | 6 |
| 11 | Goodnight text messages between T.S. and C.S. on 6/21/19 | 102 | 6 |
| 15 | Text messages between T.S. and Eric Kay from 6/30/19-7/1/19 | 102 | 6 |
| 16 | Text messages between T.S. and M.M. on 9/29/16 | 102 | 6 |

**GOVERNMENT'S EXHIBIT INDEX (CONTINUED)**

| NO. | DESCRIPTION | ADMITTED | VOL |
|---|---|---|---|
| 17 | Text messages between T.S., M.M., and Eric Kay on 6/1/17 | 102 | 6 |
| 18 | Text messages between T.S. and M.M. on 6/14/17 | 102 | 6 |
| 19 | Text messages between T.S., M.M., and Eric Kay on 7/8/17 | 102 | 6 |
| 20 | Text messages between T.S. and M.M. on 3/19/18 | 102 | 6 |
| 21 | Text messages between T.S. and M.M. on 3/19/18 | 102 | 6 |
| 22 | Text messages between T.S. and C.C. on 5/21/18 | 102 | 6 |
| 23 | Text messages between T.S. and C.C. on 5/21/18 | 102 | 6 |
| 24 | Text messages between T.S. and C.C. on 7/13/18 | 102 | 6 |
| 25 | Text messages between T.S. and C.C. on 8/1/18 | 102 | 6 |
| 26 | Text messages between T.S. and C.C. on 5/12/19 | 102 | 6 |
| 27 | Text message between T.S. and M.H. on 6/26/19 | 102 | 6 |

```
 1              GOVERNMENT'S EXHIBIT INDEX (CONTINUED)

 2      NO.   DESCRIPTION                          ADMITTED        VOL

 3      28    Text messages between T.S. and M.H.   102             6

 4            on 6/27/19

 5      29    T.S. Google search on 6/7/19          102             6

 6      30    Text messages between T.S. and T.P.   102,111         6

 7            on 9/16/18

 8      31    Text messages between T.S. and R.H.   102,111         6

 9            on 5/28/16

10      32    Text messages between T.S. and R.H.   102,111         6

11            on 5/28/16

12      33    Text messages between T.S. and R.H.   102,111         6

13            on 6/21/18

14      34    Text messages between T.S. and R.H.   102,111         6

15            on 7/4/18

16      35    Text messages between T.S. and R.H.   102,111         6

17            on 8/4/18

18      36    Text messages between T.S. and R.H.   102,111         6

19            on 4/12/19

20      37    Text messages between T.S. and G.R.   102,111         6

21            on 12/26/16

22      38    Group text messages with T.S. 12/27/17 102,111        6

23      39    Cowboy photo (live) from 6/30/19      103             6

24      39B   Cowboy photo (live) from 6/30/19      108             6

25            extraction report
```

| | | | |
|---|---|---|---|

**GOVERNMENT'S EXHIBIT INDEX (CONTINUED)**

| NO. | DESCRIPTION | ADMITTED | VOL |
|---|---|---|---|
| 40 | Screenshot of cowboy photo 6/30/19 | 103 | 6 |
| 85 | H.V. phone (physical exhibit) | 076 | 6 |
| 86 | H.V. phone extraction | 076 | 6 |
| 86B | H.V. phone extraction report | 077 (Record only) | 6 |
| 86C | Access instruction for Gov. Exh. 86 | 112 | 6 |
| 87 | Text messages between H.V. and J.B. from 7/21/20-8/7/20 | 113 | 6 |
| 108A | Recording of Angels player and staff interviews from 7/1/19 | 17,19 (Record only) | 6 |
| 108B | Recording of Angels player and staff interviews from 7/1/19 | 17,19 (Record only) | 6 |
| 108C | Recording of Angels player and staff interviews from 7/1/19 | 17,19 (Record only) | 6 |
| 109 | Recording of Eric Kay interview 7/1/19 | 017 | 6 |
| 117 | Photos from autopsy | 237 | 6 |
| 118 | Autopsy report | 198 | 6 |
| 177 | Photos of Exh. 7 toxicology specimens | 239 | 6 |
| 178 | Photos of Exh. 7.1 subclavian blood | 239 | 6 |
| 179 | Photos of Exh. 7.2 femoral blood | 239 | 6 |
| 180 | Photos of Exh. 7.3 femoral blood | 239 | 6 |
| 181 | Photos of Exh. 7.4 urine | 239 | 6 |
| 182 | Photos of Exh. 7.5 vitreous humor | 239 | 6 |

| NO. | DESCRIPTION | ADMITTED | VOL |
|-----|-------------|----------|-----|
| | **DEFENDANT'S EXHIBIT INDEX** | | |
| 74 | Extraction Report Timeline 7/23/19 | 144,146 | 6 |
| | | (Offer of Proof) | |
| 76 | Extraction Report Timeline 7/23/19 | 146-147 | 6 |

| | |
|---|---|
| 1 | **P R O C E E D I N G S** |
| 2 | February 10, 2022 - 9:28 a.m. |
| 3 | *(Various participants wearing masks)* |
| 4 | *(Defendant and Jury present)* |
| 5 | *COURT SECURITY OFFICER:* All rise. |
| 6 | *(Judge enters)* |
| 7 | *THE COURT:* Mr. Hunn, will you please open court. |
| 8 | *COURT SECURITY OFFICER:* Hear ye, hear ye, hear ye, |
| 9 | the United States District Court for the Northern District of |
| 10 | Texas at Fort Worth is now in session, the Honorable Terry R. |
| 11 | Means presiding. |
| 12 | Let us pray. God bless these United States and this |
| 13 | Honorable Court. Amen. |
| 14 | *THE COURT:* Let's be seated. |
| 15 | Government may proceed. |
| 16 | *MS. BERAN:* Thank you, Your Honor. Government will |
| 17 | call Delaney Green. |
| 18 | *THE COURT:* Good morning. |
| 19 | *THE WITNESS:* Morning. |
| 20 | *THE COURT:* Please raise your right hand to be |
| 21 | sworn. |
| 22 | (Witness Delaney Green sworn) |
| 23 | *THE COURT:* Please be seated in the witness chair. |
| 24 | **DELANEY GREEN,** |
| 25 | having been first duly sworn, testified as follows: |

|     |                                                       |
| --- | ----------------------------------------------------- |
| 1   | **DIRECT EXAMINATION**                                |
| 2   | **BY MS. BERAN:**                                     |
| 3   | *Q.*      Good morning.                                |
| 4   | *A.*      Good morning.                                |
| 5   | *Q.*      I'm going to ask you to move that microphone kind of |
| 6   | right in front of you and project pretty loudly so that the |
| 7   | court reporter and the jury and everyone in the courtroom can |
| 8   | hear you, okay?                                        |
| 9   | *A.*      Okay.                                        |
| 10  | *Q.*      Can you please state your name for the record. |
| 11  | *A.*      Delaney Green.                               |
| 12  | *Q.*      And Delaney Green -- excuse me.  Ms. Green, are you |
| 13  | currently employed?                                    |
| 14  | *A.*      Yes.                                         |
| 15  | *Q.*      How are you employed?                        |
| 16  | *A.*      With the Southlake Police Department.        |
| 17  | *Q.*      And what do you do for the Southlake Police  |
| 18  | Department?                                            |
| 19  | *A.*      I am currently a corporal back in the criminal |
| 20  | investigations division.                               |
| 21  | *Q.*      And how long have you been a corporal there? |
| 22  | *A.*      Just over two-and-a-half years.              |
| 23  | *Q.*      What did you do before that?                 |
| 24  | *A.*      Before that, I was just a detective back in the |
| 25  | criminal investigations division.                      |

```
 1    Q.       But also for Southlake Police Department?

 2    A.       Yes.

 3    Q.       So, how long have you been with Southlake Police

 4    Department, total?

 5    A.       Almost eight-and-a-half years.

 6    Q.       What did you do before that?

 7    A.       Before the police department?

 8    Q.       Yes, ma'am.

 9    A.       I was an accountant.

10    Q.       Oh, that's quite a career change.

11    A.       Yes, quite the change.

12    Q.       So, you pay attention to detail?

13    A.       Yes.

14    Q.       So, it sounds like, if I'm doing that math correctly,

15    you were employed by the Southlake Police Department on

16    July 1st, 2019; is that correct?

17    A.       That's correct.

18    Q.       And were you a detective then or a corporal?

19    A.       I was a detective.

20    Q.       Okay.  What were some of your duties as a detective

21    at that time?

22    A.       As a detective, on a daily basis, we carried a

23    caseload from anywhere from 15 to 30 different types of cases,

24    ranging from fraud to assaults, domestic violence, child abuse

25    cases, and outside of the office, we would process crime
```

1    scenes, if patrol needed our assistance with anything.  Those
2    were some of the normal daily duties.
3    Q.      And how would you know to go process a crime scene?
4    A.      Patrol would call us and advise us of the scene that
5    they had and then we would proceed from there.
6    Q.      So, patrol would get there first?
7    A.      Yes.
8    Q.      Assess the situation?
9    A.      Correct, and then give us a call.
10   Q.      Okay.  On July 1st, 2019, do you recall -- if you
11   recall, were you called out to crime scene at the Southlake
12   Hilton hotel?
13   A.      Yes.
14   Q.      Do you recall what the call was regarding?
15   A.      It was in regard to a death investigation.
16   Q.      And did you know any information, other than it was a
17   death investigation, when you left to go to the scene?
18   A.      We had been made aware that it involved a Los Angeles
19   Angels baseball player.
20   Q.      And had anyone from -- I got an answer, but had
21   anyone from Southlake Police Department arrived before you got
22   there?
23   A.      Yes.  Patrol was already on scene.
24   Q.      And those were the individuals that said, hey, we
25   need a detective to come out?

1    A.      Correct.

2    Q.      What patrol officers were there, if you remember?

3    A.      I believe it was Sergeant Music and Officer Branham

4    that we made contact with initially.

5    Q.      And when you first got there, what occurred?

6    A.      When we first arrived on scene, normally what we do

7    is we make contact with the patrol officers or supervisors

8    that's on scene to get a better idea of what type of scene

9    we're stepping foot into, and, so, we made contact with

10   Sergeant Music, who briefed us on the situation.

11   Q.      Okay.

12           THE COURT:  I don't want to cramp your style, but

13   could you slow down just a little bit?

14           THE WITNESS:  Yes.

15           THE COURT:  Thank you.

16           MS. BERAN:  Thank you, Your Honor.

17   Q    (BY MS. BERAN)  So you made contact with the patrol

18   officers -- I'm sorry, could you repeat what you did then?

19   A.      Yes.  We made contact with Sergeant Music and Officer

20   Branham, who were outside of the hotel room, and they advised

21   us of the scene that was in the hotel room, prior to our

22   entry.

23   Q.      And do you know if they had done anything with the

24   scene or taken any steps once they -- when they had gotten

25   there?  Did they brief you on that?

1  A.      They had gone into the room initially and assessed

2  what they saw up-front, and then they came out of the room and

3  started the crime scene log.

4  Q.      What's a crime scene log?

5  A.      A crime scene log is a documentation that documents

6  every person that enters into that crime scene until the scene

7  is closed.

8  Q.      When you got there and it was a death investigation,

9  are there certain -- you kind of gave us a broad overview, but

10 are there certain steps you take when you approach a death

11 investigation?

12 A.      Yes.  We treat every crime scene involving a death as

13 a homicide until we can determine what may have occurred with

14 that specific incidence.

15 Q.      Okay.  And what steps were decided -- did you -- let

16 me ask you this:  Was anybody else from the Southlake Police

17 Department there with you, other than Officer Branham and I

18 believe you said Sergeant Music?

19 A.      Yes.  Sergeant Macheca, who also works in the

20 criminal investigations division, was with me as well.

21 Q.      And so, how were the roles divvied up at that point,

22 if at all?

23 A.      At that time, Sergeant Macheca and I made entry into

24 the hotel room, took a glance as to what the hotel room had,

25 and then we determined that the scene would need to be

1    processed and that any involved parties would need to be

2    interviewed.

3    Q.      So, did you process the scene?

4    A.      I did not.

5    Q.      Who processed the scene?

6    A.      That was Detective Roberson and Investigator Wood.

7    Q.      And was that something -- when did Detective Roberson

8    and Detective Wood get to the scene?

9    A.      They arrived shortly after Sergeant Macheca and I had

10   arrived.

11   Q.      So y'all came up with a plan and then, I guess,

12   basically divvied up the tasks?

13   A.      Yes.

14   Q.      So, what did you do while they were processing the

15   room?

16   A.      While the scene was being processed, myself and

17   Sergeant Macheca then proceeded to interview the Los Angeles

18   Angels baseball team and staff members.

19   Q.      And what were the logistics for that?

20   A.      We were able to make contact with a hotel employee,

21   who advised that they had a large banquet room available for

22   our use, so we determined to bring all the players and

23   employees into that banquet room where we interviewed the

24   employees and players one by one.

25   Q.      And did you tell somebody from the Angels

1   organization that you wanted to do the interviews?

2   A.      Yes.

3   Q.      And did they help communicate that to the players and

4   the staff?

5   A.      Yes.

6   Q.      Were those interviews voluntary?

7   A.      Yes.

8   Q.      Did you have certain questions that you asked all of

9   the players and the staff?

10  A.      Yes.

11  Q.      And what were the questions -- how did you formulate

12  the questions you wanted to ask?

13  A.      The questions that we asked were generic for each

14  player and employee, and it was along the lines of:  When was

15  the last time that you had seen or spoken to Tyler Skaggs?

16  Had you seen him consume any alcohol on the plane?  And did

17  you know of any drug use that you were aware of?

18  Q.      And why did you -- I guess it's a bad question, but

19  why did you decide on that line of questioning?  Was it based

20  on observations you had made?

21  A.      Yes.

22  Q.      And what sort of observations had you -- where were

23  the observations made?

24  A.      The observations were made in the hotel room.  When

25  Sergeant Macheca and I made entry, we had noticed that there

```
 1    may be some residual powder that indicated a possible drug
 2    overdose.
 3    Q.      And the interviews that you did, were they recorded?
 4    A.      Yes.
 5    Q.      How were they recorded?
 6    A.      They were audio recorded.
 7    Q.      And did you use a device to record them?
 8    A.      Yes.
 9            MS. BERAN:  Your Honor, may I approach the witness?
10            THE COURT:  You may.
11    Q   (BY MS. BERAN)  I am going to hand you what have been
12    marked as Government's Exhibit 108A through C and 109.  Your
13    Honor, the defense has agreed to admission of these exhibits.
14    I would like to move to admit them now.
15            THE COURT:  108 and 109, did you say?
16            MS. BERAN:  Yes, Your Honor, and 108 is actually for
17    recordkeeping purposes because 109 is extracted from it.
18            THE COURT:  All right.  Hearing no objection, 108
19    and 109 are admitted.
20    Q   (BY MS. BERAN)  If you could look at Government's Exhibit
21    108.  Do you see that?
22    A.      Yes.
23    Q.      Do you know what that is?
24    A.      Yes.
25    Q.      Could you just hold it up, so the jury could also see
```

1    what it is?

2    A.       (Witness complies).

3    Q.       Okay.  And what is that?

4    A.       This is the audio recording of the interviews of the

5    players and staff members.

6    Q.       And how do you know that that is what is on that

7    disk?

8    A.       I have listened to this entire disk and signed it by

9    my signature.

10   Q.       Can you point to your signature on there, if

11   possible?

12   A.       (Indicating).

13   Q.       And when you listened to that, did it contain a true

14   and accurate recording of the interviews that were conducted

15   that day?

16   A.       Yes.

17   Q.       Now, was Eric Kay, the defendant -- are you familiar

18   with the defendant, Eric Kay?

19   A.       Yes.

20   Q.       And did you interview --

21            MR. WYNN:  Your Honor, can I just clarify?  108 is

22   admitted for record only, correct?

23            THE COURT:  I think that's what it was offered for.

24            MR. WYNN:  Okay.  The way you said it was admitted,

25   I didn't know that it came in that way.

```
 1              THE COURT:  That's a fair observation, but we
 2    understand it's for record purposes only, correct?
 3              MS. BERAN:  Yes, Your Honor.  That's how I offered
 4    it.
 5              THE COURT:  Yes.
 6              MR. WYNN:  Okay.  I'm sorry, Judge.
 7              THE COURT:  That's fine.  Thank you.
 8              You may proceed.
 9              MS. BERAN:  Thank you, Your Honor.
10    Q    (BY MS. BERAN)  Was Eric Kay, the defendant, interviewed
11    on July 1st, 2019?
12    A.      Yes.
13    Q.      And can you look at Government's Exhibit 109.  Do you
14    recognize that?
15    A.      Yes.
16    Q.      What is that?
17    A.      This is the audio interview with Eric Kay.
18    Q.      And how do you know that?
19    A.      It has my signature on this CD as well, and I
20    listened to it prior to this.
21    Q.      And when you listened to it, was it the interview
22    that was extracted from Government's Exhibit 108?
23    A.      Yes.
24    Q.      And was it a true and accurate recording of the
25    interview and the information that Eric Kay provided to you on
```

1    July 1st, 2019?

2    A.      Yes.

3    Q.      Okay.  Can you hold that exhibit up and point to your

4    signature for the jury, please?

5    A.      (Witness complies).

6    Q.      Thank you.  Do you remember that interview?

7    A.      Yes.

8    Q.      At that point, after you interviewed Eric Kay, the

9    defendant, did you consider him to have any involvement in the

10   death of Tyler Skaggs?

11   A.      Not at the time.

12   Q.      Did you take any other steps in the investigation on

13   July 1st, 2019?

14   A.      After the interviews had been conducted, myself and

15   Sergeant Macheca went back up to Tyler Skaggs's hotel room to

16   make sure that the crime scene had been completely processed

17   before closing the scene and going back to Southlake PD

18   headquarters to book in the evidence.

19   Q.      And can you bring up Government's Exhibit 95, page 1.

20           MS. BERAN:  It's previously admitted, Your Honor.

21   Q    (BY MS. BERAN)  Sorry, can you go to page 2, please.  And

22   do you know what this is a photograph of?

23   A.      Yes.

24   Q.      What is this?

25   A.      This is the room number outside of Tyler Skaggs's

1    hotel room.

2    *Q.*    And this is the room you went to after the

3    interviews?

4    *A.*    Yes.

5    *Q.*    Okay.  Can we go to Government's Exhibit -- same

6    exhibit, 95, page 53, please.  Do you recognize this photo?

7    *A.*    Yes.

8    *Q.*    And what is this?

9    *A.*    This is the couch that was in Tyler's hotel room.

10   *Q.*    And was this picture taken before you went

11   up -- excuse me, before you went up after the interviews?

12   *A.*    Yes.

13   *Q.*    And can we look at the next page, page 54, please.

14   Okay.  Is this the same couch?

15   *A.*    Yes.

16   *Q.*    Is that spot on the couch, between what is to our

17   left and the right where the bags are, is that large enough

18   for an individual to sit on?

19   *A.*    Yes.

20   *Q.*    Is that space somewhere where somebody could sit down

21   for an extended period of time?

22   *A.*    Yes.

23   *Q.*    Did you make any observations or can you now make any

24   observations about that space on the couch?

25   *A.*    Someone may have sat on those cushions, just by the

1  slight indent between the two cushions on the far left side.

2  Q.      Do you -- I think you mentioned this before, but you

3  do process crime scenes in your role, or you did, as a

4  detective; is that correct?

5  A.      Yes.

6  Q.      How many crime scenes do you think you've processed?

7  A.      At least 50 plus.

8  Q.      Do you ever collect DNA when you process crime

9  scenes?

10  A.      Yes.

11  Q.      What sort of items do you collect DNA from?

12  A.      Typically, material objects where blood, saliva,

13  touch DNA, skin follicles could have been on.

14  Q.      Would you collect DNA from someplace where somebody

15  might have sat fully clothed?

16  A.      It depends, but not typically.

17  Q.      What if you didn't see any blood or other specimens

18  on it?

19  A.      Then we would not have collected it.

20  Q.      Okay.  Do you recall any -- do you recall any of the

21  evidence that was collected from the room 469?

22  A.      There were several items collected.  I was not part

23  of the evidence collection; however, I do know it involved his

24  clothing, his personal belongings, key cards, electronics, and

25  so on.

1    Q.      Did the investigation continue on July 2nd, 2019?

2    A.      Yes.

3    Q.      What investigative steps, if any, were taken or did

4    you take on that date?

5    A.      That morning, on July 2nd, the autopsy was scheduled

6    at the Tarrant County Medical Examiner's Office.

7    Q.      Did you attend the autopsy?

8    A.      Yes.

9    Q.      Is that common for you to go to an autopsy?

10   A.      Yes.

11   Q.      Were any other individuals at the Tarrant County

12   Medical Examiner's Office when you got there?

13   A.      Yes, myself and Sergeant Macheca, and Tyler Skaggs's

14   family.

15   Q.      And did you have any interaction with Tyler Skaggs's

16   family at that time?

17   A.      Yes.

18   Q.      What -- did you make any plans for later in the day?

19   A.      We did.  We offered our condolences and then set up a

20   time to meet at Southlake PD headquarters to go over the

21   follow-up investigative steps.

22   Q.      And do you recall whether or not Southlake Police

23   Department had collected any personal belongings of Mr. Skaggs

24   from room 469?

25   A.      Yes.

```
1    Q.      Did the family want to get those belongings back as

2    well?

3    A.      Yes, they did.

4    Q.      Did you observe the autopsy?

5    A.      Yes.

6    Q.      Do you recall anything out of the ordinary about it?

7    A.      I do not.

8    Q.      Was that -- I think you mentioned this, but was that

9    the first autopsy you had been to?

10   A.      No, it was not.

11   Q.      And then what occurred, if anything, after you

12   observed the autopsy?

13   A.      After the autopsy, myself and Sergeant Macheca

14   traveled back to Southlake PD headquarters and met with Tyler

15   Skaggs's family.

16   Q.      Okay.  And what, generally, was the purpose of that

17   meeting?

18   A.      The purpose of that meeting was to provide them the

19   next steps in the investigation and what we were going to

20   proceed with.

21   Q.      And I think I mentioned this earlier, but did you

22   have -- did Southlake Police Department have possession of any

23   of Tyler Skaggs's personal belongings?

24   A.      Yes.

25   Q.      And what did you do with those belongings?
```

1    A.       We released them to Tyler's family.

2    Q.       Did they have any questions about any items that you

3    didn't release to them?

4    A.       Yes.

5    Q.       What sort of questions did they have?

6    A.       They wanted to know about the electronics that had

7    been seized from the scene.

8    Q.       Okay.  At that point in time, what had you provided

9    to Mr. Skaggs's family?

10   A.       We had provided some of his clothing, other personal

11   belongings, his wedding ring, anything that we did not find of

12   evidence to this case.

13   Q.       And what did you -- what was the response in relation

14   to the devices that they wanted?

15   A.       They were not sure if they wanted to provide consent,

16   initially, for us to go through the electronics.

17   Q.       Okay.  Let me ask you this:  What did you say or how

18   did you respond when they asked for electronics?

19   A.       We explained to them the reason why it's important

20   for us to be able to have access to the electronics to

21   determine what may have happened.

22   Q.       Did they ask specifically for Tyler Skaggs's cell

23   phone?

24   A.       Yes.

25   Q.       And did you tell them what you just mentioned, that

1    you needed them for evidentiary purposes?

2    A.      Yes.

3    Q.      Okay.  And then, I think you mentioned that you asked

4    them for consent to look at the phone?

5    A.      Yes.

6    Q.      And what happened at that time?

7    A.      At that time, they did not provide consent.

8    Q.      Did anything else happen with the phone?

9    A.      Yes.

10   Q.      What occurred?

11   A.      At that time, we were not aware of what the passcode

12   may have been to Tyler's cell phone, so we asked the family if

13   they would be willing to try a couple of passcodes that they

14   thought may have worked, and they did and were able to figure

15   out what the passcode was.

16   Q.      Did they have possession of the phone?

17   A.      Yes.

18   Q.      Who had possession, if you recall?

19   A.      Initially, it was Tyler's mom, Debbie.

20   Q.      And who was able to unlock the phone with the

21   passcode initially?

22   A.      Debbie.

23   Q.      And then what happened?

24   A.      After that, the cell phone was handed to Tyler's

25   stepbrother, and his wife, Carli.

1    Q.       And were you alone in the room with the family?

2    A.       Myself and Sergeant Macheca.

3    Q.       So, there was another individual with you?

4    A.       Yes.

5    Q.       Where was sergeant -- where were you standing,

6    relative to where the family was at that time?

7    A.       I was more towards the front of the room.

8    Q.       And were they not towards the front of the room?

9    A.       They were sitting in the middle, facing the front of

10   the room, where I had been talking and explaining the

11   investigation steps to them.

12   Q.       Okay.  And where was Sergeant Macheca located in the

13   room?

14   A.       Sergeant Macheca was wherever the cell phone was at,

15   so he could view what was occurring.

16   Q.       So, he was standing right behind them and the cell

17   phone?

18   A.       Yes.

19   Q.       At that time I think you said -- did you receive

20   permission or consent to access the cell phone?

21   A.       Not yet.

22   Q.       Did you ever receive consent?

23   A.       Yes.

24   Q.       When did that happen?

25   A.       That happened shortly after the family left the PD

1    headquarters.

2    Q.        Okay.  And how did that occur?

3    A.        I was notified of the passcode and that they were

4    providing consent to go through the phone.

5              MS. BERAN:  Your Honor, may I approach the witness?

6              THE COURT:  You may.

7    Q    (BY MS. BERAN)  I'm showing the witness what's been

8    marked and previously admitted as Government's Exhibit 1.  Do

9    you recognize this?  You can hold it, if you need to.

10   A.        Yes.

11   Q.        What is that?

12   A.        This is Tyler's cell phone.

13   Q.        And is that the cell phone that we have been

14   discussing?

15   A.        Yes.

16   Q.        And you did get the passcode eventually from the

17   family?

18   A.        Yes.

19   Q.        And their consent?

20   A.        Yes.

21   Q.        Okay.  What did you do once you received that

22   information?

23   A.        After I received the passcode, I then traveled to

24   Grapevine forensics lab where we have our software to process

25   electronics.

```
 1   Q.      And did you process the phone?

 2   A.      Yes.

 3   Q.      What did you do?

 4   A.      I utilized a software called Cellebrite and did an

 5   image of what would have been on the cell phone.

 6   Q.      And what do you mean by "image"?

 7   A.      An image is -- the software is able to take a mirror

 8   image of applications, text messages, phone calls, et cetera,

 9   of what was on the phone for us to view it in this program.

10   Q.      And had you done that before?

11   A.      I had not.

12   Q.      So, how did you approach that?  When you did the

13   image, how did you approach the process?

14   A.      Very cautiously.

15   Q.      And why was that?

16   A.      I approached it cautiously, one, because I had not

17   been -- I had not done this before, and also because I was

18   aware this was a very high profile case and did not want to

19   alter any of the evidence.

20   Q.      And did you think that if somebody else needed to

21   look at it later, they would have the capability of doing so?

22   A.      Yes.

23   Q.      At this point, did you have any information related

24   to the case -- let me -- strike that.  Let me ask this.

25           At this point, had the autopsy report come back?
```

1    A.        It had not.

2    Q.        Did you have any information about what might have

3    caused Mr. Skaggs's death, other than your observations at the

4    scene?

5    A.        I did not.

6    Q.        Did you have any idea on any individuals who were

7    potentially involved in the death of Mr. Skaggs?

8    A.        No.

9    Q.        What did you do -- were you able to get the image of

10   the cell phone?

11   A.        Yes.

12   Q.        And did you look through it?

13   A.        At the time, no.

14   Q.        How much information was that?  How large was the

15   file?  Do you recall?

16   A.        I do not recall the exact size, but it was a lot of

17   data to sort through when you don't know exactly what you're

18   looking for.

19   Q.        And at some point in time, did you go back and look

20   at the phone later?

21   A.        Yes.

22   Q.        Why did you do that?

23   A.        We had received information the day prior that there

24   may be somebody of interest that we may want to look at in the

25   phone.

1    Q.      And who was that person?

2    A.      That was Eric Kay.

3    Q.      And who provided that information?

4    A.      We were relayed that information through the Tarrant

5    County District Attorney's Office, that an Adam Chodzko had

6    come forward and provided additional information.

7    Q.      And who -- did you ever -- who is Adam Chodzko?

8    A.      He was a staff member of the Los Angeles Angels

9    baseball team.

10   Q.      And once you were relayed that information, did you

11   speak with Mr. Chodzko?

12   A.      I did.

13   Q.      And so, once you got that information, or you spoke

14   with Mr. Chodzko, what, if any, additional investigative steps

15   did you take?

16   A.      I then proceeded to go back to our forensic lab and

17   manually go through a cell phone, very similar as if you were

18   to scroll through your own phone now, and take images of what

19   I believed may be important text messages or conversations

20   between Tyler and Eric Kay.

21   Q.      And was the information that Mr. Chodzko provided you

22   consistent with what you had learned at that point in the

23   investigation?

24   A.      It was not.

25   Q.      What did you learn that was inconsistent?

```
 1   A.        That Eric Kay had, in fact, spoken to and seen Tyler
 2   Skaggs the night of his death.
 3   Q.        And so that caused you to look for certain
 4   information in the cell phone?
 5   A.        Yes.
 6   Q.        And what were you looking for in particular?
 7   A.        Text messages and/or phone calls that may be of
 8   evidence.
 9   Q.        Were you looking for any people in particular in the
10   phone calls and the text messages?
11   A.        Yes, specifically Eric Kay.
12   Q.        Did you find any communications?
13   A.        Yes.
14   Q.        I would like to bring up what's --
15            MS. BERAN:  I would like to offer for admission at
16   this time Government's Exhibit 6, to which the defense has
17   previously agreed, Your Honor.
18            THE COURT:  Government's 6 is admitted.
19            MS. BERAN:  May I publish it to the jury?
20            THE COURT:  You may.
21   Q   (BY MS. BERAN)  I want to look at -- there's a couple of
22   pages here, so we'll just look at each one and then I'll ask
23   you some questions.  Do you recognize this?
24   A.        Yes.
25   Q.        And I think there are a couple of pages to this
```

1    exhibit.

2         *MS. BERAN:*  Can we just quickly go through each one,

3    so she can see them.

4    *Q    (BY MS. BERAN)*  And going back to page 1, please.  What

5    is this exhibit?

6    *A.*       This is the contact information in Tyler's phone for

7    Eric Kay.

8    *Q.*       One moment, please.  And the totality of these, these

9    five pages, what is this exhibit in its whole?

10   *A.*       This is Eric Kay's contact information and

11   communication between him and Tyler.

12   *Q.*       Okay.  And did you take those photos?

13   *A.*       Yes.

14   *Q.*       Are they true and accurate copies of what -- the

15   information you saw in Tyler Skaggs's phone?

16   *A.*       Yes.

17   *Q.*       Okay.  Now, looking at page 1, what is this page?

18   *A.*       This is Eric Kay's contact mobile phone number.

19   *Q.*       And how do you know that that's Eric Kay's contact

20   mobile phone number?

21   *A.*       It was later determined that that was, in fact, his

22   subscriber information.

23   *Q.*       And then did the initials help inform you in the

24   short term, when you were looking for communications?

25   *A.*       Yes.

```
 1   Q.      Okay.  If we could go to page 3, please, and

 2   scrolling on the bottom at the Sunday, June 30th.  The bottom,

 3   I want to look at the messaging beginning at 11:47.

 4           What does this say?

 5   A.      The first text at 11:47 from Tyler to Eric says 469.

 6   Q.      And what does 469 mean to you?

 7   A.      That was Tyler's hotel room.

 8   Q.      And we've talked about this previously.  You

 9   mentioned that you interviewed Eric Kay on July 1st, 2019,

10   correct?

11   A.      Yes.

12   Q.      Okay.  So, let's look at the rest of this.  What does

13   it say below 469?

14   A.      Tyler sends another message that says, come by.

15   Q.      And then is there a response?

16   A.      Yes.  At 11:50, Eric Kay responds K.

17   Q.      Is this message consistent with what Eric Kay told

18   you on July 1st, 2019?

19   A.      It is not.

20   Q.      And were there any subsequent text messages between

21   Tyler Skaggs and Eric Kay?

22   A.      No.

23   Q.      Nothing after that that says, I'm not coming?

24   A.      No.

25   Q.      Nothing from Tyler Skaggs saying, where are you?
```

```
 1   A.       No.
 2   Q.       And then looking -- going up just a little bit
 3   earlier in the day, what are those text messages?
 4   A.       On June 30th, earlier that afternoon, Eric Kay
 5   messages Tyler at 2:35 and asks, how many?
 6            Tyler responds at 2:36 p.m. and says, just a few,
 7   like five.
 8            Eric Kay responds at 2:36 and states, word.
 9            Tyler responds at 2:36 and says, don't need many.
10   Q.       Thank you.  And again, this is -- strike that, Your
11   Honor.  May I approach --
12            Well, those messages that were sent earlier in the
13   day, do you have any indication or do you have any knowledge
14   as to whether or not Tyler Skaggs and Eric Kay were in Dallas
15   or in California?
16   A.       I believe they were in California.
17   Q.       Okay.  Thank you.
18            MS. BERAN:  May I approach, Your Honor?
19            THE COURT:  You may.
20            MS. BERAN:  Thank you.
21   Q   (BY MS. BERAN)  I'm going to show you a tile or a magnet.
22   Is that consistent with the text message from Tyler Skaggs to
23   Eric Kay sent on June 30th that you just transcribed or read
24   from 11:47 p.m.?
25   A.       Yes.
```

1          *MS. BERAN:*  May I place it on the board, Your Honor?

2          *THE COURT:*  You may.

3     *Q*    *(BY MS. BERAN)*  So, we've talked about the cell phone.

4     Do you recall any of the other evidence or items of evidence

5     that were collected?

6     *A.*     Yes.

7     *Q.*     Do you -- can you -- what do you recall being

8     collected from the room?

9     *A.*     One of the items that had been collected were the

10    hotel key cards.

11    *Q.*     And what was -- what, if anything, was done to try to

12    get information about who those key cards belonged to?

13    *A.*     Those key cards were sent to the Tarrant County

14    Medical Examiner's Office for processing to determine if there

15    were any fingerprints on them, and they came back of no value

16    and we could not determine who the fingerprints, if any, were

17    on the cards.

18    *Q.*     Was there any evidence -- other evidence collected?

19    *A.*     Yes.

20    *Q.*     Do you recall any of the other evidence?

21    *A.*     There were pills, specifically, five pink pills and

22    one blue pill.

23    *Q.*     And was anything done with those pills?

24    *A.*     Yes.  After the autopsy had been conducted, the

25    medical examiner's office reached out to our PD and requested

1    that the pills be picked up by one of their investigators.

2    Q.      So, you sent off the hotel room key cards, but the

3    medical examiner's office requested the pills?

4    A.      Yes.

5    Q.      And were they handed off?

6    A.      Yes.

7    Q.      Do you recall whether any powdery -- there was any

8    residue in the room that was collected?

9    A.      Yes.

10   Q.      Was that tested or sent off for testing at any point?

11   A.      Yes, it was.

12   Q.      How many death investigations or unexplained death

13   cases have you worked while at the Southlake Police

14   Department?

15   A.      Several.

16   Q.      Have any of them involved overdose drug deaths?

17   A.      Yes.

18   Q.      Do you have a ballpark number of how many?

19   A.      At least five.

20   Q.      Have you been able to solve any of them and determine

21   where the drugs came from?

22   A.      Yes, we were, and we did that primarily through their

23   cell phone or electronics.

24            MS. BERAN:  Nothing further, Your Honor.

25            THE COURT:  Cross-examination?

1          *MR. WYNN:*  Yes, Your Honor.

2                        **CROSS-EXAMINATION**

3    **BY MR. WYNN:**

4    *Q.*      Do I call you Detective or Ms. Green at this point?

5    *A.*      Whichever you prefer.

6    *Q.*      Okay.  Which one do you prefer?

7    *A.*      Ms. Green is fine.

8    *Q.*      All right, Ms. Green.  I missed it.  What do you do

9    now?

10   *A.*      I'm now a corporal back in the criminal

11   investigations division.

12   *Q.*      Okay.  So I'm going to call you Corporal Green then.

13   I apologize.

14   *A.*      That's perfectly fine.

15   *Q.*      Okay.  Corporal Green, there were two iPads found in

16   Tyler Skaggs' room, correct?

17   *A.*      Yes.

18   *Q.*      One in the backpack, right?

19   *A.*      Yes.

20   *Q.*      And one on the desk?

21   *A.*      Yes.

22   *Q.*      Were both of those iPads taken into evidence and

23   processed or was just one of them?

24   *A.*      If I recall correctly, it was just one that may have

25   been processed.

1    Q.      Okay.  And the other one would have been given back

2    to the family pretty quickly, along with the backpack and the

3    other personal items?

4    A.      Yes, because I believe that iPad belonged to the Los

5    Angeles Angels baseball team.

6    Q.      Okay.  So -- and when I say pretty quickly, the

7    family, when they came to Southlake PD the day of the autopsy,

8    they were able to get the backpack and then the other things

9    that were in the backpack; is that fair to say?

10   A.      I believe so.

11   Q.      So, I think there were some AirPods, ear bud speaker

12   things; is that right?

13   A.      I would have to go back and double-check the evidence

14   as to what was released that day.

15   Q.      That was an incredibly technical term, by the way,

16   AirPod ear bud speaker thing.

17          (Laughter)

18   Q    (BY MR. WYNN)  How many times did you meet with Carli

19   Skaggs over the course of this investigation?

20   A.      Probably a couple of times in person.

21   Q.      And I noticed you called her Carli when you were

22   talking to her earlier, correct?

23   A.      Yes.

24   Q.      And you referred to, quote, Tyler's cell phone,

25   right?

```
 1   A.       Correct.

 2   Q.       This was a tragedy.  You felt terrible for Carli,

 3   didn't you?

 4   A.       Yes.

 5   Q.       You mentioned that when the family came to the

 6   Southlake PD and were given the chance to unlock the phone,

 7   that Debbie Hetman was the first one to touch the phone,

 8   right?

 9   A.       Yes.

10   Q.       And she actually got the passcode in and got it

11   unlocked, right?

12   A.       Yes.

13   Q.       And then, after she got the passcode in and got it

14   unlocked, she was allowed to hand that phone to Carli Skaggs,

15   right?

16   A.       Yes.

17   Q.       And then Garet -- well, I should back up.  You said

18   that Tyler's stepbrother was allowed to hold it, right?

19   A.       Yes.

20   Q.       That stepbrother, his name is Garet Ramos; is that

21   correct?

22   A.       Correct.

23          MR. WYNN:  Your Honor, may I approach the piece of

24   paper up there?

25          THE COURT:  The easel?
```

```
 1              MR. WYNN:  Easel, yes, sir.  That was the word I was

 2   looking for.  I apologize, Judge.

 3              THE COURT:  That's also a technical term.

 4              MR. WYNN:  For me, this morning, apparently it is.

 5              (Laughter)

 6   Q   (BY MR. WYNN)  What I want to do is I want to kind of

 7   make a brief summary timeline that involves Government's

 8   Exhibit 1, Tyler's phone, okay.  Okay.  And I don't need an

 9   exact time, okay.

10              Ballpark, what time did that phone come into the

11   possession of the Southlake Police Department on July 1st,

12   3:00?

13   A.       Approximately 15:30.  I believe we met with

14   them -- I'm sorry, yes, about 3:30.

15   Q.       On July 1st?

16   A.       Yes, July -- I'm so sorry.  Can you reask that

17   question?

18   Q.       The first time Southlake PD got that phone into their

19   possession from the hotel room in Southlake.

20   A.       Oh, yes, that would have been July 1st.  I'm unsure

21   of the approximate time.

22   Q.       Sometime between 2:00 and 5:00, fair estimate?

23   A.       Correct.

24   Q.       All right.  I'm going to write SPD takes phone.  Is

25   that fair to say, what y'all did with it?  And by that, I'm
```

1    not trying to minimize it.  It was obviously properly bagged,

2    labeled, all that stuff.

3    A.        Yes.

4              THE COURT:  I think it might be helpful if the

5    witness were able to see what you're writing and I doubt she

6    can.

7              MR. WYNN:  Thank you, Judge.

8    Q    (BY MR. WYNN)  And over here, I'm going to put a little

9    squiggly for approximately, and I'm going to write 2:00 to

10   5:00 p.m. CST?

11             THE COURT:  I wonder if there's an appropriate

12   compromise?  We can turn it a little bit back the other way,

13   so the jury can see, but she still can see.

14             MR. WYNN:  What if I put it here for the time being,

15   Judge?

16             THE COURT:  That's fine.  That's good.

17   Q    (BY MR. WYNN)  Okay.  So, is that fair?

18   A.        Yes.

19   Q.        Okay.  What day and time, approximately -- and if I

20   need to refresh your memory, I've got some reports that I can

21   show to you that we're not going to read -- but approximately

22   what day and time was the family given access to the phone at

23   the Southlake PD?

24   A.        It would have been July 2nd.

25   Q.        All right.  Let me write that down.  Do you know the

1    time?

2    A.      Between 3:00 and 4:00 p.m.

3    Q.      That's good enough.  So, I'm going to write another

4    squiggly for approximately, okay.  Here, I'm going to write

5    "family," and can we agree that by "family," we mean Debbie

6    Hetman, Carli Skaggs, and Garet Ramos?  Those are the three

7    people that actually touched the phone, to your knowledge; is

8    that fair to say?

9    A.      Yes.

10   Q.      Okay.  When --

11           THE COURT:  For the record, can you recite what you

12   just wrote?

13           MR. WYNN:  Your Honor, I apologize.  I just wrote

14   down:  Tyler Skaggs' family allowed to touch phone July 2nd,

15   approximately 3:00 to 4:00 p.m. CST.

16   Q    (BY MR. WYNN)  Is that accurate?

17   A.      Yes.

18   Q.      Okay.  I assume that after that, the phone was taken

19   back to the evidence room; is that right?

20   A.      Yes.

21   Q.      Okay.  And so, they were not allowed to walk out of

22   there with the phone, even though they had not consented to it

23   being searched yet?

24   A.      Correct.

25   Q.      Okay.  The iPad, I assume, was also back in the

1    evidence room at that point, the one that was later processed?

2    A.    Yes.

3    Q.    Okay.  What day -- let me ask you this.  To your

4    knowledge, the next time somebody touched that phone was when

5    you got it and took it to hook it up to the Cellebrite

6    machine, right?

7    A.    Correct.

8    Q.    What day was that?

9    A.    I believe it was July 17th.

10    Q.    Okay.  So, I'm writing down 7-17-19, and I'm going to

11    write Corporal Green takes phone for Cellebrite.

12          Is that fair?

13    A.    Correct.

14    Q.    All right.  So, the way I've written that, 7-17-19,

15    Corporal Green takes phone for Cellebrite, that's accurate,

16    right?

17    A.    Yes.

18    Q.    Now, did you have to actually go to the Grapevine PD

19    to use their forensic lab to do that?

20    A.    Correct.

21    Q.    Okay.  And the reason is the -- when you

22    process -- forensically process a cell phone, you have to take

23    the phone -- or you either have to have the equipment or go

24    somewhere where they have the equipment, and the way it works

25    is you plug the phone into a machine, and it's got a little

1    box, and then on the other side of the box is a computer,
2    right?
3    A.        Yes.
4    Q.        And what the box does, basically, is it pulls a
5    forensic copy of that phone's hard drive bit by bit and puts
6    it into a -- what we call a forensic file, right?
7    A.        Correct.
8    Q.        And that forensic data file, you can then use
9    software from this manufacturer, that makes this Cellebrite
10   system, to access all of the data on the phone, correct?
11   A.        Correct.
12   Q.        And the way you access the data is not the way you
13   would on the face of the phone.  It pulls it down into,
14   basically, spreadsheets, correct?
15   A.        Yes.  The software program puts it into its own
16   reading of how it's reading the phone.
17   Q.        And so you can tell -- you can -- once you have the
18   data file, you can get the Cellebrite reader software and say,
19   I want to see all text messages sent on a certain date at a
20   certain time to another date and another time, right?
21   A.        Correct.
22   Q.        Or you can say, I want to see all web traffic, all
23   web searches or things like that, and it will tell you what
24   those are, right?
25   A.        Correct.

1    *Q.*     And you can also tell it to show me the data from

2    certain apps like Instagram, right?

3    *A.*     Yes.  There are limitations to that.

4    *Q.*     There are limitations, but if Cellebrite is capable

5    of obtaining that data, it pulls it into that data file, and

6    then you can query the data file for different things, right?

7    *A.*     Yes.

8    *Q.*     One of the things you can get out of it is, for

9    example, the contacts list, right?

10   *A.*     Yes.

11   *Q.*     And so, you can see every contact that's in there,

12   right?

13   *A.*     Yes.

14   *Q.*     You can also pull things, sometimes, pull things that

15   have been deleted, correct?

16   *A.*     Yes.

17   *Q.*     Now, how long -- this process, when you started this,

18   how long does it take or -- not does it -- did it take for the

19   phone to download through the little box into the computer?

20   *A.*     I would have to review the report on how long it

21   took.

22   *Q.*     Okay.  Now, I'm not going to ask you to read this out

23   loud, but I'm going to show you a document.  First off, I'm

24   going to ask:  Do you recognize, just from the top of it, what

25   that document is?  Don't say it out loud.

1    A.      Yes.

2    Q.      And I guess I'll show you the front page first.

3    A.      Yes.

4    Q.      Okay.  Would reviewing this document help refresh

5    your memory as to how long it took?

6    A.      Yes.

7    Q.      All right.  I would suggest that if you start at the

8    top paragraph on page 2, that would probably be a pretty good

9    place to start.  Please just read over it.  Don't read it out

10   loud, okay.

11          Okay.  Having reviewed that document, can you tell me

12   how long it took for the program to download the phone?

13   A.      I went back to Grapevine forensics lab on July 22nd

14   when the analysis and the download was completed.

15   Q.      Okay.

16   A.      This can take anywhere from several hours to several

17   days determining (sic) on the data amount.

18   Q.      And in all fairness, I mean, you can't sit there 24

19   hours a day and stare at the thing until it's finished, can

20   you?

21   A.      No.

22   Q.      So, if we write down 7-22-19, we'll say, either that

23   day or some day before, the Cellebrite extraction was

24   complete, right?

25   A.      Correct.

```
 1   Q.      So, I've written 7-22-19, Cellebrite extraction

 2   complete.  Is that accurate?

 3   A.      Yes.

 4   Q.      Okay.  Now, those pictures that you took that were in

 5   Government's Exhibit 6, what day were those pictures taken?

 6   A.      If I recall, it was July 23rd.

 7   Q.      Okay.  All right.  So I'm going to write down -- all

 8   right.  I'm going to write GX-6 photos, okay.

 9           Okay.  So, those were photos taken by you, correct?

10   A.      Yes.

11   Q.      So, at that point, the forensic dump or the first

12   forensic dump has already been done on this phone, right?

13   A.      Correct.

14   Q.      And when you do the forensic dump on the phone, you

15   are capturing that phone exactly as -- theoretically, exactly

16   as it exists at the moment you do the dump, right?

17   A.      Correct.

18   Q.      And if there are any alterations to that phone after

19   the dump -- like things added or deleted -- then if the phone

20   is subsequently dumped, it will -- or I shouldn't say dumped.

21   If the phone is subsequently forensically processed and

22   another forensic extraction is taken, it will catch any

23   additions or deletions that were made after the first one,

24   right?

25   A.      Correct.
```

1    Q.       Okay.  Now, to take these photos, you had to actually
2    unlock the phone, right?
3    A.       Correct.
4    Q.       And get to -- click whatever you had to click on the
5    face of the phone to get to the correct text messages, right?
6    A.       Yes.
7    Q.       Or the contact information?
8    A.       Yes.
9    Q.       And once you did that, then you took a picture of it,
10   right?
11   A.       Yes.
12   Q.       Okay.  So, you, yourself, had to unlock that phone on
13   July 23rd and -- to take those photos that are in Government's
14   Exhibit 6?
15   A.       Yes.
16          THE COURT:  Excuse me.  What device did you use to
17   take those photos?
18          THE WITNESS:  It was a Cellebrite camera that the
19   phone can sit below, as the camera sits above it and will take
20   above-photos of it, and then processes it into the computer.
21          THE COURT:  Thank you.
22   Q    (BY MR. WYNN)  Okay.  And we can see -- in one or two of
23   the photos, I think we can see a thumbnail.  Is that you?
24   A.       Correct.
25   Q.       Okay.  After you finished taking those photos on

```
 1    July 23rd, I assume -- well, let me just ask.
 2            Did you leave the phone at Grapevine or did you take
 3    it back to Southlake to go into the evidence room?
 4    A.      I took it back to Southlake and booked it into
 5    property.
 6    Q.      Okay.  Did you ever, yourself, pull that phone back
 7    out of property and do anything with it?
 8    A.      I did not.
 9    Q.      Again?
10    A.      I did not.
11    Q.      Okay.  So, anything that happened to that phone after
12    July 23rd, some other technician or expert or professional
13    would have had to do?
14    A.      Correct.
15    Q.      Okay.
16            MR. WYNN:  Let me set that back down here, Judge.
17    Q   (BY MR. WYNN)  All right.  Let's talk about crime scene
18    photos.
19            Could I please see Government's Exhibit 95, page 54.
20            THE COURT:  I presume this is an admitted exhibit?
21            MR. WYNN:  It is, Your Honor.
22            THE COURT:  All right.  And you want it displayed
23    for the jury, right?
24            MR. WYNN:  Yes, Your Honor, please.
25            THE COURT:  All right.  Go ahead.
```

1    Q    (BY MR. WYNN)   Okay.  So, it's your testimony that it

2    looks like someone sat on the left side of that couch, kind of

3    where I'm pointing the arrow?

4    A.      Someone may have sat there.

5    Q.      May have sat.  May not have sat also, right?

6    A.      Correct.

7    Q.      All right.  You would agree with me that if we look

8    right here between these two cushions where the bag is, kind

9    of -- the bag's across the middle of the seam between them,

10   right?

11   A.      Yes.

12   Q.      But one of them -- the one in the middle, I guess,

13   looks like it's a little lower than the one on the right, at

14   least from that angle of the photo, would you agree with that?

15   A.      Yes.

16   Q.      Do you see any wrinkles in the cushions on that

17   couch?

18   A.      No.

19   Q.      Could we see page 135, please.  Now, that picture,

20   obviously it's made after they had originally documented the

21   room and then started to unload the contents of the bag,

22   right?

23   A.      Correct.

24   Q.      Looks like they shoved the cushions in there sideways

25   that time, right?

```
 1    A.      Possibly.
 2    Q.      There's definitely some wrinkles in those cushions
 3    though, right?
 4    A.      Yes.
 5    Q.      All three of them?
 6    A.      Yes.
 7    Q.      And you would agree with me, with your experience
 8    doing both crime scene and, otherwise, as a death
 9    investigator, there was nothing in that room that made it
10    immediately obvious that anyone had spent much time in the
11    room, correct?
12    A.      Correct.
13    Q.      And there was nothing in the trash cans, other than
14    the two tubes of Pedialyte, right?
15    A.      Correct.
16    Q.      Nothing in the bathroom that looked like anyone had
17    used the toilet, right?
18    A.      Not that I recall.
19    Q.      Didn't look like anybody had been sitting on the bed
20    with Mr. Skaggs' body, right?
21    A.      No.
22    Q.      Didn't look like anybody had tried to drink out of
23    those two bottles of Pedialyte or water that were there,
24    right?
25    A.      I don't believe so.
```

```
 1    Q.      No empty beer cans?

 2    A.      No.

 3    Q.      Nobody had disturbed the coffee nook across from the

 4    closet, right?

 5    A.      Not that I recall.

 6            MR. WYNN:  Your Honor, could I have just a few

 7    seconds to confer with counsel?

 8            THE COURT:  Yes, sir, sure.

 9            (Conferring)

10    Q   (BY MR. WYNN)  So, prior to this case, you had already

11    investigated five other overdose deaths, correct?

12    A.      Approximately.

13    Q.      And you said most of those were ultimately solved by

14    looking at the cell phone data, right?

15    A.      The ones that we were able to solve, yes.

16    Q.      The ones that you were?

17    A.      Yes.

18    Q.      But you still let that family unlock and handle that

19    cell phone while it was in Southlake Police Department

20    custody?

21    A.      Yes.

22            MR. WYNN:  Pass the witness.

23            THE COURT:  Redirect?

24            MS. BERAN:  No redirect for this witness, Your

25    Honor.
```

```
 1              THE COURT:  May this witness be released?
 2              MR. WYNN:  No objections, Your Honor.
 3              MS. BERAN:  We would ask that she not be excused
 4    because we might need her for rebuttal.
 5              THE COURT:  Okay.  Can she go on about her business
 6    and you can call her back?
 7              MS. BERAN:  Absolutely, Your Honor.
 8              THE COURT:  You're free to go, but you may be
 9    subject to recall by the government.
10              Please call your next witness.
11              MS. BERAN:  The government would call Stefan Hare,
12    Your Honor.
13              THE COURT:  It's a maze.  We get an aptitude about
14    your intelligence by figuring out how to get here.
15              (Laughter)
16              THE COURT:  Please raise your right hand and be
17    sworn.
18              (Witness Stefan Hare sworn)
19              THE COURT:  Please be seated in the witness chair.
20                            STEFAN HARE,
21    having been first duly sworn, testified as follows:
22                          DIRECT EXAMINATION
23    BY MS. BERAN:
24    Q.     Good morning.
25    A.     Good morning.
```

Exhibit 2

Altered Chain of Custody form
Listing Det. Weber

CHAIN OF CUSTODY

INDICATE 'V' FOR VIEWING, 'REL' FOR RELEASED, 'RET' FOR RETURNED IN LAST BOX

| NAME | DATE | AGENCY | EVIDENCE TECH | ITEMS | V.REL.,RET. |
|---|---|---|---|---|---|
| (PRINT) *illegible* | 7/17/19 | GRAPEVINE PD | S.SPENCER #1843 | IPHONE ; I PAD #6 : 7 | RELEASED |
| (SIGN) *illegible* | TIME | | | | |

| NAME | DATE | AGENCY | EVIDENCE TECH | ITEMS | V.,REL.,RET. |
|---|---|---|---|---|---|
| (PRINT) | | | | | |
| (SIGN) | TIME | | | | |

| NAME | DATE | AGENCY | EVIDENCE TECH | ITEMS | V.,REL.,RET. |
|---|---|---|---|---|---|
| (PRINT) | | | | | |
| (SIGN) | TIME | | | | |

| NAME | DATE | AGENCY | EVIDENCE TECH | ITEMS | V.,REL.,RET. |
|---|---|---|---|---|---|
| (PRINT) | TIME | | | | |
| (SIGN) | | | | | |

| NAME | DATE | AGENCY | EVIDENCE TECH | ITEMS | V.,REL.,RET. |
|---|---|---|---|---|---|
| (PRINT) | | | | | |
| (SIGN) | TIME | | | | |

| NAME | DATE | AGENCY | EVIDENCE TECH | ITEMS | V.,REL.,RET. |
|---|---|---|---|---|---|
| (PRINT) | | | | | |
| (SIGN) | TIME | | | | |

CASE # 19SPD53735

Exhibit 3

Grapevine PD Report 1900038391

# GRAPEVINE POLICE DEPARTMENT

Page 1

**Call For Service Report**

## Call For Service

| | | | | |
|---|---|---|---|---|
| Cad Number | 1900048968 | Date / Time Call Received 07/17/19 11:42:19 | Call Received by | SMITH, T #9524 |
| | | Call Entered by   SMITH, T #9524 | Call Source | Field generated call |
| Call Type | ASSIST OTHER AGENCY | Location Name | Location Type | |
| Location(St#, St,Int. St,Apt,City,Zip, 600 | | State St | | SOUTHLAKE |

## Reportee

| | |
|---|---|
| Reportee (First,Middle,Last) | |
| Reportee Street Number | Phone |

## Units

| | | | |
|---|---|---|---|
| Unit Number 522 | Officer Name WEBER, R #5250 | Dispatched by SMITH, T #9524 | D/T Dispatched 07/17/19 11:42:36 |
| Enroute by SMITH, T #9524 | D/T Enroute 07/17/19 11:42:36 | Arrived by SMITH, T #9524 | D/T Arrived 07/17/19 11:42:36 |
| Cleared by SMITH, T #9524 | D/T Cleared 07/17/19 11:42:56 | Disposition 1 R REPORT | Disposition 2 |
| Disposition 3 | | | |

## Police

| | | | |
|---|---|---|---|
| Unit Number 522 | Police Number 1900038391 | D/T Arrested | Prisoner Transport |
| End Transport | Mileage In | Mileage Out | |

## Occupant/Suspect

| | | | | |
|---|---|---|---|---|
| ID | Type | Occupant Name | | D.O.B. |
| Race | Sex | Age | Weight | Height ` "   Hair Color |
| Skin Tone | | Clothing | | |

## Vehicle

| | | | |
|---|---|---|---|
| LICENSE | MODEL | STATUS | Wrecker Company |
| STATE | YEAR | VEHICLE TYPE | DT Wrecker Arrived |
| Lic. Exp. Date | MAKE | BODY STYLE | DT Wrecker Called |
| VIN | COLOR | VALUE | UNIT # |

## Call Remarks

388

## *Grapevine Police Department*
*1007 Ira E Woods Ave, Grapevine, TX 76051*

| ORI: TX2201300 | Incident No: 1900038391 | Date: 09/12/2024 |
|---|---|---|

### Incident

| CAD NO. | Other No.<br>N/A | Date Occurred:<br>2019-07-17 11:42 |
|---|---|---|
| Incident Type:<br>Non-Criminal | Incident Status:<br>Open | Report Type:<br>Information Only-No Criminal Offense |
| Report By:<br>WEBER, R #5250 (#) | Report Date:<br>09/10/2019 | |
| Approved By:<br>YARBROUGH, D #6952 (#) | Approved Date:<br>09/10/2019 | |
| Audited by:<br>SMITH,H#12543 | Audited Date:<br>09/11/2019 | |
| Clear Date: | Exc Clear: | Family Violence:<br>No |
| Investigator:<br>WEBER, R #5250 | Inv Status:<br>Closed | |
| Description:<br>ASSIST OTHER AGENCY | | |

### Incident OFFENSE Report

| Offense No: 1 | | | Offense Recording Date: 09/11/2019 |
|---|---|---|---|
| Offense Begin Date:<br>07/17/2019 | Offense End Date: | Entry Method: | Attempt/Complete:<br>Completed |
| Drug Seized: | Gang Related: | Hi-Speed Pursuit: | Weapons Used:<br>N/A |
| Offense Code: | Offense:<br>ASSIST OTHER AGENCY | | No. of Premises: |
| Bias Motivation: | Agg Assit/Homic. Circumst.: | | Supplement: |
| Offense Address: | | | |
| Remarks: | | | |

### Other Involved Organization(s)

| Name: | Phone: | Address: |
|---|---|---|
| Southlake Police Department | Work Phone: (817) 748-8149 | Mailing: |

### Incident PROPERTY Report

389

## Grapevine Police Department
1007 Ira E Woods Ave, Grapevine, TX 76051

| | |
|---|---|
| **Item Name:** IPHONE DOWNLOAD | **Status:** Evidence |
| **Recorded:** 09/10/2019 | **Item Type:** Other |
| **Jurisdiction:** Yes | **Model:** |
| **Make/Brand:** | **Color:** |
| **Size/Year:** | **Structure:** |
| **Serial No/VIN:** | **Units:** |
| **Pieces/Quantity:** | **Supplement:** Primary |
| **Total Value:** | |
| **Involved:** | |
| **Description:** ON FORENSIC SERVER | |

| | |
|---|---|
| **Item Name:** IPAD DOWNLOAD | **Status:** Evidence |
| **Recorded:** 09/10/2019 | **Item Type:** Other |
| **Jurisdiction:** Yes | **Model:** |
| **Make/Brand:** | **Color:** |
| **Size/Year:** | **Structure:** |
| **Serial No/VIN:** | **Units:** |
| **Pieces/Quantity:** | **Supplement:** Primary |
| **Total Value:** | |
| **Involved:** | |
| **Description:** ON FORENSIC SERVER | |

**390**

# Grapevine Police Department
## Narrative

Date of report: 2019-09-10                                    Case Number: 1900038391

**WEDNESDAY JULY 17, 2019 APPROXIMATELY 1100 HOURS**

I took possession of an Apple iPhone and an Apple iPad from Det. Green of the Southlake Police Department. The devices were in airplane mode and the passcode was 082222. The downloads were performed with the consent of the owner.

Using the Cellebrite UFED Physical Analyzer I did two Advanced Logical downloads of the iPhone, Method 1 and Method2. The downloads completed successfully and after parsing the data, I generated a UFED Reader report for Det. Green to review.

**THURSDAY JULY 18, 2019**

Using the Cellebrite UFED Physical Analyzer I did two Advanced Logical extractions of the iPad, Method 1 and Method 2. The downloads completed successfully and after parsing the data, I generated a UFED Reader report for Det. Green to review.

**MONDAY JULY 22, 2019**

The iPhone and iPad were returned to Det. Green

Officer: WEBER, R                                              ID#: 5250
Approving Supervisor: YARBROUGH, D                            ID#: 6952

# Grapevine Police Department
## Supplement

Date of report: 2019-09-10                    Case Number: 1900038391-1

MONDAY APRIL 5, 2021

Moved the electronic evidence associated with this investigation from the Grapevine Server to the Southlake Server.

Officer: WEBER, R                                    ID#: 5250
Approving Supervisor: SAVAGE, R                      ID#: 6820

Exhibit 4

TPIA Request #2 to the Southlake PD with AG's Ruling
June 26, 2024

| From: | E. Ladsous , Delta 7 Group |
|---|---|
| To: | dpsrecords@ci.southlake.tx.us |
| Cc: | Jessica Hernandez Diotalevi |
| Bcc: | sladsous@tocounsel.com |
| Subject: | FOIA Request for Digital Forensic Records and Interview Reports – Tyler Skaggs Case - Southlake Police Department - SPD-19SP053735 |
| Date: | Wednesday, June 26, 2024 11:39:00 AM |
| Attachments: | image001.png |
| | image002.png |
| | image003.png |
| | Angels Baseball - Letter of Representation - Southlake PD.pdf |

To: Southlake Police Department

ATTN.: Records Division

Subject: FOIA Request for Digital Forensics Records – Tyler Skaggs Case

Dear Sir/Madam,

I am writing to formally request access to <u>all digital forensics records and analyses</u> related to the case of Tyler Wayne Skaggs (DOB: 7/13/1991), under the Freedom of Information Act (FOIA). The case number for this investigation is **SPD-19SP053735**.

Specifically, I am requesting:

1.  Digital forensics analysis reports prepared by the Grapevine PD Forensic Lab of all digital media seized, including but not limited to:

    o  Mobile phone – Tyler Skaggs' Apple iPhone, black,  collected by Thomas Robertson, on 07/01/19 at 17:30, at 1400 PLAZA PL 469 Southlake TX.
    o  iPads – Apple iPad, Model A1670, S/N DLXV60JDHPJ6, collected by Thomas Robertson, on 07/01/19 at 17:30, at 1400 PLAZA PL 469 Southlake TX.

2.  Interview details, reports, and notes, including all audio recordings if available, of all interactions with Garet Ramos (DOB: 09/25/1989), including but not limited to:

    o  The interview conducted on July 2, 2019, by Detective Delaney Green and Sgt. Jonathan Macheca.
    o  Any other interviews, phone calls, or communications with Garet Ramos related to this case.

I serve as an investigator with Delta 7 Group, retained by Theodora Oringher PC to assist in the litigation case of Skaggs et al. vs. Angels Baseball LP, Orange County Superior Court Case No. 30-2021-01231706-CU-PO-NJC. If you have any questions regarding this

**394**

request, please contact Jessica H. Diotalevi, Esq., of Theodora Oringher PC, who is copied on this email.

Should there be any fees associated with processing this request, please inform me of the cost at your earliest convenience. Delta 7 Group is willing to cover any reasonable fees for the acquisition of these records.

Thank you for your prompt attention to this matter.

Sincerely,

Emmanuel

_____

**Emmanuel Ladsous**
President / Private Investigator
**Delta 7 Group, LLC**
A Professional Security Consultancy
4712 E 2nd Street, Suite 231
Long Beach, CA 90803-5309
Phone:  (800) 689-6546, Ext. 700
Mobile: (949) 423-4350
Email address:  E.Ladsous@Delta7Group.com
Website:       www.Delta7Group.com
CA PI License#    188424






**This email is unsecured and subject to monitoring.**

CONFIDENTIALITY NOTICE:  This communication and any documents, files, or previous email messages attached constitute an electronic communication within the scope of the Electronic Communication Privacy Act, 18 U.S. Code § 2510. This communication may contain non-public, confidential, or legally privileged information intended for the designated recipient(s) sole use. The unlawful interception, use, or disclosure of such information is strictly prohibited under 18 U.S. Code § 2511 and applicable laws. If you are not the intended recipient or have received this communication in error, please notify the sender immediately by email to E.Ladsous@Delta7Group.com and delete all copies of this communication, including attachments, without reading or saving them in any matter.



6000 WESTERN PLACE, SUITE 200
FORT WORTH, TEXAS 76107

TELEPHONE: (817) 332-2580
FACSIMILE: (817) 332-4740
WEBSITE: WWW.TOASE.COM

Bessie Bronstein
pia@toase.com

July 11, 2024

Emmanuel Ladsous
DELTA 7 GROUP, LLC
4712 E. 2nd Street, Suite 231
Long Beach, California 90803
e.ladsous@delta7group.com

   *Re: Public Information Request to the City of Southlake Dated June 26, 2024*

Dear Mr. Ladsous:

  The City received your request for information on June 26, 2024. Enclosed is a portion of the information responsive to your request. The rest of the responsive information has been submitted to the Attorney General for a ruling.

  The City understands the rights of all citizens to make requests for public information and invites all citizens to avail themselves of that right. Should you have any questions, please do not hesitate to contact me. Of course, all questions may also be forwarded to the Office of the Texas Attorney General, Open Government Hotline, at (512) 478-6736 or toll-free at 1-877-673-6839.

    Sincerely,

    Bessie Bronstein

BB:nm
Enclosure

V:\Southlake\PIA--SUBPOENAS\2024\Ladsous, Emmanuel 6.26.24\To Requestor\Ladsous BB001.docx

**396**

# TOASE
## TAYLOR·OLSON·ADKINS·SRALLA·ELAM
### ATTORNEYS & COUNSELORS

6000 WESTERN PLACE, SUITE 200
FORT WORTH, TEXAS 76107

TELEPHONE: (817) 332-2580
FACSIMILE: (817) 332-4740
WEBSITE: WWW.TOASE.COM

Bessie Bronstein
pia@toase.com

July 11, 2024

Honorable Ken Paxton
Attorney General of Texas
Supreme Court Building
P.O. Box 12548
Austin, Texas 78711-2548

> Re:    *Public Information Act Request of Emmanuel Ladsous Received by the City of Southlake on June 26, 2024*

Dear General Paxton:

I represent the City of Southlake in regard to the above-referenced matter. On June 26, 2024 the City received the public information request from Emmanuel Ladsous attached hereto as Exhibit A. Please note that the City offices were closed on Thursday July 4, 2024 in observance of the Independence Day holiday.

Pursuant to Section 552.301 of the Public Information Act (the "Act"), the City requests your determination regarding whether the responsive information falls within an exception to disclosure. The information the City believes may be withheld is attached hereto as Exhibit B. In particular, the City believes that the following exceptions apply:

**I.     Section 552.108(b):  Internal Records or Notations of a Law Enforcement Agency**

Section 552.108 of the Government Code, commonly referred to as the "law enforcement exception," provides that:

(b)     An internal record or notation of a law enforcement agency or prosecutor that is maintained for internal use in matters relating to law enforcement or prosecution is excepted from [required public disclosure] if:

(1)     release of the internal record or notation would interfere with law enforcement or prosecution;

(2)     the internal record or notation relates to law enforcement only in relation to an investigation that did not result in conviction or deferred adjudication[.]

Tex. Gov't. Code Ann. § 552.108(b)(1).

**397**

July 11, 2024
Page 2

Section 552.108(b)(1) is intended to protect "information which, if released, would permit private citizens to anticipate weaknesses in [a law enforcement agency], avoid detection, jeopardize officer safety, and generally undermine efforts to effectuate the laws of this State." *City of Ft. Worth v. Cornyn*, 86 S.W.3d 320, 327 (Tex. App. – Austin 2002, no pet.). Your office has previously concluded that a governmental body may withhold information that would reveal law enforcement techniques or procedures. *See, e.g.*, Tex. Atty. Gen. ORD 531 (1989) (interpreting predecessor to Section 552.108 to conclude that release of detailed use of force guidelines would unduly interfere with law enforcement), 252 (1980) (interpreting predecessor to Section 552.108 to conclude that it is designed to protect investigative techniques and procedures used in law enforcement), 143 (1976) (interpreting predecessor to Section 552.108 to conclude that disclosure of specific operations or specialized equipment directly related to investigation or detection of crime may be excepted).

To claim this exception, a governmental body must explain how and why release of the requested information would "unduly interfere with law enforcement and crime prevention." Gov't Code §§ 552.108(b)(1), 552.301; *Ex parte Pruitt*, 551 S.W.2d 706, 710 (Tex. 1977); Tex. Atty. Gen. ORD Nos. 562 at 10 (1990), 531 at 2. Generally known policies and techniques, however, may not be withheld under Section 552.108. *See, e.g.*, Tex. Atty. Gen. ORD Nos. 531 at 2-3 (interpreting predecessor to Section 552.108 to conclude that Penal Code provisions, common law, and constitutional limitations on use of force are not protected from disclosure), 252 at 3 (commonly known procedures and techniques must be disclosed).

Because the City feels that their release would unduly interfere with law enforcement by placing individuals at an advantage when attempting to conceal evidence pertinent to investigations, thereby impeding the police departments' ability to enforce laws and prevent crime, it requests that the documents marked as Exhibit B be withheld. Specifically, the City seeks to withhold this information as it believes that the release of this information would greatly and unduly interfere with the Southlake Police Department's ability to investigate crimes, and would compromise officer's ability by showing what is available to police officers when searching phones.

For the foregoing reasons, the City seeks to withhold the documents enclosed and marked as Exhibit B. Therefore, to the extent that the remaining responsive documents include similar information, the City seeks a ruling that it must withhold such information.

II.    **Previous Determination**

Your office issued Open Records Decision No. 684 (2009), a previous determination to all governmental bodies authorizing them to withhold ten categories of information without the necessity of requesting an Attorney General decision. Additionally, your office has held that a governmental body may redact a living person's social security number without the necessity of requesting an Attorney General decision. Therefore, the City has not raised arguments regarding this information which may be contained in Exhibit B or other responsive material. To the extent this information is included in Exhibit B, this information will be withheld in the event of a ruling requiring the City to release any portion of the responsive documents.

July 11, 2024
Page 3

Section 552.130(c) provides that subject to Chapter 730 of the Transportation Code, a governmental body may redact information, without the necessity of requesting an Attorney General decision, if it relates to a driver's license, a personal identification document, or a motor vehicle title or registration issued by an agency of this state or another state or country. If the City redacts such information, it will notify the requestor as required by Section 552.130(e). The City, therefore, has not raised arguments regarding these types of information. Any information that the City is not seeking to raise an exception on has been released to the requester.

The requestor has been notified by copy of this letter that the City has chosen to seek an Attorney General decision on this matter. Please contact me at the above address with any questions regarding this matter.

Sincerely,

Bessie Bronstein

BB:nm
Enclosures

cc:     Emmanuel Ladsous (w/o enclosures)
        DELTA 7 GROUP, LLC
        4712 E. 2nd Street, Suite 231
        Long Beach, California 90803
        e.ladsous@delta7group.com

V:\Southlake\PIA--SUBPOENAS\2024\Ladsous, Emmanuel 6.26.24\Ltr to AG with Exhibits\AttorneyGeneral.BB001.docx

**399**

**SOUTHLAKE POLICE**

Case Narrative for SPD-19SP053735 (08/23/19 16:39)                    Printed on June 28, 2024

## Supplement Report By Jonathan Macheca, 08/23/19 16:39

**Interview with family member**
**Case #SPD-19SP053735**
**Typed By Jonathan Macheca**

Incident Number :19SP053735-5
Supplemented by:Macheca,J. #1100
Date of Supplement: 08/23/2019

On Tuesday July 2, 2019 Detective Delaney Green #1594 and I, Sgt. Jonathan Macheca #1100, attended the autopsy of Tyler Skaggs. Prior to the autopsy Mr. Skaggs' family was allowed to view his body. Detective Green and I were speaking with the family when his step-brother, Garet Ramos, asked if drugs were suspected. Mr. Ramos' demeanor suggested he had further knowledge of a possible history with drugs. Mr. Ramos then asked to speak with me in private.

Mr. Ramos informed me that he and Mr. Skaggs had grown up together and were close. He stated Skaggs had a history of prescription opioid drug abuse due to an injury in previous years. Because of the injury, Skaggs was prescribed prescription narcotics for recovery. Mr. Ramos advised he was once approached by Skaggs stating he had a problem with addiction. When asked if he knew how Skaggs would ingest the drugs, Mr. Ramos stated he "snorted" them. Mr. Ramos was also under the impression that Skaggs had previously received treatment for opioid abuse.

There is no further information at this time.



# KEN PAXTON
ATTORNEY GENERAL OF TEXAS

September 16, 2024

Ms. Bessie Bronstein
Counsel for the City of Southlake
Taylor Olson Adkins Sralla Elam, L.L.P.
6000 Western Place, Suite 200
Fort Worth, Texas 76107

OR2024-032258

Dear Ms. Bronstein:

You ask whether certain information is subject to required public disclosure under the Public Information Act (the "Act"), chapter 552 of the Government Code. Your request was assigned ID# 24-028229.

The City of Southlake (the "city"), which you represent, received a request for information pertaining to a specified investigation. The city claims the submitted information is excepted from disclosure under section 552.108 of the Government Code. We have considered the claimed exception and reviewed the submitted information.

Section 552.108(b)(1) of the Government Code excepts from disclosure "[a]n internal record or notation of a law enforcement agency or prosecutor that is maintained for internal use in matters relating to law enforcement or prosecution . . . if (1) release of the internal record or notation would interfere with law enforcement or prosecution[.]" Gov't Code § 552.108(b)(1). This section is intended to protect "information which, if released, would permit private citizens to anticipate weaknesses in a police department, avoid detection, jeopardize officer safety, and generally undermine police efforts to effectuate the laws of this State." *City of Fort Worth v. Cornyn*, 86 S.W.3d 320, 327 (Tex. App.—Austin 2002, no pet.). This office has concluded this provision protects certain kinds of information, the disclosure of which might compromise the security or operations of a law enforcement agency. *See, e.g.*, Open Records Decision Nos. 531 at 3-4 (1989) (detailed guidelines regarding police department's use of force policy), 508 at 3-4 (1988) (information relating to future transfers of prisoners), 413 (1984) (sketch showing security measures for forthcoming execution). However, to claim this aspect of section 552.108 protection a governmental body must meet its burden of explaining how and why release of the information at issue would interfere with law enforcement and crime prevention. Open Records Decision No. 562 at 10 (1990). Further, commonly known policies and techniques

Ms. Bessie Bronstein - Page 2

may not be withheld under section 552.108.  *See, e.g.*, Open Records Decision Nos. 531 at 2-3 (former section 552.108 does not protect Penal Code provisions, common-law rules, and constitutional limitations on use of force), 252 at 3 (1980) (governmental body did not meet burden because it did not indicate why investigative procedures and techniques submitted were any different from those commonly known with law enforcement and crime prevention).  To prevail on its claim that section 552.108(b)(1) excepts information from disclosure, a law-enforcement agency must do more than merely make a conclusory assertion that releasing the information would interfere with law enforcement.  The determination of whether the release of particular records would interfere with law enforcement is made on a case-by-case basis.  Open Records Decision No. 409 at 2 (1984). Upon review, we conclude the city has not established section 552.108(b)(1) is applicable to the submitted information.  Therefore, the city may not withhold any of the submitted information on that ground.  Accordingly, the city must release the submitted information.

This letter ruling is limited to the particular information at issue in this request and limited to the facts as presented to us; therefore, this ruling must not be relied upon as a previous determination regarding any other information or any other circumstances.

This ruling triggers important deadlines regarding the rights and responsibilities of the governmental body and of the requestor.  For more information concerning those rights and responsibilities, please visit our website at https://www.texasattorneygeneral.gov/open-government/members-public/what-expect-after-ruling-issued or call the OAG's Open Government Hotline, toll free, at (877) 673-6839.  Questions concerning the allowable charges for providing public information under the Public Information Act may be directed to the Cost Rules Administrator of the OAG, toll free, at (888) 672-6787.

Sincerely,

James Coggeshall
Assistant Attorney General
Open Records Division

JLC/pt

Ref:    ID# 24-028229

c:      Requestor

**402**

Exhibit 5

Southlake TPIA Request #1

June 12, 2024

**TO:**

Southlake Police Department

ATTN: Records Division

600 State Street

Southlake, TX 76092

**FROM:**

Emmanuel Ladsous

Private Investigator (CA PI Lic. 188424)

Delta 7 Group, LLC

4712 E 2nd Street, Ste. 231

Long Beach, CA 90803

Email: E.Ladsous@Delta7Group.com

Mobile: (949) 423-4350

**DATE:**

June 12, 2024

**RE:**

Freedom of Information Act Request – Tyler Wayne Skaggs (deceased)

**Incident:**

- On July 1, 2019, Los Angeles Angels pitcher Tyler Skaggs was found dead in his hotel room at the Southlake Hilton in Fort Worth, Texas. He died of an overdose. The Southlake Police Department and the Drug Enforcement Administration's Fort Worth Field Division conducted the initial investigation.

**Case Information:**

- **Case:** United States of America v. Eric Prescott Kay
- **Court:** United States District Court – Northern District of Texas – Fort Worth Division
- **Case Number:** 4:20-CR-269-Y(1)
- **Judge:** Terry R. Means
- **Defendant:** Eric Prescott Kay – former Director of Communications for Angels Baseball
- **Decedent:** Tyler Wayne Skaggs – former starting pitcher for the Los Angeles Angels Baseball
- **Prosecuting Attorneys:** Assistant U.S. Attorneys Errin Martin, Lindsey Beran, and Joe Lo Galbo

**FOIA Request:**

Pursuant to the Texas Public Information Act, I hereby request the following records related to the investigation conducted by the Southlake Police Department concerning Tyler Skaggs:

1. **Incident Report:** The complete incident report filed by the Southlake Police Department regarding the death of Tyler Skaggs on July 1, 2019.
2. **Investigation Reports:** All investigation reports, notes, and summaries prepared by the Southlake Police Department related to Tyler Skaggs' death.
3. **Evidence Logs:** Detailed logs of all evidence collected during the investigation, including but not limited to the mobile phone seized from Tyler Skaggs.
4. **Witness Statements:** Copies of all witness statements and interviews conducted by the Southlake Police Department in connection with this case.
5. **Chain of Custody Documentation:** Documentation detailing the chain of custody for Tyler Skaggs' mobile phone and any other evidence collected.
6. **Seizure Records:** Records detailing the seizure of Tyler Skaggs' mobile phone, including any warrants or legal documents authorizing the seizure.

I request that the information be provided in electronic format, if possible. Additionally, if any portion of this request is denied, please provide a detailed explanation for the denial, including the specific exemptions under the Texas Public Information Act that apply.

Thank you for your assistance in this matter.

Sincerely,

Emmanuel Ladsous
Private Investigator (CA PI Lic. 188424)

# TOASE

6000 WESTERN PLACE, SUITE 200
FORT WORTH, TEXAS 76107

## TAYLOR·OLSON·ADKINS·SRALLA·ELAM
### L.L.P.
ATTORNEYS & COUNSELORS

TELEPHONE: (817) 332-2580
FACSIMILE: (817) 332-4740
WEBSITE: WWW.TOASE.COM

Bessie Bronstein
pia@toase.com

June 26, 2024

Emmanuel Ladsous
DELTA 7 GROUP, LLC
4712 E. 2nd Street, Suite 231
Long Beach, California 90803
e.ladsous@delta7group.com

      *Re:    Public Information Request Received by the City of Southlake on June 12, 2024*

Dear Mr. Ladsous:

      I represent the City of Southlake regarding the above-described matter. Enclosed is a portion of the information responsive to your request. The remaining information is being withheld pursuant to a previous determination from the Texas Attorney General.

      In OR2024-000715, the Attorney General determined that a portion of the responsive information must be withheld under Texas Occupations Code 1701.661(a). The Attorney General has further determined that a governmental body need not request an Attorney General determination if there has been a previous determination that the requested material falls within one of the exceptions to disclosure. Tex. Gov't Code § 552.301(a); *Dominquez v. Gilbert*, 48 S.W.3d 789, 792-93 (Tex. App.—Austin 2001, no pet.).

      In order for a governmental body to rely on a previous determination, all of the following criteria must be met:

1.    the information at issue is precisely the same information that was previously submitted to the attorney general pursuant to Section 552.301(e)(1)(D) of the Government Code;

2.    the governmental body that received the request for the information is the same governmental body that previously requested and received a ruling from the Attorney General;

3.    the Attorney General's prior ruling concluded the precise information is or is not excepted from disclosure under the Act; and

4.    the law, facts, and circumstances on which the prior attorney general ruling was based have not changed since the issuance of the ruling.

**406**

June 26, 2024
Page 2

_____

The information being withheld is precisely the same information that was previously submitted to the Attorney General for a ruling, the City is the same governmental body that previously requested and received the previous determination (OR2024-000715) from the Attorney General, the prior ruling concluded the precise information is excepted from disclosure under Section 552.108(b) of the Act, and the law, facts, and circumstances on which the prior ruling was based have not changed since the issuance of the ruling. Therefore, the City relies on OR2024-000715 as a previous determination to withhold this information.

The City understands the rights of all citizens to make requests for public information and invites all citizens to avail themselves of that right. Should you have any questions, please do not hesitate to contact me. Of course, all questions may also be forwarded to the Office of the Texas Attorney General, Open Government Hotline, at (512) 478-6736 or toll-free at 1-877-673-6839.

Sincerely,

Bessie Bronstein

BB:nm
Enclosures

V:\Southlake\PIA--SUBPOENAS\2024\Ledoux, Emmanuel 6.12.24\To Requestor\Ledoux.BB001.docx

**407**



# KEN PAXTON
### ATTORNEY GENERAL OF TEXAS

January 8, 2024

Ms. Bessie Bronstein
Counsel for the City of Southlake
Taylor, Olson, Adkins, Sralla & Elam, LLP
6000 Western Place, Suite 200
Fort Worth, Texas 76107

OR2024-000715

Dear Ms. Bronstein:

You ask whether certain information is subject to required public disclosure under the Public Information Act (the "Act"), chapter 552 of the Government Code. Your request was assigned ID# 23-091793 (Ref. No. 1207-91823).

The City of Southlake (the "city"), which you represent, received a request for information pertaining to a specified investigation. You state the city will redact certain information pursuant to sections 552.130(c) and 552.147(b) of the Government Code and Open Records Decision No. 684 (2009).[1] You claim the submitted information is excepted from disclosure under section 552.101 of the Government Code. Additionally, you state the city notified a deceased individual's family of the request for information and of the family's right to submit arguments to this office as to why the information at issue should not be released. *See* Gov't Code § 552.304 (providing that interested party may submit comments stating why information should or should not be released). We have considered the exception you claim and reviewed the submitted representative sample of information.[2]

---

[1] Section 552.130(c) of the Government Code allows a governmental body to redact the information described in section 552.130(a) without the necessity of seeking a decision from the attorney general. Gov't Code § 552.130(c). If a governmental body redacts such information, it must notify the requestor in accordance with section 552.130(e). *See id.* § 552.130(d), (e). Section 552.147(b) of the Government Code authorizes a governmental body to redact a living person's social security number from public release without the necessity of requesting a decision from this office under the Act. *Id.* § 552.147(b). Open Records Decision No. 684 is a previous determination to all governmental bodies authorizing them to withhold specific categories of information without the necessity of requesting an attorney general decision. ORD 684.

[2] This letter ruling assumes that the submitted representative sample of information is truly representative of the requested information as a whole. This ruling does not reach, and therefore does not authorize, the withholding of any other requested information to the extent that the other information is substantially

Ms. Bessie Bronstein - Page 2

Initially, we note the information at issue includes city police officers' body worn camera recordings. Body worn cameras are subject to chapter 1701 of the Occupations Code. Chapter 1701 provides the procedures a requestor must follow when seeking a body worn camera recording. Section 1701.661(a) provides:

> A member of the public is required to provide the following information when submitting a written request to a law enforcement agency for information recorded by a body worn camera:
>
> > (1) the date and approximate time of the recording;
> >
> > (2) the specific location where the recording occurred; and
> >
> > (3) the name of one or more persons known to be a subject of the recording.

Occ. Code § 1701.661(a). In this instance, the requestor does not give the requisite information under section 1701.661(a). As the requestor did not properly request the body worn camera recordings at issue pursuant to chapter 1701, our ruling does not reach this information and it need not be released.[3] However, pursuant to section 1701.661(b), a "failure to provide all the information required by Subsection (a) to be part of a request for recorded information does not preclude the requestor from making a future request for the same recorded information." *Id*. § 1701.661(b).

Section 552.101 of the Government Code excepts from disclosure "information considered to be confidential by law, either constitutional, statutory, or by judicial decision." Gov't Code § 552.101. Section 552.101 encompasses the doctrine of constitutional privacy. Constitutional privacy consists of two interrelated types of privacy: (1) the right to make certain kinds of decisions independently and (2) an individual's interest in avoiding disclosure of personal matters. Open Records Decision No. 455 at 4 (1987). The first type protects an individual's autonomy within "zones of privacy" which include matters related to marriage, procreation, contraception, family relationships, and child rearing and education. *Id*. The second type of constitutional privacy requires a balancing between the individual's privacy interests and the public's need to know information of public concern. *Id.* The scope of information protected is narrower than that under the common law doctrine of privacy; the information must concern the "most intimate aspects of human affairs." *Id.* at 5 (quoting *Ramie v. City of Hedwig Village, Tex.*, 765 F.2d 490, 492 (5th Cir. 1985)). However, we note the right to privacy is a personal right that "terminates upon the death of the person whose privacy is invaded"; therefore, it may not be asserted solely on behalf of a deceased individual. *Moore v. Charles B. Pierce Film Enters., Inc.*, 589 S.W.2d 489, 491 (Tex. Civ. App.—Texarkana 1979, writ ref'd n.r.e.); *see also* Attorney

---

different than that submitted to this office. *See* Gov't Code §§ 552.301(e)(1)(D), .302; Open Records Decision Nos. 499 at 6 (1988), 497 at 4 (1988).

[3] As we are able to make this determination, we need not address your arguments against disclosure of this information.

Ms. Bessie Bronstein - Page 3

General Opinions JM-229 (1984) ("the right of privacy lapses upon death"), H-917 (1976) ("We are . . . of the opinion that the Texas courts would follow the almost uniform rule of other jurisdictions that the right of privacy lapses upon death."); Open Records Decision No. 272 at 1 (1981) (privacy rights lapse upon death). The United States Supreme Court, however, has determined that surviving family members can have a privacy interest in information relating to their deceased relatives. *See Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157 (2004) (holding surviving family members have a right to personal privacy with respect to their close relative's death-scene images and such privacy interests outweigh public interest in disclosure).

We note most of the information at issue pertains solely to a deceased individual and may not be withheld from disclosure based on his privacy interests. However, you state the deceased individual's family objects to disclosure of the information at issue. Upon review, we find the family's privacy interests in the images of the deceased individual outweigh the public's interest in the disclosure of this information. We therefore conclude the city must withhold the images of the deceased individual under section 552.101 in conjunction with constitutional privacy and the ruling in *Favish*.[4]  However, we find the remaining information does not fall within the zones of privacy or otherwise implicate a living individual's privacy interests for the purposes of constitutional privacy. Therefore, the city may not withhold the remaining information under section 552.101 in conjunction with constitutional privacy.

Section 552.101 of the Government Code also encompasses the doctrine of common-law privacy, which protects information that is (1) highly intimate or embarrassing, the publication of which would be highly objectionable to a reasonable person, and (2) not of legitimate concern to the public. *Indus. Found. v. Tex. Indus. Accident Bd.*, 540 S.W.2d 668, 685 (Tex. 1976). To demonstrate the applicability of common-law privacy, both prongs of this test must be satisfied. *Id.* at 681-82. Types of information considered intimate or embarrassing by the Texas Supreme Court are delineated in *Industrial Foundation*. *Id.* at 683. This office has concluded some kinds of medical information are generally highly intimate or embarrassing. *See* ORD 455. Additionally, this office has found that personal financial information not relating to a financial transaction between an individual and a governmental body is generally intimate or embarrassing. *See generally* Open Records Decision Nos. 545 (1990) (deferred compensation information, participation in voluntary investment program, election of optional insurance coverage, mortgage payments, assets, bills, and credit history), 523 (1989) (common-law privacy protects credit reports, financial statements, and other personal financial information), 373 (1983) (sources of income not related to financial transaction between individual and governmental body protected under common-law privacy). Further, the Third Court of Appeals has concluded public citizens' dates of birth are protected by common-law privacy pursuant to section 552.101. *See Paxton v. City of Dallas*, No. 03-13-00546-CV, 2015 WL 3394061, at *3 (Tex. App.—Austin May 22, 2015, pet. denied) (mem. op.).

---

[4] As our ruling is dispositive, we need not address your remaining argument against disclosure of this information.

Ms. Bessie Bronstein - Page 4

Upon review, we find the information you have marked satisfies the standard articulated by the Texas Supreme Court in *Industrial Foundation*. Therefore, the city must withhold the information you have marked under section 552.101 in conjunction with common-law privacy.

In summary, pursuant to section 1701.661 of the Occupations Code, the body worn camera recordings at issue were not properly requested by the requestor pursuant to chapter 1701 of the Occupations Code and need not be released to the requestor. The city must withhold the images of the deceased individual under section 552.101 of the Government Code in conjunction with constitutional privacy and the ruling in *Favish*. The city must withhold the information you have marked under section 552.101 of the Government Code in conjunction with common-law privacy. The city must release the remaining information.

This letter ruling is limited to the particular information at issue in this request and limited to the facts as presented to us; therefore, this ruling must not be relied upon as a previous determination regarding any other information or any other circumstances.

This ruling triggers important deadlines regarding the rights and responsibilities of the governmental body and of the requestor. For more information concerning those rights and responsibilities, please visit our website at https://www.texasattorneygeneral.gov/open-government/members-public/what-expect-after-ruling-issued or call the OAG's Open Government Hotline, toll free, at (877) 673-6839. Questions concerning the allowable charges for providing public information under the Public Information Act may be directed to the Cost Rules Administrator of the OAG, toll free, at (888) 672-6787.

Sincerely,

Lindsay E. Hale
Assistant Attorney General
Open Records Division

LEH/pt

Ref:    ID# 23-091793

c:    Requestor



Case SPD-19SP053735                                          Printed on September 20, 2023

| | |
|---|---|
| **Status** | Approved |
| **Report Type** | Patrol Report |
| **Primary Officer** | Chris Branham |
| **Investigator** | Delaney Green |
| **Reported At** | 07/01/19 00:00 |
| **Incident Date** | 07/01/19 14:16 - 07/01/19 14:16 |
| **Incident Code** | 98 : Information |
| **Location** | 1400 PLAZA PL, Southlake |
| | |
| **Disposition** | Pending |
| **Disposition Date/Time** | 07/01/19 17:00 |
| **Review for Gang Activity** | None |

**Case Comments**
Description: Death investigation

**Offense Information**

| | |
|---|---|
| **Offense** | 481.112(B) - MAN DEL CS PG 1 <1G |
| **Statute** | Converted Statute |
| **NIBRS Code** | |
| **Counts** | 1 |
| **Include In NIBRS** | No |
| **Completed** | Yes |
| **Location** | Hotel/Motel/Etc |
| **# Premises Entered** | 1 |
| **Entry Forced** | No |

**Victim**

**Skaggs, Tyler Wayne**
  Male, DOB 7/13/91                    Converted Statute - 481.112(B) - MAN DEL CS PG 1
                                        <1G
  4129 East Blvd
  Los Angeles, CA 90066

**Other**

**Knight, Charles Fred, Jr**
  Male, DOB ▇▇▇                       Other: Converted Statute - 481.112(B) - MAN DEL CS
                                        PG 1 <1G
  (714) 336-2133 Other

**Ramos, Garet**
  Unknown, DOB ▇▇▇                    Other: Converted Statute - 481.112(B) - MAN DEL CS
                                        PG 1 <1G
  (480) 227-3041 Cell

**Saenz, Jim Hernandez**
Male, DOB ▆▆▆▆

Other: Converted Statute - 481.112(B) - MAN DEL CS
PG 1 <1G

(714) 283-5772 Other

# Primary Narrative By Chris Branham, 07/02/19 04:44
**Primary Narrative**

Incident Number :19SP053735

On Monday 07/01/19 at 1416 hoursSergeant Music and I, Officer Branham #1764, were dispatched to Hilton (1400 Plaza Place) room 469for a death investigation.

On scene Sergeant Music and I located the deceased, Tyler Skaggs (W/M, DOB 07/13/91), face down on his bed in room469. Skaggs had obviouspostmortem lividity and Southlake medics determined him to be deceased. Skaggs is a pitcher for the Los Angeles Angels and was in Southlake for a baseball game that was to be played in Arlington against the Texas Rangers.

I spoke with the two security employees for the Los Angeles Angels, Charles Knight (W/M, DOB ▆▆▆▆) and Jim Saenz (W/M, DOB ▆▆▆▆). Knight stated the team arrived at Hilton around midnight (Sunday night/Monday morning) and all the players walked into the hotel and went to their individual rooms. Knight stated Skaggs had consumed alcohol on the flight from California to Texas, but he did not believe Skaggs to be intoxicated. Knight stated Skaggs is in good health and was in good spirits on the flight and bus ride from DFW International Airport to Hilton.

Knightstated nobody was able to get in contact with Skaggs this morning, including Skaggs' wife and team staff. After knocking on Skaggs' door was unsuccessful, Knight contactedHilton staff. Hilton employees Erica Guerra and Shannon Wheeler unlocked and opened the door for Knight. Knight located Skaggs on his bed unresponsive.

Southlake CID was notified and they tookcustody ofthe crime scene. A crime scene log was started and at the time of the report the crime scene is still active.

# Supplement Narrative By Delaney Green, 07/08/19 13:21
**Initial Crime Scene Investigation**

Incident Number :19SP053735-2
Supplemented by:Green,D. #1594
Date of Supplement: 07/05/2019

On July 1st, 2019, at approximately 1430 hours, I, Detective D. Green #1594, along with CID Sgt. Macheca, responded to 1400 Plaza Place (room #469 at the Hilton) in Southlake, Texas after being notified of a death investigation.

Upon arrival, we met with Sgt. Music and Officer Branham (reference OfficerBranham's original narrative) and signed into the Crime Scene log. We then entered room #469 and observed Tyler Skaggs laying face down on the bed; the bed was completely made, and his bags had not been unpacked. Hehad taken his shirtoff and hung iton the desk chair; he had on black jeans, black/silver belt, and black cowboy boots. Helaid face down, with his legs hanging off the left corner of the bed; his left arm was up above his head, with the left side of his face resting on his arm. There were two packs of Haribo gummy bears on the bed, one opened, and oneun-opened. The bag that was opened, was laying near his right arm, which was also up, near his face. His cellphone was located in between his right arm and face. Lividity had already set in, and there waspooling of blood from his nose and possibly his mouth. There were no apparent injuries, marks, or wounds that suggested foul play.

On the couch, there were two bags that had not been unpacked; one was a brown/black Louis Vuitton backpack, and the other bag was a black Normatec carrying case. His black cowboy hat, and three Michelob Ultra beer cans (unopened) were located on the coffee table next to the couch. Inside the Louis Vuitton backpack, a prescription bill bottle was located for Indomethacin ER 75mg; it was prescribed by Brian Schulz on May 30th, 2019. The prescription was described as a 'clear aqua oblong gelatin 506 amneal' and was for a quantity of 30. However, located inside the bottle, were 5 round pink pills, with the label K|56 and 1 round blue pill with 'M' inside a square on one side, and the #30 on the other side. According to drugs.com, these pills are identified as Hydrocodone Hydrochloride; the pink pills are 10mg, and the blue pill is 30mg. Confirmation on the identity of these pills will be confirmed at a later date by a medical laboratory.

On the desk, there was one unopened Michelob Ultra beer can and an iPad with a black case, laying facedown. The black iPad case cover appeared to have white, powdery residue on it; next to the iPad was a pinkish Hilton Honors room card that appeared to have the same white, powdery residue as the case had. On the desk, there was a hard

white straw, which we believed to be part of a pen (the other parts of the pen were not located) with the same white, powdery residue inside. The white straw was labeled 'Bic Clic Stic med.'.

In the trash can next to the desk, there were two Pedialyte Advanced Care wrappers(Berry Frost) that had been opened and used; it was believed that they had been put into the two Fiji water bottles that were sitting on the TV stand dresser. The powder from the Pedialyte appeared to be bright blue. His wallet, wedding ring, and second Hilton honors hotel card was also located on the TV stand dresser.

Detective Roberson and Investigator Wood processed the crime scene and collected evidentiary items.

I, Detective D. Green, interviewed and spoke with all members, players, and coachesof the Los Angeles Angels individually while audio recorded. The following persons were identified and interviewed [reference the attached interview notes for further information]:

Ty Buttrey (w/m DOB            )
Trevor Cahill (w/m DOB            )
Shohei Ohtani (a/m DOB          ; interpreter identified as Ippei Micuhara (a/m DOB            )
Albert Jose Pujols (h/m DOB            )
Eric Prescott (w/m DOB            )
Mark Langston (w/m DOB            )
Mark Gubicza (w/m DOB            )
Torrent Smith (w/m DOB            )
Thomas LaStella (w/m DOB            )
Luis Rengifo (b/m DOB            )
Justin Anderson (w/m DOB            )
Noe Ramirez (h/m DOB            )
Griffin Canning (w/m DOB            )
David Fletcher (w/m DOE            )
Jose Rances Suarez Quintero (h/m DOB            )
Luis Garcia Almonte (b/m DOB            )
Cameron Bedrosian (w/m DOB            )
Andrew Heaney (w/m DOB            )
Will Lenzner (w/m DOB            )
Justin Bour (w/m DOB            )
Brian Goodwin (b/m DOB            )
Jose Mota (w/m DOB            )
Kent French (w/m DOB            )
Hansel Robels (b/m DOB            )
Bradley Ausmus (w/m DOB            )
Michael Trout (w/m DOB            )
Jeremy Reed (w/m DOB            )
Adam Nevala (w/m DOB            )
Douglas White (w/m DOB            )
Kole Calhoun (w/m DOB            )
Andrew Bailey (w/m DOB            )
Jesus Feliciano (h/m DOB            )
Eric Munson (w/m DOB            )
Juan Manuel Del Campo Viramontes (h/m DOB            )
Andrelton Simmons (b/m DOB            )
Jonathan Lucroy (w/m DOB            )
Dustin Garneau (w/m DOB            )
Felix Ricardo Pena De Los Santos (b/m DOB            )
Shawn Wooten (w/m DOB            )
Adam Hunt (w/m DOB            )
Michael Ashman (w/m DOB            )
Yoichi Terada (a/m DOB            )
Jorge Sevilla (h/m DOB            )
Paul Sorrento (w/m DOB            )
Justin Upton (b/m DOB            )
Brian Harkins (w/m DOB            )

414

Michael Gallego (w/m DOB 
Lee Fiocchi (w/m DOB
Matthew Martin (w/m DOB                )
Jose Benjamin Molin Matta (w/m DOB            )
Adam Auer (w/m DOB            )
Joshua William Paul (w/m DOB            )
Stephen Martone (w/m DOB
Bernard Li (w/m DOB            )
Thomas Taylor (w/m DOB          )
Justin Hatcher (w/m DOB          )

The course of the interviewing was similar in structure and sequence; the following questions were asked to all individuals:

When was the last time you saw and/or spoke with T. Skaggs?
How was Skaggs' behavior and demeanor the last time you interacted with him?
Did you see Skaggs consume any alcoholic beverages on the plane and/or upon arrival at the hotel on June 31st, 2019 (Sunday)?
Are you aware of Skaggs using any prescription drugs or illegal drugs?

All answers from the aforementioned parties provided the same, if not identical responses to the questions. Those that had seen Skaggs on the plane ridefrom LA to DFW, advised he had consumed a few beers during the flight, but did not appear intoxicated or belligerent. Only afew persons mentioned that he may have been prescribed Xanax for the flights, but no one could confirm if he had taken one for this particular trip.
Ty Buttery had texted Skaggs on July 1st, 2019 at 0002 hours about carrying the speaker[s] from the bus next time around and Skaggs replied immediately at 0002 hours confirming he received Buttery's text; however, Buttery texted Skaggs again at 0014 hours, but never received a response.
Prior to closing the crime scene, I requested a written statement from Charles Knight (w/m DOB            ), who had been working ina security capacity for the Los Angeles Angels team; Mr. Knight located Skaggs deceased and called 911. His written statement has been attached to the original case report for reference.
END OF REPORT.

## Supplement Narrative By Thomas Roberson, 07/24/19 14:38
### Crime Scene

Incident Number: 19SP053735 1
Supplement by: Roberson,T. #1521
Date of Supplement: 07/23/2019
On July 1, 2019 around 1430 hours I, Det. T. Roberson #1521 was notified of a death investigation at 1400 Plaza Place, Hilton Hotel room 469, Southlake, Tarrant County, Texas. Upon arrival at room #469, I met with CID Sgt. J. Macheca, Det. D. Green, and Ofc. Branham. Once inside the room I observed a deceased white male (identified as Tyler Skaggs) lying face down on the sole bed in the room. Tyler was wearing black cowboy style boots, black jeans, black and silver belt, with no shirt. Lividity and rigor mortis were present and I observed blood and bodily fluids pooling from his nose and possibly mouth. A black cell phone was on the bed in close proximity to his right shoulder. There was an open pack of Haribo gummy bears by his hands and an unopened pack of Haribo gummy bears on the other side at the head of the bed.
The room appeared relatively undisturbed. The bathroom looked unused with only one small hand towel out of place on the counter. There were two bags on the couch still closed. There was no luggage in the room. There was a clear plastic bag on the coffee table with three unopened Michelob Ultra canned beers and a fourth on the desk also unopened. There was an iPad on the desk with a purple room key card and a small white plastic hollow cylinder (possibly the inner part of a pen). There was also a white powdery residue on the desk, room key card, and back of the IPad. The trash can contained two empty packages of Pedialyte electrolyte drink mixers .6 oz. The residue from the packages was blue. I observed Tyler Skaggs' wallet on the dresser and it contained his identification and a large sum of cash. The contents of the wallet looked undisturbed. There was also a wedding band, another room key card, and two bottles of Fiji water. The water bottles had been opened and the contents were a blue color  consistent with the Pedialyte electrolyte drink mixers.
The Tarrant County Medical examiner's Office was notified at 1542 hours and arrived on scene at 1633 hours.

Additional photos were then obtained of Tyler Skaggs once the ME Investigator Adriana Wood began her investigation. I observed no apparent injuries to Tyler Skaggs that would have caused injury or death.
Det. W. Wood assisted me in processing the scene and we collected the following items from the room:

Item 1.1- one room key card with white powder residue
Item 1.2- one room key card
Item 1.3 unknown powder from desk
Item 1.4- 18 capsules of Indomethacin ER 75mg
Item 1.5- white substance from floor collected by tape
Item 1.6-IPad with white substance on back of case
Item 1.7- black IPhone
Item 1.8- white plastic pen tube
Item1.9- one blue pill "M/30"
Item 1.10- five pink pills "K/56"
Item 1.11- wallet, ring, ID, cash, earbuds
Item 1.12- black cowboy hat and button shirt
Item 1.13- backpack with personal belongings
Item 1.14- one Normatec machine
Item 1.15- bed sheets with blood
Item 1.16- bedding with blood
Item 1.17- open bag of gummy bears

Items were returned to the Southlake Police Department and placed in a secured property locker. Items 1.15 and 1.16 were placed in a secured drying room and given time to dry before being packaged and sealed. The white powder residue was tested on scene and showed negative results for cocaine. I uploaded all photos to the Southlake Digital Evidence Library. See Supplement by Det. Green.
End of Report.

## Supplement Narrative By Delaney Green, 08/20/19 14:07
### Investigative Supplement

Incident Number :19SP053735-4
Supplemented by:Green,D. #1594
Date of Supplement: 08/06/2019
On July 2nd, 2019, I, Detective D. Green #1594 was assigned Southlake case #19SP053735 for follow-up, review, and investigation.After initially responding to the crime scene on July 1st, 2019,T. Skaggs' bodywas released to the Tarrant County Medical Examiner's offense so an autopsy could be conducted.
Sgt. Macheca and I attended the autopsy on July 2nd, 2019, scheduled for 1000 hours. Uponour arrival, it was discovered that the Tarrant County Medical Examiner's office was allowing T. Skaggs' immediate family to view the body prior to conducting the autopsy. T. Skaggs' immediate family included the following: his wife (Carli Skaggs), mother-in-law (Nina Miles), mother (Debbie Hetman), step-father (Dan Ramos), father (Darrell Skaggs), and step-brother (Garet Ramos). The family arrived at the Tarrant County Medical Examiner's office (200 Felik Gwozdz Place in Ft. Worth, TX)at approximately 1100 hours on July 2nd, 2019. The family viewed T. Skaggsbodyprior to initiating contact; at that time, I spoke with T. Skagg's mother, step-father, wife, and mother-in-law and explained the next steps in this investigation. Sgt. Macheca was asked by Garet Ramos to speak in private; reference Sgt. Macheca's supplement for further information.
The family opted to travel to Southlake PD Headquarters, located at 600 State Street in Southlake, TX later in the afternoon on July 2nd, 2019 to obtain T. Skaggs' property that was being held as safekeeping.
After the family left, anautopsy was completed by Dr. Krause. During the initial process, Dr. Krause ruled out that T. Skaggs had passed due to choking on a gummy bear. Dr. Krause opted to send the toxicology tubes to be expedited to determine what may have been present in T. Skaggs' system (i.e., alcohol, drugs, narcotics, stimulants, depressants, etc.).
Sgt. Macheca and I returned to Southlake PD Headquarters and met with T. Skaggs' immediate family later that afternoon on July 2nd, 2019 (at approximately 1500 hours). The listed property that was beingheld for safekeeping was released to his wife. T. Skaggs cellphone andiPad were kept as evidence and consent was asked for from the family to search for any related information/evidence. It was explained that we would be looking for any incoming/outgoing

phone calls before and after T. Skaggs' passing. During the time of our meeting, the family opted to withhold the passcode to the electronics until they consulted with an attorney. However, at 1616 hours, I received a text from Ms. Miles, stating they would release the passcode to T. Skaggs' electronics for further analysis. The electronics were taken to the Grapevine PD Forensic Lab on July 17th, 2019; the analysis was completed and the electronics were received back on July 22nd, 2019. However, due the electronic analysis only completing a logical dump, I returned to Grapevine PD Forensic Lab on July 23rd, 2019 to take physical photographs of evidentiary texts/phone calls, etc. All electronic information has been added to the Virtual Evidence Locker for reference.

On July 22nd, 2019, I, Sgt. Macheca, and Captain Luna met with Southlake PD Chief Brandon in reference to information that he obtained over the weekend from the Tarrant Account District Attorney's office in relation to this case. It was explained that an attorney with Los Angeles Angels baseball team, who was later identified as John H. Cayce, Jr. with the Kelly Hart firm here in Ft. Worth, Texas, reached out to TCDA, advising that a 'Adam Chodkzo' came forward after receiving information from a 'Eric Kay'; both parties were identified as Los Angeles Angels staff employees. Eric Kay relayed to Adam that he had been with T. Skaggs the night they arrived in Texas and he later met T. Skaggs in his hotel room where they 'did lines of coke together'. It was explained that Eric Kay already hired his own attorney: Michael Molfetta ▓▓▓▓▓▓▓▓▓▓▓ ).

It should be noted that Eric Prescott (as named in the interview notes) was interviewed on July 1st, 2019 along with the other staff members and players. Eric was the 5th person that came forward during our interview process. Eric explained to Sgt. Macheca and I that he last saw T. Skaggs on the plane ride; he confirmed that T. Skaggs had consumed alcohol, but did 'not appear trashed'. Eric was unsure of T. Skaggs drug use, but thought maybe he used marijuana.

After obtaining this information, I travelled to Grapevine PD Forensic Lab on July 23rd, 2019 (as previously mentioned) and began photographing still images of T. Skaggs recent phone calls, text messages, etc. I located a contact by the name of 'EK' (714-234-3916). The following text messages were exchanged between T. Skaggs and EK on June 30th, 2019 (the day the Angels left California and travelled to Texas).

June 30th, 2019 at 1435 hours: EK to T. Skaggs
Hoe many?
June 30th, 2019 at 1436 hours: T. Skaggs to EK
Just a few like 5
June 30th, 2019 at 1436 hours: EK to T. Skaggs
Word
June 30th, 2019 at 1436 hours: T. Skaggs to EK
Don't need many
June 30th, 2019 at 2347 hours: T. Skaggs to EK
469; Come by
June 30th, 2019 at 2350 hours: EK to T. Skaggs
K

On July 24th, 2019, Ms. Miles reached out and requested that the seized electronics from the crime scene be returned to T. Skaggs' wife's residence as soon as possible. It was at this time, that I relayed the aforementioned information to Ms. Miles, Mrs. Skaggs, and T. Skaggs parents. I also explained that at this time, the electronics could not be returned based on the evidence that was discovered; all involved parties understood and stated they would aide in the investigation/prosecution in any way possible.

On July 25th, 2019, I met with DEA Investigator Brown and we discussed the current status of the investigation, and where to go moving forward. Inv. Brown advised that they had already ran T. Skaggs through their databases to view past prescription history; there was nothing of concern. The Los Angeles Angels team doctor was also ran, and showed a history of very minimal prescribed medications to patients/team players. Inv. Brown advised a subpoena will be issued for Eric Kay's associated telephone numbers for all phone records.

Shortly after that meeting, the Tarrant County Medical Examiner's office reached out, and Dr. Krause requested that the prescription pills located in T. Skaggs' hotel room be picked up by TCME Investigator A. Wood immediately for testing. The 5 pink pills that were inscribed with 'K|56', and the 1 light blue pill inscribed with 'M' on one side, and '30' on the other side, were released to TCME Investigator Wood on July 25th, 2019. Investigator Wood's supplement initially identified these drugs; reference supplement for further information.

At this time, it was unknown why the TCME requested these drugs be tested immediately.

On July 29th, 2019, I reached out to Angels attorney, John Cayce, via telephone; this was audio recorded via Audacity and has been added to the Virtual Evidence Locker for reference. Mr. Cayce advised that the information originally provided to the Tarrant County District Attorney's was indeed accurate. It was explained that Eric Kay confided in Adam Chodzko about being with T. Skaggs the night they arrived in Texas; Chodzko then relayed this information to someone else in the Angels organization who then reported to the Angels' attorney (John Cayce). Mr. Cayce advised

that he will be the point of contact for the Angels organization moving forward (i.e., interviews, questions, etc.).

On July 30th, 2019, I spoke with Mr. Molfetta, Eric Kay's attorney (not Angels associated), via telephone. It was requested that Eric Kay complete a follow-up interview with myself and Sgt. Macheca due to aforementioned information discovered during the course of the investigation. Mr. Molfetta was made aware that we'd fly to California for an interview if it was not financially feasible for Mr. Kay to meet us in Texas. Mr. Molfetta stated that Eric was currently in ▮▮▮▮ and would not be able to sit for an interview until approximately August 12th, 2019, when the rehab program ended. He did not have the financial means to travel, sothe interview would have to be conducted in California. I sent Mr. Molfetta an email with my contact information, and advised that I would follow-up in approximately two weeks, once Eric is out of ▮▮▮▮.

I requested the remaining evidence to be sent to the TCME lab for processing/testing on July 30th, 2019. This include two Hilton key cards andcollected residue powder from the desk in T. Skaggs' hotel room. It was the requested thepowder residue be tested, and thekey cards examined for fingerprints.

On August 1st, 2019, I spoke with TCME Dr. Krause, who advised that the autopsy findings and toxicology were complete. The pills that were picked up by TCME Investigator Wood on July 25th, 2019 showed that the 5 pink 'K|56' were oxycodone, and the one light blue 'M' and '30' pillwas pure fentanyl. It was discovered that T. Skaggs had oxycodone andfentanyl in his blood stream at the time of his death; his blood alcohol level was at .122. Dr. Krause stated the oxycodone had been metabolizing for more time than the fentanyl. Although the amount of fentanyl in T. Skaggs' system was small, he stated that if he wasn't use to taking it, or it was his first time, that amount could be lethal. With that said, Dr. Krause stated that T. Skaggs ultimately died due to 'choking on his own vomit'. The final ME report will not be released until the criminal investigation is finalized.

On August 9th, 2019, I contacted Mr. Molfetta via email requesting an update on Mr. Kay's rehab release date. I received no response.

It should be noted I have been observing and followingEric Kay's twitter account (@EKay2121) for recent activity since he went to rehab. Eric began re-tweeting and posting again on August 5th, 2019 after being 'silent' since July 13th, 2019.

On August 12th, 2019, I contacted Mr. Molfettaby phone and left a voicemail. I sent Mr. Molfetta a follow-up email later that same day requesting an update.

On August 13th and 14th, 2019, I received the ME's lab reports from the analysis of the key cards and the powder residue. The key cards did show to have fragmented friction ridge impression but was of no value due to insufficient ridge characteristics. The sealed piece of paper that contacted the powder residue fromthe desk of T. Skaggs' hotel room came back as 'residue containing fentanyl'.

On August 15th, 2019, I attempted to contact Mr. Molfetta by phone and left another voicemail. I then reached out to Mr. Cayce and requested an update of Mr. Kay's current employment status with the Angels, as well as an interview to be scheduled with Adam Chodzko. Mr. Cayce came back and stated that Mr. Kay is no longer on administrative leave, but he's also not working currently; he advised, "we don't quite know exactly where is he is at".

On August 19th, 2019, I interviewed Adam Chodzko (DOB 0▮▮▮▮▮▮▮), via telephone, while Angels' attorneys John Cayce and Todd Theodora,represented him; this conversation was audio recorded via Audacity and added to the Virtual Evidence Locker for reference. Chodzko stated his title with the Angels was the Senior Manager of Communications, and he worked directly for Eric Kay, as he was the Director of Communications. He has been with the organization for ten years and he considershimself 'good friends' with Eric. Chodkzo advised that he was driving Eric home one day after work (after the incident with T. Skaggs), and Eric told him that Skaggs had texted after they arrived at the hotel, asking himto come to his hotel room. Eric told Chodkzo he said 'no', but then Skaggs asked again, and he said 'yes'. When Eric arrived in Skaggs' room,Skaggs had three lines of 'drugs' onthe menu on the desk, ready to go. Eric then told Skaggs that'he's not doing that anymore, and he's trying to stay clean'. Eric told Chodkzo when he leftSkaggs' room that 'he seemed fine' (unknown if Skaggs was still awake, passed out, etc.). Chodkzo told Eric that he needed to tell someone in the Clubhouse or he would have to. Chodkzo saidhe then showed up at Eric's house the following day and took him to ▮▮▮▮ Chodzko couldn't remember exact dates, but believed it to be a week or two after the date of theincident (July 1st, 2019). Eric did not mentioned what type of 'drugs' Skaggs lined out, as we previously thought it had been cocaine. Chodzkoadvised he has not spoken with Eric since he dropped him off at ▮▮▮▮

At the time of Chodzko's interview, 'no one' knows Eric's whereabouts and/or if he'll return to work any time soon.

Some of the details relayed during Chodzko's interview differed from what was initially presented.The information also contradicted text messages discovered in T. Skaggs' cell phone between Skaggs and EK. Eric's attorney has not returned any of my phone calls and/or emails as of today's date (August 20th, 2019).

All information has been relayed to the DEA, and a decision about moving forward with this investigation is expected to be determined in the first few weeks of September. The DEA is still waiting on a few outstanding subpoenas that have been issued in relationshipto thiscase.

I advised the Medical Examiner that this investigation is still on-going; contact information for the DEA was provided to

the ME's office for further contact.
As of now, this case is still pending investigation.
END OF REPORT.

## Supplement Narrative By Jonathan Macheca, 08/23/19 16:39

**Interview with family member**

Incident Number :19SP053735-5
Supplemented by:Macheca,J. #1100
Date of Supplement: 08/23/2019

On Tuesday July 2, 2019 Detective Delaney Green #1594 and I, Sgt. Jonathan Macheca #1100, attended the autopsy of Tyler Skaggs. Prior to the autopsy Mr. Skaggs' family was allowed to view his body. Detective Green and I were speaking with the family when his step-brother, Garet Ramos, asked if drugs were suspected. Mr. Ramos' demeanor suggested he had further knowledge of a possible history with drugs. Mr. Ramos then asked to speak with me in private.

Mr. Ramos informed me that he and Mr. Skaggs had grown up together and were close. He stated Skaggs had a history of prescription opioid drug abuse due to an injury in previous years. Because of the injury, Skaggs was prescribed prescription narcotics for recovery. Mr. Ramos advised he was once approached by Skaggs stating he had a problem with addiction. When asked if he knew how Skaggs would ingest the drugs, Mr. Ramos stated he "snorted" them. Mr. Ramos was also under the impression that Skaggs had previously received treatment for opioid abuse.

There is no further information at this time.

## Supplement Narrative By Weston Wood, 05/08/20 11:49

**Crime Scene Supplement**

Incident Number :19SP053735-3
Supplemented by: Wood,W. #1452
Date of Supplement: 07/25/2019

On July 1, 2019 at approximately 1430 hours, I was notified of a death investigation at 1400 Plaza Place (Hilton Hotel) Room # 469 in Southlake, Tarrant County, Texas. At approximately 1445 hours,Detective D. Greencontacted me for assistance. She stated that Det. Roberson wasabout to process the crime scene and needed assistance. Det. Green andCID Sergeant J.Macheca had approximately 60 players, coaching staff members, training staff members, and Angels personnel to interview.

I arrived on scene at 1502 hours and met with Officer Branham in order to sign the crime scene log before entering Room 469. I then entered the Room 469 and observed a deceased white male (later identified by CA Driver's License as Tyler Skaggs)to be lying face down on the onlybed located in the room. He was wearing black pants, a black and silver belt,and black cowboy boots. His forehead was resting in the crevice of his left elbow, which was extended underneath his body. His right arm was at a 90 degree angle and was out from underneath his body with his right hand resting beside his left hand. A black cell phone was lying on the bed just underneath his right shoulder and left hand. There was also an open package of Haribo gummy bears near his hands. There was another (unopened) package of gummy bears on the bed that was closer to the headboard. Post mortem lividitywas present. Blood and/or bodily fluids had emanated from his nose and mouth and were on his left arm and had pooled on the bed.

In observing the room, it appearedthat most things were still in place. There were two black bags on the couch that were closed. On the coffee table, there was a black cowboy hat and a clear and green plastic bag with three unopened Michelob Ultra cans in it.A black, red, green and purple colored long sleeve button up pearl snap shirt was draped over the rolling chair next to the desk. On the desk, there was a single unopened Michelob Ultra beer can. There was also an envelope with a room key card instruction pamphlet. There was also an iPad lying face down with white powdery residue on it. There was also a room key card with a white, powdery residue on it. On the desk around the iPad, there was more white powdery residue. There was also a white, hollow, cylindrical, plastic tube that was once the outside of a Bic Clic Stic writing pen. The tube had no other parts to it. On the carpet, just below the table, but not underneath it, there was more white powdery/granular residue.

Det. Roberson and I used a room key card (Item 1.2)that was located on the dresser that did not have residue on it to gather all the white powdery/granular residue that was located on the desk. I obtained a clean8 1/2" x 11" sheet of paper from Det. Roberson and swept the residue into the piece of paper with the aforementioned clean room key card. When all residue was swept off the desk, I tapped the key card with my finger in order to get the rest of the residue to

fall into the paper. I then folded the paper multiple times, keeping the residue inside the folds, and taped the open ends shut to keep the residue inside the paper. Det. Roberson used clear masking tape to collect the multiple white fragments from the carpet below the desk. He applied the tape to a sheet of paper (Item 1.5) for evidence collection. I swabbed both the pen tube (both ends) and part of the key card containing residue with cocaine swabs and results showed negative for the presence of cocaine.

In the black and grey checkered backpack on the couch, Officer Roberson located a white prescription pill bottle with the name Brian Schulz (Angels physician) on it. The bottle did not have Skaggs' name on it. The prescription was for indomethacin 75 mg capsules. In looking inside the bottle, there were 18 capsules of indomethacin. There was also five pink pills labeled "K/56" on one side and a blank backside. There was one light blue/white pill labeled "M" with a square around it on one side and "30" on the other side. I contacted Texas Poison Control and inquired about the pills. I described the pink pills and Operator # 186 identified the pills as 10 mg oxycodone pills. I described the light blue/white pill and Operator # 186 identified the pills as a 30 mg oxycodone pill. Based on my training and experience as a narcotics investigator, I know that long hollow objects such as this white tube are commonly used as "snort straws" to ingest powdery/granular substances (such as the white powder/fragments located on the table, iPad and key card) . I also know that items with a hard, straight edge (such as the room key card with white powdery residue on it) are commonly used to move substances along a flat surface to keep the substance together and to make a "line" that is then easier to snort. I also know that even when a powdery/granular substance is inhaled, it often leaves behind a powdery residue on the surface it was snorted from, unless the surface is wiped clean.

When TCME Investigator Woods arrived on scene, Det. Roberson and I were able to observe that rigor was present in the decedent. I did not observe any signs of an injury or trauma that would have caused injury or death to the decedent. When the transport team took possession of the body, Det. Roberson and I collected the bed sheets and bedding as evidence. See Det. Roberson's supplement for a list of items taken from the room. All evidence/safekeeping items were entered into the Southlake DPS East Property Room, excluding the bed sheets and bedding, which were placed in the vehicle bay to dry out.

There is nothing further to report at this time.

END

# Supplement Narrative By Delaney Green, 08/12/20 13:42

**Final Close Out Supplement**

Incident Number :19SP053735-6
Supplemented by:Green,D. #1594
Date of Supplement: 08/12/2020
This case was transferred to the DEA towards the 1st of September 2019; they proceeded to handle the investigation with additional interviews, subpoenas, search warrants, etc.
Eric Kay was interviewed on September 25th, 2019 by the DEA and the United States Attorney at 801 Cherry Street in Ft. Worth, TX 76102. I did not audio/video record this interview as it was led by , and only took notes during the duration of the interview. I have attached my interview notes to the original case file, and added a digital copy to the Virtual Evidence Locker for reference.
I was notified on August 6th, 2020 by Agent Brown that a federal warrant was issued for Eric Kay for: Conspiracy to Distribute Fentanyl; Eric Kay turned himself in the following day on August 7th, 2020.
It should be noted that Southlake PD received a 'legal mailed' envelope on an unknown date from Rockwall County Inmate Jail from a Dustin Sorr___ (unknown spelling) due to apostage sticker covering up the return address. This handwritten letter did not seem relevant to the case but it has been attached to the original case file and to the VEL for reference.
At this time, our case will be closed, cleared exceptionally [transferred to outside agency].
END OF REPORT.

# Investigator Narrative By Delaney Green, 07/02/19 14:16

**Investigator Notes**

Contact TCME on 7/8 requesting info on tox results, but they had not come back from the lab as of yet.
Green,D. #1594: [07/16/2019 15:04:02]

Tamika Nelson is Dr. Krouse's secretary (817-920-5700 ext. 8332)
Green,D. #1594: [07/16/2019 15:04:48]

TCME Incident #1911392

Green,D. #1594: [07/16/2019 15:05:38]

Checked on tox results; still pending with no results
Green,D. #1594: [07/16/2019 15:06:06]

Checked on tox results; still pending with no outcome
Green,D. #1594: [07/22/2019 12:44:50]

Met w/ Chief who advised that Sharen Wilson (TCDA) was contacted this weekend by LA Angels attorneys who advised that an Eric Kay (Communications Director for Angels) admitted that he was with Skaggs the night of his death, and that they both snorted lines after arriving at the hotel. Kay's attorney was identified as Michael Molfetta (949-701-7278).Waiting to hear response on if interview will be granted.

Cellphone/Tablet were received from Grapevine PD; held in locked drawer to be re-analyzed and photographed tomorrow at Grapevine Lab due to only a logical analysis being done on the electronics.
Green,D. #1594: [07/22/2019 15:43:54]

On Wednesday July 24th, 2019, Ms. Miles (Skagg's mother-in-law) requested that iPad and Cellphone be sent to her address. I called Ms. Miles this morning and explained that the cellphone and iPad can no longer be released due to the evidence found on the phone; she completely understood and advised they are willing to help in anyway possible.

Spoke with Investigator Brown (DEA) this morning (met with him and George Courtney) on Thursday July 25th, 2019; advised that they pulled prescription information on Skaggs and he had very few listed; was only prescribed oxy 5 days, post his surgery a few years back. Ran the team doctor's through the system and they showed no history to Skaggs and actually show very few prescrptions issued at all.

Attempting to get in touch with John H. Cayce Jr. w/ Kelly Hart Attorneys at Law who originally reached to Sharen Wilson; sent email and left VM.
Green,D. #1594: [07/29/2019 10:28:24]

Spoke with Cayce this morning who advised that he represents the Angels (along with many others). This conversation was recorded via audacity; stated that he will organize any interviews with people on the team or in the organization. Stated that Eric told Adam Chodzko who then relayed that information to someone in the Angels organization. Eric told Adam that it was Cocaine.
Green,D. #1594: [07/30/2019 10:01:04]

Spoke to Molfetta, who advised that Kay is currently in a rehab program and should be done probably in two weeks. He has advised Kay to focus on the program and they will discuss meeting with us in two weeks (he will not be able to fly out here). Sent email with contact information.

Asked Senora to send both key cards (one with powder) to be tests for drugs and fingerprints. Also sending paper of white powder that was collected from the desk.
Green,D. #1594: [07/30/2019 10:11:08]

Contacted ME's office again to get status on report; said it's not finalized and that they aren't going to release anything until the report is done and released to the public. I explained the reason to give me the details of tox before releasing the information to the public; asked Dr. Krause to give me a call personal before signing off on the report (which is expected to be completed by tomorrow).
Green,D. #1594: [07/30/2019 10:21:22]

Spoke with Dr. Krause on August 1st, 2019 about the tox results and they are summarized below; all family parties have been notified of info. The report will not be released until our investigation is finalized:

Metabolizing for more time, Oxy vs. Fentanyl
BAC .122
Underlying cardiac issues (hereditary); wasn't specific
If he hadn't aspirated he might have survived

Fentanyl levels are all over the place
Low amount of fentanyl but if never taken before, lethal
Green,D. #1594: [08/05/2019 09:08:31]
Green,D. #1594: [08/05/2019 09:08:56]

Left VM with TCME Chemistry Department to attempt to push a rush on the drug testing - incident #1912533; #817-920-5700 press 7, then 3 for chemistry dept
Green,D. #1594: [08/06/2019 08:51:16]

Emailed Molfetta on Friday (8-9) and received no response; called and left a VM this morning requesting and interview with Kay.
Green,D. #1594: [08/12/2019 10:13:05]

Left VM with Evidence department at TCME requesting a cost for putting a rush on evidence
Green,D. #1594: [08/12/2019 10:15:40]

Finally got in touch with Chemistry dept at ME and spoke with John (817-920-5700 ext 8517) who advised that the drugs are being processed right now and he should be able to get me a report by this Friday (send my email to lab tech)
Green,D. #1594: [08/12/2019 14:34:43]

Got the ME lab reports back; spoke with John Cayce to see if he could find out the status of Eric Kay's employment with the Angels
Green,D. #1594: [08/15/2019 10:21:31]

**Case Forms**

Primary Narrative (Primary Narrative) 7/2/19 by Chris Branham
Investigator Narrative (Investigator Notes) 7/2/19 by Delaney Green
Supplement Narrative (Initial Crime Scene Investigation) 7/8/19 by Delaney Green
Supplement Narrative (Crime Scene) 7/24/19 by Thomas Roberson
Supplement Narrative (Investigative Supplement) 8/20/19 by Delaney Green
Supplement Narrative (Interview with family member) 8/23/19 by Jonathan Macheca
Supplement Narrative (Crime Scene Supplement) 5/8/20 by Weston Wood
Supplement Narrative (Final Close Out Supplement) 8/12/20 by Delaney Green
Attached Document 6/29/22 - Crime Scene Log.pdf

**Property / Evidence**

| Item # | Category | Type | Status | Location | Description |
|--------|----------|------|--------|----------|-------------|
| SPD-19SP053735 | | Other | In Digital Files | | Attached Documents - Crime Scene Log.pdf |
| SPD-19SP053735 | Seized | Physical | In Custody | | Article - Bed sheets |
| SPD-19SP053735 | Seized | Physical | In Custody | | Article - Romm key |
| SPD-19SP053735 | Seized | Physical | In Custody | | Article - White substance |
| SPD-19SP053735 | Seized | Physical | In Custody | | Article - Bed sheets |
| SPD-19SP053735 | Seized | Physical | In Custody | | Article - Ukn white powder |
| SPD-19SP053735 | Safekeeping | Physical | In Custody | | Article - Backpack |
| SPD-19SP053735 | Seized | Physical | In Custody | | Drug - Pill |
| SPD-19SP053735 | Seized | Physical | In Custody | | Article - Phone |
| SPD-19SP053735 | Seized | Physical | In Custody | | Drug - INDOCIN |

| Item # | Category | Type | Status | Location | Description |
|---|---|---|---|---|---|
| SPD-19SP053735 | Seized | Physical | In Custody | | Article - Plastic pen tube |
| SPD-19SP053735 | Seized | Physical | In Custody | | Article - IPAD |
| SPD-19SP053735 | Seized | Physical | In Custody | | Drug - Pills |
| SPD-19SP053735 | Safekeeping | Physical | In Custody | | Article - Normatec |
| SPD-19SP053735 | Seized | Physical | In Custody | | Article - Gummy candy |
| SPD-19SP053735 | Safekeeping | Physical | In Custody | | Article - Clothing |
| SPD-19SP053735 | Safekeeping | Physical | In Custody | | Article - Personal property |
| SPD-19SP053735 | Seized | Physical | In Custody | | Article - Room key |



SPD-19SP053735 - Bed sheets

| | |
|---|---|
| **Item #** | SPD-19SP053735 |
| **Category** | Seized |
| **Description** | Bed sheets |
| **Owner** | |
| **Article Type** | Other |
| **Article Subtype** | Other |
| **Article Make** | |
| **Article Model** | |
| **Article Color** | |
| **Quantity** | |
| **Serial #** | |
| **Value** | |
| **Collected By** | Roberson, Thomas |
| **Access Tag** | |
| **Date Collected** | 07/01/19 17:30 |
| **Collected Location** | 1400 PLAZA PL 469 Southlake TX |
| **Target Disp. Date** | |
| **Subjects** | |
| **Comments** | Description: Bed sheets with blood |

**Chain of Custody**

| Date | User | Action | Category | Status | Location |
|---|---|---|---|---|---|

424



SOUTHLAKE POLICE

SPD-19SP053735 - Romm key

| | |
|---|---|
| **Item #** | SPD-19SP053735 |
| **Category** | Seized |
| **Description** | Romm key |
| **Owner** | |
| **Article Type** | Other |
| **Article Subtype** | Other |
| **Article Make** | |
| **Article Model** | |
| **Article Color** | |
| **Quantity** | |
| **Serial #** | |
| **Value** | |
| **Collected By** | Roberson, Thomas |
| **Access Tag** | |
| **Date Collected** | 07/01/19 17:30 |
| **Collected Location** | 1400 PLAZA PL Southlake TX |
| **Target Disp. Date** | |
| **Subjects** | |
| **Comments** | Description: Room key card |

**Chain of Custody**

| Date | User | Action | Category | Status | Location |
|---|---|---|---|---|---|



**SOUTHLAKE POLICE**

SPD-19SP053735 - White substance

**Item #**              SPD-19SP053735
**Category**            Seized
**Description**         White substance
**Owner**
**Article Type**        Other
**Article Subtype**     Other
**Article Make**
**Article Model**
**Article Color**
**Quantity**
**Serial #**
**Value**
**Collected By**        Roberson, Thomas
**Access Tag**
**Date Collected**      07/01/19 17:30
**Collected Location**  1400 PLAZA PL Southlake TX
**Target Disp. Date**
**Subjects**
**Comments**            Description: White substance from floor collected by tape

**Chain of Custody**

| Date | User | Action | Category | Status | Location |
|------|------|--------|----------|--------|----------|



**SOUTHLAKE POLICE**

SPD-19SP053735 - Bed sheets

| | |
|---|---|
| **Item #** | SPD-19SP053735 |
| **Category** | Seized |
| **Description** | Bed sheets |
| **Owner** | |
| **Article Type** | Other |
| **Article Subtype** | Other |
| **Article Make** | |
| **Article Model** | |
| **Article Color** | |
| **Quantity** | |
| **Serial #** | |
| **Value** | |
| **Collected By** | Roberson, Thomas |
| **Access Tag** | |
| **Date Collected** | 07/01/19 17:30 |
| **Collected Location** | 1400 PLAZA PL 469 Southlake TX |
| **Target Disp. Date** | |
| **Subjects** | |
| **Comments** | Description: Bedding with blood |

**Chain of Custody**

| Date | User | Action | Category | Status | Location |
|---|---|---|---|---|---|



**SOUTHLAKE POLICE**

SPD-19SP053735 - Ukn white powder

| Item # | SPD-19SP053735 |
|---|---|
| Category | Seized |
| Description | Ukn white powder |
| Owner | |
| Article Type | Other |
| Article Subtype | Other |
| Article Make | |
| Article Model | |
| Article Color | |
| Quantity | |
| Serial # | |
| Value | |
| Collected By | Roberson, Thomas |
| Access Tag | |
| Date Collected | 07/01/19 17:30 |
| Collected Location | 1400 PLAZA PL Southlake TX |
| Target Disp. Date | |
| Subjects | |
| Comments | Description: Unknown white powder from desk |

| Chain of Custody | | | | |
|---|---|---|---|---|
| Date | User | Action | Category | Status | Location |



**SOUTHLAKE POLICE**

SPD-19SP053735 - Backpack

| | |
|---|---|
| **Item #** | SPD-19SP053735 |
| **Category** | Safekeeping |
| **Description** | Backpack |
| **Owner** | |
| **Article Type** | Other |
| **Article Subtype** | Other |
| **Article Make** | |
| **Article Model** | |
| **Article Color** | |
| **Quantity** | |
| **Serial #** | |
| **Value** | |
| **Collected By** | Roberson, Thomas |
| **Access Tag** | |
| **Date Collected** | 07/01/19 17:30 |
| **Collected Location** | 1400 PLAZA PL 469 Southlake TX |
| **Target Disp. Date** | |
| **Subjects** | |
| **Comments** | Description: Backpack with personal belongings |

**Chain of Custody**

| Date | User | Action | Category | Status | Location |
|---|---|---|---|---|---|

429

SOUTHLAKE POLICE

SPD-19SP053735 - Pill

**Item #** SPD-19SP053735
**Category** Seized
**Description** Pill
**Owner**
**Drug Type** P - Other Drugs
**Is Counterfeit** No
**Quantity** 0.000
**Value**
**Collected By** Roberson, Thomas
**Access Tag**
**Date Collected** 07/01/19 17:30
**Collected Location** 1400 PLAZA PL 469 Southlake TX
**Target Disp. Date**
**Subjects**
**Comments** Description: Blue pill "M/30"

**Chain of Custody**

| Date | User | Action | Category | Status | Location |
|------|------|--------|----------|--------|----------|



**SOUTHLAKE POLICE**

SPD-19SP053735 - Phone

| Item # | SPD-19SP053735 |
|---|---|
| Category | Seized |
| Description | Phone |
| Owner | |
| Article Type | Computer Hardware/Software |
| Article Subtype | Computer Hardware/Software |
| Article Make | Apple |
| Article Model | Iphone |
| Article Color | Black |
| Quantity | |
| Serial # | |
| Value | |
| Collected By | Roberson, Thomas |
| Access Tag | |
| Date Collected | 07/01/19 17:30 |
| Collected Location | 1400 PLAZA PL 469 Southlake TX |
| Target Disp. Date | |
| Subjects | |
| Comments | |

**Chain of Custody**

| Date | User | Action | Category | Status | Location |
|---|---|---|---|---|---|

431

# SOUTHLAKE POLICE

SPD-19SP053735 - INDOCIN

| Item # | SPD-19SP053735 |
|---|---|
| Category | Seized |
| Description | INDOCIN |
| Owner | |
| Drug Type | P - Other Drugs |
| Is Counterfeit | No |
| Quantity | 6.700 |
| Value | |
| Collected By | Roberson, Thomas |
| Access Tag | |
| Date Collected | 07/01/19 17:30 |
| Collected Location | 1400 PLAZA PL Southlake TX |
| Target Disp. Date | |
| Subjects | |
| Comments | Description: Indomethacin ER 75MG |

**Chain of Custody**

| Date | User | Action | Category | Status | Location |
|---|---|---|---|---|---|

432

# SOUTHLAKE
## POLICE

SPD-19SP053735 - Plastic pen tube

| Item # | SPD-19SP053735 |
| Category | Seized |
| Description | Plastic pen tube |
| Owner | |
| Article Type | Other |
| Article Subtype | Other |
| Article Make | |
| Article Model | |
| Article Color | |
| Quantity | |
| Serial # | |
| Value | |
| Collected By | Roberson, Thomas |
| Access Tag | |
| Date Collected | 07/01/19 17:30 |
| Collected Location | 1400 PLAZA PL Southlake TX |
| Target Disp. Date | |
| Subjects | |
| Comments | Description: White plastic pen tube |

| Chain of Custody Date | User | Action | Category | Status | Location |
|---|---|---|---|---|---|

**433**



**SOUTHLAKE POLICE**

Printed on September 20, 2023

Page 1 of 1

SPD-19SP053735 - IPAD

| Item # | SPD-19SP053735 |
|---|---|
| Category | Seized |
| Description | IPAD |
| Owner | |
| Article Type | Computer Hardware/Software |
| Article Subtype | Computer Hardware/Software |
| Article Make | Apple |
| Article Model | A1670 |
| Article Color | |
| Quantity | |
| Serial # | DLXV60JDHPJ6 |
| Value | |
| Collected By | Roberson, Thomas |
| Access Tag | |
| Date Collected | 07/01/19 17:30 |
| Collected Location | 1400 PLAZA PL 469 Southlake TX |
| Target Disp. Date | |
| Subjects | |
| Comments | Description: IPAD WITH WHITE SUBSTANCE ON BACK OF CASE |

| Chain of Custody Date | User | Action | Category | Status | Location |
|---|---|---|---|---|---|

434

Printed on September 20, 2023

## SOUTHLAKE POLICE

SPD-19SP053735 - Pills

| | |
|---|---|
| **Item #** | SPD-19SP053735 |
| **Category** | Seized |
| **Description** | Pills |
| **Owner** | |
| **Drug Type** | P - Other Drugs |
| **Is Counterfeit** | No |
| **Quantity** | 0.000 |
| **Value** | |
| **Collected By** | Roberson, Thomas |
| **Access Tag** | |
| **Date Collected** | 07/01/19 17:30 |
| **Collected Location** | 1400 PLAZA PL 469 Southlake TX |
| **Target Disp. Date** | |
| **Subjects** | |
| **Comments** | Description: 5 pink pills "K/56" |

**Chain of Custody**

| Date | User | Action | Category | Status | Location |
|---|---|---|---|---|---|

435



**SOUTHLAKE POLICE**

SPD-19SP053735 - Normatec

| Item # | SPD-19SP053735 |
|---|---|
| Category | Safekeeping |
| Description | Normatec |
| Owner | |
| Article Type | Other |
| Article Subtype | Other |
| Article Make | |
| Article Model | |
| Article Color | |
| Quantity | |
| Serial # | |
| Value | |
| Collected By | Roberson, Thomas |
| Access Tag | |
| Date Collected | 07/01/19 17:30 |
| Collected Location | 1400 PLAZA PL 469 Southlake TX 76092 |
| Target Disp. Date | |
| Subjects | |
| Comments | Description: Normatec machine |

| Chain of Custody Date | User | Action | Category | Status | Location |
|---|---|---|---|---|---|



**SOUTHLAKE POLICE**

SPD-19SP053735 - Gummy candy

Printed on September 20, 2023

Page 1 of 1

| | |
|---|---|
| **Item #** | SPD-19SP053735 |
| **Category** | Seized |
| **Description** | Gummy candy |
| **Owner** | |
| **Article Type** | Other |
| **Article Subtype** | Other |
| **Article Make** | |
| **Article Model** | |
| **Article Color** | |
| **Quantity** | |
| **Serial #** | |
| **Value** | |
| **Collected By** | Roberson, Thomas |
| **Access Tag** | |
| **Date Collected** | 07/01/19 17:30 |
| **Collected Location** | 1400 PLAZA PL 469 Southlake TX |
| **Target Disp. Date** | |
| **Subjects** | |
| **Comments** | Description: Open bag of gummy bears |

**Chain of Custody**

| Date | User | Action | Category | Status | Location |
|---|---|---|---|---|---|

437



# SOUTHLAKE POLICE

SPD-19SP053735 - Clothing

**Item #** SPD-19SP053735
**Category** Safekeeping
**Description** Clothing
**Owner**
**Article Type** Other
**Article Subtype** Other
**Article Make**
**Article Model**
**Article Color**
**Quantity**
**Serial #**
**Value**
**Collected By** Roberson, Thomas
**Access Tag**
**Date Collected** 07/01/19 17:30
**Collected Location** 1400 PLAZA PL 469 Southlake TX
**Target Disp. Date**
**Subjects**
**Comments** Description: Black cowboy hat and button shirt

**Chain of Custody**

| Date | User | Action | Category | Status | Location |
|------|------|--------|----------|--------|----------|

438



**SOUTHLAKE POLICE**

SPD-19SP053735 - Personal property

| Item # | SPD-19SP053735 |
| Category | Safekeeping |
| Description | Personal property |
| Owner | |
| Article Type | Other |
| Article Subtype | Other |
| Article Make | |
| Article Model | |
| Article Color | |
| Quantity | |
| Serial # | |
| Value | |
| Collected By | Roberson, Thomas |
| Access Tag | |
| Date Collected | 07/01/19 17:30 |
| Collected Location | 1400 PLAZA PL 469 Southlake TX |
| Target Disp. Date | |
| Subjects | |
| Comments | Description: Wallet, ring, passport, ID, cash, earbuds |

| Chain of Custody | | | | | |
|---|---|---|---|---|---|
| Date | User | Action | Category | Status | Location |



**SOUTHLAKE POLICE**

SPD-19SP053735 - Room key

| | |
|---|---|
| **Item #** | SPD-19SP053735 |
| **Category** | Seized |
| **Description** | Room key |
| **Owner** | |
| **Article Type** | Other |
| **Article Subtype** | Other |
| **Article Make** | |
| **Article Model** | |
| **Article Color** | |
| **Quantity** | |
| **Serial #** | |
| **Value** | |
| **Collected By** | Roberson, Thomas |
| **Access Tag** | |
| **Date Collected** | 07/01/19 17:30 |
| **Collected Location** | 1400 PLAZA PL Southlake TX |
| **Target Disp. Date** | |
| **Subjects** | |
| **Comments** | Description: Room key with white powder residue |

**Chain of Custody**

| Date | User | Action | Category | Status | Location |
|---|---|---|---|---|---|

440

# CRIME SCENE ENTRY LOG SHEET

## ALL PERSONS ENTERING THE CRIME SCENE MUST SIGN THIS SHEET

Southlake DPS Case # 19SPS3735                    Address: 1400 Plaza #469

NOTE: Officers assigned to maintain scene security must also log in and out on this sheet and should state their reason as "Log Officers."

| NAME & TITLE | INITIALS | AGENCY | IN DATE / TIME | OUT DATE / TIME | REASON FOR ENTERING |
|---|---|---|---|---|---|
| Ofc K. Weeks Rule | KW | SPD | 07/01/19 / 1420 | 07/01/19 / 1424 | Death Inv |
| K. Gillism FFParm | KG | SFD | 07/01/19 / 1424 | 07/01/19 / 1430 | Medic |
| C. Teague FFParm | CT | SFD | 7-1-19 / 1424 | 7-1-19 / 1430 | Medic |
| Sgt G Music | Gm | SPD | 7.1.19 / 1418 | 7.1.19 / 1433 | Death Inv |
| Ofc C. Brayboy | CB | SPD | 07/01/19 / 1417 | 07/01/19 / 1636 | Death Inv |
| Sgt J Market | | SPD | 7/1/19 / 1430 | 07/01/19 / 1714 | CID |
| Det D. Green | | SPD | 07/01/19 / 1430 | 07/01/19 / 1711 | CID |
| Det T. Rakestraw | TR | SPD | 7-1-19 / 1430 | 07/01/19 / 1714 | CID |
| J Braudon | JB | SPD | 7-1-19 / 1445 | 7-1-19 / 1447 | Chief |
| R Thomas | Rod | SPD | 7-1-19 / 1430 | 7-1-19 / 1455 | PH Capt. |
| | | | | | |

Page 1 of 2

# CRIME SCENE ENTRY LOG SHEET

## ALL PERSONS ENTERING THE CRIME SCENE MUST SIGN THIS SHEET

Southlake DPS Case # 19 SP05 3785          Address: 1400 Plaza # 469

NOTE: Officers assigned to maintain scene security must also log in and out on this sheet and should state their reason as "Log Officers."

| NAME & TITLE | INITIALS | AGENCY | IN DATE / TIME | OUT DATE / TIME | REASON FOR ENTERING |
|---|---|---|---|---|---|
| CHARLES KNIGHT | CK | Angels | 07/01/19 / 1416 | 07/01/19 / 1433 | Found deceased |
| WWOOD/CID | WW | SLK | 7/1/19 / 1502 | 07/01/19 | CID |
| A.WOOD/PD | AW | TCME | 7/1/19, 1430 | 07/01/19 / 1711 | Investigator |
| JIM SROUZ | JS | Angels | 07/01/19 / 1416 | 07/01/19, 1439 | Team Staff |
| Medical Examiner | | M/E | 7/1/19, 1700 | 1710, 1705 | take possession of the deceased |
| Jestins by REMOVAL | | M/E | 7/1/19, 1700 | 7/1/19, 1705 | |
| SIS by CLELA | | M/E | 7/1/19, 1700 | 7/1/19, 1705 | take possession of the deceased |
| | | | / | / | |
| | | | / | / | |
| | | | / | / | |

442

# CRIME SCENE ENTRY LOG SHEET

## ALL PERSONS ENTERING THE CRIME SCENE MUST SIGN THIS SHEET

Southlake DPS Case # 19SDS3735          Address: 1400 Plaza #469

NOTE: Officers assigned to maintain scene security must also log in and out on this sheet and should state their reason as "Log Officers."

| NAME & TITLE | INITIALS | AGENCY | IN DATE / TIME | OUT DATE / TIME | REASON FOR ENTERING |
|---|---|---|---|---|---|
| Ofc K. Meeks Blue | KM | SPD | 07/01/19 / 1420 | 07/01/19 / 1424 | Death Inv |
| K. Gillion FFEMA-B | KG | SFD | 07/10/19 / 1424 | 07/01/19 / 1430 | Medix |
| C. Teague FFEMA | C.T. | SFD | 7-1-19 / 1424 | 7-1-19 / 1430 | Medix |
| Sgt G Music | Gm | SPD | 7.1.19 / 1418 | 7.1.19 / 1433 | Death Inv. |
| Ofc C. Brayson | CB | SPD | 07/01/19 / 1417 | 07/01/9 / 1636 | Death Inv |
| Sgt J Marker | JM | SPD | 7c/19 / 1420 | 07/01/19 / 1714 | CID |
| Det D. Green | DG | SPD | 07/01/19 / 1420 | 07/01/19 / 1711 | CID |
| Det T. Robertson | TR | SPD | 7-1-19 / 1420 | 07/01/19 / 1714 | CID |
| 2 Brandon | 2B | SPD | 7.1.19/1445 | 7.1.19 / 1417 | Chief |
| R Thomas | RvG SPD | | 7.1.19 / 1430 | 7.1.19 / 1455 | PH Capt. |

**443**

# CRIME SCENE ENTRY LOG SHEET

ALL PERSONS ENTERING THE CRIME SCENE MUST SIGN THIS SHEET

Southlake DPS Case # 19SP053735          Address: 1400 Plaza # 469

NOTE: Officers assigned to maintain scene security must also log in and out on this sheet and should state their reason as "Log Officers."

| NAME & TITLE | INITIALS | AGENCY | IN DATE / TIME | OUT DATE / TIME | REASON FOR ENTERING |
|---|---|---|---|---|---|
| CHARLES KNIGHT | CK | Angels | 07/01/19 / 1416 | 07/01/19 / 1433 | Found deceased |
| W. WOOD / CID | WW | SLK | 7/1/19 / 1502 | 07/01/19 | CID |
| A. WOOD / PPI | AW | TCME | 7/1/19 / 1430 | 07/01/19 / 1711 | Investigabo |
| JIM SAENZ 95 | 95 | Angels | 07/01/19 / 1416 | 07/01/19 / 1433 | Team Staff |
| Medical Examiner 2 |  | M E | 7/1/19 / 1700 | 7/1/19 / 1705 | to be position of the decedent |
| scene by REMOVAL |  | M/E | 7/1/19 / 1700 | 7/1/19 / 1705 | to be position of the decedent |
| 9 slOFby Cold |  | M/E | 7/1/19 / 1700 | 7/1/19 / 1705 |  |
|  |  |  | / |  |  |
|  |  |  | / |  |  |
|  |  |  | / |  |  |

Page 2 of 7

444



**SOUTHLAKE POLICE**

Case SPD-19SP053735                                                      Printed on June 13, 2024

| | |
|---|---|
| **Status** | Approved |
| **Report Type** | Patrol Report |
| **Primary Officer** | Chris Branham |
| **Investigator** | Delaney Green |
| **Reported At** | 07/01/19 00:00 |
| **Incident Date** | 07/01/19 14:16 - 07/01/19 14:16 |
| **Incident Code** | 98 : Information |
| **Location** | 1400 PLAZA PL, Southlake |
| **Court** | None |
| **Ereferral County** | None |
| | |
| **Disposition** | Cleared by Arrest |
| **Disposition Date/Time** | 09/21/23 09:24 |
| **Review for Gang Activity** | None |

**Case Comments**

Description: Death investigation

**Offense Information**

| | |
|---|---|
| **Offense** | 481.112(B) - MAN DEL CS PG 1 <1G |
| **Statute** | Converted Statute |
| **NIBRS Code** | |
| **Counts** | 1 |
| **Include In NIBRS** | No |
| **Completed** | Yes |
| **Location** | Hotel/Motel/Etc |
| **# Premises Entered** | 1 |
| **Entry Forced** | No |

**Victim**

**Skaggs, Tyler Wayne**
  Male, DOB 7/13/91                              Converted Statute - 481.112(B) - MAN DEL CS PG 1
                                                 <1G
  4129 East Blvd
  Los Angeles, CA 90066

**Other**

**Knight, Charles Fred, Jr**
  Male, DOB                                      Other: Converted Statute - 481.112(B) - MAN DEL CS
                                                 PG 1 <1G
  (714) 336-2133 Other

---

Case SPD-19SP053735                                                           Page 1 of 9

**Ramos, Garet**
Unknown, DOB [redacted]

(480) 227-3041 Cell

Other: Converted Statute - 481.112(B) - MAN DEL CS
PG 1 <1G

**Saenz, Jim Hernandez**
Male, DOB [redacted]

(714) 283-5772 Other

Other: Converted Statute - 481.112(B) - MAN DEL CS
PG 1 <1G

## Primary Narrative By Chris Branham, 07/02/19 04:44
**Primary Narrative**

Incident Number :19SP053735

On Monday 07/01/19 at 1416 hoursSergeant Music and I, Officer Branham #1764, were dispatched to Hilton (1400 Plaza Place) room 469for a death investigation.
On scene Sergeant Music and I located the deceased, Tyler Skaggs (W/M, DOB 07/13/91), face down on his bed in room469. Skaggs had obviouspostmortem lividity and Southlake medics determined him to be deceased. Skaggs is a pitcher for the Los Angeles Angels and was in Southlake for a baseball game that was to be played in Arlington against the Texas Rangers.
I spoke with the two security employees for the Los Angeles Angels, Charles Knight (W/M, DOB [redacted]) and Jim Saenz (W/M, DOB [redacted]). Knight stated the team arrived at Hilton around midnight (Sunday night/Monday morning) and all the players walked into the hotel and went to their individual rooms. Knight stated Skaggs had consumed alcohol on the flight from California to Texas, but he did not believe Skaggs to be intoxicated. Knight stated Skaggs is in good health and was in good spirits on the flight and bus ride from DFW International Airport to Hilton.
Knightstated nobody was able to get in contact with Skaggs this morning, including Skaggs' wife and team staff. After knocking on Skaggs' door was unsuccessful, Knight contactedHilton staff. Hilton employees Erica Guerra and Shannon Wheeler unlocked and opened the door for Knight. Knight located Skaggs on his bed unresponsive.
Southlake CID was notified and they tookcustody ofthe crime scene. A crime scene log was started and at the time of the report the crime scene is still active.

## Supplement Narrative By Delaney Green, 07/08/19 13:21
**Initial Crime Scene Investigation**

Incident Number :19SP053735-2
Supplemented by:Green,D. #1594
Date of Supplement: 07/05/2019
On July 1st, 2019, at approximately 1430 hours, I, Detective D. Green #1594, along with CID Sgt. Macheca, responded to 1400 Plaza Place (room #469 at the Hilton) in Southlake, Texas after being notified of a death investigation.
Upon arrival, we met with Sgt. Music and Officer Branham (reference OfficerBranham's original narrative) and signed into the Crime Scene log. We then entered room #469 and observed Tyler Skaggs laying face down on the bed; the bed was completely made, and his bags had not been unpacked. Hehad taken his shirtoff and hung iton the desk chair; he had on black jeans, black/silver belt, and black cowboy boots.Helaid face down, with his legs hanging off the left corner of the bed; his left arm was up above his head, with the left side of his face resting on his arm. There were two packs of Haribo gummy bears on the bed, one opened, and oneun-opened. The bag that was opened, was laying near his right arm, which was also up, near his face. His cellphone was located in between his right arm and face. Lividity had already set in, and there waspooling of blood from his nose and possibly his mouth. There were no apparent injuries, marks, or wounds that suggested foul play.
On the couch, there were two bags that had not been unpacked; one was a brown/black Louis Vuitton backpack, and the other bag was a black Normatec carrying case. His black cowboy hat, and three Michelob Ultra beer cans (unopened) were located on the coffee table next to the couch. Inside the Louis Vuitton backpack, a prescription bill bottle was located for Indomethacin ER 75mg; it was prescribed by Brian Schulz on May 30th, 2019. The prescription was described as a 'clear aqua oblong gelatin 506 amneal' and was for a quantity of 30. However, located inside the bottle, were 5 round pink pills, with the label K|56 and 1 round blue pill with 'M' inside a square on one side, and the #30 on the other side. According to drugs.com, these pills are identified as Hydrocodone Hydrochloride; the pink pills

are 10mg, and the blue pill is 30mg. Confirmation on the identity of these pills will be confirmed at a later date by a medical laboratory.

On the desk, there was one unopened Michelob Ultra beer can and an iPad with a black case, laying facedown. The black iPad case cover appeared to have white, powdery residue on it; next to the iPad was a pinkish Hilton Honors room card that appeared to have the same white, powdery residue as the case had. On the desk, there was a hard white straw, which we believed to be part of a pen (the other parts of the pen were not located) with the same white, powdery residue inside. The white straw was labeled 'Bic Clic Stic med.'.

In the trash can next to the desk, there were two Pedialyte Advanced Care wrappers(Berry Frost) that had been opened and used; it was believed that they had been put into the two Fiji water bottles that were sitting on the TV stand dresser. The powder from the Pedialyte appeared to be bright blue. His wallet, wedding ring, and second Hilton honors hotel card was also located on the TV stand dresser.

Detective Roberson and Investigator Wood processed the crime scene and collected evidentiary items.

I, Detective D. Green, interviewed and spoke with all members, players, and coaches of the Los Angeles Angels individually while audio recorded. The following persons were identified and interviewed [reference the attached interview notes for further information]:



Ty Buttrey (w/m DOB
Trevor Cahill (w/m DOB
Shohei Ohtani (a/m DOB              ; interpreter identified as Ippei Micuhara (a/m DOB
Albert Jose Pujols (h/m DOB
Eric Prescott (w/m DOB
Mark Langston (w/m DOB
Mark Gubicza (w/m DOB
Torrent Smith (w/m DOB
Thomas LaStella (w/m DOB
Luis Rengifo (b/m DOB
Justin Anderson (w/m DOB
Noe Ramirez (h/m DOB
Griffin Canning (w/m DOB
David Fletcher (w/m DOB
Jose Rances Suarez Quintero (h/m DOB
Luis Garcia-Almonte (b/m DOB
Cameron Bedrosian (w/m DOB
Andrew Heaney (w/m DOB
Will Lenzner (w/m DOB
Justin Bour (w/m DOB
Brian Goodwin (b/m DOB
Jose Mota (w/m DOB
Kent French (w/m DOB
Hansel Robels (b/m DOB
Bradley Ausmus (w/m DOB
Michael Trout (w/m DOB
Jeremy Reed (w/m DOB
Adam Nevala (w/m DOB
Douglas White (w/m DOB
Kole Calhoun (w/m DOB
Andrew Bailey (w/m DOB
Jesus Feliciano (h/m DOB
Eric Munson (w/m DOB
Juan Manuel Del Campo Viramontes (h/m DOB
Andrelton Simmons (b/m DOB
Jonathan Lucroy (w/m DOB
Dustin Garneau (w/m DOB
Felix Ricardo Pena De Los Santos (b/m DOB
Shawn Wooten (w/m DOB
Adam Hunt (w/m DOB
Michael Ashman (w/m DOB



Yoichi Terada (a/m DOB
Jorge Sevilla (h/m DOB
Paul Sorrento (w/m DOB
Justin Upton (b/m DOB
Brian Harkins (w/m DOB
Michael Gallego (w/m DOB
Lee Fiocchi (w/m DOB
Matthew Martin (w/m DOB
Jose Benjamin Molin Matta (w/m DOB
Adam Auer (w/m DOB
Joshua William Paul (w/m DOB                )
Stephen Martone (w/m DOB
Bernard Li (w/m DOB
Thomas Taylor (w/m DOB
Justin Hatcher (w/m DOB !

The course of the interviewing was similar in structure and sequence; the following questions were asked to all individuals:

When was the last time you saw and/or spoke with T. Skaggs?
How was Skaggs' behavior and demeanor the last time you interacted with him?
Did you see Skaggs consume any alcoholic beverages on the plane and/or upon arrival at the hotel on June 31st, 2019 (Sunday)?
Are you aware of Skaggs using any prescription drugs or illegal drugs?

All answers from the aforementioned parties provided the same, if not identical responses to the questions. Those that had seen Skaggs on the plane ridefrom LA to DFW, advised he had consumed a few beers during the flight, but did not appear intoxicated or belligerent. Only afew persons mentioned that he may have been prescribed Xanax for the flights, but no one could confirm if he had taken one for this particular trip.
Ty Buttery had texted Skaggs on July 1st, 2019 at 0002 hours about carrying the speaker[s] from the bus next time around and Skaggs replied immediately at 0002 hours confirming he received Buttery's text; however, Buttery texted Skaggs again at 0014 hours, but never received a response.
Prior to closing the crime scene, I requested a written statement from Charles Knight (w/m DOB            , who had been working ina security capacity for the Los Angeles Angels team; Mr. Knight located Skaggs deceased and called 911. His written statement has been attached to the original case report for reference.
END OF REPORT.

## Supplement Narrative By Thomas Roberson, 07/24/19 14:38
**Crime Scene**

Incident Number: 19SP053735-1
Supplement by: Roberson,T. #1521
Date of Supplement: 07/23/2019
On July 1, 2019 around 1430 hours I, Det. T. Roberson #1521 was notified of a death investigation at 1400 Plaza Place, Hilton Hotel room 469, Southlake, Tarrant County, Texas. Upon arrival at room #469, I met with CID Sgt. J. Macheca, Det. D. Green, and Ofc. Branham. Once inside the room I observed a deceased white male (identified as Tyler Skaggs) lying face down on the sole bed in the room. Tyler was wearing black cowboy style boots, black jeans, black and silver belt, with no shirt. Lividity and rigor mortis were present and I observed blood and bodily fluids pooling from his nose and possibly mouth. A black cell phone was on the bed in close proximity to his right shoulder. There was an open pack of Haribo gummy bears by his hands and an unopened pack of Haribo gummy bears on the other side at the head of the bed.
The room appeared relatively undisturbed. The bathroom looked unused with only one small hand towel out of place on the counter. There were two bags on the couch still closed. There was no luggage in the room. There was a clear plastic bag on the coffee table with three unopened Michelob Ultra canned beers and a fourth on the desk also unopened. There was an IPad on the desk with a purple room key card and a small white plastic hollow cylinder (possibly the inner part of a pen). There was also a white powdery residue on the desk, room key card, and back of the IPad. The trash can contained two empty packages of Pedialyte electrolyte drink mixers .6 oz. The residue from the

packages was blue. I observed Tyler Skaggs' wallet on the dresser and it contained his identification and a large sum of cash. The contents of the wallet looked undisturbed. There was also a wedding band, another room key card, and two bottles of Fiji water. The water bottles had been opened and the contents were a blue color- consistent with the Pedialyte electrolyte drink mixers.

The Tarrant County Medical examiner's Office was notified at 1542 hours and arrived on scene at 1633 hours. Additional photos were then obtained of Tyler Skaggs once the ME Investigator Adriana Wood began her investigation. I observed no apparent injuries to Tyler Skaggs that would have caused injury or death.

Det. W. Wood assisted me in processing the scene and we collected the following items from the room:

Item 1.1- one room key card with white powder residue
Item 1.2- one room key card
Item 1.3 unknown powder from desk
Item 1.4- 18 capsules of Indomethacin ER 75mg
Item 1.5- white substance from floor collected by tape
Item 1.6-IPad with white substance on back of case
Item 1.7- black IPhone
Item 1.8- white plastic pen tube
Item1.9- one blue pill "M/30"
Item 1.10- five pink pills "K/56"
Item 1.11- wallet, ring, ID, cash, earbuds
Item 1.12- black cowboy hat and button shirt
Item 1.13- backpack with personal belongings
Item 1.14- one Normatec machine
Item 1.15- bed sheets with blood
Item 1.16- bedding with blood
Item 1.17- open bag of gummy bears

Items were returned to the Southlake Police Department and placed in a secured property locker. Items 1.15 and 1.16 were placed in a secured drying room and given time to dry before being packaged and sealed. The white powder residue was tested on scene and showed negative results for cocaine. I uploaded all photos to the Southlake Digital Evidence Library. See Supplement by Det. Green.

End of Report.

## Supplement Narrative By Delaney Green, 08/20/19 14:07

**Investigative Supplement**

Incident Number :19SP053735-4
Supplemented by:Green,D. #1594
Date of Supplement: 08/06/2019
On July 2nd, 2019, I, Detective D. Green #1594 was assigned Southlake case #19SP053735 for follow-up, review, and investigation.After initially responding to the crime scene on July 1st, 2019,T. Skaggs' bodywas released to the Tarrant County Medical Examiner's offense so an autopsy could be conducted.

Sgt. Macheca and I attended the autopsy on July 2nd, 2019, scheduled for 1000 hours. Uponour arrival, it was discovered that the Tarrant County Medical examiner's office was allowing T. Skaggs' immediate family to view the body prior to conducting the autopsy. T. Skaggs' immediate family included the following: his wife (Carli Skaggs), mother-in-law (Nina Miles), mother (Debbie Hetman), step-father (Dan Ramos), father (Darrell Skaggs), and step-brother (Garet Ramos). The family arrived at the Tarrant County Medical Examiner's office (200 Felik Gwozdz Place in Ft. Worth, TX)at approximately 1100 hours on July 2nd, 2019. The family viewed T. Skaggsbodyprior to initiating contact; at that time, I spoke with T. Skagg's mother, step-father, wife, and mother-in-law and explained the next steps in this investigation. Sgt. Macheca was asked by Garet Ramos to speak in private; reference Sgt. Macheca's supplement for further information.

The family opted to travel to Southlake PD Headquarters, located at 600 State Street in Southlake, TX later in the afternoon on July 2nd, 2019 to obtain T. Skaggs' property that was being held as safekeeping.

After the family left, anautopsy was completed by Dr. Krause. During the initial process, Dr. Krause ruled out that T. Skaggs had passed due to choking on a gummy bear. Dr. Krause opted to send the toxicology tubes to be expedited to determine what may have been present in T. Skaggs' system (i.e., alcohol, drugs, narcotics, stimulants, depressants,

etc.).

Sgt. Macheca and I returned to Southlake PD Headquarters and met with T. Skaggs' immediate family later that afternoon on July 2nd, 2019 (at approximately 1500 hours). The listed property that was beingheld for safekeeping was released to his wife. T. Skaggs cellphone andiPad were kept as evidence and consent was asked for from the family to search for any related information/evidence. It was explained that we would be looking for any incoming/outgoing phone calls before andafter T. Skaggs' passing. During the time of our meeting, the family opted to withhold the passcode to the electronics until they consulted with an attorney. However, at 1616 hours, I received a text from Ms. Miles, stating they would release the passcode to T. Skaggs' electronics for further analysis. The electronics were taken to the Grapevine PD Forensic Lab on July 17th, 2019; the analysis was completed and the electronics were received back on July 22nd, 2019. However, due the electronic analysis only completing a logical dump, I returned to Grapevine PD Forensic Lab on July 23rd, 2019 to take physical photographs of evidentiary texts/phone calls, etc. All electronic information has been added to the Virtual Evidence Locker for reference.

On July 22nd, 2019, I, Sgt. Macheca, and Captain Luna met with Southlake PD Chief Brandon in reference to information that he obtained over the weekend from the Tarrant Account District Attorney's office in relation to this case. It was explained that an attorney with Los Angeles Angels baseball team, who was later identified as John H. Cayce, Jr. with the Kelly Hart firm here in Ft. Worth, Texas, reached out to TCDA, advising that a 'Adam Chodkzo' came forward after receiving information from a 'Eric Kay'; both parties were identified as Los Angeles Angels staff employees. Eric Kay relayed to Adam that he had been with T. Skaggs the night they arrived in Texas and he latermet T. Skaggs in hishotel room where they 'did lines of coke together'. It was explained that Eric Kay already hired his own attorney: Michael Molfetta (                                    )

It should be noted that Eric Prescott (asnamed in theinterview notes)was interviewed on July 1st, 2019 along with the other staff members and players. Eric was the 5th person that came forward during our interview process.Ericexplained to Sgt. Macheca and I that he last saw T. Skaggs on the plane ride; he confirmed that T. Skaggs had consumed alcohol, but did 'not appear trashed'. Eric was unsure of T. Skaggs drug use, but thought maybe he used marijuana.

After obtaining this information, I travelled to Grapevine PD Forensic Lab on July 23rd, 2019 (as previously mentioned)and began photographing still images of T. Skaggs recent phone calls, text messages, etc. I located a contact by the name of'EK' (714-234-3916).The following text messages were exchanged between T. Skaggs and EK on June 30th, 2019 (the day the Angels left California and travelled to Texas).

June 30th, 2019 at 1435 hours: EK to T. Skaggs
Hoe many?
June 30th, 2019 at 1436 hours: T. Skaggs to EK
Just a few like 5
June 30th, 2019 at 1436 hours: EK to T. Skaggs
Word
June 30th, 2019 at 1436 hours: T. Skaggs to EK
Don't need many
June 30th, 2019 at 2347 hours: T. Skaggs to EK
469; Come by
June 30th, 2019 at 2350 hours: EK to T. Skaggs
K

On July 24th, 2019, Ms. Miles reached out and requested that the seized electronics from the crime scenebe returned to T. Skaggs' wife'sresidence as soon as possible. It was at this time, that I relayed the aforementioned information to Ms. Miles, Mrs. Skaggs, and T. Skaggs parents. I also explained that at this time, the electronics could not be returned based on the evidence that was discovered; all involved parties understood and stated they would aide intheinvestigation/prosecution in any way possible.

On July 25th, 2019, I met with DEA Investigator Brown and we discussed the current status of the investigation, and where to go moving forward. Inv. Brown advised that they had already ran T. Skaggs through their databases to view past prescription history; there was nothing of concern. The Los Angeles Angels team doctor was also ran, and showed a history of very minimal prescribed medications to patients/team players. Inv. Brown advised a subpoena will be issued for Eric Kay's associated telephone numbers for all phone records.

Shortly after that meeting, the Tarrant County Medical Examiner's office reached out, and Dr. Krauserequested thatthe prescription pills located in T. Skaggs' hotel room be picked up by TCME Investigator A. Wood immediately for testing. The 5 pink pills that were inscribed with 'K|56', and the 1 light blue pill inscribed with 'M' on one side, and '30' on the other side, were released to TCME Investigator Wood on July 25th, 2019. Investigator Wood's supplement initially identified these drugs; reference supplement for further information.

At this time, it was unknown why the TCME requested these drugs be tested immediately.

On July 29th, 2019, I reached out to Angels attorney, John Cayce, via telephone; this was audio recorded via Audacity and has been added to the Virtual Evidence Locker for reference. Mr. Cayce advised that the information originally provided to the Tarrant County District Attorney's was indeed accurate. It was explained that Eric Kay confided in Adam Chodzko about being with T. Skaggs the night they arrived in Texas; Chodzko then relayed this information to someone else in the Angels organization who then reported to the Angels' attorney (John Cayce). Mr. Cayce advised that he will be the point of contact for the Angels organization moving forward (i.e., interviews, questions, etc.).

On July 30th, 2019, I spoke with Mr. Molfetta, Eric Kay's attorney (not Angels associated), via telephone. It was requested that Eric Kay complete a follow-up interview with myself and Sgt. Macheca due to aforementioned information discovered during the course of the investigation. Mr. Molfetta was made aware that we'd fly to California for an interview if it was not financially feasible for Mr. Kay to meet us in Texas. Mr. Molfetta stated that Eric was currently in ▮▮▮ and would not be able to sit for an interview until approximately August 12th, 2019, when the rehab program ended. He did not have the financial means to travel, sothe interview would have to be conducted in California. I sent Mr. Molfetta an email with my contact information, and advised that I would follow-up in approximately two weeks, once Eric is out of ▮▮▮

I requested the remaining evidence to be sent to the TCME lab for processing/testing on July 30th, 2019. This include two Hilton key cards andcollected residue powder from the desk in T. Skaggs' hotel room. It was the requested thepowder residue be tested, and thekey cards examined for fingerprints.

On August 1st, 2019, I spoke with TCME Dr. Krause, who advised that the autopsy findings and toxicology were complete. The pills that were picked up by TCME Investigator Wood on July 25th, 2019 showed that the 5 pink 'K|56' were oxycodone, and the one light blue 'M' and '30' pillwas pure fentanyl. It was discovered that T. Skaggs had oxycodone andfentanyl in his blood stream at the time of his death; his blood alcohol level was at .122. Dr. Krause stated the oxycodone had been metabolizing for more time than the fentanyl. Although the amount of fentanyl in T. Skaggs system was small, he stated that if he wasn't use to taking it, or it was his first time, that amount could be lethal. With that said, Dr. Krause stated that T. Skaggs ultimately died due to 'choking on his own vomit'. The final ME report will not be released until the criminal investigation is finalized.

On August 9th, 2019, I contacted Mr. Molfetta via email requesting an update on Mr. Kay's rehab release date. I received no response.

It should be noted I have been observing and followingEric Kay's twitter account (@EKay2121) for recent activity since he went to rehab. Eric began re-tweeting and posting again on August 5th, 2019 after being 'silent' since July 13th, 2019.

On August 12th, 2019, I contacted Mr. Molfettaby phone and left a voicemail. I sent Mr. Molfetta a follow-up email later that same day requesting an update.

On August 13th and 14th, 2019, I received the ME's lab reports from the analysis of the key cards and the powder residue. The key cards did show to have fragmented friction ridge impression but was of no value due to insufficient ridge characteristics. The sealed piece of paper that contacted the powder residue fromthe desk of T. Skaggs' hotel room came back as 'residue containing fentanyl'.

On August 15th, 2019, I attempted to contact Mr. Molfetta by phone and left another voicemail. I then reached out to Mr. Cayce and requested an update of Mr. Kay's current employment status with the Angels, as well as an interview to be scheduled with Adam Chodzko. Mr. Cayce came back and stated that Mr. Kay is no longer on administrative leave, but he's also not working currently; he advised, "we don't quite know exactly where is he is at".

On August 19th, 2019, I interviewed Adam Chodzko (DOB ▮▮▮▮ via telephone, while Angels' attorneys John Cayce and Todd Theodora,represented him; this conversation was audio recorded via Audacity and added to the Virtual Evidence Locker for reference. Chodzko stated his title with the Angels was the Senior Manager of Communications, and he worked directly for Eric Kay, as he was the Director of Communications. He has been with the organization for ten years and he considershimself 'good friends' with Eric. Chodkzo advised that he was driving Eric home one day after work (after the incident with T. Skaggs), and Eric told him that Skaggs had texted after they arrived at the hotel, asking himto come to his hotel room. Eric told Chodkzo he said 'no', but then Skaggs asked again, and he said 'yes'. When Eric arrived in Skaggs' room,Skaggs had three lines of 'drugs' onthe menu on the desk, ready to go. Eric then told Skaggs thathe's not doing that anymore, and he's trying to stay clean'. Eric told Chodkzo when he leftSkaggs' room that 'he seemed fine' (unknown if Skaggs was still awake, passed out, etc.). Chodkzo told Eric that he needed to tell someone in the Clubhouse or he would have to. Chodkzo saidhe then showed up at Eric's house the following day and took him to ▮▮▮ Chodzko couldn't remember exact dates, but believed it to be a week or two after the date of theincident (July 1st, 2019). Eric did not mentioned what type of 'drugs' Skaggs lined out, as we previously thought it had been cocaine. Chodzkoadvised he has not spoken with Eric since he dropped him off at ▮▮▮

At the time of Chodzko's interview, 'no one' knows Eric's whereabouts and/or if he'll return to work any time soon. Some of the details relayed during Chodzko's interview differed from what was initially presented.The information also contradicted text messages discovered in T. Skaggs' cell phone between Skaggs and EK. Eric's attorney has not

returned any of my phone calls and/or emails as of today's date (August 20th, 2019).
All information has been relayed to the DEA, and a decision about moving forward with this investigation is expected to be determined in the first few weeks of September. The DEA is still waiting on a few outstanding subpoenas that have been issued in relationship to this case.
I advised the Medical Examiner that this investigation is still on-going; contact information for the DEA was provided to the ME's office for further contact.
As of now, this case is still pending investigation.
END OF REPORT.

## Supplement Narrative By Jonathan Macheca, 08/23/19 16:39
**Interview with family member**

Incident Number :19SP053735-5
Supplemented by:Macheca,J. #1100
Date of Supplement: 08/23/2019

On Tuesday July 2, 2019 Detective Delaney Green #1594 and I, Sgt. Jonathan Macheca #1100, attended the autopsy of Tyler Skaggs. Prior to the autopsy Mr. Skaggs' family was allowed to view his body. Detective Green and I were speaking with the family when his step-brother, Garet Ramos, asked if drugs were suspected. Mr. Ramos' demeanor suggested he had further knowledge of a possible history with drugs. Mr. Ramos then asked to speak with me in private.

Mr. Ramos informed me that he and Mr. Skaggs had grown up together and were close. He stated Skaggs had a history of prescription opioid drug abuse due to an injury in previous years. Because of the injury, Skaggs was prescribed prescription narcotics for recovery. Mr. Ramos advised he was once approached by Skaggs stating he had a problem with addiction. When asked if he knew how Skaggs would ingest the drugs, Mr. Ramos stated he "snorted" them. Mr. Ramos was also under the impression that Skaggs had previously received treatment for opioid abuse.

There is no further information at this time.

## Supplement Narrative By Weston Wood, 05/08/20 11:49
**Crime Scene Supplement**

Incident Number :19SP053735-3
Supplemented by: Wood,W. #1452
Date of Supplement: 07/25/2019
On July 1, 2019 at approximately 1430 hours, I was notified of a death investigation at 1400 Plaza Place (Hilton Hotel) Room # 469 in Southlake, Tarrant County, Texas. At approximately 1445 hours,Detective D. Greencontacted me for assistance. She stated that Det. Roberson wasabout to process the crime scene and needed assistance. Det. Green andCID Sergeant J.Macheca had approximately 60 players, coaching staff members, training staff members, and Angels personnel to interview.
I arrived on scene at 1502 hours and met with Officer Branham in order to sign the crime scene log before entering Room 469. I then entered the Room 469 and observed a deceased white male (later identified by CA Driver's License as Tyler Skaggs)to be lying face down on the onlybed located in the room. He was wearing black pants, a black and silver belt,and black cowboy boots. His forehead was resting in the crevice of his left elbow, which was extended underneath his body. His right arm was at a 90 degree angle and was out from underneath his body with his right hand resting beside his left hand. A black cell phone was lying on the bed just underneath his right shoulder and left hand. There was also an open package of Haribo gummy bears near his hands. There was another (unopened) package of gummy bears on the bed that was closer to the headboard. Post mortem lividitywas present. Blood and/or bodily fluids had emanated from his nose and mouth and were on his left arm and had pooled on the bed.
In observing the room, it appearedthat most things were still in place. There were two black bags on the couch that were closed. On the coffee table, there was a black cowboy hat and a clear and green plastic bag with three unopened Michelob Ultra cans in it.A black, red, green and purple colored long sleeve button up pearl snap shirt was draped over the rolling chair next to the desk. On the desk, there was a single unopened Michelob Ultra beer can. There was also an envelope with a room key card instruction pamphlet. There was also an iPad lying face down with white powdery residue on it. There was also a room key card with a white, powdery residue on it. On the desk around the iPad, there was more white powdery residue. There was also a white, hollow, cylindrical, plastic tube that was once the outside of a Bic Clic Stic writing pen. The tube had no other parts to it. On the carpet, just below the table, but not underneath it,

there was more white powdery/granular residue.

Det. Roberson and I used a room key card (Item 1.2)that was located on the dresser that did not have residue on it to gather all the white powdery/granular residue that was located on the desk. I obtained a clean8 1/2" x 11" sheet of paper from Det. Roberson and swept the residue into the piece of paper with the aforementioned clean room key card. When all residue was swept off the desk, I tapped the key card with my finger in order to get the rest of the residue to fallinto the paper. I then folded the paper multiple times, keeping the residue inside the folds,and taped the open ends shut to keep the residue inside the paper. Det. Roberson used clear masking tape to collect the multiple white fragments from the carpet below the desk. He applied the tape to a sheet of paper (Item 1.5) for evidence collection.I swabbed both the pen tube (bothends)and part of the key card containing residue with cocaine swabs and results showed negative for the presence of cocaine.

In the black and grey checkered backpack on the couch, Officer Roberson located a white prescription pill bottle with the name Brian Schulz (Angels physician) on it. The bottle did not have Skaggs' name on it. The prescription was for indomethacin 75 mg capsules. In looking inside the bottle, there were 18 capsules of indomethacin. There was also five pink pills labeled "K/56" on one side and a blank backside. There was one light blue/white pill labeled "M" with a square around it on one side and "30" on the other side. I contacted Texas Poison Control and inquired about the pills. I described the pink pills and Operator # 186 identified the pills as 10 mg oxycodone pills. I described the light blue/white pill and Operator # 186 identified the pills as a 30 mg oxycodone pill.Based onmy training and experience as a narcotics investigator, I know that long hollow objects such as this white tube are commonly used as "snort straws" to ingest powdery/granular substances (such as the whitepowder/fragments located on the table, iPad and key card) . I also know that items with a hard, straight edge(such asthe room key card with white powdery residue on it) are commonly used to move substances along a flat surface to keep the substance together and to make a "line" that is then easier to snort. I also know that even when a powdery/granular substance is inhaled, it often leaves behind a powdery residue on the surface it was snorted from, unless the surface is wiped clean.

When TCME Investigator Woods arrived on scene, Det. Roberson and I were able to observe that rigor was present in the decedent. I did not observe any signs of an injury or trauma that would have caused injury or death to the decedent. When the transport team took possession of the body, Det. Roberson and I collected the bed sheets and bedding as evidence. See Det. Roberson's supplement for a list of items taken from the room.All evidence/safekeeping items were entered into the Southlake DPS East Property Room, excluding the bed sheets and bedding, which were placed in the vehicle bay to dry out.

There is nothing further to report at this time.

END

## Supplement Narrative By Delaney Green, 08/12/20 13:42

**Final Close Out Supplement**

Incident Number :19SP053735-6
Supplemented by:Green,D. #1594
Date of Supplement: 08/12/2020

This case was transferred to the DEA towards the 1st of September 2019; they proceeded to handle the investigation with additional interviews, subpoenas, search warrants, etc.

Eric Kay was interviewed on September 25th, 2019 by the DEA and the United States Attorney at 801 Cherry Street in Ft. Worth, TX 76102. I did not audio/video record this interview as it was led by , and only took notes during the duration of the interview. I have attached my interview notes to the original case file, and added a digital copy to the Virtual Evidence Locker for reference.

I was notified on August 6th, 2020 that a federal warrant was issued for Eric Kay for: Conspiracy to Distribute Fentanyl; Eric Kay turned himself in the following day on August 7th, 2020.

It should be noted that Southlake PD received a 'legal mailed' envelope on an unknown date from Rockwall County Inmate Jail from a Dustin Sorr____ (unknown spelling) due to apostage sticker covering up the return address. This handwritten letter did not seem relevant to the case but it has been attached to the original case file and to the VEL for reference.

At this time, our case will be closed, cleared exceptionally [transferred to outside agency].

END OF REPORT.

Exhibit 6

Grapevine PD TPIA Request #1
June 26, 2024

| | |
|---|---|
| **From:** | E. Ladsous , Delta 7 Group |
| **To:** | mhamlin@grapevinetexas.gov |
| **Cc:** | Jessica Hernandez Diotalevi |
| **Bcc:** | sladsous@tocounsel.com |
| **Subject:** | Texas Public Information Act Request – Tyler Wayne Skaggs (Deceased) – Southlake PD Case No. SPD-19SP053735 |
| **Date:** | Wednesday, June 26, 2024 12:32:00 PM |
| **Attachments:** | image001.png |
| | image002.png |
| | image003.png |
| | Angels Baseball - Letter of Representation - Grapevine PD.pdf |

**To:** Chief of Police Mike Hamlin

**Grapevine Police Department**

1007 Ira E. Woods Avenue

Grapevine, TX 76051

**Subject:** Texas Public Information Act Request – Tyler Wayne Skaggs (Deceased) – Southlake PD Case No. SPD-19SP053735

Dear Chief Hamlin,

I hope this email finds you well. I am a former FBI Agent currently performing litigation support services for the firm representing the Los Angeles Angels. I have been tasked with collecting evidence in preparation for an upcoming trial, and I need your assistance with this request.

I am writing to formally request access to digital forensics records and analyses related to the case of Tyler Wayne Skaggs, born on July 13, 1991, under the Texas Public Information Act (TPIA). Our firm, Theodora Oringher PC, represents Defendant Angels Baseball LP in the case entitled **Skaggs, et al. vs. Angels Baseball LP**, Orange County Superior Court Case No. 30-2021-01231706-CU-PO-NJC. The Southlake Police Department case number is **SPD-19SP053735**.

Theodora Oringher PC has retained Delta 7 Group, LLC to assist in this investigation. According to the Southlake PD Report, the Grapevine PD Laboratory conducted the digital forensics of the items seized during the investigation. Specifically, I am requesting:

1. **Forensic Image Files**: Please provide copies of the forensic images of the following digital media obtained during the investigation:
   - Mobile phone – Tyler Skaggs' Apple iPhone, black, collected by Thomas Robertson on 07/01/19 at 17:30, at 1400 PLAZA PL 469, Southlake, TX.
   - iPads – Apple iPad, Model A1670, S/N DLXV60JDHPJ6, collected by Thomas Robertson on 07/01/19 at 17:30, at 1400 PLAZA PL 469, Southlake, TX.

   These image files should include all associated metadata and be provided on suitable digital media (e.g., USB drive, DVD).

2. **Forensic Analysis Reports**: Copies of all reports associated with the forensic

**455**

analysis of the aforementioned digital media. This includes but is not limited to imaging reports, data extraction reports, procedural documentation, and any other relevant documentation related to the digital forensic examination.

Delta 7 Group, LLC will cover any costs of providing copies of the forensic image files and related documents.

For any questions regarding this request, please contact Jessica H. Diotalevi, Esq., at jdiotalevi@tocounsel.com or 714-549-6188. Delta 7 Group, LLC will cover any associated costs for processing this TPIA request.

Thank you for your assistance in this matter.

Sincerely,

Emmanuel Ladsous

_____

**Emmanuel Ladsous** **(FBI 1988-2011)**

President / Private Investigator

**Delta 7 Group, LLC**

A Professional Security Consultancy

4712 E 2nd Street, Suite 231

Long Beach, CA 90803-5309

Phone:  (800) 689-6546, Ext. 700

Mobile: (949) 423-4350

Email address:  E.Ladsous@Delta7Group.com

Website:       www.Delta7Group.com

CA PI License#    188424





**This email is unsecured and subject to monitoring.**

CONFIDENTIALITY NOTICE:  This communication and any documents, files, or previous email messages attached constitute an electronic communication within the scope of the Electronic Communication Privacy Act, 18 U.S. Code § 2510. This communication may contain non-public, confidential, or legally privileged information intended for the designated recipient(s) sole use. The unlawful interception, use, or disclosure of such communication is strictly prohibited under 18 U.S. Code § 2511 and applicable laws. If you are not the intended recipient or have received this communication in error, please notify the sender immediately by email to E.Ladsous@Delta7Group.com and delete all copies of this communication, including attachments, without reading or saving them in any matter.

| From: | E. Ladsous _ Delta 7 Group |
|---|---|
| To: | Michael Hamlin |
| Cc: | Jessica Hernandez Diotalevi |
| Bcc: | sladsous@tocounsel.com |
| Subject: | RE: Texas Public Information Act Request – Tyler Wayne Skaggs (Deceased) - Grapevine PD Lab - Digital Forensics in support of Southlake PD Case No. SPD-19SP053735 |
| Date: | Wednesday, June 26, 2024 1:17:00 PM |
| Attachments: | image001.png |
| | image002.png |
| | image003.png |
| | image004.png |
| | Redacted Records Released 6-26-24.pdf |

Hello again, Chief Hamlin,

I am sorry for the confusion.

The Southlake Police Department indicated in their report (Case No. SPD-19SP053735) that the Grapevine PD Lab performed a forensic examination of the digital media in their case. I attached a copy of their report for your information. I also extracted the following information.

> passed it to the second lab and they contacted with an attorney. However, Dr. Fitts-Miles, I received a text from the Miles, stating they would release the passcode to T. Skaggs' electronics for further analysis. The electronics were taken to the Grapevine PD Forensic Lab on July 17th, 2019; the analysis was completed and the electronics were received back on July 22nd, 2019. However, due the electronic analysis only completing a logical dump, I returned to Grapevine PD Forensic Lab on July 23rd, 2019 to take physical photographs of evidentiary texts/phone calls, etc. All electronic information has been added to the Virtual Evidence Locker for reference.

Can you direct me to your forensic lab? I don't think the Southlake PD would have the image files.

I appreciate your assistance.

Sincerely,

Emmanuel

_____

**Emmanuel Ladsous (FBI 1988-2011)**
President / Private Investigator
**Delta 7 Group, LLC**
A Professional Security Consultancy
4712 E 2nd Street, Suite 231
Long Beach, CA 90803-5309
Phone: (800) 689-6546, Ext. 700
Mobile: (949) 423-4350
Email address: E.Ladsous@Delta7Group.com
Website: www.Delta7Group.com
CA PI License# 188424



 

This email is unsecured and subject to monitoring.

CONFIDENTIALITY NOTICE: This communication and any documents, files, or previous email messages attached constitute an electronic communication within the scope of the Electronic Communication Privacy Act, 18 U.S. Code § 2510. This communication may contain non-public, confidential, or legally privileged information intended for the designated recipient(s) sole use. The unlawful interception, use, or disclosure of such information is strictly prohibited under 18 U.S. Code § 2511 and applicable laws. If you are not the intended recipient or have received this communication in error, please notify the sender immediately by email to E.Ladsous@Delta7Group.com and delete all copies of this communication, including attachments, without reading or saving them in any matter.

**From:** Michael Hamlin <mhamlin@grapevinetexas.gov>
**Sent:** Wednesday, June 26, 2024 12:48 PM
**To:** E. Ladsous . Delta 7 Group <e.ladsous@delta7group.com>
**Subject:** Re: Texas Public Information Act Request – Tyler Wayne Skaggs (Deceased) – Southlake PD Case No. SPD-19SP053735

Sir,
I don't work for Southlake PD.

Mike Hamlin

On Jun 26, 2024, at 14:33, E. Ladsous . Delta 7 Group <e.ladsous@delta7group.com> wrote:

*** EXTERNAL EMAIL COMMUNICATION - PLEASE USE CAUTION BEFORE CLICKING LINKS AND/OR OPENING ATTACHMENTS ***

**To:** Chief of Police Mike Hamlin
**Grapevine Police Department**
1007 Ira E. Woods Avenue
Grapevine, TX 76051
**Subject:** Texas Public Information Act Request – Tyler Wayne Skaggs (Deceased) – Southlake PD Case No. SPD-19SP053735
Dear Chief Hamlin,

I hope this email finds you well. I am a former FBI Agent currently performing litigation support services for the firm representing the Los Angeles Angels. I have been tasked with collecting evidence in preparation for an upcoming trial, and I need your assistance with this request.

I am writing to formally request access to digital forensics records and analyses related to the case of Tyler Wayne Skaggs, born on July 13, 1991, under the Texas Public Information Act (TPIA). Our firm, Theodora Oringher PC, represents Defendant Angels Baseball LP in the case entitled **Skaggs, et al. vs. Angels Baseball LP**, Orange County Superior Court Case No. 30-2021-01231706-CU-PO-NJC. The Southlake Police Department case number is **SPD-19SP053735**.

Theodora Oringher PC has retained Delta 7 Group, LLC to assist in this investigation.

According to the Southlake PD Report, the Grapevine PD Laboratory conducted the digital forensics of the items seized during the investigation. Specifically, I am requesting:

1. **Forensic Image Files**: Please provide copies of the forensic images of the following digital media obtained during the investigation:

    1. Mobile phone – Tyler Skaggs' Apple iPhone, black, collected by Thomas Robertson on 07/01/19 at 17:30, at 1400 PLAZA PL 469, Southlake, TX.
    2. iPads – Apple iPad, Model A1670, S/N DLXV60JDHPJ6, collected by Thomas Robertson on 07/01/19 at 17:30, at 1400 PLAZA PL 469, Southlake, TX.

    These image files should include all associated metadata and be provided on suitable digital media (e.g., USB drive, DVD).

2. **Forensic Analysis Reports**: Copies of all reports associated with the forensic analysis of the aforementioned digital media. This includes but is not limited to imaging reports, data extraction reports, procedural documentation, and any other relevant documentation related to the digital forensic examination.

Delta 7 Group, LLC will cover any costs of providing copies of the forensic image files and related documents.

For any questions regarding this request, please contact Jessica H. Diotalevi, Esq., at jdiotalevi@tocounsel.com or 714-549-6188.

Delta 7 Group, LLC will cover any associated costs for processing this TPIA request.

Thank you for your assistance in this matter.

Sincerely,

Emmanuel Ladsous

_____

**Emmanuel Ladsous** (FBI 1988-2011)
President / Private Investigator
**Delta 7 Group, LLC**
A Professional Security Consultancy
4712 E 2nd Street, Suite 231
Long Beach, CA 90803-5309
Phone:  (800) 689-6546, Ext. 700
Mobile:  (949) 423-4350
Email address:  E.Ladsous@Delta7Group.com
Website:      www.Delta7Group.com
CA PI License#    188424

<image001.png>


<image002.png>

<image003.png>

**This email is unsecured and subject to monitoring.**

CONFIDENTIALITY NOTICE:  This communication and any documents, files, or previous email messages attached constitute an electronic communication within the scope of the Electronic Communication Privacy Act, 18 U.S. Code § 2510. This communication may contain non-public, confidential, or legally privileged information intended for the designated recipient(s) sole use. The unlawful interception, use, or disclosure of such information is strictly prohibited under 18 U.S. Code § 2511 and applicable laws. If you are not the intended recipient or have received this communication in error, please notify the sender immediately by email to E.Ladsous@Delta7Group.com and delete all copies of this communication, including attachments, without reading or saving them in any matter.

<Angels Baseball - Letter of Representation - Grapevine PD.pdf>

| | |
|---|---|
| **From:** | Sarah Severn |
| **To:** | E. Ladsous . Delta 7 Group |
| **Subject:** | FW: Texas Public Information Act Request – Tyler Wayne Skaggs (Deceased) - Grapevine PD Lab - Digital Forensics in support of Southlake PD Case No. SPD-19SP053735 |
| **Date:** | Thursday, June 27, 2024 5:38:48 AM |
| **Attachments:** | image001.png |
| | image002.png |
| | image003.png |
| | image004.png |
| | Redacted Records Released 6-26-24.pdf |

Good morning,

The Grapevine Police Department does not maintain any records related to this Southlake incident.  The examination was completed, and the data extracted, and devices were turned over/returned to Southlake PD.   They would have needed the image files to submit with their case, I would imagine.

Respectfully,

*Sarah Severn*

*Grapevine Police Department*
*Police Support Services Manager*
*817-410-3221*
ssevern@grapevinetexas.gov
records@grapevinetexas.gov


**From:** "E. Ladsous . Delta 7 Group" <e.ladsous@delta7group.com>
**Date:** June 26, 2024 at 15:18:55 CDT
**To:** Michael Hamlin <mhamlin@grapevinetexas.gov>
**Cc:** Jessica Hernandez Diotalevi <jdiotalevi@tocounsel.com>
**Subject: RE: Texas Public Information Act Request – Tyler Wayne Skaggs (Deceased) - Grapevine PD Lab - Digital Forensics in support of Southlake PD Case No. SPD-19SP053735**


\*\*\* EXTERNAL EMAIL COMMUNICATION - PLEASE USE CAUTION BEFORE CLICKING LINKS AND/OR OPENING ATTACHMENTS \*\*\*

Hello again, Chief Hamlin,

I am sorry for the confusion.

**460**

The Southlake Police Department indicated in their report (Case No. SPD-19SP053735) that the Grapevine PD Lab performed a forensic examination of the digital media in their case. I attached a copy of their report for your information. I also extracted the following information.

Can you direct me to your forensic lab? I don't think the Southlake PD would have the image files.

I appreciate your assistance.

Sincerely,

Emmanuel

_____

**Emmanuel Ladsous (FBI 1988-2011)**
President / Private Investigator
**Delta 7 Group, LLC**
A Professional Security Consultancy
4712 E 2nd Street, Suite 231
Long Beach, CA 90803-5309
Phone:   (800) 689-6546, Ext. 700
Mobile:  (949) 423-4350
Email address: E.Ladsous@Delta7Group.com
Website:       www.Delta7Group.com
CA PI License#     188424

**This email is unsecured and subject to monitoring.**

CONFIDENTIALITY NOTICE:  This communication and any documents, files, or previous email messages attached constitute an electronic communication within the scope of the Electronic Communication Privacy Act, 18 U.S. Code § 2510. This communication may contain non-public, confidential, or legally privileged information intended for the designated recipient(s) sole use. The unlawful interception, use, or disclosure of such information is strictly prohibited under 18 U.S. Code § 2511 and applicable laws. If you are not the intended recipient or have received this communication in error, please notify the sender immediately by email to E.Ladsous@Delta7Group.com and delete all copies of this communication, including attachments, without reading or saving them in any matter.

**From:** Michael Hamlin <mhamlin@grapevinetexas.gov>
**Sent:** Wednesday, June 26, 2024 12:48 PM

**To:** E. Ladsous . Delta 7 Group <e.ladsous@delta7group.com>
**Subject:** Re: Texas Public Information Act Request – Tyler Wayne Skaggs (Deceased) – Southlake PD Case No. SPD-19SP053735

Sir,
I don't work for Southlake PD.

Mike Hamlin


On Jun 26, 2024, at 14:33, E. Ladsous . Delta 7 Group <e.ladsous@delta7group.com> wrote:


*** EXTERNAL EMAIL COMMUNICATION - PLEASE USE CAUTION BEFORE CLICKING LINKS AND/OR OPENING ATTACHMENTS ***

**To:** Chief of Police Mike Hamlin
**Grapevine Police Department**
1007 Ira E. Woods Avenue
Grapevine, TX 76051
**Subject:** Texas Public Information Act Request – Tyler Wayne Skaggs (Deceased) – Southlake PD Case No. SPD-19SP053735
Dear Chief Hamlin,
I hope this email finds you well. I am a former FBI Agent currently performing litigation support services for the firm representing the Los Angeles Angels. I have been tasked with collecting evidence in preparation for an upcoming trial, and I need your assistance with this request.
I am writing to formally request access to digital forensics records and analyses related to the case of Tyler Wayne Skaggs, born on July 13, 1991, under the Texas Public Information Act (TPIA). Our firm, Theodora Oringher PC, represents Defendant Angels Baseball LP in the case entitled **Skaggs, et al. vs. Angels Baseball LP**, Orange County Superior Court Case No. 30-2021-01231706-CU-PO-NJC. The Southlake Police Department case number is **SPD-19SP053735**.
Theodora Oringher PC has retained Delta 7 Group, LLC to assist in this investigation.

**462**

<u>According to the Southlake PD Report, the Grapevine PD Laboratory conducted the digital forensics of the items seized during the investigation</u>. Specifically, I am requesting:

1. **Forensic Image Files**: Please provide copies of the forensic images of the following digital media obtained during the investigation:

   1. Mobile phone – Tyler Skaggs' Apple iPhone, black, collected by Thomas Robertson on 07/01/19 at 17:30, at 1400 PLAZA PL 469, Southlake, TX.
   2. iPads – Apple iPad, Model A1670, S/N DLXV60JDHPJ6, collected by Thomas Robertson on 07/01/19 at 17:30, at 1400 PLAZA PL 469, Southlake, TX.

   These image files should include all associated metadata and be provided on suitable digital media (e.g., USB drive, DVD).

2. **Forensic Analysis Reports**: Copies of all reports associated with the forensic analysis of the aforementioned digital media. This includes but is not limited to imaging reports, data extraction reports, procedural documentation, and any other relevant documentation related to the digital forensic examination.

Delta 7 Group, LLC will cover any costs of providing copies of the forensic image files and related documents.

For any questions regarding this request, please contact Jessica H. Diotalevi, Esq., at jdiotalevi@tocounsel.com or 714-549-6188.

Delta 7 Group, LLC will cover any associated costs for processing this TPIA request.

Thank you for your assistance in this matter.

Sincerely,

Emmanuel Ladsous

_____

**Emmanuel Ladsous (FBI 1988-2011)**
President / Private Investigator
**Delta 7 Group, LLC**
A Professional Security Consultancy
4712 E 2nd Street, Suite 231
Long Beach, CA 90803-5309

**463**

Phone:  (800) 689-6546, Ext. 700

Mobile: (949) 423-4350

Email address:  E.Ladsous@Delta7Group.com

Website:       www.Delta7Group.com

CA PI License#    188424

<image001.png>

<image002.png>

<image003.png>

**This email is unsecured and subject to monitoring.**

CONFIDENTIALITY NOTICE:  This communication and any documents, files, or previous email messages attached constitute an electronic communication within the scope of the Electronic Communication Privacy Act, 18 U.S. Code § 2510. This communication may contain non-public, confidential, or legally privileged information intended for the designated recipient(s) sole use. The unlawful interception, use, or disclosure of such information is strictly prohibited under 18 U.S. Code § 2511 and applicable laws. If you are not the intended recipient or have received this communication in error, please notify the sender immediately by email to E.Ladsous@Delta7Group.com and delete all copies of this communication, including attachments, without reading or saving them in any matter.

<Angels Baseball - Letter of Representation - Grapevine PD.pdf>

| From: | E. Ladsous . Delta 7 Group |
|---|---|
| To: | Sarah Severn |
| Cc: | Jessica Hernandez Diotalevi |
| Bcc: | sladsous@tocounsel.com |
| Subject: | RE: Texas Public Information Act Request – Tyler Wayne Skaggs (Deceased) - Grapevine PD Lab - Digital Forensics in support of Southlake PD Case No. SPD-19SP053735 |
| Date: | Thursday, June 27, 2024 8:53:36 AM |
| Attachments: | image001.png |
| | image002.png |
| | image003.png |

Good morning, Sarah,

Thank you for the clarification. I will contact the Southlake PD.

Thank you for your service.

Sincerely,

Emmanuel

_____

**Emmanuel Ladsous**

President / Private Investigator

**Delta 7 Group, LLC**

A Professional Security Consultancy

4712 E 2nd Street, Suite 231

Long Beach, CA 90803-5309

Phone:  (800) 689-6546, Ext. 700

Mobile: (949) 423-4350

Email address:  E.Ladsous@Delta7Group.com

Website:      www.Delta7Group.com

CA PI License#    188424






**This email is unsecured and subject to monitoring.**

CONFIDENTIALITY NOTICE:  This communication and any documents, files, or previous email messages attached constitute an electronic communication within the scope of the Electronic Communication Privacy Act, 18 U.S. Code § 2510. This communication may contain non-public, confidential, or legally privileged information intended for the designated recipient(s) sole use. The unlawful interception, use, or disclosure of such information is strictly prohibited under 18 U.S. Code § 2511 and applicable laws. If you are not the

**465**

intended recipient or have received this communication in error, please notify the sender immediately by email to E.Ladsous@Delta7Group.com and delete all copies of this communication, including attachments, without reading or saving them in any matter.

**From:** Sarah Severn <ssevern@grapevinetexas.gov>
**Sent:** Thursday, June 27, 2024 5:38 AM
**To:** E. Ladsous . Delta 7 Group <e.ladsous@delta7group.com>
**Subject:** FW: Texas Public Information Act Request – Tyler Wayne Skaggs (Deceased) - Grapevine PD Lab - Digital Forensics in support of Southlake PD Case No. SPD-19SP053735

Good morning,

The Grapevine Police Department does not maintain any records related to this Southlake incident.  The examination was completed, and the data extracted, and devices were turned over/returned to Southlake PD.   They would have needed the image files to submit with their case, I would imagine.

Respectfully,


*Sarah Severn*

*Grapevine Police Department*
*Police Support Services Manager*
*817-410-3221*
ssevern@grapevinetexas.gov
records@grapevinetexas.gov


**From:** "E. Ladsous . Delta 7 Group" <e.ladsous@delta7group.com>
**Date:** June 26, 2024 at 15:18:55 CDT
**To:** Michael Hamlin <mhamlin@grapevinetexas.gov>
**Cc:** Jessica Hernandez Diotalevi <jdiotalevi@tocounsel.com>
**Subject: RE: Texas Public Information Act Request – Tyler Wayne Skaggs (Deceased) - Grapevine PD Lab - Digital Forensics in support of Southlake PD Case No. SPD-19SP053735**


*** EXTERNAL EMAIL COMMUNICATION - PLEASE USE CAUTION BEFORE CLICKING LINKS AND/OR OPENING ATTACHMENTS ***

Hello again, Chief Hamlin,

I am sorry for the confusion.

The Southlake Police Department indicated in their report (Case No. SPD-19SP053735) that the Grapevine PD Lab performed a forensic examination of the digital media in their case. I attached a copy of their report for your information. I also extracted the following information.

Can you direct me to your forensic lab? I don't think the Southlake PD would have the image files.

I appreciate your assistance.

Sincerely,

Emmanuel

---

**Emmanuel Ladsous (FBI 1988-2011)**
President / Private Investigator
**Delta 7 Group, LLC**
A Professional Security Consultancy
4712 E 2nd Street, Suite 231
Long Beach, CA 90803-5309
Phone:  (800) 689-6546, Ext. 700
Mobile:  (949) 423-4350
Email address: E.Ladsous@Delta7Group.com
Website:       www.Delta7Group.com
CA PI License#    188424

**This email is unsecured and subject to monitoring.**

CONFIDENTIALITY NOTICE:  This communication and any documents, files, or previous email messages attached constitute an electronic communication within the scope of the Electronic Communication Privacy Act, 18 U.S. Code § 2510. This communication may contain non-public, confidential, or legally privileged information intended for the designated recipient(s) sole use. The unlawful interception, use, or disclosure of such information is strictly prohibited under 18 U.S. Code § 2511 and applicable laws. If you are not the intended recipient or have received this communication in error, please notify the sender immediately by email to E.Ladsous@Delta7Group.com and delete all copies of this communication, including attachments, without reading or saving them in any matter.

**From:** Michael Hamlin <mhamlin@grapevinetexas.gov>
**Sent:** Wednesday, June 26, 2024 12:48 PM
**To:** E. Ladsous . Delta 7 Group <e.ladsous@delta7group.com>
**Subject:** Re: Texas Public Information Act Request – Tyler Wayne Skaggs (Deceased) – Southlake PD Case No. SPD-19SP053735

Sir,
I don't work for Southlake PD.

Mike Hamlin

> On Jun 26, 2024, at 14:33, E. Ladsous . Delta 7 Group <e.ladsous@delta7group.com> wrote:

**\*\*\* EXTERNAL EMAIL COMMUNICATION - PLEASE USE CAUTION BEFORE CLICKING LINKS AND/OR OPENING ATTACHMENTS \*\*\***

**To:** Chief of Police Mike Hamlin
**Grapevine Police Department**
1007 Ira E. Woods Avenue
Grapevine, TX 76051
**Subject:** Texas Public Information Act Request – Tyler Wayne Skaggs (Deceased) – Southlake PD Case No. SPD-19SP053735
Dear Chief Hamlin,
I hope this email finds you well. I am a former FBI Agent currently performing litigation support services for the firm representing the Los Angeles Angels. I have been tasked with collecting evidence in preparation for an upcoming trial, and I need your assistance with this request.
I am writing to formally request access to digital forensics records and analyses related to the case of Tyler Wayne Skaggs, born on July 13, 1991, under the Texas Public Information Act (TPIA). Our firm, Theodora Oringher PC, represents Defendant Angels Baseball LP in the case entitled **Skaggs, et al. vs. Angels Baseball LP**, Orange County Superior Court Case No. 30-2021-01231706-CU-PO-NJC. The Southlake Police Department case number is **SPD-19SP053735**.

**468**

Theodora Oringher PC has retained Delta 7 Group, LLC to assist in this investigation.

<u>According to the Southlake PD Report, the Grapevine PD Laboratory conducted the digital forensics of the items seized during the investigation</u>. Specifically, I am requesting:

1. **Forensic Image Files**: Please provide copies of the forensic images of the following digital media obtained during the investigation:

   1. Mobile phone – Tyler Skaggs' Apple iPhone, black, collected by Thomas Robertson on 07/01/19 at 17:30, at 1400 PLAZA PL 469, Southlake, TX.
   2. iPads – Apple iPad, Model A1670, S/N DLXV60JDHPJ6, collected by Thomas Robertson on 07/01/19 at 17:30, at 1400 PLAZA PL 469, Southlake, TX.

   These image files should include all associated metadata and be provided on suitable digital media (e.g., USB drive, DVD).

2. **Forensic Analysis Reports**: Copies of all reports associated with the forensic analysis of the aforementioned digital media. This includes but is not limited to imaging reports, data extraction reports, procedural documentation, and any other relevant documentation related to the digital forensic examination.

Delta 7 Group, LLC will cover any costs of providing copies of the forensic image files and related documents.

For any questions regarding this request, please contact Jessica H. Diotalevi, Esq., at jdiotalevi@tocounsel.com or 714-549-6188.

Delta 7 Group, LLC will cover any associated costs for processing this TPIA request.

Thank you for your assistance in this matter.

Sincerely,

Emmanuel Ladsous

---

**Emmanuel Ladsous (FBI 1988-2011)**
President / Private Investigator
**Delta 7 Group, LLC**
A Professional Security Consultancy

**469**

4712 E 2nd Street, Suite 231

Long Beach, CA 90803-5309

Phone:  (800) 689-6546, Ext. 700

Mobile: (949) 423-4350

Email address: E.Ladsous@Delta7Group.com

Website:        www.Delta7Group.com

CA PI License#     188424

<image001.png>

<image002.png>

<image003.png>

**This email is unsecured and subject to monitoring.**

CONFIDENTIALITY NOTICE:  This communication and any documents, files, or previous email messages attached constitute an electronic communication within the scope of the Electronic Communication Privacy Act, 18 U.S. Code § 2510. This communication may contain non-public, confidential, or legally privileged information intended for the designated recipient(s) sole use. The unlawful interception, use, or disclosure of such information is strictly prohibited under 18 U.S. Code § 2511 and applicable laws. If you are not the intended recipient or have received this communication in error, please notify the sender immediately by email to E.Ladsous@Delta7Group.com and delete all copies of this communication, including attachments, without reading or saving them in any matter.

<Angels Baseball - Letter of Representation - Grapevine PD.pdf>

| | |
|---|---|
| **From:** | Sarah Severn |
| **To:** | E. Ladsous . Delta 7 Group |
| **Subject:** | RE: Texas Public Information Act Request – Tyler Wayne Skaggs (Deceased) - Grapevine PD Lab - Digital Forensics in support of Southlake PD Case No. SPD-19SP053735 |
| **Date:** | Thursday, June 27, 2024 9:22:51 AM |

It is very possible that the detectives from Southlake **used our** equipment and did the download themselves.   Might be worth checking.

---

**From:** Sarah Severn
**Sent:** Thursday, June 27, 2024 07:38 AM
**To:** 'e.ladsous@delta7group.com' <e.ladsous@delta7group.com>
**Subject:** FW: Texas Public Information Act Request – Tyler Wayne Skaggs (Deceased) - Grapevine PD Lab - Digital Forensics in support of Southlake PD Case No. SPD-19SP053735

Good morning,

The Grapevine Police Department does not maintain any records related to this Southlake incident.  The examination was completed, and the data extracted, and devices were turned over/returned to Southlake PD.   They would have needed the image files to submit with their case, I would imagine.

Respectfully,


*Sarah Severn*

*Grapevine Police Department*
*Police Support Services Manager*
*817-410-3221*
ssevern@grapevinetexas.gov
records@grapevinetexas.gov



**From:** "E. Ladsous . Delta 7 Group" <e.ladsous@delta7group.com>
**Date:** June 26, 2024 at 15:18:55 CDT
**To:** Michael Hamlin <mhamlin@grapevinetexas.gov>
**Cc:** Jessica Hernandez Diotalevi <jdiotalevi@tocounsel.com>
**Subject: RE: Texas Public Information Act Request – Tyler Wayne Skaggs (Deceased) - Grapevine PD Lab - Digital Forensics in support of Southlake PD Case No. SPD-19SP053735**

*** EXTERNAL EMAIL COMMUNICATION - PLEASE USE CAUTION
BEFORE CLICKING LINKS AND/OR OPENING ATTACHMENTS ***

Hello again, Chief Hamlin,

I am sorry for the confusion.

The Southlake Police Department indicated in their report  (Case No. SPD-
19SP053735) that the Grapevine PD Lab performed a forensic examination of the
digital media in their case. I attached a copy of their report for your information. I
also extracted the following information.


Can you direct me to your forensic lab? I don't think the Southlake PD would have
the image files.

I appreciate your assistance.

Sincerely,

Emmanuel

_____

**Emmanuel Ladsous (FBI 1988-2011)**
President / Private Investigator
**Delta 7 Group, LLC**
A Professional Security Consultancy
4712 E 2nd Street, Suite 231
Long Beach, CA 90803-5309
Phone:  (800) 689-6546, Ext. 700
Mobile: (949) 423-4350
Email address: E.Ladsous@Delta7Group.com
Website:      www.Delta7Group.com
CA PI License#    188424

**This email is unsecured and subject to monitoring.**

CONFIDENTIALITY NOTICE:  This communication and any documents, files, or previous email
messages attached constitute an electronic communication within the scope of the Electronic
Communication Privacy Act, 18 U.S. Code § 2510. This communication may contain non-
public, confidential, or legally privileged information intended for the designated recipient(s)
sole use. The unlawful interception, use, or disclosure of such information is strictly prohibited

**472**

under 18 U.S. Code § 2511 and applicable laws. If you are not the intended recipient or have received this communication in error, please notify the sender immediately by email to E.Ladsous@Delta7Group.com and delete all copies of this communication, including attachments, without reading or saving them in any matter.

---

**From:** Michael Hamlin <mhamlin@grapevinetexas.gov>
**Sent:** Wednesday, June 26, 2024 12:48 PM
**To:** E. Ladsous . Delta 7 Group <e.ladsous@delta7group.com>
**Subject:** Re: Texas Public Information Act Request – Tyler Wayne Skaggs (Deceased) – Southlake PD Case No. SPD-19SP053735

Sir,
I don't work for Southlake PD.

Mike Hamlin


On Jun 26, 2024, at 14:33, E. Ladsous . Delta 7 Group <e.ladsous@delta7group.com> wrote:


*** EXTERNAL EMAIL COMMUNICATION - PLEASE USE CAUTION BEFORE CLICKING LINKS AND/OR OPENING ATTACHMENTS ***

**To:** Chief of Police Mike Hamlin
**Grapevine Police Department**
1007 Ira E. Woods Avenue
Grapevine, TX 76051
**Subject:** Texas Public Information Act Request – Tyler Wayne Skaggs (Deceased) – Southlake PD Case No. SPD-19SP053735
Dear Chief Hamlin,
I hope this email finds you well. I am a former FBI Agent currently performing litigation support services for the firm representing the Los Angeles Angels. I have been tasked with collecting evidence in preparation for an upcoming trial, and I need your assistance with this request.
I am writing to formally request access to digital forensics records and analyses related to the case of Tyler Wayne Skaggs, born on July 13, 1991, under the Texas Public Information Act (TPIA). Our firm, Theodora Oringher PC, represents Defendant

**473**

Angels Baseball LP in the case entitled **Skaggs, et al. vs. Angels Baseball LP**, Orange County Superior Court Case No. 30-2021-01231706-CU-PO-NJC. The Southlake Police Department case number is **SPD-19SP053735**.

Theodora Oringher PC has retained Delta 7 Group, LLC to assist in this investigation.

According to the Southlake PD Report, the Grapevine PD Laboratory conducted the digital forensics of the items seized during the investigation. Specifically, I am requesting:

1. **Forensic Image Files**: Please provide copies of the forensic images of the following digital media obtained during the investigation:

   1. Mobile phone – Tyler Skaggs' Apple iPhone, black, collected by Thomas Robertson on 07/01/19 at 17:30, at 1400 PLAZA PL 469, Southlake, TX.
   2. iPads – Apple iPad, Model A1670, S/N DLXV60JDHPJ6, collected by Thomas Robertson on 07/01/19 at 17:30, at 1400 PLAZA PL 469, Southlake, TX.

   These image files should include all associated metadata and be provided on suitable digital media (e.g., USB drive, DVD).

2. **Forensic Analysis Reports**: Copies of all reports associated with the forensic analysis of the aforementioned digital media. This includes but is not limited to imaging reports, data extraction reports, procedural documentation, and any other relevant documentation related to the digital forensic examination.

Delta 7 Group, LLC will cover any costs of providing copies of the forensic image files and related documents.

For any questions regarding this request, please contact Jessica H. Diotalevi, Esq., at jdiotalevi@tocounsel.com or 714-549-6188.

Delta 7 Group, LLC will cover any associated costs for processing this TPIA request.

Thank you for your assistance in this matter.

Sincerely,

Emmanuel Ladsous

---

**Emmanuel Ladsous** (FBI 1988-2011)

President / Private Investigator

**Delta 7 Group, LLC**

A Professional Security Consultancy

4712 E 2nd Street, Suite 231

Long Beach, CA 90803-5309

Phone:  (800) 689-6546, Ext. 700

Mobile:  (949) 423-4350

Email address: E.Ladsous@Delta7Group.com

Website:      www.Delta7Group.com

CA PI License#    188424

<image001.png>

<image002.png>

<image003.png>

**This email is unsecured and subject to monitoring.**

CONFIDENTIALITY NOTICE:  This communication and any documents, files, or previous email messages attached constitute an electronic communication within the scope of the Electronic Communication Privacy Act, 18 U.S. Code § 2510. This communication may contain non-public, confidential, or legally privileged information intended for the designated recipient(s) sole use. The unlawful interception, use, or disclosure of such information is strictly prohibited under 18 U.S. Code § 2511 and applicable laws. If you are not the intended recipient or have received this communication in error, please notify the sender immediately by email to E.Ladsous@Delta7Group.com and delete all copies of this communication, including attachments, without reading or saving them in any matter.

<Angels Baseball - Letter of Representation - Grapevine PD.pdf>

| | |
|---|---|
| **From:** | Sarah Severn |
| **To:** | E. Ladsous . Delta 7 Group |
| **Subject:** | RE: Texas Public Information Act Request – Tyler Wayne Skaggs (Deceased) - Grapevine PD Lab - Digital Forensics in support of Southlake PD Case No. SPD-19SP053735 |
| **Date:** | Thursday, June 27, 2024 9:26:10 AM |
| **Attachments:** | image001.png |
| | image002.png |
| | image003.png |

Since I don't see any of our officers names written, that would be my best advice.

**From:** E. Ladsous . Delta 7 Group <e.ladsous@delta7group.com>
**Sent:** Thursday, June 27, 2024 11:25 AM
**To:** Sarah Severn <ssevern@grapevinetexas.gov>
**Subject:** RE: Texas Public Information Act Request – Tyler Wayne Skaggs (Deceased) - Grapevine PD Lab - Digital Forensics in support of Southlake PD Case No. SPD-19SP053735

Great idea!

I will look into it.

Thanks,

Emmanuel

_____

**Emmanuel Ladsous** (FBI 1988-2011)
Private Investigator
**Delta 7 Group, LLC**
A Professional Security Consultancy
4712 E 2nd Street, Suite 231
Long Beach, CA 90803-5309
Phone:  (800) 689-6546, Ext. 700
Mobile: (949) 423-4350
Email address: E.Ladsous@Delta7Group.com
Website:      www.Delta7Group.com
CA PI License#    188424



  

**This email is unsecured and subject to monitoring.**

CONFIDENTIALITY NOTICE:  This communication and any documents, files, or previous email messages attached constitute an electronic communication within the scope of the Electronic Communication Privacy Act, 18 U.S. Code § 2510. This communication may contain non-public, confidential, or legally privileged information intended for the designated recipient(s) sole use. The unlawful interception, use, or disclosure of such information is strictly prohibited under 18 U.S. Code § 2511 and applicable laws. If you are not the intended recipient or have received this communication in error, please notify the sender immediately by email to E.Ladsous@Delta7Group.com and delete all copies of this communication, including attachments, without reading or saving them in any matter.

---

**From:** Sarah Severn <ssevern@grapevinetexas.gov>
**Sent:** Thursday, June 27, 2024 9:23 AM
**To:** E. Ladsous . Delta 7 Group <e.ladsous@delta7group.com>
**Subject:** RE: Texas Public Information Act Request – Tyler Wayne Skaggs (Deceased) - Grapevine PD Lab - Digital Forensics in support of Southlake PD Case No. SPD-19SP053735

It is very possible that the detectives from Southlake **used our** equipment and did the download themselves.   Might be worth checking.

---

**From:** Sarah Severn
**Sent:** Thursday, June 27, 2024 07:38 AM
**To:** 'e.ladsous@delta7group.com' <e.ladsous@delta7group.com>
**Subject:** FW: Texas Public Information Act Request – Tyler Wayne Skaggs (Deceased) - Grapevine PD Lab - Digital Forensics in support of Southlake PD Case No. SPD-19SP053735

Good morning,

The Grapevine Police Department does not maintain any records related to this Southlake incident.  The examination was completed, and the data extracted, and devices were turned over/returned to Southlake PD.   They would have needed the image files to submit with their case, I would imagine.

Respectfully,


*Sarah Severn*

*Grapevine Police Department*
*Police Support Services Manager*
*817-410-3221*
ssevern@grapevinetexas.gov
records@grapevinetexas.gov

**477**

**From:** "E. Ladsous . Delta 7 Group" <e.ladsous@delta7group.com>
**Date:** June 26, 2024 at 15:18:55 CDT
**To:** Michael Hamlin <mhamlin@grapevinetexas.gov>
**Cc:** Jessica Hernandez Diotalevi <jdiotalevi@tocounsel.com>
**Subject: RE: Texas Public Information Act Request – Tyler Wayne Skaggs (Deceased) - Grapevine PD Lab - Digital Forensics in support of Southlake PD Case No. SPD-19SP053735**

*** EXTERNAL EMAIL COMMUNICATION - PLEASE USE CAUTION BEFORE CLICKING LINKS AND/OR OPENING ATTACHMENTS ***

Hello again, Chief Hamlin,

I am sorry for the confusion.

The Southlake Police Department indicated in their report  (Case No. SPD-19SP053735) that the Grapevine PD Lab performed a forensic examination of the digital media in their case. I attached a copy of their report for your information. I also extracted the following information.


Can you direct me to your forensic lab? I don't think the Southlake PD would have the image files.

I appreciate your assistance.

Sincerely,


Emmanuel

_____

**Emmanuel Ladsous (FBI 1988-2011)**
President / Private Investigator
**Delta 7 Group, LLC**
A Professional Security Consultancy
4712 E 2nd Street, Suite 231
Long Beach, CA 90803-5309
Phone:  (800) 689-6546, Ext. 700
Mobile:  (949) 423-4350
Email address:  E.Ladsous@Delta7Group.com

**478**

Website:        www.Delta7Group.com
CA PI License#    188424

**This email is unsecured and subject to monitoring.**

CONFIDENTIALITY NOTICE:  This communication and any documents, files, or previous email messages attached constitute an electronic communication within the scope of the Electronic Communication Privacy Act, 18 U.S. Code § 2510. This communication may contain non-public, confidential, or legally privileged information intended for the designated recipient(s) sole use. The unlawful interception, use, or disclosure of such information is strictly prohibited under 18 U.S. Code § 2511 and applicable laws. If you are not the intended recipient or have received this communication in error, please notify the sender immediately by email to E.Ladsous@Delta7Group.com and delete all copies of this communication, including attachments, without reading or saving them in any matter.

**From:** Michael Hamlin <mhamlin@grapevinetexas.gov>
**Sent:** Wednesday, June 26, 2024 12:48 PM
**To:** E. Ladsous . Delta 7 Group <e.ladsous@delta7group.com>
**Subject:** Re: Texas Public Information Act Request – Tyler Wayne Skaggs (Deceased) – Southlake PD Case No. SPD-19SP053735

Sir,
I don't work for Southlake PD.

Mike Hamlin

On Jun 26, 2024, at 14:33, E. Ladsous . Delta 7 Group <e.ladsous@delta7group.com> wrote:

*** EXTERNAL EMAIL COMMUNICATION - PLEASE USE CAUTION BEFORE CLICKING LINKS AND/OR OPENING ATTACHMENTS ***

**To:** Chief of Police Mike Hamlin
**Grapevine Police Department**
1007 Ira E. Woods Avenue
Grapevine, TX 76051
**Subject:** Texas Public Information Act Request – Tyler Wayne Skaggs (Deceased) – Southlake PD Case No. SPD-19SP053735
Dear Chief Hamlin,

**479**

I hope this email finds you well. I am a former FBI Agent currently performing litigation support services for the firm representing the Los Angeles Angels. I have been tasked with collecting evidence in preparation for an upcoming trial, and I need your assistance with this request.

I am writing to formally request access to digital forensics records and analyses related to the case of Tyler Wayne Skaggs, born on July 13, 1991, under the Texas Public Information Act (TPIA). Our firm, Theodora Oringher PC, represents Defendant Angels Baseball LP in the case entitled **Skaggs, et al. vs. Angels Baseball LP**, Orange County Superior Court Case No. 30-2021-01231706-CU-PO-NJC. The Southlake Police Department case number is **SPD-19SP053735**.

Theodora Oringher PC has retained Delta 7 Group, LLC to assist in this investigation.

<u>According to the Southlake PD Report, the Grapevine PD Laboratory conducted the digital forensics of the items seized during the investigation</u>. Specifically, I am requesting:

1. **Forensic Image Files**: Please provide copies of the forensic images of the following digital media obtained during the investigation:

   1. Mobile phone – Tyler Skaggs' Apple iPhone, black, collected by Thomas Robertson on 07/01/19 at 17:30, at 1400 PLAZA PL 469, Southlake, TX.
   2. iPads – Apple iPad, Model A1670, S/N DLXV60JDHPJ6, collected by Thomas Robertson on 07/01/19 at 17:30, at 1400 PLAZA PL 469, Southlake, TX.

   These image files should include all associated metadata and be provided on suitable digital media (e.g., USB drive, DVD).

2. **Forensic Analysis Reports**: Copies of all reports associated with the forensic analysis of the aforementioned digital media. This includes but is not limited to imaging reports, data extraction reports, procedural documentation, and any other relevant documentation related to the digital forensic examination.

**480**

Delta 7 Group, LLC will cover any costs of providing copies of the forensic image files and related documents.

For any questions regarding this request, please contact Jessica H. Diotalevi, Esq., at jdiotalevi@tocounsel.com or 714-549-6188.

Delta 7 Group, LLC will cover any associated costs for processing this TPIA request.

Thank you for your assistance in this matter.

Sincerely,

Emmanuel Ladsous

_____

**Emmanuel Ladsous** (FBI 1988-2011)

President / Private Investigator

**Delta 7 Group, LLC**

A Professional Security Consultancy

4712 E 2nd Street, Suite 231

Long Beach, CA 90803-5309

Phone:  (800) 689-6546, Ext. 700

Mobile:  (949) 423-4350

Email address:  E.Ladsous@Delta7Group.com

Website:        www.Delta7Group.com

CA PI License#    188424

<image001.png>


<image002.png>

<image003.png>


**This email is unsecured and subject to monitoring.**

CONFIDENTIALITY NOTICE:  This communication and any documents, files, or previous email messages attached constitute an electronic communication within the scope of the Electronic Communication Privacy Act, 18 U.S. Code § 2510. This communication may contain non-public, confidential, or legally privileged information intended for the designated recipient(s) sole use. The unlawful interception, use, or disclosure of such information is strictly prohibited under 18 U.S. Code § 2511 and applicable laws. If you are not the intended recipient or have received this communication in error, please notify the sender immediately by email to E.Ladsous@Delta7Group.com and delete all copies of this communication, including attachments, without reading or saving them in any matter.

<Angels Baseball - Letter of Representation - Grapevine PD.pdf>

| | |
|---|---|
| **From:** | E. Ladsous . Delta 7 Group |
| **To:** | Sarah Severn |
| **Subject:** | RE: Texas Public Information Act Request – Tyler Wayne Skaggs (Deceased) - Grapevine PD Lab - Digital Forensics in support of Southlake PD Case No. SPD-19SP053735 |
| **Date:** | Thursday, June 27, 2024 9:29:00 AM |
| **Attachments:** | image001.png |
| | image002.png |
| | image003.png |

Ok, will do. Thanks!

**From:** Sarah Severn <ssevern@grapevinetexas.gov>
**Sent:** Thursday, June 27, 2024 9:26 AM
**To:** E. Ladsous . Delta 7 Group <e.ladsous@delta7group.com>
**Subject:** RE: Texas Public Information Act Request – Tyler Wayne Skaggs (Deceased) - Grapevine PD Lab - Digital Forensics in support of Southlake PD Case No. SPD-19SP053735

Since I don't see any of our officers names written, that would be my best advice.

**From:** E. Ladsous . Delta 7 Group <e.ladsous@delta7group.com>
**Sent:** Thursday, June 27, 2024 11:25 AM
**To:** Sarah Severn <ssevern@grapevinetexas.gov>
**Subject:** RE: Texas Public Information Act Request – Tyler Wayne Skaggs (Deceased) - Grapevine PD Lab - Digital Forensics in support of Southlake PD Case No. SPD-19SP053735

Great idea!

I will look into it.

Thanks,

Emmanuel

_____

**Emmanuel Ladsous (FBI 1988-2011)**
Private Investigator
**Delta 7 Group, LLC**
A Professional Security Consultancy
4712 E 2nd Street, Suite 231
Long Beach, CA 90803-5309
Phone:  (800) 689-6546, Ext. 700
Mobile: (949) 423-4350
Email address:  E.Ladsous@Delta7Group.com
Website:    www.Delta7Group.com
CA PI License#   188424

**482**





**This email is unsecured and subject to monitoring.**

CONFIDENTIALITY NOTICE:  This communication and any documents, files, or previous email messages attached constitute an electronic communication within the scope of the Electronic Communication Privacy Act, 18 U.S. Code § 2510. This communication may contain non-public, confidential, or legally privileged information intended for the designated recipient(s) sole use. The unlawful interception, use, or disclosure of such information is strictly prohibited under 18 U.S. Code § 2511 and applicable laws. If you are not the intended recipient or have received this communication in error, please notify the sender immediately by email to E.Ladsous@Delta7Group.com and delete all copies of this communication, including attachments, without reading or saving them in any matter.

---

**From:** Sarah Severn <ssevern@grapevinetexas.gov>
**Sent:** Thursday, June 27, 2024 9:23 AM
**To:** E. Ladsous . Delta 7 Group <e.ladsous@delta7group.com>
**Subject:** RE: Texas Public Information Act Request – Tyler Wayne Skaggs (Deceased) - Grapevine PD Lab - Digital Forensics in support of Southlake PD Case No. SPD-19SP053735

It is very possible that the detectives from Southlake **used our** equipment and did the download themselves.   Might be worth checking.

---

**From:** Sarah Severn
**Sent:** Thursday, June 27, 2024 07:38 AM
**To:** 'e.ladsous@delta7group.com' <e.ladsous@delta7group.com>
**Subject:** FW: Texas Public Information Act Request – Tyler Wayne Skaggs (Deceased) - Grapevine PD Lab - Digital Forensics in support of Southlake PD Case No. SPD-19SP053735

Good morning,

The Grapevine Police Department does not maintain any records related to this Southlake incident.  The examination was completed, and the data extracted, and devices were turned over/returned to Southlake PD.   They would have needed the image files to submit with their case, I would imagine.

Respectfully,

**483**

*Sarah Severn*

*Grapevine Police Department*
*Police Support Services Manager*
*817-410-3221*
ssevern@grapevinetexas.gov
records@grapevinetexas.gov

**From:** "E. Ladsous . Delta 7 Group" <e.ladsous@delta7group.com>
**Date:** June 26, 2024 at 15:18:55 CDT
**To:** Michael Hamlin <mhamlin@grapevinetexas.gov>
**Cc:** Jessica Hernandez Diotalevi <jdiotalevi@tocounsel.com>
**Subject: RE: Texas Public Information Act Request – Tyler Wayne Skaggs (Deceased) - Grapevine PD Lab - Digital Forensics in support of Southlake PD Case No. SPD-19SP053735**

**\*\*\* EXTERNAL EMAIL COMMUNICATION - PLEASE USE CAUTION BEFORE CLICKING LINKS AND/OR OPENING ATTACHMENTS \*\*\***

Hello again, Chief Hamlin,

I am sorry for the confusion.

The Southlake Police Department indicated in their report  (Case No. SPD-19SP053735) that the Grapevine PD Lab performed a forensic examination of the digital media in their case. I attached a copy of their report for your information. I also extracted the following information.


Can you direct me to your forensic lab? I don't think the Southlake PD would have the image files.

I appreciate your assistance.

Sincerely,

Emmanuel

_____

**484**

**Emmanuel Ladsous (FBI 1988-2011)**

President / Private Investigator

**Delta 7 Group, LLC**

A Professional Security Consultancy

4712 E 2nd Street, Suite 231

Long Beach, CA 90803-5309

Phone:  (800) 689-6546, Ext. 700

Mobile:  (949) 423-4350

Email address:  E.Ladsous@Delta7Group.com

Website:       www.Delta7Group.com

CA PI License#     188424

**This email is unsecured and subject to monitoring.**

CONFIDENTIALITY NOTICE:  This communication and any documents, files, or previous email messages attached constitute an electronic communication within the scope of the Electronic Communication Privacy Act, 18 U.S. Code § 2510. This communication may contain non-public, confidential, or legally privileged information intended for the designated recipient(s) sole use. The unlawful interception, use, or disclosure of such information is strictly prohibited under 18 U.S. Code § 2511 and applicable laws. If you are not the intended recipient or have received this communication in error, please notify the sender immediately by email to E.Ladsous@Delta7Group.com and delete all copies of this communication, including attachments, without reading or saving them in any matter.

---

**From:** Michael Hamlin <mhamlin@grapevinetexas.gov>
**Sent:** Wednesday, June 26, 2024 12:48 PM
**To:** E. Ladsous . Delta 7 Group <e.ladsous@delta7group.com>
**Subject:** Re: Texas Public Information Act Request – Tyler Wayne Skaggs (Deceased) – Southlake PD Case No. SPD-19SP053735

Sir,
I don't work for Southlake PD.

Mike Hamlin

> On Jun 26, 2024, at 14:33, E. Ladsous . Delta 7 Group
> <e.ladsous@delta7group.com> wrote:
>
> *** EXTERNAL EMAIL COMMUNICATION - PLEASE USE
> CAUTION BEFORE CLICKING LINKS AND/OR OPENING
> ATTACHMENTS ***

**485**

**To:** Chief of Police Mike Hamlin

**Grapevine Police Department**

1007 Ira E. Woods Avenue

Grapevine, TX 76051

**Subject:** Texas Public Information Act Request – Tyler Wayne Skaggs (Deceased) – Southlake PD Case No. SPD-19SP053735

Dear Chief Hamlin,

I hope this email finds you well. I am a former FBI Agent currently performing litigation support services for the firm representing the Los Angeles Angels. I have been tasked with collecting evidence in preparation for an upcoming trial, and I need your assistance with this request.

I am writing to formally request access to digital forensics records and analyses related to the case of Tyler Wayne Skaggs, born on July 13, 1991, under the Texas Public Information Act (TPIA). Our firm, Theodora Oringher PC, represents Defendant Angels Baseball LP in the case entitled **Skaggs, et al. vs. Angels Baseball LP**, Orange County Superior Court Case No. 30-2021-01231706-CU-PO-NJC. The Southlake Police Department case number is **SPD-19SP053735**.

Theodora Oringher PC has retained Delta 7 Group, LLC to assist in this investigation.

<u>According to the Southlake PD Report, the Grapevine PD Laboratory conducted the digital forensics of the items seized during the investigation</u>. Specifically, I am requesting:

1. **Forensic Image Files**: Please provide copies of the forensic images of the following digital media obtained during the investigation:

    1. Mobile phone – Tyler Skaggs' Apple iPhone, black, collected by Thomas Robertson on 07/01/19 at 17:30, at 1400 PLAZA PL 469, Southlake, TX.
    2. iPads – Apple iPad, Model A1670, S/N DLXV60JDHPJ6, collected by Thomas Robertson on 07/01/19 at 17:30, at 1400 PLAZA PL 469, Southlake, TX.

    These image files should include all associated metadata and be provided on suitable digital media (e.g., USB drive,

**486**

DVD).

2. **Forensic Analysis Reports**: Copies of all reports associated with the forensic analysis of the aforementioned digital media. This includes but is not limited to imaging reports, data extraction reports, procedural documentation, and any other relevant documentation related to the digital forensic examination.

Delta 7 Group, LLC will cover any costs of providing copies of the forensic image files and related documents.

For any questions regarding this request, please contact Jessica H. Diotalevi, Esq., at jdiotalevi@tocounsel.com or 714-549-6188.

Delta 7 Group, LLC will cover any associated costs for processing this TPIA request.

Thank you for your assistance in this matter.

Sincerely,

Emmanuel Ladsous

_____

**Emmanuel Ladsous (FBI 1988-2011)**
President / Private Investigator
**Delta 7 Group, LLC**
A Professional Security Consultancy
4712 E 2nd Street, Suite 231
Long Beach, CA 90803-5309
Phone:   (800) 689-6546, Ext. 700
Mobile:  (949) 423-4350
Email address:  E.Ladsous@Delta7Group.com
Website:        www.Delta7Group.com
CA PI License#     188424

<image001.png>

<image002.png>

<image003.png>

**This email is unsecured and subject to monitoring.**

CONFIDENTIALITY NOTICE:  This communication and any documents, files, or previous email messages attached constitute an electronic communication within the scope of the Electronic Communication Privacy Act, 18 U.S. Code § 2510. This communication may contain non-public, confidential, or legally privileged information intended for the designated recipient(s) sole use. The unlawful interception, use, or disclosure of such information is strictly prohibited under 18 U.S. Code § 2511 and applicable laws. If you are not the intended

recipient or have received this communication in error, please notify the sender immediately by email to E.Ladsous@Delta7Group.com and delete all copies of this communication, including attachments, without reading or saving them in any matter.

<Angels Baseball - Letter of Representation - Grapevine PD.pdf>

Exhibit 7

Response to TPIA Request #1  to the Grapevine PD
September 27, 2024

| | |
|---|---|
| **From:** | Sarah Severn |
| **To:** | E. Ladsous . Delta 7 Group |
| **Subject:** | FW: Texas Public Information Act Request – Tyler Wayne Skaggs (Deceased) - Grapevine PD Lab - Digital Forensics in support of Southlake PD Case No. SPD-19SP053735 |
| **Date:** | Thursday, June 27, 2024 5:38:48 AM |
| **Attachments:** | image001.png |
| | image002.png |
| | image003.png |
| | image004.png |
| | Redacted Records Released 6-26-24.pdf |

Good morning,

The Grapevine Police Department does not maintain any records related to this Southlake incident.  The examination was completed, and the data extracted, and devices were turned over/returned to Southlake PD.   They would have needed the image files to submit with their case, I would imagine.

Respectfully,


*Sarah Severn*

*Grapevine Police Department*
*Police Support Services Manager*
*817-410-3221*
ssevern@grapevinetexas.gov
records@grapevinetexas.gov



**From:** "E. Ladsous . Delta 7 Group" <e.ladsous@delta7group.com>
**Date:** June 26, 2024 at 15:18:55 CDT
**To:** Michael Hamlin <mhamlin@grapevinetexas.gov>
**Cc:** Jessica Hernandez Diotalevi <jdiotalevi@tocounsel.com>
**Subject: RE: Texas Public Information Act Request – Tyler Wayne Skaggs (Deceased) - Grapevine PD Lab - Digital Forensics in support of Southlake PD Case No. SPD-19SP053735**


*** EXTERNAL EMAIL COMMUNICATION - PLEASE USE CAUTION BEFORE CLICKING LINKS AND/OR OPENING ATTACHMENTS ***

Hello again, Chief Hamlin,

I am sorry for the confusion.

**490**

Exhibit 8

Southlake PD TPIA Request #3

July 3, 2024

**Emmanuel Ladsous**
Private Investigator (CA PI Lic. 188424)
**Delta 7 Group, LLC**
4712 E 2nd Street, Ste. 231
Long Beach, CA 90803

July 3, 2024

**Southlake Police Department**
ATTN: Records Division
600 State Street
Southlake, TX 76092

**Subject: FOIA Request for List of FOIA Requests Related to Tyler Skaggs Case (Case No. SPD-19SP053735)**

**Dear Records Custodian,**

Pursuant to the Texas Public Information Act, Chapter 552 of the Texas Government Code, I am requesting access to the following records related to the case of Tyler Wayne Skaggs (Case No. SPD-19SP053735):

1. A list of all FOIA requests received related to the Tyler Skaggs case, including:
   o The name and/or organization of the requestor.
   o The date of each FOIA request.
   o A summary of the information requested in each FOIA request.
   o Details of the information that was provided in response to each FOIA request.
2. A detailed inventory of all evidence currently held by the Southlake Police Department related to the Tyler Skaggs case.
3. The chain of custody records for all evidence related to the Tyler Skaggs case, including documentation of when and to whom the evidence was transferred, particularly any transfers to the DEA.
4. Any correspondence or documentation indicating whether the Southlake Police Department or the DEA currently holds the evidence related to the Tyler Skaggs case.

As a private investigator performing litigation support services for the firm representing the Los Angeles Angels, this information is crucial for our ongoing case preparation. If there are any fees associated with fulfilling this request, please inform me in advance of processing. If you have any questions or require additional information to process this request, please do not hesitate to contact me at E.Ladsous@Delta7Group.com or (949) 423-4350.

Thank you for your attention to this matter.

**Sincerely,**

Emmanuel Ladsous
Private Investigator (CA PI Lic. 188424)

**492**



6000 WESTERN PLACE, SUITE 200
FORT WORTH, TEXAS 76107

TELEPHONE: (817) 332-2580
FACSIMILE: (817) 332-4740
WEBSITE: WWW.TOASE.COM

Bessie Bronstein
pia@toase.com

July 18, 2024

Emmanuel Ladsous
Delta 7 Group, LLC
4712 E. 2nd Street, Suite 231
Long Beach, California 90803
e.ladsous@delta7group.com

Re:    *Public Information Request Received by the City of Southlake on July 3, 2024*

Dear Mr. Ladsous:

I represent the City of Southlake regarding the above-described matter. Enclosed please find the information responsive to your request dated July 3, 2024.

The City understands the rights of all citizens to make requests for public information and invites all citizens to avail themselves of that right. Should you have any questions, please do not hesitate to contact me. Of course, all questions may also be forwarded to the Office of the Texas Attorney General, Open Government Hotline, at (512) 478-6736 or toll-free at 1-877-673-6839.

Sincerely,

Bessie Bronstein

BB:dlw
Enclosures

V:\Southlake\PIA~SUBPOENAS\2024\Ladsous, Emmanuel 7 3 24\To Requester\Ladsous BB001.docx

**493**

**Laura Alsina**

| | |
|---|---|
| **From:** | Fenno, Nathan < |
| **Sent:** | Tuesday, July 19, 2022 5:57 PM |
| **To:** | DPSRecords |
| **Subject:** | Public records request |

Good day:

Under the Texas Public Information Act, the Los Angeles Times requests:

All written correspondence sent or received by the Southlake Police Department in connection with open records requests filed by the Los Angeles Times on April 22, 2022, and May 9, 2022, seeking certain email records from Sgt. Delaney Green and Sgt. Jonathan Macheca. I am requesting all responsive emails (including attachments, calendar invites and attachments to calendar invites), telephonic text messages, handwritten notes/documents, memoranda, and messages on workplace platforms such as Slack or Microsoft Teams sent or received by the Southlake Police Department in connection with the April 22, 2022, and April 25, 2022, open records requests.

I request this information be provided electronically via email attachment.

This information is being sought on behalf of The Times for dissemination to the general public in the process of newsgathering and I request any fees be waived as this request involves a matter of public interest.

Thanks for your assistance.

Sincerely,

Nathan Fenno
Reporter
Los Angeles Times

2300 E. Imperial Highway
El Segundo, CA 90245

1

**494**

**Laura Alsina**

| | |
|---|---|
| From: | Janie Heath < |
| Sent: | Monday, October 24, 2022 2:38 PM |
| To: | Laura Alsina |
| Cc: | Sarah Blum |
| Subject: | PIA Requests |
| Attachments: | Collinsworth.SW001.pdf; Ruling OR2022-30927.pdf; Redacted Doc Released Per Ruling.pdf; Fenno.SW001.pdf; Ruling OR2022-30855.pdf |

Hello, Laura-

Please see the attached regarding the following requests:

**Thomas Collinsworth 7-18-22**

➢ Letter to Mr. Collinsworth
➢ AG Ruling OR2022-30927
➢ Redacted Doc Released Per Ruling

**Nathan Fenno 7-19-22**

➢ Letter to Mr. Fenno
➢ AG Ruling OR2022-30855

Have a great week!

Sincerely,
Janie Heath
PIA Support
6000 Western Place Suite 200
Fort Worth, TX 76107
817-332-2580
817-332-4740 Fax



TAYLOR·OLSON·ADKINS·SRALLA·ELAM

CONFIDENTIAL NOTICE: This electronic transmission and any documents or other writings sent with it constitute confidential information which is intended only for the named recipient and which may be legally privileged. If you have received this communication in error, do not read it. Please reply to the sender at Taylor, Olson, Adkins, Sralla & Elam, LLP that you have received the message in error. Then delete it. Any disclosure, copying, distribution or the taking of any action concerning the contents of this communication or any attachment(s) by anyone other than the named recipient is strictly prohibited.

1



6000 WESTERN PLACE, SUITE 200
I-30 AT BRYANT IRVIN ROAD
FORT WORTH, TEXAS 76107
EMAIL:TOASE@TOASE.COM

TAYLOR·OLSON·ADKINS·SRALLA·ELAM
L.L.P.
ATTORNEYS & COUNSELORS

TELEPHONE: (817) 332-2580
TOLL FREE: (800) 318-3400
FACSIMILE: (817) 332-4740
WEBSITE: WWW.TOASE.COM

Stacie White

October 24, 2022

[Via E-Mail]
Nathan Fenno
Los Angeles Times
2300 E. Imperial Highway
El Segundo, CA 90245

        Re:     *Public Information Request Received by the City of Southlake on July 19, 2022*

Dear Mr. Fenno:

       Enclosed, please find Open Records Letter Number OR2022-30855 from the Office of the Attorney General regarding your request for information. In accordance with the ruling from the Attorney General, the City must withhold the responsive documents.

       The City understands the rights of all citizens to make requests for public information and invites all citizens to avail themselves of that right. Should you have any questions, please do not hesitate to contact me. Of course, all questions may also be forwarded to the Office of the Texas Attorney General, Open Government Hotline, at (512) 478-6736 or toll-free at 1-877-673-6839.

       Sincerely,

       Stacie White

SW:jph
Enclosure

V:\Southlake\PIA--SUBPOENAS\2022\Fenno, Nathan 7.19.22\AG Ruling\Fenno.SW001.docx

**496**

October 24, 2022
Page 2

---

bcc:   Laura Alsina (w/enclosure)
Records Coordinator
Southlake Police Department
600 State Street
Southlake, Texas 76092

Sarah Blum (w/enclosure)
Police Records Manager
Southlake Police Department
600 State Street
Southlake, Texas 76092



**KEN PAXTON**
ATTORNEY GENERAL OF TEXAS

October 6, 2022

Ms. Stacie White
Counsel for the City of Southlake
Taylor Olson Adkins Sralla Elam, L.L.P.
6000 Western Place, Suite 200
Fort Worth, Texas 76107

OR2022-30855

Re:  Request for all communication to and from Southlake Police Department in
     connection with records requests by Los Angeles Times on 04/22/22 and
     05/09/2022.

Dear Ms. White:

The Office of the Attorney General has received your request for a ruling and assigned your
request ID# 977243.

After reviewing your arguments and the submitted information, we have determined your
request does not present a novel or complex issue. Thus, we are addressing your claims in
a memorandum opinion. You claim the submitted information may be withheld from the
requestor pursuant to section 552.108(a)(1) of the Government Code. Upon review of your
arguments and the submitted information, we conclude you may withhold the submitted
information under section 552.108(a)(1).

For more information on the cited exception, please refer to the open government
information on our website at https://www.texasattorneygeneral.gov/og/memorulings. You
may also contact our Open Government Hotline at 1-877-OPENTEX.

Enc:  Submitted documents

c:    Requestor
      (w/o enclosures)

**Laura Alsina**

| | |
|---|---|
| **From:** | Fenno, Nathan < > |
| **Sent:** | Monday, May 9, 2022 7:05 PM |
| **To:** | DPSRecords |
| **Subject:** | Request for public records |

Good evening,

Under the Texas Public Information Act, the Los Angeles Times requests:

1) All emails, including attachments, received by Sgt. Jonathan Macheca of the Southlake Police Department from July 1, 2019, to Nov. 1, 2019, from any address ending in "@angels.com" or "@rustyhardin.com" or "@michaelmolfettalaw.com."

2) All emails, including attachments, sent by Sgt. Jonathan Macheca of the Southlake Police Department from July 1, 2019, to Nov. 1, 2019, to any address ending in "@angels.com" or "@rustyhardin.com" or "@michaelmolfettalaw.com."

If possible, I request this information be provided electronically via email attachment.

This information is being sought on behalf of The Times for dissemination to the general public in the process of newsgathering and I request any fees be waived as this request involves a matter of public interest.

Thanks for your kind assistance.

Sincerely,

Nathan Fenno
Reporter
Los Angeles Times

2300 E. Imperial Highway
El Segundo, CA 90245

213-258-7974 c

1

**499**

**Sarah Blum**

| | |
|---|---|
| **From:** | Michelle Roberts < > |
| **Sent:** | Wednesday, August 17, 2022 3:16 PM |
| **To:** | Sarah Blum |
| **Subject:** | PIA Request of Nathan Fenno Dated May 10, 2022 |
| **Attachments:** | Fenno.SW001.pdf; Ruling OR2022-22706.pdf |

Hi Sarah –

Attached is a letter to Mr. Fenno along with ruling regarding his May 10, 2022 request. The information is being withheld.

Have a good afternoon!

Michelle Roberts
Secretary to Rob Allibon and PIA Requests – Team Lead
Taylor, Olson, Adkins, Sralla & Elam, L.L.P.
6000 Western Place, Suite 200
Fort Worth, Texas 76107
(817) 332-2580
(817) 332-4740 – Fax



TAYLOR·OLSON·ADKINS·SRALLA·ELAM
ATTORNEYS & COUNSELORS

CONFIDENTIAL NOTICE: This electronic transmission and any documents or other writings sent with it constitute confidential information which is intended only for the named recipient and client and which is subject to attorney/client privilege. If you have received this communication in error, do not read it. Please reply to the sender at Taylor, Olson, Adkins, Sralla & Elam, L.L.P. that you have received the message in error. Then delete it. Any disclosure, copying distribution or the taking of any action concerning the contents of this communication or any attachment(s) by anyone other than the named recipient is strictly prohibited.

1



6000 WESTERN PLACE, SUITE 200
I-30 AT BRYANT IRVIN ROAD
FORT WORTH, TEXAS 76107
EMAIL:TOASE@TOASE.COM

TELEPHONE: (817) 332-2580
TOLL FREE: (800) 318-3400
FACSIMILE: (817) 332-4740
WEBSITE: WWW.TOASE.COM

Stacie White

August 16, 2022

**[Via E-Mail]**
Nathan Fenno
Los Angeles Times
2300 E. Imperial Highway
El Segundo, CA 90245

Re:  *Public Information Request Received by the City of Southlake on May 10, 2022*

Dear Mr. Fenno:

Enclosed, please find Open Records Letter Number OR2022-22706 from the Office of the Attorney General regarding your request for information. In accordance with the ruling from the Attorney General, the City must withhold the responsive documents.

The City understands the rights of all citizens to make requests for public information and invites all citizens to avail themselves of that right. Should you have any questions, please do not hesitate to contact me. Of course, all questions may also be forwarded to the Office of the Texas Attorney General, Open Government Hotline, at (512) 478-6736 or toll-free at 1-877-673-6839.

Sincerely,

Stacie White

Stacie White

SW:jph
Enclosure

V:\Southlake\PIA--SUBPOENAS\2022\Fenno, Nathan 5.10.22\AG Ruling\Fenno.SW001.docx

**501**

August 16, 2022
Page 2

_____

bcc:    Sarah Blum (w/enclosure)
        Police Records Manager
        Southlake Police Department
        600 State Street
        Southlake, Texas 76092



**KEN PAXTON**
ATTORNEY GENERAL OF TEXAS

August 2, 2022

Ms. Stacie White
Counsel for the City of Southlake
Taylor, Olson, Adkins, Sralla & Elam, L.L.P.
6000 Western Place, Suite 200
Fort Worth, Texas 76107

OR2022-22706

Re:    Request for communications between a named individual and specified domain
       names during a defined period of time

Dear Ms. White:

The Office of the Attorney General has received your request for a ruling and assigned your
request ID# 963379.

After reviewing your arguments and the submitted information, we have determined your
request does not present a novel or complex issue. Thus, we are addressing your claims in
a memorandum opinion. You claim the submitted information may be withheld from the
requestor pursuant to section 552.108(a)(1) of the Government Code. Upon review of your
arguments and the submitted information, we conclude you may withhold the submitted
information under section 552.108(a)(1).

For more information on the cited exception, please refer to the open government
information on our website at https://www.texasattorneygeneral.gov/open-
government/governmental-bodies/open-records-memorandum-rulings. You may also
contact our Open Government Hotline at 1-877-OPENTEX.

Enc.    Submitted documents

c:      Requestor
        (w/o enclosures)

**Dianne Surles**

| | |
|---|---|
| **From:** | Fenno, Nathan < ▓▓▓▓▓▓▓▓▓▓▓▓ > |
| **Sent:** | Friday, April 22, 2022 7:59 PM |
| **To:** | DPSRecords |
| **Subject:** | Public records request |

Good day,

Under the Texas Public Information Act, the Los Angeles Times requests:

1) All emails, including attachments, received by then-Detective (now Sgt.) Delaney Green of the Southlake Police Department from July 1, 2019, to Oct. 1, 2019, from any address ending in "angels.com" or "rustyhardin.com" or "michaelmolfettalaw.com."

2) All emails, including attachments, sent by then-Detective (now Sgt.) Delaney Green of the Southlake Police Department from July 1, 2019, to Oct. 1, 2019, to any address ending in "angels.com" or "rustyhardin.com" or "michaelmolfettalaw.com."

If possible, I request this information be provided electronically via email attachment.

This information is being sought on behalf of The Times for dissemination to the general public in the process of newsgathering and I request any fees be waived as this request involves a matter of public interest.

Thanks for your kind assistance.

Sincerely,

Nathan Fenno
Reporter
Los Angeles Times

2300 E. Imperial Highway
El Segundo, CA 90245

213-258-7974 c

1

**504**

**Laura Alsina**

| | |
|---|---|
| **From:** | Janie Heath < > |
| **Sent:** | Wednesday, August 10, 2022 10:03 AM |
| **To:** | Sarah Blum; Laura Alsina |
| **Subject:** | PIA Requests |
| **Attachments:** | Fenno.SW001.pdf; Ruling OR2022-20902.pdf; Wilson.SW001.pdf; Ruling OR2022-21994.pdf |

Good morning, Sarah and Laura-

Please see the attached regarding the following requests:

**Nathan Fenno 4-25-22**

- ➢ Letter to Mr. Fenno
- ➢ AG Ruling OR2022-20902

**Ashley Wilson 5-2-22**

- ➢ Letter to Ms. Wilson
- ➢ AG Ruling OR2022-21994

Have a wonderful day!

Sincerely,
Janie Heath
Secretary to Stacie White & PIA Support
6000 Western Place Suite 200
Fort Worth, TX 76107
817-332-2580
817-332-4740 Fax

**TOASE**

TAYLOR·OLSON·ADKINS·SRALLA·ELAM

CONFIDENTIAL NOTICE: This electronic transmission and any documents or other writings sent with it constitute confidential information which is intended only for the named recipient and which may be legally privileged. If you have received this communication in error, do not read it. Please reply to the sender at Taylor, Olson, Adkins, Sralla & Elam, LLP that you have received the message in error. Then delete it. Any disclosure, copying, distribution or the taking of any action concerning the contents of this communication or any attachment(s) by anyone other than the named recipient is strictly prohibited.

1

**505**



**TOASE**

TAYLOR·OLSON·ADKINS·SRALLA·ELAM
L.L.P.
ATTORNEYS & COUNSELORS

6000 WESTERN PLACE, SUITE 200
I-30 AT BRYANT IRVIN ROAD
FORT WORTH, TEXAS 76107
EMAIL:TOASE@TOASE.COM

TELEPHONE: (817) 332-2580
TOLL FREE: (800) 318-3400
FACSIMILE: (817) 332-4740
WEBSITE: WWW.TOASE.COM

Stacie White

August 10, 2022

**[Via E-Mail]**
Nathan Fenno
Los Angeles Times
2300 E. Imperial Highway
El Segundo, CA 90245

Re:   *Public Information Request Received by the City of Southlake on April 25, 2022*

Dear Mr. Fenno:

Enclosed, please find Open Records Letter Number OR2022-20902 from the Office of the Attorney General regarding your request for information. In accordance with the ruling from the Attorney General, the City must withhold the responsive documents.

The City understands the rights of all citizens to make requests for public information and invites all citizens to avail themselves of that right. Should you have any questions, please do not hesitate to contact me. Of course, all questions may also be forwarded to the Office of the Texas Attorney General, Open Government Hotline, at (512) 478-6736 or toll-free at 1-877-673-6839.

Sincerely,

Stacie White

SW:jph
Enclosure

W:\Southlake\PIA-SUBPOENAS\2022\Fenno, Nathan 4.25.22\AG Ruling\Fenno.SW001.docx

**506**

August 10, 2022
Page 2

bcc:   Sarah Blum (w/enclosure)
       Police Records Manager
       Southlake Police Department
       600 State Street
       Southlake, Texas 76092



# KEN PAXTON
### ATTORNEY GENERAL OF TEXAS

July 19, 2022

Ms. Stacie S. White
Counsel for the City of Southlake
Taylor, Olson, Adkins, Sralla, Elam, L.L.P.
6000 Western Place, Suite 200
Fort Worth, Texas 76107

OR2022-20902

Re:    Request for information pertaining to specified terms in communications with a
        named detective

Dear Ms. White:

The Office of the Attorney General has received your request for a ruling and assigned your
request ID# 959934.

After reviewing your arguments and the submitted information, we have determined your
request does not present a novel or complex issue. Thus, we are addressing your claims in
a memorandum opinion. You claim the submitted information may be withheld from the
requestor pursuant to section 552.108(a)(1) of the Government Code. Upon review of your
arguments and the submitted information, we conclude you may withhold the submitted
information under section 552.108(a)(1).

For more information on the cited exception, please refer to the open government
information on our website at https://www.texasattorneygeneral.gov/open-
government/governmental-bodies/open-records-memorandum-rulings. You may also
contact our Open Government Hotline at 1-877-OPENTEX.

Enc.    Submitted documents

c:      Requestor
        (w/o enclosures)

Post Office Box 12548, Austin, Texas 78711-2548 • (512) 463-2100 • www.texasattorneygeneral.gov

**508**

**Laura Alsina**

| | |
|---|---|
| **From:** | Fenno, Nathan < ▓▓▓▓▓▓ |
| **Sent:** | Thursday, February 17, 2022 8:03 PM |
| **To:** | DPSRecords |
| **Subject:** | Public records request |

Good day:

Under the Texas Public Information Act, the Los Angeles Times requests:

1. All police, fire and EMS incident reports relating to the incident on July 1, 2019, at approximately 2:20 p.m. at 1400 Plaza Place in Southlake, Texas, for an unresponsive male later identified as Tyler Wayne Skaggs. The police incident number is 19SP053735. I also request all records subsequent records created in connection with the incident.

2. Audio of all 9-1-1 calls concerning the above incident.

3. All search warrants, including the affidavit(s) in support of the warrant(s) and the return(s), executed by the Southlake Police Department in connection with the above incident.

4. Any body camera footage from Officer C. Branham (#1784) in connection with the above incident, including, but not limited to, interactions with Charles Knight and Jim Saenz.

I request this information be provided electronically via email attachment.

This information is being sought on behalf of The Times for dissemination to the general public in the process of newsgathering and I request any fees be waived as this request involves a matter of public interest.

If my request is denied in whole or part, I ask you justify all deletions by reference to specific exemptions in the Act.

Thanks for your assistance.

Sincerely,

Nathan Fenno
Reporter
Los Angeles Times

213-258-7974 c
▓▓▓▓▓▓▓▓▓▓▓▓▓

500 S. Oak Knoll #39
Pasadena, CA 91101

1

**Sarah Blum**

| | |
|---|---|
| **From:** | Janie Heath |
| **Sent:** | Monday, May 23, 2022 10:33 AM |
| **To:** | Laura Alsina |
| **Cc:** | Sarah Blum |
| **Subject:** | PIA Request of Nathan Fenno 2-18-22 |
| **Attachments:** | Fenno.SW001.pdf; Ruling OR2022-13624.pdf; Doc Released Per Ruling.pdf |

Happy Monday, Laura-

Please see the attached regarding the Fenno request:

  ➢ Letter to Mr. Fenno
  ➢ AG Ruling OR2022-13624
  ➢ Doc Released Per Ruling

Have a great week!

Sincerely,
Janie Heath
Secretary to Stacie White, Girraud Stephens & PIA Support
6000 Western Place Suite 200
Fort Worth, TX 76107
817-332-2580
817-332-4740 Fax



TAYLOR·OLSON·ADKINS·SRALLA·ELAM

CONFIDENTIAL NOTICE: This electronic transmission and any documents or other writings sent with it constitute confidential information which is intended only for the named recipient and which may be legally privileged. If you have received this communication in error, do not read it. Please reply to the sender at Taylor, Olson, Adkins, Sralla & Elam, LLP that you have received the message in error. Then delete it. Any disclosure, copying, distribution or the taking of any action concerning the contents of this communication or any attachment(s) by anyone other than the named recipient is strictly prohibited.

1



6000 WESTERN PLACE, SUITE 200
FORT WORTH, TEXAS 76107

TAYLOR·OLSON·ADKINS·SRALLA·ELAM
L.L.C.
ATTORNEYS & COUNSELORS

TELEPHONE: (817) 332-2580
FACSIMILE: (817) 332-4740
WEBSITE: WWW.TOASE.COM

Stacie White

May 23, 2022

[Via E-Mail]
Nathan Fenno
Los Angeles Times
500 S. Oak Knoll #39
Pasadena, CA 91101

       Re:    *Public Information Request to the City of Southlake Dated February 18, 2022*

Dear Mr. Fenno:

    Enclosed, please find Open Records Letter Number OR2022-13624 from the Office of the Attorney General regarding your request for information. Also enclosed is the responsive information, which has been released in accordance with the ruling.

    The City understands the rights of all citizens to make requests for public information and invites all citizens to avail themselves of that right. Should you have any questions, please do not hesitate to contact me. Of course, all questions may also be forwarded to the Office of the Texas Attorney General, Open Government Hotline, at (512) 478-6736 or toll-free at 1-877-673-6839.

                Sincerely,

                Stacie White

SW:jph
Enclosures

W:\Southlake\PIA-SUBPOENAS\2022\Fenno, Nathan 2.18.22\AG Ruling\Fenno.SW001.docx

May 23, 2022
Page 2

bcc:   Sarah Blum (w/enclosures)
        Police Records Manager
        Southlake Police Department
        600 State Street
        Southlake, Texas 76092



**KEN PAXTON**
ATTORNEY GENERAL OF TEXAS

May 12, 2022

Ms. Stacie S. White
Counsel for the City of South Lake
Taylor Olson Adkins Sralla Elam, L.L.P.
6000 Western Place, Suite 200
Fort Worth, Texas 76107

OR2022-13624

Re:    Request for report# 19SP053735

Dear Ms. White:

The Office of the Attorney General has received your request for a ruling and assigned your request ID# 947156.

After reviewing your arguments and the submitted information, we have determined your request does not present a novel or complex issue. Thus, we are addressing your claims in a memorandum opinion. You claim the submitted information may be withheld from the requestor pursuant to section 552.108(a)(1) of the Government Code. Upon review of your arguments and the submitted information, we conclude you may withhold the submitted information under section 552.108(a)(1). However, you must release the basic information pursuant to section 552.108(c) of the Government Code.

For more information on the cited exception, please refer to the open government information on our website at https://www.texasattorneygeneral.gov/open-government/governmental-bodies/open-records-memorandum-rulings. You may also contact our Open Government Hotline at 1-877-OPENTEX.

Enc.    Submitted documents

c:    Requestor
       (w/o enclosures)

# *Southlake Police Department*

Page 1

## OFFENSE Report

| ORI: TX2203200 | Incident No. 19SP053735 | 11/19/2020 |
|---|---|---|

### *Incident*

| | | | | |
|---|---|---|---|---|
| CAD No. 1900146642 | Other No. 1961 | Type **Criminal** | Date Occur **07/01/2019 14:16** | |
| UCR StatusClear ExceptionallyClear. Date08/12/2020 | | Audited By. | Exc. Clear. | |
| Inv. Status Cleared | Report By: Branham, C. #1764 | 07/01/2019 | Approv By: Wilson,L. #103 | 07/02/2019 |
| Fam Viol. No | Investigator Green,D. #1594 | | Recorded Date: 07/01/2019 | |
| Description | | | | |
| Death Investigation | | | | |

Dispatch Location 1400 PLAZA PL Southlake

### - *Offense No.* 1        Offense Recording Date **07/01/2019 17:05**

| | | | |
|---|---|---|---|
| Off. Begin Date **07/01/2019 14:16** | Off. End Date **07/01/2019 14:16** | Entry Method | Attempt/Complete**Completed** |
| Drug Seized | Gang Related | Hi-Speed Pursuit | Weapons Used |
| Offense Code **481.112(b)** L/D FS | Offense **MAN DEL CS PG 1 <1G** | | No. of Premises **1** |
| Bias Motivation | | Agg Asslt/Homic. Circumst. | Supplement: 0 |
| Offense Addr. **Hilton Southlake Town Square -, 1400 PLAZA PL Southlake** | | | Loc.Type **Hotel/Motel/Etc.** |
| Remarks | | | |
| No offense | | | |

**Victim(s)**

| Name | DOB | Race | Sex | DL | Address |
|---|---|---|---|---|---|
| **Skaggs, Tyler Wayne** | 07/13/1991 | White | Male | | |

**Victims (Organizations)**

514

**Sarah Blum**

| | |
|---|---|
| **From:** | Garcia-Roberts, Gus < > |
| **Sent:** | Friday, January 26, 2024 11:25 AM |
| **To:** | DPSRecords |
| **Subject:** | Public records request |

I am seeking all body worn camera footage pertaining to the death investigation of Tyler Skaggs (DOB 7/13/91) on 1400 Plaza Place, Southlake, TX 76092, on 7/1/2019.

Best,

Gus Garcia-Roberts
Washington Post
213.246.8124

## Laura Alsina

| | |
|---|---|
| **From:** | Margarita Garcia <               > |
| **Sent:** | Wednesday, March 20, 2024 4:45 PM |
| **To:** | Laura Alsina; Sarah Blum |
| **Cc:** | Janie Molina; Michelle Roberts |
| **Subject:** | PIA Request of Gus Garcia-Roberts Dated September 18, 2023 |
| **Attachments:** | Garcia.FinalRelease.BB003.pdf |

Hello,

Please see the attached regarding the Garcia-Roberts request:

- Letter to Mr. Garcia-Roberts
- Audio Released Per Ruling
- Media Released per Ruling

Due to size, the responsive information is not attached. Please let me know if you would like a copy.

Thank you and have a great afternoon!

*Margarita Garcia*
PIA Support
6000 Western Place, Suite 200
Fort Worth, Texas 76107
Office (817) 332-2580
Fax (817) 332-4740


TAYLOR·OLSON·ADKINS·SRALLA·ELAM

CONFIDENTIAL NOTICE: This electronic transmission and any documents or other writings sent with it constitute confidential information which is intended only for the named recipient and which may be legally privileged. If you have received this communication in error, do not read it. Please reply to the sender at Taylor, Olson, Adkins, Sralla & Elam, LLP that you have received the message in error. Then delete it. Any disclosure, copying, distribution or the taking of any action concerning the contents of this communication or any attachment(s) by anyone other than the named recipient is strictly prohibited.

1

**516**



6000 WESTERN PLACE, SUITE 200
FORT WORTH, TEXAS 76107

TAYLOR·OLSON·ADKINS·SRALLA·ELAM
L.L.P.

ATTORNEYS & COUNSELORS

TELEPHONE: (817) 332-2580
FACSIMILE: (817) 332-4740
WEBSITE: WWW.TOASE.COM

Bessie Bronstein

March 20, 2024

Gus Garcia-Roberts

> Re:    *Public Information Request Received by the City of Southlake Dated September 18,*
> *2023*

Dear Mr. Garcia-Roberts:

I represent the City of Southlake in regard to the above-referenced matter. The City previously released Open Records Letter Number OR2024-000715 from the Office of the Attorney General regarding your request for information and redacted responsive documents on February 7, 2024. Please find enclosed the final batch of information responsive to your request.

The City understands the rights of all citizens to make requests for public information and invites all citizens to avail themselves of that right. Should you have any questions, please do not hesitate to contact me. Of course, all questions may also be forwarded to the Office of the Texas Attorney General, Open Government Hotline, at (512) 478-6736 or toll-free at 1-877-673-6839.

Sincerely,

*Bessie Bronstein /H/ale*

Bessie Bronstein

BB:mg
Enclosures

cc:    Honorable Ken Paxton (w/o enclosures)
       Attorney General of Texas
       Supreme Court Building
       P.O. Box 12548
       Austin, Texas 78711-2548

V:\Southlake\PIA~SUBPOENAS2023\Garcia-Roberts, Gus 9.18.23\AG Ruling\To Requestor\Final Release\Final Release, Garcia-Roberts BB001.docx

**517**

March 20, 2024
Page 2

bcc:   Laura Alsina (w/enclosures)
Records Coordinator
lalsina@ci.southlake.tx.us

Sarah Blum (w/enclosures)
Police Records Manager
sblum@ci.southlake.tx.us

**Sarah Blum**

| | |
|---|---|
| **From:** | Garcia-Roberts, Gus < |
| **Sent:** | Monday, September 18, 2023 11:40 PM |
| **To:** | DPSRecords |
| **Subject:** | Tyler Skaggs |

All records/audio/video and other materials concerning the investigation of the 7/1/19 death of Tyler Skaggs, DOB 7/13/91.

Best,

Gus Garcia-Roberts
Washington Post
213.246.8124

1

**519**

**Laura Alsina**

| | |
|---|---|
| **From:** | Margarita Garcia < > |
| **Sent:** | Wednesday, February 7, 2024 5:01 PM |
| **To:** | Laura Alsina; Sarah Blum |
| **Cc:** | Michelle Roberts; Janie Molina |
| **Subject:** | PIA Request of Gus Garcia-Roberts Dated September 18, 2023 |
| **Attachments:** | Garcia-Roberts.1stNotice.Release.BB001.pdf; Ruling OR2024-000715.pdf |

Hello Laura and Sarah,

Please see the attached regarding the Garcia-Roberts request:

- Letter to Mr. Garcia-Roberts
- AG Ruling OR2024-000715
- Redacted Docs Released Per Ruling – Attached through links below
- Media Released Per Ruling – Attached through links below

Redacted Docs Released Per Ruling.pdf

19SP053735_John Cacye Attorney.mp3

19SP053735_Nieman Nix.mp3

19SP053735_Nina Myles.mp3

CDamico_201907011415_Unit203_10534881.mp4

KMeeks_201907011419_Unit246_419965925 (2).mp4

Thank you,

*Margarita Garcia*

PIA Support
6000 Western Place, Suite 200
Fort Worth, Texas 76107
Office (817) 332-2580
Fax (817) 332-4740



TAYLOR·OLSON·ADKINS·SRALLA·ELAM

CONFIDENTIAL NOTICE: This electronic transmission and any documents or other writings sent with it constitute confidential information which is intended only for the named recipient and which may be legally privileged. If you have received this communication in error, do not read it. Please reply to the sender at Taylor, Olson, Adkins, Sralla & Elam, LLP that you have received the message in error. Then delete it. Any disclosure, copying, distribution or the taking of any action concerning the contents of this communication or any attachment(s) by anyone other than the named recipient is strictly prohibited.

1

**520**



6000 WESTERN PLACE, SUITE 200
FORT WORTH, TEXAS 76107

TAYLOR·OLSON·ADKINS·SRALLA·ELAM
L.L.P.
ATTORNEYS & COUNSELORS

TELEPHONE: (817) 332-2580
FACSIMILE: (817) 332-4740
WEBSITE: WWW.TOASE.COM

Bessie Bronstein

February 7, 2024

Gus Garcia-Roberts

Re:    *Public Information Request Received by the City of Southlake Dated September 18,*
       *2023*

Dear Mr. Garcia-Roberts:

I represent the City of Southlake in regard to the above-referenced matter. Enclosed please find Open Records Letter Number OR2024-000715 from the Office of the Attorney General regarding your request for information. Also enclosed is the first batch of the responsive information that the Attorney General has indicated the City should release, which has been redacted in accordance with the ruling.

Pursuant to Section 552.306(c) of the Texas Government Code, this letter further serves as notice that it is impractical or impossible for the City to produce the remaining information within a reasonable period of time. The City anticipates disclosing this information to you on or before February 28, 2024 by 5:00 p.m., which is 15 business days from the date of this letter.

The City understands the rights of all citizens to make requests for public information and invites all citizens to avail themselves of that right. Should you have any questions, please do not hesitate to contact me. Of course, all questions may also be forwarded to the Office of the Texas Attorney General, Open Government Hotline, at (512) 478-6736 or toll-free at 1-877-673-6839.

Sincerely,

Bessie Bronstein

BB:dlg
Enclosures

cc:    Honorable Ken Paxton (w/o enclosures)
       Attorney General of Texas
       Supreme Court Building
       P.O. Box 12548
       Austin, Texas 78711-2548

V:\Southlake\PIA--SUB\GENA3\2023\Garcia-Roberts, Gus 9.18.23\AG Ruling\To Requestor\1st Release.Notice\Garcia-Roberts.1stNotice.Release.BB001.docx

February 7, 2024
Page 2

---

bcc:   Laura Alsina (w/enclosures)
Records Coordinator
lalsina@ci.southlake.tx.us

Sarah Blum (w/enclosures)
Police Records Manager
sblum@ci.southlake.tx.us



**KEN PAXTON**
ATTORNEY GENERAL OF TEXAS

January 8, 2024

Ms. Bessie Bronstein
Counsel for the City of Southlake
Taylor, Olson, Adkins, Sralla & Elam, LLP
6000 Western Place, Suite 200
Fort Worth, Texas 76107

OR2024-000715

Dear Ms. Bronstein:

You ask whether certain information is subject to required public disclosure under the Public Information Act (the "Act"), chapter 552 of the Government Code. Your request was assigned ID# 23-091793 (Ref. No. 1207-91823).

The City of Southlake (the "city"), which you represent, received a request for information pertaining to a specified investigation. You state the city will redact certain information pursuant to sections 552.130(c) and 552.147(b) of the Government Code and Open Records Decision No. 684 (2009).[1] You claim the submitted information is excepted from disclosure under section 552.101 of the Government Code. Additionally, you state the city notified a deceased individual's family of the request for information and of the family's right to submit arguments to this office as to why the information at issue should not be released. *See* Gov't Code § 552.304 (providing that interested party may submit comments stating why information should or should not be released). We have considered the exception you claim and reviewed the submitted representative sample of information.[2]

---

[1] Section 552.130(c) of the Government Code allows a governmental body to redact the information described in section 552.130(a) without the necessity of seeking a decision from the attorney general. Gov't Code § 552.130(c). If a governmental body redacts such information, it must notify the requestor in accordance with section 552.130(e). *See id.* § 552.130(d), (e). Section 552.147(b) of the Government Code authorizes a governmental body to redact a living person's social security number from public release without the necessity of requesting a decision from this office under the Act. *Id.* § 552.147(b). Open Records Decision No. 684 is a previous determination to all governmental bodies authorizing them to withhold specific categories of information without the necessity of requesting an attorney general decision. ORD 684.

[2] This letter ruling assumes that the submitted representative sample of information is truly representative of the requested information as a whole. This ruling does not reach, and therefore does not authorize, the withholding of any other requested information to the extent that the other information is substantially

Ms. Bessie Bronstein - Page 2

Initially, we note the information at issue includes city police officers' body worn camera recordings. Body worn cameras are subject to chapter 1701 of the Occupations Code. Chapter 1701 provides the procedures a requestor must follow when seeking a body worn camera recording. Section 1701.661(a) provides:

> A member of the public is required to provide the following information when submitting a written request to a law enforcement agency for information recorded by a body worn camera:
>
> > (1) the date and approximate time of the recording;
> >
> > (2) the specific location where the recording occurred; and
> >
> > (3) the name of one or more persons known to be a subject of the recording.

Occ. Code § 1701.661(a). In this instance, the requestor does not give the requisite information under section 1701.661(a). As the requestor did not properly request the body worn camera recordings at issue pursuant to chapter 1701, our ruling does not reach this information and it need not be released.[3] However, pursuant to section 1701.661(b), a "failure to provide all the information required by Subsection (a) to be part of a request for recorded information does not preclude the requestor from making a future request for the same recorded information." *Id.* § 1701.661(b).

Section 552.101 of the Government Code excepts from disclosure "information considered to be confidential by law, either constitutional, statutory, or by judicial decision." Gov't Code § 552.101. Section 552.101 encompasses the doctrine of constitutional privacy. Constitutional privacy consists of two interrelated types of privacy: (1) the right to make certain kinds of decisions independently and (2) an individual's interest in avoiding disclosure of personal matters. Open Records Decision No. 455 at 4 (1987). The first type protects an individual's autonomy within "zones of privacy" which include matters related to marriage, procreation, contraception, family relationships, and child rearing and education. *Id.* The second type of constitutional privacy requires a balancing between the individual's privacy interests and the public's need to know information of public concern. *Id.* The scope of information protected is narrower than that under the common law doctrine of privacy; the information must concern the "most intimate aspects of human affairs." *Id.* at 5 (quoting *Ramie v. City of Hedwig Village, Tex.*, 765 F.2d 490, 492 (5th Cir. 1985)). However, we note the right to privacy is a personal right that "terminates upon the death of the person whose privacy is invaded"; therefore, it may not be asserted solely on behalf of a deceased individual. *Moore v. Charles B. Pierce Film Enters., Inc.*, 589 S.W.2d 489, 491 (Tex. Civ. App.—Texarkana 1979, writ ref'd n.r.e.); *see also* Attorney

---

different than that submitted to this office. *See* Gov't Code §§ 552.301(e)(1)(D), .302; Open Records Decision Nos. 499 at 6 (1988), 497 at 4 (1988).

[3] As we are able to make this determination, we need not address your arguments against disclosure of this information.

Ms. Bessie Bronstein - Page 3

General Opinions JM-229 (1984) ("the right of privacy lapses upon death"), H-917 (1976) ("We are . . . of the opinion that the Texas courts would follow the almost uniform rule of other jurisdictions that the right of privacy lapses upon death."); Open Records Decision No. 272 at 1 (1981) (privacy rights lapse upon death). The United States Supreme Court, however, has determined that surviving family members can have a privacy interest in information relating to their deceased relatives. *See Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157 (2004) (holding surviving family members have a right to personal privacy with respect to their close relative's death-scene images and such privacy interests outweigh public interest in disclosure).

We note most of the information at issue pertains solely to a deceased individual and may not be withheld from disclosure based on his privacy interests. However, you state the deceased individual's family objects to disclosure of the information at issue. Upon review, we find the family's privacy interests in the images of the deceased individual outweigh the public's interest in the disclosure of this information. We therefore conclude the city must withhold the images of the deceased individual under section 552.101 in conjunction with constitutional privacy and the ruling in *Favish*.[4] However, we find the remaining information does not fall within the zones of privacy or otherwise implicate a living individual's privacy interests for the purposes of constitutional privacy. Therefore, the city may not withhold the remaining information under section 552.101 in conjunction with constitutional privacy.

Section 552.101 of the Government Code also encompasses the doctrine of common-law privacy, which protects information that is (1) highly intimate or embarrassing, the publication of which would be highly objectionable to a reasonable person, and (2) not of legitimate concern to the public. *Indus. Found. v. Tex. Indus. Accident Bd.*, 540 S.W.2d 668, 685 (Tex. 1976). To demonstrate the applicability of common-law privacy, both prongs of this test must be satisfied. *Id.* at 681-82. Types of information considered intimate or embarrassing by the Texas Supreme Court are delineated in *Industrial Foundation*. *Id.* at 683. This office has concluded some kinds of medical information are generally highly intimate or embarrassing. *See* ORD 455. Additionally, this office has found that personal financial information not relating to a financial transaction between an individual and a governmental body is generally intimate or embarrassing. *See generally* Open Records Decision Nos. 545 (1990) (deferred compensation information, participation in voluntary investment program, election of optional insurance coverage, mortgage payments, assets, bills, and credit history), 523 (1989) (common-law privacy protects credit reports, financial statements, and other personal financial information), 373 (1983) (sources of income not related to financial transaction between individual and governmental body protected under common-law privacy). Further, the Third Court of Appeals has concluded public citizens' dates of birth are protected by common-law privacy pursuant to section 552.101. *See Paxton v. City of Dallas*, No. 03-13-00546-CV, 2015 WL 3394061, at *3 (Tex. App.—Austin May 22, 2015, pet. denied) (mem. op.).

---

[4] As our ruling is dispositive, we need not address your remaining argument against disclosure of this information.

Ms. Bessie Bronstein - Page 4

Upon review, we find the information you have marked satisfies the standard articulated by the Texas Supreme Court in *Industrial Foundation*. Therefore, the city must withhold the information you have marked under section 552.101 in conjunction with common-law privacy.

In summary, pursuant to section 1701.661 of the Occupations Code, the body worn camera recordings at issue were not properly requested by the requestor pursuant to chapter 1701 of the Occupations Code and need not be released to the requestor. The city must withhold the images of the deceased individual under section 552.101 of the Government Code in conjunction with constitutional privacy and the ruling in *Favish*. The city must withhold the information you have marked under section 552.101 of the Government Code in conjunction with common-law privacy. The city must release the remaining information.

This letter ruling is limited to the particular information at issue in this request and limited to the facts as presented to us; therefore, this ruling must not be relied upon as a previous determination regarding any other information or any other circumstances.

This ruling triggers important deadlines regarding the rights and responsibilities of the governmental body and of the requestor. For more information concerning those rights and responsibilities, please visit our website at https://www.texasattorneygeneral.gov/open-government/members-public/what-expect-after-ruling-issued or call the OAG's Open Government Hotline, toll free, at (877) 673-6839. Questions concerning the allowable charges for providing public information under the Public Information Act may be directed to the Cost Rules Administrator of the OAG, toll free, at (888) 672-6787.

Sincerely,

Lindsay E. Hale
Assistant Attorney General
Open Records Division

LEH/pt

Ref:    ID# 23-091793

c:    Requestor

**Laura Alsina**

| | |
|---|---|
| **From:** | Garcia-Roberts, Gus < ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ > |
| **Sent:** | Monday, January 8, 2024 11:46 PM |
| **To:** | DPSRecords |
| **Subject:** | Skaggs body worn camera footage list |

Hello,

I am seeking a list of all body worn camera footage related to the investigation of the 7/1/19 death of Tyler Skaggs, DOB 7/13/91, including, for each recording, the following information:

- The date and time of the recording

- Location where recording occurred

- Subject(s) of recording

Best,

Gus Garcia-Roberts
Washington Post
213.246.8124

1

**Laura Alsina**

| | |
|---|---|
| **From:** | Ellie Schulte < ▓▓▓▓▓▓▓▓▓ > |
| **Sent:** | Tuesday, January 23, 2024 3:27 PM |
| **To:** | Laura Alsina; Sarah Blum |
| **Cc:** | Michelle Roberts |
| **Subject:** | Public Information Request of Gus Garcia-Roberts (1/8/24) |
| **Attachments:** | Garcia-Roberts.BB001.COPY.pdf; Released Docs.pdf |

Good afternoon,

Attached is a copy of the letter to Mr. Garcia-Roberts regarding his request and the documents being released to him.

Thank you,

Ellie Schulte
PIA Support / Legal Assistant
6000 Western Place Suite 200
Fort Worth, TX 76107
817-332-2580 x252
817-332-4740 Fax
eschulte@toase.com



**TAYLOR·OLSON·ADKINS·SRALLA·ELAM**
ATTORNEYS & COUNSELORS

CONFIDENTIAL NOTICE: This electronic transmission and any documents or other writings sent with it constitute confidential information which is intended only for the named recipient and client and which is subject to attorney/client privilege. If you have received this communication in error, do not read it. Please reply to the sender at Taylor, Olson, Adkins, Sralla & Elam, L.L.P. that you have received the message in error. Then delete it. Any disclosure, copying distribution or the taking of any action concerning the contents of this communication or any attachment(s) by anyone other than the named recipient is strictly prohibited.

1

**528**



6000 WESTERN PLACE, SUITE 200
FORT WORTH, TEXAS 76107

TELEPHONE: (817) 332-2580
FACSIMILE: (817) 332-4740
WEBSITE: WWW.TOASE.COM

Bessie Bronstein

January 23, 2024

Gus Garcia-Roberts
The Washington Post

Re:    *Public Information Request Received by the City of Southlake Dated January 8, 2024*

Dear Garcia-Roberts:

I represent the City of Southlake regarding the above-described matter. Enclosed please find the information responsive to your request dated January 8, 2024.

The City understands the rights of all citizens to make requests for public information and invites all citizens to avail themselves of that right. Should you have any questions, please do not hesitate to contact me. Of course, all questions may also be forwarded to the Office of the Texas Attorney General, Open Government Hotline, at (512) 478-6736 or toll-free at 1-877-673-6839.

Sincerely,

Bessie Bronstein / EJ

Bessie Bronstein

BB:es
Enclosure

V:\Southlake\PIA-SUBPOENA\2024\Garcia-Roberts, Gus 1.8.24\To Requestor\Garcia-Roberts.BB401.docx

January 23, 2024
Page 2

---

bcc:   Laura Alsina (w/enclosure)
       Records Coordinator
       lalsina@ci.southlake.tx.us

       Sarah Blum (w/enclosure)
       Police Records Manager
       sblum@ci.southlake.tx.us



**KELLER POLICE DEPARTMENT**

CFS - Command Log                                            Printed on January 10, 2024

| | |
|---|---|
| **CFS #** | CFS-1900146642 |
| **Call Taker** | DUNCAN,B. #243 |
| **Location** | 1400 PLAZA PL, Southlake |
| **Location Details** | Hilton Southlake Town Square - |
| **Primary Incident Code** | 57 : Death Investigation |
| **Mod** | |
| **Priority** | 1 |
| **Use Caution** | No |
| **Primary Disposition** | |
| **Beat** | |
| **Call Time** | 07/01/19 14:16:09 |
| **Completed Time** | 07/01/19 14:25:24 |

---

### Reporters

**CHARLES KNIGHT (Initial Reporter)**

| | |
|---|---|
| **Sex** | |
| **DOB** | |
| **Address** | |
| **Report Time** | 07/01/19 14:16:09 |
| **How Reported** | Phone |
| **From Phone** | (714) 336-2133 |
| **Contact Phone** | |
| **Comments** | |

---

### Other Names

---

### Vehicles

---

### Responders

| | |
|---|---|
| 210 - MUSIC,G. #162 (Primary) | KP (Primary) |
| 213 - MOWDY,D. #1659 | KP (Primary) |
| 214 - BRANHAM, C. #1764 | KP (Primary) |
| 215 - MEEKS,K. #1866 | KP (Primary) |
| 252 - DAMICO,C. #1666 | KP (Primary) |
| 260 - MACHECA,J. #1100 | KP (Primary) |
| 261 - GREEN,D. #1594 | KP (Primary) |
| 262 - ROBERSON,T. #1521 (Primary) | KP (Primary) |

---

### Response Times

| | |
|---|---|
| **Assigned** | 07/01/19 14:16:53 * |
| **Enroute** | 07/01/19 14:16:53 |
| **Staged** | |

Page 1 of 3

531

**Laura Alsina**

| | |
|---|---|
| **From:** | E. Ladsous . Delta 7 Group <e.ladsous@delta7group.com> |
| **Sent:** | Wednesday, June 26, 2024 1:39 PM |
| **To:** | DPSRecords |
| **Cc:** | Jessica Hernandez Diotalevi |
| **Subject:** | FOIA Request for Digital Forensic Records and Interview Reports – Tyler Skaggs Case - Southlake Police Department - SPD-19SP053735 |
| **Attachments:** | Angels Baseball – Letter of Representation - Southlake PD.pdf |

To: Southlake Police Department
ATTN.: Records Division

Subject: FOIA Request for Digital Forensics Records – Tyler Skaggs Case

Dear Sir/Madam,

I am writing to formally request access to all digital forensics records and analyses related to the case of Tyler Wayne Skaggs (DOB: 7/13/1991), under the Freedom of Information Act (FOIA). The case number for this investigation is **SPD-19SP053735**.

Specifically, I am requesting:

1. Digital forensics analysis reports prepared by the Grapevine PD Forensic Lab of all digital media seized, including but not limited to:

   o  Mobile phone – Tyler Skaggs' Apple iPhone, black, collected by Thomas Robertson, on 07/01/19 at 17:30, at 1400 PLAZA PL 469 Southlake TX.
   o  iPads – Apple iPad, Model A1670, S/N DLXV60JDHPJ6, collected by Thomas Robertson, on 07/01/19 at 17:30, at 1400 PLAZA PL 469 Southlake TX.

2. Interview details, reports, and notes, including all audio recordings if available, of all interactions with Garet Ramos (DOB:       , including but not limited to:

   o  The interview conducted on July 2, 2019, by Detective Delaney Green and Sgt. Jonathan Macheca.
   o  Any other interviews, phone calls, or communications with Garet Ramos related to this case.

I serve as an investigator with Delta 7 Group, retained by Theodora Oringher PC to assist in the litigation case of Skaggs et al. vs. Angels Baseball LP, Orange County Superior Court Case No. 30-2021-01231706-CU-PO-NJC. If you have any questions regarding this request, please contact Jessica H. Diotalevi, Esq., of Theodora Oringher PC, who is copied on this email.

Should there be any fees associated with processing this request, please inform me of the cost at your earliest convenience. Delta 7 Group is willing to cover any reasonable fees for the acquisition of these records.

1

**532**

Thank you for your prompt attention to this matter.

Sincerely,

Emmanuel

---

**Emmanuel Ladsous**
President / Private Investigator
**Delta 7 Group, LLC**
A Professional Security Consultancy
4712 E 2nd Street, Suite 231
Long Beach, CA 90803-5309
Phone: (800) 689-6546, Ext. 700
Mobile: (949) 423-4350
Email address: E.Ladsous@Delta7Group.com
Website:    www.Delta7Group.com
CA PI License#    188424



 

**This email is unsecured and subject to monitoring.**

CONFIDENTIALITY NOTICE:  This communication and any documents, files, or previous email messages attached constitute an electronic communication within the scope of the Electronic Communication Privacy Act, 18 U.S. Code § 2510. This communication may contain non-public, confidential, or legally privileged information intended for the designated recipient(s) sole use. The unlawful interception, use, or disclosure of such information is strictly prohibited under 18 U.S. Code § 2511 and applicable laws. If you are not the intended recipient or have received this communication in error, please notify the sender immediately by email to E.Ladsous@Delta7Group.com and delete all copies of this communication, including attachments, without reading or saving them in any matter.



**THEODORA ORINGHER PC**
1840 Century Park East, Suite 500
Los Angeles, California 90067-2120
T (310) 557-2009 • F (310) 551-0283
www.tocounsel.com

**JESSICA H. DIOTALEVI**

714-549-6188
File No. 81924.05003

June 26, 2024

**VIA E-MAIL**

Southlake Police Department
ATTN: Records Division
600 State Street
Southlake, TX 76092

      Re:    Representation - *Skaggs, et al. vs. Angels Baseball LP*
              Orange County Superior Court Case No. 30-2021-01231706-CU-PO-NJC
              Southlake Police Department Case SPD-19SP053735

Dear Sir/Madam:

      Please be advised that our firm represents Defendant Angels Baseball LP in the case entitled *Skaggs, et al. vs. Angels Baseball LP*, Orange County Superior Court Case No. 30-2021-01231706-CU-PO-NJC. Angels Baseball has retained investigator Emmanuel Ladsous of Delta 7 Group, LLC to assist in this action.

      Should you have any questions, please do not hesitate to contact me.

                    Sincerely,

                    JESSICA H. DIOTALEVI

Angels Baseball - Letter of Representation.docx

**534**

**Laura Alsina**

| | |
|---|---|
| **From:** | Natalee Maxwell < |
| **Sent:** | Thursday, July 11, 2024 2:22 PM |
| **To:** | Laura Alsina; Sarah Blum |
| **Cc:** | Michelle Roberts |
| **Subject:** | PIA Request of Emmanuel Ladsous 6-26-24 |
| **Attachments:** | Ltr to AG.pdf; Ladsous.BB001.COPY.pdf; Released Doc 7-11-24.pdf |

Hi Sarah & Laura,

Please see the attached letter to the AG, letter to Mr. Ladsous, and the responsive documents that are being released regarding his request.

Have a great day!

Natalee Maxwell
Legal Assistant to Tammy Ardolf
6000 Western Place Suite 200
Fort Worth, TX 76107
Phone: 817-332-2580

**TOASE**
TAYLOR·OLSON·ADKINS·SRALLA·ELAM

CONFIDENTIAL NOTICE: This electronic transmission and any documents or other writings sent with it constitute confidential information which is intended only for the named recipient and which may be legally privileged. If you have received this communication in error, do not read it. Please reply to the sender at Taylor, Olson, Adkins, Sralla & Elam, LLP that you have received the message in error. Then delete it. Any disclosure, copying, distribution or the taking of any action concerning the contents of this communication or any attachment(s) by anyone other than the named recipient is strictly prohibited.

**535**



6000 WESTERN PLACE, SUITE 200
FORT WORTH, TEXAS 76107

TELEPHONE: (817) 332-2580
FACSIMILE: (817) 332-4740
WEBSITE: WWW.TOASE.COM

Bessie Bronstein

July 11, 2024

Honorable Ken Paxton
Attorney General of Texas
Supreme Court Building
P.O. Box 12548
Austin, Texas 78711-2548

Re:    *Public Information Act Request of Emmanuel Ladsous Received by the City of Southlake on June 26, 2024*

Dear General Paxton:

I represent the City of Southlake in regard to the above-referenced matter. On June 26, 2024 the City received the public information request from Emmanuel Ladsous attached hereto as Exhibit A. Please note that the City offices were closed on Thursday July 4, 2024 in observance of the Independence Day holiday.

Pursuant to Section 552.301 of the Public Information Act (the "Act"), the City requests your determination regarding whether the responsive information falls within an exception to disclosure. The information the City believes may be withheld is attached hereto as Exhibit B. In particular, the City believes that the following exceptions apply:

I.    **Section 552.108(b):  Internal Records or Notations of a Law Enforcement Agency**

Section 552.108 of the Government Code, commonly referred to as the "law enforcement exception," provides that:

(b)    An internal record or notation of a law enforcement agency or prosecutor that is maintained for internal use in matters relating to law enforcement or prosecution is excepted from [required public disclosure] if:

(1)    release of the internal record or notation would interfere with law enforcement or prosecution;

(2)    the internal record or notation relates to law enforcement only in relation to an investigation that did not result in conviction or deferred adjudication[.]

Tex. Gov't. Code Ann. § 552.108(b)(1).

536

July 11, 2024
Page 2

Section 552.108(b)(1) is intended to protect "information which, if released, would permit private citizens to anticipate weaknesses in [a law enforcement agency], avoid detection, jeopardize officer safety, and generally undermine efforts to effectuate the laws of this State." *City of Ft. Worth v. Cornyn*, 86 S.W.3d 320, 327 (Tex. App. – Austin 2002, no pet.). Your office has previously concluded that a governmental body may withhold information that would reveal law enforcement techniques or procedures. *See, e.g.*, Tex. Atty. Gen. ORD 531 (1989) (interpreting predecessor to Section 552.108 to conclude that release of detailed use of force guidelines would unduly interfere with law enforcement), 252 (1980) (interpreting predecessor to Section 552.108 to conclude that it is designed to protect investigative techniques and procedures used in law enforcement), 143 (1976) (interpreting predecessor to Section 552.108 to conclude that disclosure of specific operations or specialized equipment directly related to investigation or detection of crime may be excepted).

To claim this exception, a governmental body must explain how and why release of the requested information would "unduly interfere with law enforcement and crime prevention." Gov't Code §§ 552.108(b)(1), 552.301; *Ex parte Pruitt*, 551 S.W.2d 706, 710 (Tex. 1977); Tex. Atty. Gen. ORD Nos. 562 at 10 (1990), 531 at 2. Generally known policies and techniques, however, may not be withheld under Section 552.108. *See, e.g.*, Tex. Atty. Gen. ORD Nos. 531 at 2-3 (interpreting predecessor to Section 552.108 to conclude that Penal Code provisions, common law, and constitutional limitations on use of force are not protected from disclosure), 252 at 3 (commonly known procedures and techniques must be disclosed).

Because the City feels that their release would unduly interfere with law enforcement by placing individuals at an advantage when attempting to conceal evidence pertinent to investigations, thereby impeding the police departments' ability to enforce laws and prevent crime, it requests that the documents marked as Exhibit B be withheld. Specifically, the City seeks to withhold this information as it believes that the release of this information would greatly and unduly interfere with the Southlake Police Department's ability to investigate crimes, and would compromise officer's ability by showing what is available to police officers when searching phones.

For the foregoing reasons, the City seeks to withhold the documents enclosed and marked as Exhibit B. Therefore, to the extent that the remaining responsive documents include similar information, the City seeks a ruling that it must withhold such information.

## II.     Previous Determination

Your office issued Open Records Decision No. 684 (2009), a previous determination to all governmental bodies authorizing them to withhold ten categories of information without the necessity of requesting an Attorney General decision. Additionally, your office has held that a governmental body may redact a living person's social security number without the necessity of requesting an Attorney General decision. Therefore, the City has not raised arguments regarding this information which may be contained in Exhibit B or other responsive material. To the extent this information is included in Exhibit B, this information will be withheld in the event of a ruling requiring the City to release any portion of the responsive documents.

July 11, 2024
Page 3

Section 552.130(c) provides that subject to Chapter 730 of the Transportation Code, a governmental body may redact information, without the necessity of requesting an Attorney General decision, if it relates to a driver's license, a personal identification document, or a motor vehicle title or registration issued by an agency of this state or another state or country. If the City redacts such information, it will notify the requestor as required by Section 552.130(e). The City, therefore, has not raised arguments regarding these types of information. Any information that the City is not seeking to raise an exception on has been released to the requester.

The requestor has been notified by copy of this letter that the City has chosen to seek an Attorney General decision on this matter. Please contact me at the above address with any questions regarding this matter.

Sincerely,

Bessie Bronstein

BB:nm
Enclosures

cc:    Emmanuel Ladsous (w/o enclosures)
       DELTA 7 GROUP, LLC
       4712 E. 2nd Street, Suite 231
       Long Beach, California 90803
       e.ladsous@delta7group.com

V:\Southlake\PIA—SUBPOENAS\2024\Ladsous, Emmanuel 6.26.24\Ltr to AG with Exhibits\AttorneyGeneral.BB001.docx

**538**

July 11, 2024
Page 4

bcc:   Laura Alsina (w/o enclosures)
      Records Coordinator
      lalsina@ci.southlake.tx.us

      Sarah Blum (w/o enclosures)
      Police Records Manager
      sblum@ci.southlake.tx.us



6000 WESTERN PLACE, SUITE 200
FORT WORTH, TEXAS 76107

**TAYLOR·OLSON·ADKINS·SRALLA·ELAM**
L.L.P.
ATTORNEYS & COUNSELORS

TELEPHONE: (817) 332-2580
FACSIMILE: (817) 332-4740
WEBSITE: WWW.TOASE.COM

Bessie Bronstein
pia@toase.com

July 11, 2024

Emmanuel Ladsous
DELTA 7 GROUP, LLC
4712 E. 2nd Street, Suite 231
Long Beach, California 90803
e.ladsous@delta7group.com

   *Re: Public Information Request to the City of Southlake Dated June 26, 2024*

Dear Mr. Ladsous:

   The City received your request for information on June 26, 2024. Enclosed is a portion of the information responsive to your request. The rest of the responsive information has been submitted to the Attorney General for a ruling.

   The City understands the rights of all citizens to make requests for public information and invites all citizens to avail themselves of that right. Should you have any questions, please do not hesitate to contact me. Of course, all questions may also be forwarded to the Office of the Texas Attorney General, Open Government Hotline, at (512) 478-6736 or toll-free at 1-877-673-6839.

       Sincerely,

       Bessie Bronstein/EY

       Bessie Bronstein

BB:nm
Enclosure

V:\Southlake\PIA—SUBPOENAS\2024\Ladsous, Emmanuel 6.26.24\To Requestor\Ladsous.BB001.docx

540

July 11, 2024
Page 2

bcc:   Laura Alsina (w/enclosure)
       Records Coordinator
       lalsina@ci.southlake.tx.us

       Sarah Blum (w/enclosure)
       Police Records Manager
       sblum@ci.southlake.tx.us



Case Narrative for SPD-19SP053735 (08/23/19 16:39)                    Printed on June 28, 2024

## Supplement Report By Jonathan Macheca, 08/23/19 16:39

**Interview with family member**
**Case #SPD-19SP053735**
**Typed By Jonathan Macheca**

Incident Number :19SP053735-5
Supplemented by:Macheca,J. #1100
Date of Supplement: 08/23/2019

On Tuesday July 2, 2019 Detective Delaney Green #1594 and I, Sgt. Jonathan Macheca #1100, attended the autopsy of Tyler Skaggs. Prior to the autopsy Mr. Skaggs' family was allowed to view his body. Detective Green and I were speaking with the family when his step-brother, Garet Ramos, asked if drugs were suspected. Mr. Ramos' demeanor suggested he had further knowledge of a possible history with drugs. Mr. Ramos then asked to speak with me in private.

Mr. Ramos informed me that he and Mr. Skaggs had grown up together and were close. He stated Skaggs had a history of prescription opioid drug abuse due to an injury in previous years. Because of the injury, Skaggs was prescribed prescription narcotics for recovery. Mr. Ramos advised he was once approached by Skaggs stating he had a problem with addiction. When asked if he knew how Skaggs would ingest the drugs, Mr. Ramos stated he "snorted" them. Mr. Ramos was also under the impression that Skaggs had previously received treatment for opioid abuse.

There is no further information at this time.

542

**Laura Alsina**

| | |
|---|---|
| **From:** | Jim Yarbrough < > |
| **Sent:** | Wednesday, March 20, 2024 4:02 PM |
| **To:** | DPSRecords; Bessie Bronstein |
| **Cc:** | Jim Yarbrough |
| **Subject:** | [Possible Malware Fraud]Additional Request |

**WARNING:** Your email security system has determined the message below may be a potential threat.

It may trick victims into clicking a link and downloading malware. Do not open suspicious links.

If you do not know the sender or cannot verify the integrity of the message, please do not respond or click on links in the message. Depending on the security settings, clickable URLs may have been modified to provide additional security.

In addition to the below PIA request relating to the death investigation of Tyler Skaggs, Incident No. 19SP053735, on July 1, 2019, at the Southlake Hilton Hotel in Southlake, Texas we also request BWC footage:

Information recorded by body worn cameras of any South Lake police personnel pertaining to the death investigation of Tyler Skaggs. The date and time of these recording would have begun July 1, 2019, from 2:00 p.m. at the South Lake Hilton Hotel, 1400 Plaza Place, South Lake, TX. We also request any other BWC footage pertaining to the follow-up of this investigation commencing on July 2, 2019, through the conclusion of the investigation by the South Lake Police Department.

Please let me know if you have any questions concerning this request and any costs associated with this request.

Thank You,

*Jim Yarbrough*



**RUSTY HARDIN & ASSOCIATES, LLP**
5 HOUSTON CENTER
1401 McKinney, Suite 2250
Houston, Texas 77010
(713) 652-9000 Main
(713) 586-3885 Direct
(713) 444-3530 Mobile
(713) 652-9800 Fax

https://www.rustyhardin.com/our-team/jim-yarbrough/

1

CONFIDENTIALITY NOTICE: The information in this e-mail may be confidential and/or privileged. This e-mail is intended to be reviewed by only the individual or organization named above. If you are not the intended recipient or an authorized representative of the intended recipient, you are hereby notified that any review, dissemination, or copying of this e-mail and its attachments, if any, or the information contained herein is prohibited. If you have received this e-mail in error, please immediately notify the sender by return e-mail and delete this e-mail from your system.

**From:** Jim Yarbrough <                    >
**Sent:** Thursday, March 14, 2024 3:52 PM
**To:** dpsrecords@ci.southlake.tx.us
**Cc:** Jim Yarbrough <               >
**Subject:** PIA Request

***Our law firm, Rusty Hardin & Associates, LLP represents Carli Skaggs (wife of Tyler Skaggs), Debbie Hetman (mother of Tyler Skaggs) and Darrell Skaggs (father of Tyler Skaggs). We request copies of photos and video files be produced in electronic format.***

**This PIA request relates to the death investigation of Tyler Skaggs, Incident No. 19SP053735,**

**on July 1, 2019, at the Southlake Hilton Hotel in Southlake, Texas.**

1. A copy of Detective Delaney Green's complete offense report, including all supplements, regarding the death investigation of Tyler Skaggs.

2. A copy of scene photographs, videos, and any scene drawings of the death investigation of Tyler Skaggs. Files of photos and videos in electronic format.

3. A copy of the crime scene log.

4. Detective Green testified that she and Sgt. Macheca took all the players and employees of the Los Angeles Angels into the Hilton banquet room, and interviewed them one by one, and the interviews were recorded via an audio recorder. Please produce all interviews of Angel players and employees, including Eric Kay, conducted by Southlake Police Department personnel as part of the death investigation.

5. Copies of any additional interviews conducted by Southlake Police Department agents or personnel, preferably in electronic format.

6. A copy of all emails sent or received by Southlake Police Department agents or personnel regarding the death investigation of Tyler Skaggs.

7. A copy of all electronic or text messages sent or received by Southlake Police Department agents or personnel regarding the death investigation of Tyler Skaggs.

8. A copy of all correspondence between Southlake Police Department agents or personnel and DEA regarding the death investigation of Tyler Skaggs.

9. A copy of any notes, documents or recordings from Detective Green, Sgt. Mancheca or any other representative of the Southlake Police Department regarding the meeting with the Skaggs family on July 2, 2019, at the Southlake Police Department.

2

10. A copy of any notes or recording of the interview of Angels employee Adam Chodzko interview.

11. Detective Green testified that after her interview with Adam Chodzko she went back and took Cellebrite camera images from Tyler Skaggs Cellebrite phone collection of important text messages or conversations (phone calls noted) between Tyler Skaggs and Eric Kay. Please provide a copy of the "important text messages or conversations (phone calls noted)" between Tyler Skaggs and Eric Kay" preserved by Detective Green.

12. All correspondence between or with any agent or employee of the Southlake Police Department and any agent or employee of the Los Angeles Angels, including any attorney for the Los Angeles Angels regarding the Death Investigation of Tyler Skaggs.

13. All correspondence between or with any agent or employee of the Southlake Police Department and any agent or employee of Major League Baseball.


It has come to my attention that the Washington Post has recently submitted and received a PIA request to the South Lake Police Department for records and documents. Please provide a duplicate copy of any records or documents furnished to the Washington Post as a result of their PIA request. Please let me know if you have any questions concerning this request and any costs associated with this request.

Thank You,


*Jim Yarbrough*



**RUSTY HARDIN & ASSOCIATES, LLP**
5 HOUSTON CENTER
1401 McKinney, Suite 2250
Houston, Texas 77010
(713) 652-9000 Main
(713) 586-3885 Direct
(713) 444-3530 Mobile
(713) 652-9800 Fax

https://www.rustyhardin.com/our-team/jim-yarbrough/

CONFIDENTIALITY NOTICE: The information in this e-mail may be confidential and/or privileged. This e-mail is intended to be reviewed by only the individual or organization named above. If you are not the intended recipient or an authorized representative of the intended recipient, you are hereby notified that any review, dissemination, or copying of this e-mail and its attachments, if any, or the information contained herein is prohibited. If you have received this e-mail in error, please immediately notify the sender by return e-mail and delete this e-mail from your system.

## Sarah Blum

| | |
|---|---|
| **From:** | Jerri Berry < |
| **Sent:** | Wednesday, June 26, 2024 4:37 PM |
| **To:** | Laura Alsina; Sarah Blum |
| **Cc:** | Janie Molina; Michelle Roberts |
| **Subject:** | PIA Request of Jim Yarbrough dated March 20, 2024 |
| **Attachments:** | Yarbrough.BB002.pdf; Ruling OR2024-020179.pdf |

Good afternoon,

Please see the attached regarding the Jim Yarbrough request:

- Letter to Jim Yarbrough
- AG Ruling OR2024-020179



Jerri Diaz
Legal Secretary to Bryn Meredith, Eric Ransleben,  Charlotte Staples, John Domenech and Tyler Rochon
**Taylor Olson Adkins Sralla & Elam, LLP**
6000 Western Place, Suite 200
Fort Worth, TX  76107

Phone:  817-332-2580
Fax:  817-332-4740

NOTICE: This communication may contain privileged or confidential information.  If you are not the intended recipient or have received it in error, please advise the sender by reply email and immediately delete this email and any attachments without reading, copying or disclosing the contents.  If you are not the intended recipient, any disclosure, copying, distribution or use of the contents is prohibited. Your receipt of this communication is not intended to waive any applicable privilege.

CIRCULAR 230 NOTICE:  To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

1



6000 WESTERN PLACE, SUITE 200
I-30 AT BRYANT IRVIN ROAD
FORT WORTH, TEXAS 76107
EMAIL:TOASE@TOASE.COM

TELEPHONE: (817) 332-2580
TOLL FREE: (800) 318-3400
FACSIMILE: (817) 332-4740
WEBSITE: WWW.TOASE.COM

Bessie Bronstein

June 26, 2024

Jim Yarbrough
Rusty Hardin & Associates
5 Houston Center
140 McKinney, Suite 2250
Houston, Texas 77010

> Re:    *Public Information Request Received by the City of Southlake on March 20, 2024*

Dear Mr. Yarbrough:

Enclosed please find Open Records Letter Number OR2024-020179 from the Office of the Attorney General regarding your request for information. All information was previously released to you on April 3, 2024.

The City understands the rights of all citizens to make requests for public information and invites all citizens to avail themselves of that right. Should you have any questions, please do not hesitate to contact me. Of course, all questions may also be forwarded to the Office of the Texas Attorney General, Open Government Hotline, at (512) 478-6736 or toll-free at 1-877-673-6839.

Sincerely,

Bessie Bronstein

BB:mar/jbd
Enclosure

547

June 26, 2024
Page 2

bcc:    Laura Alsina (w/enclosure)
        Records Coordinator
        lalsina@ci.southlake.tx.us

        Sarah Blum (w/enclosure)
        Police Records Manager
        sblum@ci.southlake.tx.us



**KEN PAXTON**
ATTORNEY GENERAL OF TEXAS

June 6, 2024

Ms. Bessie Bronstein
Counsel for the City of Southlake
Taylor Olson Adkins Sralla Elam, L.L.P.
6000 Western Place, Suite 200
Fort Worth, Texas 76107

OR2024-020179

Dear Ms. Bronstein:

You ask whether certain information is subject to required public disclosure under the Public Information Act (the "Act"), chapter 552 of the Government Code. Your request was assigned ID# 24-013732.

The City of Southlake (the "city"), which you represent, received a request for recordings related to a specified incident. The city claims some of the submitted information is excepted from disclosure under section 552.101 of the Government Code. We have considered the claimed exception and reviewed the submitted representative sample of information.[1]

Section 552.101 of the Government Code excepts from disclosure "information considered to be confidential by law, either constitutional, statutory, or by judicial decision." Gov't Code § 552.101. This section encompasses information made confidential by other statutes. Body worn cameras are subject to chapter 1701 of the Occupations Code. Section 1701.661(a) of the Occupations Code states the information a requestor must provide when seeking a body worn camera recording. *See* Occ. Code § 1701.661(a). We understand the requestor provided the information required by section 1701.661(a) for release of the body worn camera recording. However, section 1701.661(f) provides, in relevant part, as follows:

---

[1] We assume the "representative sample" of records submitted to this office is truly representative of the requested records as a whole. *See* Open Records Decision Nos. 499 (1988), 497 (1988). This open records letter does not reach, and therefore does not authorize the withholding of, any other requested records to the extent those records contain substantially different types of information than that submitted to this office.

Ms. Bessie Bronstein - Page 2

> A law enforcement agency may not release any portion of a recording made
> in a private space . . . without written authorization from the person who is
> the subject of that portion of the recording or, if the person is deceased, from
> the person's authorized representative.

*Id.* § 1701.661(f). Upon review, we find the recording at issue was made in a private space.
*See id.* § 1701.651(3) (defining "private space" for purposes of section 1701.661(f)). The
city does not inform us it has permission for release from all of the subjects of the portions
of the recordings made in the private space at issue. *See id.* § 1701.661(f). Accordingly,
the city must withhold the submitted information under section 552.101 of the Government
Code in conjunction with section 1701.661(f) of the Occupations Code.[2]

This letter ruling is limited to the particular information at issue in this request and limited
to the facts as presented to us; therefore, this ruling must not be relied upon as a previous
determination regarding any other information or any other circumstances.

This ruling triggers important deadlines regarding the rights and responsibilities of the
governmental body and of the requestor. For more information concerning those rights and
responsibilities, please visit our website at https://www.texasattorneygeneral.gov/open-
government/members-public/what-expect-after-ruling-issued or call the OAG's Open
Government Hotline, toll free, at (877) 673-6839. Questions concerning the allowable
charges for providing public information under the Public Information Act may be directed
to the Cost Rules Administrator of the OAG, toll free, at (888) 672-6787.

Sincerely,

James Coggeshall
Assistant Attorney General
Open Records Division

JLC/pt

Ref:    ID# 24-013732

c:      Requestor

---

[2] As our ruling is dispositive, we do not address the other argument of the city to withhold this information.

**Laura Alsina**

| | |
|---|---|
| **From:** | Margarita Garcia < |
| **Sent:** | Wednesday, April 3, 2024 4:46 PM |
| **To:** | Laura Alsina; Sarah Blum |
| **Cc:** | Michelle Roberts |
| **Subject:** | PIA Request of Jim Yarbrough March 20, 2024 |
| **Attachments:** | Ltr to AG.pdf; Yarbrough.BB001.pdf |

Sarah and Laura,

Please see the attached letter to the AG, and letter to Mr. Yarbrough regarding his request. Due to size, the responsive media is not attached. Please let me know if you would like a copy of the information.

Thank you,

*Margarita Garcia*

PIA Support
6000 Western Place, Suite 200
Fort Worth, Texas 76107
Office (817) 332-2580
Fax (817) 332-4740



TAYLOR·OLSON·ADKINS·SRALLA·ELAM

CONFIDENTIAL NOTICE: This electronic transmission and any documents or other writings sent with it constitute confidential information which is intended only for the named recipient and which may be legally privileged. If you have received this communication in error, do not read it. Please reply to the sender at Taylor, Olson, Adkins, Sralla & Elam, LLP that you have received the message in error. Then delete it. Any disclosure, copying, distribution or the taking of any action concerning the contents of this communication or any attachment(s) by anyone other than the named recipient is strictly prohibited.

1

**551**



6000 WESTERN PLACE, SUITE 200
FORT WORTH, TEXAS 76107

TAYLOR·OLSON·ADKINS·SRALLA·ELAM
L.L.P.

ATTORNEYS & COUNSELORS·

TELEPHONE: (817) 332-2580
FACSIMILE: (817) 332-4740
WEBSITE: WWW.TOASE.COM

Bessie Bronstein

April 3, 2024

Honorable Ken Paxton
Attorney General of Texas
Supreme Court Building
P.O. Box 12548
Austin, Texas 78711-2548

Re:   *Public Information Act Request of Jim Yarbrough Received by the City of Southlake on March 20, 2024*

Dear General Paxton:

I represent the City of Southlake in regard to the above-referenced matter. On March 20, 2024 the City received the public information request from Jim Yarbrough attached hereto as Exhibit A.

Pursuant to Section 552.301 of the Public Information Act (the "Act"), the City requests your determination regarding whether the responsive information falls within an exception to disclosure. Exhibit B attached hereto contains a **representative sample** of the responsive information for which the City seeks to withhold. The responsive records include body worn camera recordings, which cannot be submitted electronically and therefore, screenshots have been provided. In particular, the City believes that the following exceptions apply:

**I.   Section 552.101: Common Law Privacy**

The City believes it must withhold a portion of the responsive information under Section 552.101 of the Act. Section 552.101 of the Act encompasses the common law right to privacy. Information must be withheld from the public under Section 552.101 in conjunction with common law privacy when the information is:

(1)   highly intimate or embarrassing, such that its release would be highly objectionable to a person of ordinary sensibilities, and

(2)   of no legitimate public interest.

*See Indus. Found. v. Tex. Indus. Accident Bd.*, 540 S.W.2d 668, 685 (Tex. 1976).

April 3, 2024
Page 2

Under the common-law right of privacy, an individual has a right to be free from the publicizing of private affairs in which the public has no legitimate concern. *Id.* at 682. In considering whether a private citizen's date of birth is private, the Third Court of Appeals looked to the supreme court's rationale in *Texas Comptroller of Public Accounts v. Attorney General of Texas,* 354 S. W.3d 336 (Tex. 2010). *Paxton v. City of Dallas,* No. 03-13-00546-CV, 2015 WL 3394061, at 3 (Tex. App.-Austin May 22, 2015, pet. denied) (mem. op.). The supreme court concluded public employees' dates of birth are private under section 552.102 of the Government Code because the employees' privacy interest substantially outweighed the negligible public interest in disclosure. *Texas Comptroller,* 354 S.W.3d at 347-48. Based on *Texas Comptroller,* the court of appeals concluded the privacy rights of public employees apply equally to private citizens, and thus, private citizens' dates of birth are also protected by common-law privacy pursuant to section 552.101. *City of Dallas,* 2015 WL 3394061, at 3.

The responsive materials contain public citizens' dates of birth. The City believes that it must withhold such information under Section 552.101 in conjunction with common law privacy.

**II.    Previous Determination**

Your office issued Open Records Decision No. 684 (2009), a previous determination to all governmental bodies authorizing them to withhold ten categories of information without the necessity of requesting an Attorney General decision. Additionally, your office has held that a governmental body may redact a living person's social security number without the necessity of requesting an Attorney General decision. Therefore, the City has not raised arguments regarding this information which may be contained in Exhibit B or other responsive material. To the extent this information is included in Exhibit B, this information will be withheld in the event of a ruling requiring the City to release any portion of the responsive documents.

Section 552.130(c) provides that subject to Chapter 730 of the Transportation Code, a governmental body may redact information, without the necessity of requesting an Attorney General decision, if it relates to a driver's license, a personal identification document, or a motor vehicle title or registration issued by an agency of this state or another state or country. If the City redacts such information, it will notify the requestor as required by Section 552.130(e). The City, therefore, has not raised arguments regarding these types of information. Any information that the City is not seeking to raise an exception on has been released to the requester.

The requestor has been notified by copy of this letter that the City has chosen to seek an Attorney General decision on this matter. Please contact me at the above address with any questions regarding this matter.

Sincerely,

Bessie Bronstein /H/ale

Bessie Bronstein

April 3, 2024
Page 3

_____

BB:mg
Enclosures

cc:     Jim Yarbrough (w/o enclosures)
        Rusty Hardin & Associates
        5 Houston Center
        140 McKinney, Suite 2250
        Houston, Texas 77010

V:\Scashke\914--SUBPOENAS\2024Yarbrough, Jim 3.20.24\Letter to AG with Exhibit\AAttorneyGeneral.BB.docx

April 3, 2024
Page 4

bcc:    Laura Alsina (w/o enclosures)
        Records Coordinator
        lalsina@ci.southlake.tx.us

        Sarah Blum (w/o enclosures)
        Police Records Manager
        sblum@ci.southlake.tx.us



6000 WESTERN PLACE, SUITE 200
FORT WORTH, TEXAS 76107

TAYLOR·OLSON·ADKINS·SRALLA·ELAM
L.L.P.

A T T O R N E Y S   &   C O U N S E L O R S

TELEPHONE: (817) 332-2580
FACSIMILE: (817) 332-4740
WEBSITE: WWW.TOASE.COM

Bessie Bronstein

April 3, 2023

Jim Yarbrough
Rusty Hardin & Associates
5 Houston Center
140 McKinney, Suite 2250
Houston, Texas 77010

Re:     *Public Information Request Received by the City of Southlake on March 20, 2024*

Dear Mr. Yarbrough:

We have received your public information request dated March 20, 2024. Enclosed is the information responsive to your request. A portion of the responsive information has been submitted to the Attorney General for a ruling.

The information you requested contains information that relates to:

- a motor vehicle operator's or driver's license or permit issued by an agency of this state or another state or country; or
- a motor vehicle title or registration issued by an agency of this state or another state or country; or
- a personal identification document issued by an agency of this state or another state or country or a local agency authorized to issue an identification document.

This information is confidential under Section 552.130 of the Texas Government Code. Our office is prohibited by law from releasing this information to you, and therefore we have removed this information from the enclosed information we are providing to you.

Normally, we must request a ruling from the Texas Attorney General before we can withhold any of the information you requested. However, Section 552.130 allows us to withhold this specific information without requesting a ruling from the attorney general.

Additionally, the information you have requested contains the dates of birth of public citizens (other than yourself) which are confidential by law. However, redaction of dates of birth requires an Attorney General ruling. In an effort to expedite your request, we have redacted the dates of birth from the responsive information in anticipation of an Attorney General ruling authorizing us to do so. We have submitted the information to the Attorney General for a ruling confirming that the dates of birth are confidential.

April 3, 2024
Page 2

<hr>

You have the right to appeal our decision to withhold this information from you. Instructions for appeal are at the end of this letter. If you do not want to appeal, you do not need to do anything else. Please note that we are only withholding the specific categories of information that are confidential under Section 552.130.

The City understands the rights of all citizens to make requests for public information and invites all citizens to avail themselves of that right. Should you have any questions, please do not hesitate to contact me. Of course, all questions may also be forwarded to the Office of the Texas Attorney General, Open Government Hotline, at (512) 478-6736 or toll-free at 1-877-673-6839.

Sincerely,

Bessie Bronstein / Hale

Bessie Bronstein

BB:mg
Enclosures

V:\Southlake\PIA--SUBPOENAS\2024\Yarbrough, Jim 3,20,24\To Requestor\Yarbrough.BB001.docx

## How to Appeal the Withholding of Information Under Gov't Code Section 552.130

If you wish to appeal the withholding of information discussed on the previous page, you must send the following to the attorney general:

1)    a signed, written statement indicating your wish to appeal the withholding of information;

2)    the name of the governmental body that withheld information from you;

3)    the date you made your original request for information; and

4)    a copy of your original request for information, or if you are unable to provide a copy, a description of your original request for information.

You may also submit written comments stating why you think the information should be released to you, but you are not required to do so.

Send your appeal by mail to the attorney general at:

Open Records Division
P.O. Box 12548
Austin, Texas 78711-2548

Within forty-five business days after receiving all of the above-listed items necessary to file your appeal, the attorney general will issue a written ruling on the matter. You will receive a copy of this ruling in the mail.

April 3, 2024
Page 3

bcc:    Laura Alsina (w/enclosures)
        Records Coordinator
        lalsina@ci.southlake.tx.us

        Sarah Blum (w/enclosures)
        Police Records Manager
        sblum@ci.southlake.tx.us

**Laura Alsina**

| | |
|---|---|
| **From:** | Jim Yarbrough |
| **Sent:** | Thursday, March 14, 2024 3:52 PM |
| **To:** | DPSRecords |
| **Cc:** | Jim Yarbrough |
| **Subject:** | [Possible Malware Fraud]PIA Request |

---

**WARNING:** Your email security system has determined the message below may be a potential threat.

It may trick victims into clicking a link and downloading malware. Do not open suspicious links.

If you do not know the sender or cannot verify the integrity of the message, please do not respond or click on links in the message. Depending on the security settings, clickable URLs may have been modified to provide additional security.

---

*Our law firm, Rusty Hardin & Associates, LLP represents Carli Skaggs (wife of Tyler Skaggs), Debbie Hetman (mother of Tyler Skaggs) and Darrell Skaggs (father of Tyler Skaggs). We request copies of photos and video files be produced in electronic format.*

This PIA request relates to the death investigation of Tyler Skaggs, Incident No. 19SP053735,

on July 1, 2019, at the Southlake Hilton Hotel in Southlake, Texas.

1. A copy of Detective Delaney Green's complete offense report, including all supplements, regarding the death investigation of Tyler Skaggs.

2. A copy of scene photographs, videos, and any scene drawings of the death investigation of Tyler Skaggs. Files of photos and videos in electronic format.

3. A copy of the crime scene log.

4. Detective Green testified that she and Sgt. Macheca took all the players and employees of the Los Angeles Angels into the Hilton banquet room, and interviewed them one by one, and the interviews were recorded via an audio recorder. Please produce all interviews of Angel players and employees, including Eric Kay, conducted by Southlake Police Department personnel as part of the death investigation.

5. Copies of any additional interviews conducted by Southlake Police Department agents or personnel, preferably in electronic format.

6. A copy of all emails sent or received by Southlake Police Department agents or personnel regarding the death investigation of Tyler Skaggs.

1

7. A copy of all electronic or text messages sent or received by Southlake Police Department agents or personnel regarding the death investigation of Tyler Skaggs.

8. A copy of all correspondence between Southlake Police Department agents or personnel and DEA regarding the death investigation of Tyler Skaggs.

9. A copy of any notes, documents or recordings from Detective Green, Sgt. Mancheca or any other representative of the Southlake Police Department regarding the meeting with the Skaggs family on July 2, 2019, at the Southlake Police Department.

10. A copy of any notes or recording of the interview of Angels employee Adam Chodzko interview.

11. Detective Green testified that after her interview with Adam Chodzko she went back and took Cellebrite camera images from Tyler Skaggs Cellebrite phone collection of important text messages or conversations (phone calls noted) between Tyler Skaggs and Eric Kay. Please provide a copy of the "important text messages or conversations (phone calls noted)" between Tyler Skaggs and Eric Kay" preserved by Detective Green.

12. All correspondence between or with any agent or employee of the Southlake Police Department and any agent or employee of the Los Angeles Angels, including any attorney for the Los Angeles Angels regarding the Death Investigation of Tyler Skaggs.

13. All correspondence between or with any agent or employee of the Southlake Police Department and any agent or employee of Major League Baseball.

It has come to my attention that the Washington Post has recently submitted and received a PIA request to the South Lake Police Department for records and documents. Please provide a duplicate copy of any records or documents furnished to the Washington Post as a result of their PIA request. Please let me know if you have any questions concerning this request and any costs associated with this request.

Thank You,

*Jim Yarbrough*



**RUSTY HARDIN & ASSOCIATES, LLP**
5 HOUSTON CENTER
1401 McKinney, Suite 2250
Houston, Texas 77010
(713) 652-9000 Main
(713) 586-3885 Direct
(713) 444-3530 Mobile
(713) 652-9800 Fax

https://www.rustyhardin.com/our-team/jim-yarbrough/

2

**560**

CONFIDENTIALITY NOTICE: The information in this e-mail may be confidential and/or privileged.  This e-mail is intended to be reviewed by only the individual or organization named above.  If you are not the intended recipient or an authorized representative of the intended recipient, you are hereby notified that any review, dissemination, or copying of this e-mail and its attachments, if any, or the information contained herein is prohibited.  If you have received this e-mail in error, please immediately notify the sender by return e-mail and delete this e-mail from your system.

561

## Laura Alsina

| | |
|---|---|
| **From:** | Danielle Weary < |
| **Sent:** | Wednesday, March 20, 2024 4:13 PM |
| **To:** | Laura Alsina; Sarah Blum |
| **Cc:** | Michelle Roberts |
| **Subject:** | PIA Request of Jim Yarbrough (3-14-24) |
| **Attachments:** | Yarbrough.BB001.pdf; Ruling OR2024-000715.pdf |

Hello Laura & Sarah,

Please see the attached Letter to Mr. Yarbrough, Ruling OR2024-000715 and the redacted responsive documents/media that is being released regarding his request, which can be found in the dropbox link below.

https://www.dropbox.com/scl/fo/p2spakbj67afo2p1qwtf5/h?rlkey=o5sc1try7vcooxfd34tq3vpcx&dl=0

Have a great afternoon!

*Danielle Weary*
Legal Support- PIA
**Taylor, Olson, Adkins, Sralla & Elam, LLP**
6000 Western Place, Suite 200
Fort Worth, Texas 76107
Phone: (817) 332-2580
Fax: (817) 332-4740



TAYLOR·OLSON·ADKINS·SRALLA·ELAM
A T T O R N E Y S   L   C O U N S E L O R S

CONFIDENTIAL NOTICE: This electronic transmission and any documents or other writings sent with it constitute confidential information which is intended only for the named recipient and client and which is subject to attorney/client privilege. If you have received this communication in error, do not read it. Please reply to the sender at Taylor, Olson, Adkins, Sralla & Elam, L.L.P. that you have received the message in error. Then delete it. Any disclosure, copying distribution or the taking of any action concerning the contents of this communication or any attachment(s) by anyone other than the named recipient is strictly prohibited.

1



6000 WESTERN PLACE, SUITE 200
FORT WORTH, TEXAS 76107

TAYLOR·OLSON·ADKINS·SRALLA·ELAM
LLP
ATTORNEYS & COUNSELORS

TELEPHONE: (817) 332-2580
FACSIMILE: (817) 332-4740
WEBSITE: WWW.TOASE.COM

Bessie Bronstein

March 20, 2024

Jim Yarbrough
Rusty Hardin & Associates
5 Houston Center
140 McKinney, Suite 2250
Houston, Texas 77010

Re:     *Public Information Request Received by the City of Southlake on March 14, 2024*

Dear Mr. Yarborough,

I represent the City of Southlake regarding the above-described matter. Enclosed is a portion of the information responsive to your request. The remaining information is being withheld pursuant to a previous determination from the Texas Attorney General.

In OR2024-000715, the Attorney General determined that a portion of the responsive information must be withheld under Texas Occupations Code 1701.661(a). The Attorney General has further determined that a governmental body need not request an Attorney General determination if there has been a previous determination that the requested material falls within one of the exceptions to disclosure. Tex. Gov't Code § 552.301(a); *Dominquez v. Gilbert*, 48 S.W.3d 789, 792-93 (Tex. App.—Austin 2001, no pet.).

In order for a governmental body to rely on a previous determination, all of the following criteria must be met:

1.    the information at issue is precisely the same information that was previously submitted to the attorney general pursuant to Section 552.301(e)(1)(D) of the Government Code;

2.    the governmental body that received the request for the information is the same governmental body that previously requested and received a ruling from the Attorney General;

3.    the attorney general's prior ruling concluded the precise information is or is not excepted from disclosure under the Act; and

4.    the law, facts, and circumstances on which the prior attorney general ruling was based have not changed since the issuance of the ruling.

563

March 20, 2024
Page 2

_____

The information being withheld is precisely the same information that was previously submitted to the Attorney General for a ruling, the City is the same governmental body that previously requested and received the previous determination (OR2024-000715) from the Attorney General, the prior ruling concluded the precise information is excepted from disclosure under Section 552.108(b) of the Act, and the law, facts, and circumstances on which the prior ruling was based have not changed since the issuance of the ruling. Therefore, the City relies on OR2024-000715 as a previous determination to withhold this information.

The City understands the rights of all citizens to make requests for public information and invites all citizens to avail themselves of that right. Should you have any questions, please do not hesitate to contact me. Of course, all questions may also be forwarded to the Office of the Texas Attorney General, Open Government Hotline, at (512) 478-6736 or toll-free at 1-877-673-6839.

Sincerely,

Bessie Bronstein /sHale

Bessie Bronstein

BB:dlg
Enclosures

V:\Southlake\PIA--SUBPOENAS2024\Yarborough, Jim 3,14,24\To Requestor\Yarborough,BB001.docx

**564**

March 20, 2024
Page 3

bcc:   Laura Alsina (w/enclosures)
Records Coordinator
lalsina@ci.southlake.tx.us

Sarah Blum (w/enclosures)
Police Records Manager
sblum@ci.southlake.tx.us



## KEN PAXTON
ATTORNEY GENERAL OF TEXAS

January 8, 2024

Ms. Bessie Bronstein
Counsel for the City of Southlake
Taylor, Olson, Adkins, Sralla & Elam, LLP
6000 Western Place, Suite 200
Fort Worth, Texas 76107

OR2024-000715

Dear Ms. Bronstein:

You ask whether certain information is subject to required public disclosure under the Public Information Act (the "Act"), chapter 552 of the Government Code. Your request was assigned ID# 23-091793 (Ref. No. 1207-91823).

The City of Southlake (the "city"), which you represent, received a request for information pertaining to a specified investigation. You state the city will redact certain information pursuant to sections 552.130(c) and 552.147(b) of the Government Code and Open Records Decision No. 684 (2009).[1] You claim the submitted information is excepted from disclosure under section 552.101 of the Government Code. Additionally, you state the city notified a deceased individual's family of the request for information and of the family's right to submit arguments to this office as to why the information at issue should not be released. *See* Gov't Code § 552.304 (providing that interested party may submit comments stating why information should or should not be released). We have considered the exception you claim and reviewed the submitted representative sample of information.[2]

---

[1] Section 552.130(c) of the Government Code allows a governmental body to redact the information described in section 552.130(a) without the necessity of seeking a decision from the attorney general. Gov't Code § 552.130(c). If a governmental body redacts such information, it must notify the requestor in accordance with section 552.130(e). *See id.* § 552.130(d), (e). Section 552.147(b) of the Government Code authorizes a governmental body to redact a living person's social security number from public release without the necessity of requesting a decision from this office under the Act. *Id.* § 552.147(b). Open Records Decision No. 684 is a previous determination to all governmental bodies authorizing them to withhold specific categories of information without the necessity of requesting an attorney general decision. ORD 684.

[2] This letter ruling assumes that the submitted representative sample of information is truly representative of the requested information as a whole. This ruling does not reach, and therefore does not authorize, the withholding of any other requested information to the extent that the other information is substantially

Ms. Bessie Bronstein - Page 2

Initially, we note the information at issue includes city police officers' body worn camera recordings. Body worn cameras are subject to chapter 1701 of the Occupations Code. Chapter 1701 provides the procedures a requestor must follow when seeking a body worn camera recording. Section 1701.661(a) provides:

> A member of the public is required to provide the following information when submitting a written request to a law enforcement agency for information recorded by a body worn camera:
>
> > (1) the date and approximate time of the recording;
> >
> > (2) the specific location where the recording occurred; and
> >
> > (3) the name of one or more persons known to be a subject of the recording.

Occ. Code § 1701.661(a). In this instance, the requestor does not give the requisite information under section 1701.661(a). As the requestor did not properly request the body worn camera recordings at issue pursuant to chapter 1701, our ruling does not reach this information and it need not be released.[3] However, pursuant to section 1701.661(b), a "failure to provide all the information required by Subsection (a) to be part of a request for recorded information does not preclude the requestor from making a future request for the same recorded information." *Id.* § 1701.661(b).

Section 552.101 of the Government Code excepts from disclosure "information considered to be confidential by law, either constitutional, statutory, or by judicial decision." Gov't Code § 552.101. Section 552.101 encompasses the doctrine of constitutional privacy. Constitutional privacy consists of two interrelated types of privacy: (1) the right to make certain kinds of decisions independently and (2) an individual's interest in avoiding disclosure of personal matters. Open Records Decision No. 455 at 4 (1987). The first type protects an individual's autonomy within "zones of privacy" which include matters related to marriage, procreation, contraception, family relationships, and child rearing and education. *Id.* The second type of constitutional privacy requires a balancing between the individual's privacy interests and the public's need to know information of public concern. *Id.* The scope of information protected is narrower than that under the common law doctrine of privacy; the information must concern the "most intimate aspects of human affairs." *Id.* at 5 (quoting *Ramie v. City of Hedwig Village, Tex.*, 765 F.2d 490, 492 (5th Cir. 1985)). However, we note the right to privacy is a personal right that "terminates upon the death of the person whose privacy is invaded"; therefore, it may not be asserted solely on behalf of a deceased individual. *Moore v. Charles B. Pierce Film Enters., Inc.*, 589 S.W.2d 489, 491 (Tex. Civ. App.—Texarkana 1979, writ ref'd n.r.e.); *see also* Attorney

---

different than that submitted to this office. *See* Gov't Code §§ 552.301(e)(1)(D), .302; Open Records Decision Nos. 499 at 6 (1988), 497 at 4 (1988).

[3] As we are able to make this determination, we need not address your arguments against disclosure of this information.

Ms. Bessie Bronstein - Page 3

General Opinions JM-229 (1984) ("the right of privacy lapses upon death"), H-917 (1976) ("We are . . . of the opinion that the Texas courts would follow the almost uniform rule of other jurisdictions that the right of privacy lapses upon death."); Open Records Decision No. 272 at 1 (1981) (privacy rights lapse upon death). The United States Supreme Court, however, has determined that surviving family members can have a privacy interest in information relating to their deceased relatives. *See Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157 (2004) (holding surviving family members have a right to personal privacy with respect to their close relative's death-scene images and such privacy interests outweigh public interest in disclosure).

We note most of the information at issue pertains solely to a deceased individual and may not be withheld from disclosure based on his privacy interests. However, you state the deceased individual's family objects to disclosure of the information at issue. Upon review, we find the family's privacy interests in the images of the deceased individual outweigh the public's interest in the disclosure of this information. We therefore conclude the city must withhold the images of the deceased individual under section 552.101 in conjunction with constitutional privacy and the ruling in *Favish*.[4]  However, we find the remaining information does not fall within the zones of privacy or otherwise implicate a living individual's privacy interests for the purposes of constitutional privacy. Therefore, the city may not withhold the remaining information under section 552.101 in conjunction with constitutional privacy.

Section 552.101 of the Government Code also encompasses the doctrine of common-law privacy, which protects information that is (1) highly intimate or embarrassing, the publication of which would be highly objectionable to a reasonable person, and (2) not of legitimate concern to the public. *Indus. Found. v. Tex. Indus. Accident Bd.*, 540 S.W.2d 668, 685 (Tex. 1976). To demonstrate the applicability of common-law privacy, both prongs of this test must be satisfied. *Id.* at 681-82. Types of information considered intimate or embarrassing by the Texas Supreme Court are delineated in *Industrial Foundation*. *Id.* at 683. This office has concluded some kinds of medical information are generally highly intimate or embarrassing. *See* ORD 455. Additionally, this office has found that personal financial information not relating to a financial transaction between an individual and a governmental body is generally intimate or embarrassing. *See generally* Open Records Decision Nos. 545 (1990) (deferred compensation information, participation in voluntary investment program, election of optional insurance coverage, mortgage payments, assets, bills, and credit history), 523 (1989) (common-law privacy protects credit reports, financial statements, and other personal financial information), 373 (1983) (sources of income not related to financial transaction between individual and governmental body protected under common-law privacy). Further, the Third Court of Appeals has concluded public citizens' dates of birth are protected by common-law privacy pursuant to section 552.101. *See Paxton v. City of Dallas*, No. 03-13-00546-CV, 2015 WL 3394061, at *3 (Tex. App.—Austin May 22, 2015, pet. denied) (mem. op.).

---

[4] As our ruling is dispositive, we need not address your remaining argument against disclosure of this information.

Ms. Bessie Bronstein - Page 4

Upon review, we find the information you have marked satisfies the standard articulated by the Texas Supreme Court in *Industrial Foundation*. Therefore, the city must withhold the information you have marked under section 552.101 in conjunction with common-law privacy.

In summary, pursuant to section 1701.661 of the Occupations Code, the body worn camera recordings at issue were not properly requested by the requestor pursuant to chapter 1701 of the Occupations Code and need not be released to the requestor. The city must withhold the images of the deceased individual under section 552.101 of the Government Code in conjunction with constitutional privacy and the ruling in *Favish*. The city must withhold the information you have marked under section 552.101 of the Government Code in conjunction with common-law privacy. The city must release the remaining information.

This letter ruling is limited to the particular information at issue in this request and limited to the facts as presented to us; therefore, this ruling must not be relied upon as a previous determination regarding any other information or any other circumstances.

This ruling triggers important deadlines regarding the rights and responsibilities of the governmental body and of the requestor. For more information concerning those rights and responsibilities, please visit our website at https://www.texasattorneygeneral.gov/open-government/members-public/what-expect-after-ruling-issued or call the OAG's Open Government Hotline, toll free, at (877) 673-6839. Questions concerning the allowable charges for providing public information under the Public Information Act may be directed to the Cost Rules Administrator of the OAG, toll free, at (888) 672-6787.

Sincerely,

Lindsay E. Hale
Assistant Attorney General
Open Records Division

LEH/pt

Ref:    ID# 23-091793

c:      Requestor

569

**Sarah Blum**

| | |
|---|---|
| **From:** | Jim Yarbrough < |
| **Sent:** | Tuesday, December 6, 2022 12:27 PM |
| **To:** | DPSRecords |
| **Cc:** | Leah Graham; John MacVane; Jim Yarbrough |
| **Subject:** | Public Information Request |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Completed |

This request is from Rusty Hardin & Associates, LLP, a law firm in Houston, Texas. We represent the family of Tyler Skaggs:

This request pertains to the investigation regarding the death of Tyler Skaggs on July 1, 2019, at the Southlake Hilton. Detective Delaney Green and other Southlake officers worked this case. Detective Green testified at the federal trial of Eric Kay on February 10, 2019. The jury on Feb. 17 found Kay guilty of conspiracy to possess with intent to distribute a controlled substance and distribution of a controlled substance resulting in death and serious bodily injury.

On October 11, 2022, a U.S. district judge in Fort Worth sentenced Eric Kay, a former Angels employee, to 22 years in prison after a jury found that he provided Tyler Skaggs a fentanyl-laced pill that led him to aspirate the contents of his stomach and die during an Angels road trip to Texas in 2019. I am making the below request of documents and other items pursuant to THE PUBLIC INFORMATION ACT, Texas Government Code, Chapter 552: Detective Green testified at the trial of Eric Kay on February 10, 2022.

1. A copy of Detective Green's complete offense report, including all supplements, regarding the death

   investigation of Tyler Skaggs.

2. A copy of scene photographs, videos, and any scene drawings of the death investigation of Tyler Skaggs. Files of

   photos and videos preferably in electronic format.

3. A copy of the crime scene log.

4. Detective Green testified that she and Sgt. Macheca took all the players and employees of the Los Angeles

   Angels into the Hilton banquet room, and interviewed them one by one, and the interviews were recorded via

   an audio recorder. I am requesting an electronic copy of all interviews of Angel players and employees,

   including Eric Kay, conducted by Southlake Police Department personnel as part of the death investigation.

5. Copies of any additional interviews conducted by Southlake Police Department agents or personnel preferably in

   electronic format.

6. A copy of all emails sent or received by Southlake Police Department agents or personnel regarding the death

   investigation of Tyler Skaggs.

7. A copy of all electronic messages sent or received by Southlake Police Department agents or personnel regarding the death investigation of Tyler Skaggs.

8. A copy of all correspondence between Southlake Police Department agents or personnel and DEA regarding the death investigation of Tyler Skaggs.

9. A copy of any notes, documents or recordings from Detective Green, Sgt. Mancheca or any other representative of the Southlake Police Department regarding the meeting with the Skaggs family on July 2, 2019, at the Southlake Police Department.

10. A copy of any notes or recording of the interview of Angels employee Adam Chodzko interview.

11. Detective Green testified that after her interview with Adam Chodzko she went back and took Cellebrite camera images from Tyler Skaggs Cellebrite phone collection of important text messages or conversations (phone calls noted) between Tyler Skaggs and Eric Kay. I am requesting a copy of those "important text messages or conversations (phone calls noted)" between Tyler Skaggs and Eric Kay" preserved by Detective Green.

12. All correspondence between or with any agent or employee of the Southlake Police Department and any agent or employee of the Los Angeles Angels, including any attorney for the Los Angeles Angels regarding the Death Investigation of Tyler Skaggs.

13. All correspondence between or with any agent or employee of the Southlake Police Department and any agent or employee of Major League Baseball.


Please advise any cost associated with this request. If you have any questions, feel free to call or email me. Thank you for your attention to this request.

*Jim Yarbrough*



RUSTY HARDIN & ASSOCIATES, LLP
5 HOUSTON CENTER
1401 McKinney, Suite 2250
Houston, Texas 77010

2

**571**

(713) 652-9000 Main
(713) 586-3885 Direct
(713) 444-3530 Mobile
(713) 652-9800 Fax

https://www.rustyhardin.com/our-team/jim-yarbrough/

CONFIDENTIALITY NOTICE: The information in this e-mail may be confidential and/or privileged.  This e-mail is intended to be reviewed by only the individual or organization named above.  If you are not the intended recipient or an authorized representative of the intended recipient, you are hereby notified that any review, dissemination, or copying of this e-mail and its attachments, if any, or the information contained herein is prohibited.  If you have received this e-mail in error, please immediately notify the sender by return e-mail and delete this e-mail from your system.

**Laura Alsina**

| | |
|---|---|
| **From:** | Janie Heath <span style="background:gray">▮▮▮▮▮</span> |
| **Sent:** | Friday, April 21, 2023 3:05 PM |
| **To:** | Laura Alsina |
| **Cc:** | Sarah Blum |
| **Subject:** | PIA Requests |
| **Attachments:** | Baker.SW001.pdf; Ruling OR2023-11342.pdf; Redacted Doc Released Per Ruling.pdf; Yarbough.SW001.pdf; Ruling OR2023-08576.pdf; Redacted Doc Released Per Ruling.pdf |

Happy Friday, Laura-

Please see the attached regarding the following requests:

**Donna Baker 1-4-23**

- ➢ Letter to Ms. Baker
- ➢ AG Ruling OR2023-11342
- ➢ Redacted Doc Released Per Ruling

**Jim Yarbrough 12-6-22**

- ➢ Letter to Mr. Yarbrough
- ➢ AG Ruling OR2023-08576
- ➢ Redacted Doc Released Per Ruling

Have a great weekend!

Sincerely,
Janie Heath
PIA Support
6000 Western Place Suite 200
Fort Worth, TX 76107
817-332-2580
817-332-4740 Fax



TAYLOR·OLSON·ADKINS·SRALLA·ELAM

CONFIDENTIAL NOTICE: This electronic transmission and any documents or other writings sent with it constitute confidential information which is intended only for the named recipient and which may be legally privileged. If you have received this communication in error, do not read it. Please reply to the sender at Taylor, Olson, Adkins, Sralla & Elam, LLP that you have received the message in error. Then delete it. Any disclosure, copying, distribution or the taking of any action concerning the contents of this communication or any attachment(s) by anyone other than the named recipient is strictly prohibited.



| | | |
|---|---|---|
| 6000 WESTERN PLACE, SUITE 200<br>I-30 AT BRYANT IRVIN ROAD<br>FORT WORTH, TEXAS 76107<br>EMAIL:TOASE@TOASE.COM | TAYLOR·OLSON·ADKINS·SRALLA·ELAM<br>L.L.P.<br>ATTORNEYS & COUNSELORS | TELEPHONE: (817) 332-2580<br>TOLL FREE: (800) 318-3400<br>FACSIMILE: (817) 332-4740<br>WEBSITE: WWW.TOASE.COM |

Stacie White

April 21, 2023

Jim Yarbrough
Rusty Hardin & Associates, LLP
1401 McKinney, Suite 2250
Houston, Texas 77010

    *Re: Public Information Request to the City of Southlake Dated December 6, 2022*

Dear Mr. Yarbrough:

  Enclosed, please find Open Records Letter Number OR2023-08576 from the Office of the Attorney General regarding your request for information. Also enclosed is the responsive information, which has been released in accordance with the ruling.

  The City understands the rights of all citizens to make requests for public information and invites all citizens to avail themselves of that right. Should you have any questions, please do not hesitate to contact me. Of course, all questions may also be forwarded to the Office of the Texas Attorney General, Open Government Hotline, at (512) 478-6736 or toll-free at 1-877-673-6839.

          Sincerely,

          Stacie White

SW:jph
Enclosures

V:\Southlake\PA~SUBPOENAS2022\Yarbrough, Jim 12.6.22\AG Ruling\Yarbrough SW001.docx

**574**

April 20, 2023
Page 2

bcc:    Laura Alsina (w/enclosures)
        Records Coordinator
        Southlake Police Department
        600 State Street
        Southlake, Texas 76092

        Sarah Blum (w/enclosures)
        Police Records Manager
        Southlake Police Department
        600 State Street
        Southlake, Texas 76092



**KEN PAXTON**
ATTORNEY GENERAL OF TEXAS

March 10, 2023

Ms. Stacie White
Counsel for the City of Southlake
Taylor, Olson, Adkins, Sralla & Elam L.L.P.
6000 Western Place, Suite 200
Fort Worth, Texas 76107

OR2023-08576

Dear Ms. White:

You ask whether certain information is subject to required public disclosure under the Public Information Act (the "Act"), chapter 552 of the Government Code. Your request was assigned ID# 045980.

The City of Southlake (the "city"), which you represent, received a request for information related to a specified incident. You state the city will redact motor vehicle record information pursuant to section 552.130(c) of the Government Code; social security numbers pursuant to section 552.147(b) of the Government Code; and certain information pursuant to Open Records Decision No. 684 (2009).[1] You claim the submitted information is excepted from disclosure under sections 552.101, 552.103, and 552.108 of the Government Code. We have considered the exceptions you claim and reviewed the submitted information. We have also received and considered comments submitted by a representative of the requestor. *See* Gov't Code § 552.304 (interested party may submit comments stating why information should or should not be released).

Section 552.108(a)(1) of the Government Code excepts from disclosure "[i]nformation held by a law enforcement agency or prosecutor that deals with the detection, investigation, or prosecution of crime . . . if . . . release of the information would interfere with the detection, investigation, or prosecution of crime[.]" *Id.* § 552.108(a)(1). A governmental body that claims an exception to disclosure under section 552.108(a)(1) must explain how and why this exception is applicable to the information at issue. *See id.* §§ 552.108(a)(1),

---

[1] Section 552.130(c) of the Government Code allows a governmental body to redact the information described in section 552.130(a) without the necessity of seeking a decision from the attorney general. *See* Gov't Code § 552.130(c). If a governmental body redacts such information, it must notify the requestor in accordance with section 552.130(d), (e). *See id.* § 552.130(d), (e). Section 552.147(b) of the Government Code authorizes a governmental body to redact a living person's social security number without the necessity of requesting a decision from this office. *See id.* § 552.147(b). Open Records Decision No. 684 is a previous determination to all governmental bodies authorizing them to withhold certain information without the necessity of requesting an attorney general decision. *See* ORD 684.

Post Office Box 12548, Austin, Texas 78711-2548 • (512) 463-2100 • www.texasattorneygeneral.gov

Ms. Stacie White - Page 2

.301(e)(1)(A); *ex parte Pruitt*, 551 S.W.2d 706 (Tex. 1977). You state the submitted information relates to a pending criminal investigation or prosecution. The requestor asserts the investigation at issue is closed. Whether the investigation is open is a question of fact. This office is unable to resolve disputes of fact in the open records ruling process. *See* Open Records Decision Nos. 592 at 2 (1991), 552 at 4 (1990), 435 at 4 (1986). Where fact issues are not resolvable as a matter of law, we must rely on the facts alleged to us by the governmental body requesting our opinion, or upon those facts that are discernable from the documents submitted for our inspection. *See* ORD 552 at 4. Thus, based on your representations, we accept the city's assertion the information at issue relates to a pending criminal investigation or prosecution. Accordingly, we conclude the release of the submitted information would interfere with the detection, investigation, or prosecution of crime. *See Houston Chronicle Publ'g Co. v. City of Houston*, 531 S.W.2d 177(Tex. App.— Houston [14th Dist.] 1915), *writ ref'd n.r.e.*, 536 S.W.2d 559 (Tex. 1976) (court delineates law enforcement interests that are present in active cases). Thus, section 552.108(a)(1) is applicable to the submitted information.

However, section 552.108 does not except from disclosure basic information about an arrested person, an arrest, or a crime. Gov't Code § 552.108(c). Basic information refers to the information held to be public in *Houston Chronicle*. *See* 531 S.W.2d at 186-88; *see also* Open Records Decision No. 127 at 3-4 (1976) (summarizing types of information deemed public by *Houston Chronicle*). Thus, with the exception of basic information, which must be released, the city may withhold the submitted information under section 552.108(a)(1) of the Government Code.[2]

This letter ruling is limited to the particular information at issue in this request and limited to the facts as presented to us; therefore, this ruling must not be relied upon as a previous determination regarding any other information or any other circumstances.

This ruling triggers important deadlines regarding the rights and responsibilities of the governmental body and of the requestor. For more information concerning those rights and responsibilities, please visit our website at https://www.texasattorney.general.gov/open-government/members-public/what-expect-after-ruling-issued or call the OAG's Open Government Hotline, toll free, at (877) 673-6839. Questions concerning the allowable charges for providing public information under the Public Information Act may be directed to the Cost Rules Administrator of the OAG, toll free, at (888) 672-6787.

Sincerely,

Tim Neal
Assistant Attorney General
Open Records Division

TN/jxd

---

[2] As our ruling is dispositive, we need not address your remaining arguments against disclosure, except to note basic information is generally not excepted from public disclosure under section 552.103. *See* Open Records Decision No. 597 (1991).

Ms. Stacie White - Page 3

Ref:    ID# 045980

Enc.    Submitted documents

c:      Requestor
        (w/o enclosures)

# *Southlake Police Department*

**OFFENSE Report**

| | | |
|---|---|---|
| ORI: TX2203200 | **Incident No. 19SP053735** | 12/12/2022 |

## *Incident*

| | | | | |
|---|---|---|---|---|
| CAD No. **1900146642** | Other No. **1961** | Type **Criminal** | Date Occur **07/01/2019 14:16** |
| UCR Status **Clear Exceptionally** | Clear. Date **08/12/2020** | Audited By: | Exc. Clear. |
| Inv. Status **Cleared** | Report By: **Branham, C. #1764** | **07/01/2019** | Approv. By: **Wilson,L. #103** | **07/02/2019** |
| Fam. Viol. **No** | Investigator **Green,D. #1594** | | Recorded Date: **07/01/2019** |
| Description | | | |
| **Death investigation** | | | |

Dispatch Location **1400 PLAZA PL Southlake**

**- Offense No. 1**          Offense Recording Date **07/01/2019 17:05**

| | | | |
|---|---|---|---|
| Off. Begin Date **07/01/2019 14:16** | Off. End Date **07/01/2019 14:16** | Entry Method | Attempt/Complete **Completed** |
| Drug Seized | Gang Related | Hi-Speed Pursuit | Weapons Used |
| Offense Code **481.112(b)** L/D FS | Offense **MAN DEL CS PG 1 <1G** | | No. of Premises **1** |
| Bias Motivation | | Agg Asslt/Homic. Circumst. | Supplement: 0 |
| Offense Addr. **Hilton Southlake Town Square -, 1400 PLAZA PL Southlake** | | | Loc.Type **Hotel/Motel/Etc.** |
| Remarks | | | |
| **No offense** | | | |

**Victim(s)**

| Name | DOB | Race | Sex | DL | Address |
|---|---|---|---|---|---|
| **Skaggs, Tyler Wayne** | **07/13/1991** | **White** | **Male** | | |

**Victims (Organizations)**

**Exhibit B**
Yarbrough, Jim
12-6-22          (Southlake)

Exhibit 9

Southlake PD TPIA Request #4
August 2, 2024

| | |
|---|---|
| **From:** | E. Ladsous , Delta 7 Group |
| **To:** | dpsrecords@ci.southlake.tx.us |
| **Cc:** | Lindsey S. Susolik |
| **Subject:** | Public Information Act Request Regarding Tyler Skaggs Investigation - Incident No. 19SPO53735 |
| **Date:** | Friday, August 02, 2024 9:48:00 AM |
| **Attachments:** | image001.png |
| | image002.png |
| | image003.png |

**To Whom It May Concern,**

This request is submitted by Delta 7 Group, LLC, an investigative firm retained by Theodora Oringher to provide litigation support for the Los Angeles Angels baseball team. The Skaggs family has filed a lawsuit against the Los Angeles Angels.

This PIA request relates to the death investigation of Tyler Skaggs, Incident No. 19SPO53735, on July 1, 2019, at the Southlake Hilton Hotel in Southlake, Texas. Detective Delaney Green and other Southlake officers were involved in this investigation. Detective Green testified at the federal trial of Eric Kay on February 10, 2022. On February 17, the jury found Kay guilty of conspiracy to possess with intent to distribute a controlled substance and distribution of a controlled substance resulting in death and serious bodily injury.

Pursuant to the Texas Public Information Act, Texas Government Code, Chapter 552, I am requesting the following documents and materials:

1. **Offense Report:** A complete copy of Detective Green's offense report, including all supplements, concerning the investigation into the death of Tyler Skaggs.
2. **Scene Documentation:** All scene photographs, videos, and any scene drawings related to the death investigation of Tyler Skaggs, preferably in electronic format.
3. **Crime Scene Log:** A copy of the crime scene log maintained during the investigation.
4. **Interview Recordings:** Electronic copies of all audio-recorded interviews of Los Angeles Angels players and employees, including Eric Kay, conducted by Southlake Police Department personnel as part of the death investigation. Detective Green testified that she and Sgt. Macheca conducted these interviews in the Hilton banquet room.
5. **Additional Interviews:** Copies of any additional interviews conducted by Southlake Police Department agents or personnel, preferably in electronic format.
6. **Email Correspondence:** A copy of all emails sent or received by Southlake Police Department agents or personnel related to the death investigation of Tyler Skaggs.
7. **Electronic Messages:** A copy of all electronic messages sent or received by Southlake Police Department agents or personnel concerning the death investigation.
8. **DEA Correspondence:** A copy of all correspondence between Southlake Police Department agents or personnel and the DEA regarding the death investigation of Tyler Skaggs.
9. **Meeting Notes:** Copies of any notes, documents, or recordings from Detective Green,

**581**

Sgt. Macheca, or any other representative of the Southlake Police Department regarding the meeting with the Skaggs family on July 2, 2019, at the Southlake Police Department.

10. **Adam Chodzko Interview:** A copy of any notes or recordings from the interview with Angels employee Adam Chodzko.

11. **Text Messages and Conversations:** A copy of the "important text messages or conversations (phone calls noted)" between Tyler Skaggs and Eric Kay, as preserved by Detective Green, following her interview with Adam Chodzko and the Cellebrite analysis of Tyler Skaggs' phone.

12. **Correspondence with the Los Angeles Angels:** All correspondence between any agent or employee of the Southlake Police Department and any agent or employee of the Los Angeles Angels, including any attorney for the Los Angeles Angels, regarding the death investigation of Tyler Skaggs.

13. **Correspondence with Major League Baseball:** All correspondence between any agent or employee of the Southlake Police Department and any agent or employee of Major League Baseball concerning the death investigation.

Your prompt attention to this request is appreciated, as it is vital for the ongoing litigation process and the upcoming trial. Delta 7 will pay all expenses associated with this request.

I appreciate your cooperation.

Sincerely,

Emmanuel

_____

**Emmanuel Ladsous**
President / Private Investigator
**Delta 7 Group, LLC**
A Professional Security Consultancy
4712 E 2nd Street, Suite 231
Long Beach, CA 90803-5309
Phone:  (800) 689-6546, Ext. 700
Mobile: (949) 423-4350
Email address: E.Ladsous@Delta7Group.com
Website:       www.Delta7Group.com
CA PI License#    188424



**582**

 

**This email is unsecured and subject to monitoring.**

CONFIDENTIALITY NOTICE:  This communication and any documents, files, or previous email messages attached constitute an electronic communication within the scope of the Electronic Communication Privacy Act, 18 U.S. Code § 2510. This communication may contain non-public, confidential, or legally privileged information intended for the designated recipient(s) sole use. The unlawful interception, use, or disclosure of such information is strictly prohibited under 18 U.S. Code § 2511 and applicable laws. If you are not the intended recipient or have received this communication in error, please notify the sender immediately by email to E.Ladsous@Delta7Group.com and delete all copies of this communication, including attachments, without reading or saving them in any matter.

Exhibit 10

Response to Southlake PD TPIA Request #4

August 16, 2024



6000 WESTERN PLACE, SUITE 200
FORT WORTH, TEXAS 76107

TAYLOR·OLSON·ADKINS·SRALLA·ELAM
LLP
ATTORNEYS & COUNSELORS

TELEPHONE: (817) 806-5242
PIA@TOASE.COM

Bessie Bronstein
pia@toase.com

August 16, 2024

Emmanuel Ladsous
DELTA 7 GROUP, LLC
4712 E. 2nd Street, Suite 231
Long Beach, California 90803
e.ladsous@delta7group.com

Re:     Public Information Request Received by the City of Southlake on August 2, 2024

Dear Mr. Ladsous:

I represent the City of Southlake regarding the above-described matter. Enclosed is a portion of the information responsive to your request. The remaining information is being withheld pursuant to a previous determination from the Texas Attorney General.

In OR2024-000715 the Attorney General determined that a portion of the responsive information must be withheld under Section 552.101. The Attorney General has further determined that a governmental body need not request an Attorney General determination if there has been a previous determination that the requested material falls within one of the exceptions to disclosure. Tex. Gov't Code § 552.301(a); *Dominquez v. Gilbert*, 48 S.W.3d 789, 792-93 (Tex. App.—Austin 2001, no pet.).

In order for a governmental body to rely on a previous determination, all of the following criteria must be met:

1.     the information at issue is precisely the same information that was previously submitted to the attorney general pursuant to Section 552.301(e)(1)(D) of the Government Code;

2.     the governmental body that received the request for the information is the same governmental body that previously requested and received a ruling from the Attorney General;

3.     the attorney general's prior ruling concluded the precise information is or is not excepted from disclosure under the Act; and

4.     the law, facts, and circumstances on which the prior attorney general ruling was based have not changed since the issuance of the ruling.

**585**

August 16, 2024
Page 2

The information being withheld is precisely the same information that was previously submitted to the Attorney General for a ruling, the City is the same governmental body that previously requested and received the previous determination (OR2024-000715) from the Attorney General, the prior ruling concluded the precise information is excepted from disclosure under Section 552.108(b) of the Act, and the law, facts, and circumstances on which the prior ruling was based have not changed since the issuance of the ruling. Therefore, the City relies on OR2024-000715 as a previous determination to withhold this information.

The City understands the rights of all citizens to make requests for public information and invites all citizens to avail themselves of that right. Should you have any questions, please do not hesitate to contact me. Of course, all questions may also be forwarded to the Office of the Texas Attorney General, Open Government Hotline, at (512) 478-6736 or toll-free at 1-877-673-6839.

Sincerely,

Bessie Bronstein

BB:mg
Enclosures

V:\SouthlakelPIA--SUBPOENAS\2024\Ladsous, Emmanuel 8.2.24\To Requestor\Ladsous.BB001.docx

586



## KEN PAXTON
ATTORNEY GENERAL OF TEXAS

January 8, 2024

Ms. Bessie Bronstein
Counsel for the City of Southlake
Taylor, Olson, Adkins, Sralla & Elam, LLP
6000 Western Place, Suite 200
Fort Worth, Texas 76107

OR2024-000715

Dear Ms. Bronstein:

You ask whether certain information is subject to required public disclosure under the Public Information Act (the "Act"), chapter 552 of the Government Code. Your request was assigned ID# 23-091793 (Ref. No. 1207-91823).

The City of Southlake (the "city"), which you represent, received a request for information pertaining to a specified investigation. You state the city will redact certain information pursuant to sections 552.130(c) and 552.147(b) of the Government Code and Open Records Decision No. 684 (2009).[1] You claim the submitted information is excepted from disclosure under section 552.101 of the Government Code. Additionally, you state the city notified a deceased individual's family of the request for information and of the family's right to submit arguments to this office as to why the information at issue should not be released. See Gov't Code § 552.304 (providing that interested party may submit comments stating why information should or should not be released). We have considered the exception you claim and reviewed the submitted representative sample of information.[2]

---

[1] Section 552.130(c) of the Government Code allows a governmental body to redact the information described in section 552.130(a) without the necessity of seeking a decision from the attorney general. Gov't Code § 552.130(c). If a governmental body redacts such information, it must notify the requestor in accordance with section 552.130(e). See id. § 552.130(d), (e). Section 552.147(b) of the Government Code authorizes a governmental body to redact a living person's social security number from public release without the necessity of requesting a decision from this office under the Act. Id. § 552.147(b). Open Records Decision No. 684 is a previous determination to all governmental bodies authorizing them to withhold specific categories of information without the necessity of requesting an attorney general decision. ORD 684.

[2] This letter ruling assumes that the submitted representative sample of information is truly representative of the requested information as a whole. This ruling does not reach, and therefore does not authorize, the withholding of any other requested information to the extent that the other information is substantially

Ms. Bessie Bronstein - Page 2

Initially, we note the information at issue includes city police officers' body worn camera recordings. Body worn cameras are subject to chapter 1701 of the Occupations Code. Chapter 1701 provides the procedures a requestor must follow when seeking a body worn camera recording. Section 1701.661(a) provides:

> A member of the public is required to provide the following information when submitting a written request to a law enforcement agency for information recorded by a body worn camera:
>
> > (1) the date and approximate time of the recording;
> >
> > (2) the specific location where the recording occurred; and
> >
> > (3) the name of one or more persons known to be a subject of the recording.

Occ. Code § 1701.661(a). In this instance, the requestor does not give the requisite information under section 1701.661(a). As the requestor did not properly request the body worn camera recordings at issue pursuant to chapter 1701, our ruling does not reach this information and it need not be released.[3] However, pursuant to section 1701.661(b), a "failure to provide all the information required by Subsection (a) to be part of a request for recorded information does not preclude the requestor from making a future request for the same recorded information." *Id.* § 1701.661(b).

Section 552.101 of the Government Code excepts from disclosure "information considered to be confidential by law, either constitutional, statutory, or by judicial decision." Gov't Code § 552.101. Section 552.101 encompasses the doctrine of constitutional privacy. Constitutional privacy consists of two interrelated types of privacy: (1) the right to make certain kinds of decisions independently and (2) an individual's interest in avoiding disclosure of personal matters. Open Records Decision No. 455 at 4 (1987). The first type protects an individual's autonomy within "zones of privacy" which include matters related to marriage, procreation, contraception, family relationships, and child rearing and education. *Id.* The second type of constitutional privacy requires a balancing between the individual's privacy interests and the public's need to know information of public concern. *Id.* The scope of information protected is narrower than that under the common law doctrine of privacy; the information must concern the "most intimate aspects of human affairs." *Id.* at 5 (quoting *Ramie v. City of Hedwig Village, Tex.*, 765 F.2d 490, 492 (5th Cir. 1985)). However, we note the right to privacy is a personal right that "terminates upon the death of the person whose privacy is invaded"; therefore, it may not be asserted solely on behalf of a deceased individual. *Moore v. Charles B. Pierce Film Enters., Inc.*, 589 S.W.2d 489, 491 (Tex. Civ. App.—Texarkana 1979, writ ref'd n.r.e.); *see also* Attorney

---

different than that submitted to this office. *See* Gov't Code §§ 552.301(e)(1)(D), .302; Open Records Decision Nos. 499 at 6 (1988), 497 at 4 (1988).

[3] As we are able to make this determination, we need not address your arguments against disclosure of this information.

Ms. Bessie Bronstein - Page 3

General Opinions JM-229 (1984) ("the right of privacy lapses upon death"), H-917 (1976) ("We are . . . of the opinion that the Texas courts would follow the almost uniform rule of other jurisdictions that the right of privacy lapses upon death."); Open Records Decision No. 272 at 1 (1981) (privacy rights lapse upon death). The United States Supreme Court, however, has determined that surviving family members can have a privacy interest in information relating to their deceased relatives. *See Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157 (2004) (holding surviving family members have a right to personal privacy with respect to their close relative's death-scene images and such privacy interests outweigh public interest in disclosure).

We note most of the information at issue pertains solely to a deceased individual and may not be withheld from disclosure based on his privacy interests. However, you state the deceased individual's family objects to disclosure of the information at issue. Upon review, we find the family's privacy interests in the images of the deceased individual outweigh the public's interest in the disclosure of this information. We therefore conclude the city must withhold the images of the deceased individual under section 552.101 in conjunction with constitutional privacy and the ruling in *Favish*.[4] However, we find the remaining information does not fall within the zones of privacy or otherwise implicate a living individual's privacy interests for the purposes of constitutional privacy. Therefore, the city may not withhold the remaining information under section 552.101 in conjunction with constitutional privacy.

Section 552.101 of the Government Code also encompasses the doctrine of common-law privacy, which protects information that is (1) highly intimate or embarrassing, the publication of which would be highly objectionable to a reasonable person, and (2) not of legitimate concern to the public. *Indus. Found. v. Tex. Indus. Accident Bd.*, 540 S.W.2d 668, 685 (Tex. 1976). To demonstrate the applicability of common-law privacy, both prongs of this test must be satisfied. *Id.* at 681-82. Types of information considered intimate or embarrassing by the Texas Supreme Court are delineated in *Industrial Foundation. Id.* at 683. This office has concluded some kinds of medical information are generally highly intimate or embarrassing. *See* ORD 455. Additionally, this office has found that personal financial information not relating to a financial transaction between an individual and a governmental body is generally intimate or embarrassing. *See generally* Open Records Decision Nos. 545 (1990) (deferred compensation information, participation in voluntary investment program, election of optional insurance coverage, mortgage payments, assets, bills, and credit history), 523 (1989) (common-law privacy protects credit reports, financial statements, and other personal financial information), 373 (1983) (sources of income not related to financial transaction between individual and governmental body protected under common-law privacy). Further, the Third Court of Appeals has concluded public citizens' dates of birth are protected by common-law privacy pursuant to section 552.101. *See Paxton v. City of Dallas*, No. 03-13-00546-CV, 2015 WL 3394061, at *3 (Tex. App.—Austin May 22, 2015, pet. denied) (mem. op.).

---

[4] As our ruling is dispositive, we need not address your remaining argument against disclosure of this information.

Ms. Bessie Bronstein - Page 4

Upon review, we find the information you have marked satisfies the standard articulated by the Texas Supreme Court in *Industrial Foundation*. Therefore, the city must withhold the information you have marked under section 552.101 in conjunction with common-law privacy.

In summary, pursuant to section 1701.661 of the Occupations Code, the body worn camera recordings at issue were not properly requested by the requestor pursuant to chapter 1701 of the Occupations Code and need not be released to the requestor. The city must withhold the images of the deceased individual under section 552.101 of the Government Code in conjunction with constitutional privacy and the ruling in *Favish*. The city must withhold the information you have marked under section 552.101 of the Government Code in conjunction with common-law privacy. The city must release the remaining information.

This letter ruling is limited to the particular information at issue in this request and limited to the facts as presented to us; therefore, this ruling must not be relied upon as a previous determination regarding any other information or any other circumstances.

This ruling triggers important deadlines regarding the rights and responsibilities of the governmental body and of the requestor. For more information concerning those rights and responsibilities, please visit our website at https://www.texasattorneygeneral.gov/open-government/members-public/what-expect-after-ruling-issued or call the OAG's Open Government Hotline, toll free, at (877) 673-6839. Questions concerning the allowable charges for providing public information under the Public Information Act may be directed to the Cost Rules Administrator of the OAG, toll free, at (888) 672-6787.

Sincerely,

Lindsay E. Hale
Assistant Attorney General
Open Records Division

LEH/pt

Ref:    ID# 23-091793

c:    Requestor

# Southlake Police Department

## Transfer Receipt

**TRANSACTION TYPE:** Transfer
**TO LOCATION:** OTHER AGENCY CASE
**ASSIGNEE:** Spencer, Senora
**USER:** Spencer, Senora
**DATE/Time:** 9/6/2019 2:32:12 PM

| Barcode | Case/IR | Item Detail | Date Received | Received By |
|---------|---------|-------------|---------------|-------------|
| 0017410 | 19SP053735 | APPLE IPAD SN:DLXV60JDHPJ6 | 9-11-19 | _(signature)_ |

**Remarks:** RELEASED TO DEA BY CPL. GREEN 9/6/19

**Signature:** _(signature)_

**591**

# Southlake Police Department
## Transfer Receipt

**TRANSACTION TYPE:** Transfer
**TO LOCATION:** OTHER AGENCY
**ASSIGNEE:** Spencer, Senora
**USER:** Spencer, Senora
**DATE/Time:** 1/23/2020 11:12:52 AM

| Barcode | Case/IR | Item Detail | Date Received | Received By |
|---------|---------|-------------|---------------|-------------|
| 00017413 | 19SP053735 | BLUE PILL "M/30" | 1/23/2020 | *(signature)* |
| 00017414 | 19SP053735 | 5 PINK PILLS "K/56" | | *(signature)* |

**Remarks:** ITEMS RELEASED TO DEA FOR ADDITIONAL ANALYSIS 1/23/2020

**Signature:** *(signature)*

**592**

# Southlake Police Department

## Transfer Receipt

**TRANSACTION TYPE:** Transfer
**TO LOCATION:** RETURNED
**ASSIGNEE:** Spencer, Senora
**USER:** Spencer, Senora
**DATE/Time:** 7/2/2019 8:10:12 AM

| Barcode | Case/IR | Item Detail | Date Received | Received By |
|---------|---------|-------------|---------------|-------------|
| 0017415 | 19SP053735 | WALLET, RING, PASSPORT, ID, CASH, EARBUDS | 7/2/19 | Carlie Skaggs |
| 0017416 | 19SP053735 | BLACK COWBOY HAT AND BUTTON SHIRT | | Carlie Skaggs |
| 0017418 | 19SP053735 | NORMATEC MACHINE | | Carlie Skaggs |
| 0017417 | 19SP053735 | BACKPACK WITH PERSONAL BELONGINGS | | Carlie Skaggs |

Remarks:    ITEMS HELD FOR SAFEKEEPING RETURNED TO CARLIE SKAGGS 7/2/19

Signature:    _Senora Spencer_

**593**

**CHAIN OF CUSTODY**

**INDICATE 'V' FOR VIEWING, 'REL' FOR RELEASED, 'RET' FOR RETURNED IN LAST BOX**

| | NAME | DATE | AGENCY | EVIDENCE TECH | ITEMS | V.REL.,RET. |
|---|---|---|---|---|---|---|
| (PRINT) | *R Scott* | 7/17/19 | GRAPEVINE PD | S SPENCER #1843 | IPHONE: 1 PAD #6: 7 | RELEASED |
| (SIGN) | | TIME | | | | |

| | NAME | DATE | AGENCY | EVIDENCE TECH | ITEMS | V.,REL.,RET. |
|---|---|---|---|---|---|---|
| (PRINT) | | | | | | |
| (SIGN) | | TIME | | | | |

| | NAME | DATE | AGENCY | EVIDENCE TECH | ITEMS | V.,REL.,RET. |
|---|---|---|---|---|---|---|
| (PRINT) | | | | | | |
| (SIGN) | | TIME | | | | |

| | NAME | DATE | AGENCY | EVIDENCE TECH | ITEMS | V.,REL.,RET. |
|---|---|---|---|---|---|---|
| (PRINT) | | TIME | | | | |
| (SIGN) | | | | | | |

| | NAME | DATE | AGENCY | EVIDENCE TECH | ITEMS | V.,REL.,RET. |
|---|---|---|---|---|---|---|
| (PRINT) | | | | | | |
| (SIGN) | | TIME | | | | |

| | NAME | DATE | AGENCY | EVIDENCE TECH | ITEMS | V.,REL.,RET. |
|---|---|---|---|---|---|---|
| (PRINT) | | | | | | |
| (SIGN) | | TIME | | | | |

CASE # 19SPD53735

594



**OFFICE OF CHIEF MEDICAL EXAMINER**    Chain of Custody – Short Form
Tarrant County Medical Examiner's District
200 Feliks Gwozdz Place
Fort Worth, Texas 76104-4919
**817-920-5700 / FAX 817-920-5713**                    Revised: 09/08/17

# CHAIN OF CUSTODY

| Agency Name | Agency Offense Number | TCME Number |
|---|---|---|
| SOUTHLAKE PD | 19SP053735 | 1912533 |
| **Agency Address & Phone** | **Type of Offense** | **Victim(s)** |
| 600 STATE STREET | DEATH | SKAGGS, TYLER |
| SOUTHLAKE, TX 76092 | **Date of Offense** | |
| | 07/01/2019 | |
| **Billing Info (if different from above)** | **Contact Name, Phone & Email** | **SUSPECT(s)** |
| | SENORA SPENCER | |
| | 817-748-8117 | |
| | SSPENCER@CI.SOUTHLAKE.TX.US | |

| TCME Exhibit #<br>TCME use only | Quantity | Description of Articles |
|---|---|---|
| | 1 | ROOM KEY WITH WHITE POWDER RESIDUE #17405 |
| | 1 | ROOM KEY CARD #17406 (LATENT PRINT ANALYSIS) |
| | I | UNKNOWN WHITE POWDER #17407 |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

| TCME Exhibit #<br>TCME use only | Date / Time | Relinquished By | | Received By | |
|---|---|---|---|---|---|
| | 9/2/19 1310 | Print | SENORA SPENCER | Print | Burshauna Hill |
| | | Sign | Senora Spencer | Sign | B. Hill |
| | | Print | | Print | |
| | | Sign | | Sign | |
| | | Print | | Print | |
| | | Sign | | Sign | |
| | | Print | | Print | |
| | | Sign | | Sign | |
| | | Print | | Print | |
| | | Sign | | Sign | |
| | | Print | | Print | |
| | | Sign | | Sign | |
| | | Print | | Print | |
| | | Sign | | Sign | |

Requests:

**595**

# Southlake Police Department

## Transfer Receipt

**TRANSACTION TYPE:** Transfer
**TO LOCATION:** COURT
**ASSIGNEE:** SPENCER, SENORA
**USER:** SPENCER, SENORA
**DATE/Time:** 2/7/2022 11:31:08 AM

| Barcode | Case/IR | Item Detail | Date Received | Received By |
|---------|---------|-------------|---------------|-------------|
| 00017405 | 19SP053735 | ROOM KEY WITH WHITE POWDER RESIDUE | 2/7/2022 | SA Mattheo de Saracho |
| 00017406 | 19SP053735 | ROOM KEY CARD | | |
| 00017407 | 19SP053735 | UNKNOWN WHITE POWDER | | |
| 00017408 | 19SP053735 | INDOCIN | | |
| 00017409 | 19SP053735 | WHITE SUBSTANCE FROM FLOOR COLLECTED BY TAPE | | |
| 00017412 | 19SP053735 | PLASTIC PEN TUBE | | |

**Remarks:** EVIDENCE RELEASED TO DEA FOR TYLER SKAGGS TRIAL 2/7/22

**Signature:** _Senora Spencer_

2/7/2022 11:31:41 AM

1 of 1

**596**

U.S. DEPARTMENT OF JUSTICE - DRUG ENFORCEMENT ADMINISTRATION
## RECEIPT FOR CASH OR OTHER ITEMS

TO: (Name, Title, Address (including ZIP CODE), if applicable)

FILE NO. MW-19-2045

G-DEP IDENTIFIER

FILE TITLE  Kay Eric

DATE  2/7/22

DIVISION/DISTRICT OFFICE

DFD / FWDO

I hereby acknowledge receipt of the following described cash or other item(s), which was given into my custody by the above named individual.

| AMOUNT or QUANTITY | DESCRIPTION OF ITEM(S) | PURPOSE (If Applicable) |
|---|---|---|
| ✓ | ELPD Evidence Logs | trial checkout |
| | Ex 1, 2, 3, 4, 5, 8 | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

RECEIVED BY (Signature)

NAME AND TITLE (Print or Type)  SA Matthew DeSaracho

WITNESSED BY (Signature)

NAME AND TITLE (Print or Type)

FORM DEA-12 (8-02) *Previous editions obsolete*

Electronic Form Version Designed in JetForm 5.2 Version

**597**

**Southlake Police Department**

# Item History

| Barcode: | 00017411 | | Item No: | 007 | | | | | |
|---|---|---|---|---|---|---|---|---|---|

**Description:** BLACK APPLE IPHONE

| Date & Time | User | Assignee | Field | Old Value | New Value | Action | Location | Remarks | Signature |
|---|---|---|---|---|---|---|---|---|---|
| 9/9/2019 4:38 PM | sspencer | | Location | OTHER AGENCY | OTHER AGENCY CASE | Field Updated | OTHER AGENCY CASE | | |
| 9/3/2019 2:08 PM | sspencer | Spencer, Senora | | | | Transfer | OTHER AGENCY | RELEASED TO THE DEA BY CPL. GREEN 9/3/19 | |
| 9/3/2019 2:08 PM | sspencer | | Location | 19M-01 | OTHER AGENCY | Field Updated | OTHER AGENCY | | |
| 7/24/2019 9:59 AM | sspencer | Spencer, Senora | | | | Transfer | 19M-01 | | |
| 7/24/2019 9:59 AM | sspencer | | Location | OTHER AGENCY | 19M-01 | Field Updated | 19M-01 | | |
| 7/18/2019 11:16 AM | sspencer | | Location | BULK DEATH | OTHER AGENCY | Field Updated | OTHER AGENCY | | |
| 7/2/2019 9:53 AM | sspencer | Spencer, Senora | | | | Transfer | BULK DEATH | | |
| 7/2/2019 9:53 AM | sspencer | | Location | In-Transit | BULK DEATH | Field Updated | BULK DEATH | | |
| 7/2/2019 9:52 AM | sspencer | Spencer, Senora | | 005% | In-Transit | Approved | In-Transit | Item Approved From OIM | |
| 7/2/2019 9:51 AM | sspencer | ROBERSON, T | | | 005% | Submitted | In-Transit | Item Submitted From OIM | |



**OFFICE OF CHIEF MEDICAL EXAMINER**    Chain of Custody – Short Form
Tarrant County Medical Examiner's District
200 Feliks Gwozdz Place
Fort Worth, Texas 76104-4919
**817-920-5700 / FAX 817-920-5713**                    Revised: 09/08/17

# CHAIN OF CUSTODY

| Agency Name | Agency Offense Number | TCME Number |
|---|---|---|
| SOUTHLAKE PD | 19SP053735 | 1912533 |
| **Agency Address & Phone** | **Type of Offense** | **Victim(s)** |
| 600 STATE STREET | DEATH | SKAGGS, TYLER |
| SOUTHLAKE, TX 76092 | **Date of Offense** | |
| | 07/01/2019 | |
| **Billing Info (if different from above)** | **Contact Name, Phone & Email** | **SUSPECT(s)** |
| | SENORA SPENCER | |
| | 817-748-8117 | |
| | SSPENCER@CI.SOUTHLAKE.TX.US | |

| TCME Exhibit # TCME use only | Quantity | Description of Articles |
|---|---|---|
| | 1 | BLUE PILL "M/30" #17413 |
| | 1 | 5 PINK PILLS "K/56" #17414 |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

| TCME Exhibit # TCME use only | Date / Time | Relinquished By | Received By |
|---|---|---|---|
| | 7/25/19 16:17 | Print SENORA SPENCER  Sign _Senora Spencer_ | Print _Adriana Wood_  Sign _Adriana M. Wood_ |
| | | Print  Sign | Print  Sign |
| | | Print  Sign | Print  Sign |
| | | Print  Sign | Print  Sign |
| | | Print  Sign | Print  Sign |
| | | Print  Sign | Print  Sign |
| | | Print  Sign | Print  Sign |
| | | Print  Sign | Print  Sign |

**Requests:**

**599**



**OFFICE OF CHIEF MEDICAL EXAMINER**
Tarrant County Medical Examiner's District
200 Feliks Gwozdz Place
Fort Worth, Texas 76104-4919
817-920-5700 / FAX 817-920-5713

Chain of Custody – Short Form

Revised: 09/08/17

## CHAIN OF CUSTODY

| Agency Name | Agency Offense Number | TCME Number |
|---|---|---|
| SOUTHLAKE PD | 19SP053735 | 1911392 |
| **Agency Address & Phone** | **Type of Offense** | **Victim(s)** |
| 600 STATE STREET | DEATH | SKAGGS, TYLER |
| SOUTHLAKE, TX 76092 | **Date of Offense** | |
| | 07/01/2019 | |
| **Billing Info (if different from above)** | **Contact Name, Phone & Email** | **SUSPECT(s)** |
| | SENORA SPENCER | |
| | 817-748-8117 | |
| | SSPENCER@CI.SOUTHLAKE.TX.US | |

| TCME Exhibit # TCME use only | Quantity | Description of Articles |
|---|---|---|
| | 1 | PLASTIC PEN TUBE #17412 |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

| TCME Exhibit # TCME use only | Date / Time | Relinquished By | Received By |
|---|---|---|---|
| | 9/9/19 1505 | Print SENORA SPENCER / Sign Senora Spencer | Print Leticia Hidalgo / Sign L Hidalgo |
| | | Print / Sign | Print / Sign |
| | | Print / Sign | Print / Sign |
| | | Print / Sign | Print / Sign |
| | | Print / Sign | Print / Sign |
| | | Print / Sign | Print / Sign |
| | | Print / Sign | Print / Sign |

Requests: FOR LATENT PRINTS



**OFFICE OF CHIEF MEDICAL EXAMINER**    Chain of Custody – Short Form
Tarrant County Medical Examiner's District
200 Feliks Gwozdz Place
Fort Worth, Texas 76104-4919
817-920-5700 / FAX 817-920-5713                        Revised: 09/08/17

# CHAIN OF CUSTODY

| Agency Name | Agency Offense Number | TCME Number |
|---|---|---|
| SOUTHLAKE PD | 19SP053735 | 1911392 |
| **Agency Address & Phone** | **Type of Offense** | **Victim(s)** |
| 600 STATE STREET | DEATH | SKAGGS, TYLER |
| SOUTHLAKE, TX 76092 | **Date of Offense** | |
| | 07/01/2019 | |
| **Billing Info (if different from above)** | **Contact Name, Phone & Email** | **SUSPECT(s)** |
| | SENORA SPENCER | |
| | 817-748-8117 | |
| | SSPENCER@CI.SOUTHLAKE.TX.US | |

| TCME Exhibit #<br>TCME use only | Quantity | Description of Articles |
|---|---|---|
| | 1 | ROOM KEY WITH WHITE POWDER RESIDUE #17405 |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

| TCME Exhibit #<br>TCME use only | Date / Time | Relinquished By | | Received By | |
|---|---|---|---|---|---|
| | 4/20/2021<br>0925 | Print | *JENDRA SPENCER* | Print | Burshauna Hill |
| | | Sign | *Senora Spencer* | Sign | *B Hill* |
| | | Print | | Print | |
| | | Sign | | Sign | |
| | | Print | | Print | |
| | | Sign | | Sign | |
| | | Print | | Print | |
| | | Sign | | Sign | |
| | | Print | | Print | |
| | | Sign | | Sign | |
| | | Print | | Print | |
| | | Sign | | Sign | |

**Requests:** LATENT EXAM

**601**

| Case/IR | Barcode | Inventory Time | Description | Category Code | Location Code | Pkg Weight |
|---|---|---|---|---|---|---|
| 19SP053735 | 00017405 | 12/4/2019 11:14:04 AM | ROOM KEY WITH WHITE POWDER RESIDUE | KEYS | 19M-01 | |
| 19SP053735 | 00017406 | 12/4/2019 11:14:01 AM | ROOM KEY CARD | KEYS | 19M-01 | |
| 19SP053735 | 00017407 | 12/3/2019 10:25:40 AM | UNKNOWN WHITE POWDER | NA- DRUGS | DRUGS BOX 2 | 0 |
| 19SP053735 | 00017408 | 12/3/2019 10:25:35 AM | INDOCIN | NA- DRUGS | DRUGS BOX 2 | 6.7 |
| 19SP053735 | 00017409 | 12/3/2019 10:25:14 AM | WHITE SUBSTANCE FROM FLOOR COLLECTED BY TAPE | NA- DRUGS | DRUGS BOX 2 | 0 |
| 19SP053735 | 00017410 | | APPLE IPAD SN:DLXV60JDHPJ6 | ELECTRONICS | OTHER AGENCY CASE | |
| 19SP053735 | 00017411 | | BLACK APPLE IPHONE | PHONE | OTHER AGENCY CASE | |
| 19SP053735 | 00017412 | | PLASTIC PEN TUBE | MISC. ITEM | 19M-01 | |
| 19SP053735 | 00017413 | 12/3/2019 10:24:57 AM | BLUE PILL "M/30" | NA- DRUGS | OTHER AGENCY | 0 |
| 19SP053735 | 00017414 | 12/3/2019 10:25:01 AM | 5 PINK PILLS "K/56" | NA- DRUGS | OTHER AGENCY | 0 |
| 19SP053735 | 00017415 | | WALLET, RING, PASSPORT, ID, CASH, EARBUDS | MISC. ITEM | RETURNED | |
| 19SP053735 | 00017416 | | BLACK COWBOY HAT AND BUTTON SHIRT | CLOTHING | RETURNED | |
| 19SP053735 | 00017417 | | BACKPACK WITH PERSONAL BELONGINGS | MISC. ITEM | RETURNED | |
| 19SP053735 | 00017418 | | NORMATEC MACHINE | MISC. ITEM | RETURNED | |
| 19SP053735 | 00017419 | 12/4/2019 11:07:56 AM | BED SHEETS WITH BLOOD | MISC. ITEM | BULK DEATH | |
| 19SP053735 | 00017420 | 12/4/2019 11:08:01 AM | BEDDING WITH BLOOD | MISC. ITEM | BULK DEATH | |
| 19SP053735 | 00017421 | 12/4/2019 11:13:59 AM | OPEN BAG OF GUMMY BEARS | MISC. ITEM | 19M-01 | |

Total Records: 17
Report Filter: Case/IR ( Contains ) 53735

7/8/2024 7:53:03 AM

1 of 1

**602**

Exhibit 11

Southlake PD TPIA Request #6, September 11, 2024, with
2 September 24, 2024, follow-up emails

| | |
|---|---|
| **From:** | E. Ladsous , Delta 7 Group |
| **To:** | dpsrecords@ci.southlake.tx.us |
| **Cc:** | Lindsey S. Susolik |
| **Subject:** | FW: Texas Public Information Request for Documents and Media Provided by Grapevine Police Department Regarding Forensic Analysis of Tyler Skaggs' iPhone (Item 7) |
| **Date:** | Wednesday, September 11, 2024 9:24:00 AM |
| **Attachments:** | image001.png<br>image002.png<br>image003.png |

---

**Date:** 09/11/2024

**Public Information Officer**

Southlake Police Department

1560 E Southlake Blvd

Southlake, TX 76092

Dear Public Information Officer,

Pursuant to the **Texas Public Information Act (TPIA) – Chapter 552 of the Texas Government Code**, I am formally requesting all **documents and media** provided by the **Grapevine Police Department** to the **Southlake Police Department** related to the **forensic analysis** of **Tyler Skaggs' iPhone (Item 7)**.

It has been established that on **July 17, 2019**, **Detective Robert F. Weber III**, a Grapevine PD computer and mobile device forensics examiner, **took custody of Tyler Skaggs' iPhone** for forensic examination. The phone was returned to the **Southlake Police Department** on **July 24, 2019**.

I acknowledge that **some of this information may have been previously requested**. However, new developments and information now provide a clearer understanding of the **handling and forensic procedures** applied to the iPhone at the **Grapevine Police Department**. This new information has prompted a refined request for specific records, including:

**Request for Records:**

> **All documents and media** provided by the **Grapevine Police Department**, including but not limited to:
>
> - The **Cellebrite logical dump** of **Tyler Skaggs' iPhone**.
> - Any chain of custody documentation related to the **Cellebrite logical dump**, including the **evidence number** for the Cellebrite extraction.
> - **Any reports or additional documentation** generated by **Detective Weber** or other Grapevine PD personnel related to the **forensic analysis** of the iPhone.

**604**

○ Any **media** provided, such as USB drives, DVDs, or other storage devices containing the **logical dump** or related forensic data.

**Request for Acknowledgment:**

I also formally request that you **acknowledge the existence or non-existence** of the requested **documents and media**, including the **Cellebrite logical dump**. If these materials do exist, please provide the chain of custody records for the forensic data, including any relevant evidence numbers.

**Legal Basis:**

Under **Chapter 552 of the Texas Government Code**, I am entitled to request and obtain public records, including all **documents and media** generated or transferred during a criminal investigation. As the case involving **Tyler Skaggs** has been fully adjudicated, there is no basis under **Section 552.108** of the Texas Government Code to withhold the requested information.

Furthermore, this information is critical to ensure a **fair trial in a court of law**. The **letter and spirit** of **Chapter 552** of the Texas Government Code is to promote **transparency** and **justice** by providing access to public records, which is vital **for the proper administration of justice**.

**Conclusion:**

Please provide all requested **documents and media** in compliance with the **Texas Public Information Act**. If any part of my request is denied, or if no such records or media exist, I request a formal written explanation of the specific statutory exemption relied upon or a confirmation of the non-existence of the requested materials.

If further clarification is needed to process this request, don't hesitate to contact me at (949) 423-4350.

Thank you for your prompt attention to this matter. I look forward to your response within the statutory timeframe.

Sincerely,

Emmanuel

_____

**Emmanuel Ladsous**
President / Private Investigator
**Delta 7 Group, LLC**
A Professional Security Consultancy
4712 E 2nd Street, Suite 231

**605**

Long Beach, CA 90803-5309

Phone:  (800) 689-6546, Ext. 700

Mobile: (949) 423-4350

Email address:  E.Ladsous@Delta7Group.com

Website:      www.Delta7Group.com

CA PI License#    188424



 

**This email is unsecured and subject to monitoring.**

CONFIDENTIALITY NOTICE:  This communication and any documents, files, or previous email messages attached constitute an electronic communication within the scope of the Electronic Communication Privacy Act, 18 U.S. Code § 2510. This communication may contain non-public, confidential, or legally privileged information intended for the designated recipient(s) sole use. The unlawful interception, use, or disclosure of such information is strictly prohibited under 18 U.S. Code § 2511 and applicable laws. If you are not the intended recipient or have received this communication in error, please notify the sender immediately by email to E.Ladsous@Delta7Group.com and delete all copies of this communication, including attachments, without reading or saving them in any matter.

| From: | E. Ladsous , Delta 7 Group |
|---|---|
| To: | Bessie Bronstein; Danielle Weary; Ellie Schulte |
| Cc: | Jessica Hernandez Diotalevi; Lindsey S. Susolik |
| Subject: | FW: Clarification on September 11, 2024, TPIA request titled: "Texas Public Information Request for Documents and Media Provided by Grapevine Police Department Regarding Forensic Analysis of Tyler Skaggs" iPhone (Item 7) |
| Date: | Tuesday, September 24, 2024 8:55:00 AM |
| Attachments: | image001.png |
|  | image002.png |
|  | image003.png |
|  | image004.png |
|  | image005.png |
|  | image006.png |
|  | image010.png |
|  | image011.png |
|  | image012.png |
|  | image013.png |
|  | or2024032258.pdf |
|  | FW_ Texas Public Information Request for Documents and Media Provided by Grapevine Pol.pdf |
| Importance: | High |

Good morning, Danielle and Ellie,

I understand that Bessie is out of town until October 7, but I'm hoping you might be able to assist in the meantime. I have an outstanding TPIA request dated **September 11, 2024,** and I recently sent Bessie an email with additional information.

After reviewing the trial transcript, I learned that **Corporal Green, Southlake PD,** conducted the **Cellebrite logical extraction** of Tyler Skaggs' iPhone (Item 7). For clarity, I am considering submitting a new TPIA request. Initially, I assumed **Detective Weber, Grapevine PD,** performed the forensic extraction, as he was the one who accepted custody of the iPhone.

I look forward to your response and appreciate your assistance in clarifying this matter.

Sincerely,

Emmanuel

_____

**Emmanuel Ladsous**
President / Private Investigator
**Delta 7 Group, LLC**
A Professional Security Consultancy
4712 E 2nd Street, Suite 231
Long Beach, CA 90803-5309
Phone:  (800) 689-6546, Ext. 700
Mobile: (949) 423-4350
Email address:  E.Ladsous@Delta7Group.com
Website:     www.Delta7Group.com
CA PI License#    188424



 

**This email is unsecured and subject to monitoring.**

CONFIDENTIALITY NOTICE:  This communication and any documents, files, or previous email messages attached constitute an electronic communication within the scope of the Electronic Communication Privacy Act, 18 U.S. Code § 2510. This communication may contain non-public, confidential, or legally privileged information intended for the designated recipient(s) sole use. The unlawful interception, use, or disclosure of such information is strictly prohibited under 18 U.S. Code § 2511 and applicable laws. If you are not the intended recipient or have received this communication in error, please notify the sender immediately by email to E.Ladsous@Delta7Group.com and delete all copies of this communication, including attachments, without reading or saving them in any matter.

**607**

**From:** E. Ladsous . Delta 7 Group
**Sent:** Tuesday, September 24, 2024 8:34 AM
**To:** Bessie Bronstein <bbronstein@toase.com>
**Subject:** Clarification on September 11, 2024, TPIA request titled: "Texas Public Information Request for Documents and Media Provided by Grapevine Police Department Regarding Forensic Analysis of Tyler Skaggs' iPhone (Item 7)
**Importance:** High

Good morning, Bessie,

I hope this email finds you well. I'm writing to clarify my **September 11, 2024**, request titled: "**Texas Public Information Request for Documents and Media Provided by Grapevine Police Department Regarding Forensic Analysis of Tyler Skaggs' iPhone (Item 7).**"

As you know, the **Skaggs family is currently suing the Los Angeles Angels**, and the primary evidence in this upcoming trial revolves around **Tyler Skaggs' phone information**. To ensure a **fair trial**, we must locate and understand the full scope of the evidence related to **Tyler Skaggs' iPhone (Item 7)**. As an attorney, I'm sure you know evidence's critical role in both civil and criminal trials.

**Background on the Evidence:**

Based on documentation from the Southlake PD, we know that **17 items** were seized at the crime scene. I appreciate the City's cooperation in providing the **Item History log** and **Transfer Receipts** for these items.

| Case/IR | Barcode | Inventory Time | Description | Category Code | Location Code | Pkg Weight |
|---|---|---|---|---|---|---|
| 19SP053735 | 00017405 | 12/4/2019 11:14:04 AM | ROOM KEY WITH WHITE POWDER RESIDUE | KEYS | 19M-01 | |
| 19SP053735 | 00017406 | 12/4/2019 11:14:01 AM | ROOM KEY CARD | KEYS | 19M-01 | |
| 19SP053735 | 00017407 | 12/3/2019 10:25:40 AM | UNKNOWN WHITE POWDER | NA- DRUGS | DRUGS BOX 2 | 0 |
| 19SP053735 | 00017408 | 12/3/2019 10:25:35 AM | INDOCIN | NA- DRUGS | DRUGS BOX 2 | 6.7 |
| 19SP053735 | 00017409 | 12/3/2019 10:25:14 AM | WHITE SUBSTANCE FROM FLOOR COLLECTED BY TAPE | NA- DRUGS | DRUGS BOX 2 | 0 |
| 19SP053735 | 00017410 | | APPLE IPAD SN:DLXV60JDHPJ6 | ELECTRONICS | OTHER AGENCY CASE | |
| 19SP053735 | 00017411 | | BLACK APPLE IPHONE | PHONE | OTHER AGENCY CASE | |
| 19SP053735 | 00017412 | | PLASTIC PEN TUBE | MISC. ITEM | 19M-01 | |
| 19SP053735 | 00017413 | 12/3/2019 10:24:57 AM | BLUE PILL "M/30" | NA- DRUGS | OTHER AGENCY | 0 |
| 19SP053735 | 00017414 | 12/3/2019 10:25:01 AM | 5 PINK PILLS "K56" | NA- DRUGS | OTHER AGENCY | 0 |
| 19SP053735 | 00017415 | | WALLET, RING, PASSPORT, ID, CASH, EARBUDS | MISC. ITEM | RETURNED | |
| 19SP053735 | 00017416 | | BLACK COWBOY HAT AND BUTTON SHIRT | CLOTHING | RETURNED | |
| 19SP053735 | 00017417 | | BACKPACK WITH PERSONAL BELONGINGS | MISC. ITEM | RETURNED | |
| 19SP053735 | 00017418 | | NORMATEC MACHINE | MISC. ITEM | RETURNED | |
| 19SP053735 | 00017419 | 12/4/2019 11:07:56 AM | BED SHEETS WITH BLOOD | MISC. ITEM | BULK DEATH | |
| 19SP053735 | 00017420 | 12/4/2019 11:08:01 AM | BEDDING WITH BLOOD | MISC. ITEM | BULK DEATH | |
| 19SP053735 | 00017421 | 12/4/2019 11:13:59 AM | OPEN BAG OF GUMMY BEARS | MISC. ITEM | 19M-01 | |

Total Records: 17
Report Filter: Case/IR ( Contains ) 53735

**Skaggs' iPhone (Item 7):**

**608**



From my review, the chain of custody for Skaggs' iPhone (Item 7) is relatively clear:

- **July 1, 2019**: Det. Roberson seized Skaggs' iPhone at the crime scene.
- **July 2, 2019**: The iPhone was booked into the Southlake PD.
- **July 17, 2019**: The iPhone was transferred to the Grapevine PD for forensic analysis.
- **July 17-22, 2019**: Corporal Green performed a **Cellebrite logical extraction** (Extraction 1) at the Grapevine PD.
- **July 23, 2019**: Corporal Green took photos of Skaggs' iPhone.
- **July 24, 2019**: The phone was returned to the Southlake PD.
- **September 3, 2019**: The iPhone was transferred to the DEA.
- **September 9, 2019**: The DEA submitted the iPhone to the US Secret Service for a **file system extraction** (Extraction 2). The results of this extraction were used in the federal trial, where Eric Kay was convicted. Corporal Green's photos from July 23, 2019, were also introduced as **Government Exhibit 6**.

## Southlake Police Department

### Supplement

Date of report: 2019-08-06                    Case Number: 19SP053735-4

cellphone and iPad were kept as evidence and consent was asked for from the family to search for any related information/evidence. It was explained that we would be looking for any incoming/outgoing phone calls before and after T. Skaggs' passing. During the time of our meeting, the family opted to withhold the passcode to the electronics until they consulted with an attorney. However, at 1616 hours, I received a text from Ms. Miles, stating they would release the passcode to T. Skaggs' electronics for further analysis. The electronics were taken to the Grapevine PD Forensic Lab on July 17th, 2019; the analysis was completed and the electronics were received back on July 22nd, 2019. However, due the electronic analysis only completing a logical dump, I returned to Grapevine PD Forensic Lab on July 23rd, 2019 to take physical photographs of evidentiary texts/phone calls, etc. All electronic information has been added to the Virtual Evidence Locker for reference.

**609**

| | NO. | DESCRIPTION | ADMITTED | VOL |
|---|---|---|---|---|
| 1 | | MASTER GOVERNMENT'S EXHIBIT INDEX | | |
| 2 | NO. | DESCRIPTION | ADMITTED | VOL |
| 3 | 01 | T.S. Phone (physical exhibit) | 196 | 5 |
| 4 | 2 | T.S. phone extraction | 071 | 6 |
| 5 | 2B | T.S. phone extraction report | 071 (Record only) | 6 |
| 6 | 2B | T.S. Phone Extraction Report | 005 | 11 |
| 7 | 2C | T.S. phone report of forensic exam | 071 (Record only) | 6 |
| 8 | 2C | T.S. Phone Report of Forensic Exam | 005 | 11 |
| 9 | 2D | Access instructions for Govt. Exh. 2B | 072 | 6 |
| 10 | 2D | Access instructions for Govt. Exh. 2B | 005 | 11 |
| 11 | 3 | T.S. contact list | 086 | 6 |
| 12 | 4 | T.S. phone timeline 6/30/19-7/1/19 | 086 | 6 |
| 13 | 5 | T.S. text messages 6/30/19-7/1/19 | 101 | 6 |
| 14 | 6 | Photos of T.S.'s phone 6/30/19-7/1/19 | 032 | 6 |

The red parenthesis identifies the type of evidence created during a forensic examination.

**Concerns:**

While the City has provided information about the property seized and transferred, **it has not provided any information regarding the evidence and derivative evidence** from **Corporal Green's forensic extraction (Extraction 1) and analysis** of Skaggs' iPhone (Item 7). Specifically:

- **What happened to Extraction 1** (the logical dump) and its associated derivative evidence?
- **What happened to the Cellebrite Phone Extraction Report?**
- **Where is it? Evidence Number? Chain of custody?** And so on.
- Was it transferred to the DEA? If so, which items, when, and by whom?
- Is Extraction 1 and any other derivative evidence stored in the **Virtual Evidence Locker**, as noted in **Corporal Green's August 6, 2019** report?

It is clear from **Government Exhibit 6** that some derivative evidence from **Corporal Green's extraction** was used in court. Therefore, there must be corresponding **evidence numbers**, **Item History logs**, and **Chain of Custody forms** for this material. A **fair trial** cannot proceed without knowing the full extent of what evidence was created and transferred from the Southlake PD to the DEA.

**Request for Clarification:**

While I understand that the DEA performed its own forensic analysis (Extraction 2), which **superseded the earlier analysis**, it remains essential to account for **Extraction 1** and any related evidence. My request is straightforward:

1. **What evidence was created** by Corporal Green's extraction at the Grapevine PD?
2. **What was transferred to the DEA**, and what remained with the Southlake PD?
3. What is stored in the **Virtual Evidence Locker**, and does it contain the complete **logical extraction** and associated data?

This information is crucial to understanding the evidence used in the federal trial and ensuring a thorough accounting for

the upcoming civil trial. I want to reiterate that this case has been adjudicated, and the appeal has been denied. As such, my request does not involve an ongoing investigation, but it is necessary to clarify the records related to what evidence was collected, created, and transferred.

It is conceivable that my analysis of the chain of events may be inaccurate; if so, please correct me. My understanding is based on the bits and pieces of information I have received thus far, and I am relying on your assistance to fully understand what happened. Without this clarity, justice cannot be served, and a fair trial may be compromised. Your role is crucial in ensuring that all necessary information is available, and I depend on you to help ensure justice is done.

I appreciate your assistance and look forward to your prompt response.

Sincerely,

Emmanuel

_____

**Emmanuel Ladsous**
President / Private Investigator
**Delta 7 Group, LLC**
A Professional Security Consultancy
4712 E 2nd Street, Suite 231
Long Beach, CA 90803-5309
Phone:  (800) 689-6546, Ext. 700
Mobile:  (949) 423-4350
Email address:  E.Ladsous@Delta7Group.com
Website:      www.Delta7Group.com
CA PI License#   188424






**This email is unsecured and subject to monitoring.**

CONFIDENTIALITY NOTICE:  This communication and any documents, files, or previous email messages attached constitute an electronic communication within the scope of the Electronic Communication Privacy Act, 18 US Code § 2510. This communication may contain non-public, confidential, or legally privileged information intended for the designated recipient(s) sole use. The unlawful interception, use, or disclosure of such information is strictly prohibited under 18 US Code § 2511 and applicable laws. If you are not the intended recipient or have received this communication in error, please notify the sender immediately by email to E.Ladsous@Delta7Group.com and delete all copies of this communication, including attachments, without reading or saving them in any matter.

**611**

Exhibit 12

Response to Southlake PD TPIA Request #6
and Follow-up email



6000 WESTERN PLACE, SUITE 200
FORT WORTH, TEXAS 76107

TELEPHONE: (817) 806-5242
PIA@TOASE.COM

Bessie Bronstein
pia@toase.com

September 25, 2024

Emmanuel Ladsous
DELTA 7 GROUP, LLC
4712 E. 2nd Street, Suite 231
Long Beach, California 90803
e.ladsous@delta7group.com

        *Re:*    *Public Information Request Received by the City of Southlake on September 11, 2024*

Dear Mr. Ladsous:

    I represent the City of Southlake regarding the above-described matter. Enclosed please find the information that the City has in their custody that is responsive to your request dated September 11, 2024.

    The City understands the rights of all citizens to make requests for public information and invites all citizens to avail themselves of that right. Should you have any questions, please do not hesitate to contact me. Of course, all questions may also be forwarded to the Office of the Texas Attorney General, Open Government Hotline, at (512) 478-6736 or toll-free at 1-877-673-6839.

    Sincerely,

Bessie Bronstein

BB:dlw
Enclosures

V:\Southlake\PIA—SUBPOENAS\2024\Ladsous, Emmanuel 9 11 24\To Requestor\Ladsous BB001 docs

**613**

# Southlake Police Department

## Transfer Receipt

**TRANSACTION TYPE:** Transfer
**TO LOCATION:** OTHER AGENCY CASE
**ASSIGNEE:** Spencer, Senora
**USER:** Spencer, Senora
**DATE/Time:** 9/6/2019 2:32:12 PM

| Barcode | Case/IR | Item Detail | Date Received | Received By |
|---------|---------|-------------|---------------|-------------|
| 00017410 | 19SP053735 | APPLE IPAD SN:DLXV60JDHPJ6 | 9-11-19 | *(signature)* |

Remarks:    RELEASED TO DEA BY CPL. GREEN 9/6/19

Signature:  *(signature)*

**614**

# Southlake Police Department
## Transfer Receipt

**TRANSACTION TYPE:** Transfer
**TO LOCATION:** OTHER AGENCY
**ASSIGNEE:** Spencer, Senora
**USER:** Spencer, Senora
**DATE/Time:** 1/23/2020 11:12:52 AM

| Barcode | Case/IR | Item Detail | Date Received | Received By |
|---------|---------|-------------|---------------|-------------|
| 00017413 | 19SP053735 | BLUE PILL "M/30" | 1/23/2020 | *[signature]* |
| 00017414 | 19SP053735 | 5 PINK PILLS "K/56" | | *[signature]* |

**Remarks:** ITEMS RELEASED TO DEA FOR ADDITIONAL ANALYSIS 1/23/2020

**Signature:** *Senora Spencer*

**615**

# Southlake Police Department

## Transfer Receipt

**TRANSACTION TYPE:** Transfer
**TO LOCATION:** COURT
**ASSIGNEE:** SPENCER, SENORA
**USER:** SPENCER, SENORA
**DATE/Time:** 2/7/2022 11:31:08 AM

| Barcode | Case/IR | Item Detail | Date Received | Received By |
|---------|---------|-------------|---------------|-------------|
| 00017405 | 19SP053735 | ROOM KEY WITH WHITE POWDER RESIDUE | 2/7/2022 | SA Mattheo de Saracho |
| 00017406 | 19SP053735 | ROOM KEY CARD | | |
| 00017407 | 19SP053735 | UNKNOWN WHITE POWDER | | |
| 00017408 | 19SP053735 | INDOCIN | | |
| 00017409 | 19SP053735 | WHITE SUBSTANCE FROM FLOOR COLLECTED BY TAPE | | |
| 00017412 | 19SP053735 | PLASTIC PEN TUBE | | |

**Remarks:**    EVIDENCE RELEASED TO DEA FOR TYLER SKAGGS TRIAL 2/7/22

**Signature:**    _Senora Spencer_

**616**

**U.S. DEPARTMENT OF JUSTICE** - DRUG ENFORCEMENT ADMINISTRATION
## RECEIPT FOR CASH OR OTHER ITEMS

TO: (Name, Title, Address (including ZIP CODE), if applicable)

FILE NO. MW-19-2045

G-DEP IDENTIFIER

FILE TITLE Kay Eric

DATE 2/7/22

DIVISION/DISTRICT OFFICE

DFD / FWDO

I hereby acknowledge receipt of the following described cash or other item(s), which was given into my custody by the above named individual.

| AMOUNT or QUANTITY | DESCRIPTION OF ITEM(S) | PURPOSE (If Applicable) |
|---|---|---|
| | ELPD Evidence boss | trial checkout |
| | Ex 1, 2, 3, 4, 5, 8 | |
| | | |
| | Nothing Follows | |
| | | |
| | | |
| | | |
| | | |
| | | |

RECEIVED BY (Signature)

NAME AND TITLE (Print or Type)
SA Matthew DeSaracho

WITNESSED BY (Signature)

NAME AND TITLE (Print or Type)

FORM DEA-12 (8-02) *Previous editions obsolete*

Electronic Form Version Designed in JetForm 5.2 Version

**617**

**Southlake Police Department**

# Item History

| Barcode: | 00017411 | Item No: | 007 |
|---|---|---|---|

**Description:** BLACK APPLE IPHONE

| Date & Time | User | Assignee | Field | Old Value | New Value | Action | Location | Remarks | Signature |
|---|---|---|---|---|---|---|---|---|---|
| 9/9/2019 4:38 PM | sspencer | | Location | OTHER AGENCY | OTHER AGENCY CASE | Field Updated | OTHER AGENCY CASE | | |
| 9/3/2019 2:08 PM | sspencer | Spencer, Senora | | | | Transfer | OTHER AGENCY | RELEASED TO THE DEA BY CPL. GREEN 9/3/19 | |
| 9/3/2019 2:08 PM | sspencer | | Location | 19M-01 | OTHER AGENCY | Field Updated | OTHER AGENCY | | |
| 7/24/2019 9:59 AM | sspencer | Spencer, Senora | | | | Transfer | 19M-01 | | |
| 7/24/2019 9:59 AM | sspencer | | Location | OTHER AGENCY | 19M-01 | Field Updated | 19M-01 | | |
| 7/18/2019 11:16 AM | sspencer | | Location | BULK DEATH | OTHER AGENCY | Field Updated | OTHER AGENCY | | |
| 7/2/2019 9:53 AM | sspencer | Spencer, Senora | | | | Transfer | BULK DEATH | | |
| 7/2/2019 9:53 AM | sspencer | | Location | In-Transit | BULK DEATH | Field Updated | BULK DEATH | | |
| 7/2/2019 9:52 AM | sspencer | Spencer, Senora | | 005% | In-Transit | Approved | In-Transit | Item Approved From OIM | |
| 7/2/2019 9:51 AM | sspencer | ROBERSON, T | | | 005% | Submitted | In-Transit | Item Submitted From OIM | |

| | |
|---|---|
| **From:** | E. Ladsous , Delta 7 Group |
| **To:** | PIA TOASE |
| **Cc:** | Bessie Bronstein; Jessica Hernandez Diotalevi; Lindsey S. Susolik |
| **Bcc:** | sladsous@tocounsel.com |
| **Subject:** | RE: Public Information Request to the City of Southlake - September 11, 2024 - Clarification of Forensic Evidence Related to Tyler Skaggs" iPhone |
| **Date:** | Sunday, September 29, 2024 2:46:00 PM |
| **Attachments:** | image002.png |
| | image003.png |
| | image004.png |

Dear Bessie,

Thank you for your recent response to my Texas Public Information Act request. I acknowledge the receipt of the Transfer Receipts for an Apple iPad, drugs, other items, and the Item History for Tyler Skaggs' iPhone (Item 7). However, your response did not provide any information regarding the existence or status of the forensic evidence related to the Cellebrite extraction performed on Skaggs' iPhone.

Given your response, I am left to conclude the following:

- The Cellebrite extraction file and all supporting reports from the forensic extraction performed by Corporal Green on Skaggs' iPhone **no longer exist**.
- The photos taken by Corporal Green at the Grapevine PD on July 23, 2019 (images 0001 through 0045), which were introduced as Government Exhibit 6 during Eric Kay's federal trial, are either **missing or have been destroyed**.
- The Cellebrite extraction file, the extraction reports, and the derivative evidence generated by Corporal Green during her forensic analysis of Skaggs' phone were **never logged into the Southlake PD evidence management system (<u>confirmed by the Southlake PD</u>)**. Consequently, no official transfer to the DEA was documented or completed.

Additionally, I am seeking clarification: Was there any **unofficial or undocumented transfer** of the Cellebrite extraction file, reports, or other derivative evidence generated during Corporal Green's forensic analysis of Skaggs' phone to the DEA?

While I acknowledge that the US Secret Service conducted a more in-depth forensic analysis on Skaggs' iPhone at a later date, it is critical that all original forensic evidence—including the Cellebrite extraction and derivative evidence from the Southlake PD—be appropriately accounted for.

Please be advised that your response will be presented in a Court of Law in Orange County, California, as part of the upcoming civil trial concerning Tyler Skaggs' death. It is crucial that the City of Southlake clarifies the status of this forensic evidence and provides a complete, transparent accounting of all relevant materials.

**619**

Despite my multiple requests, I have yet to receive a clear, straightforward answer regarding this matter. This continued lack of clarity is deeply concerning, as my request is simple: What evidence was collected, what derivative evidence was created, and what was transferred to the DEA? Specifically, my inquiries focus on Skaggs' phone and the Cellebrite forensic evidence resulting from Corporal Green's handling. Does this derivative evidence still exist, and if so, why has it not been provided or accounted for?

The City's reluctance to fully account for this evidence raises serious concerns about transparency and the proper handling of such critical forensic evidence. I urge you to address this matter without further delay.

I look forward to your prompt clarification and response.

Sincerely,

Emmanuel

---

**Emmanuel Ladsous**
President / Private Investigator
**Delta 7 Group, LLC**
A Professional Security Consultancy
4712 E 2nd Street, Suite 231
Long Beach, CA 90803-5309
Phone:  (800) 689-6546, Ext. 700
Mobile: (949) 423-4350
Email address:  E.Ladsous@Delta7Group.com
Website:        www.Delta7Group.com
CA PI License#     188424






**This email is unsecured and subject to monitoring.**

CONFIDENTIALITY NOTICE:  This communication and any documents, files, or previous email messages attached constitute an electronic communication within the scope of the Electronic Communication Privacy Act, 18 US Code § 2510. This communication may contain non-public, confidential, or legally privileged information intended for the designated recipient(s) sole use. The unlawful interception, use, or disclosure of

**620**

such information is strictly prohibited under 18 US Code § 2511 and applicable laws. If you are not the intended recipient or have received this communication in error, please notify the sender immediately by email to E.Ladsous@Delta7Group.com and delete all copies of this communication, including attachments, without reading or saving them in any matter.

**From:** PIA TOASE <pia@toase.com>
**Sent:** Wednesday, September 25, 2024 1:24 PM
**To:** E. Ladsous . Delta 7 Group <e.ladsous@delta7group.com>
**Subject:** Public Information Request to the City of Southlake

Please see the attached regarding your September 11, 2024 request.



CONFIDENTIAL NOTICE:  This electronic transmission and any documents or other writings sent with it constitute confidential information which is intended only for the named recipient and client and which is subject to attorney/client privilege.  If you have received this communication in error, do not read it.  Please reply to the sender at Taylor, Olson, Adkins, Sralla & Elam, L.L.P. that you have received the message in error.  Then delete it.  Any disclosure, copying distribution or the taking of any action concerning the contents of this communication or any attachment(s) by anyone other than the named recipient is strictly prohibited.

Exhibit 13

Grapevine PD TPIA Request #2
September 11, 2024

| | |
|---|---|
| **From:** | E. Ladsous , Delta 7 Group |
| **To:** | Records@grapevinetexas.gov |
| **Cc:** | Lindsey S. Susolik |
| **Subject:** | Texas Public Information Request for Forensic Analysis Records of Tyler Skaggs' iPhone (Item 7) - Southlake PD Case #19SPD53735 - July 2019. |
| **Date:** | Wednesday, September 11, 2024 10:28:00 AM |
| **Attachments:** | image001.png |
| | image002.png |
| | image003.png |
| **Importance:** | High |

**Date:** September 11, 2024

**Public Information Officer**

Grapevine Police Department

307 W Dallas Rd

Grapevine, TX 76051

**Subject:** Texas Public Information Request for Forensic Analysis Records of Tyler Skaggs'
iPhone (Item 7) – Southlake PD Case #19SPD53735

Dear Public Information Officer,

Pursuant to the **Texas Public Information Act (TPIA) – Chapter 552 of the Texas Government
Code**, I am formally requesting all **documents and media** related to the forensic analysis of
**Tyler Skaggs' iPhone (Southlake PD Item 7)**, which the **Grapevine Police Department**
examined in connection with **Southlake PD Case #19SPD53735**.

**Context of the Request:**

**Detective Thomas Roberson**, CID, Southlake Police Department, seized **Tyler Skaggs'
iPhone** at the crime scene on **July 1, 2019**. The lead investigator in the case was **Detective
Delaney Green**. The iPhone (Model Number D21AP, Serial F17VHMHJJCLM, Southlake PD
Item 7) was transferred to the **Grapevine Police Department** for forensic analysis on **July 17,
2019**, where it was examined by **Detective Robert F. Weber**, a Grapevine PD computer and
mobile device forensics examiner. The device was returned to the Southlake PD on **July 24,
2019**, and later released to the **DEA** on **September 3, 2019**. The **U.S. Secret Service**
eventually re-imaged the iPhone on **September 9, 2019**.

While the **Grapevine Police Department** was assisting the Southlake PD, the role of the
Grapevine PD is **critical** in the **chain of custody** for this device. It is essential that the
involvement of the **Grapevine PD** and all actions taken during the forensic analysis are fully
documented for legal proceedings, as the information is crucial to the integrity of the case and
ensuring the proper chain of custody was maintained.

Please note that the **Skaggs family** is currently suing the **Los Angeles Angels** for $210 million.
I am a **licensed private investigator** working for **Theodora Oringher PC**, the law firm

**623**

representing the **Los Angeles Angels** in this civil litigation. **The requested information is critical to ensuring a fair trial in this matter.**

**Felony Case, Conviction, and Transfer to the DEA:**

This case involved a **felony investigation** that resulted in a **conviction**, further elevating the importance of maintaining proper records under **Texas law**. Given the serious nature of the case, and the fact that **Detective Robert F. Weber** of the **Grapevine Police Department** took custody of **Tyler Skaggs' iPhone** on **July 17, 2019**, to perform a forensic examination, there must be records and documentation related to the examination within the department. These records would include, but are not limited to, forensic reports, chain of custody logs, and any digital media created as part of the forensic process.

Even though the case was transferred to the **DEA** for federal prosecution, this does not change the **Grapevine Police Department's** legal responsibility to preserve records it created during its involvement. Under **Texas State Library and Archives Commission (TSLAC)** guidelines, records related to felony cases that result in conviction are subject to **long-term retention**, often for **75 years**. Any suggestion that such records were destroyed or no longer exist would be inconsistent with **state retention laws** and the department's legal obligations.

While federal agencies may have taken over prosecution, **Grapevine PD** remains the **custodian** of the records it generated, and is still required to comply with **Chapter 552 of the Texas Government Code**. I respectfully assert that these records must be available and should be disclosed as required under the **Texas Public Information Act**.

**Request for Records:**

I request access to the following:

> **All documents and media** related to the forensic examination of **Tyler Skaggs' iPhone (Item 7)**, including but not limited to:

- The **Cellebrite logical dump** of the device or any other forensic procedures performed.
- Any **chain of custody documentation** related to the **Cellebrite logical dump** or other forensic data, including the **evidence number** associated with this analysis.
- The **forensic report** prepared by **Detective Robert F. Weber** regarding the forensic examination of the iPhone.
- **Any notes** taken by Detective Weber or other personnel involved in the examination.
- **Any work copy** of the **Cellebrite report**, if available.
- Any **media** such as USB drives, DVDs, or other storage devices containing forensic data from the phone.

**624**

**Legal Counter Argument:**

In anticipation of a potential response suggesting that I should direct my request to the **Southlake Police Department** as the primary agency, I would like to emphasize that **Grapevine PD**, as the agency that performed the forensic analysis, is an **independent custodian** of the records it created. Under the **Texas Public Information Act**, each public entity that generates or holds records is **independently responsible** for providing access to those records. Therefore, regardless of whether **Grapevine PD** was assisting **Southlake PD**, the records and media related to its forensic analysis of **Tyler Skaggs' iPhone** fall under its control and must be disclosed upon request.

**Legal Basis:**

Under **Chapter 552 of the Texas Government Code**, I am entitled to request and obtain public records, including all **documents and media** generated or transferred during a criminal investigation. As the case involving **Tyler Skaggs** has been fully adjudicated, there is no ongoing investigation, and there is no valid reason to withhold the requested information under **Section 552.108** of the Texas Government Code.

**Request for Acknowledgment:**

I also formally request that you **acknowledge the existence or non-existence** of the requested **documents and media**, including the **Cellebrite logical dump**. If these materials do exist, please provide the chain of custody records for the forensic data, including any relevant evidence numbers.

**Conclusion:**

Please provide all requested **documents and media** in compliance with the **Texas Public Information Act**. If any part of my request is denied, or if no such records or media exist, **I request a formal written explanation of the specific statutory exemption relied upon or a confirmation of the non-existence of the requested materials**.

If further clarification is needed to process this request, kindly contact me via email at E.Ladsous@Delta7Group.com or Lindsey Susolik, Esq., Theodora Oringher PC.

Thank you for your prompt attention to this matter. I look forward to your response within the statutory timeframe.

Sincerely,

Emmanuel

**625**

---

**Emmanuel Ladsous**

President / Private Investigator

**Delta 7 Group, LLC**

A Professional Security Consultancy

4712 E 2nd Street, Suite 231

Long Beach, CA 90803-5309

Phone:  (800) 689-6546, Ext. 700

Mobile: (949) 423-4350

Email address: E.Ladsous@Delta7Group.com

Website:        www.Delta7Group.com

CA PI License#    188424



   

**This email is unsecured and subject to monitoring.**

CONFIDENTIALITY NOTICE:  This communication and any documents, files, or previous email messages attached constitute an electronic communication within the scope of the Electronic Communication Privacy Act, 18 U.S. Code § 2510. This communication may contain non-public, confidential, or legally privileged information intended for the designated recipient(s) sole use. The unlawful interception, use, or disclosure of such information is strictly prohibited under 18 U.S. Code § 2511 and applicable laws. If you are not the intended recipient or have received this communication in error, please notify the sender immediately by email to E.Ladsous@Delta7Group.com and delete all copies of this communication, including attachments, without reading or saving them in any matter.

Exhibit 14

Texas Attorney General's Ruling OR2024-032258
September 16, 2024



**KEN PAXTON**

ATTORNEY GENERAL OF TEXAS

September 16, 2024

Ms. Bessie Bronstein
Counsel for the City of Southlake
Taylor Olson Adkins Sralla Elam, L.L.P.
6000 Western Place, Suite 200
Fort Worth, Texas 76107

OR2024-032258

Dear Ms. Bronstein:

You ask whether certain information is subject to required public disclosure under the Public Information Act (the "Act"), chapter 552 of the Government Code. Your request was assigned ID# 24-028229.

The City of Southlake (the "city"), which you represent, received a request for information pertaining to a specified investigation. The city claims the submitted information is excepted from disclosure under section 552.108 of the Government Code. We have considered the claimed exception and reviewed the submitted information.

Section 552.108(b)(1) of the Government Code excepts from disclosure "[a]n internal record or notation of a law enforcement agency or prosecutor that is maintained for internal use in matters relating to law enforcement or prosecution . . . if (1) release of the internal record or notation would interfere with law enforcement or prosecution[.]" Gov't Code § 552.108(b)(1). This section is intended to protect "information which, if released, would permit private citizens to anticipate weaknesses in a police department, avoid detection, jeopardize officer safety, and generally undermine police efforts to effectuate the laws of this State." *City of Fort Worth v. Cornyn*, 86 S.W.3d 320, 327 (Tex. App.—Austin 2002, no pet.). This office has concluded this provision protects certain kinds of information, the disclosure of which might compromise the security or operations of a law enforcement agency. *See, e.g.*, Open Records Decision Nos. 531 at 3-4 (1989) (detailed guidelines regarding police department's use of force policy), 508 at 3-4 (1988) (information relating to future transfers of prisoners), 413 (1984) (sketch showing security measures for forthcoming execution). However, to claim this aspect of section 552.108 protection a governmental body must meet its burden of explaining how and why release of the information at issue would interfere with law enforcement and crime prevention. Open Records Decision No. 562 at 10 (1990). Further, commonly known policies and techniques

Ms. Bessie Bronstein - Page 2

may not be withheld under section 552.108. *See, e.g.*, Open Records Decision Nos. 531 at 2-3 (former section 552.108 does not protect Penal Code provisions, common-law rules, and constitutional limitations on use of force), 252 at 3 (1980) (governmental body did not meet burden because it did not indicate why investigative procedures and techniques submitted were any different from those commonly known with law enforcement and crime prevention). To prevail on its claim that section 552.108(b)(1) excepts information from disclosure, a law-enforcement agency must do more than merely make a conclusory assertion that releasing the information would interfere with law enforcement. The determination of whether the release of particular records would interfere with law enforcement is made on a case-by-case basis. Open Records Decision No. 409 at 2 (1984). Upon review, we conclude the city has not established section 552.108(b)(1) is applicable to the submitted information. Therefore, the city may not withhold any of the submitted information on that ground. Accordingly, the city must release the submitted information.

This letter ruling is limited to the particular information at issue in this request and limited to the facts as presented to us; therefore, this ruling must not be relied upon as a previous determination regarding any other information or any other circumstances.

This ruling triggers important deadlines regarding the rights and responsibilities of the governmental body and of the requestor. For more information concerning those rights and responsibilities, please visit our website at https://www.texasattorneygeneral.gov/open-government/members-public/what-expect-after-ruling-issued or call the OAG's Open Government Hotline, toll free, at (877) 673-6839. Questions concerning the allowable charges for providing public information under the Public Information Act may be directed to the Cost Rules Administrator of the OAG, toll free, at (888) 672-6787.

Sincerely,

James Coggeshall
Assistant Attorney General
Open Records Division

JLC/pt

Ref:    ID# 24-028229

c:      Requestor

**629**

Exhibit 15

Response to Grapevine PD TPIA Request #2, September 19, 2024

| From: | Josie London |
|---|---|
| To: | E. Ladsous . Delta 7 Group |
| Subject: | RE: Texas Public Information Request for Forensic Analysis Records of Tyler Skaggs' iPhone (Item 7) - Southlake PD Case #19SPD53735 - July 2019. |
| Date: | Thursday, September 19, 2024 6:07:40 AM |
| Attachments: | image005.png |
| | image006.png |
| | image007.png |
| | 1900038391.pdf |

Good morning,

After a thorough search of our records, we are unable to locate any documents as you have described. I located one report from the time frame specified that is related to our assisting Southlake Police Department with technology, but it does not identify the Southlake case number or the serialized identifiers for the items involved. Attached is a copy of that report, #1900038391. I cannot confirm that this is the case in question, but I have no other cases of any kind that match the criteria you provided.

We have provided you with all material in the possession of the Grapevine Police Department that is responsive to your request. The involvement of the Grapevine Police Department in this matter was limited to technical assistance to the Southlake Police Department. There is nothing further to provide you and this Public Information Act request is closed.

Thank you,

Josie

*Josie London*

**Records Coordinator**
**Grapevine Police Department**
1007 Ira E. Woods Ave.
Grapevine, TX  76051
817-410-3218 office
817-410-3312 fax
jlondon@grapevinetexas.gov
records@grapevinetexas.gov



**From:** E. Ladsous . Delta 7 Group <e.ladsous@delta7group.com>
**Sent:** Wednesday, September 11, 2024 12:29 PM
**To:** RECORDS <RECORDS@grapevinetexas.gov>
**Cc:** Lindsey S. Susolik <lsusolik@tocounsel.com>
**Subject:** Texas Public Information Request for Forensic Analysis Records of Tyler Skaggs' iPhone (Item 7) - Southlake PD Case #19SPD53735 - July 2019.
**Importance:** High

**631**

# *GRAPEVINE POLICE DEPARTMENT*

Page  1

**Call For Service Report**

## Call For Service

| | | | | | |
|---|---|---|---|---|---|
| Cad Number | 1900048968 | Date / Time Call Received | 07/17/19 11:42:19 | Call Received by | SMITH, T #9524 |
| | | Call Entered by | SMITH, T #9524 | Call Source | Field generated call |
| Call Type | ASSIST OTHER AGENCY | Location Name | | Location Type | |
| Location(St#, St,Int. St,Apt,City,Zip, | 600 | State St | | | SOUTHLAKE |

## Reportee

Reportee (First,Middle,Last)

Reportee Street Number                                                          Phone

## Units

| | | | | | |
|---|---|---|---|---|---|
| Unit Number 522 | Officer Name WEBER, R #5250 | Dispatched by SMITH, T #9524 | D/T Dispatched 07/17/19 11:42:36 | | |
| Enroute by SMITH, T #9524 | D/T Enroute 07/17/19 11:42:36 | Arrived by SMITH, T #9524 | D/T Arrived 07/17/19 11:42:36 | | |
| Cleared by SMITH, T #9524 | D/T Cleared 07/17/19 11:42:56 | Disposition 1 R REPORT | Disposition 2 | | |
| Disposition 3 | | | | | |

## Police

| | | | | |
|---|---|---|---|---|
| Unit Number 522 | Police Number 1900038391 | D/T Arrested | Prisoner Transport | |
| End Transport | Mileage In | Mileage Out | | |

## Occupant/Suspect

| | | | | |
|---|---|---|---|---|
| ID | Type | Occupant Name | D.O.B. | |
| Race | Sex | Age | Weight | Height ` " | Hair Color |
| Skin Tone | | Clothing | | |

## Vehicle

| | | | |
|---|---|---|---|
| LICENSE | MODEL | STATUS | Wrecker Company |
| STATE | YEAR | VEHICLE TYPE | DT Wrecker Arrived |
| Lic. Exp. Date | MAKE | BODY STYLE | DT Wrecker Called |
| VIN | COLOR | VALUE | UNIT # |

## Call Remarks

**632**

## Grapevine Police Department
*1007 Ira E Woods Ave, Grapevine, TX 76051*

| | | |
|---|---|---|
| **ORI:** TX2201300 | **Incident No:** 1900038391 | **Date:** 09/12/2024 |

**Incident**

| | | |
|---|---|---|
| **CAD NO.** | **Other No.**<br>N/A | **Date Occurred:**<br>2019-07-17 11:42 |
| **Incident Type:**<br>Non-Criminal | **Incident Status:**<br>Open | **Report Type:**<br>Information Only-No Criminal Offense |
| **Report By:**<br>WEBER, R #5250 (#) | **Report Date:**<br>09/10/2019 | |
| **Approved By:**<br>YARBROUGH, D #6952 (#) | **Approved Date:**<br>09/10/2019 | |
| **Audited by:**<br>SMITH,H#12543 | **Audited Date:**<br>09/11/2019 | |
| **Clear Date:** | **Exc Clear:** | **Family Violence:**<br>No |
| **Investigator:**<br>WEBER, R #5250 | **Inv Status:**<br>Closed | |
| **Description:**<br>ASSIST OTHER AGENCY | | |

**Incident OFFENSE Report**

| | |
|---|---|
| **Offense No: 1** | **Offense Recording Date:** 09/11/2019 |

| | | | |
|---|---|---|---|
| **Offense Begin Date:**<br>07/17/2019 | **Offense End Date:** | **Entry Method:** | **Attempt/Complete:**<br>Completed |
| **Drug Seized:** | **Gang Related:** | **Hi-Speed Pursuit:** | **Weapons Used:**<br>N/A |
| **Offense Code:** | **Offense:**<br>ASSIST OTHER AGENCY | | **No. of Premises:** |
| **Bias Motivation:** | **Agg Assit/Homic. Circumst.:** | | **Supplement:** |
| **Offense Address:** | | | |
| **Remarks:** | | | |

**Other Involved Organization(s)**

| **Name:** | **Phone:** | **Address:** |
|---|---|---|
| Southlake Police Department | **Work Phone:** (817) 748-8149 | **Mailing:** |

**Incident PROPERTY Report**

*Grapevine Police Department*
*1007 Ira E Woods Ave, Grapevine, TX 76051*

| | | | |
|---|---|---|---|
| **Item Name:** IPHONE DOWNLOAD | | | |
| **Recorded:** 09/10/2019 | | **Status:** Evidence | |
| **Jurisdiction:** Yes | | **Item Type:** Other | |
| **Make/Brand:** | | **Model:** | |
| **Size/Year:** | | **Color:** | |
| **Serial No/VIN:** | | **Structure:** | |
| **Pieces/Quantity:** | | **Units:** | |
| **Total Value:** | | **Supplement:** Primary | |
| **Involved:** | | | |
| **Description:** ON FORENSIC SERVER | | | |

| | | | |
|---|---|---|---|
| **Item Name:** IPAD DOWNLOAD | | | |
| **Recorded:** 09/10/2019 | | **Status:** Evidence | |
| **Jurisdiction:** Yes | | **Item Type:** Other | |
| **Make/Brand:** | | **Model:** | |
| **Size/Year:** | | **Color:** | |
| **Serial No/VIN:** | | **Structure:** | |
| **Pieces/Quantity:** | | **Units:** | |
| **Total Value:** | | **Supplement:** Primary | |
| **Involved:** | | | |
| **Description:** ON FORENSIC SERVER | | | |

**634**

# Grapevine Police Department
## Narrative

Date of report: 2019-09-10                              Case Number: 1900038391

**WEDNESDAY JULY 17, 2019 APPROXIMATELY 1100 HOURS**

I took possession of an Apple iPhone and an Apple iPad from Det. Green of the Southlake Police Department. The devices were in airplane mode and the passcode was 082222. The downloads were performed with the consent of the owner.

Using the Cellebrite UFED Physical Analyzer I did two Advanced Logical downloads of the iPhone, Method 1 and Method2. The downloads completed successfully and after parsing the data, I generated a UFED Reader report for Det. Green to review.

**THURSDAY JULY 18, 2019**

Using the Cellebrite UFED Physical Analyzer I did two Advanced Logical extractions of the iPad, Method 1 and Method 2. The downloads completed successfully and after parsing the data, I generated a UFED Reader report for Det. Green to review.

**MONDAY JULY 22, 2019**

The iPhone and iPad were returned to Det. Green

Officer: WEBER, R                                          ID#: 5250
Approving Supervisor: YARBROUGH, D                         ID#: 6952

# Grapevine Police Department
## Supplement

Date of report: 2019-09-10                    Case Number: 1900038391-1

MONDAY APRIL 5, 2021

Moved the electronic evidence associated with this investigation from the Grapevine Server to the Southlake Server.

Officer: WEBER, R                                        ID#: 5250
Approving Supervisor: SAVAGE, R                          ID#: 6820

**636**

Exhibit 16

Southlake PD TPIA Request #6 – Clarifications –
September 24, 2024 – 8:34 AM

**From:** E. Ladsous . Delta 7 Group
**Sent:** Tuesday, September 24, 2024 8:34 AM
**To:** Bessie Bronstein <bbronstein@toase.com>
**Subject:** Clarification on September 11, 2024, TPIA request titled: "Texas Public Information Request for Documents and Media Provided by Grapevine Police Department Regarding Forensic Analysis of Tyler Skaggs' iPhone (Item 7)
**Importance:** High

Good morning, Bessie,

I hope this email finds you well. I'm writing to clarify my **September 11, 2024**, request titled: "**Texas Public Information Request for Documents and Media Provided by Grapevine Police Department Regarding Forensic Analysis of Tyler Skaggs' iPhone (Item 7).**"

As you know, the **Skaggs family is currently suing the Los Angeles Angels**, and the primary evidence in this upcoming trial revolves around **Tyler Skaggs' phone information**. To ensure a **fair trial**, we must locate and understand the full scope of the evidence related to **Tyler Skaggs' iPhone (Item 7)**. As an attorney, I'm sure you know evidence's critical role in both civil and criminal trials.

**Background on the Evidence:**

Based on documentation from the Southlake PD, we know that **17 items** were seized at the crime scene. I appreciate the City's cooperation in providing the **Item History log** and **Transfer Receipts** for these items.

| Case/IR | Barcode | Inventory Time | Description | Category Code | Location Code | Pkg Weight |
|---|---|---|---|---|---|---|
| 19SP053735 | 00017405 | 12/4/2019 11:14:04 AM | ROOM KEY WITH WHITE POWDER RESIDUE | KEYS | 19M-01 | |
| 19SP053735 | 00017406 | 12/4/2019 11:14:01 AM | ROOM KEY CARD | KEYS | 19M-01 | |
| 19SP053735 | 00017407 | 12/3/2019 10:25:40 AM | UNKNOWN WHITE POWDER | NA- DRUGS | DRUGS BOX 2 | 0 |
| 19SP053735 | 00017408 | 12/3/2019 10:25:35 AM | INDOCIN | NA- DRUGS | DRUGS BOX 2 | 6.7 |
| 19SP053735 | 00017409 | 12/3/2019 10:25:14 AM | WHITE SUBSTANCE FROM FLOOR COLLECTED BY TAPE | NA- DRUGS | DRUGS BOX 2 | 0 |
| 19SP053735 | 00017410 | | APPLE IPAD SN:DLXV6QJDHPJ6 | ELECTRONICS | OTHER AGENCY CASE | |
| 19SP053735 | 00017411 | | BLACK APPLE IPHONE | PHONE | OTHER AGENCY CASE | |
| 19SP053735 | 00017412 | | PLASTIC PEN TUBE | MISC. ITEM | 19M-01 | |
| 19SP053735 | 00017413 | 12/3/2019 10:24:57 AM | BLUE PILL "M/30" | NA- DRUGS | OTHER AGENCY | 0 |
| 19SP053735 | 00017414 | 12/3/2019 10:25:01 AM | 5 PINK PILLS "K/56" | NA- DRUGS | OTHER AGENCY | 0 |
| 19SP053735 | 00017415 | | WALLET, RING, PASSPORT, ID, CASH, EARBUDS | MISC. ITEM | RETURNED | |
| 19SP053735 | 00017416 | | BLACK COWBOY HAT AND BUTTON SHIRT | CLOTHING | RETURNED | |
| 19SP053735 | 00017417 | | BACKPACK WITH PERSONAL BELONGINGS | MISC. ITEM | RETURNED | |
| 19SP053735 | 00017418 | | NORMATEC MACHINE | MISC. ITEM | RETURNED | |
| 19SP053735 | 00017419 | 12/4/2019 11:07:56 AM | BED SHEETS WITH BLOOD | MISC. ITEM | BULK DEATH | |
| 19SP053735 | 00017420 | 12/4/2019 11:08:01 AM | BEDDING WITH BLOOD | MISC. ITEM | BULK DEATH | |
| 19SP053735 | 00017421 | 12/4/2019 11:13:59 AM | OPEN BAG OF GUMMY BEARS | MISC. ITEM | 19M-01 | |

Total Records: 17
Report Filter: Case/IR ( Contains ) 53735

**Skaggs' iPhone (Item 7):**

**638**



**Southlake Police Department**
**Item History**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Barcode: | 00017411 | | Item No: | 007 | | | | |
| Description: | BLACK APPLE IPHONE | | | | | | | |

| Date & Time | User | Assignee | Field | Old Value | New Value | Action | Location | Remarks | Signature |
|---|---|---|---|---|---|---|---|---|---|
| 9/9/2019 4:38 PM | sspencer | | Location | OTHER AGENCY | OTHER AGENCY CASE | Field Updated | OTHER AGENCY CASE | | |
| 9/3/2019 2:08 PM | sspencer | Spencer, Senora | | | | Transfer | | OTHER AGENCY | RELEASED TO THE DEA BY CPL. GREEN 9/3/19 |
| 9/3/2019 2:08 PM | sspencer | | Location | 19M-01 | OTHER AGENCY | Field Updated | OTHER AGENCY | | |
| 7/24/2019 9:59 AM | sspencer | Spencer, Senora | | | | Transfer | 19M-01 | | |
| 7/24/2019 9:59 AM | sspencer | | Location | OTHER AGENCY | 19M-01 | Field Updated | 19M-01 | | |
| 7/18/2019 11:16 AM | sspencer | | Location | BULK DEATH | OTHER AGENCY | Field Updated | OTHER AGENCY | | |
| 7/2/2019 9:53 AM | sspencer | Spencer, Senora | | | | Transfer | BULK DEATH | | |
| 7/2/2019 9:53 AM | sspencer | | Location | In-Transit | BULK DEATH | Field Updated | BULK DEATH | | |
| 7/2/2019 9:52 AM | sspencer | Spencer, Senora | | 005% | In-Transit | Approved | In-Transit | Item Approved From OIM |
| 7/2/2019 9:51 AM | sspencer | ROBERSON, T | | | 005% | Submitted | In-Transit | Item Submitted From OIM |

From my review, the chain of custody for Skaggs' iPhone (Item 7) is relatively clear:

- **July 1, 2019**: Det. Roberson seized Skaggs' iPhone at the crime scene.
- **July 2, 2019**: The iPhone was booked into the Southlake PD.
- **July 17, 2019**: The iPhone was transferred to the Grapevine PD for forensic analysis.
- **July 17-22, 2019**: Corporal Green performed a **Cellebrite logical extraction** (Extraction 1) at the Grapevine PD.
- **July 23, 2019**: Corporal Green took photos of Skaggs' iPhone.
- **July 24, 2019**: The phone was returned to the Southlake PD.
- **September 3, 2019**: The iPhone was transferred to the DEA.
- **September 9, 2019**: The DEA submitted the iPhone to the US Secret Service for a **file system extraction** (Extraction 2). The results of this extraction were used in the federal trial, where Eric Kay was convicted. Corporal Green's photos from July 23, 2019, were also introduced as **Government Exhibit 6**.

# Southlake Police Department
## Supplement

Date of report: 2019-08-06          Case Number: 19SP053735-4

cellphone and iPad were kept as evidence and consent was asked for from the family to search for any related information/evidence. It was explained that we would be looking for any incoming/outgoing phone calls before and after T. Skaggs' passing. During the time of our meeting, the family opted to withhold the passcode to the electronics until they consulted with an attorney. However, at 1616 hours, I received a text from Ms. Miles, stating they would release the passcode to T. Skaggs' electronics for further analysis. The electronics were taken to the Grapevine PD Forensic Lab on July 17th, 2019; the analysis was completed and the electronics were received back on July 22nd, 2019. However, due the electronic analysis only completing a logical dump, I returned to Grapevine PD Forensic Lab on July 23rd, 2019 to take physical photographs of evidentiary texts/phone calls, etc. All electronic information has been added to the Virtual Evidence Locker for reference.

**639**

| NO. | DESCRIPTION | ADMITTED | VOL |
|-----|-------------|----------|-----|
| | MASTER GOVERNMENT'S EXHIBIT INDEX | | |
| 01 | T.S. Phone (physical exhibit) | 196 | 5 |
| 2 | T.S. phone extraction | 071 | 6 |
| 2B | T.S. phone extraction report | 071 (Record only) | 6 |
| 2B | T.S. Phone Extraction Report | 005 | 11 |
| 2C | T.S. phone report of forensic exam | 071 (Record only) | 6 |
| 2C | T.S. Phone Report of Forensic Exam | 005 | 11 |
| 2D | Access instructions for Govt. Exh. 2B | 072 | 6 |
| 2D | Access instructions for Govt. Exh. 2B | 005 | 11 |
| 3 | T.S. contact list | 086 | 6 |
| 4 | T.S. phone timeline 6/30/19-7/1/19 | 086 | 6 |
| 5 | T.S. text messages 6/30/19-7/1/19 | 101 | 6 |
| 6 | Photos of T.S.'s phone 6/30/19-7/1/19 | 032 | 6 |

The red parenthesis identifies the type of evidence created during a forensic examination.

**Concerns:**

While the City has provided information about the property seized and transferred, **it has not provided any information regarding the evidence and derivative evidence** from **Corporal Green's forensic extraction (Extraction 1) and analysis** of Skaggs' iPhone (Item 7). Specifically:

- **What happened to Extraction 1** (the logical dump) and its associated derivative evidence?
- **What happened to the Cellebrite Phone Extraction Report?**
- **Where is it? Evidence Number? Chain of custody?** And so on.
- Was it transferred to the DEA? If so, which items, when, and by whom?
- Is Extraction 1 and any other derivative evidence stored in the **Virtual Evidence Locker**, as noted in **Corporal Green's August 6, 2019** report?

It is clear from **Government Exhibit 6** that some derivative evidence from **Corporal Green's extraction** was used in court. Therefore, there must be corresponding **evidence numbers**, **Item History logs**, and **Chain of Custody forms** for this material. A **fair trial** cannot proceed without knowing the full extent of what evidence was created and transferred from the Southlake PD to the DEA.

**Request for Clarification:**

While I understand that the DEA performed its own forensic analysis (Extraction 2), which **superseded the earlier analysis**, it remains essential to account for **Extraction 1** and any related evidence. My request is straightforward:

1. **What evidence was created** by Corporal Green's extraction at the Grapevine PD?
2. **What was transferred to the DEA**, and what remained with the Southlake PD?
3. What is stored in the **Virtual Evidence Locker**, and does it contain the complete **logical extraction** and associated data?

This information is crucial to understanding the evidence used in the federal trial and ensuring a thorough accounting for

**640**

the upcoming civil trial. I want to reiterate that this case has been adjudicated, and the appeal has been denied. As such, my request does not involve an ongoing investigation, but it is necessary to clarify the records related to what evidence was collected, created, and transferred.

It is conceivable that my analysis of the chain of events may be inaccurate; if so, please correct me. My understanding is based on the bits and pieces of information I have received thus far, and I am relying on your assistance to fully understand what happened. Without this clarity, justice cannot be served, and a fair trial may be compromised. Your role is crucial in ensuring that all necessary information is available, and I depend on you to help ensure justice is done.

I appreciate your assistance and look forward to your prompt response.

Sincerely,

Emmanuel

_____

**Emmanuel Ladsous**
President / Private Investigator
**Delta 7 Group, LLC**
A Professional Security Consultancy
4712 E 2nd Street, Suite 231
Long Beach, CA 90803-5309
Phone:  (800) 689-6546, Ext. 700
Mobile: (949) 423-4350
Email address:  E.Ladsous@Delta7Group.com
Website:       www.Delta7Group.com
CA PI License#   188424






This email is unsecured and subject to monitoring.

CONFIDENTIALITY NOTICE:  This communication and any documents, files, or previous email messages attached constitute an electronic communication within the scope of the Electronic Communication Privacy Act, 18 US Code § 2510. This communication may contain non-public, confidential, or legally privileged information intended for the designated recipient(s) sole use. The unlawful interception, use, or disclosure of such information is strictly prohibited under 18 US Code § 2511 and applicable laws. If you are not the intended recipient or have received this communication in error, please notify the sender immediately by email to E.Ladsous@Delta7Group.com and delete all copies of this communication, including attachments, without reading or saving them in any matter.

Exhibit 17

Southlake PD TPIA Request #7
September 24, 2024 – 10:41 AM

| From: | E. Ladsous . Delta 7 Group |
|---|---|
| To: | dpsrecords@ci.southlake.tx.us |
| Cc: | Jessica Hernandez Diotalevi; Lindsey S. Susolik |
| Bcc: | Stephen Ladsous |
| Subject: | UPDATED REQUEST: Texas Public Information Request for Documents and Media Provided by Grapevine Police Department Regarding Forensic Analysis of Tyler Skaggs' iPhone (Item 7) |
| Date: | Tuesday, September 24, 2024 10:41:00 AM |
| Attachments: | image001.png |
| | image002.png |
| | image003.png |

**Date:** September 24, 2024

**Public Information Officer**

Southlake Police Department

1560 E Southlake Blvd

Southlake, TX 76092

**Subject: Updated Texas Public Information Request Regarding Corporal Delaney Green's Handling and Forensic Examination of Tyler Skaggs' iPhone (Item 7)**

Dear Public Information Officer,

I am submitting this updated request under the **Texas Public Information Act (TPIA)**—Chapter 552 of the Texas Government Code, superseding my previous request submitted on **September 11, 2024**. Based on newly acquired information, this updated request seeks further clarity regarding Corporal Delaney Green's **forensic handling and analysis of Tyler Skaggs' iPhone** (Item 7).

**Context:**

Reviewing trial transcripts and additional documents, I learned that **Corporal Delaney Green** of the **Southlake PD** performed a **Cellebrite logical extraction** on Tyler Skaggs' iPhone (Item 7) between **July 17 and July 22, 2019**. **Corporal Green also took photographs of the phone on July 23, 2019,** at the **Grapevine PD**, where the phone was under the custody of **Detective Weber** of the Grapevine PD.

I understand that previous requests may have provided some records and media. Still, this updated request seeks a more comprehensive set of documents, logs, and media directly pertaining to **Corporal Green's <u>forensic activities</u>**.

**Specific Requests:**

1. **All documents, records, and media related to the Cellebrite logical extraction (Extraction 1) and analysis performed by Corporal Delaney Green** or any other individual under the control of the **Southlake PD** or **Grapevine PD** during the forensic handling of Tyler Skaggs' iPhone (Item 7), including but not limited to the following:

**643**

    a. The **Cellebrite extraction file (image file)** created during the initial forensic examination.

    b. The **Cellebrite extraction report** and any supporting documentation generated during the forensic examination, including logs, metadata, and any associated forensic files.

    c. **Corporal Green's notes and reports** related to the forensic work she performed on Tyler Skaggs' iPhone, including documentation of any steps taken during the extraction and analysis process.

    d. **Chain of custody records**, **Southlake PD Item History reports**, and **Transfer Receipts** specifically related to the forensic evidence generated during the Cellebrite extraction (Extraction 1) while under the control of **Corporal Green**, the **Southlake PD**, or the **Grapevine PD**, including documentation of any transfers of forensic evidence or derivative evidence to the **DEA**. This includes logs recording the phone's transfer to and from the **Grapevine PD** and any subsequent transfers of forensic materials to the **DEA**.

    e. Any **evidence number(s)** or reference to **Extraction 1** in the **Southlake PD's Virtual Evidence Locker**, as referenced in **Corporal Green's report** dated **August 6, 2019**.

2. **All derivative evidence created as a result of Corporal Green's forensic examination**, including but not limited to:

    a. **All photographs** of Skaggs' iPhone taken by **Corporal Green** on **July 23, 2019**, along with any corresponding logs, chain of custody forms, or evidence numbers tied to this derivative evidence.

    b. Any **media** used to store forensic results from Extraction 1, such as USB drives, DVDs, or external hard drives, and their corresponding **chain of custody records, Item History reports, and Transfer Receipts**.

3. **All transfer records** between the **Southlake PD** and the **DEA** detailing which forensic evidence or derivative evidence related to the forensic analysis of Skaggs' iPhone was transferred to the DEA

4. **Clarification on the existence or non-existence of the Cellebrite extraction files (Extraction 1) and any additional records or media** related to Corporal Green's forensic analysis that have not yet been disclosed.

**Request for Clarification:**

I respectfully request a formal written explanation if any of the requested records **do not exist or are unavailable**. Additionally, if any part of this request is denied, please clearly **identify the specific item being withheld** (e.g., 1a, 2a, and so on) and provide the statutory exemption under **Chapter 552 of the Texas Government Code** that justifies the denial.

**Legal Basis:**

**644**

Given that the case involving Tyler Skaggs has been adjudicated and the appeal denied, there is **no legal basis under Section 552.108** of the Texas Government Code to withhold the requested records. This information is critical for **ensuring transparency and fairness** in the ongoing civil litigation related to this case.

**Request for Current OAG Review and Evaluation of Exemptions:**

If appropriate, I respectfully request that the City Attorney refrain from relying on any old OAG rulings to justify a denial of this request. Instead, I ask that this TPIA request be submitted to the OAG for their current review to ensure that any exemptions or withholdings are properly evaluated based on the specific details of this case.

Additionally, some of the derivative evidence from **Corporal Green's forensic analysis of Tyler Skaggs' phone** was admitted as evidence during the **Eric Kay trial (Government Exhibit 6)**. This strongly implies an **evidence transfer** between the **Southlake PD** and the **DEA**. Therefore, understanding the full scope of the evidence, including what was transferred and admitted in the trial, is critical.

Thank you for your time and attention to this matter. If further clarification is required, please do not hesitate to contact me.

I look forward to receiving your response within the statutory timeframe.

Sincerely,

Emmanuel

_____

**Emmanuel Ladsous**
President / Private Investigator
**Delta 7 Group, LLC**
A Professional Security Consultancy
4712 E 2nd Street, Suite 231
Long Beach, CA 90803-5309
Phone:   (800) 689-6546, Ext. 700
Mobile: (949) 423-4350
Email address: E.Ladsous@Delta7Group.com
Website:        www.Delta7Group.com
CA PI License#     188424






**This email is unsecured and subject to monitoring.**

CONFIDENTIALITY NOTICE:  This communication and any documents, files, or previous email messages attached constitute an electronic communication within the scope of the Electronic Communication Privacy Act, 18 U.S. Code § 2510. This communication may contain non-public, confidential, or legally privileged information intended for the designated recipient(s) sole use. The unlawful interception, use, or disclosure of such information is strictly prohibited under 18 U.S. Code § 2511 and applicable laws. If you are not the intended recipient or have received this communication in error, please notify the sender immediately by email to E.Ladsous@Delta7Group.com and delete all copies of this communication, including attachments, without reading or saving them in any matter.

Exhibit 18

Sarah Blums's email regarding Southlake PD TPIA
Request #7  – September 24, 2024 – 11:47 AM

| | |
|---|---|
| **From:** | Sarah Blum |
| **To:** | E. Ladsous . Delta 7 Group |
| **Subject:** | RE: UPDATED REQUEST: Texas Public Information Request for Documents and Media Provided by Grapevine Police Department Regarding Forensic Analysis of Tyler Skaggs' iPhone (Item 7) |
| **Date:** | Tuesday, September 24, 2024 11:47:47 AM |
| **Attachments:** | image001.png |
| | image002.png |
| | image003.png |

Mr. Ladsous,

You're welcome. I do not have any information on what was extracted since it was transferred to the DEA before I even had a copy in my office. The phone and IPad were sent to the DEA.

Your persistent requests had me checking and double checking what we had on file, my evidence technician will be pleased to stop looking at this case.

Thank you.

Sarah Blum
Southlake Police Department
Police Records Manager
600 State Street
Southlake, Texas 76092
Phone: 817-748-8393
Fax: 817-748-8375
Dept. email: dpsrecords@ci.southlake.tx.us

"The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, re-transmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and delete the material from all computers"

**From:** E. Ladsous . Delta 7 Group <e.ladsous@delta7group.com>
**Sent:** Tuesday, September 24, 2024 1:29 PM
**To:** Sarah Blum <sblum@ci.southlake.tx.us>
**Subject:** RE: UPDATED REQUEST: Texas Public Information Request for Documents and Media Provided by Grapevine Police Department Regarding Forensic Analysis of Tyler Skaggs' iPhone (Item 7)

Dear Ms. Blum,

Thank you for your response. Again, I apologize for troubling you with this request; I am specifically trying to determine what cellphone forensics evidence related to Tyler Skaggs' phone was provided to the DEA.

This information is critical as I must request it directly from the DEA, and **they will only provide the exact items specified in the FOIA request**. I cannot be sure I'm requesting the complete set of relevant materials from the DEA without a clear understanding of what cellphone forensic evidence was transferred.

**If only the phone was transferred to the DEA, I will simply request their Cellebrite report**, as the Secret Service conducted a new forensic analysis that superseded Green's work, which is standard practice in federal investigations. It is not a problem.

Your response will be instrumental in guiding me in my next steps, and I assure you that I will no longer waste your time.

Thank you for your continued assistance, and I apologize for the continued requests.

Sincerely,

Emmanuel

---

**Emmanuel Ladsous**
President / Private Investigator
**Delta 7 Group, LLC**
A Professional Security Consultancy
4712 E 2nd Street, Suite 231
Long Beach, CA 90803-5309
Phone:  (800) 689-6546, Ext. 700
Mobile:  (949) 423-4350
Email address:  E.Ladsous@Delta7Group.com
Website:        www.Delta7Group.com
CA PI License#    188424



**649**

 

**This email is unsecured and subject to monitoring.**

CONFIDENTIALITY NOTICE:  This communication and any documents, files, or previous email messages attached constitute an electronic communication within the scope of the Electronic Communication Privacy Act, 18 U.S. Code § 2510. This communication may contain non-public, confidential, or legally privileged information intended for the designated recipient(s) sole use. The unlawful interception, use, or disclosure of such information is strictly prohibited under 18 U.S. Code § 2511 and applicable laws. If you are not the intended recipient or have received this communication in error, please notify the sender immediately by email to E.Ladsous@Delta7Group.com and delete all copies of this communication, including attachments, without reading or saving them in any matter.

---

**From:** Sarah Blum <sblum@ci.southlake.tx.us>
**Sent:** Tuesday, September 24, 2024 10:48 AM
**To:** E. Ladsous . Delta 7 Group <e.ladsous@delta7group.com>; DPSRecords <dpsrecords@ci.southlake.tx.us>
**Cc:** Jessica Hernandez Diotalevi <jdiotalevi@tocounsel.com>; Lindsey S. Susolik <lsusolik@tocounsel.com>
**Subject:** RE: UPDATED REQUEST: Texas Public Information Request for Documents and Media Provided by Grapevine Police Department Regarding Forensic Analysis of Tyler Skaggs' iPhone (Item 7)

Hello Mr. Ladsous,

All the data and the entire case file was forwarded to the DEA for their criminal case. We no longer have any records of the cellphone data extraction.  I will forward your request to our city attorneys again.

Thank you.

Sarah Blum
Southlake Police Department
Police Records Manager
600 State Street
Southlake, Texas 76092
Phone: 817-748-8393

Fax: 817-748-8375

Dept. email: dpsrecords@ci.southlake.tx.us

"The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, re-transmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and delete the material from all computers"

**From:** E. Ladsous . Delta 7 Group <e.ladsous@delta7group.com>
**Sent:** Tuesday, September 24, 2024 12:42 PM
**To:** DPSRecords <dpsrecords@ci.southlake.tx.us>
**Cc:** Jessica Hernandez Diotalevi <jdiotalevi@tocounsel.com>; Lindsey S. Susolik <lsusolik@tocounsel.com>
**Subject:** UPDATED REQUEST: Texas Public Information Request for Documents and Media Provided by Grapevine Police Department Regarding Forensic Analysis of Tyler Skaggs' iPhone (Item 7)

**Date:** September 24, 2024

**Public Information Officer**
Southlake Police Department
1560 E Southlake Blvd
Southlake, TX 76092

**Subject: Updated Texas Public Information Request Regarding Corporal Delaney Green's Handling and Forensic Examination of Tyler Skaggs' iPhone (Item 7)**

Dear Public Information Officer,

I am submitting this updated request under the **Texas Public Information Act (TPIA)**—Chapter 552 of the Texas Government Code, superseding my previous request submitted on **September 11, 2024**. Based on newly acquired information, this updated request seeks further clarity regarding Corporal Delaney Green's **forensic handling and analysis of Tyler Skaggs' iPhone** (Item 7).

**Context:**

Reviewing trial transcripts and additional documents, I learned that **Corporal Delaney Green** of the **Southlake PD** performed a **Cellebrite logical extraction** on Tyler Skaggs' iPhone (Item 7) between **July 17 and July 22, 2019**. **Corporal Green also took photographs of the phone**

**651**

**on July 23, 2019,** at the **Grapevine PD**, where the phone was under the custody of **Detective Weber** of the Grapevine PD.

I understand that previous requests may have provided some records and media. Still, this updated request seeks a more comprehensive set of documents, logs, and media directly pertaining to **Corporal Green's <u>forensic activities</u>**.

**Specific Requests:**

1. **All documents, records, and media related to the Cellebrite logical extraction (Extraction 1) and analysis performed by Corporal Delaney Green** or any other individual under the control of the **Southlake PD** or **Grapevine PD** during the forensic handling of Tyler Skaggs' iPhone (Item 7), including but not limited to the following:

   a. The **Cellebrite extraction file (image file)** created during the initial forensic examination.
   b. The **Cellebrite extraction report** and any supporting documentation generated during the forensic examination, including logs, metadata, and any associated forensic files.
   c. **Corporal Green's notes and reports** related to the forensic work she performed on Tyler Skaggs' iPhone, including documentation of any steps taken during the extraction and analysis process.
   d. **Chain of custody records**, **Southlake PD Item History reports**, and **Transfer Receipts** specifically related to the forensic evidence generated during the Cellebrite extraction (Extraction 1) while under the control of **Corporal Green**, the **Southlake PD**, or the **Grapevine PD**, including documentation of any transfers of forensic evidence or derivative evidence to the **DEA**. This includes logs recording the phone's transfer to and from the **Grapevine PD** and any subsequent transfers of forensic materials to the **DEA**.
   e. Any **evidence number(s)** or reference to **Extraction 1** in the **Southlake PD's Virtual Evidence Locker**, as referenced in **Corporal Green's report** dated **August 6, 2019**.

2. **All derivative evidence created as a result of Corporal Green's forensic examination**, including but not limited to:

   a. **All photographs** of Skaggs' iPhone taken by **Corporal Green** on **July 23, 2019**, along with any corresponding logs, chain of custody forms, or evidence numbers tied to this derivative evidence.
   b. Any **media** used to store forensic results from Extraction 1, such as USB drives, DVDs, or external hard drives, and their corresponding **chain of custody records, Item History reports, and Transfer Receipts**.

3. **All transfer records** between the **Southlake PD** and the **DEA** detailing which forensic

evidence or derivative evidence related to the forensic analysis of Skaggs' iPhone was transferred to the DEA

4. **Clarification on the existence or non-existence of the Cellebrite extraction files (Extraction 1) and any additional records or media** related to Corporal Green's forensic analysis that have not yet been disclosed.

**Request for Clarification:**

I respectfully request a formal written explanation if any of the requested records **do not exist or are unavailable**. Additionally, if any part of this request is denied, please clearly **identify the specific item being withheld** (e.g., 1a, 2a, and so on) and provide the statutory exemption under **Chapter 552 of the Texas Government Code** that justifies the denial.

**Legal Basis:**

Given that the case involving Tyler Skaggs has been adjudicated and the appeal denied, there is **no legal basis under Section 552.108** of the Texas Government Code to withhold the requested records. This information is critical for **ensuring transparency and fairness** in the ongoing civil litigation related to this case.

**Request for Current OAG Review and Evaluation of Exemptions:**

If appropriate, I respectfully request that the City Attorney refrain from relying on any old OAG rulings to justify a denial of this request. Instead, I ask that this TPIA request be submitted to the OAG for their current review to ensure that any exemptions or withholdings are properly evaluated based on the specific details of this case.

Additionally, some of the derivative evidence from **Corporal Green's forensic analysis of Tyler Skaggs' phone** was admitted as evidence during the **Eric Kay trial (Government Exhibit 6)**. This strongly implies an **evidence transfer** between the **Southlake PD** and the **DEA**. Therefore, understanding the full scope of the evidence, including what was transferred and admitted in the trial, is critical.

Thank you for your time and attention to this matter. If further clarification is required, please do not hesitate to contact me.

I look forward to receiving your response within the statutory timeframe.

Sincerely,

Emmanuel

_____

**Emmanuel Ladsous**

**653**

President / Private Investigator

**Delta 7 Group, LLC**

A Professional Security Consultancy

4712 E 2nd Street, Suite 231

Long Beach, CA 90803-5309

Phone:  (800) 689-6546, Ext. 700

Mobile:  (949) 423-4350

Email address:  E.Ladsous@Delta7Group.com

Website:     www.Delta7Group.com

CA PI License#    188424






**This email is unsecured and subject to monitoring.**

CONFIDENTIALITY NOTICE:  This communication and any documents, files, or previous email messages attached constitute an electronic communication within the scope of the Electronic Communication Privacy Act, 18 U.S. Code § 2510. This communication may contain non-public, confidential, or legally privileged information intended for the designated recipient(s) sole use. The unlawful interception, use, or disclosure of such information is strictly prohibited under 18 U.S. Code § 2511 and applicable laws. If you are not the intended recipient or have received this communication in error, please notify the sender immediately by email to E.Ladsous@Delta7Group.com and delete all copies of this communication, including attachments, without reading or saving them in any matter.

Exhibit 19

September 29, 2024, email to the Southlake City
Attorney regarding TPIA Request #6's response

| From: | E. Ladsous , Delta 7 Group |
|-------|---------------------------|
| To: | PIA TOASE |
| Cc: | Bessie Bronstein; Jessica Hernandez Diotalevi; Lindsey S. Susolik |
| Bcc: | sladsous@tocounsel.com |
| Subject: | RE: Public Information Request to the City of Southlake - September 11, 2024 - Clarification of Forensic Evidence Related to Tyler Skaggs" iPhone |
| Date: | Sunday, September 29, 2024 2:46:00 PM |
| Attachments: | image002.png |
| | image003.png |
| | image004.png |

Dear Bessie,

Thank you for your recent response to my Texas Public Information Act request. I acknowledge the receipt of the Transfer Receipts for an Apple iPad, drugs, other items, and the Item History for Tyler Skaggs' iPhone (Item 7). However, your response did not provide any information regarding the existence or status of the forensic evidence related to the Cellebrite extraction performed on Skaggs' iPhone.

Given your response, I am left to conclude the following:

- The Cellebrite extraction file and all supporting reports from the forensic extraction performed by Corporal Green on Skaggs' iPhone **no longer exist**.
- The photos taken by Corporal Green at the Grapevine PD on July 23, 2019 (images 0001 through 0045), which were introduced as Government Exhibit 6 during Eric Kay's federal trial, are either **missing or have been destroyed**.
- The Cellebrite extraction file, the extraction reports, and the derivative evidence generated by Corporal Green during her forensic analysis of Skaggs' phone were **never logged into the Southlake PD evidence management system (confirmed by the Southlake PD)**. Consequently, no official transfer to the DEA was documented or completed.

Additionally, I am seeking clarification: Was there any **unofficial or undocumented transfer** of the Cellebrite extraction file, reports, or other derivative evidence generated during Corporal Green's forensic analysis of Skaggs' phone to the DEA?

While I acknowledge that the US Secret Service conducted a more in-depth forensic analysis on Skaggs' iPhone at a later date, it is critical that all original forensic evidence—including the Cellebrite extraction and derivative evidence from the Southlake PD—be appropriately accounted for.

Please be advised that your response will be presented in a Court of Law in Orange County, California, as part of the upcoming civil trial concerning Tyler Skaggs' death. It is crucial that the City of Southlake clarifies the status of this forensic evidence and provides a complete, transparent accounting of all relevant materials.

**656**

Despite my multiple requests, I have yet to receive a clear, straightforward answer regarding this matter. This continued lack of clarity is deeply concerning, as my request is simple: What evidence was collected, what derivative evidence was created, and what was transferred to the DEA? Specifically, my inquiries focus on Skaggs' phone and the Cellebrite forensic evidence resulting from Corporal Green's handling. Does this derivative evidence still exist, and if so, why has it not been provided or accounted for?

The City's reluctance to fully account for this evidence raises serious concerns about transparency and the proper handling of such critical forensic evidence. I urge you to address this matter without further delay.

I look forward to your prompt clarification and response.

Sincerely,

Emmanuel

_____

**Emmanuel Ladsous**
President / Private Investigator
**Delta 7 Group, LLC**
A Professional Security Consultancy
4712 E 2nd Street, Suite 231
Long Beach, CA 90803-5309
Phone:  (800) 689-6546, Ext. 700
Mobile: (949) 423-4350
Email address:  E.Ladsous@Delta7Group.com
Website:        www.Delta7Group.com
CA PI License#    188424



  

**This email is unsecured and subject to monitoring.**

CONFIDENTIALITY NOTICE:  This communication and any documents, files, or previous email messages attached constitute an electronic communication within the scope of the Electronic Communication Privacy Act, 18 US Code § 2510. This communication may contain non-public, confidential, or legally privileged information intended for the designated recipient(s) sole use. The unlawful interception, use, or disclosure of

**657**

such information is strictly prohibited under 18 US Code § 2511 and applicable laws. If you are not the intended recipient or have received this communication in error, please notify the sender immediately by email to E.Ladsous@Delta7Group.com and delete all copies of this communication, including attachments, without reading or saving them in any matter.

---

**From:** PIA TOASE <pia@toase.com>
**Sent:** Wednesday, September 25, 2024 1:24 PM
**To:** E. Ladsous . Delta 7 Group <e.ladsous@delta7group.com>
**Subject:** Public Information Request to the City of Southlake

Please see the attached regarding your September 11, 2024 request.



CONFIDENTIAL NOTICE:  This electronic transmission and any documents or other writings sent with it constitute confidential information which is intended only for the named recipient and client and which is subject to attorney/client privilege.  If you have received this communication in error, do not read it.  Please reply to the sender at Taylor, Olson, Adkins, Sralla & Elam, L.L.P. that you have received the message in error.  Then delete it.  Any disclosure, copying distribution or the taking of any action concerning the contents of this communication or any attachment(s) by anyone other than the named recipient is strictly prohibited.

Exhibit 20

City Attorney's October 8, 2024
response' to TPIA Request #6



6000 WESTERN PLACE, SUITE 200
FORT WORTH, TEXAS 76107

TELEPHONE: (817) 806-5242
PIA@TOASE.COM

Lindsey M. Hale
pia@toase.com

October 8, 2024

Emmanuel Ladsous
DELTA 7 GROUP, LLC
4712 E. 2nd Street, Suite 231
Long Beach, California 90803
e.ladsous@delta7group.com

      *Re:*    *Public Information Request Received by the City of Southlake on September 24, 2024*

Dear Mr. Ladsous:

      I represent the City of Southlake regarding the above-described matter. Enclosed please find all of the information that the City has in their custody that is responsive to your request dated September 24, 2024. The City has no additional information responsive to your request in their custody.

      The City understands the rights of all citizens to make requests for public information and invites all citizens to avail themselves of that right. Should you have any questions, please do not hesitate to contact me. Of course, all questions may also be forwarded to the Office of the Texas Attorney General, Open Government Hotline, at (512) 478-6736 or toll-free at 1-877-673-6839.

      Sincerely,

      Lindsey M. Hale

LMH:dlw
Enclosures

V:\Southlake\PIA--SUBPOENAS\2024\Ladsous, Emmanuel 9 24 24\To Requestor\Ladsous LMH001.docx

**660**

# Southlake Police Department

## Transfer Receipt

**TRANSACTION TYPE:** Transfer
**TO LOCATION:** OTHER AGENCY CASE
**ASSIGNEE:** Spencer, Senora
**USER:** Spencer, Senora
**DATE/Time:** 9/6/2019 2:32:12 PM

| Barcode | Case/IR | Item Detail | Date Received | Received By |
|---------|---------|-------------|---------------|-------------|
| 0017410 | 19SP053735 | APPLE IPAD SN:DLXV60JDHPJ6 | 9-11-19 | _(signature)_ |

**Remarks:** RELEASED TO DEA BY CPL. GREEN 9/6/19

**Signature:** _(signature)_

**661**

# Southlake Police Department

## Transfer Receipt

**TRANSACTION TYPE:** Transfer
**TO LOCATION:** OTHER AGENCY
**ASSIGNEE:** Spencer, Senora
**USER:** Spencer, Senora
**DATE/Time:** 1/23/2020 11:12:52 AM

| Barcode | Case/IR | Item Detail | Date Received | Received By |
|---|---|---|---|---|
| 00017413 | 19SP053735 | BLUE PILL "M/30" | 1/23/2020 | *[signature]* |
| 00017414 | 19SP053735 | 5 PINK PILLS "K/56" | | *[signature]* |

**Remarks:** ITEMS RELEASED TO DEA FOR ADDITIONAL ANALYSIS 1/23/2020

**Signature:** *[signature]*

# Southlake Police Department

## Transfer Receipt

**TRANSACTION TYPE:** Transfer
**TO LOCATION:** COURT
**ASSIGNEE:** SPENCER, SENORA
**USER:** SPENCER, SENORA
**DATE/Time:** 2/7/2022 11:31:08 AM

| Barcode | Case/IR | Item Detail | Date Received | Received By |
|---------|---------|-------------|---------------|-------------|
| 00017405 | 19SP053735 | ROOM KEY WITH WHITE POWDER RESIDUE | 2/7/2022 | SA Mattheo de Saracho |
| 00017406 | 19SP053735 | ROOM KEY CARD | | |
| 00017407 | 19SP053735 | UNKNOWN WHITE POWDER | | |
| 00017408 | 19SP053735 | INDOCIN | | |
| 00017409 | 19SP053735 | WHITE SUBSTANCE FROM FLOOR COLLECTED BY TAPE | | |
| 00017412 | 19SP053735 | PLASTIC PEN TUBE | | |

**Remarks:**    EVIDENCE RELEASED TO DEA FOR TYLER SKAGGS TRIAL 2/7/22

**Signature:**    *Senora Spencer*

**U.S. DEPARTMENT OF JUSTICE** - DRUG ENFORCEMENT ADMINISTRATION
## RECEIPT FOR CASH OR OTHER ITEMS

TO: (Name, Title, Address (including ZIP CODE), if applicable) -

~Store, Eri~
~Involve D~

FILE NO. MW-19-2045

G-DEP IDENTIFIER

FILE TITLE Kay Eric

DATE 2/7/22

DIVISION/DISTRICT OFFICE

DFD / FWDSO

I hereby acknowledge receipt of the following described cash or other item(s), which was given into my custody by the above named individual.

| AMOUNT or QUANTITY | DESCRIPTION OF ITEM(S) | PURPOSE (If Applicable) |
|---|---|---|
| L | ELPD Evidence Bags | trial checkout |
| | Ex 1,2,3,4,5,8 | |
| | | |
| | Nothing Follows | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

RECEIVED BY (Signature) *[signature]*

NAME AND TITLE (Print or Type) SA Matthew DeSaracho

WITNESSED BY (Signature)

NAME AND TITLE (Print or Type)

FORM DEA-12 (8-02) *Previous editions obsolete*

Electronic Form Version Designed in JetForm 5.2 Version

**664**

**Southlake Police Department**

# Item History

| Barcode: | 00017411 | | Item No: | 007 |
|---|---|---|---|---|
| Description: | BLACK APPLE IPHONE | | | |

| Date & Time | User | Assignee | Field | Old Value | New Value | Action | Location | Remarks | Signature |
|---|---|---|---|---|---|---|---|---|---|
| 9/9/2019 4:38 PM | sspencer | | Location | OTHER AGENCY | OTHER AGENCY CASE | Field Updated | OTHER AGENCY CASE | | |
| 9/3/2019 2:08 PM | sspencer | Spencer, Senora | | | | Transfer | OTHER AGENCY | RELEASED TO THE DEA BY CPL. GREEN 9/3/19 | |
| 9/3/2019 2:08 PM | sspencer | | Location | 19M-01 | OTHER AGENCY | Field Updated | OTHER AGENCY | | |
| 7/24/2019 9:59 AM | sspencer | Spencer, Senora | | | | Transfer | 19M-01 | | |
| 7/24/2019 9:59 AM | sspencer | | Location | OTHER AGENCY | 19M-01 | Field Updated | 19M-01 | | |
| 7/18/2019 11:16 AM | sspencer | | Location | BULK DEATH | OTHER AGENCY | Field Updated | OTHER AGENCY | | |
| 7/2/2019 9:53 AM | sspencer | Spencer, Senora | | | | Transfer | BULK DEATH | | |
| 7/2/2019 9:53 AM | sspencer | | Location | In-Transit | BULK DEATH | Field Updated | BULK DEATH | | |
| 7/2/2019 9:52 AM | sspencer | Spencer, Senora | | 005% | In-Transit | Approved | In-Transit | Item Approved From OIM | |
| 7/2/2019 9:51 AM | sspencer | ROBERSON, T | | | 005% | Submitted | In-Transit | Item Submitted From OIM | |

**665**

Exhibit 21

November 10, 2024, TPIA Request #8
to the Southlake PD

| | |
|---|---|
| **From:** | E. Ladsous . Delta 7 Group |
| **To:** | dpsrecords@ci.southlake.tx.us |
| **Cc:** | Lindsey S. Susolik |
| **Subject:** | Texas Public Information Act (TPIA) Request for Chain of Custody Documents for Tyler Skaggs" iPhone - Case Number: 19SP053735 |
| **Date:** | Sunday, November 10, 2024 12:35:00 PM |
| **Attachments:** | image001.png |
| | image002.png |
| | image003.png |

To the Custodian of Records, Southlake Police Department:

Pursuant to the Texas Public Information Act, I am formally requesting access to specific records related to the Chain of Custody for Tyler Skaggs' iPhone, associated with Case Number 19SP053735. I am not requesting a copy of the Item History log from the Evidence Management System but specifically seek copies of the following:

1. **Southlake PD Chain of Custody form for Tyler Skaggs' iPhone**:

   Please provide a copy of the **Chain of Custody** form, including any available copies made prior to the transfer of the iPhone to the DEA. I understand that the original Chain of Custody form may accompany the original evidence; therefore, I am requesting any accessible copies that were created prior to its transfer.

2. **Grapevine PD Chain of Custody form for Tyler Skaggs' iPhone:**

   Additionally, I request a copy of the Chain of Custody form signed by Detective Richard Weber (Grapevine PD) and Senora Spencer (Southlake PD) on July 17, 2019, for the transfer of Skaggs' phone. The copy provided in response to a previous TPIA request was damaged, with the top portion of the form missing. I am therefore requesting a complete and undamaged copy of this document.

Please let me know if any clarification is needed, and thank you in advance for your attention to this request.

Sincerely,

Emmanuel

---

**Emmanuel Ladsous**
President / Private Investigator
**Delta 7 Group, LLC**
A Professional Security Consultancy

nd

**667**

4712 E 2    Street, Suite 231

Long Beach, CA 90803-5309

Phone:  (800) 689-6546, Ext. 700

Mobile:  (949) 423-4350

Email address:  E.Ladsous@Delta7Group.com

Website:        www.Delta7Group.com

CA PI License#    188424



 

**This email is unsecured and subject to monitoring.**

CONFIDENTIALITY NOTICE:  This communication and any documents, files, or previous email messages attached constitute an electronic communication within the scope of the Electronic Communication Privacy Act, 18 U.S. Code § 2510. This communication may contain non-public, confidential, or legally privileged information intended for the designated recipient(s) sole use. The unlawful interception, use, or disclosure of such information is strictly prohibited under 18 U.S. Code § 2511 and applicable laws. If you are not the intended recipient or have received this communication in error, please notify the sender immediately by email to E.Ladsous@Delta7Group.com and delete all copies of this communication, including attachments, without reading or saving them in any matter.

Exhibit 22

November 14, 2024, TPIA Request #10
to the Southlake PD

| | |
|---|---|
| **From:** | E. Ladsous , Delta 7 Group |
| **To:** | dpsrecords@ci.southlake.tx.us |
| **Cc:** | Lindsey S. Susolik |
| **Subject:** | TPIA Request – Inventory and Item History Reports for Digital Evidence Related to Tyler Skaggs Death Investigation - Case Number 19SP053735 |
| **Date:** | Thursday, November 14, 2024 7:51:00 AM |
| **Attachments:** | image001.png |
| | image002.png |
| | image003.png |

Dear Records Custodian,

Pursuant to the Texas Public Information Act (TPIA), I respectfully submit this request to ensure comprehensive documentation and transparency of the chain of custody for all digital evidence related to the Tyler Skaggs death investigation (Case No. 19SP053735). To avoid any ambiguity, this request distinguishes between **physical evidence storage** and **digital evidence storage**:

- **Physical Evidence Storage** typically refers to the secure facilities where physical items are stored, such as evidence rooms used for physical devices (e.g., phones, tablets) once they have been seized.

- **Digital Evidence Storage** refers specifically to digital repositories (Digital Evidence Server, Digital Evidence Repository, or Digital Evidence Management System - DEMS) used for storing and managing digital copies or derivative data (such as forensic images or extracted files) from seized devices.

In light of these definitions, I request the following information:

1. **Digital Evidence Inventory**:

   - A complete inventory of all digital evidence stored on the Southlake PD's Digital Evidence Server (Digital Evidence Repository/DEMS) related to the Tyler Skaggs investigation. This inventory should include:

     - Unique identifiers and detailed descriptions of each digital item.
     - Metadata associated with each item, including file names, creation dates, sizes, relevant case tags, and the **identity of the contributor** who uploaded or provided each item to the Digital Evidence Server.

2. **Item History Reports for Digital Evidence**:

   - Item history reports for each digital evidence item associated with this investigation, including but not limited to Tyler Skaggs' iPhone and iPad. These reports should encompass:

**670**

- A record of all actions taken with each digital item (e.g., upload to server, extraction, copying, transfer, deletion).
- Dates and times for each action.
- **Names, roles, and the contributor's identity responsible for each action**.
- Names and roles of all individuals who accessed or handled each digital item.
- The current storage location of each digital item, confirming whether it remains on the Digital Evidence Server, has been transferred to an external agency, or has been disposed of.

3. **Current Status and Disposition of the Digital Evidence**:

   ○ A summary of the current status of each digital evidence item, including details on the present storage location and any transfers made to external agencies. This summary should include:

     - Dates of transfer, names of responsible parties involved in each transfer, and any supporting transfer records.

4. **Access Logs and Activity Records for Digital Evidence**:

   ○ Access logs for all personnel who accessed the digital evidence on the Southlake PD's Digital Evidence Server related to this investigation. These logs should include:

     - Full names and roles of each individual accessing the evidence.
     - Dates, times, and specific items accessed.
     - A record of all associated activities (e.g., review, copying, modification) performed on each item.

Thank you for your attention to this request. Please feel free to contact me if additional clarification is needed.

Sincerely,

Emmanuel

_____

**Emmanuel Ladsous**
President / Private Investigator
**Delta 7 Group, LLC**
A Professional Security Consultancy
4712 E 2nd Street, Suite 231

**671**

Long Beach, CA 90803-5309

Phone:  (800) 689-6546, Ext. 700

Mobile: (949) 423-4350

Email address: E.Ladsous@Delta7Group.com

Website:        www.Delta7Group.com

CA PI License#     188424



 

**This email is unsecured and subject to monitoring.**

CONFIDENTIALITY NOTICE:  This communication and any documents, files, or previous email messages attached constitute an electronic communication within the scope of the Electronic Communication Privacy Act, 18 U.S. Code § 2510. This communication may contain non-public, confidential, or legally privileged information intended for the designated recipient(s) sole use. The unlawful interception, use, or disclosure of such information is strictly prohibited under 18 U.S. Code § 2511 and applicable laws. If you are not the intended recipient or have received this communication in error, please notify the sender immediately by email to E.Ladsous@Delta7Group.com and delete all copies of this communication, including attachments, without reading or saving them in any matter.



6000 WESTERN PLACE, SUITE 200
FORT WORTH, TEXAS 76107

TELEPHONE: (817) 806-5242
PIA@TOASE.COM

Bessie Bronstein
pia@toase.com

December 2, 2024

Emmanuel Ladsous
DELTA 7 GROUP, LLC
4712 E. 2nd Street, Suite 231
Long Beach, California 90803
e.ladsous@delta7group.com

     *Re:    Public Information Requests Received by the City of Southlake on November 14, 2024*

Dear Mr. Ladsous:

    I represent the City of Southlake regarding the above-described matter.  Enclosed please find the information responsive to your requests dated November 14, 2024.

    The City understands the rights of all citizens to make requests for public information and invites all citizens to avail themselves of that right.  Should you have any questions, please do not hesitate to contact me.  Of course, all questions may also be forwarded to the Office of the Texas Attorney General, Open Government Hotline, at (512) 478-6736 or toll-free at 1-877-673-6839.

    Sincerely,

    Bessie Bronstein

BB:dlw
Enclosures

V:\Southlake\PIA--SUBPOENAS\2024\Ladsous, Emmanuel (Digital Evidence) 11.14.24\To Requestor\Ladsous.BB001.docx

**673**

# Southlake Police Department

## Transfer Receipt

**TRANSACTION TYPE:** Transfer
**TO LOCATION:** OTHER AGENCY CASE
**ASSIGNEE:** Spencer, Senora
**USER:** Spencer, Senora
**DATE/Time:** 9/6/2019 2:32:12 PM

| Barcode | Case/IR | Item Detail | Date Received | Received By |
|---|---|---|---|---|
| 00017410 | 19SP053735 | APPLE IPAD SN:DLXV60JDHPJ6 | 9-11-19 | _(signature)_ |

**Remarks:** RELEASED TO DEA BY CPL. GREEN 9/6/19

**Signature:** _(signature)_

**674**

**CHAIN OF CUSTODY**

**INDICATE 'V' FOR VIEWING, 'REL' FOR RELEASED, 'RET' FOR RETURNED IN LAST BOX**

| | NAME | DATE | AGENCY | EVIDENCE TECH | ITEMS | V.REL.,RET. |
|---|---|---|---|---|---|---|
| (PRINT) | *T. West* | 7/17/19 | GRAPEVINE PD | S. SPENCER #1843 | IPHONE: 1 IPAD #6: 7 | RELEASED |
| (SIGN) | *T. West* | TIME | | | | |

| | NAME | DATE | AGENCY | EVIDENCE TECH | ITEMS | V.,REL.,RET. |
|---|---|---|---|---|---|---|
| (PRINT) | | | | | | |
| (SIGN) | | TIME | | | | |

| | NAME | DATE | AGENCY | EVIDENCE TECH | ITEMS | V.,REL.,RET. |
|---|---|---|---|---|---|---|
| (PRINT) | | | | | | |
| (SIGN) | | TIME | | | | |

| | NAME | DATE | AGENCY | EVIDENCE TECH | ITEMS | V.,REL.,RET. |
|---|---|---|---|---|---|---|
| (PRINT) | | TIME | | | | |
| (SIGN) | | | | | | |

| | NAME | DATE | AGENCY | EVIDENCE TECH | ITEMS | V.,REL.,RET. |
|---|---|---|---|---|---|---|
| (PRINT) | | | | | | |
| (SIGN) | | TIME | | | | |

| | NAME | DATE | AGENCY | EVIDENCE TECH | ITEMS | V.,REL.,RET. |
|---|---|---|---|---|---|---|
| (PRINT) | | | | | | |
| (SIGN) | | TIME | | | | |

CASE # 19SPD53735

**Southlake Police Department**

# Item History

| Barcode: | 00017411 | Item No: | 007 |
| Description: | BLACK APPLE IPHONE | | |

| Date & Time | User | Assignee | Field | Old Value | New Value | Action | Location | Remarks | Signature |
|---|---|---|---|---|---|---|---|---|---|
| 9/9/2019 4:38 PM | sspencer | | Location | OTHER AGENCY | OTHER AGENCY CASE | Field Updated | OTHER AGENCY CASE | | |
| 9/3/2019 2:08 PM | sspencer | Spencer, Senora | | | | Transfer | OTHER AGENCY | RELEASED TO THE DEA BY CPL. GREEN 9/3/19 | |
| 9/3/2019 2:08 PM | sspencer | | Location | 19M-01 | OTHER AGENCY | Field Updated | OTHER AGENCY | | |
| 7/24/2019 9:59 AM | sspencer | Spencer, Senora | | | | Transfer | 19M-01 | | |
| 7/24/2019 9:59 AM | sspencer | | Location | OTHER AGENCY | 19M-01 | Field Updated | 19M-01 | | |
| 7/18/2019 11:16 AM | sspencer | | Location | BULK DEATH | OTHER AGENCY | Field Updated | OTHER AGENCY | | |
| 7/2/2019 9:53 AM | sspencer | Spencer, Senora | | | | Transfer | BULK DEATH | | |
| 7/2/2019 9:53 AM | sspencer | | Location | In-Transit | BULK DEATH | Field Updated | BULK DEATH | | |
| 7/2/2019 9:52 AM | sspencer | Spencer, Senora | | 005% | In-Transit | Approved | In-Transit | Item Approved From OIM | |
| 7/2/2019 9:51 AM | sspencer | ROBERSON, T | | | 005% | Submitted | In-Transit | Item Submitted From OIM | |

1 of 1

7/8/2024 10:34:16 AM

**676**

| Case/IR | Barcode | Inventory Time | Description | Category Code | Location Code | Pkg Weight |
|---|---|---|---|---|---|---|
| 19SP053735 | 00017405 | 12/4/2019 11:14:04 AM | ROOM KEY WITH WHITE POWDER RESIDUE | KEYS | 19M-01 | |
| 19SP053735 | 00017406 | 12/4/2019 11:14:01 AM | ROOM KEY CARD | KEYS | 19M-01 | |
| 19SP053735 | 00017407 | 12/3/2019 10:25:40 AM | UNKNOWN WHITE POWDER | NA- DRUGS | DRUGS BOX 2 | 0 |
| 19SP053735 | 00017408 | 12/3/2019 10:25:35 AM | INDOCIN | NA- DRUGS | DRUGS BOX 2 | 6.7 |
| 19SP053735 | 00017409 | 12/3/2019 10:25:14 AM | WHITE SUBSTANCE FROM FLOOR COLLECTED BY TAPE | NA- DRUGS | DRUGS BOX 2 | 0 |
| 19SP053735 | 00017410 | | APPLE IPAD SN:DLXV60JDHPJ6 | ELECTRONICS | OTHER AGENCY CASE | |
| 19SP053735 | 00017411 | | BLACK APPLE IPHONE | PHONE | OTHER AGENCY CASE | |
| 19SP053735 | 00017412 | | PLASTIC PEN TUBE | MISC. ITEM | 19M-01 | |
| 19SP053735 | 00017413 | 12/3/2019 10:24:57 AM | BLUE PILL "M/30" | NA- DRUGS | OTHER AGENCY | 0 |
| 19SP053735 | 00017414 | 12/3/2019 10:25:01 AM | 5 PINK PILLS "K/56" | NA- DRUGS | OTHER AGENCY | 0 |
| 19SP053735 | 00017415 | | WALLET, RING, PASSPORT, ID, CASH, EARBUDS | MISC. ITEM | RETURNED | |
| 19SP053735 | 00017416 | | BLACK COWBOY HAT AND BUTTON SHIRT | CLOTHING | RETURNED | |
| 19SP053735 | 00017417 | | BACKPACK WITH PERSONAL BELONGINGS | MISC. ITEM | RETURNED | |
| 19SP053735 | 00017418 | | NORMATEC MACHINE | MISC. ITEM | RETURNED | |
| 19SP053735 | 00017419 | 12/4/2019 11:07:56 AM | BED SHEETS WITH BLOOD | MISC. ITEM | BULK DEATH | |
| 19SP053735 | 00017420 | 12/4/2019 11:08:01 AM | BEDDING WITH BLOOD | MISC. ITEM | BULK DEATH | |
| 19SP053735 | 00017421 | 12/4/2019 11:13:59 AM | OPEN BAG OF GUMMY BEARS | MISC. ITEM | 19M-01 | |

Total Records: 17
Report Filter: Case/IR ( Contains ) 53735

1 of 1

7/8/2024 7:53:03 AM

CHAIN OF CUSTODY

INDICATE 'V' FOR VIEWING, 'REL' FOR RELEASED, 'RET' FOR RETURNED IN LAST BOX

| | NAME | DATE | AGENCY | EVIDENCE TECH | ITEMS | V.,REL.,RET. |
|---|---|---|---|---|---|---|
| (PRINT) | _RF Jessica_ | 7/17/19 | GRAPEVINE PD | S.SPENCER #1843 | IPHONE: 1 PAD #6: 7 | RELEASED |
| (SIGN) | | TIME | | | | |

| | NAME | DATE | AGENCY | EVIDENCE TECH | ITEMS | V.,REL.,RET. |
|---|---|---|---|---|---|---|
| (PRINT) | | | | | | |
| (SIGN) | | TIME | | | | |

| | NAME | DATE | AGENCY | EVIDENCE TECH | ITEMS | V.,REL.,RET. |
|---|---|---|---|---|---|---|
| (PRINT) | | | | | | |
| (SIGN) | | TIME | | | | |

| | NAME | DATE | AGENCY | EVIDENCE TECH | ITEMS | V.,REL.,RET. |
|---|---|---|---|---|---|---|
| (PRINT) | | TIME | | | | |
| (SIGN) | | | | | | |

| | NAME | DATE | AGENCY | EVIDENCE TECH | ITEMS | V.,REL.,RET. |
|---|---|---|---|---|---|---|
| (PRINT) | | | | | | |
| (SIGN) | | TIME | | | | |

| | NAME | DATE | AGENCY | EVIDENCE TECH | ITEMS | V.,REL.,RET. |
|---|---|---|---|---|---|---|
| (PRINT) | | | | | | |
| (SIGN) | | TIME | | | | |

CASE # _19SPD53735_

**678**

# Southlake Police Department

## Transfer Receipt

**TRANSACTION TYPE:** Transfer
**TO LOCATION:** OTHER AGENCY CASE
**ASSIGNEE:** Spencer, Senora
**USER:** Spencer, Senora
**DATE/Time:** 9/6/2019 2:32:12 PM

| Barcode | Case/IR | Item Detail | Date Received | Received By |
|---------|---------|-------------|---------------|-------------|
| 00017410 | 19SP053735 | APPLE IPAD SN:DLXV60JDHPJ6 | 9-11-19 | _(signature)_ |

Remarks:   RELEASED TO DEA BY CPL. GREEN 9/6/19

Signature:   _(signature)_

**679**

U.S. DEPARTMENT OF JUSTICE - DRUG ENFORCEMENT ADMINISTRATION
## RECEIPT FOR CASH OR OTHER ITEMS

TO: (Name, Title, Address (including ZIP CODE), if applicable) -

FILE NO. MO-19-2045

G-DEP IDENTIFIER

FILE TITLE  Kay Eric

DATE  2/7/22

DIVISION/DISTRICT OFFICE

DFD / FWDO

I hereby acknowledge receipt of the following described cash or other item(s),
which was given into my custody by the above named individual.

| AMOUNT or QUANTITY | DESCRIPTION OF ITEM(S) | PURPOSE (If Applicable) |
|---|---|---|
|  | ELPD Evidence Logs | trial checkout |
|  | Ex 1, 2, 3, 4, 5, 8 |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

RECEIVED BY (Signature)

NAME AND TITLE (Print or Type)
SA Matthew DeSaracho

WITNESSED BY (Signature)

NAME AND TITLE (Print or Type)

FORM DEA-12 (8-02) *Previous editions obsolete*

Electronic Form Version Designed in JetForm 5.2 Version

**680**

**Southlake Police Department**

# Item History

| Barcode: | 00017411 | | Item No: | 007 | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Description: | BLACK APPLE IPHONE | | | | | | | | |

| Date & Time | User | Assignee | Field | Old Value | New Value | Action | Location | Remarks | Signature |
|---|---|---|---|---|---|---|---|---|---|
| 9/9/2019 4:38 PM | sspencer | | Location | OTHER AGENCY | OTHER AGENCY CASE | Field Updated | OTHER AGENCY CASE | | |
| 9/3/2019 2:08 PM | sspencer | Spencer, Senora | | | | Transfer | OTHER AGENCY | RELEASED TO THE DEA BY CPL. GREEN 9/3/19 | |
| 9/3/2019 2:08 PM | sspencer | | Location | 19M-01 | OTHER AGENCY | Field Updated | OTHER AGENCY | | |
| 7/24/2019 9:59 AM | sspencer | Spencer, Senora | | | | Transfer | 19M-01 | | |
| 7/24/2019 9:59 AM | sspencer | | Location | OTHER AGENCY | 19M-01 | Field Updated | 19M-01 | | |
| 7/18/2019 11:16 AM | sspencer | | Location | BULK DEATH | OTHER AGENCY | Field Updated | OTHER AGENCY | | |
| 7/2/2019 9:53 AM | sspencer | Spencer, Senora | | | | Transfer | BULK DEATH | | |
| 7/2/2019 9:53 AM | sspencer | | Location | In-Transit | BULK DEATH | Field Updated | BULK DEATH | | |
| 7/2/2019 9:52 AM | sspencer | Spencer, Senora | | 005% | In-Transit | Approved | In-Transit | Item Approved From OIM | |
| 7/2/2019 9:51 AM | sspencer | ROBERSON, T | | | 005% | Submitted | In-Transit | Item Submitted From OIM | |

**681**

| Unit | Personnel | Footprint # | Date/Time | Unit Status | Nearest Intersectio | Direction | Unit MPH | Road MPH | Latitude | Longitude |
|---|---|---|---|---|---|---|---|---|---|---|
| 243 | Womack, Clay | 1 | 10/12/2024 23:59 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92909 | -97.20026 |
| 243 | Womack, Clay | 2 | 10/13/2024 0:00 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92909 | -97.20026 |
| 243 | Womack, Clay | 3 | 10/13/2024 0:00 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92909 | -97.20026 |
| 243 | Womack, Clay | 4 | 10/13/2024 0:00 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92909 | -97.20026 |
| 243 | Womack, Clay | 5 | 10/13/2024 0:00 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92909 | -97.20026 |
| 243 | Womack, Clay | 6 | 10/13/2024 0:00 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92909 | -97.20026 |
| 243 | Womack, Clay | 7 | 10/13/2024 0:00 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92909 | -97.20027 |
| 243 | Womack, Clay | 8 | 10/13/2024 0:01 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92909 | -97.20026 |
| 243 | Womack, Clay | 9 | 10/13/2024 0:01 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92909 | -97.20026 |
| 243 | Womack, Clay | 10 | 10/13/2024 0:01 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92909 | -97.20026 |
| 243 | Womack, Clay | 11 | 10/13/2024 0:01 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.9291 | -97.20027 |
| 243 | Womack, Clay | 12 | 10/13/2024 0:01 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.9291 | -97.20027 |
| 243 | Womack, Clay | 13 | 10/13/2024 0:02 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.9291 | -97.20027 |
| 243 | Womack, Clay | 14 | 10/13/2024 0:02 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.9291 | -97.20027 |
| 243 | Womack, Clay | 15 | 10/13/2024 0:02 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.9291 | -97.20027 |
| 243 | Womack, Clay | 16 | 10/13/2024 0:02 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.9291 | -97.20027 |
| 243 | Womack, Clay | 17 | 10/13/2024 0:02 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.9291 | -97.20027 |
| 243 | Womack, Clay | 18 | 10/13/2024 0:02 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.9291 | -97.20027 |
| 243 | Womack, Clay | 19 | 10/13/2024 0:03 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.9291 | -97.20027 |
| 243 | Womack, Clay | 20 | 10/13/2024 0:03 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.9291 | -97.20027 |
| 243 | Womack, Clay | 21 | 10/13/2024 0:03 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.9291 | -97.20027 |
| 243 | Womack, Clay | 22 | 10/13/2024 0:03 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.9291 | -97.20027 |
| 243 | Womack, Clay | 23 | 10/13/2024 0:03 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.9291 | -97.20027 |
| 243 | Womack, Clay | 24 | 10/13/2024 0:03 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.9291 | -97.20027 |
| 243 | Womack, Clay | 25 | 10/13/2024 0:04 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92909 | -97.20027 |
| 243 | Womack, Clay | 26 | 10/13/2024 0:04 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92909 | -97.20027 |
| 243 | Womack, Clay | 27 | 10/13/2024 0:04 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92909 | -97.20027 |
| 243 | Womack, Clay | 28 | 10/13/2024 0:04 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.9291 | -97.20027 |
| 243 | Womack, Clay | 29 | 10/13/2024 0:04 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.9291 | -97.20027 |
| 243 | Womack, Clay | 30 | 10/13/2024 0:04 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.9291 | -97.20028 |
| 243 | Womack, Clay | 31 | 10/13/2024 0:05 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.9291 | -97.20028 |
| 243 | Womack, Clay | 32 | 10/13/2024 0:05 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.9291 | -97.20028 |
| 243 | Womack, Clay | 33 | 10/13/2024 0:05 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.9291 | -97.20028 |
| 243 | Womack, Clay | 34 | 10/13/2024 0:05 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92909 | -97.20028 |
| 243 | Womack, Clay | 35 | 10/13/2024 0:05 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92909 | -97.20028 |
| 243 | Womack, Clay | 36 | 10/13/2024 0:05 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92909 | -97.20028 |
| 243 | Womack, Clay | 37 | 10/13/2024 0:06 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92909 | -97.20027 |
| 243 | Womack, Clay | 38 | 10/13/2024 0:06 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92909 | -97.20027 |
| 243 | Womack, Clay | 39 | 10/13/2024 0:06 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92909 | -97.20027 |
| 243 | Womack, Clay | 40 | 10/13/2024 0:06 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92908 | -97.20027 |
| 243 | Womack, Clay | 41 | 10/13/2024 0:06 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92908 | -97.20027 |
| 243 | Womack, Clay | 42 | 10/13/2024 0:06 | On Scene | CHESAPEAKE LN and MICHENEI | 1 | | 30 | 32.92908 | -97.20027 |
| 243 | Womack, Clay | 43 | 10/13/2024 0:07 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92908 | -97.20027 |
| 243 | Womack, Clay | 44 | 10/13/2024 0:07 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92908 | -97.20027 |
| 243 | Womack, Clay | 45 | 10/13/2024 0:07 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92908 | -97.20026 |
| 243 | Womack, Clay | 46 | 10/13/2024 0:07 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92908 | -97.20026 |
| 243 | Womack, Clay | 47 | 10/13/2024 0:07 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92908 | -97.20026 |
| 243 | Womack, Clay | 48 | 10/13/2024 0:08 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92907 | -97.20026 |
| 243 | Womack, Clay | 49 | 10/13/2024 0:08 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92907 | -97.20026 |
| 243 | Womack, Clay | 50 | 10/13/2024 0:08 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92907 | -97.20026 |
| 243 | Womack, Clay | 51 | 10/13/2024 0:08 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92907 | -97.20026 |
| 243 | Womack, Clay | 52 | 10/13/2024 0:08 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92907 | -97.20026 |
| 243 | Womack, Clay | 53 | 10/13/2024 0:08 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92907 | -97.20025 |
| 243 | Womack, Clay | 54 | 10/13/2024 0:09 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92907 | -97.20025 |
| 243 | Womack, Clay | 55 | 10/13/2024 0:09 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92907 | -97.20025 |
| 243 | Womack, Clay | 56 | 10/13/2024 0:09 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92906 | -97.20025 |
| 243 | Womack, Clay | 57 | 10/13/2024 0:09 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92906 | -97.20025 |
| 243 | Womack, Clay | 58 | 10/13/2024 0:09 | On Scene | CHESAPEAKE LN and W (262.34) | | 3 | 30 | 32.92906 | -97.20026 |
| 243 | Womack, Clay | 59 | 10/13/2024 0:09 | On Scene | CHESAPEAKE LN an SW (241.96 | | 4 | 30 | 32.92905 | -97.20028 |
| 243 | Womack, Clay | 60 | 10/13/2024 0:09 | On Scene | CHESAPEAKE LN an SW (244.3) | | 5 | 30 | 32.92904 | -97.2003 |
| 243 | Womack, Clay | 61 | 10/13/2024 0:10 | On Scene | CHESAPEAKE LN an W (252.86) | | 7 | 30 | 32.92904 | -97.20033 |
| 243 | Womack, Clay | 62 | 10/13/2024 0:10 | On Scene | CHESAPEAKE LN an W (262.75) | | 10 | 30 | 32.92904 | -97.20037 |
| 243 | Womack, Clay | 63 | 10/13/2024 0:10 | On Scene | CHESAPEAKE LN an W (273.5) | | 11 | 30 | 32.92904 | -97.20042 |
| 243 | Womack, Clay | 64 | 10/13/2024 0:10 | On Scene | CHESAPEAKE LN an W (287.5) | | 13 | 30 | 32.92906 | -97.20048 |
| 243 | Womack, Clay | 65 | 10/13/2024 0:10 | On Scene | CHESAPEAKE LN an NW (299.2 | | 14 | 30 | 32.92908 | -97.20054 |

682

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 243 | Womack, Clay | 66 | 10/13/2024 0:10 | On Scene | CHESAPEAKE LN an NW (321.3 | 16 | 30 | 32.92913 | -97.20059 |
| 243 | Womack, Clay | 67 | 10/13/2024 0:11 | On Scene | CHESAPEAKE LN an NW (335.0 | 15 | 30 | 32.92918 | -97.20063 |
| 243 | Womack, Clay | 68 | 10/13/2024 0:11 | On Scene | CHESAPEAKE LN an N (338.23) | 15 | 30 | 32.92924 | -97.20065 |
| 243 | Womack, Clay | 69 | 10/13/2024 0:11 | On Scene | CHESAPEAKE LN an N (1.59) | 17 | 30 | 32.92937 | -97.20065 |
| 243 | Womack, Clay | 70 | 10/13/2024 0:11 | On Scene | CHESAPEAKE LN an N (1.36) | 19 | 30 | 32.92944 | -97.20065 |
| 243 | Womack, Clay | 71 | 10/13/2024 0:11 | On Scene | CHESAPEAKE LN an N (1.26) | 20 | 30 | 32.92952 | -97.20064 |
| 243 | Womack, Clay | 72 | 10/13/2024 0:11 | On Scene | CHESAPEAKE LN an N (1.3) | 21 | 30 | 32.9296 | -97.20064 |
| 243 | Womack, Clay | 73 | 10/13/2024 0:12 | On Scene | CHESAPEAKE LN an N (1.37) | 23 | 30 | 32.92969 | -97.20064 |
| 243 | Womack, Clay | 74 | 10/13/2024 0:12 | On Scene | CHESAPEAKE LN an N (0.33) | 24 | 30 | 32.92979 | -97.20064 |
| 243 | Womack, Clay | 75 | 10/13/2024 0:12 | On Scene | CHESAPEAKE LN an N (0.58) | 25 | 30 | 32.92989 | -97.20064 |
| 243 | Womack, Clay | 76 | 10/13/2024 0:12 | On Scene | CHESAPEAKE LN an N (0.49) | 27 | 30 | 32.93 | -97.20063 |
| 243 | Womack, Clay | 77 | 10/13/2024 0:12 | On Scene | CHESAPEAKE LN an N (359.87) | 27 | 30 | 32.93011 | -97.20063 |
| 243 | Womack, Clay | 78 | 10/13/2024 0:12 | On Scene | CHESAPEAKE LN an N (359.76) | 28 | 30 | 32.93023 | -97.20063 |
| 243 | Womack, Clay | 79 | 10/13/2024 0:13 | On Scene | CHESAPEAKE LN an N (359.6) | 29 | 30 | 32.93034 | -97.20063 |
| 243 | Womack, Clay | 80 | 10/13/2024 0:13 | On Scene | CHESAPEAKE LN an N (358.32) | 29 | 30 | 32.93058 | -97.20064 |
| 243 | Womack, Clay | 81 | 10/13/2024 0:13 | On Scene | CHESAPEAKE LN an N (358.05) | 30 | 30 | 32.9307 | -97.20064 |
| 243 | Womack, Clay | 82 | 10/13/2024 0:13 | On Scene | CHESAPEAKE LN an N (359.13) | 32 | 30 | 32.93083 | -97.20065 |
| 243 | Womack, Clay | 83 | 10/13/2024 0:13 | On Scene | CHESAPEAKE LN an N (359.89) | 32 | 30 | 32.93096 | -97.20065 |
| 243 | Womack, Clay | 84 | 10/13/2024 0:13 | On Scene | CHESAPEAKE LN an N (0.21) | 31 | 30 | 32.93108 | -97.20064 |
| 243 | Womack, Clay | 85 | 10/13/2024 0:14 | On Scene | CHESAPEAKE LN an N (0.03) | 32 | 30 | 32.93121 | -97.20065 |
| 243 | Womack, Clay | 86 | 10/13/2024 0:14 | On Scene | CHESAPEAKE LN an N (0.42) | 32 | 30 | 32.93134 | -97.20064 |
| 243 | Womack, Clay | 87 | 10/13/2024 0:14 | On Scene | CHESAPEAKE LN an N (359.37) | 31 | 30 | 32.93147 | -97.20064 |
| 243 | Womack, Clay | 88 | 10/13/2024 0:14 | On Scene | CHESAPEAKE LN an N (359.58) | 31 | 30 | 32.93159 | -97.20065 |
| 243 | Womack, Clay | 89 | 10/13/2024 0:14 | On Scene | CHESAPEAKE LN an N (358.62) | 29 | 30 | 32.93183 | -97.20066 |
| 243 | Womack, Clay | 90 | 10/13/2024 0:14 | On Scene | CHESAPEAKE LN an N (356.16) | 28 | 30 | 32.93195 | -97.20066 |
| 243 | Womack, Clay | 91 | 10/13/2024 0:15 | On Scene | CHESAPEAKE LN an N (356.82) | 26 | 30 | 32.93205 | -97.20067 |
| 243 | Womack, Clay | 92 | 10/13/2024 0:15 | On Scene | CHESAPEAKE LN an N (345.96) | 23 | 30 | 32.93214 | -97.20069 |
| 243 | Womack, Clay | 93 | 10/13/2024 0:15 | On Scene | CHESAPEAKE LN an N (341.32) | 24 | 30 | 32.93223 | -97.20072 |
| 243 | Womack, Clay | 94 | 10/13/2024 0:15 | On Scene | CHESAPEAKE LN an NW (326.4 | 23 | 30 | 32.93231 | -97.20078 |
| 243 | Womack, Clay | 95 | 10/13/2024 0:15 | On Scene | CHESAPEAKE LN an NW (301.5 | 23 | 30 | 32.93237 | -97.20087 |
| 243 | Womack, Clay | 96 | 10/13/2024 0:15 | On Scene | CHESAPEAKE LN an W (285.74) | 21 | 30 | 32.9324 | -97.20096 |
| 243 | Womack, Clay | 97 | 10/13/2024 0:16 | On Scene | CHESAPEAKE LN an W (267.68) | 26 | 30 | 32.9324 | -97.20119 |
| 243 | Womack, Clay | 98 | 10/13/2024 0:16 | On Scene | CHESAPEAKE LN an W (268.93) | 27 | 30 | 32.9324 | -97.20131 |
| 243 | Womack, Clay | 99 | 10/13/2024 0:16 | On Scene | CHESAPEAKE LN an W (270.67) | 27 | 30 | 32.9324 | -97.20144 |
| 243 | Womack, Clay | 100 | 10/13/2024 0:16 | On Scene | CHESAPEAKE LN an W (273.25) | 28 | 30 | 32.93241 | -97.20158 |
| 243 | Womack, Clay | 101 | 10/13/2024 0:16 | On Scene | CHESAPEAKE LN an W (276.22) | 28 | 30 | 32.93241 | -97.20171 |
| 243 | Womack, Clay | 102 | 10/13/2024 0:16 | On Scene | CHESAPEAKE LN an W (279.62) | 27 | 30 | 32.93243 | -97.20183 |
| 243 | Womack, Clay | 103 | 10/13/2024 0:17 | On Scene | CHESAPEAKE LN an W (280.7) | 27 | 30 | 32.93245 | -97.20196 |
| 243 | Womack, Clay | 104 | 10/13/2024 0:17 | On Scene | CHESAPEAKE LN an W (277.87) | 27 | 30 | 32.93247 | -97.20209 |
| 243 | Womack, Clay | 105 | 10/13/2024 0:17 | On Scene | CHESAPEAKE LN an W (274.14) | 27 | 30 | 32.93248 | -97.20222 |
| 243 | Womack, Clay | 106 | 10/13/2024 0:17 | On Scene | CHESAPEAKE LN an W (270.55) | 27 | 30 | 32.93248 | -97.20248 |
| 243 | Womack, Clay | 107 | 10/13/2024 0:17 | On Scene | CHESAPEAKE LN an W (269.35) | 26 | 30 | 32.93248 | -97.20261 |
| 243 | Womack, Clay | 108 | 10/13/2024 0:17 | On Scene | CHESAP | | | | |

**683**

| Case/IR | Barcode | Inventory Time | Description | Category Code | Location Code | Pkg Weight |
|---|---|---|---|---|---|---|
| 19SP053735 | 00017405 | 12/4/2019 11:14:04 AM | ROOM KEY WITH WHITE POWDER RESIDUE | KEYS | 19M-01 | |
| 19SP053735 | 00017406 | 12/4/2019 11:14:01 AM | ROOM KEY CARD | KEYS | 19M-01 | |
| 19SP053735 | 00017407 | 12/3/2019 10:25:40 AM | UNKNOWN WHITE POWDER | NA- DRUGS | DRUGS BOX 2 | 0 |
| 19SP053735 | 00017408 | 12/3/2019 10:25:35 AM | INDOCIN | NA- DRUGS | DRUGS BOX 2 | 6.7 |
| 19SP053735 | 00017409 | 12/3/2019 10:26:14 AM | WHITE SUBSTANCE FROM FLOOR COLLECTED BY TAPE | NA- DRUGS | DRUGS BOX 2 | 0 |
| 19SP053735 | 00017410 | | APPLE IPAD SN:DLXV60JDHPJ6 | ELECTRONICS | OTHER AGENCY CASE | |
| 19SP053735 | 00017411 | | BLACK APPLE IPHONE | PHONE | OTHER AGENCY CASE | |
| 19SP053735 | 00017412 | | PLASTIC PEN TUBE | MISC. ITEM | 19M-01 | |
| 19SP053735 | 00017413 | 12/3/2019 10:24:57 AM | BLUE PILL "M/30" | NA- DRUGS | OTHER AGENCY | 0 |
| 19SP053735 | 00017414 | 12/3/2019 10:25:01 AM | 5 PINK PILLS "K/56" | NA- DRUGS | OTHER AGENCY | 0 |
| 19SP053735 | 00017415 | | WALLET, RING, PASSPORT, ID, CASH, EARBUDS | MISC. ITEM | RETURNED | |
| 19SP053735 | 00017416 | | BLACK COWBOY HAT AND BUTTON SHIRT | CLOTHING | RETURNED | |
| 19SP053735 | 00017417 | | BACKPACK WITH PERSONAL BELONGINGS | MISC. ITEM | RETURNED | |
| 19SP053735 | 00017418 | | NORMATEC MACHINE | MISC. ITEM | RETURNED | |
| 19SP053735 | 00017419 | 12/4/2019 11:07:56 AM | BED SHEETS WITH BLOOD | MISC. ITEM | BULK DEATH | |
| 19SP053735 | 00017420 | 12/4/2019 11:08:01 AM | BEDDING WITH BLOOD | MISC. ITEM | BULK DEATH | |
| 19SP053735 | 00017421 | 12/4/2019 11:13:59 AM | OPEN BAG OF GUMMY BEARS | MISC. ITEM | 19M-01 | |

Total Records: 17
Report Filter: Case/IR ( Contains ) 53735

**684**

## Southlake Police Department
# Item History

**Barcode:** 00017411  
**Description:** BLACK APPLE IPHONE  
**Item No:** 007

| Date & Time | User | Assignee | Field | Old Value | New Value | Action | Location | Remarks | Signature |
|---|---|---|---|---|---|---|---|---|---|
| 9/9/2019 4:38 PM | sspencer | | Location | OTHER AGENCY | OTHER AGENCY CASE | Field Updated | OTHER AGENCY CASE | | |
| 9/3/2019 2:08 PM | sspencer | Spencer, Senora | | | | Transfer | OTHER AGENCY | RELEASED TO THE DEA BY CPL. GREEN 9/3/19 | |
| 9/3/2019 2:08 PM | sspencer | | Location | 19M-01 | OTHER AGENCY | Field Updated | OTHER AGENCY | | |
| 7/24/2019 9:59 AM | sspencer | Spencer, Senora | | | | Transfer | 19M-01 | | |
| 7/24/2019 9:59 AM | sspencer | | Location | OTHER AGENCY | 19M-01 | Field Updated | 19M-01 | | |
| 7/18/2019 11:16 AM | sspencer | | Location | BULK DEATH | OTHER AGENCY | Field Updated | OTHER AGENCY | | |
| 7/2/2019 9:53 AM | sspencer | Spencer, Senora | | | | Transfer | BULK DEATH | | |
| 7/2/2019 9:53 AM | sspencer | | Location | In-Transit | BULK DEATH | Field Updated | BULK DEATH | | |
| 7/2/2019 9:52 AM | sspencer | Spencer, Senora | | 005% | In-Transit | Approved | In-Transit | Item Approved From OIM | |
| 7/2/2019 9:51 AM | sspencer | ROBERSON, T | | | 005% | Submitted | In-Transit | Item Submitted From OIM | |

# Southlake Police Department
## Item History

Barcode: 00017411  Item No: 007

Description: BLACK APPLE IPHONE

| Date & Time | User | Assignee | Field | Old Value | New Value | Action | Location | Remarks | Signature |
|---|---|---|---|---|---|---|---|---|---|
| 9/9/2019 4:38 PM | sspencer | | Location | OTHER AGENCY | OTHER AGENCY CASE | Field Updated | OTHER AGENCY CASE | | |
| 9/3/2019 2:08 PM | sspencer | Spencer, Senora | | | | Transfer | OTHER AGENCY | RELEASED TO THE DEA BY CPL. GREEN 9/3/19 | |
| 9/3/2019 2:08 PM | sspencer | | Location | 19M-01 | OTHER AGENCY | Field Updated | OTHER AGENCY | | |
| 7/24/2019 9:59 AM | sspencer | Spencer, Senora | | | | Transfer | 19M-01 | | |
| 7/24/2019 9:59 AM | sspencer | | Location | OTHER AGENCY | 19M-01 | Field Updated | 19M-01 | | |
| 7/18/2019 11:16 AM | sspencer | | Location | BULK DEATH | OTHER AGENCY | Field Updated | OTHER AGENCY | | |
| 7/2/2019 9:53 AM | sspencer | Spencer, Senora | | | | Transfer | BULK DEATH | | |
| 7/2/2019 9:53 AM | sspencer | | Location | In-Transit | BULK DEATH | Field Updated | BULK DEATH | | |
| 7/2/2019 9:52 AM | sspencer | Spencer, Senora | | 005% | In-Transit | Approved | In-Transit | Item Approved From OIM | |
| 7/2/2019 9:51 AM | sspencer | ROBERSON, T | | | 005% | Submitted | In-Transit | Item Submitted From OIM | |

| Case/IR | Barcode | Inventory Time | Description | Category Code | Location Code | Pkg Weight |
|---|---|---|---|---|---|---|
| 19SP053735 | 00017405 | 12/4/2019 11:14:04 AM | ROOM KEY WITH WHITE POWDER RESIDUE | KEYS | 19M-01 | |
| 19SP053735 | 00017406 | 12/4/2019 11:14:01 AM | ROOM KEY CARD | KEYS | 19M-01 | |
| 19SP053735 | 00017407 | 12/3/2019 10:26:40 AM | UNKNOWN WHITE POWDER | NA- DRUGS | DRUGS BOX 2 | 0 |
| 19SP053735 | 00017408 | 12/3/2019 10:25:35 AM | INDOCIN | NA- DRUGS | DRUGS BOX 2 | 6.7 |
| 19SP053735 | 00017409 | 12/3/2019 10:25:14 AM | WHITE SUBSTANCE FROM FLOOR COLLECTED BY TAPE | NA- DRUGS | DRUGS BOX 2 | 0 |
| 19SP053735 | 00017410 | | APPLE IPAD SN:DLXV60J0HPJ6 | ELECTRONICS | OTHER AGENCY CASE | |
| 19SP053735 | 00017411 | | BLACK APPLE IPHONE | PHONE | OTHER AGENCY CASE | |
| 19SP053735 | 00017412 | | PLASTIC PEN TUBE | MISC. ITEM | 19M-01 | |
| 19SP053735 | 00017413 | 12/3/2019 10:24:57 AM | BLUE PILL "M/30" | NA- DRUGS | OTHER AGENCY | 0 |
| 19SP053735 | 00017414 | 12/3/2019 10:25:01 AM | 5 PINK PILLS "K/56" | NA- DRUGS | OTHER AGENCY | 0 |
| 19SP053735 | 00017415 | | WALLET, RING, PASSPORT, ID, CASH, EARBUDS | MISC. ITEM | RETURNED | |
| 19SP053735 | 00017416 | | BLACK COWBOY HAT AND BUTTON SHIRT | CLOTHING | RETURNED | |
| 19SP053735 | 00017417 | | BACKPACK WITH PERSONAL BELONGINGS | MISC. ITEM | RETURNED | |
| 19SP053735 | 00017418 | 12/4/2019 11:07:56 AM | NORMATEC MACHINE | MISC. ITEM | RETURNED | |
| 19SP053735 | 00017419 | 12/4/2019 11:07:56 AM | BED SHEETS WITH BLOOD | MISC. ITEM | BULK DEATH | |
| 19SP053735 | 00017420 | 12/4/2019 11:08:01 AM | BEDDING WITH BLOOD | MISC. ITEM | BULK DEATH | |
| 19SP053735 | 00017421 | 12/4/2019 11:13:59 AM | OPEN BAG OF GUMMY BEARS | MISC. ITEM | 19M-01 | |

Total Records: 17
Report Filter: Case/IR ( Contains ) 53735

7/8/2024 7:53:03 AM

1 of 1

**687**

| Case/IR | Barcode | Inventory Time | Description | Category Code | Location Code | Pkg Weight |
|---|---|---|---|---|---|---|
| 19SP053735 | 00017405 | 12/4/2019 11:14:04 AM | ROOM KEY WITH WHITE POWDER RESIDUE | KEYS | 19M-01 | |
| 19SP053735 | 00017406 | 12/4/2019 11:14:01 AM | ROOM KEY CARD | KEYS | 19M-01 | |
| 19SP053735 | 00017407 | 12/3/2019 10:25:40 AM | UNKNOWN WHITE POWDER | NA- DRUGS | DRUGS BOX 2 | 0 |
| 19SP053735 | 00017408 | 12/3/2019 10:25:35 AM | INDOCIN | NA- DRUGS | DRUGS BOX 2 | 6.7 |
| 19SP053735 | 00017409 | 12/3/2019 10:25:14 AM | WHITE SUBSTANCE FROM FLOOR COLLECTED BY TAPE | NA- DRUGS | DRUGS BOX 2 | 0 |
| 19SP053735 | 00017410 | | APPLE IPAD SN:DLXV60JDHPJ6 | ELECTRONICS | OTHER AGENCY CASE | |
| 19SP053735 | 00017411 | | BLACK APPLE IPHONE | PHONE | OTHER AGENCY CASE | |
| 19SP053735 | 00017412 | | PLASTIC PEN TUBE | MISC. ITEM | 19M-01 | |
| 19SP053735 | 00017413 | 12/3/2019 10:24:57 AM | BLUE PILL "M/30" | NA- DRUGS | OTHER AGENCY | 0 |
| 19SP053735 | 00017414 | 12/3/2019 10:25:01 AM | 5 PINK PILLS "K/56" | NA- DRUGS | OTHER AGENCY | 0 |
| 19SP053735 | 00017415 | | WALLET, RING, PASSPORT, ID, CASH, EARBUDS | MISC. ITEM | RETURNED | |
| 19SP053735 | 00017416 | | BLACK COWBOY HAT AND BUTTON SHIRT | CLOTHING | RETURNED | |
| 19SP053735 | 00017417 | | BACKPACK WITH PERSONAL BELONGINGS | MISC. ITEM | RETURNED | |
| 19SP053735 | 00017418 | | NORMATEC MACHINE | MISC. ITEM | RETURNED | |
| 19SP053735 | 00017419 | 12/4/2019 11:07:56 AM | BED SHEETS WITH BLOOD | MISC. ITEM | BULK DEATH | |
| 19SP053735 | 00017420 | 12/4/2019 11:08:01 AM | BEDDING WITH BLOOD | MISC. ITEM | BULK DEATH | |
| 19SP053735 | 00017421 | 12/4/2019 11:13:59 AM | OPEN BAG OF GUMMY BEARS | MISC. ITEM | 19M-01 | |

1 of 1

Total Records: 17
Report Filter: Case/IR ( Contains ) 53735

7/8/2024 7:53:03 AM

Exhibit 23

November 19, 2024, TPIA Request #3
to the Grapevine PD

**Texas Public Information Act Request**

**Date:** November 19, 2024
**To:** Grapevine Police Department
**Attn:** Public Records Coordinator

**Re:** Request for Records Related to Grapevine PD Case Number 1900038391.

Dear Public Records Coordinator,

Pursuant to the Texas Public Information Act (TPIA), I respectfully request copies of all records, documents, and related materials concerning the handling, storage, and disposition of physical and digital evidence associated with **Grapevine PD Case Number 1900038391**. Specifically, I request the following:

1. **Records Pertaining to Physical Evidence**

   - A detailed inventory of all physical evidence associated with this case that was stored in the Grapevine PD Evidence Room, including:

     o Any Chain of Custody forms documenting the transfer, storage, and handling of the physical evidence.
     o Item History reports reflecting all activity related to physical evidence, including entries, exits, and transfers.
     o Current disposition and location of all physical evidence, including any evidence transferred to another agency, destroyed, or remains in storage.

2. **Records Pertaining to Digital Evidence Stored on the Grapevine PD Forensic Server**

   - A complete record of digital evidence stored on the Grapevine PD forensic server related to this case, specifically:

     o Records of the **Apple iPhone and Apple iPad extractions** performed by Detective Richard Weber on **July 17, 2019** (iPhone) and **July 18, 2019** (iPad).
     o Forensic server logs identifying who accessed these files, the date and time of each access, and the nature of any associated actions (e.g., transfer, modification, or deletion).
     o Any documentation related to the transfer of these digital files to the Southlake PD on **April 5, 2021**, including:

       ▪ The name and role of the requesting party.
       ▪ The name and role of the recipient at Southlake PD.
       ▪ Any associated transfer documentation, such as emails, Chain of Custody forms, or requests for assistance.

**690**

3.  **Timeline and Disposition Documentation**

- All documents explaining or detailing what triggered the transfer of digital evidence to the Southlake PD on **April 5, 2021,** and the method used for the transfer (e.g., server-to-server transfer or physical media).
- Documentation showing the current status of the digital evidence, including where it is currently stored and whether it remains accessible.

4. **Records for Physical Media Storing Digital Evidence**

- Any documentation confirming whether digital evidence was saved to physical media (e.g., USB drives, hard drives) and subsequently stored in the Grapevine PD Evidence Room.
- Chain of Custody forms, Item History reports, and disposition records for such physical media, if applicable.

**Delivery Request**

Please send these records in electronic format, if possible, to e.ladsous@delta7group.com. If electronic delivery is not feasible, I am happy to receive physical copies at 4712 E 2nd Street, Suite 231, Long Beach, CA 90803.

**Contact Information**

If clarification is required, or if fees are anticipated to exceed $50, please contact.

Thank you for your assistance in providing these records.

Sincerely,

Emmanuel Ladsous
Private Investigator (CA PI Lic. 188424)
**Delta 7 Group, LLC**
4712 E. 2nd Street
Suite 231
Long Beach, CA 90803
Email: E.Ladsous@Delta7Group.com

Exhibit 24

November 21, 2024, TPIA Request #12
to the Southlake PD

| From: | E. Ladsous . Delta 7 Group |
|---|---|
| To: | dpsrecords@ci.southlake.tx.us |
| Cc: | Lindsey S. Susolik; sladsous@tocounsel.com |
| Subject: | Re: Public Information Act Request for Digital and Physical Evidence Related to Grapevine PD Case No. 1900038391 |
| Date: | Thursday, November 21, 2024 11:11:00 AM |
| Attachments: | image001.png |
| | image002.png |
| | image003.png |
| | 1900038391.pdf |

Dear Southlake Police Department,

Pursuant to the Texas Public Information Act, I am requesting records for all **physical and digital derivative evidence related to Grapevine PD Case No. 1900038391** that was transferred to or created for the Southlake PD, including but not limited to the iPhone and iPad examined by Detective Weber, the two Cellebrite Reader reports provided to Detective Green, the extraction files transferred from the Grapevine PD forensic server to the Southlake PD server on April 5, 2021, and any other derivative evidence created during or following the forensic analysis, such as files stored on physical media (e.g., USB drives or hard drives). This request also includes any logs, chain of custody forms, item history reports, or correspondence documenting this evidence's handling, storage, or transfer. I have attached the Grapevine PD report for your review.

**Background and Clarifications**

The Southlake Police Department requested forensic support from the Grapevine PD to analyze an **Apple iPhone and iPad** as part of an investigation. The request led to Grapevine PD performing forensic extractions and creating derivative evidence under Case No. 1900038391. Specifically:

1. **July 17, 2019 – Forensic Analysis of iPhone:**

   o  Detective Green delivered an Apple iPhone to Detective Richard Weber, a Computer and Mobile Device Forensics Examiner with Grapevine PD.
   o  Weber conducted two Advanced Logical Extractions (Methods A and B) on the iPhone using Cellebrite UFED Physical Analyzer and generated a UFED Reader Report.
   o  The extraction files were stored on the Grapevine PD forensic server.

2. **July 18, 2019 – Forensic Analysis of iPad:**

   o  Detective Green delivered an Apple iPad to Detective Weber, who conducted two Advanced Logical Extractions (Methods A and B) and generated another UFED

**693**

Reader Report.

- The extraction files were also stored on the Grapevine PD forensic server.

3. **July 22, 2019 – Devices Returned to Southlake PD:**

- Both the iPhone and iPad were returned to Detective Green, along with the UFED Reader Reports.

4. **April 5, 2021 – Digital Evidence Transferred:**

- Detective Weber transferred the extraction files stored on the Grapevine PD forensic server to the Southlake PD server, marking Grapevine PD's final action regarding the derivative evidence.

**Specific Requests**

To ensure a complete understanding of the handling, transfer, and preservation of this derivative evidence, I request the following:

1. **Records of Digital Evidence:**

- Documentation of the UFED Reader Reports (iPhone and iPad) provided to Detective Green on July 17 and July 18, 2019.
- Records of the digital evidence transferred from Grapevine PD to Southlake PD on April 5, 2021, including:

    - Who requested the transfer,
    - A list of files transferred (e.g., extraction files, reports),
    - The recipient of the files,
    - Associated logs or correspondence, including emails between the Southlake PD and the Grapevine PD documenting the transfer.

2. **Records of Physical Evidence:**

- **Physical Evidence**: Provide chain of custody forms, item history reports, or any other records documenting the physical evidence, including the iPhone and iPad, returned to Southlake PD by Grapevine PD on July 22, 2019. This includes documentation of the evidence's storage, handling, or transfer within Southlake PD.
- **Derivative Evidence**: Provide all records related to the Cellebrite Reader reports created as derivative evidence for the iPhone and iPad, including chain of custody

**694**

forms, item history reports, and storage or handling documentation. Include any other derivative evidence (e.g., extraction files, reports, or physical media such as USB drives or hard drives) provided by Grapevine PD as part of the forensic examination.

3. **Southlake PD Case Information:**

   - Any Southlake PD case number(s) or records associated with Grapevine PD Case No. 1900038391.

4. **Verification of Transfer:**

   - Per Grapevine PD's report, the files were transferred on April 5, 2021. I request any logs or records showing how and when this transfer was conducted and what was included in the transfer.

This request aims to ensure transparency and to document the complete chain of custody for derivative evidence created during the forensic support provided by Grapevine PD. I am simply seeking to clarify the handling and status of this evidence for investigative purposes.

Please do not hesitate to contact me if you require any clarification or additional information. Thank you for your assistance and attention to this matter.

Sincerely,

Emmanuel

_____

**Emmanuel Ladsous**
President / Private Investigator
**Delta 7 Group, LLC**
A Professional Security Consultancy
4712 E 2nd Street, Suite 231
Long Beach, CA 90803-5309
Phone:  (800) 689-6546, Ext. 700
Mobile: (949) 423-4350
Email address:  E.Ladsous@Delta7Group.com
Website:        www.Delta7Group.com
CA PI License#    188424



 

**This email is unsecured and subject to monitoring.**

CONFIDENTIALITY NOTICE:  This communication and any documents, files, or previous email messages attached constitute an electronic communication within the scope of the Electronic Communication Privacy Act, 18 U.S. Code § 2510. This communication may contain non-public, confidential, or legally privileged information intended for the designated recipient(s) sole use. The unlawful interception, use, or disclosure of such information is strictly prohibited under 18 U.S. Code § 2511 and applicable laws. If you are not the intended recipient or have received this communication in error, please notify the sender immediately by email to E.Ladsous@Delta7Group.com and delete all copies of this communication, including attachments, without reading or saving them in any matter.

Exhibit 25

Ms. Bronstein's December 9, 2024,
response to TPIA Request #12



6000 WESTERN PLACE, SUITE 200
FORT WORTH, TEXAS 76107

TELEPHONE: (817) 806-5242
PIA@TOASE.COM

Bessie Bronstein
pia@toase.com

December 9, 2024

Emmanuel Ladsous
DELTA 7 GROUP, LLC
4712 E. 2nd Street, Suite 231
Long Beach, California 90803
e.ladsous@delta7group.com

> Re:   *Public Information Request Received by the City of Southlake on November 21, 2024*

Dear Mr. Ladsous:

I represent the City of Southlake regarding the above-described matter. Enclosed please find the information that the City has in their custody that is responsive to your request dated November 21, 2024.

The City understands the rights of all citizens to make requests for public information and invites all citizens to avail themselves of that right. Should you have any questions, please do not hesitate to contact me. Of course, all questions may also be forwarded to the Office of the Texas Attorney General, Open Government Hotline, at (512) 478-6736 or toll-free at 1-877-673-6839.

Sincerely,

Bessie Bronstein

BB:dlw
Enclosures

V:\Southlake\PIA--SUBPOENAS\2024\Ladsous, Emmanuel 11 21 24\To Requestor\Ladsous BB001 docx

**698**

# GRAPEVINE POLICE DEPARTMENT

Page 1

## Call For Service Report

### Call For Service

| | | | | | |
|---|---|---|---|---|---|
| Cad Number | 1900048968 | Date / Time Call Received | 07/17/19 11:42:19 | Call Received by | SMITH, T #9524 |
| | | Call Entered by | SMITH, T #9524 | Call Source | Field generated call |
| Call Type | ASSIST OTHER AGENCY | Location Name | | Location Type | |
| Location(St#, St,Int. St,Apt,City,Zip, | 600 | State St | | | SOUTHLAKE |

### Reportee

Reportee (First,Middle,Last)

Reportee Street Number                                                    Phone

### Units

| | | | | | |
|---|---|---|---|---|---|
| Unit Number 522 | Officer Name WEBER, R #5250 | Dispatched by SMITH, T #9524 | | D/T Dispatched 07/17/19 11:42:36 | |
| Enroute by SMITH, T #9524 | D/T Enroute 07/17/19 11:42:36 | Arrived by SMITH, T #9524 | | D/T Arrived 07/17/19 11:42:36 | |
| Cleared by SMITH, T #9524 | D/T Cleared 07/17/19 11:42:56 | Disposition 1 R REPORT | | Disposition 2 | |
| Disposition 3 | | | | | |

### Police

| | | | | |
|---|---|---|---|---|
| Unit Number 522 | Police Number 1900038391 | D/T Arrested | | Prisoner Transport |
| End Transport | | Mileage In | Mileage Out | |

### Occupant/Suspect

| ID | Type | Occupant Name | | D.O.B. |
|---|---|---|---|---|
| Race | Sex | Age | Weight | Height ` " | Hair Color |
| Skin Tone | | Clothing | | |

### Vehicle

| LICENSE | MODEL | STATUS | Wrecker Company |
|---|---|---|---|
| STATE | YEAR | VEHICLE TYPE | DT Wrecker Arrivec |
| Lic. Exp. Date | MAKE | BODY STYLE | DT Wrecker Called |
| VIN | COLOR | VALUE | UNIT # |

### Call Remarks

**699**

## Grapevine Police Department
*1007 Ira E Woods Ave, Grapevine, TX 76051*

| | | |
|---|---|---|
| **ORI:** TX2201300 | **Incident No:** 1900038391 | **Date:** 09/12/2024 |

**Incident**

| | | |
|---|---|---|
| **CAD NO.** | **Other No.**<br>N/A | **Date Occurred:**<br>2019-07-17 11:42 |
| **Incident Type:**<br>Non-Criminal | **Incident Status:**<br>Open | **Report Type:**<br>Information Only-No Criminal Offense |
| **Report By:**<br>WEBER, R #5250 (#) | **Report Date:**<br>09/10/2019 | |
| **Approved By:**<br>YARBROUGH, D #6952 (#) | **Approved Date:**<br>09/10/2019 | |
| **Audited by:**<br>SMITH,H#12543 | **Audited Date:**<br>09/11/2019 | |
| **Clear Date:** | **Exc Clear:** | **Family Violence:**<br>No |
| **Investigator:**<br>WEBER, R #5250 | **Inv Status:**<br>Closed | |
| **Description:**<br>ASSIST OTHER AGENCY | | |

**Incident OFFENSE Report**

| **Offense No:** 1 | | | **Offense Recording Date:** 09/11/2019 |
|---|---|---|---|
| **Offense Begin Date:**<br>07/17/2019 | **Offense End Date:** | **Entry Method:** | **Attempt/Complete:**<br>Completed |
| **Drug Seized:** | **Gang Related:** | **Hi-Speed Pursuit:** | **Weapons Used:**<br>N/A |
| **Offense Code:** | **Offense:**<br>ASSIST OTHER AGENCY | | **No. of Premises:** |
| **Bias Motivation:** | **Agg Assit/Homic. Circumst.:** | | **Supplement:** |
| **Offense Address:** | | | |
| **Remarks:** | | | |

**Other Involved Organization(s)**

| **Name:** | **Phone:** | **Address:** |
|---|---|---|
| Southlake Police Department | **Work Phone:** (817) 748-8149 | **Mailing:** |

**Incident PROPERTY Report**

## *Grapevine Police Department*

*1007 Ira E Woods Ave, Grapevine, TX 76051*

| | |
|---|---|
| **Item Name:** IPHONE DOWNLOAD | |
| **Recorded:** 09/10/2019 | **Status:** Evidence |
| **Jurisdiction:** Yes | **Item Type:** Other |
| **Make/Brand:** | **Model:** |
| **Size/Year:** | **Color:** |
| **Serial No/VIN:** | **Structure:** |
| **Pieces/Quantity:** | **Units:** |
| **Total Value:** | **Supplement:** Primary |
| **Involved:** | |
| **Description:** ON FORENSIC SERVER | |

| | |
|---|---|
| **Item Name:** IPAD DOWNLOAD | |
| **Recorded:** 09/10/2019 | **Status:** Evidence |
| **Jurisdiction:** Yes | **Item Type:** Other |
| **Make/Brand:** | **Model:** |
| **Size/Year:** | **Color:** |
| **Serial No/VIN:** | **Structure:** |
| **Pieces/Quantity:** | **Units:** |
| **Total Value:** | **Supplement:** Primary |
| **Involved:** | |
| **Description:** ON FORENSIC SERVER | |

**701**

# Grapevine Police Department
## Narrative

Date of report: 2019-09-10                              Case Number: 1900038391

---

**WEDNESDAY JULY 17, 2019 APPROXIMATELY 1100 HOURS**

I took possession of an Apple iPhone and an Apple iPad from Det. Green of the Southlake Police Department. The devices were in airplane mode and the passcode was 082222. The downloads were performed with the consent of the owner.

Using the Cellebrite UFED Physical Analyzer I did two Advanced Logical downloads of the iPhone, Method 1 and Method2. The downloads completed successfully and after parsing the data, I generated a UFED Reader report for Det. Green to review.

**THURSDAY JULY 18, 2019**

Using the Cellebrite UFED Physical Analyzer I did two Advanced Logical extractions of the iPad, Method 1 and Method 2. The downloads completed successfully and after parsing the data, I generated a UFED Reader report for Det. Green to review.

**MONDAY JULY 22, 2019**

The iPhone and iPad were returned to Det. Green

---

Officer: WEBER, R                                        ID#: 5250
Approving Supervisor: YARBROUGH, D                       ID#: 6952

# Grapevine Police Department
## Supplement

Date of report: 2019-09-10                          Case Number: 1900038391-1

MONDAY APRIL 5, 2021

Moved the electronic evidence associated with this investigation from the Grapevine Server to the Southlake Server.

Officer: WEBER, R                                      ID#: 5250
Approving Supervisor: SAVAGE, R                        ID#: 6820

**703**

| Unit | Personnel | Footprint # | Date/Time | Unit Status | Nearest Intersectio | Direction | Unit MPH | Road MPH | Latitude | Longitude |
|---|---|---|---|---|---|---|---|---|---|---|
| 243 | Womack, Clay | 1 | 10/12/2024 23:59 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92909 | -97.20026 |
| 243 | Womack, Clay | 2 | 10/13/2024 0:00 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92909 | -97.20026 |
| 243 | Womack, Clay | 3 | 10/13/2024 0:00 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92909 | -97.20026 |
| 243 | Womack, Clay | 4 | 10/13/2024 0:00 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92909 | -97.20026 |
| 243 | Womack, Clay | 5 | 10/13/2024 0:00 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92909 | -97.20026 |
| 243 | Womack, Clay | 6 | 10/13/2024 0:00 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92909 | -97.20026 |
| 243 | Womack, Clay | 7 | 10/13/2024 0:00 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92909 | -97.20027 |
| 243 | Womack, Clay | 8 | 10/13/2024 0:01 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92909 | -97.20026 |
| 243 | Womack, Clay | 9 | 10/13/2024 0:01 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92909 | -97.20026 |
| 243 | Womack, Clay | 10 | 10/13/2024 0:01 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92909 | -97.20027 |
| 243 | Womack, Clay | 11 | 10/13/2024 0:01 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.9291 | -97.20027 |
| 243 | Womack, Clay | 12 | 10/13/2024 0:01 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.9291 | -97.20027 |
| 243 | Womack, Clay | 13 | 10/13/2024 0:02 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.9291 | -97.20027 |
| 243 | Womack, Clay | 14 | 10/13/2024 0:02 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.9291 | -97.20027 |
| 243 | Womack, Clay | 15 | 10/13/2024 0:02 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.9291 | -97.20027 |
| 243 | Womack, Clay | 16 | 10/13/2024 0:02 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.9291 | -97.20027 |
| 243 | Womack, Clay | 17 | 10/13/2024 0:02 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.9291 | -97.20027 |
| 243 | Womack, Clay | 18 | 10/13/2024 0:02 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.9291 | -97.20027 |
| 243 | Womack, Clay | 19 | 10/13/2024 0:03 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.9291 | -97.20027 |
| 243 | Womack, Clay | 20 | 10/13/2024 0:03 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.9291 | -97.20027 |
| 243 | Womack, Clay | 21 | 10/13/2024 0:03 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.9291 | -97.20027 |
| 243 | Womack, Clay | 22 | 10/13/2024 0:03 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.9291 | -97.20027 |
| 243 | Womack, Clay | 23 | 10/13/2024 0:03 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.9291 | -97.20027 |
| 243 | Womack, Clay | 24 | 10/13/2024 0:03 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.9291 | -97.20027 |
| 243 | Womack, Clay | 25 | 10/13/2024 0:04 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92909 | -97.20027 |
| 243 | Womack, Clay | 26 | 10/13/2024 0:04 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92909 | -97.20027 |
| 243 | Womack, Clay | 27 | 10/13/2024 0:04 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92909 | -97.20027 |
| 243 | Womack, Clay | 28 | 10/13/2024 0:04 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.9291 | -97.20027 |
| 243 | Womack, Clay | 29 | 10/13/2024 0:04 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.9291 | -97.20027 |
| 243 | Womack, Clay | 30 | 10/13/2024 0:04 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.9291 | -97.20028 |
| 243 | Womack, Clay | 31 | 10/13/2024 0:05 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.9291 | -97.20028 |
| 243 | Womack, Clay | 32 | 10/13/2024 0:05 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.9291 | -97.20028 |
| 243 | Womack, Clay | 33 | 10/13/2024 0:05 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.9291 | -97.20028 |
| 243 | Womack, Clay | 34 | 10/13/2024 0:05 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92909 | -97.20028 |
| 243 | Womack, Clay | 35 | 10/13/2024 0:05 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92909 | -97.20028 |
| 243 | Womack, Clay | 36 | 10/13/2024 0:05 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92909 | -97.20028 |
| 243 | Womack, Clay | 37 | 10/13/2024 0:06 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92909 | -97.20027 |
| 243 | Womack, Clay | 38 | 10/13/2024 0:06 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92909 | -97.20027 |
| 243 | Womack, Clay | 39 | 10/13/2024 0:06 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92909 | -97.20027 |
| 243 | Womack, Clay | 40 | 10/13/2024 0:06 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92908 | -97.20027 |
| 243 | Womack, Clay | 41 | 10/13/2024 0:06 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92908 | -97.20027 |
| 243 | Womack, Clay | 42 | 10/13/2024 0:06 | On Scene | CHESAPEAKE LN and MICHENEI | 1 | | 30 | 32.92908 | -97.20027 |
| 243 | Womack, Clay | 43 | 10/13/2024 0:07 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92908 | -97.20027 |
| 243 | Womack, Clay | 44 | 10/13/2024 0:07 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92908 | -97.20027 |
| 243 | Womack, Clay | 45 | 10/13/2024 0:07 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92908 | -97.20026 |
| 243 | Womack, Clay | 46 | 10/13/2024 0:07 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92908 | -97.20026 |
| 243 | Womack, Clay | 47 | 10/13/2024 0:07 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92908 | -97.20026 |
| 243 | Womack, Clay | 48 | 10/13/2024 0:07 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92907 | -97.20026 |
| 243 | Womack, Clay | 49 | 10/13/2024 0:08 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92907 | -97.20026 |
| 243 | Womack, Clay | 50 | 10/13/2024 0:08 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92907 | -97.20026 |
| 243 | Womack, Clay | 51 | 10/13/2024 0:08 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92907 | -97.20026 |
| 243 | Womack, Clay | 52 | 10/13/2024 0:08 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92907 | -97.20026 |
| 243 | Womack, Clay | 53 | 10/13/2024 0:08 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92907 | -97.20025 |
| 243 | Womack, Clay | 54 | 10/13/2024 0:08 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92907 | -97.20025 |
| 243 | Womack, Clay | 55 | 10/13/2024 0:09 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92907 | -97.20025 |
| 243 | Womack, Clay | 56 | 10/13/2024 0:09 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92907 | -97.20025 |
| 243 | Womack, Clay | 57 | 10/13/2024 0:09 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92906 | -97.20025 |
| 243 | Womack, Clay | 58 | 10/13/2024 0:09 | On Scene | CHESAPEAKE LN and W (262.34) | | 3 | 30 | 32.92906 | -97.20026 |
| 243 | Womack, Clay | 59 | 10/13/2024 0:09 | On Scene | CHESAPEAKE LN and SW (241.96 | | 4 | 30 | 32.92905 | -97.20028 |
| 243 | Womack, Clay | 60 | 10/13/2024 0:09 | On Scene | CHESAPEAKE LN and SW (244.3? | | 5 | 30 | 32.92904 | -97.2003 |
| 243 | Womack, Clay | 61 | 10/13/2024 0:10 | On Scene | CHESAPEAKE LN and W (252.86) | | 7 | 30 | 32.92904 | -97.20033 |
| 243 | Womack, Clay | 62 | 10/13/2024 0:10 | On Scene | CHESAPEAKE LN and W (262.75) | | 10 | 30 | 32.92904 | -97.20037 |
| 243 | Womack, Clay | 63 | 10/13/2024 0:10 | On Scene | CHESAPEAKE LN and W (273.5) | | 11 | 30 | 32.92904 | -97.20042 |
| 243 | Womack, Clay | 64 | 10/13/2024 0:10 | On Scene | CHESAPEAKE LN and W (287.5) | | 13 | 30 | 32.92906 | -97.20048 |
| 243 | Womack, Clay | 65 | 10/13/2024 0:10 | On Scene | CHESAPEAKE LN and NW (299.2 | | 14 | 30 | 32.92908 | -97.20054 |

**704**

| 243 Womack, Clay | 66 | 10/13/2024 0:10 On Scene | CHESAPEAKE LN an NW (321.3 | 16 | 30 | 32.92913 | -97.20059 |
| 243 Womack, Clay | 67 | 10/13/2024 0:11 On Scene | CHESAPEAKE LN an NW (335.0 | 15 | 30 | 32.92918 | -97.20063 |
| 243 Womack, Clay | 68 | 10/13/2024 0:11 On Scene | CHESAPEAKE LN an N (338.23) | 15 | 30 | 32.92924 | -97.20065 |
| 243 Womack, Clay | 69 | 10/13/2024 0:11 On Scene | CHESAPEAKE LN an N (1.59) | 17 | 30 | 32.92937 | -97.20065 |
| 243 Womack, Clay | 70 | 10/13/2024 0:11 On Scene | CHESAPEAKE LN an N (1.36) | 19 | 30 | 32.92944 | -97.20065 |
| 243 Womack, Clay | 71 | 10/13/2024 0:11 On Scene | CHESAPEAKE LN an N (1.26) | 20 | 30 | 32.92952 | -97.20064 |
| 243 Womack, Clay | 72 | 10/13/2024 0:11 On Scene | CHESAPEAKE LN an N (1.3) | 21 | 30 | 32.9296 | -97.20064 |
| 243 Womack, Clay | 73 | 10/13/2024 0:12 On Scene | CHESAPEAKE LN an N (1.37) | 23 | 30 | 32.92969 | -97.20064 |
| 243 Womack, Clay | 74 | 10/13/2024 0:12 On Scene | CHESAPEAKE LN an N (0.33) | 24 | 30 | 32.92979 | -97.20064 |
| 243 Womack, Clay | 75 | 10/13/2024 0:12 On Scene | CHESAPEAKE LN an N (0.58) | 25 | 30 | 32.92989 | -97.20064 |
| 243 Womack, Clay | 76 | 10/13/2024 0:12 On Scene | CHESAPEAKE LN an N (0.49) | 27 | 30 | 32.93 | -97.20063 |
| 243 Womack, Clay | 77 | 10/13/2024 0:12 On Scene | CHESAPEAKE LN an N (359.87) | 27 | 30 | 32.93011 | -97.20063 |
| 243 Womack, Clay | 78 | 10/13/2024 0:12 On Scene | CHESAPEAKE LN an N (359.76) | 28 | 30 | 32.93023 | -97.20063 |
| 243 Womack, Clay | 79 | 10/13/2024 0:13 On Scene | CHESAPEAKE LN an N (359.6) | 29 | 30 | 32.93034 | -97.20063 |
| 243 Womack, Clay | 80 | 10/13/2024 0:13 On Scene | CHESAPEAKE LN an N (358.32) | 29 | 30 | 32.93058 | -97.20064 |
| 243 Womack, Clay | 81 | 10/13/2024 0:13 On Scene | CHESAPEAKE LN an N (358.05) | 30 | 30 | 32.9307 | -97.20064 |
| 243 Womack, Clay | 82 | 10/13/2024 0:13 On Scene | CHESAPEAKE LN an N (359.13) | 32 | 30 | 32.93083 | -97.20065 |
| 243 Womack, Clay | 83 | 10/13/2024 0:13 On Scene | CHESAPEAKE LN an N (359.89) | 32 | 30 | 32.93096 | -97.20065 |
| 243 Womack, Clay | 84 | 10/13/2024 0:13 On Scene | CHESAPEAKE LN an N (0.21) | 32 | 30 | 32.93108 | -97.20064 |
| 243 Womack, Clay | 85 | 10/13/2024 0:14 On Scene | CHESAPEAKE LN an N (0.03) | 32 | 30 | 32.93121 | -97.20065 |
| 243 Womack, Clay | 86 | 10/13/2024 0:14 On Scene | CHESAPEAKE LN an N (0.42) | 32 | 30 | 32.93134 | -97.20065 |
| 243 Womack, Clay | 87 | 10/13/2024 0:14 On Scene | CHESAPEAKE LN an N (359.37) | 31 | 30 | 32.93147 | -97.20064 |
| 243 Womack, Clay | 88 | 10/13/2024 0:14 On Scene | CHESAPEAKE LN an N (359.58) | 31 | 30 | 32.93159 | -97.20065 |
| 243 Womack, Clay | 89 | 10/13/2024 0:14 On Scene | CHESAPEAKE LN an N (358.62) | 29 | 30 | 32.93183 | -97.20066 |
| 243 Womack, Clay | 90 | 10/13/2024 0:14 On Scene | CHESAPEAKE LN an N (356.16) | 28 | 30 | 32.93195 | -97.20067 |
| 243 Womack, Clay | 91 | 10/13/2024 0:15 On Scene | CHESAPEAKE LN an N (356.82) | 26 | 30 | 32.93205 | -97.20067 |
| 243 Womack, Clay | 92 | 10/13/2024 0:15 On Scene | CHESAPEAKE LN an N (345.96) | 23 | 30 | 32.93214 | -97.20069 |
| 243 Womack, Clay | 93 | 10/13/2024 0:15 On Scene | CHESAPEAKE LN an N (341.32) | 24 | 30 | 32.93223 | -97.20072 |
| 243 Womack, Clay | 94 | 10/13/2024 0:15 On Scene | CHESAPEAKE LN an NW (326.4 | 23 | 30 | 32.93231 | -97.20078 |
| 243 Womack, Clay | 95 | 10/13/2024 0:15 On Scene | CHESAPEAKE LN an NW (301.5 | 23 | 30 | 32.93237 | -97.20087 |
| 243 Womack, Clay | 96 | 10/13/2024 0:15 On Scene | CHESAPEAKE LN an W (285.74) | 21 | 30 | 32.9324 | -97.20096 |
| 243 Womack, Clay | 97 | 10/13/2024 0:16 On Scene | CHESAPEAKE LN an W (267.68) | 26 | 30 | 32.9324 | -97.20119 |
| 243 Womack, Clay | 98 | 10/13/2024 0:16 On Scene | CHESAPEAKE LN an W (268.93) | 27 | 30 | 32.9324 | -97.20131 |
| 243 Womack, Clay | 99 | 10/13/2024 0:16 On Scene | CHESAPEAKE LN an W (270.67) | 27 | 30 | 32.9324 | -97.20144 |
| 243 Womack, Clay | 100 | 10/13/2024 0:16 On Scene | CHESAPEAKE LN an W (273.25) | 28 | 30 | 32.93241 | -97.20158 |
| 243 Womack, Clay | 101 | 10/13/2024 0:16 On Scene | CHESAPEAKE LN an W (276.22) | 28 | 30 | 32.93241 | -97.20171 |
| 243 Womack, Clay | 102 | 10/13/2024 0:16 On Scene | CHESAPEAKE LN an W (279.62) | 27 | 30 | 32.93243 | -97.20183 |
| 243 Womack, Clay | 103 | 10/13/2024 0:17 On Scene | CHESAPEAKE LN an W (280.7) | 27 | 30 | 32.93245 | -97.20196 |
| 243 Womack, Clay | 104 | 10/13/2024 0:17 On Scene | CHESAPEAKE LN an W (277.87) | 27 | 30 | 32.93247 | -97.20209 |
| 243 Womack, Clay | 105 | 10/13/2024 0:17 On Scene | CHESAPEAKE LN an W (274.14) | 27 | 30 | 32.93248 | -97.20222 |
| 243 Womack, Clay | 106 | 10/13/2024 0:17 On Scene | CHESAPEAKE LN an W (270.55) | 27 | 30 | 32.93248 | -97.20248 |
| 243 Womack, Clay | 107 | 10/13/2024 0:17 On Scene | CHESAPEAKE LN an W (269.35) | 26 | 30 | 32.93248 | -97.20261 |
| 243 Womack, Clay | 108 | 10/13/2024 0:17 On Scene | CHESAP | | | | |

| Case/IR | Barcode | Inventory Time | Description | Category Code | Location Code | Pkg Weight |
|---|---|---|---|---|---|---|
| 19SP053735 | 00017405 | 12/4/2019 11:14:04 AM | ROOM KEY WITH WHITE POWDER RESIDUE | KEYS | 19M-01 | |
| 19SP053735 | 00017406 | 12/4/2019 11:14:01 AM | ROOM KEY CARD | KEYS | 19M-01 | |
| 19SP053735 | 00017407 | 12/3/2019 10:25:40 AM | UNKNOWN WHITE POWDER | NA- DRUGS | DRUGS BOX 2 | 0 |
| 19SP053735 | 00017408 | 12/3/2019 10:25:35 AM | INDOCIN | NA- DRUGS | DRUGS BOX 2 | 6.7 |
| 19SP053735 | 00017409 | 12/3/2019 10:25:14 AM | WHITE SUBSTANCE FROM FLOOR COLLECTED BY TAPE | NA- DRUGS | DRUGS BOX 2 | 0 |
| 19SP053735 | 00017410 | | APPLE IPAD SN:DLXV60JDHPJ6 | ELECTRONICS | OTHER AGENCY CASE | |
| 19SP053735 | 00017411 | | BLACK APPLE IPHONE | PHONE | OTHER AGENCY CASE | |
| 19SP053735 | 00017412 | | PLASTIC PEN TUBE | MISC. ITEM | 19M-01 | |
| 19SP053735 | 00017413 | 12/3/2019 10:24:57 AM | BLUE PILL "M/30" | NA- DRUGS | OTHER AGENCY | 0 |
| 19SP053735 | 00017414 | 12/3/2019 10:25:01 AM | 5 PINK PILLS "K/56" | NA- DRUGS | OTHER AGENCY | 0 |
| 19SP053735 | 00017415 | | WALLET, RING, PASSPORT, ID, CASH, EARBUDS | MISC. ITEM | RETURNED | |
| 19SP053735 | 00017416 | | BLACK COWBOY HAT AND BUTTON SHIRT | CLOTHING | RETURNED | |
| 19SP053735 | 00017417 | | BACKPACK WITH PERSONAL BELONGINGS | MISC. ITEM | RETURNED | |
| 19SP053735 | 00017418 | | NORMATEC MACHINE | MISC. ITEM | RETURNED | |
| 19SP053735 | 00017419 | 12/4/2019 11:07:56 AM | BED SHEETS WITH BLOOD | MISC. ITEM | BULK DEATH | |
| 19SP053735 | 00017420 | 12/4/2019 11:08:01 AM | BEDDING WITH BLOOD | MISC. ITEM | BULK DEATH | |
| 19SP053735 | 00017421 | 12/4/2019 11:13:59 AM | OPEN BAG OF GUMMY BEARS | MISC. ITEM | 19M-01 | |

Total Records: 17
Report Filter: Case/IR ( Contains ) 53735

Southlake Police Department

## Item History

| Barcode: | 00017411 | | Item No: | 007 | | | | |
|---|---|---|---|---|---|---|---|---|
| Description: | BLACK APPLE IPHONE | | | | | | | |

| Date & Time | User | Assignee | Field | Old Value | New Value | Action | Location | Remarks | Signature |
|---|---|---|---|---|---|---|---|---|---|
| 9/9/2019 4:38 PM | sspencer | | Location | OTHER AGENCY | OTHER AGENCY CASE | Field Updated | OTHER AGENCY CASE | | |
| 9/3/2019 2:08 PM | sspencer | Spencer, Senora | | | | Transfer | OTHER AGENCY | RELEASED TO THE DEA BY CPL. GREEN 9/3/19 | |
| 9/3/2019 2:08 PM | sspencer | | Location | 19M-01 | OTHER AGENCY | Field Updated | OTHER AGENCY | | |
| 7/24/2019 9:59 AM | sspencer | Spencer, Senora | | | | Transfer | 19M-01 | | |
| 7/24/2019 9:59 AM | sspencer | | Location | OTHER AGENCY | 19M-01 | Field Updated | 19M-01 | | |
| 7/18/2019 11:16 AM | sspencer | | Location | BULK DEATH | OTHER AGENCY | Field Updated | OTHER AGENCY | | |
| 7/2/2019 9:53 AM | sspencer | Spencer, Senora | | | | Transfer | BULK DEATH | | |
| 7/2/2019 9:53 AM | sspencer | | Location | In-Transit | BULK DEATH | Field Updated | BULK DEATH | | |
| 7/2/2019 9:52 AM | sspencer | Spencer, Senora | | 005% | In-Transit | Approved | In-Transit | Item Approved From OIM | |
| 7/2/2019 9:51 AM | sspencer | ROBERSON, T | | | 005% | Submitted | In-Transit | Item Submitted From OIM | |

7/8/2024 10:34:16 AM

**707**

**Southlake Police Department**
# Item History

| Barcode: | 00017411 | | Item No: | 007 | | | | |
|---|---|---|---|---|---|---|---|---|
| **Description:** | BLACK APPLE IPHONE | | | | | | | |

| Date & Time | User | Assignee | Field | Old Value | New Value | Action | Location | Remarks | Signature |
|---|---|---|---|---|---|---|---|---|---|
| 9/3/2019 4:38 PM | sspencer | | Location | OTHER AGENCY | OTHER AGENCY CASE | Field Updated | OTHER AGENCY CASE | | |
| 9/3/2019 2:08 PM | sspencer | Spencer, Senora | | | | Transfer | OTHER AGENCY | RELEASED TO THE DEA BY CPL. GREEN 9/3/19 | |
| 9/3/2019 2:08 PM | sspencer | | Location | 19M-01 | OTHER AGENCY | Field Updated | OTHER AGENCY | | |
| 7/24/2019 9:59 AM | sspencer | Spencer, Senora | | | | Transfer | 19M-01 | | |
| 7/24/2019 9:59 AM | sspencer | | Location | OTHER AGENCY | 19M-01 | Field Updated | 19M-01 | | |
| 7/18/2019 11:16 AM | sspencer | | Location | BULK DEATH | OTHER AGENCY | Field Updated | OTHER AGENCY | | |
| 7/2/2019 9:53 AM | sspencer | Spencer, Senora | | | | Transfer | BULK DEATH | | |
| 7/2/2019 9:53 AM | sspencer | | Location | In-Transit | BULK DEATH | Field Updated | BULK DEATH | | |
| 7/2/2019 9:52 AM | sspencer | Spencer, Senora | | 005% | In-Transit | Approved | In-Transit | Item Approved From OIM | |
| 7/2/2019 9:51 AM | sspencer | ROBERSON, T | | | 005% | Submitted | In-Transit | Item Submitted From OIM | |

1 of 1

7/8/2024 10:34:16 AM

| CaseItR | Barcode | Inventory Time | Description | Category Code | Location Code | Pkg Weight |
|---|---|---|---|---|---|---|
| 19SP053735 | 00017405 | 12/4/2019 11:14:04 AM | ROOM KEY WITH WHITE POWDER RESIDUE | KEYS | 19M-01 | |
| 19SP053735 | 00017406 | 12/4/2019 11:14:01 AM | ROOM KEY CARD | KEYS | 19M-01 | |
| 19SP053735 | 00017407 | 12/3/2019 10:25:40 AM | UNKNOWN WHITE POWDER | NA- DRUGS | DRUGS BOX 2 | 0 |
| 19SP053735 | 00017408 | 12/3/2019 10:25:35 AM | INDOCIN | NA- DRUGS | DRUGS BOX 2 | 6.7 |
| 19SP053735 | 00017409 | 12/3/2019 10:25:14 AM | WHITE SUBSTANCE FROM FLOOR COLLECTED BY TAPE | NA- DRUGS | DRUGS BOX 2 | 0 |
| 19SP053735 | 00017410 | | APPLE IPAD SN:DLXV60JDHPJ6 | ELECTRONICS | OTHER AGENCY CASE | |
| 19SP053735 | 00017411 | | BLACK APPLE IPHONE | PHONE | OTHER AGENCY CASE | |
| 19SP053735 | 00017412 | | PLASTIC PEN TUBE | MISC. ITEM | 19M-01 | |
| 19SP053735 | 00017413 | 12/3/2019 10:24:57 AM | BLUE PILL "M/30" | NA- DRUGS | OTHER AGENCY | 0 |
| 19SP053735 | 00017414 | 12/3/2019 10:25:01 AM | 5 PINK PILLS "K/56" | NA- DRUGS | OTHER AGENCY | 0 |
| 19SP053735 | 00017415 | | WALLET, RING, PASSPORT, ID, CASH, EARBUDS | MISC. ITEM | RETURNED | |
| 19SP053735 | 00017416 | | BLACK COWBOY HAT AND BUTTON SHIRT | CLOTHING | RETURNED | |
| 19SP053735 | 00017417 | | BACKPACK WITH PERSONAL BELONGINGS | MISC. ITEM | RETURNED | |
| 19SP053735 | 00017418 | | NORMATEC MACHINE | MISC. ITEM | RETURNED | |
| 19SP053735 | 00017419 | 12/4/2019 11:07:56 AM | BED SHEETS WITH BLOOD | MISC. ITEM | BULK DEATH | |
| 19SP053735 | 00017420 | 12/4/2019 11:08:01 AM | BEDDING WITH BLOOD | MISC. ITEM | BULK DEATH | |
| 19SP053735 | 00017421 | 12/4/2019 11:13:59 AM | OPEN BAG OF GUMMY BEARS | MISC. ITEM | 19M-01 | |

Total Records: 17
Report Filter: CaseItR ( Contains ) 53735

7/8/2024 7:53:03 AM

1 of 1

# Southlake Police Department

## Transfer Receipt

**TRANSACTION TYPE:** Transfer
**TO LOCATION:** OTHER AGENCY CASE
**ASSIGNEE:** Spencer, Senora
**USER:** Spencer, Senora
**DATE/Time:** 9/6/2019 2:32:12 PM

| Barcode | Case/IR | Item Detail | Date Received | Received By |
|---------|---------|-------------|---------------|-------------|
| 00017410 | 19SP053735 | APPLE IPAD SN:DLXV60JDHPJ6 | 9-11-19 | *[signature]* |

**Remarks:** RELEASED TO DEA BY CPL. GREEN 9/6/19

**Signature:** *[signature]*

CHAIN OF CUSTODY

INDICATE 'V' FOR VIEWING, 'REL' FOR RELEASED, 'RET' FOR RETURNED IN LAST BOX

| | NAME | DATE | AGENCY | EVIDENCE TECH | ITEMS | V.REL.,RET. |
|---|---|---|---|---|---|---|
| (PRINT) | *[signature]* | 7/17/19 | GRAPEVINE PD | S.SPENCER #1843 | IPHONE: 1 PAD #6: 7 | RELEASED |
| (SIGN) | *[signature]* | TIME | | | | |

| | NAME | DATE | AGENCY | EVIDENCE TECH | ITEMS | V.,REL.,RET. |
|---|---|---|---|---|---|---|
| (PRINT) | | | | | | |
| (SIGN) | | TIME | | | | |

| | NAME | DATE | AGENCY | EVIDENCE TECH | ITEMS | V.,REL.,RET. |
|---|---|---|---|---|---|---|
| (PRINT) | | | | | | |
| (SIGN) | | TIME | | | | |

| | NAME | DATE | AGENCY | EVIDENCE TECH | ITEMS | V.,REL.,RET. |
|---|---|---|---|---|---|---|
| (PRINT) | | TIME | | | | |
| (SIGN) | | | | | | |

| | NAME | DATE | AGENCY | EVIDENCE TECH | ITEMS | V.,REL.,RET. |
|---|---|---|---|---|---|---|
| (PRINT) | | | | | | |
| (SIGN) | | TIME | | | | |

| | NAME | DATE | AGENCY | EVIDENCE TECH | ITEMS | V.,REL.,RET. |
|---|---|---|---|---|---|---|
| (PRINT) | | | | | | |
| (SIGN) | | TIME | | | | |

CASE # 19SPD53735

**Southlake Police Department**

# Item History

| Barcode: | 00017411 | | Item No: | 007 |
|---|---|---|---|---|

**Description:** BLACK APPLE IPHONE

| Date & Time | User | Assignee | Field | Old Value | New Value | Action | Location | Remarks | Signature |
|---|---|---|---|---|---|---|---|---|---|
| 9/9/2019 4:38 PM | sspencer | | Location | OTHER AGENCY | OTHER AGENCY CASE | Field Updated | OTHER AGENCY CASE | | |
| 9/3/2019 2:08 PM | sspencer | Spencer, Senora | | | | Transfer | OTHER AGENCY | RELEASED TO THE DEA BY CPL. GREEN 9/3/19 | |
| 9/3/2019 2:08 PM | sspencer | | Location | 19M-01 | OTHER AGENCY | Field Updated | OTHER AGENCY | | |
| 7/24/2019 9:59 AM | sspencer | Spencer, Senora | | | | Transfer | 19M-01 | | |
| 7/24/2019 9:59 AM | sspencer | | Location | OTHER AGENCY | 19M-01 | Field Updated | 19M-01 | | |
| 7/18/2019 11:16 AM | sspencer | | Location | BULK DEATH | OTHER AGENCY | Field Updated | OTHER AGENCY | | |
| 7/2/2019 9:53 AM | sspencer | Spencer, Senora | | | | Transfer | BULK DEATH | | |
| 7/2/2019 9:53 AM | sspencer | | Location | In-Transit | BULK DEATH | Field Updated | BULK DEATH | | |
| 7/2/2019 9:52 AM | sspencer | Spencer, Senora | | 005% | In-Transit | Approved | In-Transit | Item Approved From OIM | |
| 7/2/2019 9:51 AM | sspencer | ROBERSON, T | | | 005% | Submitted | In-Transit | Item Submitted From OIM | |

| Case/IR | Barcode | Inventory Time | Description | Category Code | Location Code | Pkg Weight |
|---|---|---|---|---|---|---|
| 19SP053735 | 00017405 | 12/4/2019 11:14:04 AM | ROOM KEY WITH WHITE POWDER RESIDUE | KEYS | 19M-01 | |
| 19SP053735 | 00017406 | 12/4/2019 11:14:01 AM | ROOM KEY CARD | KEYS | 19M-01 | |
| 19SP053735 | 00017407 | 12/3/2019 10:25:40 AM | UNKNOWN WHITE POWDER | NA- DRUGS | DRUGS BOX 2 | 0 |
| 19SP053735 | 00017408 | 12/3/2019 10:25:35 AM | INDOCIN | NA- DRUGS | DRUGS BOX 2 | 6.7 |
| 19SP053735 | 00017409 | 12/3/2019 10:25:14 AM | WHITE SUBSTANCE FROM FLOOR COLLECTED BY TAPE | NA- DRUGS | DRUGS BOX 2 | 0 |
| 19SP053735 | 00017410 | | APPLE IPAD SN:DLXV60JDHPJ6 | ELECTRONICS | OTHER AGENCY CASE | |
| 19SP053735 | 00017411 | | BLACK APPLE IPHONE | PHONE | OTHER AGENCY CASE | |
| 19SP053735 | 00017412 | | PLASTIC PEN TUBE | MISC. ITEM | 19M-01 | |
| 19SP053735 | 00017413 | 12/3/2019 10:24:57 AM | BLUE PILL "M/30" | NA- DRUGS | OTHER AGENCY | 0 |
| 19SP053735 | 00017414 | 12/3/2019 10:25:01 AM | 5 PINK PILLS "K/56" | NA- DRUGS | OTHER AGENCY | 0 |
| 19SP053735 | 00017415 | | WALLET, RING, PASSPORT, ID, CASH, EARBUDS | MISC. ITEM | RETURNED | |
| 19SP053735 | 00017416 | | BLACK COWBOY HAT AND BUTTON SHIRT | CLOTHING | RETURNED | |
| 19SP053735 | 00017417 | | BACKPACK WITH PERSONAL BELONGINGS | MISC. ITEM | RETURNED | |
| 19SP053735 | 00017418 | | NORMATEC MACHINE | MISC. ITEM | RETURNED | |
| 19SP053735 | 00017419 | 12/4/2019 11:07:56 AM | BED SHEETS WITH BLOOD | MISC. ITEM | BULK DEATH | |
| 19SP053735 | 00017420 | 12/4/2019 11:08:01 AM | BEDDING WITH BLOOD | MISC. ITEM | BULK DEATH | |
| 19SP053735 | 00017421 | 12/4/2019 11:13:59 AM | OPEN BAG OF GUMMY BEARS | MISC. ITEM | 19M-01 | |

Total Records: 17
Report Filter: Case/IR ( Contains ) 53735

1 of 1

7/8/2024 7:53:03 AM

**CHAIN OF CUSTODY**

**INDICATE 'V' FOR VIEWING, 'REL' FOR RELEASED, 'RET' FOR RETURNED IN LAST BOX**

| NAME | DATE | AGENCY | EVIDENCE TECH | ITEMS | V.REL.,RET. |
|------|------|--------|---------------|-------|-------------|
| (PRINT) *KFwEecc4* | 7/17/19 | GRAPEVINE PD | S SPENCER #1843 | IPHONE: IPAD #6:7 | RELEASED |
| (SIGN) | TIME | | | | |

| NAME | DATE | AGENCY | EVIDENCE TECH | ITEMS | V.,REL.,RET. |
|------|------|--------|---------------|-------|--------------|
| (PRINT) | | | | | |
| (SIGN) | TIME | | | | |

| NAME | DATE | AGENCY | EVIDENCE TECH | ITEMS | V.,REL.,RET. |
|------|------|--------|---------------|-------|--------------|
| (PRINT) | | | | | |
| (SIGN) | TIME | | | | |

| NAME | DATE | AGENCY | EVIDENCE TECH | ITEMS | V.,REL.,RET. |
|------|------|--------|---------------|-------|--------------|
| (PRINT) | TIME | | | | |
| (SIGN) | | | | | |

| NAME | DATE | AGENCY | EVIDENCE TECH | ITEMS | V.,REL.,RET. |
|------|------|--------|---------------|-------|--------------|
| (PRINT) | | | | | |
| (SIGN) | TIME | | | | |

| NAME | DATE | AGENCY | EVIDENCE TECH | ITEMS | V.,REL.,RET. |
|------|------|--------|---------------|-------|--------------|
| (PRINT) | | | | | |
| (SIGN) | TIME | | | | |

CASE # *19SPD53735*

**714**

# Southlake Police Department

## Transfer Receipt

**TRANSACTION TYPE:** Transfer
**TO LOCATION:** OTHER AGENCY CASE
**ASSIGNEE:** Spencer, Senora
**USER:** Spencer, Senora
**DATE/Time:** 9/6/2019 2:32:12 PM

| Barcode | Case/IR | Item Detail | Date Received | Received By |
|---|---|---|---|---|
| 00017410 | 19SP053735 | APPLE IPAD SN:DLXV60JDHPJ6 | 9-11-19 | |

Remarks:     RELEASED TO DEA BY CPL. GREEN 9/6/19

Signature:

715

**U.S. DEPARTMENT OF JUSTICE** - DRUG ENFORCEMENT ADMINISTRATION
## RECEIPT FOR CASH OR OTHER ITEMS

TO: (Name, Title, Address (including ZIP CODE), if applicable) .

| | |
|---|---|
| FILE NO. | G-DEP IDENTIFIER |
| FILE TITLE | |
| Kay, Eric | |
| DATE  2/7/22 | |

DIVISION/DISTRICT OFFICE

DFD / FWDO

I hereby acknowledge receipt of the following described cash or other item(s),
which was given into my custody by the above named individual.

| AMOUNT or QUANTITY | DESCRIPTION OF ITEM(S) | PURPOSE (If Applicable) |
|---|---|---|
| | ELPD Evidence Bags | trial checkout |
| | # 1, 2, 3, 4, 5, 8 | |
| | Nothing Follows | |

| RECEIVED BY (Signature) | NAME AND TITLE (Print or Type) |
|---|---|
| | SA Matthew Saracho |
| WITNESSED BY (Signature) | NAME AND TITLE (Print or Type) |

FORM DEA-12 (8-02) *Previous editions obsolete*

Electronic Form Version Designed in JetForm 5.2 Version

716

**Southlake Police Department**

# Item History

| Barcode: | 00017411 | | Item No: | 007 | | | |
|----------|----------|---|----------|-----|---|---|---|
| Description: | BLACK APPLE IPHONE | | | | | | |

| Date & Time | User | Assignee | Field | Old Value | New Value | Action | Location | Remarks | Signature |
|-------------|------|----------|-------|-----------|-----------|--------|----------|---------|-----------|
| 9/9/2019 4:38 PM | sspencer | | Location | OTHER AGENCY | OTHER AGENCY CASE | Field Updated | OTHER AGENCY CASE | | |
| 9/3/2019 2:08 PM | sspencer | Spencer, Senora | | | | Transfer | OTHER AGENCY | RELEASED TO THE DEA BY CPL. GREEN 9/3/19 | |
| 9/3/2019 2:08 PM | sspencer | | Location | 19M-01 | OTHER AGENCY | Field Updated | OTHER AGENCY | | |
| 7/24/2019 9:59 AM | sspencer | Spencer, Senora | | | | Transfer | 19M-01 | | |
| 7/24/2019 9:59 AM | sspencer | | Location | OTHER AGENCY | 19M-01 | Field Updated | 19M-01 | | |
| 7/18/2019 11:16 AM | sspencer | | Location | BULK DEATH | OTHER AGENCY | Field Updated | OTHER AGENCY | | |
| 7/2/2019 9:53 AM | sspencer | Spencer, Senora | | | | Transfer | BULK DEATH | | |
| 7/2/2019 9:53 AM | sspencer | | Location | In-Transit | BULK DEATH | Field Updated | BULK DEATH | | |
| 7/2/2019 9:52 AM | sspencer | Spencer, Senora | | 005% | In-Transit | Approved | In-Transit | Item Approved From OIM | |
| 7/2/2019 9:51 AM | sspencer | ROBERSON, T | | | 005% | Submitted | In-Transit | Item Submitted From OIM | |

| Unit | Personnel | Footprint # | Date/Time | Unit Status | Nearest Intersectio | Direction | Unit MPH | Road MPH | Latitude | Longitude |
|---|---|---|---|---|---|---|---|---|---|---|
| 243 | Womack, Clay | 1 | 10/12/2024 23:59 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92909 | -97.20026 |
| 243 | Womack, Clay | 2 | 10/13/2024 0:00 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92909 | -97.20026 |
| 243 | Womack, Clay | 3 | 10/13/2024 0:00 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92909 | -97.20026 |
| 243 | Womack, Clay | 4 | 10/13/2024 0:00 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92909 | -97.20026 |
| 243 | Womack, Clay | 5 | 10/13/2024 0:00 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92909 | -97.20026 |
| 243 | Womack, Clay | 6 | 10/13/2024 0:00 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92909 | -97.20026 |
| 243 | Womack, Clay | 7 | 10/13/2024 0:00 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92909 | -97.20027 |
| 243 | Womack, Clay | 8 | 10/13/2024 0:01 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92909 | -97.20026 |
| 243 | Womack, Clay | 9 | 10/13/2024 0:01 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92909 | -97.20026 |
| 243 | Womack, Clay | 10 | 10/13/2024 0:01 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92909 | -97.20027 |
| 243 | Womack, Clay | 11 | 10/13/2024 0:01 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.9291 | -97.20027 |
| 243 | Womack, Clay | 12 | 10/13/2024 0:01 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.9291 | -97.20027 |
| 243 | Womack, Clay | 13 | 10/13/2024 0:02 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.9291 | -97.20027 |
| 243 | Womack, Clay | 14 | 10/13/2024 0:02 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.9291 | -97.20027 |
| 243 | Womack, Clay | 15 | 10/13/2024 0:02 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.9291 | -97.20027 |
| 243 | Womack, Clay | 16 | 10/13/2024 0:02 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.9291 | -97.20027 |
| 243 | Womack, Clay | 17 | 10/13/2024 0:02 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.9291 | -97.20027 |
| 243 | Womack, Clay | 18 | 10/13/2024 0:02 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.9291 | -97.20027 |
| 243 | Womack, Clay | 19 | 10/13/2024 0:03 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.9291 | -97.20027 |
| 243 | Womack, Clay | 20 | 10/13/2024 0:03 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.9291 | -97.20027 |
| 243 | Womack, Clay | 21 | 10/13/2024 0:03 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.9291 | -97.20027 |
| 243 | Womack, Clay | 22 | 10/13/2024 0:03 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.9291 | -97.20027 |
| 243 | Womack, Clay | 23 | 10/13/2024 0:03 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.9291 | -97.20027 |
| 243 | Womack, Clay | 24 | 10/13/2024 0:03 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.9291 | -97.20027 |
| 243 | Womack, Clay | 25 | 10/13/2024 0:04 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92909 | -97.20027 |
| 243 | Womack, Clay | 26 | 10/13/2024 0:04 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92909 | -97.20027 |
| 243 | Womack, Clay | 27 | 10/13/2024 0:04 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92909 | -97.20027 |
| 243 | Womack, Clay | 28 | 10/13/2024 0:04 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.9291 | -97.20027 |
| 243 | Womack, Clay | 29 | 10/13/2024 0:04 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.9291 | -97.20027 |
| 243 | Womack, Clay | 30 | 10/13/2024 0:04 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.9291 | -97.20028 |
| 243 | Womack, Clay | 31 | 10/13/2024 0:05 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.9291 | -97.20028 |
| 243 | Womack, Clay | 32 | 10/13/2024 0:05 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.9291 | -97.20028 |
| 243 | Womack, Clay | 33 | 10/13/2024 0:05 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.9291 | -97.20028 |
| 243 | Womack, Clay | 34 | 10/13/2024 0:05 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92909 | -97.20028 |
| 243 | Womack, Clay | 35 | 10/13/2024 0:05 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92909 | -97.20028 |
| 243 | Womack, Clay | 36 | 10/13/2024 0:05 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92909 | -97.20028 |
| 243 | Womack, Clay | 37 | 10/13/2024 0:06 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92909 | -97.20027 |
| 243 | Womack, Clay | 38 | 10/13/2024 0:06 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92909 | -97.20027 |
| 243 | Womack, Clay | 39 | 10/13/2024 0:06 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92909 | -97.20027 |
| 243 | Womack, Clay | 40 | 10/13/2024 0:06 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92908 | -97.20027 |
| 243 | Womack, Clay | 41 | 10/13/2024 0:06 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92908 | -97.20027 |
| 243 | Womack, Clay | 42 | 10/13/2024 0:06 | On Scene | CHESAPEAKE LN and MICHENEI | 1 | | 30 | 32.92908 | -97.20027 |
| 243 | Womack, Clay | 43 | 10/13/2024 0:07 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92908 | -97.20027 |
| 243 | Womack, Clay | 44 | 10/13/2024 0:07 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92908 | -97.20027 |
| 243 | Womack, Clay | 45 | 10/13/2024 0:07 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92908 | -97.20026 |
| 243 | Womack, Clay | 46 | 10/13/2024 0:07 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92908 | -97.20026 |
| 243 | Womack, Clay | 47 | 10/13/2024 0:07 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92908 | -97.20026 |
| 243 | Womack, Clay | 48 | 10/13/2024 0:08 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92907 | -97.20026 |
| 243 | Womack, Clay | 49 | 10/13/2024 0:08 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92907 | -97.20026 |
| 243 | Womack, Clay | 50 | 10/13/2024 0:08 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92907 | -97.20026 |
| 243 | Womack, Clay | 51 | 10/13/2024 0:08 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92907 | -97.20026 |
| 243 | Womack, Clay | 52 | 10/13/2024 0:08 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92907 | -97.20026 |
| 243 | Womack, Clay | 53 | 10/13/2024 0:08 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92907 | -97.20025 |
| 243 | Womack, Clay | 54 | 10/13/2024 0:08 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92907 | -97.20025 |
| 243 | Womack, Clay | 55 | 10/13/2024 0:09 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92907 | -97.20025 |
| 243 | Womack, Clay | 56 | 10/13/2024 0:09 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92907 | -97.20025 |
| 243 | Womack, Clay | 57 | 10/13/2024 0:09 | On Scene | CHESAPEAKE LN and MICHENER CT | | | 30 | 32.92906 | -97.20025 |
| 243 | Womack, Clay | 58 | 10/13/2024 0:09 | On Scene | CHESAPEAKE LN and W (262.34) | 3 | | 30 | 32.92906 | -97.20026 |
| 243 | Womack, Clay | 59 | 10/13/2024 0:09 | On Scene | CHESAPEAKE LN and SW (241.96 | 4 | | 30 | 32.92905 | -97.20028 |
| 243 | Womack, Clay | 60 | 10/13/2024 0:09 | On Scene | CHESAPEAKE LN and SW (244.3: | 5 | | 30 | 32.92904 | -97.2003 |
| 243 | Womack, Clay | 61 | 10/13/2024 0:10 | On Scene | CHESAPEAKE LN and W (252.86) | 7 | | 30 | 32.92904 | -97.20033 |
| 243 | Womack, Clay | 62 | 10/13/2024 0:10 | On Scene | CHESAPEAKE LN and W (262.75) | 10 | | 30 | 32.92904 | -97.20037 |
| 243 | Womack, Clay | 63 | 10/13/2024 0:10 | On Scene | CHESAPEAKE LN and W (273.5) | 11 | | 30 | 32.92904 | -97.20042 |
| 243 | Womack, Clay | 64 | 10/13/2024 0:10 | On Scene | CHESAPEAKE LN and W (287.5) | 13 | | 30 | 32.92906 | -97.20048 |
| 243 | Womack, Clay | 65 | 10/13/2024 0:10 | On Scene | CHESAPEAKE LN and NW (299.2 | 14 | | 30 | 32.92908 | -97.20054 |

**718**

| 243 | Womack, Clay | 66 | 10/13/2024 0:10 | On Scene | CHESAPEAKE LN an NW (321.3 | 16 | 30 | 32.92913 | -97.20059 |
| 243 | Womack, Clay | 67 | 10/13/2024 0:11 | On Scene | CHESAPEAKE LN an NW (335.0 | 15 | 30 | 32.92918 | -97.20063 |
| 243 | Womack, Clay | 68 | 10/13/2024 0:11 | On Scene | CHESAPEAKE LN an N (338.23) | 15 | 30 | 32.92924 | -97.20065 |
| 243 | Womack, Clay | 69 | 10/13/2024 0:11 | On Scene | CHESAPEAKE LN an N (1.59) | 17 | 30 | 32.92937 | -97.20065 |
| 243 | Womack, Clay | 70 | 10/13/2024 0:11 | On Scene | CHESAPEAKE LN an N (1.36) | 19 | 30 | 32.92944 | -97.20065 |
| 243 | Womack, Clay | 71 | 10/13/2024 0:11 | On Scene | CHESAPEAKE LN an N (1.26) | 20 | 30 | 32.92952 | -97.20064 |
| 243 | Womack, Clay | 72 | 10/13/2024 0:11 | On Scene | CHESAPEAKE LN an N (1.3) | 21 | 30 | 32.9296 | -97.20064 |
| 243 | Womack, Clay | 73 | 10/13/2024 0:12 | On Scene | CHESAPEAKE LN an N (1.37) | 23 | 30 | 32.92969 | -97.20064 |
| 243 | Womack, Clay | 74 | 10/13/2024 0:12 | On Scene | CHESAPEAKE LN an N (0.33) | 24 | 30 | 32.92979 | -97.20064 |
| 243 | Womack, Clay | 75 | 10/13/2024 0:12 | On Scene | CHESAPEAKE LN an N (0.58) | 25 | 30 | 32.92989 | -97.20064 |
| 243 | Womack, Clay | 76 | 10/13/2024 0:12 | On Scene | CHESAPEAKE LN an N (0.49) | 27 | 30 | 32.93 | -97.20063 |
| 243 | Womack, Clay | 77 | 10/13/2024 0:12 | On Scene | CHESAPEAKE LN an N (359.87) | 27 | 30 | 32.93011 | -97.20063 |
| 243 | Womack, Clay | 78 | 10/13/2024 0:12 | On Scene | CHESAPEAKE LN an N (359.76) | 28 | 30 | 32.93023 | -97.20063 |
| 243 | Womack, Clay | 79 | 10/13/2024 0:13 | On Scene | CHESAPEAKE LN an N (359.6) | 29 | 30 | 32.93034 | -97.20063 |
| 243 | Womack, Clay | 80 | 10/13/2024 0:13 | On Scene | CHESAPEAKE LN an N (358.32) | 29 | 30 | 32.93058 | -97.20064 |
| 243 | Womack, Clay | 81 | 10/13/2024 0:13 | On Scene | CHESAPEAKE LN an N (358.05) | 30 | 30 | 32.9307 | -97.20064 |
| 243 | Womack, Clay | 82 | 10/13/2024 0:13 | On Scene | CHESAPEAKE LN an N (359.13) | 32 | 30 | 32.93083 | -97.20065 |
| 243 | Womack, Clay | 83 | 10/13/2024 0:13 | On Scene | CHESAPEAKE LN an N (359.89) | 32 | 30 | 32.93096 | -97.20065 |
| 243 | Womack, Clay | 84 | 10/13/2024 0:13 | On Scene | CHESAPEAKE LN an N (0.21) | 31 | 30 | 32.93108 | -97.20064 |
| 243 | Womack, Clay | 85 | 10/13/2024 0:14 | On Scene | CHESAPEAKE LN an N (0.03) | 32 | 30 | 32.93121 | -97.20065 |
| 243 | Womack, Clay | 86 | 10/13/2024 0:14 | On Scene | CHESAPEAKE LN an N (0.42) | 32 | 30 | 32.93134 | -97.20065 |
| 243 | Womack, Clay | 87 | 10/13/2024 0:14 | On Scene | CHESAPEAKE LN an N (359.37) | 31 | 30 | 32.93147 | -97.20064 |
| 243 | Womack, Clay | 88 | 10/13/2024 0:14 | On Scene | CHESAPEAKE LN an N (359.58) | 31 | 30 | 32.93159 | -97.20065 |
| 243 | Womack, Clay | 89 | 10/13/2024 0:14 | On Scene | CHESAPEAKE LN an N (358.62) | 29 | 30 | 32.93183 | -97.20066 |
| 243 | Womack, Clay | 90 | 10/13/2024 0:14 | On Scene | CHESAPEAKE LN an N (356.16) | 28 | 30 | 32.93195 | -97.20067 |
| 243 | Womack, Clay | 91 | 10/13/2024 0:15 | On Scene | CHESAPEAKE LN an N (356.82) | 26 | 30 | 32.93205 | -97.20067 |
| 243 | Womack, Clay | 92 | 10/13/2024 0:15 | On Scene | CHESAPEAKE LN an N (345.96) | 23 | 30 | 32.93214 | -97.20069 |
| 243 | Womack, Clay | 93 | 10/13/2024 0:15 | On Scene | CHESAPEAKE LN an N (341.32) | 24 | 30 | 32.93223 | -97.20072 |
| 243 | Womack, Clay | 94 | 10/13/2024 0:15 | On Scene | CHESAPEAKE LN an NW (326.4 | 23 | 30 | 32.93231 | -97.20078 |
| 243 | Womack, Clay | 95 | 10/13/2024 0:15 | On Scene | CHESAPEAKE LN an NW (301.5 | 23 | 30 | 32.93237 | -97.20087 |
| 243 | Womack, Clay | 96 | 10/13/2024 0:15 | On Scene | CHESAPEAKE LN an W (285.74) | 21 | 30 | 32.9324 | -97.20096 |
| 243 | Womack, Clay | 97 | 10/13/2024 0:16 | On Scene | CHESAPEAKE LN an W (267.68) | 26 | 30 | 32.9324 | -97.20119 |
| 243 | Womack, Clay | 98 | 10/13/2024 0:16 | On Scene | CHESAPEAKE LN an W (268.93) | 27 | 30 | 32.9324 | -97.20131 |
| 243 | Womack, Clay | 99 | 10/13/2024 0:16 | On Scene | CHESAPEAKE LN an W (270.67) | 27 | 30 | 32.9324 | -97.20144 |
| 243 | Womack, Clay | 100 | 10/13/2024 0:16 | On Scene | CHESAPEAKE LN an W (273.25) | 28 | 30 | 32.93241 | -97.20158 |
| 243 | Womack, Clay | 101 | 10/13/2024 0:16 | On Scene | CHESAPEAKE LN an W (276.22) | 28 | 30 | 32.93241 | -97.20171 |
| 243 | Womack, Clay | 102 | 10/13/2024 0:16 | On Scene | CHESAPEAKE LN an W (279.62) | 27 | 30 | 32.93243 | -97.20183 |
| 243 | Womack, Clay | 103 | 10/13/2024 0:17 | On Scene | CHESAPEAKE LN an W (280.7) | 27 | 30 | 32.93245 | -97.20196 |
| 243 | Womack, Clay | 104 | 10/13/2024 0:17 | On Scene | CHESAPEAKE LN an W (277.87) | 27 | 30 | 32.93247 | -97.20209 |
| 243 | Womack, Clay | 105 | 10/13/2024 0:17 | On Scene | CHESAPEAKE LN an W (274.14) | 27 | 30 | 32.93248 | -97.20222 |
| 243 | Womack, Clay | 106 | 10/13/2024 0:17 | On Scene | CHESAPEAKE LN an W (270.55) | 27 | 30 | 32.93248 | -97.20248 |
| 243 | Womack, Clay | 107 | 10/13/2024 0:17 | On Scene | CHESAPEAKE LN an W (269.35) | 26 | 30 | 32.93248 | -97.20261 |
| 243 | Womack, Clay | 108 | 10/13/2024 0:17 | On Scene | CHESAP | | | | |

| Case/IR | Barcode | Inventory Time | Description | Category Code | Location Code | Pkg Weight |
|---|---|---|---|---|---|---|
| 19SP053735 | 00017405 | 12/4/2019 11:14:04 AM | ROOM KEY WITH WHITE POWDER RESIDUE | KEYS | 19M-01 | |
| 19SP053735 | 00017406 | 12/4/2019 11:14:01 AM | ROOM KEY CARD | KEYS | 19M-01 | |
| 19SP053735 | 00017407 | 12/3/2019 10:25:40 AM | UNKNOWN WHITE POWDER | NA- DRUGS | DRUGS BOX 2 | 0 |
| 19SP053735 | 00017408 | 12/3/2019 10:25:35 AM | INDOCIN | NA- DRUGS | DRUGS BOX 2 | 6.7 |
| 19SP053735 | 00017409 | 12/3/2019 10:25:14 AM | WHITE SUBSTANCE FROM FLOOR COLLECTED BY TAPE | NA- DRUGS | DRUGS BOX 2 | 0 |
| 19SP053735 | 00017410 | | APPLE IPAD SN:DLXV60JDHPJ6 | ELECTRONICS | OTHER AGENCY CASE | |
| 19SP053735 | 00017411 | | BLACK APPLE IPHONE | PHONE | OTHER AGENCY CASE | |
| 19SP053735 | 00017412 | | PLASTIC PEN TUBE | MISC. ITEM | 19M-01 | |
| 19SP053735 | 00017413 | 12/3/2019 10:24:57 AM | BLUE PILL "M/30" | NA- DRUGS | OTHER AGENCY | 0 |
| 19SP053735 | 00017414 | 12/3/2019 10:25:01 AM | 5 PINK PILLS "K/56" | NA- DRUGS | OTHER AGENCY | 0 |
| 19SP053735 | 00017415 | | WALLET, RING, PASSPORT, ID, CASH, EARBUDS | MISC. ITEM | RETURNED | |
| 19SP053735 | 00017416 | | BLACK COWBOY HAT AND BUTTON SHIRT | CLOTHING | RETURNED | |
| 19SP053735 | 00017417 | | BACKPACK WITH PERSONAL BELONGINGS | MISC. ITEM | RETURNED | |
| 19SP053735 | 00017418 | | NORMATEC MACHINE | MISC. ITEM | RETURNED | |
| 19SP053735 | 00017419 | 12/4/2019 11:07:56 AM | BED SHEETS WITH BLOOD | MISC. ITEM | BULK DEATH | |
| 19SP053735 | 00017420 | 12/4/2019 11:08:01 AM | BEDDING WITH BLOOD | MISC. ITEM | BULK DEATH | |
| 19SP053735 | 00017421 | 12/4/2019 11:13:59 AM | OPEN BAG OF GUMMY BEARS | MISC. ITEM | 19M-01 | |

Total Records: 17
Report Filter: Case/IR ( Contains ) 53735

**720**

Southlake Police Department

## Item History

| Barcode: | 00017411 | | Item No: | 007 | | | | |
|---|---|---|---|---|---|---|---|---|
| Description: | BLACK APPLE IPHONE | | | | | | | |

| Date & Time | User | Assignee | Field | Old Value | New Value | Action | Location | Remarks | Signature |
|---|---|---|---|---|---|---|---|---|---|
| 9/9/2019 4:38 PM | sspencer | | Location | OTHER AGENCY | OTHER AGENCY CASE | Field Updated | OTHER AGENCY CASE | | |
| 9/3/2019 2:08 PM | sspencer | Spencer, Senora | | | | Transfer | OTHER AGENCY | RELEASED TO THE DEA BY CPL. GREEN 9/3/19 | |
| 9/3/2019 2:08 PM | sspencer | | Location | 19M-01 | OTHER AGENCY | Field Updated | OTHER AGENCY | | |
| 7/24/2019 9:59 AM | sspencer | Spencer, Senora | | | | Transfer | 19M-01 | | |
| 7/24/2019 9:59 AM | sspencer | | Location | OTHER AGENCY | 19M-01 | Field Updated | 19M-01 | | |
| 7/18/2019 11:16 AM | sspencer | | Location | BULK DEATH | OTHER AGENCY | Field Updated | OTHER AGENCY | | |
| 7/2/2019 9:53 AM | sspencer | Spencer, Senora | | | | Transfer | BULK DEATH | | |
| 7/2/2019 9:53 AM | sspencer | | Location | In-Transit | BULK DEATH | Field Updated | BULK DEATH | | |
| 7/2/2019 9:52 AM | sspencer | Spencer, Senora | | 005% | In-Transit | Approved | In-Transit | Item Approved From OIM | |
| 7/2/2019 9:51 AM | sspencer | ROBERSON, T | | | 005% | Submitted | In-Transit | Item Submitted From OIM | |

7/8/2024 10:34:16 AM

**Southlake Police Department**
## Item History

| Barcode: | 00017411 | | | Item No: | 007 | | | | |
|----------|----------|--|--|----------|-----|--|--|--|--|
| **Description:** | BLACK APPLE IPHONE | | | | | | | | |

| Date & Time | User | Assignee | Field | Old Value | New Value | Action | Location | Remarks | Signature |
|-------------|------|----------|-------|-----------|-----------|--------|----------|---------|-----------|
| 9/9/2019 4:38 PM | sspencer | | Location | OTHER AGENCY | OTHER AGENCY CASE | Field Updated | OTHER AGENCY CASE | | |
| 9/3/2019 2:08 PM | sspencer | Spencer, Senora | | | | Transfer | OTHER AGENCY | RELEASED TO THE DEA BY CPL. GREEN 9/3/19 | |
| 9/3/2019 2:08 PM | sspencer | | Location | 19M-01 | OTHER AGENCY | Field Updated | OTHER AGENCY | | |
| 7/24/2019 9:59 AM | sspencer | Spencer, Senora | | | | Transfer | 19M-01 | | |
| 7/24/2019 9:59 AM | sspencer | | Location | OTHER AGENCY | 19M-01 | Field Updated | 19M-01 | | |
| 7/18/2019 11:16 AM | sspencer | | Location | BULK DEATH | OTHER AGENCY | Field Updated | OTHER AGENCY | | |
| 7/2/2019 9:53 AM | sspencer | Spencer, Senora | | | | Transfer | BULK DEATH | | |
| 7/2/2019 9:53 AM | sspencer | | Location | In-Transit | BULK DEATH | Field Updated | BULK DEATH | | |
| 7/2/2019 9:52 AM | sspencer | Spencer, Senora | | 005% | In-Transit | Approved | In-Transit | Item Approved From OIM | |
| 7/2/2019 9:51 AM | sspencer | ROBERSON, T | | | 005% | Submitted | In-Transit | Item Submitted From OIM | |

**722**

| Case/IR | Barcode | Inventory Time | Description | Category Code | Location Code | Pkg Weight |
|---|---|---|---|---|---|---|
| 19SP053735 | 00017405 | 12/4/2019 11:14:04 AM | ROOM KEY WITH WHITE POWDER RESIDUE | KEYS | 19M-01 | |
| 19SP053735 | 00017406 | 12/4/2019 11:14:01 AM | ROOM KEY CARD | KEYS | 19M-01 | |
| 19SP053735 | 00017407 | 12/3/2019 10:25:40 AM | UNKNOWN WHITE POWDER | NA- DRUGS | DRUGS BOX 2 | 0 |
| 19SP053735 | 00017408 | 12/3/2019 10:25:35 AM | INDOCIN | NA- DRUGS | DRUGS BOX 2 | 6.7 |
| 19SP053735 | 00017409 | 12/3/2019 10:25:14 AM | WHITE SUBSTANCE FROM FLOOR COLLECTED BY TAPE | NA- DRUGS | DRUGS BOX 2 | 0 |
| 19SP053735 | 00017410 | | APPLE IPAD SN:DLXV60JDHPJ6 | ELECTRONICS | OTHER AGENCY CASE | |
| 19SP053735 | 00017411 | | BLACK APPLE IPHONE | PHONE | OTHER AGENCY CASE | |
| 19SP053735 | 00017412 | | PLASTIC PEN TUBE | MISC. ITEM | 19M-01 | |
| 19SP053735 | 00017413 | 12/3/2019 10:24:57 AM | BLUE PILL "M/30" | NA- DRUGS | OTHER AGENCY | 0 |
| 19SP053735 | 00017414 | 12/3/2019 10:25:01 AM | 5 PINK PILLS "K/56" | NA- DRUGS | OTHER AGENCY | 0 |
| 19SP053735 | 00017415 | | WALLET, RING, PASSPORT, ID, CASH, EARBUDS | MISC. ITEM | RETURNED | |
| 19SP053735 | 00017416 | | BLACK COWBOY HAT AND BUTTON SHIRT | CLOTHING | RETURNED | |
| 19SP053735 | 00017417 | | BACKPACK WITH PERSONAL BELONGINGS | MISC. ITEM | RETURNED | |
| 19SP053735 | 00017418 | | NORMATEC MACHINE | MISC. ITEM | RETURNED | |
| 19SP053735 | 00017419 | 12/4/2019 11:07:56 AM | BED SHEETS WITH BLOOD | MISC. ITEM | BULK DEATH | |
| 19SP053735 | 00017420 | 12/4/2019 11:08:01 AM | BEDDING WITH BLOOD | MISC. ITEM | BULK DEATH | |
| 19SP053735 | 00017421 | 12/4/2019 11:13:59 AM | OPEN BAG OF GUMMY BEARS | MISC. ITEM | 19M-01 | |

Total Records: 17
Report Filter: Case/IR ( Contains ) 53735

7/8/2024 7:55:03 AM

1 of 1

| Case/IR | Barcode | Inventory Time | Description | Category Code | Location Code | Pkg Weight |
|---------|---------|----------------|-------------|---------------|---------------|------------|
| 19SP053735 | 00017405 | 12/4/2019 11:14:04 AM | ROOM KEY WITH WHITE POWDER RESIDUE | KEYS | 19M-01 | |
| 19SP053735 | 00017406 | 12/4/2019 11:14:01 AM | ROOM KEY CARD | KEYS | 19M-01 | |
| 19SP053735 | 00017407 | 12/3/2019 10:25:40 AM | UNKNOWN WHITE POWDER | NA- DRUGS | DRUGS BOX 2 | 0 |
| 19SP053735 | 00017408 | 12/3/2019 10:25:35 AM | INDOCIN | NA- DRUGS | DRUGS BOX 2 | 6.7 |
| 19SP053735 | 00017409 | 12/3/2019 10:25:14 AM | WHITE SUBSTANCE FROM FLOOR COLLECTED BY TAPE | NA- DRUGS | DRUGS BOX 2 | 0 |
| 19SP053735 | 00017410 | | APPLE IPAD SN:DLXV60JDHPJ6 | ELECTRONICS | OTHER AGENCY CASE | |
| 19SP053735 | 00017411 | | BLACK APPLE IPHONE | PHONE | OTHER AGENCY CASE | |
| 19SP053735 | 00017412 | | PLASTIC PEN TUBE | MISC. ITEM | 19M-01 | |
| 19SP053735 | 00017413 | 12/3/2019 10:24:57 AM | BLUE PILL "M/30" | NA- DRUGS | OTHER AGENCY | 0 |
| 19SP053735 | 00017414 | 12/3/2019 10:25:01 AM | 5 PINK PILLS "K/56" | NA- DRUGS | OTHER AGENCY | 0 |
| 19SP053735 | 00017415 | | WALLET, RING, PASSPORT, ID, CASH, EARBUDS | MISC. ITEM | RETURNED | |
| 19SP053735 | 00017416 | | BLACK COWBOY HAT AND BUTTON SHIRT | CLOTHING | RETURNED | |
| 19SP053735 | 00017417 | | BACKPACK WITH PERSONAL BELONGINGS | MISC. ITEM | RETURNED | |
| 19SP053735 | 00017418 | | NORMATEC MACHINE | MISC. ITEM | RETURNED | |
| 19SP053735 | 00017419 | 12/4/2019 11:07:56 AM | BED SHEETS WITH BLOOD | MISC. ITEM | BULK DEATH | |
| 19SP053735 | 00017420 | 12/4/2019 11:08:01 AM | BEDDING WITH BLOOD | MISC. ITEM | BULK DEATH | |
| 19SP053735 | 00017421 | 12/4/2019 11:13:59 AM | OPEN BAG OF GUMMY BEARS | MISC. ITEM | 19M-01 | |

1 of 1

Total Records: 17
Report Filter: Case/IR ( Contains ) 53735

7/8/2024 7:53:03 AM

Exhibit 26

December 10, 2024, TPIA Request #14
to the Southlake PD

| From: | E. Ladsous . Delta 7 Group |
|---|---|
| To: | DPSRecords |
| Cc: | sladsous@tocounsel.com; Lindsey S. Susolik |
| Subject: | Texas Public Information Act Request – Southlake Police Department - Evidence Destruction Records - Grapevine PD Case Number 1900038391 |
| Date: | Tuesday, December 10, 2024 12:27:00 PM |
| Attachments: | image001.png |
| | image002.png |
| | image003.png |
| Importance: | High |

Dear Public Information Officer,

Pursuant to the Texas Public Information Act (TPIA), Chapter 552 of the Texas Government Code, I am formally requesting documentation related to the handling and presumed destruction of derivative evidence transferred from the Grapevine Police Department (Grapevine PD) to the Southlake Police Department (Southlake PD) on April 5, 2021. Specifically, my request includes:

1. **Records Related to the Destruction of Evidence**:

   - Any and all records, logs, or documentation regarding **the destruction, disposal, or transfer of derivative evidence from the Grapevine PD forensic server to Southlake PD on April 5, 2021, under Grapevine PD Case Number 1900038391**.
   - Documentation reflecting compliance with **Texas Government Code § 441.187(b)** and **Local Government Records Retention Schedules (Local Schedule PS)**, including:
     - The date and method of destruction.
     - Authorization or approval for destruction.
     - All correspondence or communications concerning the destruction or disposal of the records.

2. **Verification of Handling and Retention**:

   - Records verifying the receipt of original digital evidence transferred from the Grapevine PD to the Southlake PD on or about April 5, 2021.
   - Any documentation, chain of custody logs, or internal correspondence related to the storage, transfer, handling, or preservation of derivative evidence connected to Grapevine PD Case Number 1900038391.

**Statutory Basis for Retention**

Under **Texas Government Code § 441.187(b)**, local government records, including evidence

**726**

related to criminal investigations, cannot be destroyed without prior approval and proper documentation. Furthermore, **Local Government Records Retention Schedule PS** (Records of Public Safety Agencies) mandates the indefinite retention of evidence in death investigations to ensure availability for legal scrutiny.

**Background Context**

This request seeks clarity regarding the status of derivative evidence that was reportedly transferred from Grapevine PD to Southlake PD on April 5, 2021. The absence of these records raises concerns about compliance with statutory retention and evidence-handling protocols outlined in the **Texas Code of Criminal Procedure Article 2.21**, which requires law enforcement agencies to properly document evidence handling and maintain transparency.

**Legal Obligations**

Under **Texas Government Code § 552.221**, you are required to respond to this request within ten (10) business days, indicating whether the requested materials will be released, delayed, or withheld under specific exemptions. If the requested records have been destroyed, I request documentation detailing the destruction, including all associated authorizations and logs.

Should you require clarification or additional information, please contact me promptly to ensure a timely response.

Thank you for your attention to this matter.

Sincerely,

Emmanuel Ladsous

_____

**Emmanuel Ladsous**
President / Private Investigator
**Delta 7 Group, LLC**
A Professional Security Consultancy
4712 E 2nd Street, Suite 231
Long Beach, CA 90803-5309
Phone:  (800) 689-6546, Ext. 700
Mobile:  (949) 423-4350
Email address:  E.Ladsous@Delta7Group.com
Website:      www.Delta7Group.com

**727**

CA PI License#    188424






**This email is unsecured and subject to monitoring.**

CONFIDENTIALITY NOTICE:  This communication and any documents, files, or previous email messages attached constitute an electronic communication within the scope of the Electronic Communication Privacy Act, 18 U.S. Code § 2510. This communication may contain non-public, confidential, or legally privileged information intended for the designated recipient(s) sole use. The unlawful interception, use, or disclosure of such information is strictly prohibited under 18 U.S. Code § 2511 and applicable laws. If you are not the intended recipient or have received this communication in error, please notify the sender immediately by email to E.Ladsous@Delta7Group.com and delete all copies of this communication, including attachments, without reading or saving them in any matter.

Exhibit 27

Ms. Bronstein's December 26, 2024, response to TPIA
Request #14

# T✪ASE

## TAYLOR·OLSON·ADKINS·SRALLA·ELAM
### LLP
#### ATTORNEYS & COUNSELORS

6000 WESTERN PLACE, SUITE 200
FORT WORTH, TEXAS 76107

TELEPHONE: (817) 332-2580
FACSIMILE: (817) 332-4740
WEBSITE: WWW.TOASE.COM

Bessie Bronstein
pia@toase.com

December 26, 2024

Emmanuel Ladsous
Delta 7 Group, LLC
4712 E 2nd Street, Suite 231
Long Beach, California 90803
e.ladsous@delta7group.com

> Re:   *Public Information Request Received by the City of Southlake Dated December 10, 2024*

Dear Mr. Ladsous:

I represent the City of Southlake regarding the above-described matter. The remaining information is being withheld pursuant to previous determinations from the Texas Attorney General.

This letter is provided to you pursuant to Section 552.232 of the Texas Public Information Act because the City of Southlake has previously furnished copies or made available to you some of the information responsive to your Public Information Act request of December 10, 2024. By this letter, I hereby certify the following:

1) On November 14, 2024, the City of Southlake received several requests from you for the information related the transfer of evidence from Grapevine Police Department;

2) On November 25, 2024 and December 2, 2024, the City of Southlake furnished copies or made available to you copies of the information that it had in its custody that was responsive to your requests;

3) No subsequent additions, deletions or corrections have been made to the information noted on the list.

The City understands the rights of all citizens to make requests for public information and invites all citizens to avail themselves of that right. Should you have any questions, please do not hesitate to contact me. Of course, all questions may also be forwarded to the Office of the Texas Attorney General, Open Government Hotline, at (512) 478-6736 or toll-free at 1-877-673-6839.

Sincerely,

Bessie Bronstein

December 26, 2024
Page 2

_____

BB:nm
Enclosures

V:\Southlake\PIA--SUBPOENAS\2024\Ladsous, Emmanuel 12.16.24\To Requestor\Ladsous,BB001.docx

Exhibit 28

December 26, 2024, email to Ms. Bronstein, TOASE

| From: | E. Ladsous . Delta 7 Group |
|---|---|
| To: | PIA TOASE; Bessie Bronstein |
| Cc: | Lindsey S. Susolik; sladsous@tocounsel.com |
| Subject: | RE: Public Information Request to the City of Southlake - December 10, 2024 - Clarifications Needed |
| Date: | Thursday, December 26, 2024 2:53:00 PM |
| Attachments: | image002.png |
| | image003.png |
| | image004.png |
| Importance: | High |

Dear Bessie,

Thank you for your response regarding my TPIA request. However, I need clarification on specific points to fully understand the information provided.

1. **Attorney General Determination:**

   You stated, "**remaining information is being withheld** pursuant to previous determinations from the Texas Attorney General." Could you please clarify:

   ○ Which specific Attorney General determinations are you referencing?
   ○ How do these determinations apply to the information I have requested?
   ○ Whether these determinations explicitly exempt documentation regarding the handling, transfer, or destruction of derivative evidence.

2. **Destruction of Evidence:**

   My request pertains to documentation related to the handling and presumed destruction of electronic evidence transferred from Grapevine PD to Southlake PD on April 5, 2021. The Grapevine PD confirmed the electronic evidence was "moved" to the Southlake PD server on that date. In your previous responses, you indicated that:

   ○ Southlake PD does not currently possess this evidence.
   ○ The evidence was not transferred to the DEA.

If the evidence was destroyed, strict protocols under Texas Government Code § 441.187(b) and the Local Government Records Retention Schedules (Local Schedule PS) should have been followed. **Your response suggests no such records exist**. Can you confirm:

   ○ Whether the derivative evidence was indeed destroyed?
   ○ If so, why is there no record of the destruction, disposal, or authorization process?

3. **November 14, 2024, TPIA Request for iPad Chain of Custody:**

   I am also seeking a response to my November 14, 2024, TPIA request regarding the chain of

custody documentation for the **iPad** (not the iPhone) related to Grapevine PD Case Number 1900038391. Could you please confirm whether this request is still being processed or provide an update on its status?

Your previous emails state, "**Should you have any questions, please do not hesitate to contact me.**" I am reaching out in good faith to ensure clarity and cooperation as this matter is critical, especially with the trial scheduled for April 2025. Your prompt assistance in clarifying these points and addressing the pending TPIA request would be greatly appreciated.

As a side note, I want to emphasize that my intent is straightforward and rooted in basic investigative work. I am simply trying to establish the chain of custody for the iPhone and the derivative evidence. While I understand that the iPhone was re-imaged by the U.S. Secret Service, evidence remains evidence, and determining what happened to the derivative evidence is a logical and necessary question. These basic inquiries should have clear and traceable answers, as evidence-handling protocols are designed to ensure transparency and accountability. The past cannot be changed, but the information regarding the handling of this evidence should be readily accessible. Yet, we find ourselves still piecing together basic details. Your cooperation in addressing these points would be invaluable in resolving these outstanding questions efficiently.

Thank you for your time and attention. I look forward to your response.

Best regards,

Emmanuel

_____

**Emmanuel Ladsous**
President / Private Investigator
**Delta 7 Group, LLC**
A Professional Security Consultancy
4712 E 2nd Street, Suite 231
Long Beach, CA 90803-5309
Phone:  (800) 689-6546, Ext. 700
Mobile: (949) 423-4350
Email address:  E.Ladsous@Delta7Group.com
Website:       www.Delta7Group.com
CA PI License#    188424



 

**This email is unsecured and subject to monitoring.**

CONFIDENTIALITY NOTICE:  This communication and any documents, files, or previous email messages attached constitute an electronic communication within the scope of the Electronic Communication Privacy Act, 18 U.S. Code § 2510. This communication may contain non-public, confidential, or legally privileged information intended for the designated recipient(s) sole use. The unlawful interception, use, or disclosure of such information is strictly prohibited under 18 U.S. Code § 2511 and applicable laws. If you are not the intended recipient or have received this communication in error, please notify the sender immediately by email to E.Ladsous@Delta7Group.com and delete all copies of this communication, including attachments, without reading or saving them in any matter.

---

**From:** PIA TOASE <pia@toase.com>
**Sent:** Thursday, December 26, 2024 1:52 PM
**To:** E. Ladsous . Delta 7 Group <e.ladsous@delta7group.com>
**Subject:** Public Information Request to the City of Southlake

Please see the attached regarding your December 10, 2024 request.



CONFIDENTIAL NOTICE:  This electronic transmission and any documents or other writings sent with it constitute confidential information which is intended only for the named recipient and which may be legally privileged.  If you have received this communication in error, do not read it.  Please reply to the sender at Taylor, Olson, Adkins, Sralla & Elam, LLP that you have received the message in error.  Then delete it.  Any disclosure, copying, distribution or the taking of any action concerning the contents of this communication or any attachment(s) by anyone other than the named recipient is strictly prohibited.

Exhibit 29

January 6, 2025, TPIA request #15
to the Southlake PD

Emmanuel Ladsous

Private Investigator (CA PI Lic. 188424)

**Delta 7 Group, LLC**

4712 E 2nd Street, Ste. 231

Long Beach, CA 90803

Email: E.Ladsous@Delta7Group.com

Phone: (949) 423-4350

January 6, 2025

**Public Information Officer**

Southlake Police Department

600 State Street

Southlake, TX 76092

**Via Email**

**Subject: Texas Public Information Act Request – Email Correspondence Concerning Tyler Skaggs Death Investigation, Southlake Police Department Case Number 19SP053735.**

Dear Public Information Officer,

Pursuant to the **Texas Public Information Act ("TPIA"), Texas Government Code Chapter 552**, I respectfully request the following information, which covers the period from **July 1, 2019, to January 1, 2025**:

1. **Email Correspondence**

   - **All emails (sent or received)** by agents, officers, or personnel of the Southlake Police Department related to the death investigation of Tyler Skaggs (Incident No. 19SPO53735), including all internal emails exchanged among Southlake PD personnel and all emails exchanged with the Grapevine Police Department concerning Grapevine PD case number 1900038391 for the forensic examination performed on Tyler Skaggs' Apple iPhone and the evidence transfer in 2021.**DEA Correspondence**
   - **All correspondence** (including electronic communications) between the Southlake Police Department and the **Drug Enforcement Administration (DEA)** regarding the death investigation of Tyler Skaggs.

2. **Other Correspondence**

- **All emails to and from** Rusty Hardin & Associates, LLP (**@rustyhardin.com**) pertaining to the Tyler Skaggs death investigation.

**Legal Basis for Release of Emails as Public Information**

Under **Texas Government Code § 552.002**, "public information" is defined to include **"information that is written, produced, collected, assembled, or maintained under a law or ordinance or in connection with the transaction of official business,"** which expressly encompasses electronic communications such as email. In **City of Dallas v. Abbott, 304 S.W.3d 380 (Tex. 2010)**, the Texas Supreme Court confirmed that email communications about public business are subject to disclosure under the TPIA unless a specific statutory exemption applies.

Because these emails relate to official law enforcement activities or the administration of an investigation, they fall squarely within the scope of "public information" under the TPIA. Therefore, the Southlake Police Department must release them unless a valid **statutory exemption** under Chapter 552 is properly claimed and upheld.

**Clarification Requests and Non-Responses**

I also note that **all clarification requests** I previously made to the law firm Taylor Olson Adkins Sralla & Elam, representing the City of Southlake, **have gone unanswered**. Under **Texas Government Code § 552.222(b)**, a governmental body is required to make a good-faith effort to narrow or clarify requests where necessary. Non-responses to legitimate clarification inquiries **hinder the TPIA's transparency mandate and compromise the fair administration of justice**.

**Compliance with TPIA Deadlines**

- Pursuant to **Texas Government Code § 552.221(a)**, you are required to **promptly** produce public information for inspection, duplication, or both, and generally no later than **ten (10) business days** from the date of this request.
- If the Department believes that any portion of these records is exempt from disclosure, you must **request a ruling** from the Texas Attorney General and notify me in writing of the specific exemption(s) you are asserting, in accordance with **Texas Government Code §§ 552.301–552.303** and relevant opinions.

**Format and Costs**

- I request **electronic copies** (e.g., PDF files) of all responsive records to ensure efficiency and cost-effectiveness.
- If costs are projected to exceed **$40**, please provide a written cost estimate as required by **Texas Government Code § 552.2615** before proceeding.

---

**Conclusion**

Thank you for your prompt attention to this matter. Identifying, preserving, and disclosing relevant email communications is critical to understanding the chain of custody and investigative steps in the Tyler Skaggs death investigation. **Failure to produce responsive emails or to address clarification requests raises serious questions about transparency and undermines public confidence in the legal process**.

I look forward to receiving a response within **ten (10) business days**, as mandated by the TPIA. If you have any questions or require further clarification, please contact me at the information above.

Sincerely,

Emmanuel Ladsous
Private Investigator (CA PI Lic. 188424)
**Delta 7 Group, LLC**

Exhibit 30

Ms. Bronstein's January 21, 2025, response to TPIA
Request #15



6000 WESTERN PLACE, SUITE 200
FORT WORTH, TEXAS 76107

TELEPHONE: (817) 806-5242
PIA@TOASE COM

Bessie Bronstein
pia@toase.com

January 21, 2025

Emmanuel Ladsous
Delta 7 Group, LLC
Long Beach, California 90803
e.ladsous@delta7group.com

Re:    *Public Information Request Received by the City of Southlake on January 6, 2025*

Dear Mr. Ladsous:

I represent the City of Southlake regarding the above-described matter. Enclosed please find the information responsive to your request dated January 6, 2025.

The City understands the rights of all citizens to make requests for public information and invites all citizens to avail themselves of that right. Should you have any questions, please do not hesitate to contact me. Of course, all questions may also be forwarded to the Office of the Texas Attorney General, Open Government Hotline, at (512) 478-6736 or toll-free at 1-877-673-6839.

Sincerely,

Bessie Bronstein / akkewh

Bessie Bronstein

BB:dlw
Enclosures

V:\Southlake\PIA—SUBPOENAS\2025\Ladsous, Emmanuel (Email Correspondence) 6 25\To Requestor\Ladsous BB001 docx

**741**

**Sarah Blum**

| | |
|---|---|
| **From:** | Jonathan Macheca |
| **Sent:** | Tuesday, May 10, 2022 9:35 AM |
| **To:** | Sarah Blum |
| **Subject:** | Skaggs/Kay PIA email |

**Sergeant Jonathan Macheca**
**Criminal Investigations Division**
**Southlake Police Department**
**(817)748-8341**



CONFIDENTIAL NOTICE: This electronic transmission and any documents or other writings sent with it constitute confidential information which is intended only for the named recipient and which may be legally privileged. If you have received this communication in error, do not read it. Please reply to the sender at the City of Southlake, Texas that you have received the message in error. Then delete it. Any disclosure, copying, distribution or the taking of any action concerning the contents of this communication or any attachment(s) by anyone other than the named recipient is strictly prohibited.

**From:** Martin, Errin (USATXN) <Errin.Martin@usdoj.gov>
**Sent:** Tuesday, July 27, 2021 4:30 PM
**To:** Lindenberg, Geoffrey <Geoffrey.E.Lindenberg@dea.gov>; Desaracho, Matthew <Matthew.Desaracho@dea.gov>; Delaney A. Green <dagreen@ci.southlake.tx.us>; Jonathan Macheca <jmacheca@ci.southlake.tx.us>
**Cc:** Beran, Lindsey (USATXN) <Lindsey.Beran@usdoj.gov>; Bradshaw, Jonathan (USATXN) <Jonathan.Bradshaw@usdoj.gov>
**Subject:** FW: Kay Plea Offer

Hey guys.

Please don't respond, but if you want to talk about this, let us know. I will say that we are saying no to this offer, but are considering a counter.

**From:** Wm. Reagan Wynn <                              >
**Sent:** Tuesday, July 27, 2021 3:22 PM
**To:** Beran, Lindsey (USATXN) <LBeran@usa.doj.gov>; Martin, Errin (USATXN) <EMartin@usa.doj.gov>
**Cc:** Michael Molfetta <                              >; Chelsie Keller <                              >
**Subject:** Kay Plea Offer

Lindsey/Errin —

Mr. Molfetta and I have met with Mr. Kay and thoroughly discussed the plea offer with him. At this time, while Mr. Kay has expressed a desire to accept responsibility for his actions, he feels that the offered sentencing range is too high under the facts and circumstances of this case.

1

**742**

We are authorized to make a counter-offer whereby Mr. Kay would plead guilty to either the conspiracy in Count 1 or delivery in Count 2 with a Rule 11(c)(1)(C) agreement that the sentence would not exceed 36 months.

Thanks,

Reagan
Wm. Reagan Wynn
817.900.6800

**743**

## Southlake Case 19SP053735

**Delaney A. Green <dagreen@ci.southlake.tx.us>**
Tue 7/30/2019 10:06 AM

To: ⬛⬛⬛⬛⬛⬛⬛⬛⬛ ⬛⬛⬛⬛⬛⬛⬛⬛⬛ >
Bcc: Jonathan Macheca <jmacheca@ci.southlake.tx.us>

Mr. Molfetta,

Per our conversation, my contact information is provided below. I will reach out to you again in approximately two weeks, when Mr. Kay is expected to have completed his rehab program. If anything changes sooner than that, please feel free to email or call at anytime.

Thank you,

--
**Detective D. Green #1594**
*Criminal Investigations Division*

600 State Street
Southlake, TX 76092
Office: (817) 748-8129

### Re: Southlake Case 19SP053735

**Delaney A. Green** <dagreen@ci.southlake.tx.us>

Fri 8/9/2019 8:09 AM

To: michael@michaelmolfettalaw.com < >

Mr. Molfetta,

I know Mr. Kay is scheduled to be out of rehab either this week or early next week; we are trying to get together a possible itinerary for California if Mr. Kay is willing to speak with us. If you could please advise as soon as possible, I would greatly appreciate it!

Thank you,

On Tue, Jul 30, 2019 at 10:06 AM Delaney Green <dagreen@ci.southlake.tx.us> wrote:

Mr. Molfetta,

Per our conversation, my contact information is provided below. I will reach out to you again in approximately two weeks, when Mr. Kay is expected to have completed his rehab program. If anything changes sooner than that, please feel free to email or call at anytime.

Thank you,

--

**Detective D. Green #1594**
*Criminal Investigations Division*

600 State Street
Southlake, TX 76092
Office: (817) 748-8129

**Detective D. Green #1594**
*Criminal Investigations Division*

600 State Street
Southlake, TX 76092
Office: (817) 748 8129

## RE: Southlake Case 19SP053735

Michael Molfetta <​_____​>

Fri 8/23/2019 12:16 PM

To: Delaney A. Green <dagreen@ci.southlake.tx.us>

Good Morning,
I apologize for the delayed response. I have been traveling on another matter which is no excuse but it's all I got!
At this time I do not think my client will agree to an interview. I appreciate the patience you have shown.
Sincerely,
Michael Molfetta

---

**From:** Delaney Green <dagreen@ci.southlake.tx.us>
**Sent:** Monday, August 12, 2019 10:58:12 AM
**To:** Michael Molfetta <​_____​>
**Subject:** Re: Southlake Case 19SP053735

Mr. Molfetta,

Wanted to follow-up with another email just in case you hadn't received my voicemail from this morning. If at all possible, could you please advise as soon as possible if Mr. Kay will provide us the opportunity to interview him, as we're trying to get this case wrapped up sooner, rather than later!

Thank you,

On Fri, Aug 9, 2019 at 8:09 AM Delaney Green <dagreen@ci.southlake.tx.us> wrote:
> Mr. Molfetta,
>
> I know Mr. Kay is scheduled to be out of rehab either this week or early next week; we are trying to get together a possible itinerary for California if Mr. Kay is willing to speak with us. If you could please advise as soon as possible, I would greatly appreciate it!
>
> Thank you,
>
> On Tue, Jul 30, 2019 at 10:06 AM Delaney Green <dagreen@ci.southlake.tx.us> wrote:
>> Mr. Molfetta,
>>
>> Per our conversation, my contact information is provided below. I will reach out to you again in approximately two weeks, when Mr. Kay is expected to have completed his rehab program. If anything changes sooner than that, please feel free to email or call at anytime.
>>
>> Thank you,
>>
>>
>> **Detective D. Green #1594**
>> *Criminal Investigations Division*
>>
>> 600 State Street
>> Southlake, TX 76092
>> Office: (817) 748 8129

--
**Detective D. Green #1594**
*Criminal Investigations Division*

600 State Street
Southlake, TX 76092
Office: (817) 748-8129

--
**Detective D. Green #1594**
*Criminal Investigations Division*

600 State Street
Southlake, TX 76092
Office: (817) 748-8129

Exhibit 31

Southlake City Attorney's September 25, 2024
Response to TPIA Request #6



6000 WESTERN PLACE, SUITE 200
FORT WORTH, TEXAS 76107

TELEPHONE: (817) 806-5242
PIA@TOASE.COM

Bessie Bronstein
pia@toase.com

September 25, 2024

Emmanuel Ladsous
DELTA 7 GROUP, LLC
4712 E. 2nd Street, Suite 231
Long Beach, California 90803
e.ladsous@delta7group.com

Re:    *Public Information Request Received by the City of Southlake on September 11, 2024*

Dear Mr. Ladsous:

I represent the City of Southlake regarding the above-described matter. Enclosed please find the information that the City has in their custody that is responsive to your request dated September 11, 2024.

The City understands the rights of all citizens to make requests for public information and invites all citizens to avail themselves of that right. Should you have any questions, please do not hesitate to contact me. Of course, all questions may also be forwarded to the Office of the Texas Attorney General, Open Government Hotline, at (512) 478-6736 or toll-free at 1-877-673-6839.

Sincerely,

*Bessie Bronstein /JHale*

Bessie Bronstein

BB:dlw
Enclosures

V:\Southlake\PIA—SUBPOENAS\2024\Ladsous, Emmanuel 9 11 24\To Requestor\Ladsous BB001.docx

**749**

# Southlake Police Department

## Transfer Receipt

**TRANSACTION TYPE:** Transfer
**TO LOCATION:** OTHER AGENCY CASE
**ASSIGNEE:** Spencer, Senora
**USER:** Spencer, Senora
**DATE/Time:** 9/6/2019 2:32:12 PM

| Barcode | Case/IR | Item Detail | Date Received | Received By |
|---------|---------|-------------|---------------|-------------|
| 00017410 | 19SP053735 | APPLE IPAD SN:DLXV60JDHPJ6 | 9-11-19 | *(signature)* |

**Remarks:** RELEASED TO DEA BY CPL. GREEN 9/6/19

**Signature:** *(signature)*

# Southlake Police Department

## Transfer Receipt

**TRANSACTION TYPE:** Transfer
**TO LOCATION:** OTHER AGENCY
**ASSIGNEE:** Spencer, Senora
**USER:** Spencer, Senora
**DATE/Time:** 1/23/2020 11:12:52 AM

| Barcode | Case/IR | Item Detail | Date Received | Received By |
|---|---|---|---|---|
| 00017413 | 19SP053735 | BLUE PILL "M/30" | 1/23/2020 | *(signature)* |
| 00017414 | 19SP053735 | 5 PINK PILLS "K/56" | | *(signature)* |

**Remarks:** ITEMS RELEASED TO DEA FOR ADDITIONAL ANALYSIS 1/23/2020

**Signature:** *(signature)*

**751**

# Southlake Police Department

## Transfer Receipt

**TRANSACTION TYPE:** Transfer
**TO LOCATION:** COURT
**ASSIGNEE:** SPENCER, SENORA
**USER:** SPENCER, SENORA
**DATE/Time:** 2/7/2022 11:31:08 AM

| Barcode | Case/IR | Item Detail | Date Received | Received By |
|---|---|---|---|---|
| 00017405 | 19SP053735 | ROOM KEY WITH WHITE POWDER RESIDUE | 2/7/2022 | SA Mattheo de Saracho |
| 00017406 | 19SP053735 | ROOM KEY CARD | | |
| 00017407 | 19SP053735 | UNKNOWN WHITE POWDER | | |
| 00017408 | 19SP053735 | INDOCIN | | |
| 00017409 | 19SP053735 | WHITE SUBSTANCE FROM FLOOR COLLECTED BY TAPE | | |
| 00017412 | 19SP053735 | PLASTIC PEN TUBE | | |

**Remarks:**    EVIDENCE RELEASED TO DEA FOR TYLER SKAGGS TRIAL 2/7/22

**Signature:** _Senora Spencer_

752

**U.S. DEPARTMENT OF JUSTICE** - DRUG ENFORCEMENT ADMINISTRATION
## RECEIPT FOR CASH OR OTHER ITEMS

TO: (Name, Title, Address (including ZIP CODE), if applicable)

FILE NO.  MO-19-2045

G-DEP IDENTIFIER

FILE TITLE  Kay Eric

DATE  2/7/22

DIVISION/DISTRICT OFFICE  DFD / FWDO

I hereby acknowledge receipt of the following described cash or other item(s),
which was given into my custody by the above named individual.

| AMOUNT or QUANTITY | DESCRIPTION OF ITEM(S) | PURPOSE (If Applicable) |
|---|---|---|
| 1 | ELPD Evidence Bags Ex 1,2,3,4,5,8 | trial checkout |
| | Nothing Follows | |
| | | |

RECEIVED BY (Signature)

NAME AND TITLE (Print or Type)  SA Matthew DeSaracho

WITNESSED BY (Signature)

NAME AND TITLE (Print or Type)

FORM DEA-12 (8-02) *Previous editions obsolete*

Electronic Form Version Designed in JetForm 5.2 Version

**Southlake Police Department**

# Item History

| Barcode: | 00017411 | | Item No: | 007 | | | | | |
|----------|----------|------|----------|-----------|-----------|-----------|----------|---------|-----------|
| Description: | BLACK APPLE IPHONE | | | | | | | | |
| Date & Time | User | Assignee | Field | Old Value | New Value | Action | Location | Remarks | Signature |
| 9/9/2019 4:38 PM | sspencer | | Location | OTHER AGENCY | OTHER AGENCY CASE | Field Updated | OTHER AGENCY CASE | | |
| 9/3/2019 2:08 PM | sspencer | Spencer, Senora | | | | Transfer | OTHER AGENCY | RELEASED TO THE DEA BY CPL. GREEN 9/3/19 | |
| 9/3/2019 2:08 PM | sspencer | | Location | 19M-01 | OTHER AGENCY | Field Updated | OTHER AGENCY | | |
| 7/24/2019 9:59 AM | sspencer | Spencer, Senora | | | | Transfer | 19M-01 | | |
| 7/24/2019 9:59 AM | sspencer | | Location | OTHER AGENCY | 19M-01 | Field Updated | 19M-01 | | |
| 7/18/2019 11:16 AM | sspencer | | Location | BULK DEATH | OTHER AGENCY | Field Updated | OTHER AGENCY | | |
| 7/2/2019 9:53 AM | sspencer | Spencer, Senora | | | | Transfer | BULK DEATH | | |
| 7/2/2019 9:53 AM | sspencer | | Location | In-Transit | BULK DEATH | Field Updated | BULK DEATH | | |
| 7/2/2019 9:52 AM | sspencer | Spencer, Senora | | 005% | In-Transit | Approved | In-Transit | Item Approved From OIM | |
| 7/2/2019 9:51 AM | sspencer | ROBERSON, T | | | 005% | Submitted | In-Transit | Item Submitted From OIM | |

Exhibit 32

Page 157 from the February 10, 2022, Volume 6 of 11 transcript in USA v. Eric Prescott Kay.

```
 1                 IN THE UNITED STATES DISTRICT COURT

 2                FOR THE NORTHERN DISTRICT OF TEXAS

 3                       FORT WORTH DIVISION

 4   UNITED STATES OF AMERICA,    ) CASE NO. 4:20-CR-269-Y
                                  )
 5            Government,         )
                                  ) FORT WORTH, TEXAS
 6   VERSUS                       )
                                  ) FEBRUARY 10, 2022
 7   ERIC PRESCOTT KAY,           )
                                  )
 8            Defendant.          ) 9:28 A.M.

 9

10                       VOLUME 6 OF 11
                    TRANSCRIPT OF JURY TRIAL
11            BEFORE THE HONORABLE TERRY R. MEANS
          UNITED STATES DISTRICT COURT JUDGE, AND A JURY
12

13   A P P E A R A N C E S:

14   FOR THE GOVERNMENT:     MS. LINDSEY E. BERAN
                             MS. ERRIN MARTIN
15                           MR. JOSEPH T. LO GALBO
                             UNITED STATES DEPARTMENT OF JUSTICE
16                           NORTHERN DISTRICT OF TEXAS
                             U.S. Courthouse, Third Floor
17                           Dallas, Texas  75242
                             Telephone:  214.659.8600
18
     FOR THE DEFENDANT:      MR. WILLIAM REAGAN WYNN
19                           Reagan Wynn Law, PLLC
                             5049 Edwards Ranch Road, Floor 4
20                           Fort Worth, Texas 76109
                             Telephone:  817.900.6800
21
                             MR. MICHAEL ALESSANDRO MOLFETTA
22                           Molfetta Law
                             3070 Bristol Street, Suite 580
23                           Costa Mesa, CA  92626
                             Telephone:  949.391.2399
24

25
```

1    COURT REPORTER:            MS. DEBRA G. SAENZ, CSR, RMR, CRR
                               501 W. 10th Street, Room 507
2                              Fort Worth, Texas  76102
                               Telephone:  817.850.6661
3                              E-Mail: debbie.saenz@yahoo.com

4

5

6    Proceedings reported by mechanical stenography, transcript

7    produced by computer.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                          I N D E X

 2   PROCEEDINGS                                    PAGE   VOL

 3   Reporter's Certificate.........................  254    6

 4   Word Index.....................................  255    6

 5

 6              CHRONOLOGICAL WITNESS INDEX

 7   G/D   WITNESS                     DIRECT    CROSS   VOL

 8   G     Delaney Green                010      038      6
     G     Stefan Hare                  054      132      6
 9                                      176      --       6
     G     Marc Krouse                  184      201      6
10                                      229      --       6
     G     Jaso Gaines                  231      242      6
11   G     Aria McCall                  244      --       6

12

13

14              ALPHABETICAL WITNESS INDEX

15   G/D   WITNESS                     DIRECT    CROSS   VOL

16   G     Gaines, Jaso                 231      242      6
     G     Green, Delaney               010      038      6
17   G     Hare, Stefan                 054      132      6
                                        176      --       6
18   G     Krouse, Marc                 184      201      6
                                        229      --       6
19   G     McCall, Aria                 244      --       6

20

21

22

23

24

25
```

Debbie Saenz, CSR, RMR, CRR, TCRR
United States District Court
(817) 850-6661

1  in a Faraday bag or other device to seal it off from the

2  cellular and Wi-Fi networks, correct?

3  A.      There are numerous methods used to isolate from

4  networks.  A Faraday bag is one.

5  Q.      What are the others?

6  A.      Removing of the SIM card.

7  Q.      Okay.  When you received the phone in this case, did

8  it appear anybody had removed the SIM card?

9  A.      I don't believe so.

10 Q.      Okay.  What are others?  We've got Faraday bag,

11 remove the SIM card.  What's another one?

12 A.      If the device is able to be placed into airplane

13 mode, it will also reduce it.

14 Q.      When you received this device, did it appear to be in

15 airplane mode?

16 A.      I don't believe so.

17 Q.      Okay.  So, we've got airplane mode, remove the SIM

18 card, Faraday bag.  Any others?

19 A.      Not that I could think of at this moment, sir.

20 Q.      Okay.  So, is it fair to say no one tried to preserve

21 this phone in the condition it was in on July 1st, when it was

22 found at the Hilton before you received it?

23 A.      I wasn't on the scene at the time, but we took the

24 appropriate measures at the time of examination.

25 Q.      Okay.  So, let's get to that.  When you got it and

Exhibit 33

Dr. Eoghan Casey
Biography (2025)

# Dr. Eoghan Casey



### Dr Eoghan Casey

Dr. Eoghan Casey is an internationally recognized expert in digital forensic investigation and cyber risk mitigation. He is Field CTO at OwnData.com and professor at University of Lausanne, School of Criminal Sciences. At Own, he helps advance business strategies and technology solutions for SaaS data protection and security analytics, including ransomware readiness and AI-driven alerting. As Chief Scientist of the U.S. Department of Defense Cyber Crime Center (DC3), he was responsible for innovation, strategic collaborations, and advancing standards and practices related to digital forensics and malware/CTI analysis. He has extensive experience on a wide range of cybercrime investigations, and has delivered expert testimony in civil and criminal matters in the United States, Canada, and international tribunals. Dr. Casey is editor and coauthor of the Handbook of Digital Forensics & Investigation and he wrote the foundational book Digital Evidence & Computer Crime, now in its third edition. He has contributed to development of advanced capabilities for extracting and analyzing digital evidence, including the patented DC3 Advanced Carver and DC3 SQLite Dissect. He is cofounder of the Cyber-investigation Analysis Standard Expression (CASE), an evolving standard for interoperability and intelligent analysis of cyber-investigation information. He is on the Board of DFRWS.org and has a PhD in Computer Science from University College Dublin.

https://eafs2025.org/biography-dr-eoghan-casey/