# APPENDIX 59

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

ERIC PRESCOTT KAY, *
*
Plaintiff, *
*
VS * CIVIL ACTION NO.
* 4:25-CV-132-Y
*
UNITED STATES OF AMERICA, *
*
Defendant. *

*******************************************
ORAL AND VIDEOTAPED DEPOSITION OF
RICHARD WEBER
TAKEN ON
JUNE 11, 2026
VOLUME 1
*******************************************

ORAL AND VIDEOTAPED DEPOSITION OF RICHARD WEBER, produced as a witness on behalf of the Defendant, and duly sworn, was taken in the above-styled and -numbered cause, on June 11, 2026, from 9:56 a.m. to 11:16 a.m., Central Time, before Sonya Britt-Davis, Certified Shorthand Reporter, in and for the State of Texas, reported by machine shorthand, located at the offices of Grapevine Police Department, 1007 Ira E Woods Avenue, Grapevine, Texas pursuant to the Federal Rules of Civil Procedure.

A P P E A R A N C E S:

FOR THE PLAINTIFF:

Ms. McKenzie Edwards
Ms. Naomi Fenwick
NORTHERN DISTRICT OF TEXAS
ASSISTANT FEDERAL PUBLIC DEFENDER
525 South Griffin Street, Suite 629
Dallas, Texas 75202
Phone: 214.767.2746
E-mail: mckenzie_edwards@fd.org
naomi_fenwick@fd.org

FOR THE DEFENDANT:

Mr. Jonathan Bradshaw
ASSISTANT UNITED STATES ATTORNEY
1100 Commerce Street, Third Floor
Dallas, Texas 75242
Phone: 214.659.8835
E-mail: jonathan.bradshaw@usdoj.gov

FOR THE DEPONENT AND CITY OF GRAPEVINE:

Ms. Kaitlen Cerney
BOYLE & LOWRY, LLP
4201 Wingren, Suite 108
Irving, Texas 75062
Phone: 972.650.7100
E-mail: kcerney@boyle-lowry.com

Also Present:
David Guerra, Videographer
Kloe Jansonius, Intern

INDEX

PAGE
Appearances.................................... 2
WITNESS: RICHARD WEBER
Direct Examination by Ms. Edwards................. 4
Reporter's Certification Page..................... 58

EXHIBIT INDEX

PAGE MARKED
Exhibit 1........................................ 10
Grapevine Police Department - Call For Service Report
Exhibit 2........................................ 35
Chain of Custody document
Exhibit 3........................................ 49
Inventory document

P R O C E E D I N G S:

THE VIDEOGRAPHER: On the record at 9:56 a.m., June 11th, 2026, for the deposition of Richard Weber in the matter of Eric Prescott Kay versus United States of America.

Counsel, please state your appearances, and the court reporter will then swear in the witness.

MS. EDWARDS: McKenzie Edwards. I'm with the assistant -- I'm with the Federal Public Defender's Office.

MR. BRADSHAW: I'm Jonathan Bradshaw with the United States Attorney's office.

MS. CERNEY: Kaitlen Cerney on behalf of Detective Weber and the City of Grapevine.

MS. FENWICK: I'm Naomi Fenwick, Federal Public Defender's Office.

(Witness sworn.)

RICHARD WEBER,

having been first duly sworn, testified as follows:

DIRECT EXAMINATION

BY MS. EDWARDS:

Q. All right. Good morning.
A. Good morning.
Q. Will you state your name for the record.
A. Richard Weber.

Q. And we talked about this little bit when we catching up before this, but you're retired now. What was your previous employment?
A. I worked for the City of Grapevine.
Q. In what capacity?
A. I was a police officer/detective.
Q. And for roughly how long?
A. Well, I did 29 and a half years with Grapevine before I retired in about -- well, in 2000 I became a detective and two and a half years ago, I went to be a school resource officer, so...
Q. Wonderful.
A. So 24 years, 23 years, something like that.
Q. So you mentioned a couple of ranks in there. Can you give me just very basic what your job duties were at each sort of officer, detective, school resource officer?
A. As a patrol officer, I just patrolled, took calls, took reports. As a detective, you would be assigned cases, investigate cases. And when I was assigned to the school resource officer, I was assigned to a school to provide security there.
Q. Have you ever testified in court before?
A. Yes.
Q. Do you know roughly how many times?

A. Five -- five or seven, somewhere in there. Not -- not that much.

Q. And how about depositions?

A. Probably -- this will probably be my second or third.

Q. All right. Before we dig in, I'm just going to give a little bit of background, explain sort of the process and the framework for today and just to make sure everything goes smoothly. So you understand that you're providing sworn testimony the same as if you were in court?

A. Yes, ma'am.

Q. You know that these two lovely individuals are helping us out today. So to help make a clear record, we need to make sure not to talk over one another and to answer with a yes or a no as opposed to a head shake or nod, which I'm personally very guilty of a lot of the time, just to make sure that they can put things down accurately.

And to sort of help with them that, I'm going to let you finish your answers before I ask new questions and hopefully vice versa we can make that happen so no one is talking over each over.

A. Okay.

Q. Does that sound okay?

A. Yep.

Q. If you don't understand a question that I ask or want me to rephrase or are in any way confused, just let me know, and we'll handle that so that I can rephrase it for you.

A. Okay.

Q. And at any time if you need a break, let us know. If you realize at some point you want to correct an earlier answer, let us know. We're happy to do all that whenever.

A. Sure.

Q. Can you tell me a little bit about your educational background?

A. I graduated high school in '78. I attended a couple of different colleges, graduated from Tarleton State University in 1985. And that's it.

Q. When you were a police officer, did you get any sort of specialized training for your job duties?

A. Yes.

Q. Can you tell me a little bit about that?

A. It varied from the different roles that I had. Excuse me. In patrol we had patrol techniques that they would teach us. Being on the SWAT team, I received special training for that. And in CID -- I'm sorry -- criminal investigations division, you receive

a lot of training there.
Q. Did you have any training in digital forensics or computer forensics of any sort?
A. I did.
Q. When did you get that training?
A. Well, I believe, just estimating, I believe I started doing computer forensics, and actually it started with cell phone forensics, in probably 2005 or 2006, somewhere around there.
Q. Who gave you that training?
A. I've been to several trainings. Some of them at various agencies. I -- I think the first one I went to was down in Seguin, Texas. I don't even remember who put that on, but it was just kind of a basic because it was very all fledgling at that point and...
But probably the -- the most -- the hardest, the most inclusive training I received was from IACIS, the International Association of Computer Investigative Specialists.
Q. What sort of software would you use at any time during your Grapevine career when you were handling cell phone extractions or cell phone evidence?
A. Well, I mean, the software changed over the years.
Q. Sure.

A. We started with something called Data Pilot, I think it was called. That kind of went to wayside. We used to EnCase. That was mainly for computers. Data Pilot was for cell phones. Then we went -- what was it? Something started with a P. Par- -- I can't remember. It started with a P. That wasn't very good. Then we -- then we started using Cellebrite and I think -- well, we stayed with Cellebrite until -- when I left, we were still using Cellebrite.
Q. Okay. Did you receive certifications when you did any of these trainings for Cellebrite?
A. I did.
Q. And how many times with Cellebrite specifically were you trained by someone or about Cellebrite software or hardware?
A. They had different levels of classes, and I think I went through -- I went through a couple of times. Once just to learn, and then Cellebrite decided that they wanted to do a certification process. So I went through it again and did the certification process.
Q. Did you -- does Grapevine have a copy of that?
A. They do.
Q. Okay. Did you bring any documents with you today?

A. I did.
Q. What did you bring?
A. I brought a copy of the report that you requested and a copy of that training.
Q. Wonderful. Can I take a look at your report really quick?
A. (Complies).
MS. EDWARDS: Do you guys mind if we mark this one as Exhibit 1?
MS. CERNEY: Sounds great.
MS. EDWARDS: Great.
(Exhibit 1 marked.)
Q. We are just marking it as Exhibit 1.
A. Sure.
Q. We're going to talk about it --
A. Okay.
Q. -- a little later.
A. All right.
Q. I want to go ahead and give you a copy.
MS. EDWARDS: And then do you guys want a copy of this report?
MS. CERNEY: That's okay.
MS. EDWARDS: Do you want a copy of this report?
MR. BRADSHAW: Please, if you have one.

THE WITNESS: I got it.
MR. BRADSHAW: Is that okay?
MS. EDWARDS: Yeah, of course.
MR. BRADSHAW: Thank you, sir.
Q. Other than this report, did you review anything in preparation for today?
A. No.
Q. All right. I'm going to ask you some questions that are specific to Grapevine, not a particular case, not a particular person. Just sort of trying to figure out how things operated at the agency.
A. Okay.
Q. We've talked about cell phone extractions, but can you describe the normal process when someone submitted a phone for extraction, what did that look like?
A. The detective would be assigned a case and they would -- a cell phone would have been collected during that investigation. They would write a search warrant for it, and it would be signed by a district court judge.
They would let me know that they have a warrant to download the device. I would go to property and evidence, check out the device listed in the search warrant, bring it back to my lab, do what I need to do,

download it, make a report and give that to them to review. Typically I would not review them. They know their case. I don't know their case.

Q. Sure.

A. They don't -- I don't know what they're looking for and plus they might -- well, anyway. I would maintain a copy of that download on my server. And procedures kind of changed over the years. You know, at first we would -- we would keep a copy there on our server there, but after a while we started saving those downloads to thumb drives and then putting that thumb drive back into the evidence room.

So we -- as -- as things got cheaper, as thumb drives got cheaper, you know, we started saving money. That -- that was cheaper than rebuilding an array to save all the stuff on to.

Q. If an officer from another agency wanted help from Grapevine to do the same thing, is the process similar to how it -- how you're describing with the Grapevine detective?

A. Yes.

Q. Can you tell me about, like, the actual software, hardware itself and sort of where -- I'm going to back this up.

Where did you perform the extractions

inside the building?

A. You know, so I had -- I had an office on -- in CID. It was separate and secure from everybody else, but it was just like having an office.

Q. What hardware would you need to make the process happen?

A. Hardware, I'd use a -- I could use a laptop. I could use a tower computer. I used various things.

Q. How did you connect whichever device you're extracting to your computer for the process?

A. Well, whatever -- well, Cellebrite has a connector that -- you have to -- you have to put a dongle, the Cellebrite dongle that verifies that you have a license, the software license. And then you connect another device that you connect the USBs to, and it's just basically a USB connection is basically all it is.

Q. Does Grapevine have a forensics lab of any sort?

A. Yes. I mean, that's what we -- they called it.

Q. Okay.

A. Where I worked, my -- my office.

Q. Did Grapevine officers have access to your office if you weren't there?

A. No.
Q. Does Grapevine have a Faraday room?
A. Yes.
Q. Is it your office?
A. It's -- it's a room that's inside my office, so it's -- it's another security level.
Q. And does Grapevine have Faraday bags?
A. Yes.
Q. Can you tell the Court what a Faraday bag is?
A. A Faraday bag is something you put an electronic device into to block the outgoing or incoming signals to that device.
Q. And why is that important?
A. To prevent the altering of evidence if a suspect could remotely wipe evidence.
Q. Did Grapevine have any policies or procedures sort of outlining how you were supposed to handle digital forensic stuff?
A. I'm not -- I'm not sure that we had written -- written policies. I had -- I had my procedures that I followed.
Q. So based on your training?
A. Yes.
Q. It sounds like you got a lot of it.
A. Yes. Because I mean, everything is different

and sometimes you have to improvise, adapt.

Q. When an officer, yourself or a detective, collects a cell phone or piece of electronic evidence from a crime scene, what do they do with it to ensure that it is secured from networks, how are best to preserve the data?

A. Well, we used to use Faraday bags. When we ran out of Faraday bags because those were expensive, we started -- we -- there's a technique where you can wrap them in aluminum foil and it has the same affect and just package --

Q. Really?

A. -- it. Yeah.

Q. I didn't know that. That's kind of cool.

When you would collect the phone or when universally you would collect a phone from the scene, would you document, like, battery percentage?

A. I -- we -- we would note it. I don't know that we would document it. But if it was about to go out, we'd go, Oh, heck, we need to get this on a charger. And that's an item of concern when you're putting it on, you know, a Faraday bag. It's going to start searching for a signal, so it starts using up the battery even faster. So...

Q. Is there any way to charge them when they're

in a Faraday bag?
A. Not safely, no.
Q. Would you put the phone in airplane mode?
A. Yeah.
Q. Is there any other sort of network blocking measures that you would take or could take in that situation?
A. You can turn it off.
Q. Does that ever cause any problems?
A. It does. It could.
Q. Can you tell me a little bit about that?
A. Well, there towards the end turning off the phone, they called it something -- some software can break unknown pass codes on cell phones if you don't turn it off. If you turn it off, you've lost the ability to use a certain tool to break the pass -- pass code if you don't know it.
Q. Is that loss permanent in that situation?
A. Yes. Well, unless you -- I mean, unless somebody told you what the password was.
Q. Would whichever officer collected the evidence from the scene either note in like the item history report or their report the -- the make, the model, the, like, device specs of whatever they'd -- whatever they'd collected?

A. They should. It would be a good idea.
Q. Did you guys ever take pictures of the device either before or after an extraction to sort of log what it looked like?
A. Yes.
Q. Was that required or just something you'd --
A. Case --
Q. -- case by case?
A. Case by case, yeah.
Q. How soon after a piece of electronic evidence is collected from the scene should you do an extraction if you want one?
A. As long as you preserve the device in a way that you're not going lose the evidence. There's no time limit or constraints there.
Q. Once an officer has collected the evidence, done whatever note-taking or photographing they want to do and submitted it into your property room evidence locker, is there -- is documentation required for that?
A. I'm sorry?
Q. Do you document turning whatever electronic evidence you have, the phone, the iPad into the property room?
A. Yes. Yeah.
Q. If other Grapevine officers were asking you to

do an extraction, would you need to sign a chain of custody log for them at any point during this process?

A. I mean, when I go over to the property room and check one out, yes, I sign the chain of custody over there. If an officer -- if he goes over to the lab or to the evidence room and he checks it out and brings it to me, no.

Q. If an officer from a neighboring agency was asking you guys to help with an extraction, and would you sign anything to document collecting that evidence or transferring it between their agency and yours?

A. Sometimes I would, yes. Sometimes they wouldn't bring anything. Sometimes they would just bring it.

Q. When you're doing the extraction, were you typically doing them alone or with another examiner?

A. Typically alone.

Q. We talked a little bit about Cellebrite. Can you talk to me about what methods you can -- what methods are available on Cellebrite to extract -- extract data from electronic evidence?

A. Okay. Going back now. There's a -- there's a logical extraction. There's a physical extraction. And there's one that's right in the middle. And I remembered it last time, but I'm not sure what they

called that. It's -- I'm sorry. I can't remember what it's called.

Q. That's all right.

A. But there's one that's in between the two.

Q. In between logical and physical?

A. Right.

Q. Which of those -- strike that.

Tell me about a logical extraction and what information you get from that.

A. Well, a logical extraction is basically what is viewable on the phone.

Q. As if you were looking at the screen or scrolling it?

A. You're -- you're not -- you're not getting any deleted data.

Q. Which method does allow you to access hidden or deleted data?

A. The -- the physical extraction.

Q. What other types of data or what are other benefits would a physical extraction have over a logical or whichever one is in the middle?

A. You -- you get deleted data that you're not going to see otherwise.

Q. How would you choose which of these methods you wanted to use for a particular device?

A. What I typically did -- what I tried to do was -- I mean, I would always use the best technique I could. If -- if a physical download is available, I would obviously do that. Sometimes I would do both, a physical and the middle one. I don't think I would do all three. Can I add?

Q. Yeah.

A. A file -- file system dump is what the middle one is. File system.

Q. Wonderful.

Which method is fastest or easiest?

A. Logical.

Q. And I'm guessing slowest and most advanced is the physical?

A. Correct.

Q. How long do extractions typically take?

A. It depends on the device.

Q. Does it depend on the method too?

A. Yes.

Q. If you had to ballpark an Apple cell phone of some sort and you were doing a logical extraction, do you -- is there a way to sort of estimate how long that would take?

A. No. Because you got height, you got -- you got phones with a lot of data room, and you got phones

with no -- no data room. It's just going to vary on the phone and how much is actually in there. How -- how old it is. I mean, if it's a -- if it belongs to a teenage girl or an old man like me.

Q. How do you know when an extraction is completed or finished?

A. The software tells you.

Q. Like a pop-up?

A. Yeah.

Q. And how do you know that the data has been downloaded correctly after the extraction?

A. Well, the software -- if -- if something goes wrong with the software, it -- it -- it will quit working. It will fail. I don't -- I'm trying to -- I don't remember -- I'm sure that's happened to me, but, you know, because I've -- I've had to start over on -- on downloads.

Q. Sure.

A. But I don't remember what it would do. I mean, if it's completes, it completes.

Q. So once it's completed, my understanding is that you've essentially got raw data about the phone. Is -- is that correct?

A. Yeah. It gives you a -- a folder that contains the -- the data. And then you take that data

and you run it through another Cellebrite software, and that generates -- that parses it all out, and then you can print reports from that.

Q. So when you're putting it into whatever the Cellebrite software is, do you just click a button or are there certain actions you have to take in order to get it to do what it's supposed to do?

A. I think when you're downloading, if I remember -- I remember right, you can tell it to download certain things. That was in the logical downloads. Like, if you just wanted text messages or if you just wanted pictures, that's where you can choose, okay, I just want this. But if you want everything, you know, you -- you got to do the -- the physical or the file system.

But -- but once you -- once you've got that, you plug it into the software that parses it all out and that generates the -- what's reviewable.

Q. Is it sort of like a searchable platform of sorts --

A. It is.

Q. -- that you can use?

A. Yes.

Q. If you had done the extraction, would the report or the search platform indicate that you were

the examiner?
A. It would.
Q. Would it indicate start time, finish time for the extraction?
A. It would.
Q. And I don't actually know how the internal process for this works, and thank you for helping me get through this very dense material. Do you have to click any buttons when the extraction process is taking place? Is it sort of how you select which data you want?
A. No. I mean, before you -- if you're going to select what data you want, you do that before the extraction starts; and then it just goes and you're -- when it's done, it's done.
Q. When it's done, does it download to an application or to the computer hardware? Where does that data go when it's initially completed?
A. When you're -- when you're setting up the extraction, it -- it will ask you where you want that download saved.
Q. Would the report indicate when -- if you selected this information when it was connected to cellular -- cellular network?
A. I'm sorry. Say that again. Is that...

Q. Let's say you -- you know, someone had used the phone the day before to make a call.
A. Right.
Q. Would the report indicate that they were -- that they connected to a cellular network at the time they made the call?
A. Possibly.
Q. Wi-Fi, same thing?
A. Possibly, yeah.
Q. And Bluetooth, same thing?
A. Yes.
Q. Can you tell me what hash values are?
A. A hash value is a tool that is used to validate a download.
Q. Kind of like a digital fingerprint?
A. Correct.
Q. And are those values logged in this extraction process?
A. They are.
Q. How would you describe this process? It sounds complicated to me. But to you is this a complicated process? Is it simple?
A. Well, I'm sure it's very complicated behind the software, but for us it's just -- it's kind of plug and play. You plug in the phone, select what you want,

tell it -- you know, you -- you enter your name, the case number, the -- what the offense is, you know, as much data as you want --

Q. Sure.

A. -- on that initial report. You hit go.

Q. Would someone who hasn't really been trained in Cellebrite software or whichever cell -- like, cell extraction software was, would they be able to do this?

A. Yeah.

Q. Would they need any training to -- at all?

A. It helps. But it's -- I -- you know, it's hard for me to say, though, too because I've -- I've been doing it so long. So it kind of -- when I'd get a new piece of software, I'd be -- I'd be playing around in it trying to figure it all out. But I've got a background in it, so...

Q. The same question but for analyzing data, like, figuring out what's going on after the extraction has taken place and the report is generated. Can someone who is not trained, are they going to be able to do much with that information?

A. I would -- I would definitely want them to be trained.

Q. We talked about a forensic server. Is that the same thing as a virtual evidence locker?

A. Yes.
Q. How does Grapevine's virtual evidence locker work?
A. It's off the network. It's completely -- I mean, the forensic computers are networked to it, and it -- it stays on that -- in that room. It doesn't go outside of the area.
Q. Can any officer who's working on a case put their digital evidence on to the virtual evidence locker?
A. No.
Q. Who can?
A. Me or whoever was working in -- in the lab.
Q. Okay.
A. I had -- I had other people working in -- in there with me at different times.
Q. Sure.
Does the Grapevine server log when you guys add new stuff to the server?
A. I do not know. I -- I did forensics, but I'm not an IT guy. And I had a guy -- my IT guy was the guy who managed my -- my server. Whenever one of the hard drives would be failing, it would go beep, beep, beep. I'd be calling him, so he -- he managed all that. I don't know that it logged.

Q. It would be backed into metadata, I guess, if it did?
A. Yes. Yeah.
Q. If you or anyone who had access to put things on the forensic server, would those same people be allowed to delete information from the server?
A. Yes.
Q. The same with altering it or transferring it?
A. Yes.
Q. And that's a limited-ish group of people?
A. Yes.
Q. Who would you say was in charge or the custodian of Grapevine's forensic server?
A. That would probably be me.
Q. All right. How does evidence or data get transferred from Grapevine's forensic server to, let's say, another agency?
A. So at the time Southlake had a computer back in the Faraday room that they used as a server, and I believe I took -- I would take the -- a thumb drive, save the data, the file, the folder to the thumb drive and then physically move it to their server and save it there.
Q. So sort of a portable drive of some sort --
A. Yes.

Q. -- is what you would use?
A. Yeah.
Q. Would you be able to use e-mail?
A. No.
Q. Because of size issues probably or is it --
A. Probably --
Q. -- that's just not done?
A. It's just not done because it's on somebody's server.
Q. If you're downloading this data to one of those external drives of some sort, is that logged anywhere?
A. I'm sorry. One more time.
Q. So let's say you have data and you are trying to give it to any other agency and you put it on one of those drives, is the fact that you put on the drive logged anywhere?
A. I record that in my report.
Q. Have you ever had a situation where something, like, accidentally got deleted from the virtual evidence locker?
A. Not that I recall, no.
Q. Do you -- for an internal GPD investigation, would you maintain the external drives that had cell phone data on it, for example? You -- you mentioned

earlier, I think, putting it into the property room.

A. Yes.

Q. So you guys keep those?

A. That's where -- additionally we kept them on that server. We saw the problem with that. We started -- we transitioned to saving them to thumb drives and then giving it to the property and evidence custodian to maintain.

Q. Were you doing virtual evidence locker or forensic server and hard drives at the same time, you had both?

A. I'm sorry. One more time.

Q. I was just trying to understand your answer. You -- you mentioned putting stuff on the forensic server and also the drives. Would you keep the drives and keep the information on the forensic server? Did they live in both places?

A. So I download a phone for somebody and they need to review the data, I would save it to a thumb drive for them to review, and then I would save it to the -- to my forensic server.

But then eventually, like I said, we started saving it instead of to the server, we would -- we'd still save it on the server, but once I got it to property and evidence, then I don't -- I don't need it

on the server anymore and I would get rid of it.

Q. All right. So let's start digging into this case specifically.

A. Okay.

Q. You have your report in front of you. Feel free review it at any time if that's helpful for you when answering a question, and we'll probably talk about it a little bit.

So what were you asked to do in connection with electronic devices in this case?

A. Download a iPhone and an iPad.

Q. When did you first learn about the iPhone and the iPad?

A. I would -- I would assume the day -- the day that I did the download. July 17th. But -- but I'm not sure.

Q. Do you know who contacted you about it?

A. I believe it was Detective Green.

Q. And how were you contacted? Did she call you?

A. I have no idea.

Q. Do you have any idea what communications you guys exchanged before the extraction?

A. It would either -- it would either be a phone call or if she came over. I mean, she wouldn't just come over. She -- she would call before she came over

with something.
Q. She -- like a heads-up?
A. Yeah. Hey, have you got time, can you.
Q. Would she bring the devices to you or would you go pick them up from Southlake or was it sort of a case-by-case thing?
A. It was a case-by-case thing.
Q. Do you remember when you -- so you received the devices on July 17th. Is that what you said earlier?
A. It's -- I don't know what day I received them. Well, no. It says I took possession of them on that date, so yes.
Q. Your report also says they're in airplane mode; is that right?
A. Yes.
Q. And it logs the pass code. Do you remember how you got that pass code?
A. I would have gotten it from the detective.
Q. At the bottom of this page, there is an approving supervisor. It's Yarbrough, D.
A. Yes.
Q. Is -- what was his relationship professionally?
A. He's my sergeant.

Q. He's your sergeant?
A. Yeah.
Q. And he regularly reviewed reports like this?
A. Yes.
Q. And there's one other. The same with Savage, R.?
A. Correct.
Q. Who -- who is H. Smith, who it appears to have audited this report?
A. That -- that was what I was trying to figure out. I don't know. I don't know a -- you said H. Smith?
Q. Yes. I think on the second page of your report, there's a CAD number, incident type and then your name and report by, it's approved by Yarbrough and then audited by Smith, H. with, I'm assuming, a unit number or a officer number.
A. I don't know who that is. I don't recognize -- we have a Bobby Smith, but -- but that wouldn't be Bobby's number. That's a pretty -- that's a pretty new person.
Q. That's okay.
A. I wonder -- I wonder if that's a records clerk.
Q. A little bit below that, you have description,

assist other agency. Is that sort of a placeholder thing if you are -- if you are assisting another agency and it's not sort of your own case?

A. Yes.

Q. And then for report type, it says information only, no criminal offense. Is that sort of the same type of documentation?

A. Yes.

Q. Does the type of report change anything about, let's say, retention policies for the report --

A. Yeah.

Q. -- or for information on the case?

A. Yes.

Q. If you know, what would an information only, no criminal offense, like, retention period be?

A. I think records wants us to keep those two years, but I'm not positive.

Q. If it was a misdemeanor case, do you have any idea what that retention period would be?

A. No. I mean, there's different levels of misdemeanor too, so...

Q. Fair point.

I'm guessing, the same with felonies?

A. Yeah, it would be different.

Q. All right. And then it looks like on the next

page, this was still in the time when you were saving the data down to the forensic server first instead of moving over to the thumb drives?

A. Correct.

Q. All right. As we discussed, you got the phone and the iPad on the 17th; and according to that entry, you also started the downloads for the iPhone that day. Does that sound right?

A. Yes, ma'am.

Q. Where was the iPad while you were extracting the iPhone?

A. It would be in the lab.

Q. It would be in the lab?

A. (Moves head up and down).

Q. And vice versa for the next day when you started the iPad, the iPhone would still be in the lab?

A. Yes. Okay. I'm not sure about that. I mean, I might have finished it and she came over and got the iPhone right back right away. I don't know.

Q. I guess once the iPad and the iPhone when you were done with them, it looks like there's a couple days before you returned them to Detective Green.

Would they have lived in the property room or evidence room --

A. No. They would --

Q. -- during that time?
A. They would have stayed in my lab. We would not -- we would not have put Southlake evidence into our property room.
Q. That makes sense.
Do you remember how you got the devices back to Detective Green or to Southlake?
A. I do not. I do not.
Q. All right.
MS. EDWARDS: Pull Exhibit -- pull this one, 3.
MS. FENWICK: Mark it?
MS. EDWARDS: Yes, please.
(Exhibit 2 marked.)
Q. So we are showing you what's going to be marked as Exhibit 2.
MS. EDWARDS: And I'll pass these over to you guys.
THE WITNESS: Hand this back?
THE REPORTER: Just...
MS. EDWARDS: Sorry about that.
MR. BRADSHAW: Sorry. Do y'all have one more or --
MS. CERNEY: It's okay. You can have it.
MR. BRADSHAW: Okay. Sorry.

MS. EDWARDS: Sorry about that. I think I only printed for one set of counsel.

MS. CERNEY: No. No worries at all.

MS. EDWARDS: Thank you guys.

Q. Are you familiar with this document?

A. I believe I've seen it once before. Obviously I've seen it once before, but maybe seen it -- yes.

Q. So that's your signature?

A. That is my signature.

Q. I will represent to you that this chain of custody log came to us in its current condition, and it looks like there's something cut off at the top.

Do you know if this was a Southlake chain of custody document or a Grapevine chain of custody document?

A. Yeah. It's got a Southlake case number down at the bottom, so this a Southlake report.

Q. Wonderful.

And you would have signed this when it looks like a Ms. Spencer released the devices to you?

A. That's what it appears to, yes.

Q. Does that refresh your recollection of whether or not she brought them to Grapevine or you went there?

A. I -- I still don't remember, but this clearly shows I went over there -- well, no. I don't know

because she could have -- Delaney could have brought this over and had me sign it in my lab.

Q. And there's no releasing -- a signature releasing these devices back to Southlake on this document, correct?

A. Correct.

Q. Do you remember signing anything about that release?

A. I do not.

Q. All right. We're going to flip back to your report just for a little longer. Forgive my ignorance on this one. But what's the difference between a CAD number and a police number?

A. Yeah, that's the 64,000-dollar question. I never -- I never go by a CAD number. I think a CAD is -- it has something to do with dispatch. The only numbers I go by are by the incident number up at the top.

Q. All right. And then in your supplemental narrative, very last page, who requested a transfer of that electronic evidence from your servers to Southlake's server?

A. Nobody. I mean, I initiated that process to get it off of my server.

Q. And you handled the whole process?

A. Yes.
Q. Do you have any idea how long these extractions took for this iPhone and this iPad?
A. I'm sorry. Say that one more...
Q. Do you think how long the extractions took for either this phone or this iPad?
A. I do not.
Q. Did anything unexpected or abnormal happen during the extraction?
A. Not that I recall.
Q. And you would probably have put it in your report if it did?
A. Probably.
Q. At any point if the devices were still in your office, would they have been left unattended at all if -- in between the Wednesday that you started the extraction and the Monday when they went back to Southlake?
A. To go to the bathroom, go to lunch, something like that.
Q. Sure.
Did anyone besides you have access to your office?
A. The guys that work in CID can walk in there while I'm -- while I'm working in there.

Q. When you initially did the extraction and you saved part of it on the forensic server, do you remember how you got the Cellebrite reports to Southlake?

A. I do not.

Q. You don't remember if it's portable media versus like a server-to-server transfer?

A. It wasn't that. It would have been saved it to thumb drive. That's -- that's my go-to is just to save it to a thumb drive and give them the thumb drive.

Q. After that extraction process, did you see the iPhone or the iPad again?

A. I do not believe so. Oh, no. Yes, I did.

Q. Tell me about that.

A. So it's not in my report, but I believe what happened was there's -- Detective Green brought the device back, and she used a different piece of software that I have, still Cellebrite but it's a different tool to capture some screenshots of the -- from the -- I can't remember if it was the iPhone or the iPad, but I believe it was -- well, I'm not going to say. I'm not sure which one.

Q. Can you tell me about the tool that she used?

A. It's basically just a camera. It's got a pad. It's got an articulating arm. You set it above the --

the camera, focus it in, and you pull up what you want on the screen, what -- what you want to capture and you start -- the camera connects to the Cellebrite software and you pull up what you want. You hit -- you click the mouse, you captured a picture and you classify what it was.

Q. Kind of like a more sophisticated version, I guess, of a normal camera --

A. Yes.

Q. -- and documents that?

A. Yes.

Q. Do you remember how long it took her to photograph whichever device she was there to photograph?

A. No, ma'am.

Q. If you'd collected a phone from the scene and taken safeguards, the safeguards that we've talked about, would you expect data post-dating the seizure of the phone on that phone at any point?

A. Post-dated. So you're saying things were added to it after it was collected as evidence --

Q. Sure.

A. -- if it was put in airplane mode?

Q. Yeah. Like if you had collected my phone --

A. Right.

Q. -- and my mom texted me this morning --
A. Right.
Q. -- if it was in airplane mode, that text would not go through; is that correct?
A. Correct.
Q. If new data is on a device post-seizure, is there any other way to get it there?
A. I have no idea. I wouldn't -- I wouldn't think so, but I'm not -- I'm not that tech savvy.
Q. Does the fact that evidence is on the phone indicate that airplane mode or a Faraday bag or other precautionary measures weren't taken or maybe failed?
A. It would sound like it.
Q. Did you help Detective Green take pictures of whichever device it was?
A. I think I showed her how to use the -- the software.
Q. And the picture taking also happened in your office; is that correct?
A. Yes.
Q. Did she have access to your office without you or another Grapevine officer being with her or accompanying her?
A. No. Stand by. At that time, I'm not sure. I

don't think she did. But later on -- at some point she did have access to the lab, but I don't know when that happened.

Q. Do you know if the Southlake Police Department would maintain the portable media from which you transferred the extraction data to say -- to the Southlake Police Department? Like, let's say you put it on a USB drive. Do you have any knowledge of whether or not they would keep that USB drive?

A. I do not, no.

Q. If they report putting the digital evidence into their forensic server, we still wouldn't know if they kept the portable media; is that correct?

A. Correct.

Q. When did you learn that these devices were connected to a celebrity death case?

A. Probably when she was bringing them over.

Q. Like around the initial call maybe?

A. Probably.

Q. At any point in this process, did someone help you extract either of those devices?

A. No.

Q. Did anyone help you take notes during the process or for your report?

A. I don't think so.

Q. To the best of your knowledge, you're the sole author of that report?
A. Yes.
Q. Would anyone besides you have firsthand knowledge of what happened to this extraction?
A. Anybody else? No.
Q. To the best of your knowledge, did you create any other documents that are not reflected in that report during the course of working on this case?
A. No.
THE WITNESS: Can I have a minute?
MS. EDWARDS: Yeah, of course.
THE VIDEOGRAPHER: Off the record?
MS. EDWARDS: How long do you want?
THE WITNESS: Five minutes.
THE VIDEOGRAPHER: Off the record at 10 -- off the record at 10:49.
(Break taken from 10:49 to 10:57.)
THE VIDEOGRAPHER: Start of video file 2. Back on the record 10:57.
Q. (BY MS. EDWARDS) I meant to ask this earlier, but roughly how many phone extractions have you done, like, over the course of your career?
A. Wow. There is no telling. I mean, I've done it for over ten years. I mean, when it started out, it

was slow. And as we got busier towards the end, I mean, I'd hate to even estimate. I did -- and plus there was -- I mean, at times I would have a partner to work with and, you know, he would do some of the cell phones, I would do some of them. And other times I was by myself. So I -- it -- it just varied so much how many I would do a year. But...

Q. Tough to say?

A. It's tough to say.

Q. Do you remember what made a physical extraction impossible in this case for the iPhone?

A. I don't think -- what I remember or what I believe is it just wasn't possible. Cellebrite didn't support doing a physical download at that time.

Q. The same for the iPad?

A. Correct.

Q. Do you remember if this was an iPad that was able to connect to cell towers?

A. I do not.

Q. I'm assuming it could connect to Wi-Fi?

A. I think they all can.

Q. Sorry. Yes.

All right. We're going to turn back to your report for a second back to the July 17th entry.

A. Okay.

Q. You tell us you took the possession of the devices at the Southlake Police Department, that they were in airplane mode, you had the pass code.
Is there any reason that you might take a phone out of airplane mode if you received it in airplane mode?
MR. BRADSHAW: So sorry. It says of -- from -- from Detective Green of the Southlake, not at.
MS. EDWARDS: Sure.
THE WITNESS: Yeah.
A. There would be no reason for me to take it out of airplane mode.
Q. You mentioned doing two advanced logical downloads, method one and method two. Can you explain to me what that means?
A. So at that time -- you know, Cellebrite would make updates, like, every two months. And at -- at one point during their -- their life, they had two different methods for doing this advanced logical download. And I guess I think I said earlier I would use as many methods as I could to get the best download I could to provide the best evidence for the case.
So I don't -- I don't know what the differences were between method one and method two, but they were both available. So I tried them both and

they'd go into one report, one extraction, and it all came out together.

Q. We talked a little bit earlier about this being a Southlake case and so not a Grapevine case. And they were running the show on their end.

A. Right.

Q. If this had been a Grapevine investigation, would you expect to see more documentation than just that report?

A. On?

Q. Anything to do with the phone or the iPad.

Would there be documentation of it being collected from the scene?

A. Yes. And there would be documentation of the -- the extraction or the pictures that Detective Green took.

Q. Would you expect to see chain of custody documents?

A. Yes.

Q. Do you remember what, like, a standard Grapevine chain of custody document looked like or did they change enough that that's not fair question?

A. It does -- it does change up, but -- man. I'm trying to put my mind on one, but I can't. Well, I mean, yeah, the evidence technicians would have all

that stuff.

Q. Can you tell the Court why chain of custody documents are important in any given case?

A. It shows who had possession.

Q. And why is that important?

A. It shows who's responsible.

Q. At any given time --

A. Yes.

Q. -- based on who's handling it?

A. Right.

Q. Do you remember which version of the software you were using at that time?

A. No, I do not.

Q. As a Grapevine officer assisting the agency with this extraction, would you expect a Southlake police report to mention your name?

A. Yes.

Q. If information about the cell phone or the iPad was critical to a case going to trial, would you expect to be called to talk about your extraction?

A. It would depend on if my extraction had evidence relevant to the case.

Q. Can you tell me about your professional relationship with then detective, now Captain Green?

A. My relationship with her?

Q. Professional relationship.
A. Okay.
Q. Apologies.
A. We've known each other since -- well, before her -- she -- I guess we met from Corporal Briggs who was in her position before her. He would bring cell phones over to me.
And when he promoted out, she kind of took over and, you know, her -- her goal was to -- to work crimes against children and do computer forensics, cell phone forensics like I was doing. So I would talk to her about, Okay, this is the training you need to you to take, this is the equipment you need get your department to buy, stuff like that.
Q. Did you -- you didn't train her on that stuff? You gave her advice on where to go?
A. Exactly.
Q. She didn't extract the phone in this case, right?
A. From my report the way this reads, I believe I downloaded it.
Q. Other than maybe dropping off, picking up devices since we don't know where those things happened, do you recall her taking any action in furtherance of the extraction?

A. She came back over and took pictures of the -- using the -- the camera.
Q. Anything else?
A. Not that I'm aware of.
Q. Would it surprise you to know that your name is not in the Southlake police report?
A. I -- it -- surprise me? I'm not sure how to -- I guess so because the -- the -- the initial download was done over here. So I would -- it's something I think I would have documented in my report.
Q. Were you called to testify at this trial?
A. No.
Q. When Detective Green asked you to perform this extraction, did she give any input on what methods you should use?
A. No.
Q. Logical, physical?
A. I don't believe so. She knew I would do the best I could.
Q. She trusted your training?
A. I believe so.
MS. EDWARDS: Pull 4 for me real quick.
MS. FENWICK: Uh-huh.
(Exhibit 3 marked.)
Q. All right. So I'm handing you what has been

labeled Exhibit 3, and I think you might have actually answered my question earlier, but I do want to make sure. This document does not state whether it is a Southlake document or a Grapevine document.

A. Okay.

Q. But you mentioned earlier that there was a Southlake police number on the chain of custody log?

A. Yes.

Q. And these numbers are the same, this case number on the left column?

A. They are.

Q. So is it safe to assume it's a Southlake document?

A. Yes.

MS. FENWICK: Hand this to John.

MS. EDWARDS: Oh, yes. Sorry.

Q. Did Detective Green take your advice to get Cellebrite training?

A. I believe she did.

Q. Do you know roughly when that might have happened?

A. I do not.

Q. And you didn't train her?

A. No.

Q. After she got her training, did you guys ever

work on extractions together?
A. Yes.
Q. Was that relatively common?
A. From other agencies, no. Working with my own detectives, yeah, I would help them with their downloads.
Q. You mentioned Southlake having a computer in your lab. Was that sort of a unique partnership with that agency or did other agencies also have some sort of hardware there?
A. It's unique to Southlake.
Q. Do you remember when that got set up?
A. I do not.
Q. Before Detective Green got training, did you ever do extractions together?
A. I do not recall.
Q. When's the last time you spoke to Detective Green?
A. May 29th.
Q. May 29th?
A. Yeah.
Q. What did you guys talk about?
A. My retirement.
Q. Did you talk to her about this deposition?
A. We did a little.

Q. Can you tell me a little about that?
A. We just talked about what she remembers and what I remember.
Q. You previously gave a civil deposition in the wrongful death lawsuit related to this case; is that right?
A. Yes.
Q. Did you and Detective Green talk about that deposition before it took place?
A. Not before it took place, no.
Q. When you spoke to her recently, was it a phone call?
A. No. It was at my retirement. It was like --
Q. Oh, like a retirement party?
A. Yeah.
Q. Roughly how long did you guys speak about this case or this deposition?
A. Last -- last time?
Q. Yes, the most recent time.
A. It was just a five-minute discussion. That's about it.
Q. What about before the wrongful death deposition?
A. Before it?
Q. Yes.

A. We didn't talk about it before.
Q. Or sorry. After?
A. After.
Q. When you did speak.
A. How long did we talk? It would haven't been long. Five, ten minutes.
Q. Did you guys discuss any of the specifics about this case? You mentioned generally talking about it and what it might be about, but did you -- anything specific come up that you guys spoke about?
A. No. We were just talking about how we remember the downloads happening. And when I -- when I initially testified -- or the first deposition, her -- you know, when I got called to the deposition, I'm like I didn't understand why I was being called because I -- I couldn't remember that I did anything.
And so I asked her. I called her, I was like, What's this all about. And she's like, I don't know why they're calling you. You didn't -- you didn't do anything. And I'm like -- she's like, I did it. And I believed her. And then come to find out, I did do a download and -- but I did not recall having done that.
Q. Did you guys ever communicate in writing around the time of the actual extraction about the

phone or the iPad?
A. No.
Q. Have you guys ever communicated in writing about this case?
A. No.
Q. Have you communicated in writing with anyone at Grapevine about this extraction back when it took place --
A. No.
Q. -- in 2019?
A. No.
Q. And afterwards?
A. No.
Q. Do you remember if the iPhone was damaged when you got it?
A. I do not.
Q. Do you remember if the iPad was damaged?
A. I do not.
Q. We've talked a little about before the extraction takes place the things that you note. Do you input, like, the device specs, the make, model? Is that how it tells you whether or not you can do a specific method?
A. Yeah. You select the -- during the -- you select the make and model, so -- and then before you

connect it. Well, sometimes -- sometimes you connect and it auto detects what the make and model is, and that was pretty popular there towards the end.

Q. I bet.

Is there any other sort of input information up front, specs, anything about the phone in general?

A. No, not about the phone. Just case number, type of offense. Sometimes -- well, as I recall, that's about it.

Q. Did you guys add type of offense in there just sort of for your records?

A. Yes.

Q. Did it impact -- it didn't impact the method used?

A. No, it did not.

Q. We're going to go back to your report one more time. On page 1, it says there was a call entered by Smith, T.

Do you know who that is?

A. I do not. Well, no, that's Tony Smith. I'm sorry. Tony Smith. He's a dispatcher.

Q. At Grapevine?

A. Retired.

Q. And then under the units section, on the third

column there's a disposition 1R report. What does that mean?

A. Disposition? Oh, when you -- so -- all right. So here's what happens. Whenever I get a assist other agency, I call dispatch. I say, Hey, I got a assist other agency, I need a case number. They give me a case number, and he's like, All right, he gives me the number. I was like, Okay, I'm clear with the report. So R represents report.

Q. And you need the case number to sort of document your report and everything that's happening, correct?

A. Right. I can't -- I can't write a report without a report number.

Q. All right. I think you're almost done.

Is there anything else I should know about in general the extraction and download process for electronics that I didn't ask but should probably know?

A. I don't think so.

Q. Seriously, thank you for explaining all this to me.

A. Yeah.

Q. It's been very helpful. I tried to take one of those free online training things.

A. Yeah. No?
Q. No. I need your level of training.
A. Experience does a lot.
Q. All right. And is there anything else about this case or the devices that I didn't ask that you want to tell me?
A. No, ma'am.
MS. EDWARDS: Got anything else?
MS. FENWICK: I don't think so. No.
MS. EDWARDS: All right. We pass the witness.
MR. BRADSHAW: And we'll reserve at this time.
THE VIDEOGRAPHER: All done?
MS. EDWARDS: Yeah.
THE VIDEOGRAPHER: Okay. Concluding at 11:16. Off the record.
(End of proceedings at 11:16.)
(Signature waived pursuant to the agreement of the parties.)

STATE OF TEXAS )
COUNTY OF DALLAS )

I, SONYA BRITT-DAVIS, CSR, duly qualified in and for the State of Texas, do hereby certify that, pursuant to the agreement hereinbefore set forth, there came before me, RICHARD WEBER, who was by me duly sworn to testify the truth, the whole truth and nothing but the truth of his knowledge concerning the matter in controversy in this case; and that he was thereupon carefully examined upon his oath and his examination reduced to typewriting by me; that the deposition is a true record of the testimony given by the witness.

I further certify that the signature of the witness to this deposition was waived by all parties present at the time of taking said deposition.

I further certify that I am neither attorney nor counsel for nor related to or employed by any of the parties to the action in which this deposition is taken, and further that I am not a relative or employee of any attorney or counsel employed by the parties hereto or financially interested in the action.

In witness whereof, I have hereunto set my hand and affixed my seal this the 24th day of June, 2026.

SONYA BRITT-DAVIS, Certified
Shorthand Reporter in and for
the State of Texas
Certification No. 7205
Expires: October 31, 2027

Lexitas - Dallas
Firm Registration No. 459
Expiration Date: 12/31/2026
325 North St. Paul Street, Suite 1900
Dallas, Texas 75201
Phone: 214.373.4977

**Exhibits**

**1026497_ Richard_ Weber_ 061126_ Ex 001** 3:10 10:9,12,13
**1026497_ Richard_ Weber_ 061126_ Ex 002** 3:12 35:14,16
**1026497_ Richard_ Weber_ 061126_ Ex 003** 3:14 49:24 50:1
**1** 10:9,12,13 55:18
**10** 43:16
**10:49** 43:17,18
**10:57** 43:18,20
**11:16** 57:17,18
**11th** 4:3
**17th** 30:15 31:9 34:6 44:24
**1985** 7:16
**1R** 56:1

**2**

**2** 35:14,16 43:19
**2000** 5:9
**2005** 8:8
**2006** 8:9
**2019** 54:10
**2026** 4:3
**23** 5:13
**24** 5:13
**29** 5:8
**29th** 51:19,20

**3**

**3** 35:11 49:24 50:1

**4**

**4** 49:22

**6**

**64,000-dollar** 37:14

**7**

**78** 7:14

**9**

**9:56** 4:2

**A**

**a.m.** 4:3
**ability** 16:16
**able** 25:8,20 28:3 44:18
**abnormal** 38:8
**about** 5:1,9 6:3 7:12,20 9:14 10:15 11:13 12:22 15:19 16:11 18:18,19 19:8 21:22 25:24 30:8,12,17 33:9 34:17 35:21 36:1 37:7 39:14,23 40:18 46:3 47:18,20,23 48:12 51:22,24 52:1,2,8,16,21,22 53:1,8,9,10,11,18,25 54:4,7,19 55:6,8,10 56:17 57:4
**above** 39:25
**access** 13:24 19:16 27:4 38:22 41:22 42:2
**accidentally** 28:20
**accompanying** 41:24
**according** 34:6
**accurately** 6:19
**action** 48:24
**actions** 22:6
**actual** 12:22 53:25
**actually** 8:7 21:2 23:6 50:1
**adapt** 15:1
**add** 20:6 26:19 55:11
**added** 40:21
**additionally** 29:4
**advanced** 20:13 45:13,19
**advice** 48:16 50:17
**affect** 15:10
**after** 12:10 17:3,10 21:11 25:18 39:11 40:21 50:25 53:2,3
**afterwards** 54:12
**again** 9:20 23:25 39:12
**against** 48:10
**agencies** 8:12 51:4,9
**agency** 11:11 12:17 18:8,11 27:17 28:15 33:1,2 47:14 51:9 56:5,6
**ago** 5:10
**agreement** 57:19
**ahead** 10:19
**airplane** 16:3 31:14 40:23 41:3,11 45:3,5,6,12
**all** 4:22 6:6 7:9 8:15 10:18 11:8 12:16 13:17 19:3 20:6 22:2,17 25:10,15 26:24 27:15 30:2 33:25 34:5 35:9 36:3 37:10,19 38:15 44:21,23 46:1,25 49:25 53:18 56:3,7,15,21 57:4,10,14
**allow** 19:16
**allowed** 27:6
**almost** 56:15
**alone** 18:16,17
**also** 29:15 31:14 34:7 41:19 51:9
**altering** 14:14 27:8
**aluminum** 15:10
**always** 20:2
**America** 4:5
**analyzing** 25:17
**another** 6:15 12:17 13:15 14:6 18:16 22:1 27:17 33:2 41:23
**answer** 6:16 7:9 29:13
**answered** 50:2
**answering** 30:7
**answers** 6:21

**any** 7:3,7,18 8:2,3,20 9:11, 24 13:18 14:16 15:25 16:5,9 18:2 19:14 23:9 25:10 26:8 28:15 30:6,21 33:18 38:2,14 40:19 41:7 42:8,20 43:8 45:4 47:3,7 48:24 49:14 53:7 55:5

**Anybody** 43:6

**anymore** 30:1

**anyone** 27:4 38:22 42:23 43:4 54:6

**anything** 11:6 18:10,13 33:9 37:7 38:8 46:11 49:3 53:9,16,20 55:6 56:16 57:4,8

**anyway** 12:6

**anywhere** 28:12,17

**Apologies** 48:3

**appearances** 4:6

**appears** 32:8 36:21

**Apple** 20:20

**application** 23:17

**approved** 32:15

**approving** 31:21

**area** 26:7

**arm** 39:25

**around** 8:9 25:14 42:18 53:25

**array** 12:16

**articulating** 39:25

**as** 4:19 5:18, 19 6:10,16 10:9,13 12:13 17:13 19:12 25:2,3,25 27:19 34:5 35:16 40:21 44:1 45:21 47:14 55:9

**ask** 6:21 7:2 11:8 23:20 43:21 56:18 57:5

**asked** 30:9 49:13 53:17

**asking** 17:25 18:9

**assigned** 5:20,21 11:17

**assist** 33:1 56:4,5

**assistant** 4:9

**assisting** 33:2 47:14

**Association** 8:18

**assume** 30:14 50:12

**assuming** 32:16 44:20

**at** 4:2 5:16 7:7,8 8:12,15, 20 10:5 11:11 12:9 18:2 19:12 24:5 25:10 26:16 27:18 29:10 30:6 31:20 36:3,12,17 37:17 38:14, 15 40:19 41:25 42:1,20 43:16,17 44:3,14 45:2, 8,16,17 47:7, 12 49:11 52:13 54:7 55:23 57:12, 16,18

**attended** 7:14

**Attorney's** 4:12

**audited** 32:9, 16

**author** 43:2

**auto** 55:2

**available** 18:20 20:3 45:25

**aware** 49:4

**away** 34:19

**B**

**back** 11:25 12:12,24 18:22 27:18 34:19 35:7,19 37:4,10 38:17 39:17 43:20 44:23,24 49:1 54:7 55:17

**backed** 27:1

**background** 6:7 7:13 25:16

**bag** 14:9,10 15:22 16:1 41:11

**bags** 14:7 15:7,8

**ballpark** 20:20

**based** 14:22 47:9

**basic** 5:15 8:14

**basically** 13:16 19:10 39:24

**bathroom** 38:19

**battery** 15:17, 24

**became** 5:9

**because** 8:15 14:25 15:8 20:24 21:16 25:12 28:5,8 37:1 49:8 53:15

**beep** 26:23,24

**before** 5:2,9, 23 6:6,21 17:3 23:12,13 24:2 30:22,25 34:22 36:6,7 48:4,6 51:14 52:9,10,22,24 53:1 54:19,25

**behalf** 4:13

**behind** 24:23

**believe** 8:6 27:20 30:18 36:6 39:13, 15,21 44:13 48:20 49:18, 21 50:19

**believed** 53:21

**belongs** 21:3

**below** 32:25

**benefits** 19:20

**besides** 38:22 43:4

**best** 15:5 20:2 43:1,7 45:21, 22 49:19

**bet** 55:4

**between** 18:11 19:4,5 37:12 38:16 45:24

**bit** 5:1 6:7 7:12,20 16:11 18:18 30:8 32:25 46:3

**block** 14:11

**blocking** 16:5

**Bluetooth** 24:10

**Bobby** 32:19

**Bobby's** 32:20

**both** 20:4 29:11,17 45:25

**bottom** 31:20 36:17

**Bradshaw** 4:11 10:25 11:2,4 35:22, 25 45:7 57:12

**break** 7:7 16:14,16

43:18
**Briggs** 48:5
**bring** 9:24 10:2 11:25 18:13,14 31:4 48:6
**bringing** 42:17
**brings** 18:7
**brought** 10:3 36:23 37:1 39:16
**building** 13:1
**busier** 44:1
**but** 5:2 8:14, 16 11:13 12:10 13:4 15:19 18:25 19:4 21:15,19 22:13,16 24:21,24 25:11,15,17 26:20 29:22, 24 30:15 32:19 33:17 36:7,24 37:12 39:15,18,20 41:9 42:1,2 43:22 44:7 45:24 46:23, 24 50:2,6 53:9,22 56:18
**button** 22:5
**buttons** 23:9
**buy** 48:14
**by** 4:21 9:14 11:20 17:8,9 32:15,16 37:15,17 41:25 43:21 44:6 55:18

**C**

**CAD** 32:14 37:12,15
**call** 24:2,6 30:19,24,25 42:18 52:12 55:18 56:5
**called** 9:1,2 13:20 16:13 19:1,2 47:20 49:11 53:14, 15,17
**calling** 26:24 53:19
**calls** 5:19
**came** 30:24, 25 34:18 36:11 46:2 49:1
**camera** 39:24 40:1,3,8 49:2
**capacity** 5:5
**Captain** 47:24
**capture** 39:19 40:2
**captured** 40:5
**career** 8:21 43:23
**case** 11:10,17 12:3 17:7,8,9 25:2 26:8 30:3,10 33:3, 12,18 36:16 42:16 43:9 44:11 45:22 46:4 47:3,19, 22 48:18 50:9 52:5,17 53:8 54:4 55:8 56:6,7,10
57:5
**case-by-case** 31:6,7
**cases** 5:20
**catching** 5:2
**cause** 16:9
**celebrity** 42:16
**cell** 8:8,22 9:4 11:13,18 15:3 16:14 20:20 25:7 28:24 44:4,18 47:18 48:6,11
**Cellebrite** 9:7, 8,9,11,13,15, 18 13:11,13 18:18,20 22:1,5 25:7 39:3,18 40:3 44:13 45:16 50:18
**cellular** 23:24 24:5
**Cerney** 4:13 10:10,22 35:24 36:3
**certain** 16:16 22:6,10
**certification** 9:19,20
**certifications** 9:10
**chain** 18:1,4 36:10,13,14 46:17,21 47:2 50:7
**change** 33:9 46:22,23
**changed** 8:23 12:8
**charge** 15:25 27:12
**charger** 15:21
**cheaper** 12:13,14,15
**check** 11:24 18:4
**checks** 18:6
**children** 48:10
**choose** 19:24 22:12
**CID** 7:24 13:3 38:24
**City** 4:14 5:4
**civil** 52:4
**classes** 9:16
**classify** 40:5
**clear** 6:14 56:8
**clearly** 36:24
**clerk** 32:24
**click** 22:5 23:9 40:4
**code** 16:17 31:17,18 45:3
**codes** 16:14
**collect** 15:15, 16
**collected** 11:18 16:21, 25 17:11,16 40:16,21,24 46:13
**collecting** 18:10
**collects** 15:3
**colleges** 7:15
**column** 50:10 56:1
**come** 30:25 53:10,21
**common** 51:3
**communicate** 53:24
**communicated** 54:3,6
**communications** 30:21
**completed** 21:6,21 23:18
**completely** 26:4
**completes** 21:20
**complicated** 24:21,22,23
**Complies** 10:7
**computer** 8:3, 7,18 13:8,10 23:17 27:18 48:10 51:7
**computers** 9:3 26:5
**concern** 15:21
**Concluding** 57:16
**condition** 36:11
**confused** 7:3
**connect** 13:9, 15 44:18,20 55:1
**connected** 23:23 24:5 42:16

**connection** 13:16 30:10
**connector** 13:12
**connects** 40:3
**constraints** 17:15
**contacted** 30:17,19
**contains** 21:25
**cool** 15:14
**copy** 9:22 10:3,4,19,21, 23 12:7,9
**Corporal** 48:5
**correct** 7:8 20:15 21:23 24:16 32:7 34:4 37:5,6 41:4,5,20 42:13,14 44:16 56:12
**correctly** 21:11
**could** 13:7,8 14:15 16:6,10 20:3 37:1 44:20 45:21, 22 49:19
**couldn't** 53:16
**counsel** 4:6 36:2
**couple** 5:14 7:15 9:17 34:21
**course** 11:3 43:9,12,23
**court** 4:7 5:23 6:11 11:21 14:9 47:2
**create** 43:7
**crime** 15:4
**crimes** 48:10
**criminal** 7:25 33:6,15
**critical** 47:19
**current** 36:11
**custodian** 27:13 29:7
**custody** 18:2, 4 36:11,14 46:17,21 47:2 50:7
**cut** 36:12

**D**

**damaged** 54:14,17
**data** 9:1,3 15:6 18:21 19:15,17,19, 22 20:25 21:1,10,22,25 23:10,13,18 25:3,17 27:15,21 28:10,14,25 29:19 34:2 40:18 41:6 42:6
**date** 31:13
**day** 24:2 30:14 31:11 34:7,15
**days** 34:22
**death** 42:16 52:5,22
**decided** 9:18
**Defender's** 4:9,16
**definitely** 25:22
**Delaney** 37:1
**delete** 27:6
**deleted** 19:15, 17,22 28:20
**dense** 23:8
**department** 42:4,7 45:2 48:14
**depend** 20:18 47:21
**depends** 20:17
**deposition** 4:3 51:24 52:4,9,17,23 53:13,14
**depositions** 6:3
**describe** 11:14 24:20
**describing** 12:19
**description** 32:25
**detective** 4:14 5:10,16,19 11:17 12:20 15:2 30:18 31:19 34:22 35:7 39:16 41:15 45:8 46:15 47:24 49:13 50:17 51:14,17 52:8
**detectives** 51:5
**detects** 55:2
**device** 11:23, 24 13:9,15 14:11,12 16:24 17:2,13 19:25 20:17 39:17 40:13 41:6,16 54:21
**devices** 30:10 31:4,9 35:6 36:20 37:4 38:14 42:15, 21 45:2 48:23 57:5
**difference** 37:12
**differences** 45:24
**different** 7:15, 21 9:16 14:25 26:16 33:20, 24 39:17,18 45:19
**dig** 6:6
**digging** 30:2
**digital** 8:2 14:18 24:15 26:9 42:11
**DIRECT** 4:20
**discuss** 53:7
**discussed** 34:5
**discussion** 52:20
**dispatch** 37:16 56:5
**dispatcher** 55:22
**disposition** 56:1,3
**district** 11:20
**division** 7:25
**document** 15:17,19 17:21 18:10 36:5,14,15 37:5 46:21 50:3,4,13 56:11
**documentation** 17:19 33:7 46:8,12,14
**documented** 49:10
**documents** 9:24 40:10 43:8 46:18 47:3
**doing** 8:7 18:15,16 20:21 25:13 29:9 44:14 45:13,19 48:11
**done** 17:17 22:24 23:15, 16 28:7,8 34:21 43:22, 24 49:9 53:22 56:15 57:14
**dongle** 13:13
**down** 6:19 8:13 34:2,14 36:16
**download** 11:23 12:1,7 20:3 22:9 23:16,21 24:14 29:18 30:11,15 44:14 45:20, 21 49:9 53:22

56:17
**downloaded** 21:11 48:21
**downloading** 22:8 28:10
**downloads** 12:11 21:17 22:10 34:7 45:14 51:6 53:12
**drive** 12:12 27:20,21,24 28:16 29:20 39:9,10 42:8, 9
**drives** 12:11, 14 26:23 28:11,16,24 29:6,10,15 34:3
**dropping** 48:22
**duly** 4:19
**dump** 20:8
**during** 8:21 11:19 18:2 35:1 38:9 42:23 43:9 45:18 54:24
**duties** 5:15 7:18

E

**e-mail** 28:3
**each** 5:16 6:23 48:4
**earlier** 7:9 29:1 31:10 43:21 45:20 46:3 50:2,6
**easiest** 20:11
**educational** 7:13
**Edwards** 4:8, 21 10:8,11, 20,23 11:3 35:10,13,17, 21 36:1,4 43:12,14,21 45:9 49:22 50:16 57:8, 10,15
**either** 16:22 17:3 30:23 38:6 42:21
**electronic** 14:11 15:3 17:10,21 18:21 30:10 37:21
**electronics** 56:18
**else** 13:3 43:6 49:3 56:16 57:4,8
**employment** 5:3
**Encase** 9:3
**end** 16:12 44:1 46:5 55:3 57:18
**enough** 46:22
**ensure** 15:4
**enter** 25:1
**entered** 55:18
**entry** 34:6 44:24
**equipment** 48:13
**Eric** 4:4
**essentially** 21:22
**estimate** 20:22 44:2
**estimating** 8:6
**even** 8:13 15:24 44:2
**eventually** 29:22
**ever** 5:23 16:9 17:2 28:19 50:25 51:15 53:24 54:3
**every** 45:17
**everybody** 13:3
**everything** 6:9 14:25 22:13 56:11
**evidence** 8:22 11:24 12:12 14:14,15 15:3 16:21 17:10, 14,16,18,22 18:6,10,21 25:25 26:2,9 27:15 28:21 29:7,9,25 34:24 35:3 37:21 40:21 41:10 42:11 45:22 46:25 47:22
**Exactly** 48:17
**EXAMINATIO N** 4:20
**examiner** 18:16 23:1
**example** 28:25
**exchanged** 30:22
**Excuse** 7:22
**exhibit** 10:9, 12,13 35:10, 14,16 49:24 50:1
**expect** 40:18 46:8,17 47:15,20
**expensive** 15:8
**Experience** 57:3
**explain** 6:7 45:14
**explaining** 56:21
**external** 28:11,24
**extract** 18:20, 21 42:21 48:18
**extracting** 13:10 34:10
**extraction** 11:15 17:3,11 18:1,9,15,23 19:8,10,18,20 20:21 21:5,11 22:24 23:4,9, 14,20 24:17 25:8,18 30:22 38:9,17 39:1, 11 42:6 43:5 44:11 46:1,15 47:15,20,21 48:25 49:14 53:25 54:7,20 56:17
**extractions** 8:22 11:13 12:25 20:16 38:3,5 43:22 51:1,15

F

**fact** 28:16 41:10
**fail** 21:14
**failed** 41:13
**failing** 26:23
**fair** 33:22 46:22
**familiar** 36:5
**Faraday** 14:2, 7,9,10 15:7,8, 22 16:1 27:19 41:11
**faster** 15:24
**fastest** 20:11
**Federal** 4:9, 15
**Feel** 30:5
**felonies** 33:23
**Fenwick** 4:15 35:12 49:23 50:15 57:9
**figure** 11:11 25:15 32:10
**figuring** 25:18
**file** 20:8,9 22:14 27:21 43:19
**find** 53:21
**fingerprint** 24:15
**finish** 6:21 23:3

**finished** 21:6 34:18

**first** 4:19 8:12 12:9 30:12 34:2 53:13

**firsthand** 43:4

**five** 6:1 43:15 53:6

**five-minute** 52:20

**fledgling** 8:15

**flip** 37:10

**focus** 40:1

**foil** 15:10

**folder** 21:24 27:21

**followed** 14:21

**follows** 4:19

**for** 4:3,24 5:4,7 6:8 7:5,18,24 9:3,4,11 11:6,15,20 12:6 13:10 15:23 17:19 18:2 19:25 23:3,7 24:24 25:12,17 28:23,25 29:18,20 30:6 33:5,10,12 34:7,15 36:2 37:11 38:3,5 42:24 43:25 44:11,15,24 45:11,19,22 49:22 55:12 56:18,21

**forensic** 14:18 25:24 26:5 27:5,13,16 29:10,14,16,21 34:2 39:2 42:12

**forensics** 8:2,3,7,8 13:18 26:20 48:10,11

**Forgive** 37:11

**framework** 6:8

**free** 30:6 56:25

**from** 7:15,21 8:18 12:17,18 13:3 15:4,5,16 16:22 17:11 18:8,21 19:9 22:3 27:6,16 28:20 31:5,19 37:21 39:19 40:16 42:5 43:18 45:8 46:13 48:5,20 51:4

**front** 30:5 55:6

**furtherance** 48:25

G

**gave** 8:10 48:16 52:4

**general** 55:7 56:17

**generally** 53:8

**generated** 25:19

**generates** 22:2,18

**get** 7:17 8:5 15:20 19:9,22 22:7 23:8 25:13 27:15 30:1 37:24 41:7 45:21 48:13 50:17 56:4

**getting** 19:14

**girl** 21:4

**give** 5:15 6:7 10:19 12:1 28:15 39:10 49:14 56:6

**given** 47:3,7

**gives** 21:24 56:7

**giving** 29:7

**go** 10:19 11:23 15:19,20 18:3 23:18 25:5 26:6,23 31:5 37:15,17 38:19 41:4 46:1 48:16 55:17

**go-to** 39:9

**goal** 48:9

**goes** 6:9 18:5 21:12 23:14

**going** 6:6,21 10:15 11:8 12:24 15:22 17:14 18:22 19:23 21:1 23:12 25:18,20 35:15 37:10 39:21 44:23 47:19 55:17

**good** 4:22,23 9:6 17:1

**got** 11:1 12:13,14 14:24 20:24,25 21:22 22:14,16 25:15 28:20 29:24 31:3,18 34:5,18 35:6 36:16 39:3,24,25 44:1 50:25 51:12,14 53:14 54:15 56:5 57:8

**gotten** 31:19

**GPD** 28:23

**graduated** 7:14,15

**Grapevine** 4:14 5:4,8 8:21 9:22 11:9 12:18,20 13:18,24 14:2,7,16 17:25 26:18 36:14,23 41:23 46:4,7,21 47:14 50:4 54:7 55:23

**Grapevine's** 26:2 27:13,16

**great** 10:10,11

**Green** 30:18 34:22 35:7 39:16 41:15 45:8 46:15 47:24 49:13 50:17 51:14,18 52:8

**group** 27:10

**guess** 27:1 34:20 40:8 45:20 48:5 49:8

**guessing** 20:13 33:23

**guilty** 6:17

**guy** 26:21,22

**guys** 10:8,20 17:2 18:9 26:19 29:3 30:22 35:18 36:4 38:24 50:25 51:22 52:16 53:7,10,24 54:3 55:11

H

**half** 5:8,10

**Hand** 35:19 50:15

**handing** 49:25

**handle** 7:4 14:17

**handled** 37:25

**handling** 8:22 47:9

**happen** 6:23 13:6 38:8

**happened** 21:15 39:16 41:19 42:3 43:5 48:24 50:21

**happening** 53:12 56:11

**happens** 56:4

**happy** 7:9

**hard** 25:12 26:23 29:10

**hardest** 8:17

**hardware** 9:15 12:23 13:5,7 23:17 51:10

**hash** 24:12,13

**hate** 44:2

**having** 4:19 13:4 51:7 53:22

**head** 6:16 34:14

**heads-up** 31:2

**heck** 15:20

**height** 20:24

**help** 6:14,20 12:17 18:9 41:15 42:20, 23 51:5

**helpful** 30:6 56:24

**helping** 6:14 23:7

**helps** 25:11

**here** 49:9

**here's** 56:4

**Hey** 31:3 56:5

**hidden** 19:16

**high** 7:14

**history** 16:22

**hit** 25:5 40:4

**hopefully** 6:22

**how** 5:7,25 6:3 9:13 11:11 12:19 13:9 14:17 15:5 17:10 19:24 20:16, 22 21:2,3,5, 10 23:6,10 24:20 26:2 27:15 30:19 31:18 35:6 38:2,5 39:3 40:12 41:17 43:14,22 44:6 49:7 52:16 53:5,11 54:22

## I

**IACIS** 8:18

**idea** 17:1 30:20,21 33:19 38:2 41:8

**if** 6:10 7:2,7,8 10:8,25 12:17 13:25 14:14 15:19 16:14, 15,17 17:12, 25 18:5,8 19:12 20:3,20 21:3,12,20 22:8,11,13,24 23:12,22 27:1,4 28:10 30:6,24 32:23 33:2,14,18 36:13 38:12, 14,16 39:6,20 40:16,23,24 41:3,6 42:4, 11,12 44:17 45:5 46:7 47:18,21 54:14,17

**ignorance** 37:11

**impact** 55:14

**important** 14:13 47:3,5

**impossible** 44:11

**improvise** 15:1

**in** 4:4,7 5:5,9, 14,23 6:1,6, 11 7:3,14,16, 22,24 8:2,8, 13 11:6,24 13:2 15:10 16:1,3,6,18, 22 17:13 18:24 19:4,5, 21 21:2 22:6, 10 24:17,25 25:7,15,16 26:6,13,15 27:12,19 28:18 29:17 30:5,9,10 31:14 34:1, 12,13,16,23 35:2 36:11 37:2,19 38:11,14,16, 24,25 39:15 40:1,23 41:3, 19 42:20 43:8 44:11 45:3,5 47:3 48:6,18, 24 49:6,10 51:7 52:4 53:24 54:3,6, 10 55:7,11 56:17

**incident** 32:14 37:17

**inclusive** 8:17

**incoming** 14:12

**indicate** 22:25 23:3,22 24:4 41:11

**individuals** 6:13

**information** 19:9 23:23 25:21 27:6 29:16 33:5, 12,14 47:18 55:6

**initial** 25:5 42:18 49:8

**initially** 23:18 39:1 53:13

**initiated** 37:23

**input** 49:14 54:21 55:5

**inside** 13:1 14:5

**instead** 29:23 34:2

**internal** 23:6 28:23

**International** 8:18

**into** 12:12 14:11 17:18, 22 22:4,17 27:1 29:1 30:2 35:3 42:12 46:1

**investigate** 5:20

**investigation** 11:19 28:23 46:7

**investigations** 7:25

**Investigative** 8:19

**ipad** 17:22 30:11,13 34:6,10,16,20 38:3,6 39:12, 20 44:15,17 46:11 47:19 54:1,17

**iphone** 30:11, 12 34:7,11, 16,19,20 38:3 39:12,20 44:11 54:14

**issues** 28:5

**it** 7:5,16,21 8:7,14,15 9:2, 5,6,20 10:13, 15 11:1,20,25 12:1,19 13:3, 4,17,21 14:4, 24 15:4,5,10, 13,18,19,22, 23 16:8,10, 13,15,17 17:1,4,18 18:6,7,11,14, 25 19:13 20:17,18 21:3,13,14, 19,20,24 22:1,2,4,7,9, 17,19,21 23:2,3,5,10, 14,16,20,23 24:20,22 25:1,11,13, 15,16 26:5,6, 21,23,25 27:1,2,8,22 28:5,15,25 29:1,7,19,20, 23,24,25 30:1,6,8,17, 18,23 31:5,7, 12,17,19 32:8 33:5,18,24,25 34:12,13,18,

21 35:12,24 36:6,7,11,19, 21 37:2,16,24 38:11,12 39:2,8,10,20, 21,25 40:1,6, 12,21,23 41:3,7,14,16 42:8 43:25 44:6,13,20 45:5,7,11 46:1,12,23 47:4,6,9,21 48:21 49:5,7 50:3,12 52:9, 10,11,13,20, 21,24 53:1,5, 9,20 54:7,15, 22 55:1,2,10, 14,16,18

**it's** 13:16 14:5,6 15:22 19:1,2 21:1,3, 20,21 22:7 23:15,16,18 24:23,24 25:11 26:4 28:8 31:11,21 32:15 33:3 35:24 36:16 39:6,15,18, 24,25 44:9 49:9 50:12 51:11 56:24

**item** 15:21 16:22

**its** 36:11

**itself** 12:23

**J**

**job** 5:15 7:18

**John** 50:15

**Jonathan** 4:11

**judge** 11:21

**July** 30:15 31:9 44:24

**June** 4:3

**just** 5:15,18 6:6,8,18 7:3 8:6,14 9:18 10:13 11:10 13:4,16 15:11 17:6 18:13 21:1 22:5,11, 13 23:14 24:24 28:7,8 29:13 30:24 35:20 37:11 39:9,24 44:6, 13 46:8 52:2, 20 53:11 55:8,11

**K**

**Kaitlen** 4:13

**Kay** 4:4

**keep** 12:9 29:3,15,16 33:16 42:9

**kept** 29:4 42:13

**kind** 8:14 9:2 12:8 15:14 24:15,24 25:13 40:7 48:8

**knew** 49:18

**know** 5:25 6:13 7:4,8,9 11:22 12:2,3, 5,9,14 13:2 15:14,18,22 16:17 21:5, 10,16 22:13 23:6 24:1 25:1,2,11 26:20,25 30:17 31:11 32:11,18 33:14 34:19 36:13,25 42:2,4,12 44:4 45:16,23 48:9,23 49:5 50:20 53:14, 19 55:20 56:16,19

**knowledge** 42:8 43:1,5,7

**known** 48:4

**L**

**lab** 11:25 13:18 18:6 26:13 34:12, 13,16 35:2 37:2 42:2 51:8

**labeled** 50:1

**laptop** 13:7

**last** 18:25 37:20 51:17 52:18

**later** 10:17 42:1

**lawsuit** 52:5

**learn** 9:18 30:12 42:15

**left** 9:9 38:15 50:10

**let** 6:21 7:4,7, 9 11:22

**let's** 24:1 27:16 28:14 30:2 33:10 42:7

**level** 14:6 57:2

**levels** 9:16 33:20

**license** 13:14

**life** 45:18

**like** 5:13 11:16 12:22 13:4 14:24 15:17 16:22, 24 17:4 21:4, 8 22:11,19 24:15 25:7,18 28:20 29:22 31:2 32:3 33:15,25 34:21 36:12, 20 38:20 39:7 40:7,24 41:14 42:7,18 43:23 45:17 46:20, 21 48:11,14 52:13,14 53:14,18,20 54:21 56:7,8

**limit** 17:15

**limited-ish** 27:10

**listed** 11:24

**little** 5:1 6:7 7:12,20 10:17 16:11 18:18 30:8 32:25 37:11 46:3 51:25 52:1 54:19

**live** 29:17

**lived** 34:23

**locker** 17:19 25:25 26:2,10 28:21 29:9

**log** 17:3 18:2 26:18 36:11 50:7

**logged** 24:17 26:25 28:11, 17

**logical** 18:23 19:5,8,10,21 20:12,21 22:10 45:13, 19 49:17

**logs** 31:17

**long** 5:7 17:13 20:16,22 25:13 38:2,5 40:12 43:14 52:16 53:5,6

**longer** 37:11

**look** 10:5 11:15

**looked** 17:4 46:21

**looking** 12:6 19:12

**looks** 33:25 34:21 36:12, 20

**lose** 17:14

**loss** 16:18

**lost** 16:15

**lot** 6:17 8:1 14:24 20:25 57:3

**lovely** 6:13

**lunch** 38:19

**M**

**ma'am** 6:12 34:9 40:15 57:7

**made** 24:6 44:10

**mainly** 9:3

**maintain** 12:7 28:24 29:8 42:5

**make** 6:8,14, 15,18,22 12:1 13:5 16:23 24:2 45:17 50:2 54:21,25 55:2

**makes** 35:5

**man** 21:4 46:23

**managed** 26:22,24

**many** 5:25 9:13 43:22 44:7 45:21

**mark** 10:8 35:12

**marked** 10:12 35:14,16 49:24

**marking** 10:13

**material** 23:8

**matter** 4:4

**maybe** 36:7 41:12 42:18 48:22

**Mckenzie** 4:8

**me** 5:15 7:3,4, 12,20,22 11:22 12:22 16:11 18:7,19 19:8 21:4,15 23:7 24:12,21 25:12 26:13, 16 27:14 37:2 39:14,23 41:1 45:11,15 47:23 48:7 49:7,22 52:1 56:6,7,22 57:6

**mean** 8:23 13:20 14:25 16:19 18:3 20:2 21:3,20 23:12 26:5 30:24 33:20 34:17 37:23 43:24,25 44:2,3 46:25 56:2

**means** 45:15

**meant** 43:21

**measures** 16:6 41:12

**media** 39:6 42:5,13

**mention** 47:16

**mentioned** 5:14 28:25 29:14 45:13 50:6 51:7 53:8

**messages** 22:11

**met** 48:5

**metadata** 27:1

**method** 19:16 20:11,18 45:14,24 54:23 55:14

**methods** 18:19,20 19:24 45:19, 21 49:14

**middle** 18:24 19:21 20:5,8

**mind** 10:8 46:24

**minute** 43:11

**minutes** 43:15 53:6

**misdemeanor** 33:18,21

**mode** 16:3 31:15 40:23 41:3,11 45:3, 5,6,12

**model** 16:23 54:21,25 55:2

**mom** 41:1

**Monday** 38:17

**money** 12:15

**months** 45:17

**more** 28:13 29:12 35:23 38:4 40:7 46:8 55:17

**morning** 4:22, 23 41:1

**most** 8:16,17 20:13 52:19

**mouse** 40:5

**move** 27:22

**moves** 34:14

**moving** 34:3

**MR** 4:11 10:25 11:2,4 35:22, 25 45:7 57:12

**Ms** 4:8,13,15, 21 10:8,10, 11,20,22,23 11:3 35:10, 12,13,17,21, 24 36:1,3,4, 20 43:12,14, 21 45:9 49:22,23 50:15,16 57:8,9,10,15

**much** 6:2 21:2 25:3,21 44:6

**my** 6:4 11:25 12:7 13:23 14:5,20 21:21 26:21,22 28:18 29:21 31:25 35:2 36:9 37:2,11, 24 39:9,15 40:24 41:1 46:24 47:21, 25 48:20 49:10 50:2 51:4,23 52:13

**myself** 44:6

**N**

**name** 4:24 25:1 32:15 47:16 49:5

**Naomi** 4:15

**narrative** 37:20

**need** 6:15 7:7 11:25 13:5 15:20 18:1 25:10 29:19, 25 48:12,13 56:6,10 57:2

**neighboring** 18:8

**network** 16:5 23:24 24:5 26:4

**networked** 26:5

**networks** 15:5

**never** 37:15

**new** 6:21 25:14 26:19 32:20 41:6

**next** 33:25 34:15

**no** 6:16,23 11:7 14:1 16:2 17:14 18:7 20:24 21:1 23:12 26:11 28:4,22 30:20 31:12 33:6,15,20 34:25 36:3,25 37:3 39:13 40:15 41:8,25 42:10,22 43:6,10,24 45:11 47:13 49:12,16 50:24 51:4 52:10,13 53:11 54:2,5, 9,11,13 55:8, 16,21 57:1,2, 7,9

**Nobody** 37:23

**nod** 6:17

**normal** 11:14 40:8

**not** 6:2,15 11:9,10 12:2 14:19 16:2 17:14 18:25 19:14,22 25:20 26:20, 21 28:7,8,22 30:16 33:3,17 34:17 35:3,8

36:23 37:9 38:7,10 39:5, 13,15,21 41:4,9,25 42:9,10 43:8 44:19 45:8 46:4,22 47:13 49:4,6,7 50:3, 22 51:13,16 52:10 53:22 54:16,18,22 55:8,16,21

**note** 15:18 16:22 54:20

**note-taking** 17:17

**notes** 42:23

**now** 5:2 18:22 47:24

**number** 25:2 32:14,17,20 36:16 37:13, 15,17 50:7,10 55:8 56:6,7,8, 10,14

**numbers** 37:17 50:9

## O

**obviously** 20:4 36:6

**of** 4:3,4,5,13, 14 5:4,14,16 6:7,17,20 7:15,18 8:1,3, 11,14,18,20 9:2,11,16,17, 22 10:3,4,21, 23 11:3,10 12:7,8,23 13:18 14:14, 17,24 15:3,8, 14,21 16:5,24 17:2,3,10 18:1,4 19:7, 19,24 20:20, 22,25 22:19 23:10 24:15, 24 25:13,14 26:7,22 27:10,13,24 28:5,10,11,15 29:23 30:1,5 31:5,12,20 32:13 33:1,3, 6,7,9,20 34:2 36:2,10,14,22 37:20,24 39:2,17,19 40:7,8,18 41:15 42:8,21 43:1,2,5,7,9, 12,19,23 44:4,5 45:1,5, 7,8,12 46:12, 14,17,21 47:2,11 48:8, 25 49:1,4 50:7 51:8,10 53:7,25 55:5, 9,11,12 56:10,25 57:2,18,19

**off** 16:8,12,15 26:4 36:12 37:24 43:13, 16,17 48:22 57:17

**offense** 25:2 33:6,15 55:9, 11

**office** 4:10,12, 16 13:2,4,23, 25 14:4,5 38:15,23 41:20,22

**officer** 5:11, 16,17,18,21 7:17 12:17 15:2 16:21 17:16 18:5,8 26:8 32:17 41:23 47:14

**officer/ detective** 5:6

**officers** 13:24 17:25

**old** 21:3,4

**on** 4:2,13 7:23 8:14 12:7,10, 16 13:2 14:22 15:20,22 16:14 18:20 19:11 20:17, 18 21:1,16,17 25:5,18 26:6, 8,9 27:5 28:8, 15,16,25 29:4,14,16,24 30:1 31:9,12 32:13 33:12, 25 34:6 37:4, 12 39:2 40:2, 19 41:6,10 42:1,8 43:9, 20 46:5,10,24 47:9,21 48:15,16 49:14 50:7,10 51:1 55:18,25

**once** 9:18 17:16 21:21 22:16 29:24 34:20 36:6,7

**one** 6:15,23 8:12 10:9,25 17:12 18:4,24 19:4,21 20:5, 9 26:22 28:10,13,15 29:12 32:5 35:11,22 36:2 37:12 38:4 39:22 45:14, 17,24 46:1,24 55:17 56:24

**online** 56:25

**only** 33:6,14 36:2 37:16

**operated** 11:11

**opposed** 6:16

**order** 22:6

**other** 11:5 16:5 17:25 19:19 26:15 28:15 32:5 33:1 41:7,12 43:8 44:5 48:4,22 51:4, 9 55:5 56:4,6

**otherwise** 19:23

**our** 12:10 35:4

**out** 6:14 11:11,24 15:8,20 18:4, 6 22:2,18 25:15,18 32:11 43:25 45:5,11 46:2 48:8 53:21

**outgoing** 14:11

**outlining** 14:17

**outside** 26:7

**over** 6:15,23 8:23 12:8 18:3,5 19:20 21:16 30:24, 25 34:3,18 35:17 36:25 37:2 42:17 43:23,25 48:7,9 49:1,9

**own** 33:3 51:4

## P

**package** 15:11

**pad** 39:24

**page** 31:20 32:13 34:1 37:20 55:18

**Par-** 9:5

**parses** 22:2, 17

**part** 39:2

**particular** 11:10 19:25

**parties** 57:19

**partner** 44:3

**partnership** 51:8

**party** 52:14

**pass** 16:14,16 31:17,18 35:17 45:3 57:10

**password** 16:20

**patrol** 5:18 7:22

**patrolled** 5:18

**people** 26:15 27:5,10

**percentage** 15:17

**perform** 12:25 49:13

**period** 33:15, 19
**permanent** 16:18
**person** 11:10 32:21
**personally** 6:17
**phone** 8:8,22 11:13,15,18 15:3,15,16 16:3,13 17:22 19:11 20:20 21:2,22 24:2, 25 28:25 29:18 30:23 34:5 38:6 40:16,19,24 41:11 43:22 45:5 46:11 47:18 48:11, 18 52:11 54:1 55:6,8
**phones** 9:4 16:14 20:25 44:5 48:7
**photograph** 40:13,14
**photographing** 17:17
**physical** 18:23 19:5, 18,20 20:3,5, 14 22:14 44:10,14 49:17
**physically** 27:22
**pick** 31:5
**picking** 48:22
**picture** 40:5 41:19
**pictures** 17:2 22:12 41:15 46:15 49:1
**piece** 15:3 17:10 25:14 39:17
**Pilot** 9:1,4
**place** 23:10 25:19 52:9,10 54:8,20
**placeholder** 33:1
**places** 29:17
**platform** 22:19,25
**play** 24:25
**playing** 25:14
**please** 4:6 10:25 35:13
**plug** 22:17 24:24,25
**plus** 12:6 44:2
**point** 7:8 8:15 18:2 33:22 38:14 40:19 42:1,20 45:18
**police** 5:6 7:17 37:13 42:4,7 45:2 47:16 49:6 50:7
**policies** 14:16,20 33:10
**pop-up** 21:8
**popular** 55:3
**portable** 27:24 39:6 42:5,13
**position** 48:6
**positive** 33:17
**possession** 31:12 45:1 47:4
**possible** 44:13
**Possibly** 24:7,9
**Post-dated** 40:20
**post-dating** 40:18
**post-seizure** 41:6
**precautionary** 41:12
**preparation** 11:6
**Prescott** 4:4
**preserve** 15:6 17:13
**pretty** 32:20 55:3
**prevent** 14:14
**previous** 5:3
**previously** 52:4
**print** 22:3
**printed** 36:2
**probably** 6:4 8:8,16 27:14 28:5,6 30:7 38:11,13 42:17,19 56:18
**problem** 29:5
**problems** 16:9
**procedures** 12:8 14:16,20
**proceedings** 57:18
**process** 6:8 9:19,21 11:14 12:18 13:6,10 18:2 23:7,9 24:18,20,22 37:23,25 39:11 42:20, 24 56:17
**professional** 47:23 48:1
**professionally** 31:24
**promoted** 48:8
**property** 11:23 17:18, 23 18:3 29:1, 7,25 34:23 35:4
**provide** 5:22 45:22
**providing** 6:10
**Public** 4:9,16
**pull** 35:10 40:1,4 49:22
**pursuant** 57:19
**put** 6:18 8:14 13:12 14:10 16:3 26:8 27:4 28:15,16 35:3 38:11 40:23 42:7 46:24
**putting** 12:11 15:22 22:4 29:1,14 42:11

## Q

**question** 7:2 25:17 30:7 37:14 46:22 50:2
**questions** 6:22 11:9
**quick** 10:6 49:22
**quit** 21:13

## R

**ran** 15:8
**ranks** 5:14
**raw** 21:22
**reads** 48:20
**real** 49:22
**realize** 7:8
**really** 10:6 15:12 25:6
**reason** 45:4, 11
**rebuilding** 12:15
**recall** 28:22 38:10 48:24 51:16 53:22 55:9
**receive** 7:25 9:10
**received** 7:24 8:17 31:8,11 45:5
**recent** 52:19
**recently** 52:11

**recognize** 32:18
**recollection** 36:22
**record** 4:2,24 6:14 28:18 43:13,16,17, 20 57:17
**records** 32:23 33:16 55:12
**reflected** 43:8
**refresh** 36:22
**regularly** 32:3
**related** 52:5
**relationship** 31:23 47:24, 25 48:1
**relatively** 51:3
**release** 37:8
**released** 36:20
**releasing** 37:3,4
**relevant** 47:22
**remember** 8:13 9:6 19:1 21:15,19 22:8,9 31:8, 17 35:6 36:24 37:7 39:3,6, 20 40:12 44:10,12,17 46:20 47:11 51:12 52:3 53:12,16 54:14,17
**remembered** 18:25
**remembers** 52:2
**remotely** 14:15
**rephrase** 7:3, 5
**report** 10:3,5, 21,24 11:5 12:1 16:23 22:25 23:22 24:4 25:5,19 28:18 30:5 31:14 32:9, 14,15 33:5,9, 10 36:17 37:11 38:12 39:15 42:11, 24 43:2,9 44:24 46:1,9 47:16 48:20 49:6,10 55:17 56:1,8,9,11, 13,14
**reporter** 4:7 35:20
**reports** 5:19 22:3 32:3 39:3
**represent** 36:10
**represents** 56:9
**requested** 10:4 37:20
**required** 17:6, 19
**reserve** 57:12
**resource** 5:11,17,21
**responsible** 47:6
**retention** 33:10,15,19
**retired** 5:2,9 55:24
**retirement** 51:23 52:13, 14
**returned** 34:22
**review** 11:5 12:2 29:19,20 30:6
**reviewable** 22:18
**reviewed** 32:3
**Richard** 4:3, 18,25
**rid** 30:1
**right** 4:22 6:6 10:18 11:8 18:24 19:3,6 22:9 24:3 27:15 30:2 31:15 33:25 34:5,8,19 35:9 37:10,19 40:25 41:2 44:23 46:6 47:10 48:19 49:25 52:6 56:3,7,13,15 57:4,10
**roles** 7:21
**room** 12:12 14:2,5 17:18, 23 18:3,6 20:25 21:1 26:6 27:19 29:1 34:24 35:4
**roughly** 5:7, 25 43:22 50:20 52:16
**run** 22:1
**running** 46:5

**S**

**safe** 50:12
**safeguards** 40:17
**safely** 16:2
**said** 29:22 31:9 32:11 45:20
**same** 6:10 12:18 15:10 24:8,10 25:17,25 27:5,8 29:10 32:5 33:6,23 44:15 50:9
**Savage** 32:5
**save** 12:16 27:21,22 29:19,20,24 39:10
**saved** 23:21 39:2,8
**saving** 12:11, 14 29:6,23 34:1
**savvy** 41:9
**saw** 29:5
**say** 23:25 24:1 25:12 27:12,17 28:14 33:10 38:4 39:21 42:6,7 44:8,9 56:5
**saying** 40:20
**says** 31:12,14 33:5 45:7 55:18
**scene** 15:4,16 16:22 17:11 40:16 46:13
**school** 5:11, 16,21,22 7:14
**screen** 19:12 40:2
**screenshots** 39:19
**scrolling** 19:13
**search** 11:19, 24 22:25
**searchable** 22:19
**searching** 15:23
**second** 6:4 32:13 44:24
**section** 55:25
**secure** 13:3
**secured** 15:5
**security** 5:22 14:6
**see** 19:23 39:11 46:8,17
**seen** 36:6,7
**Seguin** 8:13
**seizure** 40:18
**select** 23:10, 13 24:25 54:24,25
**selected** 23:23
**sense** 35:5
**separate** 13:3
**sergeant** 31:25 32:1

**Seriously** 56:21

**server** 12:7, 10 25:24 26:18,19,22 27:5,6,13,16, 19,22 28:9 29:5,10,15, 16,21,23,24 30:1 34:2 37:22,24 39:2 42:12

**server-to-server** 39:7

**servers** 37:21

**set** 36:2 39:25 51:12

**setting** 23:19

**seven** 6:1

**several** 8:11

**shake** 6:16

**should** 17:1, 11 49:15 56:16,18

**show** 46:5

**showed** 41:17

**showing** 35:15

**shows** 36:25 47:4,6

**sign** 18:1,4,10 37:2

**signal** 15:23

**signals** 14:12

**signature** 36:8,9 37:3 57:19

**signed** 11:20 36:19

**signing** 37:7

**similar** 12:19

**simple** 24:22

**since** 48:4,23

**sir** 11:4

**situation** 16:7,18 28:19

**size** 28:5

**slow** 44:1

**slowest** 20:13

**Smith** 32:8, 12,16,19 55:19,21,22

**smoothly** 6:9

**software** 8:20,23 9:15 12:23 13:14 16:13 21:7, 12,13 22:1,5, 17 24:24 25:7,8,14 39:17 40:3 41:18 47:11

**sole** 43:1

**some** 7:8 8:11 11:8 16:13 20:21 27:24 28:11 39:19 42:1 44:4,5 51:9

**somebody** 16:20 29:18

**somebody's** 28:8

**someone** 9:14 11:14 24:1 25:6,20 42:20

**something** 5:13 9:1,5 14:10 16:13 17:6 21:12 28:19 31:1 36:12 37:16 38:19 49:10

**sometimes** 15:1 18:12,13 20:4 55:1,9

**somewhere** 6:1 8:9

**soon** 17:10

**sophisticated** 40:7

**sorry** 7:25 17:20 19:1 23:25 28:13 29:12 35:21, 22,25 36:1 38:4 44:22 45:7 50:16 53:2 55:22

**sort** 5:16 6:7, 20 7:18 8:3, 20 11:10 12:23 13:19 14:17 16:5 17:3 20:21,22 22:19 23:10 27:24 28:11 31:5 33:1,3,6 51:8,9 55:5, 12 56:10

**sorts** 22:20

**sound** 6:25 34:8 41:14

**sounds** 10:10 14:24 24:21

**Southlake** 27:18 31:5 35:3,7 36:13, 16,17 37:4 38:18 39:4 42:4,7 45:2,8 46:4 47:15 49:6 50:4,7, 12 51:7,11

**Southlake's** 37:22

**speak** 52:16 53:4

**special** 7:24

**Specialists** 8:19

**specialized** 7:18

**specific** 11:9 53:10 54:23

**specifically** 9:14 30:3

**specifics** 53:7

**specs** 16:24 54:21 55:6

**Spencer** 36:20

**spoke** 51:17 52:11 53:10

**Stand** 41:25

**standard** 46:20

**start** 15:23 21:16 23:3 30:2 40:3 43:19

**started** 8:7,8 9:1,5,6,7 12:10,14 15:9 29:5,23 34:7, 16 38:16 43:25

**starts** 15:23 23:14

**state** 4:6,24 7:16 50:3

**States** 4:5,12

**stayed** 9:8 35:2

**stays** 26:6

**still** 9:9 29:24 34:1,16 36:24 38:14 39:18 42:12

**strike** 19:7

**stuff** 12:16 14:18 26:19 29:14 47:1 48:14,15

**submitted** 11:15 17:18

**supervisor** 31:21

**supplemental** 37:19

**support** 44:14

**supposed** 14:17 22:7

**sure** 6:9,15,18 7:11 8:25 10:14 12:4 14:19 18:25 21:15,18 24:23 25:4 26:17 30:16 34:17 38:21 39:22 40:22 41:25 45:9 49:7 50:3

**surprise** 49:5, 7

**suspect** 14:15

**SWAT** 7:23

**swear** 4:7

**sworn** 4:17,19 6:10

**system** 20:8,9 22:15

**T**

**take** 10:5 16:6 17:2 20:16,23 21:25 22:6 27:20 41:15 42:23 45:4,11 48:13 50:17 56:24

**taken** 25:19 40:17 41:12 43:18

**takes** 54:20

**taking** 23:9 41:19 48:24

**talk** 6:15 10:15 18:19 30:7 47:20 48:11 51:22, 24 52:8 53:1, 5

**talked** 5:1 11:13 18:18 25:24 40:17 46:3 52:2 54:19

**talking** 6:23 53:8,11

**Tarleton** 7:15

**teach** 7:23

**team** 7:23

**tech** 41:9

**technicians** 46:25

**technique** 15:9 20:2

**techniques** 7:22

**teenage** 21:4

**tell** 7:12,20 12:22 14:9 16:11 19:8 22:9 24:12 25:1 39:14,23 45:1 47:2,23 52:1 57:6

**telling** 43:24

**tells** 21:7 54:22

**ten** 43:25 53:6

**testified** 4:19 5:23 53:13

**testify** 49:11

**testimony** 6:10

**Texas** 8:13

**text** 22:11 41:3

**texted** 41:1

**than** 11:5 12:15 46:8 48:22

**thank** 11:4 23:7 36:4 56:21

**that's** 7:16 10:22 13:20 14:5 15:14,21 18:24 19:3,4 21:15 22:12 27:10 28:7 29:4 30:6 32:20,22,23 36:8,21 37:14 39:9 46:22 52:20 55:10, 21 56:11

**them** 6:20 8:11 12:1,2 15:10,25 18:2,16 25:22 29:4,6,20 31:5,11,12 34:21,22 36:23 39:10 42:17 44:5 45:25 51:5

**then** 4:7 9:4,7, 18 10:20 12:11 13:14 21:25 22:2 23:14 27:22 29:7,20,22,25 32:14,16 33:5,25 37:19 47:24 53:21 54:25 55:25

**there's** 15:9 17:14 18:22, 23,24 19:4 32:5,14 33:20 34:21 36:12 37:3 39:16 56:1

**these** 6:13 9:11 19:24 35:17 37:4 38:2 42:15 50:9

**they'd** 16:24, 25 46:1

**thing** 12:18 24:8,10 25:25 31:6,7 33:2

**things** 6:18 11:11 12:13 13:8 22:10 27:4 40:20 48:23 54:20 56:25

**think** 8:12 9:2, 7,17 20:5 22:8 29:1 32:13 33:16 36:1 37:15 38:5 41:9,17 42:1,25 44:12,21 45:20 49:10 50:1 56:15,20 57:9

**third** 6:5 55:25

**this** 5:1,2 6:4 10:9,21,23 11:5 12:24 15:20 18:2 22:13 23:7,8, 23 24:17,20, 21 25:8 28:10 30:2,10 31:20 32:3,9 34:1 35:10,19 36:5,10,13, 17,19,24 37:2,4,12 38:3,6 41:1 42:20 43:5,9, 21 44:11,17 45:19 46:3,7 47:15 48:12, 13,18,20 49:11,13 50:3,9,15 51:24 52:5, 16,17 53:8,18 54:4,7 56:21 57:5,12

**those** 12:11 15:8 19:7 24:17 27:5 28:11,16 29:3 33:16 42:21 48:23 56:25

**though** 25:12

**three** 20:6

**through** 9:17, 20 22:1 23:8 41:4

**thumb** 12:11, 12,14 27:20, 21 29:6,19 34:3 39:9,10

**time** 6:18 7:7 8:21 17:15 18:25 23:3 24:5 27:18 28:13 29:10, 12 30:6 31:3 34:1 35:1 41:25 44:14 45:16 47:7,12 51:17 52:18, 19 53:25 55:18 57:13

**times** 5:25 9:13,18 26:16 44:3,5

**to** 5:10,21,22 6:7,8,14,15, 16,18,20,21 7:3,8,9 8:11, 13 9:2,3,18, 19 10:15,19 11:8,9,11,23, 25 12:1,11, 16,18,19,24 13:5,10,12, 15,24 14:11, 12,14,17 15:1,4,5,7,19, 20,22,25 16:16 17:3, 17,25 18:1,3, 5,6,7,9,10,19, 20 19:16,23, 25 20:1,20,22 21:1,3,14,15, 16 22:6,7,9, 14 23:8,12, 16,17,23 24:2,5,13,21 25:8,10,12,

15,20,21,22 26:5,9,19 27:4,6,16,21, 22 28:3,10,15 29:6,7,8,13, 19,20,21,23, 24 30:9 31:4 32:8,10 33:16 34:2,3,6,22 35:7,15,17 36:10,11,20, 21,23 37:4, 10,16,21,23 38:17,19,22 39:3,9,10,19, 21 40:2,3,12, 13,21 41:7, 17,22 42:2,6, 16 43:1,5,7, 18,21 44:2,3, 8,9,18,20,23, 24 45:11,15, 21,22 46:8, 11,17,24 47:16,19,20, 22 48:7,9,12, 13,14,16 49:5,7,11,13 50:2,12,15,17 51:11,17,24 52:5,11 53:14,21 55:17 56:10, 22,24 57:6,19

**today** 6:8,14 9:25 11:6

**together** 46:2 51:1,15

**told** 16:20

**Tony** 55:21,22

**too** 20:18 25:12 33:21

**took** 5:18,19 27:20 31:12 38:3,5 40:12

45:1 46:16 48:9 49:1 52:9,10 54:7

**tool** 16:16 24:13 39:18, 23

**top** 36:12 37:18

**tough** 44:8,9

**towards** 16:12 44:1 55:3

**tower** 13:8

**towers** 44:18

**train** 48:15 50:23

**trained** 9:14 25:6,20,23

**training** 7:18, 24 8:1,2,5,10, 17 10:4 14:22 25:10 48:12 49:20 50:18, 25 51:14 56:25 57:2

**trainings** 8:11 9:11

**transfer** 37:20 39:7

**transferred** 27:16 42:6

**transferring** 18:11 27:8

**transitioned** 29:6

**trial** 47:19 49:11

**tried** 20:1 45:25 56:24

**trusted** 49:20

**trying** 11:11 21:14 25:15 28:14 29:13 32:10 46:24

**turn** 16:8,15 44:23

**turning** 16:12 17:21

**two** 5:10 6:13 19:4 33:16 45:13,14,17, 18,24

**type** 32:14 33:5,7,9 55:9, 11

**types** 19:19

**typically** 12:2 18:16,17 20:1,16

**U**

**Uh-huh** 49:23

**unattended** 38:15

**under** 55:25

**understand** 6:9 7:2 29:13 53:15

**understandin g** 21:21

**unexpected** 38:8

**unique** 51:8, 11

**unit** 32:16

**United** 4:4,12

**units** 55:25

**universally** 15:16

**University** 7:16

**unknown** 16:14

**unless** 16:19

**until** 9:8

**up** 5:2 12:24 15:23 23:19 31:5 34:14 37:17 40:1,4 46:23 48:22 51:12 53:10 55:6

**updates** 45:17

**us** 6:14 7:7,9, 23 24:24 33:16 36:11 45:1

**USB** 13:16 42:8,9

**USBS** 13:15

**use** 8:20 13:7, 8 15:7 16:16 19:25 20:2 22:22 28:1,3 41:17 45:21 49:15

**used** 9:3 13:8 15:7 24:1,13 27:19 39:17, 23 55:15

**using** 9:7,9 15:23 47:12 49:2

**V**

**validate** 24:14

**value** 24:13

**values** 24:12,

17

**varied** 7:21 44:6

**various** 8:12 13:8

**vary** 21:1

**verifies** 13:13

**versa** 6:22 34:15

**version** 40:7 47:11

**versus** 4:4 39:7

**very** 5:15 6:17 8:15 9:6 23:8 24:23 37:20 56:24

**vice** 6:22 34:15

**video** 43:19

**VIDEOGRAPH ER** 4:2 43:13, 16,19 57:14, 16

**viewable** 19:11

**virtual** 25:25 26:2,9 28:20 29:9

**W**

**waived** 57:19

**walk** 38:24

**want** 7:3,8 10:19,20,23 17:12,17 22:13 23:11, 13,20 24:25 25:3,22 40:1, 2,4 43:14

50:2 57:6

**wanted** 9:19 12:17 19:25 22:11,12

**wants** 33:16

**warrant** 11:20,23,25

**way** 7:3 15:25 17:13 20:22 41:7 48:20

**wayside** 9:2

**we** 5:1 6:6,15, 22 7:22 9:1,2, 4,7,8,9 10:8, 13 12:9,10, 13,14 13:20 14:19 15:7,9, 18,19,20 18:18 25:24 29:4,5,6,22, 23 32:19 34:5 35:2,3,15 42:12 44:1 46:3 48:5,23 51:25 52:2 53:1,5,11 57:10

**we'd** 15:20 29:24

**we'll** 7:4 30:7 57:12

**We're** 7:9 10:15 37:10 44:23 55:17

**we've** 11:13 40:17 48:4 54:19

**Weber** 4:4,14, 18,25

**Wednesday** 38:16

**well** 5:8,9 8:6, 23 9:8 12:6 13:11 15:7 16:12,19 19:10 21:12 24:23 31:12 36:25 39:21 46:24 48:4 55:1,9,21

**went** 5:10 8:12 9:2,4,17, 20 36:23,25 38:17

**what** 5:2,5,15 8:20 9:4 10:2 11:15,25 12:5 13:5,20 14:9 15:4 16:20 17:4 18:19,25 19:1,9,10,19 20:1,8 21:19 22:7 23:13 24:12,25 25:2 28:1 30:9,21 31:9,11,23 32:10 33:14, 19 36:21 39:15 40:1,2, 4,5 43:5 44:10,12 45:15,23 46:20 49:14, 25 51:22 52:2,3,22 53:9 55:2 56:1,4

**what's** 22:18 25:18 35:15 37:12 53:18

**whatever** 13:11 16:24 17:17,21 22:4

**when** 5:1,20 7:17 8:5,21 9:8,10 11:14 15:2,7,15,21, 25 18:3,15 21:5 22:4,8 23:9,15,16, 18,19,22,23 25:13 26:18 30:7,12 31:8 34:1,15,20 36:19 38:17 39:1 42:2,15, 17 43:25 48:8 49:13 50:20 51:12 52:11 53:4,12,14 54:7,14 56:3

**When's** 51:17

**whenever** 7:10 26:22 56:4

**where** 12:23, 25 13:23 15:9 22:12 23:17, 20 28:19 29:4 34:10 48:16, 23

**whether** 36:22 42:9 50:3 54:22

**which** 6:17 19:7,16,24 20:11 23:10 39:22 42:5 47:11

**whichever** 13:9 16:21 19:21 25:7 40:13 41:16

**while** 12:10 34:10 38:25

**who** 8:10,14 25:6,20 26:12,22 27:4,12 30:17 32:8,18 37:20 47:4 48:5 55:20

**who's** 26:8 47:6,9

**whoever** 26:13

**whole** 37:25

**why** 14:13 47:2,5 53:15, 19

**Wi-fi** 24:8 44:20

**will** 4:7,24 6:4 21:13,14 23:20 36:10

**wipe** 14:15

**with** 4:8,9,11 5:8 6:16,20 8:8 9:1,5,6,8, 13,24 12:19 15:4 18:9,16 20:25 21:1,13 25:21 26:16 27:8 29:5 30:10 31:1 32:5,16 33:23 34:21 36:5 37:16 41:23 44:4 46:11 47:15,24,25 51:4,5,8 54:6 56:8

**without** 41:22 56:14

**witness** 4:7, 17 11:1 35:19 43:11,15 45:10 57:11

**wonder** 32:23

**Wonderful** 5:12 10:5 20:10 36:18

**work** 26:3 38:24 44:4 48:10 51:1

**worked** 5:4 13:23

**working** 21:14 26:8, 13,15 38:25 43:9 51:4

**works** 23:7

**worries** 36:3

**would** 5:19 7:23 8:20 11:17,18,19, 20,22,23 12:2,7,9 13:5 15:15,16,17, 18,19 16:3,6, 21 17:1 18:1, 9,12,13 19:20,24 20:2,4,5,23 21:19 22:24 23:2,3,5,22 24:4,20 25:6, 8,10,22 26:23 27:1,5,12,14, 20 28:1,3,24 29:15,19,20, 23 30:1,14, 23,25 31:4,19 33:14,19,24 34:12,13,16, 23,25 35:2,3 36:19 38:11, 15 39:8 40:18 41:3,14 42:5, 9 43:4 44:3,4, 5,7 45:11,16, 20 46:8,12, 14,17,25 47:15,19,21 48:6,11 49:5, 9,10,18 51:5 53:5

**wouldn't** 18:13 30:24 32:19 41:8 42:12

**Wow** 43:24

**wrap** 15:10

**write** 11:19 56:13

**writing** 53:24 54:3,6

**written** 14:19, 20

**wrong** 21:13

**wrongful** 52:5,22

Y

**y'all** 35:22

**Yarbrough** 31:21 32:15

**yeah** 11:3 15:13 16:4 17:9,24 20:7 21:9,24 24:9 25:9 27:3 28:2 31:3 32:2 33:11,24 36:16 37:14 40:24 43:12 45:10 46:25 51:5,21 52:15 54:24 56:23 57:1,15

**year** 44:7

**years** 5:8,10, 13 8:24 12:8 33:17 43:25

**Yep** 7:1

**yes** 5:24 6:12, 16 7:19 12:21 13:20 14:3,8, 23,25 16:19 17:5,24 18:4, 12 20:19 22:23 24:11 26:1 27:3,7,9, 11,25 29:2 31:13,16,22 32:4,13 33:4, 8,13 34:9,17 35:13 36:7,21 38:1 39:13 40:9,11 41:21 43:3 44:22 46:14,19 47:8,17 50:8, 14,16 51:2 52:7,19,25 55:13

**yourself** 15:2