# APPENDIX 61

SOUTHLAKE POLICE



| | |
|---|---|
| **Status** | Approved |
| **Report Type** | Patrol Report |
| **Primary Officer** | Chris Branham |
| **Investigator** | Delaney Green |
| **Reported At** | 07/01/19 00:00 |
| **Incident Date** | 07/01/19 14:16 - 07/01/19 14:16 |
| **Incident Code** | 98 : Information |
| **Location** | 1400 PLAZA PL, Southlake |
| **Disposition** | Cleared by Arrest |
| **Disposition Date/Time** | 09/21/23 09:24 |
| **Review for Gang Activity** | None |

## Case Comments

Description: Death investigation

## Offense Information

| | |
|---|---|
| **Offense** | 481.112(B) - MAN DEL CS PG 1 <1G |
| **Statute** | Converted Statute |
| **NIBRS Code** | |
| **Counts** | 1 |
| **Include In NIBRS** | No |
| **Completed** | Yes |
| **Location** | Hotel/Motel/Etc |
| **# Premises Entered** | 1 |
| **Entry Forced** | No |

## Victim

**Skaggs, Tyler Wayne**
Male, DOB [redacted]
[redacted]
Los Angeles, CA 90066

Converted Statute - 481.112(B) - MAN DEL CS PG 1 <1G

## Other

**Knight, Charles Fred, Jr**
Male, DOB [redacted]
[redacted] Other

Other: Converted Statute - 481.112(B) - MAN DEL CS PG 1 <1G

**Ramos, Garet**
Unknown, DOB [redacted]
[redacted] Cell

Other: Converted Statute - 481.112(B) - MAN DEL CS PG 1 <1G

**Saenz, Jim Hernandez**
Male, DOB [redacted]

[redacted] Other

Other: Converted Statute - 481.112(B) - MAN DEL CS PG 1 <1G

# Primary Narrative By Chris Branham, 07/02/19 04:44

**Primary Narrative**

Incident Number :19SP053735

On Monday 07/01/19 at 1416 hoursSergeant Music and I, Officer Branham #1764, were dispatched to Hilton (1400 Plaza Place) room 469for a death investigation.
On scene Sergeant Music and I located the deceased, Tyler Skaggs (W/M, DOB [redacted]), face down on his bed in room469. Skaggs had obviouspostmortem lividity and Southlake medics determined him to be deceased. Skaggs is a pitcher for the Los Angeles Angels and was in Southlake for a baseball game that was to be played in Arlington against the Texas Rangers.
I spoke with the two security employees for the Los Angeles Angels, Charles Knight (W/M, DOB [redacted]) and Jim Saenz (W/M, DOB [redacted]). Knight stated the team arrived at Hilton around midnight (Sunday night/Monday morning) and all the players walked into the hotel and went to their individual rooms. Knight stated Skaggs had consumed alcohol on the flight from California to Texas, but he did not believe Skaggs to be intoxicated. Knight stated Skaggs is in good health and was in good spirits on the flight and bus ride from DFW International Airport to Hilton. Knightstated nobody was able to get in contact with Skaggs this morning, including Skaggs' wife and team staff. After knocking on Skaggs' door was unsuccessful, Knight contactedHilton staff. Hilton employees Erica Guerra and Shannon Wheeler unlocked and opened the door for Knight. Knight located Skaggs on his bed unresponsive.
Southlake CID was notified and they tookcustody ofthe crime scene. A crime scene log was started and at the time of the report the crime scene is still active.

# Supplement Narrative By Delaney Green, 07/08/19 13:21

**Initial Crime Scene Investigation**

Incident Number :19SP053735-2
Supplemented by:Green,D. #1594
Date of Supplement: 07/05/2019
On July 1st, 2019, at approximately 1430 hours, I, Detective D. Green #1594, along with CID Sgt. Macheca, responded to 1400 Plaza Place (room #469 at the Hilton) in Southlake, Texas after being notified of a death investigation.
Upon arrival, we met with Sgt. Music and Officer Branham (reference OfficerBranham's original narrative) and signed into the Crime Scene log. We then entered room #469 and observed Tyler Skaggs laying face down on the bed; the bed was completely made, and his bags had not been unpacked. Hehad taken his shirtoff and hung iton the desk chair; he had on black jeans, black/silver belt, and black cowboy boots.Helaid face down, with his legs hanging off the left corner of the bed; his left arm was up above his head, with the left side of his face resting on his arm. There were two packs of Haribo gummy bears on the bed, one opened, and oneun-opened. The bag that was opened, was laying near his right arm, which was also up, near his face. His cellphone was located in between his right arm and face. Lividity had already set in, and there waspooling of blood from his nose and possibly his mouth. There were no apparent injuries, marks, or wounds that suggested foul play.
On the couch, there were two bags that had not been unpacked; one was a brown/black Louis Vuitton backpack, and the other bag was a black Normatec carrying case. His black cowboy hat, and three Michelob Ultra beer cans (unopened) were located on the coffee table next to the couch. Inside the Louis Vuitton backpack, a prescription bill bottle was located for Indomethacin ER 75mg; it was prescribed by Brian Schulz on May 30th, 2019. The prescription was described as a 'clear aqua oblong gelatin 506 amneal' and was for a quantity of 30. However, located inside the bottle, were 5 round pink pills, with the label K|56 and 1 round blue pill with 'M' inside a square on one side, and the #30 on the other side. According to drugs.com, these pills are identified as Hydrocodone Hydrochloride; the pink pills are 10mg, and the blue pill is 30mg. Confirmation on the identity of these pills will be confirmed at a later date by a medical laboratory.
On the desk, there was one unopened Michelob Ultra beer can and an iPad with a black case, laying facedown. The black iPad case cover appeared to have white, powdery residue on it; next to the iPad was a pinkish Hilton Honors room card that appeared to have the same white, powdery residue as the case had. On the desk, there was a hard

white straw, which we believed to be part of a pen (the other parts of the pen were not located) with the same white, powdery residue inside. The white straw was labeled 'Bic Clic Stic med.'.
In the trash can next to the desk, there weretwo Pedialyte Advanced Care wrappers(Berry Frost) that had been opened and used; it was believed that they had been put into the two Fiji water bottles that were sitting on the TV stand dresser. The powder from the Pedialyte appeared to be bright blue. His wallet, wedding ring, and second Hilton honors hotel card was also located on the TV stand dresser.
Detective Roberson and Investigator Wood processed the crime scene and collected evidentiary items.
I, Detective D. Green, interviewed and spoke with all members, players, and coachesof the Los Angeles Angels individually while audio recorded. The following persons were identified and interviewed [reference the attached interview notes for further information]:

Ty Buttrey (w/m DOB [redacted])
Trevor Cahill (w/m DOB [redacted]
Shohei Ohtani (a/m DOB [redacted]); interpreter identified as Ippei Micuhara (a/m DOB [redacted])
Albert Jose Pujols (h/m DOB [redacted])
Eric Prescott (w/m DOB [redacted]
Mark Langston (w/m DOB [redacted])
Mark Gubicza (w/m DOB [redacted])
Torrent Smith (w/m DOB [redacted]
Thomas LaStella (w/m DOB [redacted])
Luis Rengifo (b/m DOB [redacted]
Justin Anderson (w/m DOB [redacted]
Noe Ramirez (h/m DOB [redacted])
Griffin Canning (w/m DOB [redacted])
David Fletcher (w/m DOB [redacted]
Jose Rances Suarez Quintero (h/m DOB [redacted])
Luis Garcia Almonte (b/m DOB [redacted])
Cameron Bedrosian (w/m DOB [redacted])
Andrew Heaney (w/m DOB [redacted])
Will Lenzner (w/m DOB [redacted])
Justin Bour (w/m DOB [redacted]
Brian Goodwin (b/m DOB [redacted])
Jose Mota (w/m DOB [redacted])
Kent French (w/m DOB [redacted])
Hansel Robels (b/m DOB [redacted])
Bradley Ausmus (w/m DOB [redacted])
Michael Trout (w/m DOB [redacted]
Jeremy Reed (w/m DOB [redacted]
Adam Nevala (w/m DOB [redacted]
Douglas White (w/m DOB [redacted]
Kole Calhoun (w/m DOB [redacted]
Andrew Bailey (w/m DOB [redacted])
Jesus Feliciano (h/m DOB [redacted])
Eric Munson (w/m DOB [redacted]
Juan Manuel Del Campo Viramontes (h/m DOB [redacted])
Andrelton Simmons (b/m DOB [redacted])
Jonathan Lucroy (w/m DOB [redacted]
Dustin Garneau (w/m DOB [redacted]
Felix Ricardo Pena De Los Santos (b/m DOB [redacted]
Shawn Wooten (w/m DOB [redacted]
Adam Hunt (w/m DOB [redacted]
Michael Ashman (w/m DOB [redacted])
Yoichi Terada (a/m DOB [redacted])
Jorge Sevilla (h/m DOB [redacted]
Paul Sorrento (w/m DOB [redacted]
Justin Upton (b/m DOB [redacted])
Brian Harkins (w/m DOB [redacted])

Michael Gallego (w/m DOB [redacted]
Lee Fiocchi (w/m DOB [redacted]
Matthew Martin (w/m DOB [redacted])
Jose Benjamin Molin Matta (w/m DOB [redacted])
Adam Auer (w/m DOB [redacted])
Joshua William Paul (w/m DOB [redacted])
Stephen Martone (w/m DOB [redacted]
Bernard Li (w/m DOB [redacted])
Thomas Taylor (w/m DOB [redacted])
Justin Hatcher (w/m DOB [redacted]

The course of the interviewing was similar in structure and sequence; the following questions were asked to all individuals:

When was the last time you saw and/or spoke with T. Skaggs?
How was Skaggs' behavior and demeanor the last time you interacted with him?
Did you see Skaggs consume any alcoholic beverages on the plane and/or upon arrival at the hotel on June 31st, 2019 (Sunday)?
Are you aware of Skaggs using any prescription drugs or illegal drugs?

All answers from the aforementioned parties provided the same, if not identical responses to the questions. Those that had seen Skaggs on the plane ridefrom LA to DFW, advised he had consumed a few beers during the flight, but did not appear intoxicated or belligerent. Only afew persons mentioned that he may have been prescribed Xanax for the flights, but no one could confirm if he had taken one for this particular trip.
Ty Buttery had texted Skaggs on July 1st, 2019 at 0002 hours about carrying the speaker[s] from the bus next time around and Skaggs replied immediately at 0002 hours confirming he received Buttery's text; however, Buttery texted Skaggs again at 0014 hours, but never received a response.
Prior to closing the crime scene, I requested a written statement from Charles Knight (w/m DOB [redacted], who had been working ina security capacity for the Los Angeles Angels team; Mr. Knight located Skaggs deceased and called 911. His written statement has been attached to the original case report for reference.
END OF REPORT.

## Supplement Narrative By Thomas Roberson, 07/24/19 14:38

**Crime Scene**

Incident Number: 19SP053735-1
Supplement by: Roberson,T. #1521
Date of Supplement: 07/23/2019
On July 1, 2019 around 1430 hours I, Det. T. Roberson #1521 was notified of a death investigation at 1400 Plaza Place, Hilton Hotel room 469, Southlake, Tarrant County, Texas. Upon arrival at room #469, I met with CID Sgt. J. Macheca, Det. D. Green, and Ofc. Branham. Once inside the room I observed a deceased white male (identified as Tyler Skaggs) lying face down on the sole bed in the room. Tyler was wearing black cowboy style boots, black jeans, black and silver belt, with no shirt. Lividity and rigor mortis were present and I observed blood and bodily fluids pooling from his nose and possibly mouth. A black cell phone was on the bed in close proximity to his right shoulder. There was an open pack of Haribo gummy bears by his hands and an unopened pack of Haribo gummy bears on the other side at the head of the bed.
The room appeared relatively undisturbed. The bathroom looked unused with only one small hand towel out of place on the counter. There were two bags on the couch still closed. There was no luggage in the room. There was a clear plastic bag on the coffee table with three unopened Michelob Ultra canned beers and a fourth on the desk also unopened. There was an IPad on the desk with a purple room key card and a small white plastic hollow cylinder (possibly the inner part of a pen). There was also a white powdery residue on the desk, room key card, and back of the IPad. The trash can contained two empty packages of Pedialyte electrolyte drink mixers .6 oz. The residue from the packages was blue. I observed Tyler Skaggs' wallet on the dresser and it contained his identification and a large sum of cash. The contents of the wallet looked undisturbed. There was also a wedding band, another room key card, and two bottles of Fiji water. The water bottles had been opened and the contents were a blue color- consistent with the Pedialyte electrolyte drink mixers.
The Tarrant County Medical examiner's Office was notified at 1542 hours and arrived on scene at 1633 hours.

Additional photos were then obtained of Tyler Skaggs once the ME Investigator Adriana Wood began her investigation. I observed no apparent injuries to Tyler Skaggs that would have caused injury or death.
Det. W. Wood assisted me in processing the scene and we collected the following items from the room:

Item 1.1- one room key card with white powder residue
Item 1.2- one room key card
Item 1.3 unknown powder from desk
Item 1.4- 18 capsules of Indomethacin ER 75mg
Item 1.5- white substance from floor collected by tape
Item 1.6-IPad with white substance on back of case
Item 1.7- black IPhone
Item 1.8- white plastic pen tube
Item1.9- one blue pill “M/30”
Item 1.10- five pink pills “K/56”
Item 1.11- wallet, ring, ID, cash, earbuds
Item 1.12- black cowboy hat and button shirt
Item 1.13- backpack with personal belongings
Item 1.14- one Normatec machine
Item 1.15- bed sheets with blood
Item 1.16- bedding with blood
Item 1.17- open bag of gummy bears

Items were returned to the Southlake Police Department and placed in a secured property locker. Items 1.15 and 1.16 were placed in a secured drying room and given time to dry before being packaged and sealed. The white powder residue was tested on scene and showed negative results for cocaine. I uploaded all photos to the Southlake Digital Evidence Library. See Supplement by Det. Green.
End of Report.

## Supplement Narrative By Delaney Green, 08/20/19 14:07

**Investigative Supplement**

Incident Number :19SP053735-4
Supplemented by:Green,D. #1594
Date of Supplement: 08/06/2019
On July 2nd, 2019, I, Detective D. Green #1594 was assigned Southlake case #19SP053735 for follow-up, review, and investigation.After initially responding to the crime scene on July 1st, 2019,T. Skaggs' bodywas released to the Tarrant County Medical Examiner's offense so an autopsy could be conducted.
Sgt. Macheca and I attended the autopsy on July 2nd, 2019, scheduled for 1000 hours. Uponour arrival, it was discovered that the Tarrant County Medical Examiner's office was allowing T. Skaggs' immediate family to view the body prior to conducting the autopsy. T. Skaggs' immediate family included the following: his wife (Carli Skaggs), mother-in-law (Nina Miles), mother (Debbie Hetman), step-father (Dan Ramos), father (Darrell Skaggs), and step-brother (Garet Ramos). The family arrived at the Tarrant County Medical Examiner's office (200 Felik Gwozdz Place in Ft. Worth, TX)at approximately 1100 hours on July 2nd, 2019. The family viewed T. Skaggsbodyprior to initiating contact; at that time, I spoke with T. Skagg's mother, step-father, wife, and mother-in-law and explained the next steps in this investigation. Sgt. Macheca was asked by Garet Ramos to speak in private; reference Sgt. Macheca's supplement for further information.
The family opted to travel to Southlake PD Headquarters, located at 600 State Street in Southlake, TX later in the afternoon on July 2nd, 2019 to obtain T. Skaggs' property that was being held as safekeeping.
After the family left, anautopsy was completed by Dr. Krause. During the initial process, Dr. Krause ruled out that T. Skaggs had passed due to choking on a gummy bear. Dr. Krause opted to send the toxicology tubes to be expedited to determine what may have been present in T. Skaggs' system (i.e., alcohol, drugs, narcotics, stimulants, depressants, etc.).
Sgt. Macheca and I returned to Southlake PD Headquarters and met with T. Skaggs' immediate family later that afternoon on July 2nd, 2019 (at approximately 1500 hours). The listed property that was beingheld for safekeeping was released to his wife. T. Skaggs cellphone andiPad were kept as evidence and consent was asked for from the family to search for any related information/evidence. It was explained that we would be looking for any incoming/outgoing

phone calls before andafter T. Skaggs' passing. During the time of our meeting, the family opted to withhold the passcode to the electronics until they consulted with an attorney. However, at 1616 hours, I received a text from Ms. Miles, stating they would release the passcode to T. Skaggs' electronics for further analysis. The electronics were taken to the Grapevine PD Forensic Lab on July 17th, 2019; the analysis was completed and the electronics were received back on July 22nd, 2019. However, due the electronic analysis only completing a logical dump, I returned to Grapevine PD Forensic Lab on July 23rd, 2019 to take physical photographs of evidentiary texts/phone calls, etc. All electronic information has been added to the Virtual Evidence Locker for reference.

On July 22nd, 2019, I, Sgt. Macheca, and Captain Luna met with Southlake PD Chief Brandon in reference to information that he obtained over the weekend from the Tarrant Account District Attorney's office in relation to this case. It was explained that an attorney with Los Angeles Angels baseball team, who was later identified as John H. Cayce, Jr. with the Kelly Hart firm here in Ft. Worth, Texas, reached out to TCDA, advising that a 'Adam Chodkzo' came forward after receiving information from a 'Eric Kay'; both parties were identified as Los Angeles Angels staff employees. Eric Kay relayed to Adam that he had been with T. Skaggs the night they arrived in Texas and he latermet T. Skaggs in hishotel room where they 'did lines of coke together'. It was explained that Eric Kay already hired his own attorney: Michael Molfetta ([redacted]

It should be noted that Eric Prescott (asnamed in theinterview notes)was interviewed on July 1st, 2019 along with the other staff members and players. Eric was the 5th person that came forward during our interview process.Ericexplained to Sgt. Macheca and I that he last saw T. Skaggs on the plane ride; he confirmed that T. Skaggs had consumed alcohol, but did 'not appear trashed'. Eric was unsure of T. Skaggs drug use, but thought maybe he used marijuana.

After obtaining this information, I travelled to Grapevine PD Forensic Lab on July 23rd, 2019 (as previously mentioned)and began photographing still images of T. Skaggs recent phone calls, text messages, etc. I located a contact by the name of'EK' (714-234-3916).The following text messages were exchanged between T. Skaggs and EK on June 30th, 2019 (the day the Angels left California and travelled to Texas).

June 30th, 2019 at 1435 hours: EK to T. Skaggs
Hoe many?
June 30th, 2019 at 1436 hours: T. Skaggs to EK
Just a few like 5
June 30th, 2019 at 1436 hours: EK to T. Skaggs
Word
June 30th, 2019 at 1436 hours: T. Skaggs to EK
Don't need many
June 30th, 2019 at 2347 hours: T. Skaggs to EK
469; Come by
June 30th, 2019 at 2350 hours: EK to T. Skaggs
K

On July 24th, 2019, Ms. Miles reached out and requested that the seized electronics from the crime scenebe returned to T. Skaggs' wife'sresidence as soon as possible. It was at this time, that I relayed the aforementioned information to Ms. Miles, Mrs. Skaggs, and T. Skaggs parents. I also explained that at this time, the electronics could not be returned based on the evidence that was discovered; all involved parties understood and stated they would aide intheinvestigation/prosecution in any way possible.

On July 25th, 2019, I met with DEA Investigator Brown and we discussed the current status of the investigation, and where to go moving forward. Inv. Brown advised that they had already ran T. Skaggs through their databases to view past prescription history; there was nothing of concern. The Los Angeles Angels team doctor was also ran, and showed a history of very minimal prescribed medications to patients/team players. Inv. Brown advised a subpoena will be issued for Eric Kay's associated telephone numbers for all phone records.

Shortly after that meeting, the Tarrant County Medical Examiner's office reached out, and Dr. Krauserequested thatthe prescription pills located in T. Skaggs' hotel room be picked up by TCME Investigator A. Wood immediately for testing. The 5 pink pills that were inscribed with 'K|56', and the 1 light blue pill inscribed with 'M' on one side, and '30' on the other side, were released to TCME Investigator Wood on July 25th, 2019. Investigator Wood's supplement initially identified these drugs; reference supplement for further information.

At this time, it was unknown why the TCME requested these drugs be tested immediately.

On July 29th, 2019, I reached out to Angels attorney, John Cayce, via telephone; this was audio recorded via Audacity and has been added to the Virtual Evidence Locker for reference. Mr. Cayce advised that the information originally provided to the Tarrant County District Attorney's was indeed accurate. It was explained that Eric Kay confided in Adam Chodzko about being with T. Skaggs the night they arrived in Texas; Chodzko then relayed this information to someone else in the Angels organization who then reported to the Angels' attorney (John Cayce). Mr. Cayce advised

that he will be the point of contact for the Angels organization moving forward (i.e., interviews, questions, etc.).
On July 30th, 2019, I spoke with Mr. Molfetta, Eric Kay's attorney (not Angels associated), via telephone. It was requested that Eric Kay complete a follow-up interview with myself and Sgt. Macheca due to aforementioned information discovered during the course of the investigation. Mr. Molfetta was made aware that we'd fly to California for an interview if it was not financially feasible for Mr. Kay to meet us in Texas. Mr. Molfetta stated that Eric was currently in rehab and would not be able to sit for an interview until approximately August 12th, 2019, when the rehab program ended. He did not have the financial means to travel, sothe interview would have to be conducted in California. I sent Mr. Molfetta an email with my contact information, and advised that I would follow-up in approximately two weeks, once Eric is out of rehab.
I requested the remaining evidence to be sent to the TCME lab for processing/testing on July 30th, 2019. This include two Hilton key cards andcollected residue powder from the desk in T. Skaggs' hotel room. It was the requested thepowder residue be tested, and thekey cards examined for fingerprints.
On August 1st, 2019, I spoke with TCME Dr. Krause, who advised that the autopsy findings and toxicology were complete. The pills that were picked up by TCME Investigator Wood on July 25th, 2019 showed that the 5 pink 'K|56' were oxycodone, and the one light blue 'M' and '30' pillwas pure fentanyl. It was discovered that T. Skaggs had oxycodone andfentanyl in his blood stream at the time of his death; his blood alcohol level was at .122. Dr. Krause stated the oxycodone had been metabolizing for more time than the fentanyl. Although the amount of fentanyl in T. Skaggs' system was small, he stated that if he wasn't use to taking it, or it was his first time, that amount could be lethal. With that said, Dr. Krause stated that T. Skaggs ultimately died due to 'choking on his own vomit'. The final ME report will not be released until the criminal investigation is finalized.
On August 9th, 2019, I contacted Mr. Molfetta via email requesting an update on Mr. Kay's rehab release date. I received no response.
It should be noted I have been observing and followingEric Kay's twitter account (@EKay2121) for recent activity since he went to rehab. Eric began re-tweeting and posting again on August 5th, 2019 after being 'silent' since July 13th, 2019.
On August 12th, 2019, I contacted Mr. Molfettaby phone and left a voicemail. I sent Mr. Molfetta a follow-up email later that same day requesting an update.
On August 13th and 14th, 2019, I received the ME's lab reports from the analysis of the key cards and the powder residue. The key cards did show to have fragmented friction ridge impression but was of no value due to insufficient ridge characteristics. The sealed piece of paper that contacted the powder residue fromthe desk of T. Skaggs' hotel room came back as 'residue containing fentanyl'.
On August 15th, 2019, I attempted to contact Mr. Molfetta by phone and left another voicemail. I then reached out to Mr. Cayce and requested an update of Mr. Kay's current employment status with the Angels, as well as an interview to be scheduled with Adam Chodzko. Mr. Cayce came back and stated that Mr. Kay is no longer on administrative leave, but he's also not working currently; he advised, "we don't quite know exactly where is he is at".
On August 19th, 2019, I interviewed Adam Chodzko (DOB [redacted] via telephone, while Angels' attorneys John Cayce and Todd Theodora,represented him; this conversation was audio recorded via Audacity and added to the Virtual Evidence Locker for reference. Chodzko stated his title with the Angels was the Senior Manager of Communications, and he worked directly for Eric Kay, as he was the Director of Communications. He has been with the organization for ten years and he considershimself 'good friends' with Eric. Chodkzo advised that he was driving Eric home one day after work (after the incident with T. Skaggs), and Eric told him that Skaggs had texted after they arrived at the hotel, asking himto come to his hotel room. Eric told Chodkzo he said 'no', but then Skaggs asked again, and he said 'yes'. When Eric arrived in Skaggs' room,Skaggs had three lines of 'drugs' onthe menu on the desk, ready to go. Eric then told Skaggs that'he's not doing that anymore, and he's trying to stay clean'. Eric told Chodkzo when he leftSkaggs' room that 'he seemed fine' (unknown if Skaggs was still awake, passed out, etc.). Chodkzo told Eric that he needed to tell someone in the Clubhouse or he would have to. Chodkzo saidhe then showed up at Eric's house the following day and took him to rehab. Chodzko couldn't remember exact dates, but believed it to be a week or two after the date of theincident (July 1st, 2019). Eric did not mentioned what type of 'drugs' Skaggs lined out, as we previously thought it had been cocaine. Chodzkoadvised he has not spoken with Eric since he dropped him off at rehab.
At the time of Chodkzo's interview, 'no one' knows Eric's whereabouts and/or if he'll return to work any time soon. Some of the details relayed during Chodzko's interview differed from what was initially presented.The information also contradicted text messages discovered in T. Skaggs' cell phone between Skaggs and EK. Eric's attorney has not returned any of my phone calls and/or emails as of today's date (August 20th, 2019).
All information has been relayed to the DEA, and a decision about moving forward with this investigation is expected to be determined in the first few weeks of September. The DEA is still waiting on a few outstanding subpoenas that have been issued in relationshipto thiscase.
I advised the Medical Examiner that this investigation is still on-going; contact information for the DEA was provided to

the ME's office for further contact.
As of now, this case is still pending investigation.
END OF REPORT.

# Supplement Narrative By Jonathan Macheca, 08/23/19 16:39

**Interview with family member**

Incident Number :19SP053735-5
Supplemented by:Macheca,J. #1100
Date of Supplement: 08/23/2019

On Tuesday July 2, 2019 Detective Delaney Green #1594 and I, Sgt. Jonathan Macheca #1100, attended the autopsy of Tyler Skaggs. Prior to the autopsy Mr. Skaggs' family was allowed to view his body. Detective Green and I were speaking with the family when his step-brother, Garet Ramos, asked if drugs were suspected. Mr. Ramos' demeanor suggested he had further knowledge of a possible history with drugs. Mr. Ramos then asked to speak with me in private.

Mr. Ramos informed me that he and Mr. Skaggs had grown up together and were close. He stated Skaggs had a history of prescription opioid drug abuse due to an injury in previous years. Because of the injury, Skaggs was prescribed prescription narcotics for recovery. Mr. Ramos advised he was once approached by Skaggs stating he had a problem with addiction. When asked if he knew how Skaggs would ingest the drugs, Mr. Ramos stated he “snorted” them. Mr. Ramos was also under the impression that Skaggs had previously received treatment for opioid abuse.

There is no further information at this time.

# Supplement Narrative By Weston Wood, 05/08/20 11:49

**Crime Scene Supplement**

Incident Number :19SP053735-3
Supplemented by: Wood,W. #1452
Date of Supplement: 07/25/2019
On July 1, 2019 at approximately 1430 hours, I was notified of a death investigation at 1400 Plaza Place (Hilton Hotel) Room # 469 in Southlake, Tarrant County, Texas. At approximately 1445 hours,Detective D. Greencontacted me for assistance. She stated that Det. Roberson wasabout to process the crime scene and needed assistance. Det. Green andCID Sergeant J.Macheca had approximately 60 players, coaching staff members, training staff members, and Angels personnel to interview.
I arrived on scene at 1502 hours and met with Officer Branham in order to sign the crime scene log before entering Room 469. I then entered the Room 469 and observed a deceased white male (later identified by CA Driver's License as Tyler Skaggs)to be lying face down on the onlybed located in the room. He was wearing black pants, a black and silver belt,and black cowboy boots. His forehead was resting in the crevice of his left elbow, which was extended underneath his body. His right arm was at a 90 degree angle and was out from underneath his body with his right hand resting beside his left hand. A black cell phone was lying on the bed just underneath his right shoulder and left hand. There was also an open package of Haribo gummy bears near his hands. There was another (unopened) package of gummy bears on the bed that was closer to the headboard. Post mortem lividitywas present. Blood and/or bodily fluids had emanated from his nose and mouth and were on his left arm and had pooled on the bed.
In observing the room, it appearedthat most things were still in place. There were two black bags on the couch that were closed. On the coffee table, there was a black cowboy hat and a clear and green plastic bag with three unopened Michelob Ultra cans in it.A black, red, green and purple colored long sleeve button up pearl snap shirt was draped over the rolling chair next to the desk. On the desk, there was a single unopened Michelob Ultra beer can. There was also an envelope with a room key card instruction pamphlet. There was also an iPad lying face down with white powdery residue on it. There was also a room key card with a white, powdery residue on it. On the desk around the iPad, there was more white powdery residue. There was also a white, hollow, cylindrical, plastic tube that was once the outside of a Bic Clic Stic writing pen. The tube had no other parts to it. On the carpet, just below the table, but not underneath it, there was more white powdery/granular residue.
Det. Roberson and I used a room key card (Item 1.2)that was located on the dresser that did not have residue on it to gather all the white powdery/granular residue that was located on the desk. I obtained a clean8 1/2" x 11" sheet of paper from Det. Roberson and swept the residue into the piece of paper with the aforementioned clean room key card. When all residue was swept off the desk, I tapped the key card with my finger in order to get the rest of the residue to

fallinto the paper. I then folded the paper multiple times, keeping the residue inside the folds,and taped the open ends shut to keep the residue inside the paper. Det. Roberson used clear masking tape to collect the multiple white fragments from the carpet below the desk. He applied the tape to a sheet of paper (Item 1.5) for evidence collection.I swabbed both the pen tube (bothends)and part of the key card containing residue with cocaine swabs and results showed negative for the presence of cocaine.
In the black and grey checkered backpack on the couch, Officer Roberson located a white prescription pill bottle with the name Brian Schulz (Angels physician) on it. The bottle did not have Skaggs' name on it. The prescription was for indomethacin 75 mg capsules. In looking inside the bottle, there were 18 capsules of indomethacin. There was also five pink pills labeled "K/56" on one side and a blank backside. There was one light blue/white pill labeled "M" with a square around it on one side and "30" on the other side. I contacted Texas Poison Control and inquired about the pills. I described the pink pills and Operator # 186 identified the pills as 10 mg oxycodone pills. I described the light blue/white pill and Operator # 186 identified the pills as a 30 mg oxycodone pill.Based onmy training and experience as a narcotics investigator, I know that long hollow objects such as this white tube are commonly used as "snort straws" to ingest powdery/granular substances (such as the whitepowder/fragments located on the table, iPad and key card) . I also know that items with a hard, straight edge(such asthe room key card with white powdery residue on it) are commonly used to move substances along a flat surface to keep the substance together and to make a "line" that is then easier to snort. I also know that even when a powdery/granular substance is inhaled, it often leaves behind a powdery residue on the surface it was snorted from, unless the surface is wiped clean.
When TCME Investigator Woods arrived on scene, Det. Roberson and I were able to observe that rigor was present in the decedent. I did not observe any signs of an injury or trauma that would have caused injury or death to the decedent. When the transport team took possession of the body, Det. Roberson and I collected the bed sheets and bedding as evidence. See Det. Roberson's supplement for a list of items taken from the room.All evidence/safekeeping items were entered into the Southlake DPS East Property Room, excluding the bed sheets and bedding, which were placed in the vehicle bay to dry out.
There is nothing further to report at this time.
END

## Supplement Narrative By Delaney Green, 08/12/20 13:42

**Final Close Out Supplement**

Incident Number :19SP053735-6
Supplemented by:Green,D. #1594
Date of Supplement: 08/12/2020
This case was transferred to the DEA towards the 1st of September 2019; they proceeded to handle the investigation with additional interviews, subpoenas, search warrants, etc.
Eric Kay was interviewed on September 25th, 2019 by the DEA and the United States Attorney at 801 Cherry Street in Ft. Worth, TX 76102. I did not audio/video record this interview as it was led by , and only took notes during the duration of the interview. I have attached my interview notes to the original case file, and added a digital copy to the Virtual Evidence Locker for reference.
I was notified on August 6th, 2020 by Agent Brown that a federal warrant was issued for Eric Kay for: Conspiracy to Distribute Fentanyl; Eric Kay turned himself in the following day on August 7th, 2020.
It should be noted that Southlake PD received a 'legal mailed' envelope on an unknown date from Rockwall County Inmate Jail from a Dustin Sorr___ (unknown spelling) due to apostage sticker covering up the return address. This handwritten letter did not seem relevant to the case but it has been attached to the original case file and to the VEL for reference.
At this time, our case will be closed, cleared exceptionally [transferred to outside agency].
END OF REPORT.

## Investigator Narrative By Delaney Green, 07/02/19 14:16

**Investigator Notes**

Contact TCME on 7/8 requesting info on tox results, but they had not come back from the lab as of yet.
Green,D. #1594: [07/16/2019 15:04:02]

Tamika Nelson is Dr. Krouse's secretary [redacted])
Green,D. #1594: [07/16/2019 15:04:48]

TCME Incident #1911392

Green,D. #1594: [07/16/2019 15:05:38]

Checked on tox results; still pending with no results
Green,D. #1594: [07/16/2019 15:06:06]

Checked on tox results; still pending with no outcome
Green,D. #1594: [07/22/2019 12:44:50]

Met w/ Chief who advised that Sharen Wilson (TCDA) was contacted this weekend by LA Angels attorneys who advised that an Eric Kay (Communications Director for Angels) admitted that he was with Skaggs the night of his death, and that they both snorted lines after arriving at the hotel. Kay's attorney was identified as Michael Molfetta [redacted].Waiting to hear response on if interview will be granted.

Cellphone/Tablet were received from Grapevine PD; held in locked drawer to be re-analyzed and photographed tomorrow at Grapevine Lab due to only a logical analysis being done on the electronics.
Green,D. #1594: [07/22/2019 15:43:54]

On Wednesday July 24th, 2019, Ms. Miles (Skagg's mother-in-law) requested that iPad and Cellphone be sent to her address. I called Ms. Miles this morning and explained that the cellphone and iPad can no longer be released due to the evidence found on the phone; she completely understood and advised they are willing to help in anyway possible.

Spoke with Investigator Brown (DEA) this morning (met with him and George Courtney) on Thursday July 25th, 2019; advised that they pulled prescription information on Skaggs and he had very few listed; was only prescribed oxy 5 days, post his surgery a few years back. Ran the team doctor's through the system and they showed no history to Skaggs and actually show very few prescrptions issued at all.

Attempting to get in touch with John H. Cayce Jr. w/ Kelly Hart Attorneys at Law who originally reached to Sharen Wilson; sent email and left VM.
Green,D. #1594: [07/29/2019 10:28:24]

Spoke with Cayce this morning who advised that he represents the Angels (along with many others). This conversation was recorded via audacity; stated that he will organize any interviews with people on the team or in the organization. Stated that Eric told Adam Chodzko who then relayed that information to someone in the Angels organization. Eric told Adam that it was Cocaine.
Green,D. #1594: [07/30/2019 10:01:04]

Spoke to Molfetta, who advised that Kay is currently in a rehab program and should be done probably in two weeks. He has advised Kay to focus on the program and they will discuss meeting with us in two weeks (he will not be able to fly out here). Sent email with contact information.

Asked Senora to send both key cards (one with powder) to be tests for drugs and fingerprints. Also sending paper of white powder that was collected from the desk.
Green,D. #1594: [07/30/2019 10:11:08]

Contacted ME's office again to get status on report; said it's not finalized and that they aren't going to release anything until the report is done and released to the public. I explained the reason to give me the details of tox before releasing the information to the public; asked Dr. Krause to give me a call personal before signing off on the report (which is expected to be completed by tomorrow).
Green,D. #1594: [07/30/2019 10:21:22]

Spoke with Dr. Krause on August 1st, 2019 about the tox results and they are summarized below; all family parties have been notified of info. The report will not be released until our investigation is finalized:

Metabolizing for more time, Oxy vs. Fentanyl
BAC .122
Underlying cardiac issues (hereditary); wasn't specific
If he hadn't aspirated he might have survived

Fentanyl levels are all over the place
Low amount of fentanyl but if never taken before, lethal
Green,D. #1594: [08/05/2019 09:08:31]
Green,D. #1594: [08/05/2019 09:08:56]

Left VM with TCME Chemistry Department to attempt to push a rush on the drug testing - incident #1912533; #817-920-5700 press 7, then 3 for chemistry dept
Green,D. #1594: [08/06/2019 08:51:16]

Emailed Molfetta on Friday (8-9) and received no response; called and left a VM this morning requesting and interview with Kay.
Green,D. #1594: [08/12/2019 10:13:05]

Left VM with Evidence department at TCME requesting a cost for putting a rush on evidence
Green,D. #1594: [08/12/2019 10:15:40]

Finally got in touch with Chemistry dept at ME and spoke with John (817-920-5700 ext 8517) who advised that the drugs are being processed right now and he should be able to get me a report by this Friday (send my email to lab tech)
Green,D. #1594: [08/12/2019 14:34:43]

Got the ME lab reports back; spoke with John Cayce to see if he could find out the status of Eric Kay's employment with the Angels
Green,D. #1594: [08/15/2019 10:21:31]